**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-cr-00128-RC** |
| | : | |
| **WILLIAM POPE, and** | : | |
| **MICHAEL POPE,** | : | |
| | : | |
| **Defendants.** | : | |

**REQUEST FOR *FARETTA* INQUIRY IN RESPONSE TO**
**DEFENDANT WILLIAM POPE'S REQUEST TO PROCEED *PRO SE***

The United States of America respectfully submits this response to defendant William Pope's June 28, 2022 letter declaring his plan to proceed *pro se*, which was attached as an exhibit to defense counsel's motion to withdraw (ECF No. 57). The government requests that the Court conduct an inquiry to ensure that any decision by Pope (hereinafter, "Defendant") to waive his right to counsel is "knowing, intelligent, and voluntary" pursuant to the Supreme Court's decision in *Faretta v. California*, 422 U.S. 806 (1975). Specifically, before Defendant rejects his right to be represented by counsel in this matter, we request the Court: (1) explore whether Defendant is electing to proceed *pro se* based on his belief that appointed counsel cannot adequately prepare; (2) address whether Defendant understands proceeding *pro se* will not guarantee his ability to mount an entrapment defense; and (3) correct Defendant's faulty assumption that proceeding *pro se* will enable him to gain direct access defense discovery databases or otherwise evade the requirements of the protective order entered in this case (ECF No. 26). Should the Court allow Defendant to proceed *pro se*, we request standby counsel be appointed to assist Defendant in obtaining access to protected discovery materials.

## I. BACKGROUND

Due to his participation in the siege of the United States Capitol on January 6, 2021 (the "Capitol Siege"), Defendant was charged by criminal complaint on February 10, 2021, and arrested on February 12, 2021 (ECF Nos. 1, 7). On February 17, 2021, a federal grand jury returned an eight-count indictment against Defendant and his brother, Michael Pope (ECF No. 8).

On May 5, 2021, the Court issued a protective order by consent of the parties (ECF No. 26). The protective order governs the handling and dissemination of discovery materials that the United States has designated as "Sensitive" or "Highly Sensitive." It applies to materials provided in "case-specific" discovery (i.e., discovery that is particular to Defendant) and "global" discovery (i.e., discovery that has been made available to all Capitol Siege defendants).[1]

In summary, the protective order requires defense counsel to provide a copy of the order to Defendant, review its terms with him, and obtain a fully executed copy of Attachment A (in which Defendant acknowledges his understanding and acceptance of the protective order), before providing Defendant access to Sensitive or Highly Sensitive materials. It further requires counsel to file a copy if Attachment A with the Court within one week of execution.

[1] The materials being provided in global discovery far exceed the information to which any defendant is entitled under Federal Rule of Criminal Procedure 16, the Jencks Act, or the government's *Brady* obligations. The government is making such materials available to defendants due to the unique circumstances of this matter, *i.e.*, literally hundreds of similar crimes being committed in the same place contemporaneously.

Notwithstanding Defendant's representation in his June 28 letter that he "signed" the protective order, no executed copy of Attachment A has been filed on the record.[2]

Once the conditions described above are satisfied, the order provides that defense counsel may share Sensitive and Highly Sensitive discovery materials with Defendant, subject to certain conditions. The protective order prohibits Defendant from using, disseminating, or reproducing such materials except in connection with the defense of his case or other Capitol Siege cases. It requires Defendant to maintain custody and control over any Sensitive materials he is provided. And it prohibits Defendant from viewing Highly Sensitive materials unsupervised by defense counsel or another member of the legal defense team.

The government has made substantial case-specific and global discovery productions to date. Such discovery, summarized below, includes a significant number of Sensitive and Highly Sensitive documents that, given this record, Defendant does not yet appear authorized to access.

**A. Case-Specific Discovery**

The case-specific discovery in this matter is substantially complete.[3] Contrary to the representations in Defendant's June 28 letter that he has not received his "full discovery" and that he has only received "partial batches of discovery," the government produced most of the case-specific discovery to Defendant's prior counsel in productions that were made on May 4, 2021 and August 14, 2021. *See* ECF Nos. 24-1 and 33-1.

Further, after Defendant retained new counsel in January 2022 (ECF No. 49), the

---

[2] Before authorizing Defendant's access to any Sensitive or Highly Sensitive materials, we request the Court ensure that he has been provided a copy of the protective order, and that he understands and accepts the terms of the protective order.

[3] The government acknowledges its ongoing disclosure obligations under *Brady, Giglio,* and the Jencks Act.

government re-produced the May 4 and August 14 disclosures. On June 24, 2022, the government made one small supplemental production of case-specific discovery.

All three case-specific productions include material that has been designated as Sensitive or Highly Sensitive, and thus may not (should not) have been shared with Defendant given the lack of any record that he signed Attachment A. Examples of such materials include:

- U.S. Capitol Police ("USCP") Closed Circuit Video ("CCV") footage from inside the Capitol by the Senate Carriage door showing Pope blocking the doorway as USCP are attempting to close the door to keep out other rioters (Highly Sensitive);
- A confidential tip identifying Pope at the Capitol (Sensitive);
- USCP CCV footage showing Pope attempting to force open a door inside the office suite of Speaker of the House Nancy Pelosi (Highly Sensitive); and
- Grand Jury material (Highly Sensitive).

**B. Global Discovery**

The government has produced over 24,000 files consisting of body-worn and hand-held camera footage from five law enforcement agencies and surveillance-camera footage from three law enforcement agencies to an evidence.com video repository that is managed and administered by the Federal Public Defender for the District of Columbia ("FPD") and the Defender Service's National Litigation Support Team. For context, the files provided amount to over nine terabytes of information and would take at least 102 days to view continuously. Over 20,000 of these files consist of USCP CCV that has been designated as Sensitive or Highly Sensitive under the protective order.

Since October 2021, all Capitol Siege defense counsel have been able to request a license from FPD to access the defense evidence.com video repository. Authorized users of this database can both download and share video files. Given the vast quantity of protected materials within the repository, and the ease with which materials may be shared from the repository, no defendants have been given direct access to it. Subject to the terms of the protective order,

however, defense counsel can use evidence.com's tools to share the contents of the video repository with their clients.[4] The government has previously authorized defendants to view Highly Sensitive footage shared via evidence.com without supervision, provided that the defendant has executed Attachment A to the protective order and that, before sharing the footage, counsel employs evidence.com's simple tools to disable the client's ability to further share or download. If the footage counsel seeks to share is designated Sensitive, counsel can (and should) further assure client compliance with the protective order by utilizing the same tools.[5]

The government has produced all other global discovery materials to a Relativity workspace that is also managed by FPD and NLST (and their vendor).[6] As of July 15, 2022, almost 2.2 million files (over 2.3 terabytes of information) have been provided to the defense Relativity workspace. These files include:

- Information pertaining to James "Ray" Epps;[7]
- U.S. House of Representatives and U.S. Senate Recording Studio footage;
- Reports (including video and audio exhibits) arising from investigations into allegations of officer misconduct on or about January 6, 2021;
- Video recorded by the D.C. Metropolitan Police Department's Electronic Surveillance Unit;
- The results of searches of 511 digital devices and 99 Stored Communications Act ("SCA") accounts;
- 211 digitally recorded interviews of investigation subjects;
- Radio communications from multiple law enforcement agencies;

---

[4] Defense counsel can easily share up to 100 files at a time. There is no limit on the number of files that may be shared.

[5] As discussed above, the conditions for defense counsel to share Sensitive or Highly Sensitive materials with Defendant do not appear to have been satisfied here.

[6] Relativity is a cloud-based eDiscovery platform that offers functionalities including document organization, review, production, and analytics within a single environment.

[7] Epps has been the subject of widely-publicized claims that "paint him as a secret federal asset in charge of a 'breach team' responsible for setting off the riot at the Capitol." *See* Alan Feuer, *A Trump Backer's Downfall as the Target of a Jan. 6 Conspiracy Theory,* N.Y. TIMES, July 13, 2022.

- 1,011 FBI FD-302s (FD-302s generally consist of memoranda of interviews and other investigative steps);
- 61,301 (redacted or anonymous) tips;
- Search warrant documents related to the government's collection of comprehensive data from the Capitol's cell tower infrastructure and the collection of geolocation information for the Capitol and restricted perimeter;
- Medical information for officers injured during the siege;
- Case-specific information obtained in connection with the investigation of numerous subjects whose cases have not yet been disposed and whose investigations may be on-going;
- Files provided to the government by multiple law enforcement agencies in response to Rule 16 requests for any potentially discoverable information, including information about individuals who have not been charged;
- Work product consisting of analytical and mapping information created by the government and provided to Capitol siege defense teams to help them identify video files that may be relevant in specific cases;
- Documents the government will use to prove interstate commerce was affected; and
- Documents related to the whereabouts of Vice President Pence on January 6, 2021.

Since January 21, 2022, all Capitol Siege defense counsel have been able to request a license from FPD to view materials in FPD's Relativity workspace.

## II. REQUEST

The government requests that the Court conduct a *Faretta* inquiry to ensure that Defendant's decision to waive his right to counsel is knowing, intelligent, and voluntary. We request that such inquiry: (1) explore whether Defendant is electing to proceed *pro se* based on his belief that appointed counsel cannot adequately prepare; (2) address whether Defendant understands proceeding *pro se* will not guarantee his ability to mount an entrapment defense; and (3) correct Defendant's faulty assumption that proceeding *pro se* will enable him to gain direct access defense discovery databases or otherwise evade the requirements of the protective order.

To meet *Faretta*'s requirements, the Court must "engage the defendant in a short discussion on the record about the dangers and disadvantages of self-representation." *United States v. Gewin*, 471 F.3d 197, 199 (D.C. Cir. 2006), citing *United States v. Brown* 823 F.2d 591,

599 (D.C. Cir. 1987) (cleaned up). The D.C. Circuit has characterized as "model" a colloquy in which the Court: (a) cautions the defendant about the seriousness of the charges against him; (b) warns the defendant that the judge cannot assist in his defense, that the trial will be conducted under the Federal Rules of Evidence and Criminal Procedures, and that proceeding without the assistance of a trained lawyer would constitute a "distinct handicap"; and (c) repeatedly inquires whether the defendant understands the Court's remarks or has any questions. *Gewin*, 471 F.3d at 199, citing *Brown*, 823 F.2d at 599. Notably, the model inquiry for federal judges set forth the Bench Book for United States District Judges § 1.02 (6th ed. 2013) is consistent with the colloquy characterized as model by the D.C. Circuit.[8]

If a decision to proceed *pro se* "appears grounded in dissatisfaction with appointed counsel, the court must further allow the defendant to explain the reasons for his dissatisfaction, evaluate those objections, . . . and address the core elements of the defendant's concern." *Wright*, 923 F.3d at 189, citing *United States v. Cunningham*, 145 F.3d 1385, 1392 (D.C. Cir. 1998)(cleaned up). Importantly, "asking a defendant to make a Hobson's Choice between accepting appointed counsel whom he feels is not prepared for trial and representing himself calls into question whether his waiver of the right to counsel is voluntary." *Wright*, 923 F.3d at 189, citing *Cunningham*, 145 F.3d at 1392 (cleaned up). Conversely, a defendant's decision is not involuntary if his "qualms about appointed counsel lack merit, are purely subjective, or are of his own making." *Wright*, 923 F.3d at 189.

[8] An on-line version of the Bench Book is located here: https://www.fjc.gov/sites/default/files/2014/Benchbook-US-District-Judges-6TH-FJC-MAR-2013.pdf.

A. The Court should address whether Defendant is electing to proceed *pro se* because he feels appointed counsel cannot adequately prepare.

Defendant complains that his first attorney was slow to provide him discovery and then only showed him minimal materials; and that his current attorney lacks the technological skills required to review or share materials provided in discovery. We thus request the Court explore Defendant's motivation for proceeding *pro se* to ensure that his decision is voluntary, i.e., that he does not feel compelled to represent himself because appointed counsel have failed to take steps he believes are necessary to prepare for trial.

As an initial matter, the Court should clarify whether counsel has had an opportunity to access and review materials provided in case-specific discovery and global discovery.

Second, the Court should clarify whether Defendant has had an opportunity to review video footage provided in global discovery. Defendant's personal review of all discovery materials is not constitutionally required or otherwise legally mandated where Defendant is represented by counsel who has had the ability to review the discovery before trial.[9] Nevertheless, the Court may wish to address Defendant's access to discovery in that his letter emphasizes that his purported lack of access to video footage makes it "impossible" for him to

[9] *See, e.g., United States v. Thompson*, No. 2:10-CR-200-DBH, 2013 WL 1809659, at *6–7 (D. Me. Apr. 29, 2013), aff'd, 851 F.3d 129 (1st Cir. 2017)( (rejecting "the argument that a defendant cannot enter a binding guilty plea unless previously he personally has seen all the discovery that he asks to see" and recognizing "[t]here is no general constitutional right to discovery of the evidence supporting the prosecution.").); *United States v. Faulkner*, 2011 WL 3962513, at *4 (N.D.Tex. Sept. 8, 2011) (only reported in Westlaw) ("Faulkner's personal review of the disclosed digital data prior to trial is not constitutionally required or otherwise legally mandated where, as here, Faulkner is represented by counsel who has had the ability to review the discovery before trial."); *Baker v. McKee*, 2009 WL 1269628 (E.D. Mich. 2009) (holding that a criminal defendant has no independent right to his own copy of discoverable documents when represented by counsel and when documents were provided to defense counsel); *U.S. v. Winkelman*, 548 F. Supp. 142, 148 (M.D. Pa. 2008) (rejecting claim for ineffective assistance of counsel based on counsel's failure to provide defendant with discovery).

"mount a defense." Defendant's assertion is questionable. Attached to this response are screenshots of some of Defendant's recent posts to Rumble[10] and Twitter under the handle "FreeStateWill." *See* Exhibits A through C. Defendant's representation about a lack of access to video footage appears to be in direct contradiction to his December 25, 2021 tweet that he has reviewed "hundreds of hours of January 6 footage" and his February 13, 2022 tweet that he has "figured out January 6." *See* Exhibit B.

B. The Court should address whether Defendant understands proceeding *pro se* will not guarantee his ability to mount an entrapment defense.

Defendant appears to believe that inferences and conclusions he has drawn solely from his analysis of video footage will enable him to present an entrapment defense at trial. Defendant has tweeted that others "should reconsider their attorney if their attorney isn't digging into fed involvement and pursuing an entrapment defense." *See* Exhibit C. On December 25, 2021, Defendant tweeted that he is "100% convinced that the FBI is responsible" for "January 6" based on his review of "hundreds of hours of January 6 footage." *See* Exhibit B. On Rumble, Defendant has posted compilations of January 6 video footage—that he has edited with overlaying text and set to music—in which he analyzes video footage of various individuals (e.g., "Subzero PB," Ray Epps, "BullhornEagle," and Ken Oberkrom) and insinuates or directly asserts that they are government actors who provoked the riot. *See* Exhibit A. As recently as July 13, 2022, in response to the aforementioned *New York Times* article (in which Epps was interviewed and denied being part of any "false flag" plot), Defendant opined that the article was "propaganda" as it was contradicted by (purported) video evidence. *See* Exhibit B.

The Court should ensure Defendant's understanding that proceeding *pro se* will not

---

[10] Rumble is an online video platform.

guarantee his ability to mount an entrapment defense. "A defendant only is entitled to an entrapment instruction when there is sufficient evidence from which a reasonable jury could find entrapment." *United States v. McKinley,* 70 F.3d 1307, 1309 (D.C. Cir. 1995) (cleaned up). Entrapment is "a relatively limited defense." *United States v. Layeni*, 90 F.3d 514, 517 (D.C. Cir. 1996). "In order to raise the defense, the defendant must show that a government agent played some effective role in the commission of the crime." *United States v. Burkley*, 591 F.2d 903, 911 (D.C. Cir. 1978). Defendant should understand that his decision to proceed *pro se* does not alter the Court's responsibility to determine whether, and under what circumstances, his interpretation of video footage will constitute sufficient evidence for an entrapment instruction. *See, e.g., United States v. Williamson*, 903 F.3d 124, 131 (D.C. Cir. 2018) (district court properly rejected *pro se* defendant's entrapment defense as a matter of law because the defendant did not introduce evidence of government inducement).

C. The Court should address Defendant's faulty assumption that proceeding *pro se* will enable him to gain direct to defense discovery databases or evade the requirements of the protective order.

We further request the Court address Defendant's faulty assumption that he will gain direct access to FPD's evidence.com and Relativity databases or evade the requirements of the protective order by rejecting his right to be represented by counsel in this matter.

Federal Rule of Criminal Procedure 16(d)(1) states that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief" in regulating discovery. It is well established that protective orders are appropriate where the disclosure of discovery could jeopardize the national security of the United States, compromise an ongoing investigation, or infringe on the privacy of uncharged third parties and others associated with a case. *See, e.g., United States v. Concord Mgmt. & Consulting LLC*, 404 F.

Supp. 3d 67, 75 (D.D.C. 2019); *United States v. Lindh*, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002).

Over 20,000 files in FPD's evidence.com video repository consist of USCP CCV footage that has been designated as Sensitive or Highly Sensitive under the protective order. Such sensitivity designations were imposed to prevent defendants who previously invaded the Capitol and/or its grounds for the purpose of interfering with the democratic process from obtaining or further disseminating information about the layout, vulnerabilities, and security weaknesses of the Capitol. *See* Exhibit D (Declaration of Thomas A. DiBiase, General Counsel for the USCP) at para. 14.

Hundreds of thousands of documents in FPD's ever-growing Relativity workspace have been designated as Sensitive and Highly Sensitive because they contain: (1) personal identity and contact information for subjects, witnesses, and victims; (2) victim medical information; (3) allegations about purported officer misconduct (even if unsustained); (4) government work product that was provided solely to assist defense teams in their review of voluminous materials; (5) information obtained from digital devices and SCA accounts such as photographs of, private conversations with, and contact information for, individuals who do not appear to be involved in the criminal conduct alleged (but whose identities may be relevant to establish a defendant's control and ownership over a particular device or account); and (6) files obtained from multiple law enforcement agencies that pertain to individuals who have not been charged.

Given the sensitive nature of a vast quantity of materials in each of the FPD discovery databases, and the fact that most such materials are ultimately likely to be irrelevant to Defendant's case, there is good cause to prohibit Defendant (or any other defendant), from having direct access to the defense discovery databases. Such prohibition will appropriately

ensure that Sensitive and Highly Sensitive materials are safeguarded against improper use or dissemination. Such safeguarding is especially warranted here, where Defendant's letter asserts that agreeing to the protective order was a "mistake," and Defendant has previously tweeted that he has "plenty of material" for Tucker Carlson to create a "miniseries." *See* Exhibit B.

We recognize that requests to limit discovery under Rule 16(d)(1) are subject to a "balancing of interests," *United States v. Williams Cos., Inc.*, 562 F.3d 387, 395 (D.C. Cir. 2009), with the government's showing of good cause weighed against any imposition that the proposed limitation would place on the defendant's Sixth Amendment right to present an effective defense. *United States v. Celis*, 608 F.3d 818, 829 (D.C. Cir. 2010). Should the Court allow Defendant to proceed *pro se*, it may strike the proper balance by appointing standby counsel.

As a general matter, appointment of standby counsel is recommended by the Bench Book for United States District Judges, which states "[i]t is probably advisable to appoint standby counsel, who can assist the defendant or can replace the defendant if the court determines during trial that the defendant can no longer be permitted to proceed *pro se.*" Bench Book § 1.02. To the knowledge of the undersigned, standby counsel has been appointed in every Capitol Siege case involving a defendant who has opted to represent themselves.[11]

Here, standby counsel can also assist Defendant in gaining access to discovery materials while ensuring that Sensitive and Highly Sensitive materials are adequately protected. For example, assuming the Court is satisfied Defendant understands the protective order, standby counsel can use their own evidence.com license to share Sensitive and Highly Sensitive materials

---

[11] *See U.S. v. Jeremy Brown* (21-cr-00609-APM); *U.S. v. Alan Hostetter* (21-cr-392-RCL); *U.S. v. Pauline Bauer* (21-cr-00386-TNM); *U.S. v. Brandon Fellows* (21-cr-00083-TNM); *U.S. v. Brian Mock*, (21-cr-00444-JEB); *U.S. v. Eric Bochene* (21-cr-00418-RDM).

from FPD's evidence.com video repository (after suppressing Defendant's ability to share or download). Similarly, standby counsel can assist Defendant in accessing materials located in FPD's Relativity database by allowing Defendant to view materials in standby counsel's office and by downloading materials Defendant deems relevant (except for Highly Sensitive materials).

The Supreme Court has generally upheld the appointment of standby counsel when a defendant exercises the right of self-representation, subject to two conditions: "First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury." *McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984). "Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." *Id.* Appointing standby counsel to assist Defendant with access to discovery in the manner described above would in no way impact either of these conditions. *Cf. United States v. Bisong*, 645 F.3d 384, 396-97 (D.C. Cir. 2011) (detained *pro se* defendant's contention that the district court denied him an opportunity to review discovery and prepare his *pro se* defense failed where district court ensured standby counsel had access to the discovery materials and was getting defendant the records he requested prior to trial).

***

**CONCLUSION**

The government requests that the Court conduct a *Faretta* inquiry to ensure that any decision by Defendant to waive his right to counsel is knowing, intelligent, and voluntary. Should the Court allow Defendant to proceed *pro se*, we request standby counsel be appointed to assist Defendant in obtaining access to protected discovery materials.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By: /s/ *Jason M. Crawford*
Jason M. Crawford
Trial Attorney
U.S. Department of Justice
Detailed to the D.C. U.S. Attorney's Office
DC Bar No. 1015493
(202) 598-1099
Jason.M.Crawford@usdoj.gov