## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

WILLIAM ALEXANDER POPE,

Defendant   .

Case No.: 1:21-cr-00128-RC

## MOTION TO MODIFY THE PROTECTIVE ORDER AND TO COMPEL FULL ACCESS TO DISCOVERY

I, William Pope, pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure respectfully request this Honorable Court to modify the existing protective order in this case concerning the disclosure and retention of discovery deemed sensitive and highly sensitive in this matter; and respectfully request the government be compelled to fulfill their Brady obligations and provide me full access to that discovery through the Relativity and evidence.com indexes that is equivalent to access granted officers of the court in other January 6 cases.

### OVERVIEW

The sixth amendment was enacted to ensure American citizens have an absolute right to be informed about the nature and the cause of accusations brought against them in legal proceedings, and that they my contest those accusations in court. The sixth amendment also grants that defendants have a right to legal counsel. However, this does not mean a defendant must be represented by counsel. Our Supreme Court has ruled the State must not "thrust counsel on the accused, against his considered wish," and that counsel must not be "interposed between an unwilling defendant and his right to defend himself personally" (Faretta v. California, 422 U.S. 820 (1975)):

*The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with the witnesses against him," and who must be accorded "compulsory process for obtaining witnesses in his favor." Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment.*

Faretta 422 U.S. 818 (1975) also noted of the sixth amendment that "because these rights are basic to our adversary system of criminal justice, they are part of the 'due process of law' that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States."

So, to deny me the right to personally confront accusations against me, would also deny me my right to due process.

This honorable court has correctly recognized my right to represent myself, but the question remains before the court whether I will be allowed to exercise this right in full or whether the government will succeed in making it a hollow right.

The due process of the fifth and fourteenth amendments also includes the right to examine evidence, including favorable evidence. Yet in the January 6 cases, the government seeks to put conditions on defendants who exercise their sixth amendment right to self-represent. Such conditions would prevent Pro Se defendants from directly accessing discovery, including exculpatory discovery, and hinder them from adequately preparing their defense.

The great Americans who enacted our sixth amendment did not make it conditional on the whims or wishes of the prosecution. The constitutional rights of defendants to be informed about the nature of accusations and confront them are recognized as absolute, and legal proceedings – such as the one we are engaged in now – are the very context where these sixth amendment rights

were intended to be exercised. To confront accusations by the government, defendants must have due process under law, which includes access to discovery. By restricting a Pro Se defendant's fifth and fourteenth amendment rights to due process of discovery, the government is effectually punishing defendants who choose to represent themselves, which denies the fourteenth amendment right of Pro Se defendants to have equal protection under the law.

The government has circumvented my Pro Se rights by creating two, unequal systems of discovery access. One is a system of full access to discovery granted to representative counsel in their capacity as officers of the court on behalf of January 6 defendants. The other is a system of restricted discovery access forced upon Pro Se defendants, who having exercised their right to represent themselves are recognized as the officers of the court in their own cases.

Here in Topeka, five blocks from my house, is St. Mark's A.M.E. Church – a physically modest limestone and brick building where a railroad welder named Oliver Brown once preached. A couple blocks beyond St. Mark's is the weathered McKinley Elementary School, which was once segregated and now is boarded up.

Seventy years ago, American society separated everything from rail cars to elementary schools on the basis of race. Here in Topeka, Oliver Brown's daughter had to travel across town to a segregated school because she was prohibited from attending the all-white public school in their own neighborhood. Those in government who created and maintained this policy of segregation attempted to justify it based on a wronghearted interpretation of the fourteenth amendment – Plessy v. Ferguson 163 U.S. 537 (1896) – that rail lines could enforce separation of black passengers and white passengers as long as the physical condition of those separate rail cars was equal.

Fortunately, Mr. Brown and others challenged our Topeka Public Schools in court, which led to the U.S. Supreme Court overturning the Plessy doctrine of separate but equal. On the 50th anniversary of the Oliver Brown v. Topeka Board of Education ruling, the week I graduated from

Topeka Public Schools, I attended the dedication of Brown v. Board of Education National Historic Site here in Topeka. That day at Monroe Elementary School, Justice Breyer told us in the crowd that, "before May 17, 1954, the words 'Equal Justice Under Law' chiseled in stone above the Supreme Court's door rang with irony; after May 17, 1954, those words began to mean what they say." Having known many Topekans who attended segregated all-black schools, and having worked for the government at Brown v. Board of Education National Historic Site on loan from the historic all black pioneer town of Nicodemus, the principles that SEPARATE IS NOT EQUAL and that America is a nation of EQUAL PROTECTION UNDER LAW are deeply etched into my sense of justice.

Yet from time to time, injustices still occur in American society (and at times injustices are still perpetrated by our own government) and petitions must be brought before the court appealing that long held constitutional standards like EQUAL PROTECTION and SEPARATE IS NOT EQUAL be reaffirmed in a new context.

So it is, I find myself in a position where the government now forces me, as a Pro Se defendant, into a separate system for discovery from that which other officers of the court have access to. And not only do Pro Se defendants have separate discovery access from other officers of the court, but their access is not equal.

By the government segregating Pro Se officers of the court into a separate, unequal system of discovery access from other officers of the court, the government is also putting those Pro Se defendants into a separate rail car from all other January 6 defendants. As the one representing myself in court, I am the only one who can manage and make decisions in my case, and I am the only one who can confront witnesses with evidence from discovery. The government conditionalizing my sixth amendment rights denies me my fifth and fourteenth amendment rights

to due process and prevents me as a Pro Se defendant from having the same protections of law as the January 6 defendants who have opted for representative counsel.

Citizens who exercise their right to self-represent should not, by doing so, be forced to relinquish other rights, including the right to explore and examine evidence as they investigate their own case. Yet the government's position on discovery access requires defendants to choose one right and forfeit others. This motion argues that defendants have both the right to self-represent and the due process right to discovery. Withholding discovery access from Pro Se defendants denies them due process and violates the equal protection clause of the fourteenth amendment.

The government's arbitrary construct of separate systems and disparate access to discovery has great personal consequences to me because it occurs in a context where the government has levied criminal accusations against me and seeks to deprive me of my liberty. Though the government's representative, Mr. Crawford, has correctly stated in a recent call that my conduct on January 6 was "entirely peaceful," and though I am rightly presumed innocent by the laws of our country, I still am in a position where I must go through the process of defending myself in court against all charges levied against me. To do that I need full and equal access to discovery.

## **BACKGROUND**

On May 5, 2021, this Court entered a Protective Order for Government Discovery in this case (Exhibit 1: Protective Order).  This order dictated that I, the defendant, would not be able to view highly sensitive government videos and discovery unless accompanied by State interposed counsel and that I, the defendant, could not keep or retain copies of any documents that were subject to this restriction. (See Figure 1, emphasis added).



*Figure 1: Excerpt from the current protective order.*

At the time I signed the protective order, I was represented by Mr. Terry Eaton. Thereafter, Mr. Eaton only shared USCP video with me on one occasion and for only a few short minutes, which meant I was almost entirely in the dark as to the scope and nature of discovery in my case.

After Mr. Eaton closed his practice, Mr. English was appointed by the court to be my counsel. Mr. English began practicing law before I was born, and his practice predated the use of computers, so he never developed the technical proficiency needed to handle the digital discovery in my case. As I noted in my previous letter to the court, Mr. English never gained access to the government databases while he represented me, so in the year and a half since my arrest I had not seen most of my discovery.

Because of my direct knowledge of events, I know the details of my case better that anyone and I made the decision to represent myself. The court granted me Pro Se status and then appointed Mrs. Cubbage to be my standby counsel on August 8, 2022. While a standby counsel can advise and assist in some ways, they cannot manage a Pro Se defendant's case or direct their defense. And

a standby counsel should not become a barrier, filter, or undue burden to a Pro Se defendant examining the evidence. In the case of McKaskie v. Wiggins U.S. 165, 174 (1984), the court ruled "the pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial."

While the current protective order was designed for what has become the more common attorney-client relationship, it severely restricts the ability of Pro Se defendants to examine discovery and make informed decisions in the organization and content of their own defense. Exercising my constitutional right to represent myself as the officer of the court in my own case necessitates that I have full access to discovery. Without such access, the right to represent oneself is effectively a hollow right. The government's opposition to granting me full discovery access denies me due process and creates an undue burden limiting my ability to adequately confront witnesses and accusations.

I have attempted to dialogue with the government on these matters so they might be resolved outside of court. During a September 23, 2022, call with Mr. Crawford (the current government representative in this case), Mr. Crawford did state that my conduct on January 6 was "entirely peaceful" and that I did not destroy or steal anything. However, Mr. Crawford affirmed that the government intends to oppose Pro Se defendants gaining full access to discovery unless they are compelled by order to honor my constitutional rights. Since the matter could not be resolved through dialogue, I am bringing this motion to the court to modify the protective order and compel the due process of discovery access.

## TWO STANDARDS of DISCOVERY ACCESS

The government's position on access to discovery creates two separate, unequal standards for officers of the court in the January 6 cases.

Representative defense counsel are granted full access to the discovery databases and may use features of those systems to organize a defense. They may also download discovery files and use those downloaded files to create work product and exhibits to aid in their defense.

In contrast, Pro Se defendants – who are the officers of the court in their cases – have only limited access to one of the two discovery databases used by the government, have no direct access to the other database, and have no access to features of those systems that allow pieces of evidence to be organized for a defense. These features include the ability to track evidence that has been examined, the ability to tag evidence deemed important for defense, the ability to create witness files, the ability to create work product, and to save specific searches and narrow searches to find relevant materials.

Pro Se defendants are also prevented from downloading files directly, and from possessing files which the government arbitrarily classifies as highly sensitive. These access restrictions prevent Pro Se defendants from preparing work product and court exhibits. Such exhibits might demonstrate how events unfolded frame by frame, or compare multiple vantage points in a split screen, or enlarge materials to make key evidence more visible to a jury. These exhibits are needed for confronting witnesses, but this access disparity allows the government (which has full access to all discovery) to have an unfair advantage against Pro Se defendants when contesting these charges in court.

So, while the government (in this context of discovery access for Pro Se defendants) upholds the 'separate' of what I had thought was a defunct Plessy ruling, they at the same time ignore the 'equal' requirement from Plessy. My position is parallel to the Supreme Court's decision in Oliver Brown's case, that access should not be separate and must be equal.

I would not have to raise this fourteenth amendment questions of equal protection, were the government not also placing conditions on the absolute right of citizens to represent themselves; conditions that deny me the due process of examining evidence which is recognized in our fifth and fourteenth amendments.

## THE COMPARTMENTALIZATION of JANURY 6 DISCOVERY

To understand the dynamics of discovery access in January 6 cases and the arguments raised in this motion, it is important for the court to understand how the government creates two separate, unequal systems of access by compartmentalizing discovery for the January 6 cases.

### Case Specific and Global Discovery

For each January 6 defendant, the government chooses what will be considered case specific discovery. This case specific discovery is what the government says is directly relevant to a defendant's case. Beyond that, there are more than 3 million files of various types that are included in global discovery. The global discovery is intended to provide defendants access to the broader context of January 6, however I have found there are also many items in the global discovery that are specifically relevant to individual defendants such as myself.

Unfortunately, the government has not identified to defendants all of the items in the global discovery productions that are specifically relevant to their individual cases, and the government has left those items out of defendant's case-specific discovery. For instance, there are USCP cameras in the evidence.com index which the government has failed to point out as being relevant to my case. There are also exculpatory materials in the Relativity Index (which the government

prevents me from accessing) that I have only discovered after their public release as exhibits in other cases.

The government's omissions from case-specific discovery will force me as a Pro Se defendant to search through more than 3 million files to find what is specifically relevant to my case. However, I cannot even conduct full searches because I do not have access to all the discovery productions. By not identifying all directly relevant discovery the government is able to hide exculpatory evidence like needles in a haystack. The government argues that they are technically providing all exculpatory materials and fulfilling their Brady obligations, but one must search the haystack to find those materials. And Pro Se defendants are prohibited from sorting through the haystack.

Already, my standby counsel has shown me video files in the global discovery that are relevant to my case and exculpatory to me as a defendant. These files were not listed by the government in my case specific discovery.

I have also found exhibits that have been made public from other January 6 cases that contain information relevant to my own case, yet these have not been listed in my case specific discovery. If I had not stumbled across these materials on the internet, I may have never found them. This is because the protective order and the government's current policy prohibiting defendants access to the Relativity index severely restricts my ability to find and examine relevant evidence in global discovery productions.

**The Sensitivity Classifications of Discovery**

Beyond the case and global compartmentalization, the government has also put in place a classification system for discovery. For instance, the U.S Capitol security footage is classified as either sensitive or highly sensitive. These classifications do not limit access for representative counsel, but under the conditions set forth in the current protective order these classifications do restrict the access of defendants, including Pro Se defendants to examine evidence. Those restrictions create an undue burden and adversely impact my ability to prepare a defense.

Beyond the sensitive and highly sensitive designations, there are also some items in discovery that have no sensitivity designation, and some items which the government does not provide access to at all. For instance, the government has established six categories of excluded security footage (See Exhibit 3 below from Global Discovery Production No. 12, March 4, 2022). Some of those categories, such as X-Ray machine image feeds or security footage of daycare centers in the Capitol complex, may not be relevant to any case.

> **B.  Disclosure about USCP CCV**
> The USCP captured footage from all Capitol interior, all Capitol Visitor Center ("CVC") interior, and all exterior CCV cameras that were in place on January 6, 2021.  We have produced all such footage to the defense instance of evidence.com except footage depicting:
>
> 1. Critical infrastructure, e.g., communication and security closets, fire doors in the basement levels of the CVC, loading docks.
> 2. X-Ray machine image feed.
> 3. Intel and Sensitive Compartmented Information Facility ("SCIF") office lobbies.
> 4. Tunnels and subways.
> 5. Evacuation routes and shelter-in-place locations utilized by, *inter alia*, members of Congress, their staff, and the Vice President, on January 6, 2021.
> 6. Daycare centers and the Senate page dormitory (i.e., exterior footage that provides views of the entrances to these facilities and daycare playgrounds).

*Figure 2: The excluded categories of USCP video not provided to defendants. From Global Discovery Production No. 12, section B*

Other categories, such as security footage showing movements of the Vice President and members of Congress, may be relevant because the government has used some of that footage as exhibits in other January 6 trials. Currently the government is able to pick and choose what they will use from those excluded categories, while defense teams are left without a full understanding of what the excluded categories contain. This creates a situation where Pro Se defendants and even representative counsel must defend against the government's hand-picked clips from excluded categories that may be lacking important context. This also denies defendants the ability to confront adversarial witnesses with contextual evidence from the excluded categories.

There is also the question of whether the government has withheld any other video or relevant materials. I asked Mr. Crawford if there is any security footage that does not fall into their six excluded categories that also has not been produced in global discovery. In his email response, Mr. Crawford performed considerable rhetorical dancing but did not directly answer the question with a yes or no. He may be restricted by his superiors on what he is allowed to say, but in the absence of an absolute denial, I must assume it possible that the government is withholding additional relevant video from both representative counsel and Pro Se defendants.

**The Storage Indexes Used for Discovery**

Discovery is also compartmentalized by the index systems the government uses to store and transmit discovery to defense teams.  There are two main databases the government uses to provide access to January 6 discovery: evidence.com and the Relativity index. Both index systems host material that is designated by the government as sensitive and highly sensitive.

The evidence.com index holds footage from US Capitol Police, US Secret Service, and Metropolitan Police Department security cameras. Evidence.com also hosts body worn camera footage from various responding agencies. Representative counsel have full access to the evidence.com index, and may download files directly to use in the creation of work product to prepare for defense of clients.

Pro Se defendants initially have no access to the discovery hosted on evidence.com. In my case I have had to request access to cameras individually. My standby counsel then goes through a tedious process of individually granting me access to each camera I request. Once she shares the camera with me, I have only viewing access. My account is prevented from downloading any discovery directly regardless of whether the camera is designated sensitive (which the protective order allows me to possess) or highly sensitive (which the protective order currently prohibits me from possessing pending the outcome of this motion).

Even though my standby counsel has invested considerable time into granting me viewing access for files I request, I still have no access to most of the discovery hosted on evidence.com, and I have no direct access to the more than 3 million files in the Relativity Index. This means I have access to far less than 1% of the total January 6 discovery.

And with the voluminous amount of discovery, it is easy to lose track of what is relevant to my case as there is no way for me to organize or download relevant videos once viewed. This creates an additional obstacle for me as I attempt to manage the large amount of data in my case.

And while the government has provided spreadsheets containing the names of files hosted on evidence.com (which allows me to specifically request individual files), they have not provided me spreadsheets of all the files hosted in Relativity. What the government does provide are broad generalizations of the types of files in Relativity. But, as my standby counsel has shown me, the only way to know what files are in those categories is to have direct access to the system (see attachment 1, which shows the generalized categories of global productions made to date).

Even having a spreadsheet of file names for evidence.com has limited usefulness. Many of the camera names and codes are not intuitive, and the files are often listed with different timestamps, even for the same camera. For instance, a video file showing a scene from 2:20 p.m. EST might be displayed as 1920, while the next file from the same camera uses 1440 for 2:40 p.m. EST. The only way to figure out which cameras and timestamps are needed is to have direct access.

Some of the video files are also corrupted, and the government's spreadsheet which tells which videos are corrupted has been classified as highly sensitive. Because this spreadsheet is classified as highly sensitive, I am prevented by the current protective order from possessing it and am unable to use it as a reference unless my standby counsel shows it to me in a video conference. This is yet another undue burden for Pro Se defendants.

It is also difficult to use the list of video files without knowing where those cameras are. The government has produced maps of those camera locations that were intended to simplify the research process for defense counsel. However, the government has classified those maps as highly sensitive, so I, as a Pro Se defendant am prohibited by the current protective order from possessing those maps (the same tools that other representative officers of the court have access to). This prohibition increases the likelihood that I will miss finding crucial video evidence when preparing my defense.

The government even stated in a recent filing in another January 6 case that the camera maps are needed to find and understand the 30,000+ files in evidence.com:

> *". . .  the video files, which were provided to the defense via evidence.com. amount to over nine terabytes of information and would take 102 days to view.  To find relevant footage from the Capitol Police's surveillance system and adequately prepare for trial, one would need to use the maps which display the locations of the interior and exterior cameras.  The government therefore provided the defense with maps that display these locations.  The government provided fifteen camera maps of the interior of the Capitol Visitor's Center and the interior of the Capitol, and one camera map of the Capitol grounds.  The maps depict the general location of the cameras that are identified by unique number in each USCP CCV video filename." (ECF 87, 1:21-cr-00177-CRC, Filed July 5, 2022).*

So, while the government publicly acknowledges that the maps are necessary to "adequately prepare for trial," they are preventing Pro Se defendants from using those maps, which prevents us from adequately preparing for trial. This means the government is making access to discovery most difficult for those who are newest to the justice system. Currently, the only way for me to reference these maps is to constantly pester my standby counsel to show them to me in video conferences. Doing so is not only time intensive and disruptive to her work in other cases, but also creates an undue burden for me as I prepare my own defense.

Since I do not have the maps which the government acknowledges are needed for constant reference, my best option is to guess from the spreadsheet at which files might be useful to my case, and then send a list of file numbers for my standby counsel to share with me.

This approach has odds of success similar to shooting in the dark and praying to hit the target. Many of the files I request end up being completely irrelevant to my case, which wastes my time and the time of my standby counsel. And even though I have spent considerable time searching through videos my standby counsel has shared with me on evidence.com, there are still several large gaps in the timeline I am creating of the events of my case.

The second database the government uses to store January 6 discovery is the Relativity Index. This database includes most of the more than 3 million files in global discovery. Representative counsel have been given full access to Relativity, but the government has been insistent that defendants – including Pro Se defendants – be prevented from directly accessing Relativity.

Relativity, like evidence.com, uses the sensitive and highly sensitive designations applied by the government. Yet while I am granted limited access on evidence.com, I have no access to Relativity. This creates a system where the government can hide evidence from Pro Se defendants by placing it in one index (Relativity) rather than the other (evidence.com).

The only way I can currently view any of the files in Relativity is by video conferencing with my State interposed standby counsel who is busy working on other cases. So, not only am I challenged to find needles amongst 3 million pieces of hay, but I have to do so in the very limited time my standby counsel has for showing me the Relativity haystack.

So far, my standby counsel Mrs. Cubbage has shown me the Relativity Index on one brief occasion. At that time, she pointed out to me that Relativity includes tools that help attorneys organize evidence in their cases as they prepare a defense. For instance, these tools enable users to conduct and save searches, create work product, and create witness files.

Since the government is preventing me from accessing Relativity directly, they are also preventing me from having the same tools that officers of the court in other January 6 cases have access to. This puts me at an even greater disadvantage in organizing evidence and preparing my defense. Greater access to discovery materials is also needed to identify additional witness credibility issues and new topics for investigation.

Mrs. Cubbage also briefly showed me some video files that are hosted on Relativity. Since those videos are not compressed like videos hosted on YouTube, they require more internet bandwidth for the images to get to my standby counsel's computer and then be transmitted over a video conferencing system (like Zoom) to where I can see it. This State interposed go-between method results in the video display lagging on my screen. Normally, video plays at 30 or even 60 frames per second, but when Mrs. Cubbage tries to transmit video from Relativity to me, I might see one frame every other second. This results in a very choppy playback that skips substantial chunks of visual information, and makes it impossible for me, as the officer of the court in my case, to examine the evidence fully and adequately. Mrs. Cubbage also lacks a computer capable of storing and working with all the large video files that will be needed in my case, which hinders her from downloading and sending me even the sensitive files (which I am allowed to possess) unless she first deletes other important files from her computer to create space.

The solution to these access and transmission issues is for me to have direct access to Relativity that is equal to other officers of the court in January 6 cases so I can view materials from the platform and download relevant materials to the computer I have built for working with video.

All of the above factors make preparing for trial unduly burdensome for Pro Se defendants and are materially disadvantaging my ability to mount a defense.

## THE GOVERNMENT DECLINES to IDENTIFY REQUESTED BRADY MATERIALS

On August 26, 2022, I emailed Mr. Crawford, the government's representative, requesting the government identify several individuals who appeared to be filming in locations and times the government has alleged me to be. I also requested the government turn over any video, audio, or photos those individuals recorded. My email included video screenshots of the individuals requested, as well as the location where those individuals were sighted.

Initially, Mr. Crawford declined to identify any of those individuals and claimed that I had not demonstrated that they, or any media they captured, were material to my case. I reminded Mr. Crawford that since the government has provided discovery to me alleging me to be in those locations at those times, it was likely that those individuals captured evidence that was exculpatory to my case. I then asked Mr. Crawford to file a motion to dismiss if he was not alleging me to be in those locations at those times. A few days later Mr. Crawford produced information on one of the dozens of individuals I had requested, a Mr. David Ticas.

The charging documents for David Antonio Ticas were filed with the court on September 9, 2021, so this man was not only known to the government, but he was arrested nearly a year before I requested his identity from the government. Yet, the relevant video evidence Mr. Ticas collected has not been produced in my case specific discovery.

In his September 1, 2022 email identifying Mr. Ticas, Mr. Crawford said he believed the scoped contents of Mr. Ticas' phone were added to Relativity on March 28, 2022. However, I have asked Mrs. Cubbage to search for media captured by Mr. Ticas in Relativity, and as of October 30, 2022, she was only able to find two files in Mr. Ticas' Relativity folder. Neither of those files were the video I requested from Mr. Crawford.

On October 28, 2022 I was surprised to see that an NBC journalist had tweeted out the 'highly sensitive' video from Mr. Ticas' cell phone that I had requested from Mr. Crawford. I have been told by Mrs. Cubbage this file is not available in Relativity, but now this file has been publicly released to the entire world as an exhibit in Mr. Ticas' case. When can I expect the government to add it to my case specific discovery?

Unfortunately, the government's failure to produce the Brady material from Mr. Ticas phone is not the only example. Recently, exhibits released following the Ochs/DiCarlo sentencing have become public, and as with Mr. Ticas' video, I discovered those 'highly sensitive' Brady materials on Twitter. Yes, the government has unsuccessfully tried to troll my Twitter use in their last humorless filing, but how can they expect me to stay off Twitter when the platform provides me important Brady materials the government fails to produce?

Defendants should not have to rely on the public release of court exhibits as a means of obtaining exculpatory materials for their own defense. Providing such discovery is the Brady obligation of the government and is in the interest of justice (which is presumably still their core mission). Unfortunately, my experience has been that the Department of Justice has obstructed my access to search discovery while also failing to provide the Brady materials I directly request.

## THE PROTECTIVE ORDER PLACES an UNDUE BURDEN on PRO SE DEFENDANTS

The current protective order makes it more difficult for Pro Se defendants to examine evidence, makes it more likely that they will miss finding exculpatory evidence, and makes it more time consuming for Pro Se defendants to prepare their defense.

When Oliver Brown became the lead plaintiff in the suit brought against the Topeka Board of Education, his daughter was prevented from attending a nearby all-white school and instead had to travel across town to the Monroe Elementary School. In addition to denying his children equal protection, this additional travel was an undue burden.

Pro Se defendants are forced to work harder and jump through more time-consuming hoops to view and obtain discovery through the system the government has forced upon them. This is an undue burden shouldered by Pro Se defendants.

I am even prevented from taking screen shots from highly sensitive cameras for use in work product. So, even though the government has already publicly revealed clips from highly sensitive cameras that convey their approximate location, they still arbitrarily argue the position of these cameras is highly sensitive.

Since I cannot download video directly, I must request my standby counsel to send me sensitive video (the classification the protective order allows me to possess) through an online storage service such as Dropbox. This service is an additional cost to her and me. But before she can upload videos to Dropbox, she must download them to her own computer, which has limited storage capacity and is unable to handle the amount of video relevant to this case. It also takes considerable time for her to download the video, upload it to another service, and then for me to download it to my computer. These additional steps greatly increase the amount of time and effort required to prepare a defense.

The government wishes the court to interpose my standby counsel as a filter between me, the officer of the court in my own case, and the discovery. However, Faretta 422 U.S. 820 (1975) makes clear that counsel "shall be an aid to a willing defendant – not an organ of the State interposed between an unwilling defendant and his right to defend himself personally":

*The counsel provision supplements this design. It speaks of the "assistance" of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists.*

While I appreciate the work of Mrs. Cubbage, no standby counsel should be thrust as a barrier between a Pro Se defendant and their own discovery. I am "unwilling" to have such interposition to my discovery access, and the State interposing counsel in such a way is not only against my "considered wish" but also "violates the logic of the amendment."

The Supreme Court emphatically noted in Faretta 422 U.S. 821 (1975) that only the British Star Chamber "adopted a practice of forcing counsel on an unwilling defendant in a criminal proceeding," and that "for those reasons, and because it specialized in trying 'political' offenses, the Star Chamber has for centuries symbolized disregard of basic individual rights."

If our government now seeks to transform this honorable court into such a Star Chamber – that is they implore this court to inflict similar deprivations of rights on defendants wishing to represent themselves – then I, in my unwavering allegiance to the United States Constitution must petition this honorable court as an officer thereof to rebuff the government's subversive requests and compel them to honor the basic individual rights enshrined in our national charter.

## PRO SE DEFENDANTS NEED to CREATE WORK PRODUCT and EXHIBITS

The government blocking Pro Se defendants from directly accessing more than 3 million files of discovery in the Relativity Index, prevents Pro Se defendants from examining the evidence brought against them. When the government also blocks Pro Se defendants from possessing discovery classified by the government as highly sensitive, the government prevents defendants from creating work product and exhibits.

These restrictions certainly limit the extent to which defendants can examine the evidence but preventing Pro Se defendants from creating exhibits also severely restricts their ability to confront that evidence in court.

Creating work product also enables Pro Se defendants to examine the evidence in more depth. For instance, the large amount of video discovery in January 6 cases necessitates the creation of video timelines to understand how events unfolded. Syncing multiple video files together into work product allows the evidence to be examined and analyzed in ways that cannot be achieved by viewing each video file individually without context. Creating such work product also enables Pro Se defendant to create better exhibits for court.

As a Pro Se defendant, I need to be able to enlarge and slow down video to show jurors exactly what did and did not happen. I also need access to video so I can create split screen exhibits that show jurors multiple perspectives of specific moments in time.

As this court noted in our last hearing, the government routinely utilizes highly sensitive footage in their own compilation video exhibits. When Pro Se defendants are prohibited from created synchronized exhibits they are at a distinct disadvantage, because the government is bound by no such restrictions.

For instance, in other January 6 cases, such as the current Oath Keepers trial, the government has presented video exhibits that place video clips out of order and that are marked with the wrong timestamps. This practice can mislead a jury as to the sequence and nature of events, corrupt jury deliberations, and prevent defendants from receiving justice.

If I am to defend myself against similar misleading and prejudicial exhibits, I must be able to show the jury the correct sequence of events and with correct timestamps. To do that, I need access to all discovery, including what the government has labeled as highly sensitive, because synchronizing moments relevant to my case will require me to work directly with those files.

Exhibits are also needed to confront and impeach false witnesses. For instance, the government has provided me a summary of statements made by a Capitol Police officer who claimed that a man he believed was from Michigan attempted to grab his baton. Later that officer, when shown an image of me, alleged that I was the baton-grabbing culprit.

Not only is Michigan one of the few states I have never been to (though I do hope to visit Michigan's National Parks someday), and not only is this officer's original description of the supposed baton-grabber completely different than my own physical features, but the government's own footage shows this incident never occurred.

In our September 23, 2022 call, Mr. Crawford brought up this officer's statement as an example of an officer incorrectly recalling events. Mr. Crawford even noted that this accusation did not seem like something I would do since my conduct in life and on January 6 has been entirely peaceful.

However, Mr. Crawford is only detailed to this judicial district and my case temporarily and he expects to eventually be replaced by another government attorney. It is possible that a replacement prosecutor might try to bring this officer's provably false accusations against me in court. This Capitol Police officer may be a good man suffering a clouded memory, but if he were to testify against me, I would need to present video exhibits to confront that officer's recollection of events. This is only one example, but there are other witnesses I will need to confront with video evidence.

The government has even acknowledged that I will need to possess highly sensitive video for my defense. They have proposed allowing me to directly access a limited number of 'highly sensitive' videos only within the three months prior to a potential trial. This proposal disadvantages me because the government is already producing, reusing, and honing exhibits for January 6 cases that outline their preferred narrative of events.

The three months preceding a trial are also filled with many other tasks and obligations, which will limit the time I have available to prepare adequate video exhibits for my defense. Furthermore, the government preventing me from creating work product and exhibits now hinders me from developing a more advanced understanding of the case that will inform and inspire future motions that could discourage the government from taking this case to trial.

In preparing this motion, I have read the fifth and fourteenth amendments repeatedly and I have yet to find a time limit on a defendant's due process rights to discovery access. I have also not found an exception to the equal protection clause that restricts Pro Se officers of the court to a short period of direct discovery access, while representative officers of the court have no such limitations. And I have found no amendment that grants the U.S. Attorney for the District of Columbia the power to arbitrarily deny American citizens these rights.

Compilation videos and other video exhibits take time to develop and require direct access to original footage.  I am being denied the ability to create these exhibits by the current protective order and by the government's policies restricting access to Relativity and evidence.com. These factors will deprive me of the opportunity to confront my accusers on an equal footing in court.

## WITHOLDING ACCESS to DISCOVERY is not JUSTIFIED

The government has argued that January 6 defendants must not be given direct access to discovery due to the crimes the government has alleged them to have committed and due to what the government claims are national security concerns regarding the layout of the Capitol.

If the government's first argument was valid, no defendant in American history would be given due process access to discovery. But our Constitution grants due process because the very intent of our law is to allow the accused access to evidence so they might confront their accusers.

Furthermore, I have no criminal history, I have never used illegal drugs, I have been a productive member of society, I have fully complied with the conditions the court has set for pretrial release, and I have fully complied with the current protective order. I have a long track record of being trustworthy and our law rightfully presumes me innocent.

In the past, the federal government has entrusted me as an employee of the National Park Service to account for all fee revenue in Yellowstone National Park. In the Yellowstone finance office, there were times when we had half a million dollars in cash sitting on the table, and we made sure every penny of it was deposited into government accounts. In fact, I personally adopted the additional precaution of never taking my own wallet into the counting area so there would never be cash on my person were there an instance when a transaction could not be balanced. But everything balanced because we were trustworthy and very skilled in our service to America.

There are many other examples of my dependability. When working as an auditor for the state government of Kansas, I frequently handled sensitive files and I always safeguarded that information. I left that job three years ago when I began my Ph.D. program, but even now I do not discuss classified details of state agencies we audited.

As a graduate teaching assistant and adjunct professor, I was charged with safeguarding confidential student data, and I always did. In other jobs I have had to protect employee payroll information and medical records. In every instance, I have done so.

The government has also already granted that defendants may possess materials designated sensitive and be shown materials designated highly sensitive, and earlier this year the government began allowing defendants to view highly sensitive video directly from evidence.com without an attorney present.

If a defendant had ill intent, it would not be difficult for them to record highly sensitive video from their screen using a camera or some type of screen capturing software. But I have no such ill intent, which is why I am bringing this petition to the court. My sole motivation for wanting full access to discovery is to defend myself against accusations the government has brought against me, and I will do that the right way.

As for the government's claim that certain Capitol footage is highly sensitive due to national security concerns related to the layout of the building, the government has already publicly released video clips from many of these 'highly sensitive' cameras. For instance, cameras showing the Columbus Doors, the Rotunda, the Senate Wing Doors, the Crypt, the Senate Carriage Doors, and many other areas of the Capitol are designated highly sensitive, yet video from those cameras has been released to the public. I assume the government would concede that these releases of highly sensitive video have not jeopardized national security. The government has even sent me a

link to a highly sensitive video that is now public on the internet because they believe it is relevant to my own case.

Surely, I am not a national security threat for downloading a 'highly sensitive' video the government shared with the entire world! I am also not a national security threat for viewing these highly sensitive videos on evidence.com (as the government has allowed), and I will not be a national security threat if I possess these videos for the purpose of preparing my defense. If the government would rather hide these videos than honor my constitutional right to access discovery, they should motion to drop these charges. But as long as these accusations stand, I must not be denied my right to confront them with evidence.

Mr. Crawford has even stated (on a call witnessed by my standby counsel) that my conduct on January 6 was entirely peaceful, and that I damaged nothing and stole nothing. This testimony of my upright conduct by the government's own attorney further demonstrates that I am neither a threat to national security, nor a threat to misuse materials the court has placed under seal.


### **THE COURT has the AUTHORITY to MODIFY the PROTECTIVE ORDER**

The government has made their position on Pro Se access to discovery clear in their recent *Global Productions 1-20 Cover Letter* (See Exhibit 2). The State expects standby counsel to be interposed between Pro Se defendants and their discovery (Exhibit 2, section A.4.). They also refuse to grant any January 6 defendant access to Relativity due to the number of 'highly sensitive' needles they have hidden in that haystack (Exhibit 2, B.2.), and for those reasons they also refuse to grant Pro Se defendants access to Relativity (Exhibit 2, B.3.).

However, the government does allow for the possibility that Pro Se January 6 defendants might reach a "suitable compromise" with the assigned prosecutor. The government also concedes

the court may order the government to cease denying Pro Se defendants their fifth and fourteenth amendment rights to the due process of discovery access (Exhibit 2, B.3.).

I have made good faith attempts to dialogue with the government on this issue, but their position has proven to be inflexible. This has left me no option but to ask this honorable court to modify the protective order and to compel the government to grant me, as a Pro Se defendant, direct access to my discovery.

The D.C. Circuit has recognized the need for flexibility in considering protective orders. The Federal Rules of Criminal Procedure give district courts the discretion to enter protective orders (subject always to the Sixth Amendment's limitations), and "at any time the court may, for good cause . . . grant other appropriate relief." Fed.R.Crim.P. 16(d). The burden of showing "good cause" is on the party (the government) seeking the order. But it is a very high bar to deny a citizen his rights.

To modify the order is not to remove it. If the order is modified to grant me direct access, I will still be bound by the requirement to protect these discovery materials and keep them under seal. But if I do not have access, I do not have due process as a Pro Se defendant.

In our nation's history, thirty-eight Supreme Court justices had no law degree. Some never finished high school. The last without a degree, Stanley Forman Reed, joined the unanimous decision in Brown v. Board of Education of Topeka, which many consider the most significant in the history of the court. These justices and many past Pro Se defendants have demonstrated that the capacity to navigate the law is not dependent on university degrees, but individual devotion to constitutional principles and the pursuit of justice.

Self-representation in court is a long-held American tradition. As Faretta 422 U.S. 821 (1975) quotes from Warren's *A History of the American Bar* (1911), early Americans were highly skeptical of Lawyers because their experience had been that attorneys were "bent on the conviction of those who opposed the King's prerogatives, and twisting the law to secure convictions." That description might also fit many modern prosecutors, which is why our fifth, sixth, and fourteenth amendment rights must be exercised and protected from attempts to encroach upon them. This includes exercising and defending the right to represent oneself and defending the due process implications of exercising that right.

In 1954, the United States Supreme Court ruled that SEPARATE IS NOT EQUAL, and that a 35-year-old Topekan named Oliver Brown could send his children to an integrated school. I am not Oliver Brown, but I am an "entirely peaceful" Topekan arrested three days after my 35th birthday. I am now defending myself against charges which did not exist as law during the life of Oliver Brown, and I am in need of the same EQUAL PROTECTION that Oliver Brown found seventy years ago through our court system.

So, I ask whether the words I saw on January 6 – the words EQUAL JUSTICE UNDER LAW chiseled into the Supreme Court – still "mean what they say" as Justice Breyer attested to us at the Monroe Elementary School nearly two decades ago. Or has America returned to being a nation of separate and unequal systems for citizens the government wishes to contain or treat differently?

This current system imposed by the government forces Pro Se defendants to have unequal and inadequate access to discovery. I ask this honorable court to modify the protective order and compel the government to honor fifth, sixth, and fourteenth amendment rights, which will provide me full access to discovery – the evidence I need to vigorously confront my accusers in court.

WHEREFORE I, William Alexander Pope, respectfully requests that this motion be granted.

Respectfully Submitted,

By: William Pope

____/s/_____

William Pope
Pro Se Officer of the Court

Filed by Nicole Cubbage, Standby Counsel
DC Bar No. 999203
712 H. Street N.E., Unit 570
Washington, D.C.  20002
703-209-4546
cubbagelaw@gmail.com
Standby Attorney for William Pope

Certificate of Service

I certify that a copy of the forgoing was filed electronically for all parties of record on this 30th day of October, 2022.

_____/s/_____

William Alexander Pope, Pro Se