## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Case No.: 1:21-cr-00128-RC

v.

WILLIAM ALEXANDER POPE,

Defendant   .

## RESPONSE TO THE GOVERNMENT'S OPPOSITION TO MODIFY THE PROTECTIVE ODER AND COMPEL FULL ACCESS TO DISCOVERY

I, William Pope, a Pro Se officer of this honorable court, am respectfully submitting this response to the government's unjustified opposition to my Motion to Modify the Protective Order and Compel Discovery Access – a motion which seeks to preserve my constitutional rights, and in so doing preserve and protect the rights of all Americans.

In this response, I will answer arguments raised by the government. Essentially, the government contends that this court should supersede our Constitution and established Supreme Court precedent in favor of their own wishful thinking and their contortions of an assortment of lower court opinions. This response will also address false information presented by the government. Some of this misinformation I have already confronted in my original motion (ECF 67), however the government's opposition included some of their other self-inflicted wounds, so this response will briefly address those as well. This will include responding to their claim that undercover law enforcement was not urging crowds to advance on the capitol; their claim that I twice denied a proffer; and their claim that USCP footage from the morning of January 6 was not available to the DOJ and could not be made available in discovery.

The court should note that the government was unable to deny or address many of the reasoned arguments I provided in my motion regarding why the protective order should be modified and discovery access compelled. Those arguments still stand, and I have a page limit, so to avoid redundancy I will only reemphasize a few points where needed in this response.

The core issue before this court remains whether a Pro Se Officer of the Court may be denied their constitutional right to due process in the very context where that right was intended to be exercised. This issue should have been laid to rest by the U.S. Supreme Court's ruling in *Faretta v. California*, 422 U.S. 820 (1975) that counsel must not be "interposed between an unwilling defendant and his right to defend himself personally," and that the government may not "thrust counsel on the accused, against his considered wish."

Further, our Supreme Court made clear in *McKaskie v. Wiggins* U.S. 168, 174, 177 (1984) that "the pro se defendant must be allowed to control the organization and content of his own defense," and to "present his own case in his own way." It is not for the government to determine what "my own way" is, and it is not for the government to thrust counsel between me and my rights against my considered wish.

The government may wish to avoid, eliminate, or dampen my confrontation rights, but they are no longer in the laboratory bubble safe space known as a grand jury. The government's argument that a grand jury finding should preclude me from having due process rights is alarming because if accepted it would deny those rights to all other defendants present and future. Furthermore, our threshold of guilt in America is not 'probable cause' but 'beyond a reasonable doubt.' The government should have no doubt that as this process plays out, I will bring an intense confrontation that was absent in the presence of the grand jury.

This is because a grand jury only hears one side of the story, and often the government steers them away from facts that might be exculpatory to a defendant. The first two attorneys which were appointed to me by this court both independently relayed to me what they said was common knowledge in D.C. legal circles – that the Department of Justice could "indict a ham sandwich." One of those attorneys noted that when he worked for the DOJ, he could easily manipulate a grand jury to bring charges on whatever he wanted against whomever he wanted.

Unfortunately for the government, this case is no longer U.S. v. Ham Sandwich, this is now the United States v. William Pope.

However, by their opposition to my motion (ECF 67) it seems the government wishes they were still facing a ham sandwich. This is because the government wishes to deny me due process (the full and direct access to discovery) to prevent me from exercising my powers of confrontation in this court through the presentation of evidence favorable to my cause.

Ham sandwiches are meant for grand juries and funeral luncheons – this will not be my funeral, and I respectfully ask this honorable court not to allow the government to devolve these proceedings into a grand jury star court.

**The Weakness of the Government's Legal Foundation**

A Biblical parable once warned against building one's house on sand, however the government has done just that by constructing legal arguments upon their own wishful thinking and by contorting the opinions of lower courts.[1] The government has also relied heavily on the sandy soil of misinformation and the omission of facts. For instance, the government

---

[1] The government has also managed to avoid making legal arguments that rest on the solid rock foundation of our Constitution and the precedents established by our Supreme Court.

characterized me as seeking "unfettered and unsupervised access to the global discovery in Relativity and evidence.com." This is ridiculous because the government already allows me unsupervised access to evidence.com, and that access is fettered only by my respect for this court and my obedience to the protective order.[2]

My motion (ECF 67) makes clear that I fully intend to continue abiding by the protective order, but that the current terms of the protective order inhibit me from having due process access to the discovery that is needed to prepare my defense.

In an attempt to bolster their unconstitutional arguments, the government has offered several opinions from lower courts that do not directly pertain to the circumstances of my motion. The government has cited *United States v. Gomez-Rosario*, 418 F.3d 90, 102 (1st Cir. 2005), where the District Court appointed standby counsel to advise a Pro Se defendant on filings because that defendant had filed more than one hundred motions. However, that ruling found that the defendant was still permitted to file motions over the advice of the appointed standby counsel, and the defendant was unable to show the Circuit Court any motions he had been prevented from filing.

Contrast that to how I have conducted my defense. I have not swamped this court with frivolous filings. Furthermore, while Gomez-Rosario was not prevented from filing motions, I am being prevented from directly accessing my discovery. Furthermore, to my knowledge, the U.S. Supreme Court has not decided whether the ruling in *United States v. Gomez-Rosario*, 418 F.3d 90, 102 (1st Cir. 2005) is even compliant with *Faretta v. California*, 422 U.S. 806 (1975), or with *McKaskle v. Wiggins*, 465 U.S. 168 (1984), so it should not supersede those precedents.

---

[2] To borrow from the government's terminology, my "scouts honor" has been very honorable indeed.

Likewise, in *United States v. Williamson*, 20-cr-195-RBW, 2021 WL 5178853, at *2 (D.D.C. Nov. 8, 2021), which was presided over by Judge Walton of this District Court of D.C., the issue was a defendant filing hundreds of motions. I doubt I will ever come close to that number of filings in my Pro Se legal career, and this court can be assured that any motion I do file will have merit.[3]

The government has also referenced the case of *United States v. Williams Cos., Inc.*, 562 F.3d 387, 395 (D.C. Cir. 2009), in arguing that there must be a "balancing of interests." However, the Williams Cos. case centered on whether 'privileged' documents provided by a third part were even relevant to the case and should be included as Brady material in discovery. For the January 6 cases, the government has already determined that more than 3 million files should be produced to defense teams in the global discovery, but they are seeking to prohibit me specifically from accessing them (which is a denial of my constitutional rights). Meanwhile, representative counsel have full, direct access to the global discovery. I would also point out that a quotation from the Williams decision strongly supports my need for discovery access. Williams noted in Hickman v. Taylor, 329 U.S. 511, 67 S. Ct. 385 (1947) that:

> Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of

---

[3] As with United States v. Gomez-Rosario, 418 F.3d 90, 102 (1st Cir. 2005), the Williamson case does not pertain to restrictions on Pro Se discovery access, and the constitutionality of the Williamson ruling has not been determined by the Supreme Court.

our system of jurisprudence to promote justice and to protect their clients' interests.

In this instance, I am my own client. I represent myself. The "proper preparation" of my case likewise demands that I "assemble information" and "sift" what I consider to be "the relevant from the irrelevant facts." And I must do this "without undue and needless interference" as happens when a standby counsel is interposed between me and the discovery against my wishes. I cannot sift the facts if I do not have direct access to them, and I cannot assemble all relevant information while the protective order prohibits me from possessing it.

The government also argues that *United States v. Celis*, 608 F.3d 818, 829 (D.C. Cir. 2010) demonstrates the need for balancing by the court when protective orders are used. However, the details of the Celis case are drastically different than my own. Those defendants were accused of drug crimes. The protective order was put in place by the court because there were government informants involved, and those drug cartels had a history of killing people. In my case, the government has admitted I was "entirely peaceful" on January 6. I also have no history of violence, and no criminal record. Ultimately, the Court ruled in Celis that the defendants did have a right to know who their accusers were, but the defendants were prohibited by the court from divulging the identities of those individuals to anyone in Columbia. In my case I am arguing that I have a due process right to access the discovery, and that when given full, direct access I will still abide by the conditions of the protective order.

Attempting to raise security concerns, the government cites the examples of *United States v. Concord Mgmt. & Consulting LLC*, 404 F. Supp. 3d 67, 75 (D.D.C. 2019) and *United States v. Lindh*, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002) arguing that protective orders should balance national security issues with defendant rights. However, the Concord case involved what the

government alleges were Russian influence operators posing as U.S. citizens. The Lyndh case involved a man charged with aiding the terrorist organization al Qaeda. Contrast that with the facts of my case. I am not a Russian asset or a terrorist. I am a U.S. citizen with no criminal history that the government acknowledges was "entirely peaceful" on January 6. I remain, and have always been, fully loyal to the United States of America and our Constitution. The American flag still flies outside my house. Furthermore, the government is unable to show this court (as the court has clearly seen in the government's response to my motion) any evidence of me being a national security threat, so depriving me of constitutional rights on the basis of national security is not justified.

Ironically, since the government's position is that I was "entirely peaceful" on January 6, the only argument they can attempt as justification for denying me my Fifth and Sixth amendment rights is that I have been known to exercise my First Amendment rights on Twitter and elsewhere. But the government cannot deprive one right based on the exercise of another.

Unfortunately, that does not stop them from trying.

The government has attempted to bamboozle this court into believing that I have encouraged the sharing of sealed materials on social media. That is completely false. I have taken great pains to stay within the protective order and I have urged others to do the same. The only video I encourage others to share is that which is publicly available.

The government also argues that social media use should disqualify a Pro Se defendant from having access to discovery. This argument is an alarming assault by the government on the constitutional rights of all Americans. Indeed, the government is unable to point to a Supreme Court decision where the exercise of speech negates a defendant's right to due process. Instead,

the government leans the entire weight of their argument on a lower court decision that attempts to set an extreme precedent. *United States v. Johnson*, 191 F.Supp.3d 363, 373 (M.D. Pa. 2016). This honorable court is well aware that the ruling of Judge Brann in the Middle District of Pennsylvania holds no bearing over a judge in the District Court of D.C., and Judge Brann's opinion did not cite any legal precedent to justify denying rights on the basis of what should be a defendant's protected First Amendment activity.[4]

This honorable court has an opportunity now to bury and repudiate the government's Orwellian attempt to silence citizens. A defendant's First Amendment protected speech is never justification to deny other constitutional rights.

**The Faretta Ruling Prohibits the Forced Interposition of Counsel**

My motion also makes clear that the government should not be allowed to interpose counsel between me and access to the discovery, because *Faretta v. California*, 422 U.S. 820 (1975) prohibits the government from interference through the interposition of counsel against a defendants wishes.

During our initial hearing on my Pro Se status, we had a discussion in a breakout room where I objected to having any standby counsel appointed. The court also noted during those hearings that if the dispute over discovery access could not be resolved between the government and myself, it could be brought to the court and decided at a later time.[5] After making a good faith attempt to discuss the issue of access with the government, I found their position to be

---

[4] I would also point out that representative counsel for January 6 defendants are also prolific tweeters (For instance attorney William Shipley: https://twitter.com/shipwreckedcrew), yet the government has not moved to limit discovery access for representative counsel based on their Twitter activity. This disparity again demonstrates an appalling systematic bias within the Department of Justice against Pro Se Officers of the Court.
[5] Just because standby counsel was appointed to assist me with intermediary access until this court grants full, direct discovery access does not mean that I forfeited my right to seek or have full and direct access to discovery.

inflexible (as you have also seen in their written opposition) so I filed my motion to modify the protective order and to compel full, direct access to discovery.

The government, in their opposition, attempts to paint me as having changed positions on standby counsel. This is completely false. I opposed having standby counsel during the first status hearing after declaring my desire to self-represent, and when the court insisted that I have a standby who was experienced with legal procedure, I accepted on the condition that such counsel not interfere with my defense. But interposing a counsel between me and the discovery is a huge interference to my defense!

The government also presumes that my knowledge of their existing restrictive and unconstitutional position on discovery access should prevent me from now challenging their efforts to continue subverting our Fifth and Sixth Amendment rights. However, I knew when I became Pro Se that if the government continued to deny me my rights, I would have no choice but to challenge their position on discovery access. I have brought that challenge to this honorable court to defend myself and our Constitution against the erosion of those rights.

Though I have intermediary viewing access through a standby counsel, that access (as my motion demonstrates) is inadequate and flawed. My current pathway to discovery is essentially a long, unnecessary, and inconvenient detour that I am forced to take until the bridge which should have already been in place is completed by this court. The constitutional implications of being forced into this detour are that of the government tossing the Fifth and Sixth Amendment rights of citizens into a Vermeer woodchipper. For me, my liberty is also at stake.[6]

---

[6] And even if I were given an extremely long time to prepare, the government has also shown in other January 6 cases that they will produce relevant discovery at the last minute before (and even during) trials. In such a situation, I would be disadvantaged both by the government's delayed production of Brady materials, and by my inhibited access to examine them.

**I Need Full and Direct Access to Discovery to Conduct My Own Defense in My Own Way**

The government argues that having standby counsel interposed between me and the discovery is a "narrow purpose" that does not impact my ability to present my own case in my own way. This is not true, and it is not up to the government to determine what my own way is.[7]

I am a researcher in a doctoral program at Kansas State University. While I do not possess a law degree, I do have advanced research skills, which is a great asset in my defense. One of the most crucial parts of research is direct access to the primary research materials. Without full access to relevant materials a researcher is unable to assess the facts and properly manage the development of their methodology, arguments, and findings. Furthermore, the researcher is typically an expert in the scope and subject of their research.

I chose to manage my own defense, because I know the basic facts of my case better than any attorney ever will and because I believe I am better equipped to conduct the research and preparation needed to defend myself. To interpose counsel in between me and the case discovery prevents me from conducting my defense in my own way. This is because an intermediary is not an expert on the same scope of knowledge and will likely miss important details that I, as the primary researcher, would pick up on.

I do not know how attorneys typically approach the facts of a case, but I do know how a researcher approaches facts and develops arguments. The research approach is my "own way" of doing it. Preventing me from having direct and full access to the facts, prevents me from conducting my own case in my own way. *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984).

---

[7] Only a Pro Se officer of the court knows his case well enough to sift and assemble the evidence, so it is essential for them to have direct discovery access to quarry the correct materials.

**Balancing Interests Need Not Deprive Me of Constitutional Rights**

In arguing for the balancing of interests, the Government claims the court must deny my

civil rights to satisfy the government's national security concerns. However, as noted earlier, the

government has failed to offer any specifics for how I am a danger national security.

The government raised the case of *United States v. Victoria White*, 21-cr-563, which

involves a January 6 defendant who was previously Pro Se but has now elected to have Mrs.

Cubbage represent her in court. I should note that the arguments made by Mrs. White for

discovery access, greatly differ from those in my own motion (ECF 67), and because Mrs. White

now has representative counsel, she never pursued the opportunity to appeal Judge Bates' ruling.

My research abilities also differ from those of Mrs. White. While Judge Bates believed

the full discovery was "too complex" and "broad in scope" for Mrs. White, the same cannot be

said for me. I am a trained researcher accustomed to making sense of broad and complex

materials. The government cannot believably argue that the January 6 discovery is so broad and

complex that I need the assistance of a standby counsel, when I have a better mastery of the

research complexities than the standby counsel this court has appointed.

My motion and this response to the government also demonstrate my understanding of

factual complexities and my ability to point out government omissions and factual errors. Yet

filing my motion is also an acknowledgement that I cannot confront all of the government's

errant claims without full and direct access to discovery.

The remaining question raised by Judge Bates is whether the discovery is too "sensitive

in nature" for me to have direct access. I would argue that if it were too sensitive for me to have

direct access, why does the government allow me to have full viewing access? In this, the government's argument to deprive me of constitutional rights is self-defeating[8].

The government argues that allowing me to directly possess 'highly sensitive' January 6 footage is a threat because my "scouts honor" cannot be trusted. Again, their argument is self-defeating. For by allowing defendants to view 'highly sensitive' footage on evidence.com, the government is depending on the "scouts honor" of each defendant to not violate the protective order. With these facts in mind, any reasonable person would conclude that the government does not consider these videos sensitive enough to prohibit defendants from viewing them, and the government is already dependent on the "scouts honor" of each defendant to not break the protective order. The government is unjustifiably attacking my "scouts honor" specifically because they wish to deprive me of my full right to represent myself in my own way, and they wish to add undue burden to my defense preparations.

This court already possesses a great deterrence to protective order violations, as disobeying this court could lead to additional consequences for defendants. Likewise, this court already relies on the "scouts honor" of the media, the government, and anyone else calling into a hearing line to not record each hearing (as is prohibited). This system of public access is not an impenetrable fortress, but rather mutually depends on participants respecting this court and the court respecting and trusting citizens.

---

[8] As pointed out in my motion (ECF 67), a defendant with ill intent could easily record highly sensitive files directly from evidence.com – the fact that I do not do this demonstrates that I intend to comply with the court and keep these files protected. So, whether I view highly sensitive material on the government system (as I am doing now) or I am able to download highly sensitive video for use in work product and exhibits, I will still be abiding by the protective order. But the government's prohibition on direct access (downloading) places undue burden on Pro Se defendants and inhibits their ability to create work product and make other defense preparations.

In this we see that a balancing of interests already exists. Our lawmakers and courts have determined that it is more important for the public to have transparent access, than to completely eliminate risk from our courts by making them an impenetrable fortress. This access is balanced by the possibility that consequences will come to those who abuse the court's trust.

The protective order operates in the same way. It is not an impenetrable fortress, but a system of trust. I already have direct access to some of the sensitive files and viewing access to some of the 'highly sensitive' files. This court and the government entrusted me with that access, and I, have demonstrated myself worthy of that trust. The protective order balances any risk of dissemination with the consequences of violating the protective order. That balance will still exist when this court grants me full access to the discovery, which I need to prepare my defense.

The more restrictive "balancing of interests" the government seeks does nothing more than deprive me of my constitutional right to organize and conduct my defense in my own way. And their proposed 'denial of access/denial of rights' balancing ironically still relies on my "scouts honor." The government has not shown how I would act any differently once I possess highly sensitive materials than I do now. Therefore, the government's argument that a balance must be reached that takes away my Fifth and Sixth amendment rights is unfounded.[9]

**DeBiase's Biases**

The foundation the government has built their "national security threat" narrative upon is based on the political opinion of the attorney for the U.S. Capitol Police.

---

[9] Those who enacted our Constitution wisely codified individual rights and limitations on government because they feared abuses against citizens like those our government has requested of this court in their opposition to my motion.

The government contends that the declaration of Thomas DiBiase should deny this court the power to modify the protective order and grant me the full access that is needed to prepare my defense.[10] However, as this court knows, many judges in this district have already released USCP CCTV footage to the public, and this 'sensitive' and 'highly sensitive' video is now widely available to the entire internet. These releases are possible because Mr. DeBiase's affidavit is not legally binding on this court.

In fact, an exhibit attached to My. DeBiase's affidavit acknowledges that the Information Sharing Agreement between the USCP and FBI – two agencies representing two different branches of government – "does not apply to any video . . . that is to be used as evidence or discovery as part of any prosecution of any criminal offense" (See Figure 1 below).



*Figure 1: The Information Sharing Agreement between the USCP and FBI, allowing USCP CCTV video to be used as discovery.*

---

[10] The government would like this court to believe that two branches of government can collude through interagency agreements to deny U.S. citizens their constitutional rights. However, no such collusive denial of rights may circumvent the Constitution or the courts (which is why this motion and response is brought to this court).

The government in their response attempted to bolster their denial of rights argument by citing a paragraph from the Debiase affidavit that vaguely references unnamed defendants who allegedly attempted to find information about the interior of the Capitol prior to January 6. But the government knows that I did not search out such information prior to January 6, and the government cannot and has not presented evidence that I am a threat. The alleged actions of other individuals do not make me a threat to national security.

And while the government cites DeBiase's biased concerns about defendants having "unfettered access to hours of extremely sensitive information," the government knows that I am already permitted by the current protective order (and the government's own allowance) to independently view all sensitive and highly sensitive USCP video on evidence.com without counsel present. By this allowance, the government has already acknowledged that me viewing sensitive and highly sensitive video is not a significant national security concern.

I would further point out that not only does Debiase wield to broad a brush in painting January 6 defendants as national security threats, but he has also demonstrated a media-driven, politicized bias against them. This is evidenced by his used of the phrase "indicted or arrested insurrectionists" in section 13 of his affidavit. As this court knows, no January 6 defendant has been charged with insurrection. The terms 'insurrection' or 'insurrectionists' are used by deceitful persons to drive media frenzy and false narratives in political circles, but those terms have no legal or factual basis in the January 6 cases.

The government's arguments to this court that determinations of risk be based on biased political hyperbole rather than facts and statutes is yet another attempt by the government to transform this honorable court into a star chamber for the prosecution of political crimes. Such a star chamber is what the Faretta ruling sought to prevent in determining that defendants have a

right to represent themselves without counsel interposed by the government against their will. It is egregius that a USCP attorney like DeBiase would allow his own personal biases and political naratives to bleed into his sworn affidavit which is now being used as the government's foundational justification to deny Pro Se January 6 defendants their constitutional rights.

Before DeBiase signed his affidavit on March 17, 2021, he demonstrated a continued pattern of disqualifying bias against January 6 defendants in his Twitter activity[11].  This bias has continued surfacing in the months since. For instance, DeBiase has repeatedly liked tweets that refer to January 6 as an "insurrection" despite no insurrection charges being filed.

This biased activity by DeBiase includes liking tweets by NBC news personality Glen Kirschner (who was also DeBiase's former supervisor in the DOJ) that refer to January 6 as an insurrection. DeBiase has also liked an ABC News tweet that referred to January 6 as an insurrection. USCP Officer Harry Dunn's retweet of the Maryland Democratic Party which included the hashtag #January6thInsurrection was also liked by DeBiase. Some of the most alarming of DeBiase's biases are seen when DeBiase likes tweets that both refer to January 6 as an insurrection and celebrate defendants being convicted. And worse, DeBiase has even liked Tweets that celebrate family members reporting relatives (most of whom were peacefully present on January 6) to law enforcement after their Thanksgiving holiday.

While Mr. DeBiase may be an otherwise competent attorney, he has allowed his own media-driven, political bias to taint his testimony in a signed affidavit and our justice system allows for his capacity as a witness to be impeached. The Supreme Court in *United States v. Abel*, 469 US 50 - Supreme Court (1984) noted that "Our decision in Davis v. Alaska, 415 U. S.

---

[11] DeBiase's biases are evidenced by what DeBiase has liked on Twitter (https://twitter.com/TheNoBodyGuy/likes). I have included several examples of Mr. DeBiase's bias against January 6 defendants in Exhibit 1.

308 (1974), holds that the Confrontation Clause of the Sixth Amendment requires a defendant to have some opportunity to show bias on the part of a prosecution witness."[12]

I support freedom of thought and freedom of expression. However, in this Instance, Thomas DeBiase's biases have bled into his work. DiBiase may specialize in prosecuting murders without having first located the body, but he cannot haphazardly swear to the existence of "indicted and arrested insurrectionists" when no insurrection arrests or indictments exist to substantiate his biased fantasies.

Normally impeachments for bias takes place in a trial, however, since the government is using DeBiase's biased sworn testimony to argue that I should be denied the constitutional rights needed to prepare my defense, I must impeach DeBiase's biases now. This court should not accept the government's argument that all those present on January 6 are threats to national security based merely on the foundation of Mr. Debiase's personal media-driven, political views.

**The Government's 'Cart Before the Horse' Proffer**

The topic of a reverse proffer falls outside the scope of my motion (ECF 67), but since the government raised it in their response, I need to set the facts straight for the court. I have never rejected a reverse proffer. My position has always been that I need full access to my discovery before the possibility of a proffer can even be considered. I am seeking that full access to discovery in this motion. It is inappropriate for the government to push for a proffer when I have seen far less than 1% of the total discovery.

---

[12] "Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest." United States v. Abel, 469 US 52 - Supreme Court (1984).

Furthermore, in our September call, Mr. Crawford again requested a reverse proffer but noted the government did not at that time have a plea offer on the table. It is my understanding that the purpose of a reverse proffer is for the government to try to convince me to take a plea so they can escape the great risk they face of me confronting them with facts in court. In my view, the government requesting a reverse proffer before I have full access to discovery and before they have even presented the framework of a possible offer is putting the cart before the horse. If it is the government's objective to do a reverse proffer sooner rather than later, they should not object to me receiving full access to discovery, because their objections slow everything down!



*Illustration 1: For those working for the Department of Justice in Washington D.C. who may be more distanced from livestock than those of us in Kansas, carts go behind the horse. The horse-first order is what wagon drivers consider due process.*

Yes, in other January 6 cases, Kansans have already received offers from the government. Ryan Ashlock from Johnson County faced more severe charges than I do, and the government quickly presented him with a misdemeanor plea deal. In addition to being accused of obstruction and civil disorder (as the government has also charged me), Mr. Ashlock was also facing conspiracy and weapons charges. All of these felonies have now been dropped. Yet despite the

government acknowledging that I was "entirely peaceful" on January 6, and despite my charges being less severe than Mr. Ashlock's, no offer like the one received by Mr. Ashlock has been presented to me by the government. With no such framework in place, and with me not yet having full access to discovery, the court should know that there is absolutely no reason to do a reverse proffer at this time. The cart goes behind the horse!

**Equal Treatment vs. Special Treatment**

The government made their silliest argument in claiming that I am receiving special treatment because Pro Se defendants are the only officers of this court who are prohibited from having full and direct access to the January 6 discovery. This also means that we are the only defendants whose officers of the court are deprived of access. Was Linda Brown receiving special treatment because white children did not have access to the Monroe Elementary School? Silly argument indeed!

The government has attempted to justify disparate access based on the ruling in *United States v. Ruiz*, 536 U.S. 622, 629, (2002), however that case involved a defendant taking a plea prior to receiving discovery, not a defendant wishing to confront their accusers in court. And as previously noted, the government has no plea offer on the table, so there is no façade for them to hide behind.

My motion has already argued against the government's Plessy logic. I will not add to this court's reading by repeating those arguments here.

**Setting the Record Straight**

The government claims they have provided more discovery than I am entitled to under Brady and Jenks, but as shown in my motion, the government is not trustworthy in this matter

since they have also claimed that certain Brady materials were provided in Relativity, but those materials which are highly relevant to my defense do not exist in Relativity. Had those 'highly sensitive' materials not been released to the entire internet as court exhibits in another case, I may have never seen them.

There may very well be some materials on evidence.com and Relativity that are not relevant to my own case, but it is not up to the government to decide what I believe is relevant or how I will use it in my own case. It is up to me, in representing myself, to sift through and assemble the pieces of evidence that I deem useful to arguing my own case in my own way.

This court can rest assured that I will not tire of repeating that Mr. Crawford noted on our September call that I was "entirely peaceful" on January 6. Also, I will point out that any materials that confirm Mr. Crawford's assessment of my "entirely peaceful" conduct are favorable to my defense and should be produced by the government as Brady material (even if some of those videos are only two seconds long). Since Mr. Crawford has assessed that the entirety of my conduct was peaceful, all video of me on January 6 is Brady material.

The government feigns ignorance in stating they are not clear on how the protective order prevents me from creating work product. I believe this court will find the full section of my motion (ECF 67, p. 22-25) that pertains to the need to create work product to be an informative justification for why full and direct access to discovery is essential for me as a Pro Se defendant.

This court should also note that while Mr. Crawford claims that footage does not exist from certain times and places, unfortunately, I have to remain skeptical of all claims made by representatives of the government.[13] After asking Mr. Crawford whether CCTV footage from

---

[13] The government still has not corrected their false statements from my charging documents.

East side of the Capitol on the morning of January 6 was available. Mr. Crawford emailed me

(on August 31, 2022) that only CCTV footage from noon to 8 p.m. had been provided to the DOJ

by the USCP. However, Global Production No. 21 noted that "86 files consisting of

approximately 25 hours of Closed Circuit Television ("CCTV") footage from the exterior of the

Capitol Building" were shared through evidence.com on October 19, 2022.[14]

While those files may have been shared with defense on October 19, evidence.com shows

most of them were uploaded to the platform on August 26, 2022 – days before Mr. Crawford told

me that the DOJ only possessed CCTV footage from noon to 8 p.m.[15]

I do not want to insinuate that Mr. Crawford is being purposefully deceitful. It is entirely

possible that Mr. Crawford is simply unaware of what footage the government possesses or that

his colleagues are giving him bad information. However, since Mr. Crawford has repeatedly

provided inaccurate answers, it is difficult to rely on him as a source of quality information.

To cite another example, Mr. Crawford has claimed that no government provocateurs

were inciting crowds at the Capitol on January 6, but that is not true On October 27, 2022, I

asked Mr. Crawford the following question:

> Is the official Department of Justice position that no government employees,
>
> informants, or other persons working on behalf of any government agency were
>
> encouraging people on January 6 to move towards or into the capitol, or to do

---

[14] Most of those files were from CCTV cameras on the east side of the Capitol and included footage of individuals who played a significant role in the development of events on the East Side of the building (which affects the presentation of my defense).

[15] And Global Production No. 21 was released before Mr. Crawford submitted his opposition to my motion (ECF 67). Mr. Crawford sent me the Global Production No. 21 letter on November 8, yet on page 12 of his opposition to my motion, Mr. Crawford still claims the government does not have footage from the morning of January 6 (although he now begins his eight-hour period at 11 a.m.).

things that the government has charged as crimes in January 6 cases?  (My

October 27, 2022 email to Mr. Crawford)

Mr. Crawford responded with the following:

We are not aware of individuals encouraging people on January 6 to move

towards or into the Capitol, or to do things that have been charged as crimes who

were doing so on behalf of any U.S. local, state, or federal government agency or

organization. (November 11, 2022 email from Mr. Crawford)

This is yet another example where Mr. Crawford has provided incorrect information

either intentionally, or due to lack of awareness. I have included as an exhibit a video file that

compiles clips taken from 59 minutes of footage recorded by an undercover Metropolitan Police

officer at the Capitol on January 6. The original source files are noted in the upper left corner of

this video compilation and can be provided if the court wishes to examine the entire sequence[16].

This footage shows an undercover MPD officer joining in crowd chants and urging others to

advance up the west steps and scaffolding towards the Capitol. This is exactly the type of

behavior Mr. Crawford, on behalf of the Department of Justice, has told me "We are not aware

---

[16] This footage is designated 'sensitive' by the government, which allows me to possess it and make exhibits from it. However, the video can only be obtained through Relativity, which I do not have access to. On the one occasion that my standby counsel has shown me Relativity, we reviewed a handful of videos to test how it would work for me viewing discovery through the intermediary means of video conferencing software (Zoom) transmitted from my standby counsel's laptop screen. As noted in my motion (ECF 67), I was unable to adequately examine the video evidence hosted on Relativity using this method because the video lagged when retransmitted over Zoom. I was only able to view one frame every one or two seconds. Because of that, I asked my standby counsel to download this series of videos and upload them to online storage (Dropbox) so that I would be able to download them to my own computer for examination (which I am allowed to do with 'sensitive' files under the current protective order). This transfer process took my standby counsel over a day to complete due to the large file sizes and due to the upload speed of my standby counsel's internet connection. To put this problem into perspective, these are only five of the more than 3.6 million files in the January 6 discovery on Relativity. Even if my standby counsel were able to transfer 1000 files per day and could devote all of her time to helping me (rather than her other clients), it would still take her ten years to send me everything (if she did not take weekends off). It would be much more efficient for me to have the same access to Relativity and evidence.com that other Officers of the Court have.

of." Yet, this is not footage the government was unaware of. This footage was recorded by an MPD officer and has been produced by the government in discovery. Below is an abbreviated description of the conversations and actions depicted in this undercover officer's footage:

As three undercover MPD officers approach the NW corner of the Capitol grounds around approximately 1:40 p.m., Officer 1 (filming) joins the crowd in chanting "drain the swamp." Near the NW walkway the three undercover officers see men running towards the Capitol. Officer 2, who is wearing black overalls, a black hoodie, a black bandana, and a red Trump beanie, remarks, "those guys are getting shot." Shortly after this, Officer 2 says, "I'm going to follow this from a distance."As they walk forward, Officer 2 says, "this is amazing!" Officer 1 responds, "Yeah, I've never seen anything like this." Officer 2 then changes their direction and the three undercover officers head towards the Northwest Scaffolding. Near the scaffolding a man asks them, "is Trump still walking here?" Officer 2 remarks, "honestly I don't think he can walk that far, let's be honest, he's long winded though that's for sure."

When protestors reach the top of the stairs and scaffolding, the three undercover officers move forward. Officer 3, a cleanshaven white male who is wearing a blue jacket and grey beanie, yells "holy shit!" Officer 2 then reiterates his belief that someone will get shot. With a wink and a nudge, Officer 3 asks Officer 2 if he wants to go up there too. Officer 2 smiles and says, "I'll be honest with you, kinda." Officer 1 says "yeah" and taps them to move forward as Officer 2 laughs about it. When Officer 1 asks the other officers which way they want to go, Officer 2 suggests going up the stairs with protestors. Near the base of the stairs Officer 1 joins the crowd in chanting "Whose house? Our house!"

Officer 1 begins yelling at people in front of him to "Go, go, go!" As they climb bicycle racks, Officer 1 yells for the crowd to "help him up, help him up!," followed by "push him up,

push him up!" Officer 1 also pushes others in front of him to get them to advance on the Capitol, and he yells "cmon, cmon, cmon, let's go!" as those around him climb the bike racks and scaffolding. Needing help to get up, Officer 1 asks a nearby man to give him a boost. The man gives Officer 1 a lift up, and Offer 1 says "thanks bro."

As Officer 1 advances up the stairs, he continues to urge the crowd onward, yelling "cmon, go, go, go!," followed shortly by "keep going, keep going!" These phrases are repeated as the undercover officer moves forward with the crowd. At one point, Officer 1 encounters a woman trying to go back down the steps and he discourages her from attempting it. Near the middle of the steps, Officer 1 encounters a man he recognizes wearing a blue jacket and what appears to be swim goggles and a white gargoyle mask with gold teeth. Officer 1 greets the man as "Tim," and the plain clothes Tim responds, "what's going on bro?"

This video clearly evidences undercover law enforcement officers urging the crowds to advance up the stairs and scaffolding towards the Capitol on January 6. The government may claim that incidents like this did not happen, but the facts show they did. Since the government cannot be trusted to disclose these facts, it becomes even more important that defense teams, including Pro Se defendants, be able to directly examine the evidence.

I respectfully ask this honorable court to defend our Constitution by granting my motion to modify the protective order and compel the government to provide full access to discovery.

Respectfully Submitted this 21st day of November, the year of our Lord, 2022

By: William Pope

_____/s/_____
William Pope
Pro Se Officer of the Court

Filed by Nicole Cubbage, Standby Counsel
DC Bar No. 999203
712 H. Street N.E., Unit 570
Washington, D.C.  20002
703-209-4546
cubbagelaw@gmail.com
Standby Attorney for William Pope

Certificate of Service

I certify that a copy of the forgoing was filed electronically for all parties of record on this 21st day of November, 2022.

_____/s/_____
William Alexander Pope, Pro Se