UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-cr-128 (RC) |
| | : | |
| WILLIAM POPE, and | : | |
| MICHAEL POPE, | : | |
| | : | |
| Defendants. | : | |

### RESPONSE TO DEFENDANT'S "STATUS UPDATE ON EFFORTS MADE TO OBTAIN LOCAL DISCOVERY ACCESS"

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to pro se defendant William Pope's supplemental motions (ECF Nos. 72 and 78) for unfettered and unsupervised access to the global discovery contained in Relativity and evidence.com. The government has previously responded to Pope's motion to modify the protective order in this case; the government's opposition, which was filed on November 12, 2022, is incorporated herein by reference. ECF No. 71.

On November 21, 2022, Pope filed a response to the government's opposition to his motion to modify the protective order. In his response (ECF No. 72), Pope argued that, among other things, the government's concerns about providing defendants unsupervised access to global discovery are moot because "the government already allows me unsupervised access to evidence.com, and that access is fettered only by my respect for the court and my obedience of the protective order." ECF No 72 at 11. The defendant further argued: "If [these discovery materials] were too sensitive for me to have direct access, why does the government allow me to have full viewing access?" ECF No. 72 at 12.

On December 2, 2022, the Court heard oral argument on the defendant's motion, and

1

took the motion under advisement. The Court directed the parties to confer and discuss a solution for the defendant to have access to discovery to properly prepare his defense.

Pope filed a "Status Update on Efforts Made to Obtain Local Discovery Access" on February 2, 2023. In this update, Pope delineated his communications with the government, the Federal Public Defender's Office, local CJA attorneys, and a local law school. The government suggested to Pope the following three options: (1) explore a wider geographic area to see if attorneys in surrounding cities, such as Kansas City (one hour from Topeka), would be able to assist him; (2) travel to Texas to see Ms. Cubbage, his attorney, to access discovery with her; and (3) ask that CJA provide travel reimbursements for Ms. Cubbage to travel to Topeka to view discovery with the defendant. The defendant notified the court that he had identified an attorney in Lawrence, Kansas, about thirty-five minutes from Pope's home in Topeka, who could facilitate Pope's access to highly sensitive materials for approximately four hours per week until April, and likely "eight hours of access per week (and occasionally more)" during April and beyond. ECF No. 78 at 11.

I. **The arrangements proposed by the government and by Pope afford Pope sufficient access to all discovery in this case and do not necessitate a modification of the protective order.**

Although the defendant would prefer on-demand access to all global discovery, the solution proposed by the defendant is eminently reasonable. The half-hour drive to the Topeka attorney's office is not an onerous task, and four to eight hours per week should be sufficient time to review the highly sensitive discovery materials that Pope does not already have access to through case-specific discovery and evidence.com.  Preparing for trial and reviewing discovery is a substantial challenge that the defendant has chosen to undertake alone, without the assistance of counsel. The challenges he complains of are of his own creation; because of his broad definition of what

is relevant to his case, Pope has seemingly chosen to spend his time reviewing footage from times and locations on the Capitol Complex where he was never present, rather than reviewing video that does, in fact, capture Pope and the charged offenses.

While this is Pope's choice to make, his choice does not entitle him to unsupervised access to global discovery. When Pope made his application to proceed pro se, the government's filing made it clear that the government would oppose any request for direct unfettered access to the two discovery platforms (evidence.com and Relativity). Pope was warned a year ago when he was represented that going pro se would not be an avenue to database access. ECF No. 52. On August 2, 2022, during the *Farretta* colloquy, the Court repeated, for Pope's benefit, the government's position that stand-by counsel would be needed to facilitate his access to global discovery. Pope had a full understanding of the government's position when he decided to proceed pro se.

While direct access to global discovery might be more convenient for Pope, the relevant question at bar is whether the limitations imposed on Pope are reasonable in light of the government's security concerns. *See, e.g.*, *United States v. Bisong*, 645 F.3d 384, 396-97 (D.C. Cir. 2011) (pro se defendant's contention that the district court denied him an opportunity to review discovery and prepare his pro se defense failed where district court ensured standby counsel had access to the discovery materials and was getting defendant the records he requested prior to trial); *United States v. Galloway*, 749 F.3d 238, 242 (4th Cir. 2014) (requirement that pro se defendant review discovery in the courthouse's lockup area and restriction on bringing discovery materials back to the detention center where he was being held did not deprive defendant of meaningful access to discovery); *United States v. Sarno*, 73 F.3d 1470, 1492 (9th Cir.1995) (no constitutional violation where government allowed defendant to review discovery

to determine which documents should be copied for his pretrial preparation—but gave him only 20 hours to inspect 250,000 pages of material). Stand-by counsel was appointed not to burden Pope by keeping him from discovery, but rather to facilitate his access to highly sensitive materials that he would not otherwise be allowed to access. Federal Rule of Criminal Procedure 16(d)(1) states that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief" in regulating discovery.  It is well established that protective orders are appropriate where the disclosure of discovery could jeopardize the national security of the United States, compromise an ongoing investigation, or infringe on the privacy of uncharged third parties and others associated with a case.  *See, e.g., United States v. Concord Mgmt. & Consulting LLC*, 404 F. Supp. 3d 67, 75 (D.D.C. 2019); *United States v. Lindh*, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002).  Here, there is plentiful good cause to continue to prohibit Pope's direct access to discovery databases; Pope, and other pro se defendants, will not be granted access to these databases because the databases contain content, described at length in the government's response filed November 12, 2022, that warrant protection that cannot be provided if defendants have access.

    Moreover, under the terms of the existing protective order, the defendant already has access to most of the video he will want to review through evidence.com and case specific discovery, including body-worn camera footage and United States Capitol Police surveillance footage. He may possess materials that are marked Sensitive so long as they are secured in a safe place and the materials are used solely in connection with his case; he is, moreover, able to create still images from highly sensitive CCTV so long as the images are used solely in connection with his case. Indeed, rather than rendering the government's argument against providing direct access to highly sensitive material "self-defeating" (ECF No. 72 at 12), the

defendant's acknowledgment that he has full viewing access to global discovery proves that the government has provided more than what is legally required under Federal Rule of Criminal Procedure 16, the *Jencks* act, or the government's *Brady* obligations. The defendant's arguments go to the heart of the government's intention: to provide access to this vast quantity of data due to the unique circumstances of this matter. It is not unreasonable for the government to restrict the ability to download, duplicate, and disseminate information that contains, among other sensitive items, the personally identifying information of tipsters, investigation subjects, and uncharged individuals. Moreover, many of Pope's discovery requests have had no apparent relevance to his case, and a number of Pope's discovery requests appear to be derived from false information that he has consumed and circulated online. Even so, the government has sought additional information from Pope when it has not been clear why requested information would be discoverable. *United States v. Marshall*, 132 F.3d 63, 69 (D.C. Cir. 1998) ("To give rise to a disclosure obligation, the evidence's materiality must, of course, be evident to a reasonable prosecutor."); *United States v. Slough*, 22 F. Supp. 3d 1, 5 (D.D.C. 2014) (requested evidence must bear "more than some abstract logistical relationship to the issues in the case"); *see also United States v. Williamson*, No. CR 14-151 (RMC), 2014 WL 12695538, at *2 (D.D.C. Oct. 23, 2014) (Rule 16 cannot be used to engage in a "fishing expedition."); *cf United States v. George*, 786 F. Supp. 11, 15 (D.D.C. 1991) ("At least one of the rationales behind the materiality requirement (and limiting discovery by criminal defendants generally) is to insure that the government not expend excessive time and effort securing documents for the defendant")). Pope has been given case-specific discovery and cover letters for global discovery that direct Pope to the locations of all evidence contained in global discovery. The assigned prosecutors have

assisted Pope in locating materials that might be relevant to his defense when he has had questions.

The government has repeatedly endeavored to create pragmatic solutions that would allow Pope to access the materials needed for his defense; for example, as was stated in the government's November 12, 2022, response, the government proposed that as part of the scheduling order for trial the Court could set a deadline (*e.g.*, 90 days before trial) by which Pope would identify any highly sensitive material that he anticipates using at trial, so that the government could review and change the designations so that Pope could possess the material, organize his exhibits, and create demonstratives for trial. Such a process is consistent with paragraph 8 of the existing protective order. ECF No. 26. But, as noted in his motion (ECF No. 67 at 24), Pope is not interested in this proposal.

Allowing the defendant to view discovery under the supervision of an officer of the court allows the defendant access to any and all materials he wishes to use in his defense while protecting national security interests, and the privacy interests of those individuals whose information might be compromised under another discovery paradigm. Pope's filings make it clear that his objections to the solutions proposed above are not rooted in concern with building his defense, but rather in a desire to engage in a "fishing expedition." *See Williamson*, No. CR 14-151 (RMC), 2014 WL 12695538, at *2 (D.D.C. Oct. 23, 2014).

## II.   Discovery access solutions used in other pro se cases

No other defendant, including any other pro se defendant, has been given the access the defendant seeks. On February 7, 2023, the Honorable Amit P. Mehta stated in the case of U.S. v. Clark, another January 6th case involving a pro se litigant, that the defendant has no constitutional right to global discovery. *United States v. Eric Clark*, 1:22-CR-00409-APM-1.

Moreover, the D.C. Circuit, consistent with other courts, has previously affirmed cases where pro se defendants received limited discovery when their standby counsels had access to that discovery. *See, e.g. Bisong* at 396-97 (D.C. Cir. 2011) (pro se defendant's contention that the district court denied him an opportunity to review discovery and prepare his pro se defense failed where district court ensured standby counsel had access to the discovery materials and was getting defendant the records he requested prior to trial); *United States v. Ruiz,* 536 U.S. 622, 629, (2002)("[t]here is no general constitutional right to discovery in a criminal case.")

In *Clark*, the Court ultimately ordered standby counsel to retain an investigator to coordinate the defendant's access to sensitive and highly sensitive discovery materials.[1] Should the Court and Mr. Pope find this alternative more appropriate, a CJA attorney such as Mr. Babbit could hire an investigator to assist Mr. Pope with discovery review. Provided that this investigator and Mr. Pope agree to abide by the protective order, they could review Relativity together. This alternative might allow Mr. Pope more than four to eight hours of access per week, and could potentially alleviate Mr. Pope's travel requirements. The government has expedited an order for the transcript from this proceeding and will make that transcript available to the Court and to the defense as soon as possible.

## CONCLUSION

In this case, the balancing of interests requires that Pope's request for unfettered access to sensitive and highly sensitive material be denied. As this Court has already recognized, the protective order as it stands is needed to adequately protect the government's legitimate interests. ECF No. 26. Specifically, the government has established good cause that the restrictions on access to sensitive and highly sensitive materials are needed to protect significant national

---

[1] In that case, the defendant had refused to sign the protective order and was not given access to Sensitive materials.

7

security, law enforcement, and other governmental interests. Moreover, the government and defense have both provided adequate solutions that allow Pope access to all the discovery in this case without stepping outside of the parameters of the protective order. For these reasons, Pope's motion should be denied, and his purported discovery issues should be addressed under the terms of the existing protective order.

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY
DC Bar No.: 481052


*/s/ Kelly E. Moran*
       KELLY E. MORAN
NY Bar No. 57764171
Assistant United States Attorney
U.S. Department of Justice
601 D Street NW
Washington, DC 20530
(202) 252-2407
Kelly.Moran@usdoj.gov