# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WILLIAM ALEXANDER POPE,<br><br>                      Defendant. | Case No.: 1:21-cr-00128-RC |

## RESPONSE TO THE GOVERNMENT'S CONTINUED OPPOSITION TO MODIFY THE PROTECTIVE ODER AND COMPEL FULL ACCESS TO DISCOVERY

**Background**

      As this court will recall, I have been trying to gain full access to discovery from the very moment I began representing myself. When the government opposed full discovery access, Judge Contreras instructed each party to attempt to find a solution, and that if it could not be resolved, to bring the matter back to him. After discussions with the government, it became clear they were not willing to voluntarily grant the full discovery access needed to examine the evidence and prepare my defense, so I filed my Motion to Modify the Protective Order and Compel Full Access to Discovery (ECF No. 67).

      Since then, the government has sought to blame the discovery access challenges I face on my decision to exercise my constitutional right to represent myself (ECF No. 80 at 2). However, as noted in my previous filing (ECF No. 78 at 2), the Federal Rules of Evidence (16.1) require that "courts must ensure [Pro Se] defendants have full access to discovery."

It is the duty of the government to provide me full access, and it is the duty of this court to ensure the government has provided that access to me. So, these challenges I face are not of my creation, but are of the government's creation. I am merely asking the court to compel the government to provide what should have already been provided voluntarily. Withholding full access to discovery violates the Federal Rules of Evidence (16.1) and denies me due process.

And it is not for the government to determine what is relevant to my defense. Only I can do that. The government has also made relevant evidence much more difficult for me because they have not identified every CCTV camera and body worn camera that is directly relevant to my case. This has forced me to search for that information myself.

The government also argued that the global discovery is not relevant to my case, yet I have already shown the court clear examples of exculpatory evidence in the global discovery that the government failed to provide directly (ECF No. 72 at 20). Neither of the court-appointed attorneys that represented me identified those materials, nor did the current standby counsel. It was my own keen attention to detail that recognized those materials as relevant to my case.

And as this court knows, the government has been showing exhibits at every January 6 trial from various times and places containing clips where the defendants on trial are not present. Because of that, I must study how scenes unfolded in times and places where I too was not present so that I may counter nonfactual exhibits presented by the government in court.

The government's use of unrelated, low-level court opinions to build a wobbly, house of cards opposition, does not supersede our Sixth Amendment Rights, the Federal Rules of Evidence (16.1 – that courts must ensure Pro Se defendants have full access to discovery), or the United States Supreme Court's ruling in *Faretta v. California*, 422 U.S. 806 (1975) that Pro Se

rights in America have long been established and that a Pro Se defendant may manage their own case in their own way.

Individual rights must not be sacrificed in court to satisfy the whims of the government.

**The Government's Third-Party Investigator Proposal**

In an eleventh-hour attempt to prevent me from having full access to discovery, the government has proposed having a third-part investigator review my discovery for me. The government is basing this proposal on action taken in another January 6 case *United States v. Eric Clark*, 1:22-CR-00409. However, as of the date I am filing this response (February 17, 2023), the government has not provided the transcript of Mr. Clark's February 7, 2022, status hearing as they promised to do in their last filing (ECF No. 80 at 7). This leaves me with almost no information as to the substance and merits of the arguments made by Mr. Clark other than the brief, 160-word Motion for Discovery (48) he filed on December 6, 2022. Judging from Mr. Clark's motion, it seems the focus of his argument is very different from my own.

I am also concerned that an investigator would be a government-interposed interference in my defense just as the government-interposed standby counsel is now. The government has also made this proposal to the court without even knowing if there is anyone in Topeka capable of complex research, or willing to do this. And why did the government not explore this idea during the two months the court provided to investigate options?

But even if there is an available investigator in Topeka, no investigator will have my specific knowledge of the case and of January 6. It is impossible for someone coming in cold to this context to understand everything relevant to my defense. They certainly won't do the same

quality of research that I can do myself. The government is merely seeking this option to prevent me from defending myself as vigorously as if I had full access to the discovery.

Any forced filter or barrier is a burden and detriment to my defense preparations.

**The Government's Jim Crow Proposal**

The government wishes this court to force me to expend my time and monetary resource to access my discovery in Lawrence, Kansas. As I noted in my previous update to the court (ECF No. 78 at 11), this option will be very expensive for me and essentially be a tax on due process rights. In *Harper v. Virginia Bd. of Elections*, 383 U.S. 670 (1966), the Supreme Court ruled on the issue of Jim Crow era poll taxes that "wealth or fee paying has, in our view, no relation to voting qualifications; the right to vote is too precious, too fundamental to be so burdened or conditioned." Pro Se and due process rights to discovery are also too precious and fundamental to be burdened or conditioned by forced financial expenditures. This court should vehemently reject all efforts by the government to wage Jim Crow attacks on civil rights!

**Still Images from Highly Sensitive CCTV**

Since the government has allowed me to "create still images from highly sensitive CCTV" (ECF No. 80 at 4), they are essentially conceding that they are not concerned with defendants possessing files that identify the location and positioning of those cameras. This is ironic since the 'location and position' of cameras has been a significant part of their argument to prevent me from possessing 'highly sensitive' video. This allowance of still images means the government considers it a greater priority to conceal the movements of individuals between those frames than to conceal CCTV camera locations and the Capitol layout.

And the movements of individuals that took place two years ago do not constitute a current threat to national security! For instance, all video showing me in motion being "entirely peaceful" on January 6, only proves that I am not a security threat!

And the motion of individuals cannot ever be repeated exactly as they were two years ago. So why is possession of two-year-old still images allowed, yet the video of those extinct motions still considered dangerous for "entirely peaceful" Pro Se defendants to possess?

Furthermore, if a Pro Se defendant were to possess still images of every frame of highly sensitive CCTV video and print them onto cardstock, they could create an old fashioned flip book that shows the same motion as the original video.



Figure 1: Since the government allows me to capture and possess still images from 'highly sensitive' CCTV cameras, one solution is for me to capture and sequence each frame from relevant videos and to create a slide show that displays each image for one thirtieth of a second. This would look just like a video, but it would be a 'digital flipbook' of still images (as possession of 'highly sensitive' still images is approved by the government but possessing the video files those images came from is prohibited).

A defendant could also order each still frame from CCTV as separate slides in a PowerPoint presentation and then click through them rapidly. This too would show the motion of the original frames. An example of this is included as Exhibit 1, which is a PDF of still images taken from a video of a man in a tan shirt and red hat pushing a sign into police officers.

But all of this is absurd. The government is merely trying to make access to discovery and preparation for trial as long and tedious for Pro Se defendants as possible. Allowing me to possess still images that reveal the location and position of a highly sensitive camera but not the movements of individuals captured by those cameras is one of the worst arguments the government has made for preventing access thus far!

**Debiase Determined Only 17 Hours of CCTV Contained Sensitive Movements**

As this Court will recall, the government presented a sworn affidavit by the biased Debiase as an exhibit in a previous filing (ECF No. 71-1 at 6). In that affidavit, Debiase stated his objective in preventing defendants from having full access to CCTV discovery was to keep them from possessing information on the layout of the Capitol. As stated previously, that argument is poor since the government allows defendants to capture and possess still frames of those areas from 'highly sensitive' CCTV video.

While Debiase's main argument centered on the Capitol layout, he established an additional classification for a small amount of CCTV (less than 17 hours of video) which captured the movement and actions of individuals that USCP considers 'security information.' That video contains movements of protectees and possibly other sensitive policing or intelligence actions and has not been produced in discovery (though some was released in court exhibits).

Since the vast majority of the January 6 CCTV footage does not include 'security information' movements as defined by Debiase, there is absolutely no logical reason for prohibiting defendants from possessing 'highly sensitive' video (which captured the movements of protestors) when they are allowed to possess still images from those same cameras.

The government clearly isn't concerned about the layout of the Capitol, as many public videos already show individuals walking through the different areas. Additionally, many body worn cameras produced by the Metropolitan Police Department in the discovery show officers walking through areas where the CCTV cameras are designated as 'highly sensitive.'

For instance, bodycam footage from Officer Foskett shows him walking into the Senate Carriage Doors (See Exhibit 2 at 14:40:00[1]). This area has been identified by the government as relevant to my case, yet the government prohibits me from possessing the CCTV footage from this area because they have designated it 'highly sensitive.' However, Officer Foskett's bodycam footage is not designated as sensitive or highly sensitive, and because of that, the protective order specifies that it is not subject to this court's seal order (ECF No. 48 at 1).

> [1] To be clear, this does not include footage from body worn cameras from other police departments that responded on January 6, 2021, the vast amount of which the United States will *not* designate as Sensitive or Highly Sensitive. (Body worn camera footage will be marked Sensitive or Highly Sensitive only if it contains material described in paragraph one above or for a similar reason not anticipated by this Order.)

*Figure 2: Footnote 1 from the protective order, which points out that most bodycam footage from January 6 is not designated as sensitive or highly sensitive, and therefore does not constitute a material subject to the protective order.*

If the layout of this area can be determined by Officer Foskett's non-sensitive bodycam footage, why should I be prohibited from possessing the CCTV video files that show this same area? There is no logic to this. All that the protective order accomplishes is making it more

---

[1] Exhibit 2 is not considered a material subject to the protective order and can be accessed at:
https://rumble.com/v29wy6w-exhibit-81-2-bodycam-footage-from-officer-luke-foskett.html

difficult and time-consuming for Pro Se defendants to create work product and prepare their defense.

**The Thin Reed Has Already Been Snapped by the Government**

In the September 2021 Media Law Resource Center newsletter[2] it was noted "Judge Rudolph Contreras put the government to task for objecting on security grounds in United States v. Anderson, 21-cr-215-RC (D.D.C.)." to the sensitivity designation and release of Capitol CCTV video:

> *Judge Contreras described the DiBiase declaration as "very, very generalized," [and] concluded that when the government has already released footage from the same camera, "the already thin reed snaps." (p. 29)*

Since the government has already allowed Pro Se defendants to possess still frames from all 'highly sensitive' CCTV cameras (ECF No. 80 at 4), they have also already snapped the thin reed of their security objection. The full video cannot reveal more about the Capitol layout than can be learned from single frames, especially when the government allows defendants to possess as many of those frames as are needed for defense preparations.

Because this thin reed has been snapped by the government, this court should immediately grant Pro Se defendants full access to evidence.com and allow them to possess the 'highly sensitive' CCTV video files needed to prepare work product and defense exhibits.

---

[2] See page 29 of the 9/2021 MLRC newsletter: https://www.ballardspahr.com/-/jssmedia/Main/Articles/MLRC-9-21.pdf?rev=1812954c81d14d7fb9437dd77d0197ec&hash=A87277AEC869AB4159D5B004372EE708

**A Partial Solution for Relativity Access**

Since the government has already snapped their thin reed objection for prohibiting full access to evidence.com, they have provided this court an easy solution for that half of the access problem. There is also an easy solution for providing access to much of the discovery on Relativity.

I am already allowed to possess all files in Relativity which are designated as sensitive, or which have no sensitivity designation at all. This means the government can immediately provide me a copy of those files without interposing a standby counsel between me and that discovery against my wishes.

That would leave this court to determine only the matter of access to any 'highly sensitive' files which are stored in Relativity (which I should be given access to).

Since this court instructed me at our last status hearing to continue defense preparations until the outcome of my motion is determined, I have been pursuing this partial solution for access.

On February 3, the day of our last status hearing, I instructed Mrs. Cubbage to obtain copies of all files I am allowed to possess under the protective order (see Figure 3). Mrs. Cubbage forwarded that request to the D.C. Federal Public Defender and the Relativity Vendor, but they have not yet fulfilled it. Mrs. Cubbage also recommended I send the request to the government, which I did. However, the government and their vendors have not yet fulfilled my request, and as of the date of this filing (February 17, 2023), the government has not responded to any of my emails since our last status hearing.

Not only is the government failing to confer with me in advance on new access proposals before bringing them to this court (such as the newly suggested investigator who would be interposed between me and my discovery against my wishes), but the government is also failing to respond to my own attempts to confer with them to find partial solutions for discovery access.

> Hi Nicole,
>
> Since Judge Contreras will not rule on my motion prior to the next status hearing, and since he instructed me to continue defense preparations in the meantime, please contact the Relativity vendor and instruct them to provide me copies of each of the 4.9 million files that I am allowed to possess under the protective order.
>
> This would include all files that are designated as 'sensitive' or which have no sensitivity designation at all. Be sure to specify that they are not to include any 'highly sensitive' files at this time since that will need to be resolved by Judge Contreras.
>
> Also, please instruct them to note whether each file is sensitive or has no sensitivity designation so that I can know how the file must be handled under the protective order, and to organize them as they are organized in the Relativity database. It would be helpful for the Relativity vendor to include an index of these files so that I may sort them according to file tags, just as if I had access to Relativity.
>
> Also, since the Relativity vendor's FTP keeps crashing during your attempted downloads, you might explain the technical difficulties you have been having and inquire whether there is an alternative way for them to get us the files, such as on a hard drive.
>
> Let them know I will also need all future global production batches of sensitive files and files which have no sensitivity designation as they are produced in Relativity.
>
> When you contact the Relativity vendor, please ask them how soon they can get my discovery to me.
>
> Thanks!
>
> Will

*Figure 3: Email to Mrs. Cubbage on February 3, 2022, seeking copies of all discovery I am allowed to possess.*

**The Government Seems to be Opposing Discovery Access to Conceal Their Own Activity**

Since the government has gone to great lengths to keep me from accessing my discovery, this court should consider whether the government is doing so to conceal their own activity. From the moment I decided to represent myself, the government has continuously tried to suggest to this court that I will bring an entrapment defense. They attempted to get this court to (1) discourage me from representing myself; (2) prevent me from mounting an entrapment defense, and (3) prevent me from having direct access to discovery (ECF No. 60 at 1).

I emphasized my position on direct and full access to discovery in my letter to Judge Contreras (ECF No. 57), and again at the next status hearing, and have continued to do so ever since. The government had a full understanding of my position when I decided to proceed Pro Se, yet they have continued to oppose my right to full access guaranteed by the Federal Rules of Evidence (16.1). Yet while I have continuously raised access issues, I have not yet raised before this court what defense I intend use, only that I will go where the facts lead. It is the government that has continuously brought to the court the prospect of a federal entrapment defense.

Early on, Mr. Crawford urged my standby counsel Mrs. Cubbage to show me the government's sanitized file[3] on a man named Ray Epps (even though I had not requested that specific information from the government). I believe Mr. Crawford presumed sharing this would convince me not to ask questions about a man who is on video pushing a sign into police yet has not been charged with assault (as so many others who pushed that sign have).

Mr. Crawford's obsession with discouraging an entrapment defense continued into the September call where he acknowledged that I was "entirely peaceful" on January 6. Out of nowhere, Mr. Crawford raised the subject of an entrapment defense and seemed desperate to persuade me not to look into government involvement. Mr. Crawford then declined to answer my reasonable questions regarding why a group of individuals who say they worked in intelligence agencies and have security clearances made such a great effort to coordinate a push through police lines and into the Capitol on January 6.[4]

---

[3] The government's file on Ray Epps contains transcripts and audio recordings of two FBI interviews of Mr. Epps, and a handful of clips that show him performing crowd control. The file does not contain video of him urging people to go into the Capitol (which he did), or of him pushing a sign into police (which he also did). For video of Epps pushing the sign into police see: https://twitter.com/FreeStateWill/status/1546992572614287361?s=20

[4] My thread raising questions about why so many members of this provocateur group worked in intel agencies and have security clearances can be found here: https://twitter.com/FreeStateWill/status/1564359076359950342

In an October 13, 2022, email exchange, Mr. Crawford randomly brought up the subject of entrapment. Since Mr. Crawford raised that issue again, I asked him directly whether the government was involved in illicit undercover operations (see Figure 4).

> Jason, since you've brought it up:
>
> Were there any government employees, informants or other human assets provoking the January 6 crowds, or telling them to move towards or into the capitol, or to do things that the government has charged as crimes in January 6 cases?
>
> Did any government employees, informants or other human assets damage the capitol, steal items from the capitol, or commit acts of violence on capitol grounds on January 6?

*Figure 4: My October 13, 2022, response after Mr. Crawford again raised the possibility of me pursuing an entrapment defense, and attempted to discourage me from looking into government involvement in January 6.*

Mr. Crawford did not immediately respond to those questions, so I followed up with him again nearly two weeks later on October 25. He evasively responded the next day (October 26), and what followed were several email exchanges between Mr. Crawford and myself with him giving evasive answers, and me seeking more precise answers. See Figures 5 through 10.

> I assume that by "government employees" you're referring to members of law enforcement since only law enforcement (or agents of LE) acting within the scope of their employment could engage in activity that could support an entrapment defense? To the extent that any USCP officers are alleged to have engaged in complicit or encouraging behavior, that has been disclosed in the OPR reports previously produced in discovery.
>
> If there are questions about particular officers whose conduct you have interpreted as being complicit based on video footage, then please send us the specifics. If the requests are reasonable and relevant, we can try to assist you in identifying the officers in question.

*Figure 5: Mr. Crawford's rhetorical gymnastics from October 26, 2022.*

> By government employees, I am referring to all government employees, not just law enforcement personnel. Your answer has not specifically denied whether government employees (DOJ, DOD, CIA, DOI, DHS, etc . . .), informants, or other human assets working on the government's behalf incited crowds or committed illegal and/or violent acts at the Capitol. Why are you trying to discourage me from pursuing an entrapment defense if you can't even answer those questions?
>
> Please read the questions again, and give me a complete answer.

*Figure 6: My October 26, 2022, response to Mr. Crawford's rhetorical gymnastics seeking a complete answer.*

> We are not aware of any person who was acting on behalf of any government agency as an "agent provocateur" – that is, as a person who committed or acted to entice another person to commit an illegal or rash act – with respect to January 6, 2021.

Figure 7: Mr. Crawford's October 27, 2022, response to my request for a complete answer.

> So is the official Department of Justice position that no government employees, informants, or other persons working on behalf of any government agency were encouraging people on January 6 to move towards or into the capitol, or to do things that the government has charged as crimes in January 6 cases?

Figure 8:  My October 27, 2022, request that Mr. Crawford clarify whether his response was the official position of the Department of Justice.

> We are not aware of individuals encouraging people on January 6 to move towards or into the Capitol, or to do things that have been charged as crimes who were doing so on behalf of any U.S. local, state, or federal government agency or organization.  There were individuals employed or compensated by local, state, or federal government agencies or organizations who engaged in such conduct.  We have charged such individuals and will continue to charge them with crimes.  *See e.g. United States v. Karol Chwiesiuk* (Chicago PD Officer), *United States v. Couy Griffin* (NM County Commissioner), *United States v. Derrick Evans* (WV Legislator), *United States v. Mark Ibrahim* (DEA agent), *United States v. James Mault* (Army Reservist), *United States v. Timothy Hale-Cusanelli* (Army Reservist), *United States v. Mark Sahady*  (Army Reservist), *United States v. Christopher Warnagiris* (Marine Corps Major), *United States v. Jacob Fracker* (Army Reservist), *United States v. Abram Markofski* (Army Reservist), *United States v. Hatchet Speed* (Navy Reservist), and *United States v. Jia Liu* (Marine Corps Reservist).  We have also charged numerous individuals who were retired and drawing a pension from local or federal law enforcement and/or the military on January 6, 2021.  Finally, as I mentioned in my prior response, there were members of law enforcement agencies who were investigated for their actions on January 6.  The findings of those investigations are contained in the discovery you have access to.

Figure 9: Mr. Crawford's November 3, 2022, response to my request for clarification.

> **To:** Crawford, Jason M. (CIV) **Cc:** Crawford, Jason (USASPC); Nicole Cubbage
>
> Hi Jason,
>
> Thank you for the response. Could you please define for me who the "we" is that you referenced in your email ("We are not aware . . .").
>
> Will Pope

Figure 10: Since Mr. Crawford's 'clarification' did not expressly state whether what he was telling me was the official position of the entire Department of Justice, I requested he define who the "we" included.  Mr. Crawford never responded.

My persistence in seeking precise answers from Mr. Crawford was intentional, because I knew his answers were not correct. By that point, I was aware of the video described in my previous response to the government (ECF No. 72 at 21) where undercover police officers were joining the crowd in chants of "drain the swamp" and "whose house? Our house!" as well as repeatedly yelling at people to move up the northwest steps and physically pushing them forward. This is not a wild conspiracy theory. The facts are in the video recorded by the undercover officer (which remains under seal), and these facts directly contradict the incorrect statements made either intentionally or out of ignorance by Mr. Crawford.

Despite that clear evidence of undercover provocateurs, the government continues to harass me with repeated attempts to discourage me from using an entrapment defense (despite me promising this court that my defense will only go where the facts lead). At the same time the government has been falsely claiming that I am spreading 'false information' about the existence of government provocateurs (which I have shown this court to be true by exhibiting the video of the undercover MPD officer inciting the crowd).

What am I, as an "entirely peaceful" boy from Kansas to think of these bizarre efforts by the government to warp the truth? Sadly, I must consider the possibility that the government is attempting to prevent discovery access because they really do have something to hide.

In my previous work as an auditor for the State of Kansas, we viewed agency attempts to hide information as a strong indication that wrongdoing may have taken place. We did not ignore that, we investigate further. The same government that is prosecuting me for "entirely peaceful" conduct on January 6 is also the same government that is trying to prevent me from accessing

discovery, and is the same government that is trying to prevent me from mentioning illicit actions by the government in court. Why not be transparent if there is nothing to hide?

However, it is no secret the government was conducting undercover operations on January 6. Michael Sherwin (who was the U. S. Attorney for the District of Columbia) told this to the entire world in an interview on 60 Minutes (See Exhibit 3[5]). Does the government consider this undercover fed narrative to be a wild conspiracy theory created by their employee, Mr. Sherwin?

If so, several body-worn-cameras produced in discovery (which are not subject to the protective order) evidence that Mr. Sherwin was indeed working undercover on January 6 (See Exhibit 4[6] at 11:41:30, and Exhibit 5[7] at 12:28:05).

In addition to this, Officer Foskett's bodycam footage includes a conversation between officers regarding how to identify persons working undercover on January 6 (See Exhibit 2 at 14:51:18). Officer Alioto's bodycam footage includes a brief conversation in the Capitol with a man that has been publicly reported[8] as being an FBI informant (See Exhibit 6[9] at 14:46:10).

There is also bodycam footage from officers Brown, Styles, and Vanacore responding to reports of men carrying concealed firearms. When those officers stopped the five plain-clothed individuals who were walking east from the Ellipse area during the President's speech, the armed

---

[5] Exhibit 3 can be accessed at: https://rumble.com/v29shao-exhibit-michael-sherwin-on-60-minutes.html
[6] Exhibit 4 is not considered a material subject to the protective order and can be accessed at: https://rumble.com/v29wzha-exhibit-bodycam-footage-from-officer-daniel-harrington.html
[7] Exhibit 5 is not considered a material subject to the protective order and can be accessed at: https://rumble.com/v29wzxo-exhibit-bodycam-footage-from-officer-carlos-mejia.html
[8] The visual identity of the undercover FBI informant was reported by a respected journalist named Stephen Horn. See: https://twitter.com/stephenehorn/status/1560762556033236993?s=20
[9] Exhibit 6 is not considered a material subject to the protective order and can be accessed at: https://rumble.com/v29x7a4-exhibit-bodycam-footage-from-officer-anthony-alioto.html

suspects proceeded to produce what appear to be DOJ/DEA agency credentials (See exhibits 7[10], 8[11], and 9[12]). There is also bodycam footage showing uniformed officers repeatedly telling people to "keep marching" while waving them towards the Capitol (See Exhibit 10[13] at 12:30:20). Officer Lazewski's bodycam footage shows uniformed officers expressing their belief that police had been 'set up' and that protestors should be allowed to "take this motherfucker" (See Exhibit 11[14] at 14:33:35).

These are not wild conspiracy theories; these are facts on video. The only reason I am able to access these particular facts and share them as public exhibits is because they are not designated as sensitive or highly sensitive and thus are not materials that are subject to the protective order (because I fully comply with the protective order!). However, the government continues trying to block me from having full access to the discovery which likely contains many additional exculpatory facts that will enable me to defend myself in court. The government's concern that those facts might reveal illicit behavior by government agencies is not a justification for this court to deny a defendant access to the means needed to defend themselves!

If this court prevents me from fully accessing exculpatory discovery, and if not having access to those exculpatory materials causes me to lose my freedom for an extended period of time, there will be no satisfactory remedy even if those exculpatory facts are revealed at some

---

[10] Exhibit 7 is not considered a material subject to the protective order and can be accessed at: https://rumble.com/v29x1b4-exhibit-bodycam-footage-from-officer-tyquan-brown.html
[11] Exhibit 8 is not considered a material subject to the protective order and can be accessed at: https://rumble.com/v29x1kk-exhibit-bodycam-footage-from-officer-daniel-styles.html
[12] Exhibit 9 is not considered a material subject to the protective order and can be accessed at: https://rumble.com/v29x1s2-exhibit-bodycam-footage-from-officer-christopher-vanacore.html
[13] Exhibit 10 is not considered a material subject to the protective order and can be accessed at: https://rumble.com/v29x286-exhibit-bodycam-footage-from-officer-terry-thorne.html
[14] Exhibit 11 is not considered a material subject to the protective order and can be accessed at: https://rumble.com/v29x80i-exhibit-bodycam-footage-from-officer-lawrence-lazewski.html

later date. How can an "entirely peaceful" citizen get back years in the prime of their life, or replace opportunities that have passed and will never come again?

## **CONCLUSION**

It is my constitutional right to fight these charges without the presence of counsel interposed by the government against my wishes, and to pursue all discovery and theories of the case that will defeat the government's accusations in court. I must manage my own case in my own way, and the Federal Rules of Evidence (16.1) are clear that courts must ensure Pro Se defendants are given full access to discovery.

As I noted in my first response to the government (ECF No. 72 at 5) the court in *Hickman v. Taylor*, 329 U.S. 511, 67 S. Ct. 385 (1947) ruled that:

> *Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.*

And I will repeat my own words:

> *In this instance, I am my own client. I represent myself. The "proper preparation" of my case likewise demands that I "assemble information" and "sift" what I consider to be "the relevant from the irrelevant facts." And I must do this "without undue and needless interference" as happens when a standby counsel is interposed between me and the discovery against my wishes. I cannot sift the facts if I do not have direct access to them, and I cannot assemble all relevant information while the protective order prohibits me from possessing it. (ECF No. 72 at 6)*

I still only have access to less than 1% of the discovery. I need full access to the facts in order to sift them and determine what is relevant to my case. In good faith, I followed this court's directive to investigate options for access in Topeka, and none were found. In this filing, I have highlighted two solutions that can immediately remedy some of the discovery access issues:

1. The government can immediately give me copies of all of the 4.9 million files in discovery that are designated as sensitive or which have no sensitivity designation at all, which I am allowed by the protective order to possess.

2. This court can immediately grant me full access to the CCTV in evidence.com, because as Judge Contreras has previously ruled, the "thin reed" of the security argument has already been snapped by the government the moment they released other footage from those cameras. The government has already allowed me to possess still images from every highly sensitive CCTV camera, which snaps the thin reed argument they made to prevent me full access to evidence.com.

However, even with these two easy remedies, this court will still have to remedy my lack of access to the 'highly sensitive' files in the Relativity index. As I pointed out in my update to this court (ECF No. 78 at 14), the clear remedy (if the government wishes to prevent me from having access) is for the government to drop all charges. Otherwise, this court should grant my Motion to Modify the Protective Order and Compel Full Access to Discovery.

Respectfully Submitted this 17th day of February, the year of our Lord, 2023.

By: William A. Pope

    /s/
William Pope
Pro Se Officer of the Court

Certificate of Service

I certify that a copy of the forgoing was filed electronically for all parties of record on this 17th day of February, 2023.

    /s/
William Alexander Pope, Pro Se