UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.  : | Case No. 21-cr-128 (RC) |
| : | |
| WILLIAM POPE, and  : | |
| MICHAEL POPE,  : | |
| : | |
| Defendants.  : | |

### NOTICE REGARDING DEFENDANT'S "STATUS UPDATE ON EFFORTS MADE TO OBTAIN LOCAL DISCOVERY ACCESS" AND RESPONSE TO DEFENDANT'S REQUEST TO REMOVE SENSITIVITY DESIGNATIONS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this notice in connection with the defendant's motions to compel unrestricted access to global discovery (ECF Nos. 67, 72, 78, 81, 82, and 85). As this Court knows, the government has endeavored to provide meaningful access to a wide swath of discovery for each criminal defendant, including evidence that would not be constitutionally or statutorily required. Notwithstanding these efforts, the defendant continues to tug at an imaginary rope, hoping to unfurl a grand conspiracy that does not exist. In the process of doing so, he identifies unconnected pieces of evidence – evidence that was *provided to him by the government* – that he utilizes to support a theory of "undercover provocateurs." ECF No. 81, at 14. Under the guise of his need to "vigorously defend himself in court" (ECF No. 82, at 1) he then transforms these requests to a desire to remove designations of various materials so that he can publicize such materials. *Id.* 1-2.

The defendant's filings are overwrought with insinuation, conjecture, and perhaps most importantly, irrelevance. For example, the three GoPro videos he now seeks to publicize involve

1

various MPD officers in the crowd on January 6, 2021, claiming that such videos are "hidden [] under seal", as if the government has suppressed such information. What the defendant fails to identify is how this evidence is remotely relevant to his case (neither William nor Michael Pope interacted with any of these officers on January 6, 2021), or why such evidence is not readily available for his future trial purposes. The answer is obvious: he does not want it for a trial. He wants it for publicity and to disseminate criminal discovery in an ongoing trial matter pending before this Court. If he were a practicing attorney governed by rules of professional conduct, he would have to adhere to local bar practice to ensure compliance with ethical obligations. *See, e.g.*, D.C. Rule of Professional Conduct 3.6 (Trial Publicity).

Instead, under the apparent excuse of being an "entirely peaceful boy from Kansas," (ECF No. 81, at 14) he routinely files irrelevant pleadings devoid of context. *See id.*, at 16 (noting that an officer expressed belief that the police had been 'set up', without contextualizing that the officer appeared to be commenting on the fact that his Civil Disturbance Unit had been "set up" due to the perceived lack of resources committed to protect the U.S. Capitol perimeter). While the government cannot endeavor to refute or contextualize every single allegation or "Aha!" moment posed by the defendant, the government has nevertheless provided the defendant with the discovery he is entitled to and more – even when it has not been clear why such information requested by the defendant would be discoverable. ECF No. 80 at 5 (citing *United States v. Marshall*, 132 F.3d 63, 69 (D.C. Cir. 1998) ("To give rise to a disclosure obligation, the evidence's materiality must, of course, be evident to a reasonable prosecutor.")); *United States v. Slough*, 22 F. Supp. 3d 1, 5 (D.D.C. 2014) (requested evidence must bear "more than some abstract logistical relationship to the issues in the case"); *United States v. Williamson*, No. CR 14-151 (RMC), 2014 WL 12695538, at *2 (D.D.C. Oct. 23, 2014) (Rule 16 cannot be used to engage in a "fishing

expedition."); *cf United States v. George,* 786 F. Supp. 11, 15 (D.D.C. 1991) ("At least one of the rationales behind the materiality requirement (and limiting discovery by criminal defendants generally) is to insure that the government not expend excessive time and effort securing documents for the defendant")). To his credit, the defendant continues to scour this discovery with such vigor that he continues to find things that he believes are relevant, even when they are not. ECF No. 81, at 17 (quoting *Taylor*, acknowledging his need to decipher what is relevant versus what is not).

I. **The government has met and exceeded its obligation to provide the defendant with all of the discovery to which he is entitled by the Federal Rule of Criminal Procedure 16, the *Jencks* act, and the government's *Brady* obligations.**

Contrary to the defendant's allegations, the government is fully appreciative of its statutory and constitutional obligations. The defendant's attempt to sully a federal prosecutor as a way to seek discovery in the fashion most amenable to him is meritless. *See* ECF No. 81, 10-13 (detailing the communications between the defendant and counsel). The defendant's allegations of impropriety ignore the government's repeated attempts to clarify the defendant's rather imprecise, gotcha-like inquiries. This 'newly discovered' evidence supporting the defendant's entrapment defense was provided to all January 6th defendants in January 2022, over thirteen months ago. The government affirms now, as it has already, that it is unaware of any law enforcement officer(s) engaged in conduct intending to entrap citizens or otherwise encourage them to commit crimes. Even if, assuming *arguendo*, the defendant has access to videos depicting plainclothes or undercover officers providing real-time information regarding the state of the riot to law enforcement officials, joining persons in chants (*see* ECF No. 81, at 14), and further assuming the government concurs with his characterization of such videos, that information has been at the defendant's disposal in a manner no different than any other charged defendant in these cases. In

his efforts to characterize his vague theories of "undercover provocateurs", Pope completely misses the forest for the trees: such theories do not absolve him of the crimes he committed. None of the videos he quotes, cherry-picks, or otherwise identifies relate to his whereabouts on January 6, his knowledge, his intent, or his crimes. None of them rise, even remotely, to a legally cognizable defense, and none of them were suppressed.

Instead, the defendant desires to use discovery as a vehicle to share sensitive and highly sensitive information with individuals who are not a party to his criminal matter. These security designations, and the protective order itself, exist to protect the privacy interests of those whose personal information is contained within global discovery; to protect national security interests; and to protect the integrity of the judicial process. Federal Rule of Criminal Procedure 16(d)(1) states that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief" in regulating discovery. It is well established that protective orders are appropriate where the disclosure of discovery could jeopardize the national security of the United States, compromise an ongoing investigation, or infringe on the privacy of uncharged third parties and others associated with a case. *See, e.g., United States v. Concord Mgmt. & Consulting LLC*, 404 F. Supp. 3d 67, 75 (D.D.C. 2019); *United States v. Lindh*, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002). The purpose of criminal discovery is not to satisfy the defendant's desire to supply others with materials that are subject to a protective order signed by the defendant himself. Thus, the defendant's motion to compel should be denied as moot or not ripe.

II. **The defendant's motion to alter designations of highly sensitive video footage is without merit and should be denied.**

The defendant's motion to alter designations of protected material is also unjustified. While there is a process to address such designations, the defendant's motion boils down to his desire to

show the world that his theories are right and litigate his case in the media. Even assuming his theories *were* true, the proper course is to address such contentions through motions related to a trial. Subsection 9 of the protective order permits the defendant to seek modification when appropriate. While the burden lies with the government to demonstrate the need for the protective order, the ultimate question is why modification is appropriate in this instance. Here, the defendant has repeatedly stressed his need to share such information with others for reasons completely untethered to the defense of his case. Rather, the defendant's goal is broader: he wants to try his case in the public realm. Contrasted with the government's rationale for the designation of sensitive or highly protective material – to address security concerns (for example, certain CCTV); to protect the personal or private information of individuals (for example, witness's addresses or telephone numbers); to protect the integrity of ongoing investigations (like investigations into government witnesses or police personnel matters); or to limit the unnecessary exposure of danger to witnesses or law enforcement. This balancing act – providing every defendant with discoverable, *Brady*, or *Giglio* materials while weighing the very real costs to others involved in criminal matters – is neither simple nor perfect. But the protective order helps to balance those factors to ensure the defendant can see and use the materials without creating spillover; here, the defendant has undeniably demonstrated his ability to see and use these materials and has stated that his desire for modification is not borne of his need to adequately prepare his defense.

      The government seeks such designations broadly – however, many of the videos referenced by the defendant, even if his characterizations were accurate, would put officers at harm's risk if released *en masse*. The agent provocateur theory is not merely a theory – it is a belief amongst some that law enforcement intentionally incited a riot to entrap defendants writ-large. The widespread dissemination of materials of specific officers engaged in what some believe was a

criminal act intended to set up a group of people could seriously jeopardize the lives of others. Nothing in this protective order limits the ability of a defendant or his counsel to litigate these issues in the proper forum – before this Court.

The defendant's ask, however, is far more calculated. Indeed, as of February 23, 2023 – one week ago – the defendant appeared on television to talk to journalists about his case, again. During such an interview, he erroneously claimed that he has access to less than one percent of discovery provided; this is a falsehood. He accused the government of attempting to preempt an entrapment defense; this, too, is false insofar as the government is ready, willing, and prepared to litigate the scope of any legal defense in court. The defendant reiterated his desire to make discovery materials available for the "American public." The defendant has yet to explain, nor can he, how these produced videos support his theory that *he* was entrapped to commit an unlawful act on that day. The defendant's motion lacks merit and should be denied.

**III.     The defendant's continued demands regarding his access to discovery are unreasonable and the challenges he purports to face are of the defendant's own making.**

The defendant's "discovery access challenges" (ECF No. 81, at 1) are specious. He has refused court-appointed counsel and does not utilize current standby counsel. *Id.* at 2. Rather, he is his own expert. *Id.* at 14 (documenting his experience as an auditor). It should be patently clear to this Court that the defendant does not simply seek discovery. He seeks unfettered access to the information of his choosing, in the manner he deems as expedient to him. Although he raises concerns about the time and cost of transportation to and from Lawrence, the attorney the defendant identified there appears to be the best current option for the defendant to have the more ready access to the even wider swath of global discovery he seeks. His choice to proceed pro se

necessarily triggered temporal and financial burdens; a thirty-minute commute, with the accompanying costs, is simply not unreasonable.

As was discussed at length in the government's previous filings, the legal standard is not whether direct access to global discovery is the most convenient alternative for the defendant. The relevant question is whether the limitations imposed on the defendant are reasonable. *See, e.g., United States v. Bisong*, 645 F.3d 384, 396-97 (D.C. Cir. 2011) (pro se defendant's contention that the district court denied him an opportunity to review discovery and prepare his pro se defense failed where district court ensured standby counsel had access to the discovery materials and was getting defendant the records he requested prior to trial); *United States v. Galloway*, 749 F.3d 238, 242 (4th Cir. 2014) (requirement that pro se defendant review discovery in the courthouse's lockup area and restriction on bringing discovery materials back to the detention center where he was being held did not deprive defendant of meaningful access to discovery); *United States v. Sarno*, 73 F.3d 1470, 1492 (9th Cir.1995) (no constitutional violation where government allowed defendant to review discovery to determine which documents should be copied for his pretrial preparation—but gave him only 20 hours to inspect 250,000 pages of material). The solution the defendant originally identified is a reasonable one. The half-hour drive to the Lawrence attorney's office is not an onerous task, and four to eight hours per week should be sufficient time to review the highly sensitive discovery materials that Pope is not able to access independently. With leave of the court, standby counsel, and the defendant, the government intends to implement this proposed additional avenue of discovery access.

The government is concerned about the abuse of legal process in this case. While defendant is entitled to vigorously defend himself, the defendant's constant filings, littered with non-legal requests and rambling musings, inappropriately (or perhaps intentionally) interfere with a smooth

administration of the criminal justice system.[1] S*ee Judd v. United States*, No. 05-5289, 2006 WL 1565084, at *1 (D.C. Cir. Feb. 14, 2006) (Appellant's history of filing successive, substantially the same, and uniformly frivolous pleadings constitute an abuse of the judicial process and warrants this extraordinary action); *Judd v. University of New Mexico*, 204 F.3d 1041 (10th Cir.2000) (imposing filing restrictions to prevent further frivolous and jurisdictionally defective filings).

While the government does not seek the drastic remedy to enjoin future filings, particularly given the criminal, rather than civil, nature of these proceedings, the Court should impose a briefing schedule on the defendant's motions to ensure the orderly and expeditious administration of justice. *See Caldwell v. Obama*, 6 F. Supp. 3d 31, 49-50 (D.D.C. 2013) (Plaintiff's repeated filing of similar suits stemming from the same facts resulted in enjoinment from filing any additional complaints without obtaining pre-filing leave). Such a schedule would accomplish a less chaotic process, no different than any other defendant.

## **CONCLUSION**

In this case, the balancing of interests requires that the defendant's request for unfettered access to sensitive and highly sensitive material be denied. Similarly, the defendant's requests that security designations be removed so that he can share discovery with news media covering his case should be denied. As this Court has already recognized, the protective order is needed to adequately protect the government's legitimate interests. ECF No. 26. Specifically, the government has established good cause that the restrictions on access to sensitive and highly sensitive materials are needed to protect significant national security, law enforcement, and other

---

[1] As this pleading was being finalized in response to the defendant's two most recent motions (ECF Nos. 81 and 82), the defendant filed yet another motion on March 2, 2023 (ECF No. 85).

governmental interests. For these reasons, the defendant's motions should be denied.

Respectfully submitted,
MATTHEW GRAVES
UNITED STATES
ATTORNEY
DC Bar No.: 481052


*/s/ Kelly E. Moran*
KELLY E. MORAN
NY Bar No. 57764171
Assistant United States
Attorney
U.S. Department of Justice
601 D Street NW
Washington, DC 20530
(202) 252-2407
Kelly.Moran@usdoj.gov
