UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-cr-128 (RC) |
| : | |
| WILLIAM POPE, and : | |
| MICHAEL POPE, : | |
| : | |
| Defendants. : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF THE UNITED STATES CAPITOL POLICE DECLARATION OF THOMAS A. DIBIASE AND THE PROTECTIVE ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this supplemental motion in support of the United States Capitol Police ("USCP") Declaration of Thomas A. Dibiase ("Declaration"), ECF No. 88, which was filed on March 17, 2023. This motion further responds to the defendant's prior motions, ECF No. 81 and 82, incorporating the government's prior opposition, ECF No. 86.

Per the minute order of this Court dated March 17, 2023, the government was directed to update the Court on the status of the dissemination of United States Capitol Police CCV footage, and other sensitive footage, to members of the news media. Upon information and belief, no media organizations other than the single television show previously discussed has been given access to the material at issue in this case. Similarly, it is the government's understanding that neither the United States Capitol Police nor the Metropolitan Police Department has approved the dissemination of any of the disputed materials (*see* ECF No. 81) to any media outlet. The government will notify the Court if there is a change in this status.

The defendant currently requests, *inter alia*, the removal of the security designations for seven (7) items currently subject to the protective order governing discovery in this case, which was entered into unopposed on May 4, 2021. The defendant specifically requests changes to the security designations of these videos "in the interest of justice and government transparency" because the defendant wants to share these videos with members of the press. ECF No. 82.

**I.       An Overview of the Videos the Defendant Seeks to 'Undesignate'**

First, we provide a brief description of the videos below:

The defendant's filings (ECF Nos. 72 and 82), refer to Relativity items MPD-005-000032, -000033, -000034, -000035, -000036, and -000037, disclosed January 14, 2022, as part of Global Production No. 10, related to six files from Metropolitan Police Department's ("MPD's") Electronic Surveillance Unit ("ESU"). The specific footage, GoPro video recorded by an MPD Police Officer who was stationed at the Capitol in an evidence-gathering capacity, captures the officer shouting words to the effect of "Go! Go! Go!" (MPD-005-000035 at time stamp 2:37), "Go! Go! Go!" (MPD-005-000035 at time stamp 7:23), and "Keeping going! Keep going!" (MPD-005-000035 at time stamp 8:16) apparently to the individuals in front of him on the balustrade of the U.S. Capitol's northwest staircase around 2:15 p.m. At other times in these videos, the officer and the two other plain clothes officers with him appear to join the crowd around them in various chants, to include "drain the swamp," "U.S.A.! U.S.A.! U.S.A.!", and "whose house? Our house!"

The defendant also seeks the removal of a sensitive designation from a Capitol CCV video capturing the northwest steps of the Capitol at approximately 2:24 P.M., the same time that the GoPro videos were captured. The defendant claims that this CCV video is also "of public interest because it shows other defendants in close proximity to Officer 1." ECF No. 82 at 2.

2

**ARGUMENT**

The defendant is not entitled to 'undesignate' these videos to share them with unlimited third parties. His desire to try his case in the media rather than in a court of law is illegitimate, and the government has met its burden to show the necessity of the protective order. Federal Rule of Criminal Procedure 16 "requires the Government to produce, upon the defendant's request, any documents and data that are material to preparing the defense." *United States v. Dixon*, 355 F. Supp. 3d 1, 3 (D.D.C. 2019) (citing Fed. R. Crim. P. 16(a)(1)(A)–(G)). The rule also provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d). Entering a protective order falls under this provision. *See id.* at 3.

When a party challenges another party's designation of a document or other item produced in discovery as protected pursuant to an existing protective order, the party seeking to keep the document protected bears the burden of establishing "good cause" to do so. *See, e.g., Blum v.. Merrill Lynch Pierce Fenner & Smith, Inc.*, 712 F.3d at 1355; *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994); *United States v. Concord Mgmt. & Consulting LLC*, 404 F. Supp. 3d 67, 74 (D.D.C. 2019). To establish "good cause," the party must "show[ ] that specific prejudice or harm" will result from removing the challenged item's protected designation. *Blum*, 712 F.3d at 1355 (quotation marks omitted). "It is well established that protective orders are appropriate where the disclosure of discovery could jeopardize the national security of the United States, compromise an ongoing investigation, or infringe on the privacy of uncharged third parties and others associated with a case." *Concord Mgmt.*, 404 F. Supp. 3d at 75 (citing cases). Indeed, many courts "have granted protective orders regarding unclassified, but sensitive material vital to

national security." *United States v. Lindh*, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002) (quotation marks omitted).

"In determining whether good cause exists, courts have considered whether (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and (3) the public's interest in disclosure outweighs the possible harm." *Dixon*, 355 F. Supp. 3d at 4; *see also United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) ("[A]mong the considerations to be taken into account by the court will be *the safety of witnesses and others*, a particular danger of perjury or witness intimidation, and the protection of information vital to national security.") (emphasis added). "[O]nce a showing of good cause has been made, the court has relatively unconstrained discretion to fashion an appropriate protective order." *United States v. Johnson*, 314 F. Supp. 3d 248, 251 (D.D.C. 2018).

In this case, the materials that the defendant wishes to share with the media were produced to the defendant through global discovery. First and foremost, these materials are not relevant to the defendant's case, as the defendant does not allege that he spoke to or interacted with anyone depicted in the videos prior to or on January 6, 2021. Indeed, the government was not obligated, under Rule 16 or any other legal authority, to provide this discovery to this defendant, but the government committed to provide expansive global discovery as part of its investigation of January 6, 2021 cases. Moreover, the existing protective order causes no prejudice to the defendant. The defendant has had access to said material and is not seeking modification of the protective order for any purpose other than to share criminal discovery from his case with others. Even assuming *arguendo* that the defendant is entitled access to this material for the purpose of shaping his defense, the risks presented by the dissemination of these videos clearly outweigh the personal interests of the defendant.

As was stated in the Declaration, the Capitol Police are charged with protecting "the physical security of the Capitol compound and the safety of those who work in or visit the Capitol." ECF No. 88 at 3. Protecting the integrity of the Capitol's surveillance system and emergency protocols (including evacuation routes, blind spots in the CCV system, locations of Sensitive Compartmented Information Facilities (SCIFs), and myriad other considerations) is a matter of grave national security. Contrary to the defendant's allegations of prejudice on the part of Thomas DiBiase, the position of the Capitol Police that dissemination of CCV footage, or other footage that depicts sensitive areas within the Capitol Complex, should be "strictly limited" is not unique to matters concerning the crimes of January 6, 2021. In fact, by statute, the release of any footage by USCP from the Department's CCV system must be approved by the Assistant Chief of Police for Operations, the Department's second highest sworn officer. ECF No. 88 at 2. USCP routinely denies footage to civil plaintiffs who are involved in accidents on Capitol Grounds, and even investigators for agencies such as the Architect of the Capitol are permitted only to view such footage in the presence of a USCP employee. ECF No. 88 at 3. The Capitol Police is required under 2 U.S.C § 1979 to restrict the release of "security information," which is defined as information that is "sensitive with respect to the policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress, any statutory protectee of the Capitol Police, and the Capitol building and grounds; and Is obtained by, on behalf of, or concerning the Capitol Police Board, the Capitol Police, or any incident command relating to emergency response." While certain Congressional entities are exempt from these restrictions (*see* above), federal law empowers and requires the Capitol Police, the wardens of this material, to carefully restrict access to security information.  The fact that there

are more CCV video in the public due to press access litigation[1], the Chief Judge's order, or more trials, does not warrant the removal of security designations from thousands and thousands of hours of CCV video. To do so would be like using a hammer when only a scalpel is needed. Here, being forced to constantly litigate which scalpel to use, and how to exact the cut, is incredibly burdensome to the Court and the government, and a waste of resources to ensure an efficient prosecution. The defendant's request to remove the security designation from the CCV video of the northwest staircase stems not from his desire to build his defense, but rather his sense that the video is "of public interest because it shows other defendants in close proximity to Officer 1." ECF No. 82 at 2. This type of litigation is precisely what the protective order was conceived to avoid.

While the concerns delineated in the Declaration and echoed above are applicable to all of the sensitive and highly sensitive information disclosed in connection with January 6, 2021, and not merely applicable to Capitol CCV, there are very specific and highly worrisome risks associated with the specific videos the defendant seeks to share *en masse*. Given the highly volatile nature of the discourse surrounding these cases, releasing the identities of the officers depicted in these videos – officers the defendant now claims to have instigated the *entire* attack on the U.S. Capitol – would surely put the lives of those officers at risk. It seems clear from the defendant's

---

[1] On March 23, 2023, a coalition of press organizations (Cable News Network, Inc., Advance Publications, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Buzzfeed, Inc. d/b/a BuzzFeed News, CBS Broadcasting Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, POLITICO LLC, Pro Publica, Inc., Tegna, Inc., and WP Company LLC, d/b/a The Washington Post (together, the "Press Coalition")) filed a motion to intervene in this matter for the limited purpose of challenging the Government's designation of surveillance video from the United States Capitol as "Sensitive" or "Highly Sensitive." This motion was submitted to the Clerk's office via email and a courtesy copy was provided to the government and to the defendant by counsel for the Press Coalition. The government intends to respond to that motion separately.

filings, social media posts, and representations on the record that he intends to disseminate these videos, and possibly to place the lives of these officers at risk.

While the videos are not relevant in this case, it is possible that the videos may be relevant in another case – either for the prosecution or for the defense. Allowing these videos to be utilized in the manner in which the defendant now seeks may jeopardize the rights and safety of others who have been or may later be charged for their conduct on that day. In *United States v. Cudd*, another January 6th case, Judge McFadden opined, when granting the government's request for a protective order:

> If [the defendant's] concern is rather about the limitations on her ability to try this case in the court of public opinion pretrial through dissemination of selected evidence, the Court is unmoved. The Court's priority is to ensure fair criminal trials to the Government, [the defendant], and other defendants related to the January 6 incident, not cater to parties' interests in selective disclosures to the media. The Court is mindful that pretrial publicity of discovery in this case may injure other defendants, witnesses, and third parties whose personal information was collected in the Government's investigation.

534 F. Supp. 3d 48, 56 (D.D.C. 2021). This point is not specious: if the defendant was a practicing lawyer, he would be bound by the rules of ethics. This includes rules related to pretrial publicity. In *United States v. Brown*, 218 F.3d 415, 423-24 (5th Cir. 2000), the Fifth Circuit noted that trial courts have an "affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity . . . [t]he beneficiaries of this duty include not only the defendant in a given trial." *Id.*; *see also United States v. Carriles*, 654 F. Supp. 2d 557, 568-69 (W.D. Tex. 2009) (noting that it need not matter that a defendant is not bound by lawyer ethics rules when the court imposed a gag order to limit extrajudicial commentary, stating that "Defendant is no stranger to the media.").

As a final point, protective orders are used "not only to resolve individual discovery disputes, but also to expedite the flow of discovery in cases involving a large amount of sensitive

information." *United States v. Johnson*, 314 F. Supp. 3d 248, 251 (D.D.C. 2018). Protective orders ensure that a defendant's right to a fair trial is not overridden by the confidentiality and privacy interests of others by allowing a defendant and his counsel the right to inspect materials while still protecting against unwarranted disclosure of materials. *Alderman v. United States*, 394 U.S. 165, 185, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Here, the government has disclosed the relevant materials currently known and possessed by the government, and will continue to disclose information in accordance with the government's discovery obligations. But by agreeing to the protective order initially, the defendant, and eventually the Court, appreciated the need for an orderly process to ensure the safety of individuals and the integrity of investigations. As noted in *Cudd*, "that video footage of the January 6 events is publicly available does not diminish the need for confidentiality of the footage from" Capitol CCV. Likewise, the fact that other video may show officers or other January 6-related incidents does not diminish the government's appropriate need to continue to protect not only CCV video footage, but known officers from further harassment or harm, regardless of the conduct. Such designations thus "act to reduce any harm" to the government in "not allowing wide-spread dissemination of sensitive information." *Aldrstein v. United States Customs and Bordr Prot.*, No. CIV 19-500-TUC-CKJ, 2021 WL 6133955, at *4 (D. Ariz. Dec. 20, 2021).

      While the current protective order appropriately includes a provision permitting a process to challenge the designation of certain materials, it is important to assess the defendant's rationale in seeking to publish these videos. The defendant never claims that this evidence needs to be publicly released for some evidentiary purpose. Rather, the sole purpose is to seek pretrial publicity on the issues he perceives as important not to his case specifically, but January 6 as a whole. The government's basis for its original designation is sound.

For these reasons, the government respectfully requests that the defendant's motion to modify the protective order be denied in its entirety.

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY
DC Bar No.: 481052

*/s/ Kelly E. Moran*
KELLY E. MORAN
NY Bar No. 57764171
Assistant United States Attorney
U.S. Department of Justice
601 D Street NW
Washington, DC 20530
(202) 252-2407
Kelly.Moran@usdoj.gov