## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

Case No. 1:21-cr-128-RC

WILLIAM ALEXANDER POPE,

Defendant.

CABLE NEWS NETWORK, INC., AMERICAN
BROADCASTING COMPANIES, INC. d/b/a
ABC NEWS, THE ASSOCIATED PRESS,
BUZZFEED, INC. d/b/a BUZZFEED NEWS, CBS
BROADCASTING INC. o/b/o CBS NEWS, DOW
JONES & COMPANY, INC., publisher of THE
WALL STREET JOURNAL, THE E.W. SCRIPPS
COMPANY, GANNETT CO., INC., GRAY MEDIA
GROUP, INC., LOS ANGELES TIMES
COMMUNICATIONS LLC, publisher of THE LOS
ANGELES TIMES, NATIONAL PUBLIC RADIO,
INC., NBCUNIVERSAL MEDIA, LLC d/b/a NBC
NEWS, THE NEW YORK TIMES COMPANY,
POLITICO LLC, PRO PUBLICA, INC., TEGNA,
INC., AND WP COMPANY LLC, d/b/a THE
WASHINGTON POST,

Proposed Intervenors.

*LEAVE TO FILE GRANTED*
*3/28/2023*

## THE PRESS COALITION'S MOTION TO INTERVENE AND
## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Pursuant to Local Criminal Rule 47, Proposed Intervenors Cable News Network, Inc.,

Advance Publications, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The

Associated Press, Buzzfeed, Inc. d/b/a BuzzFeed News, CBS Broadcasting Inc. o/b/o CBS News,

Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company,

Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times Communications LLC, publisher

of The Los Angeles Times, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC

News, The New York Times Company, POLITICO LLC, Pro Publica, Inc., Tegna, Inc., and WP Company LLC, d/b/a The Washington Post (together, the "Press Coalition") respectfully move to intervene in this matter for the limited purpose of challenging the Government's designation of surveillance video from the United States Capitol as "Sensitive" or "Highly Sensitive," which improperly prevents Defendant William Pope from presenting that material to the press and the public. The Government cannot demonstrate a legitimate need to designate surveillance footage as "Sensitive" or "Highly Sensitive" as many videos from Capitol surveillance cameras have already been made public by the Department of Justice, Congress, and the press. The Court should therefore order the Government to remove the challenged designation and to permit Defendant to release videos to the press and public. In support of this motion the Press Coalition states as follows:

## BACKGROUND

This action is one of many criminal cases pending in this District arising out of the January 6, 2021 riot at the United States Capitol. Defendant William Pope is charged with eight counts related to his alleged conduct on January 6, including obstruction of an official proceeding and disorderly conduct in a Capitol building. *See* Indictment, Dkt. 8.

On May 5, 2021, the Court entered a Protective Order Governing Discovery in this matter (the "Protective Order"). *See* Dkt. 26. The Protective Order "governs materials provided by the United States at any stage of discovery during this case and which the United States has identified as either 'Sensitive' or 'Highly Sensitive,'" and it lists "[s]urveillance camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds" among the "[e]xamples of materials that the United States may designate as 'Sensitive' or 'Highly Sensitive'" under the Protective Order. *See id.* at 1. The Protective Order states that, absent the Government's consent or the Court's authorization, "[n]o Sensitive or Highly Sensitive materials

2

... may be disclosed to any persons other than Defendant, the legal defense team, or the persons to whom the Sensitive or Highly Sensitive information solely and directly pertains or his/her counsel." *Id.* at 2.

On October 30, 2022, Defendant moved to modify the Protective Order's provisions that restricted his access to certain discovery as a *pro se* defendant. Mot. to Modify Protective Order, Dkt. 67. One portion of this motion challenged the "sensitivity classifications of discovery," and specifically, that "the U.S Capitol security footage is classified as either sensitive or highly sensitive." *Id.* at 11. He asserted that because of this classification, he cannot directly access the platform evidence.com where the CCTV videos are accessed, and must rely on standby counsel to download and send CCTV videos to him. *Id.* at 20. Defendant asserted that "even though the government has already publicly revealed clips from highly sensitive cameras that convey their approximate location, they still arbitrarily argue the position of these cameras is highly sensitive." *Id.*

On November 12, 2022, the Government submitted an opposition representing "[t]here is good cause for the existing protective order to remain in effect because of security concerns about highly sensitive CCTV footage." *See* Opp. to Pro Se Def. William Pope's Request to Modify the Protective Order and to Compel Full Access to Discovery, Dkt. 71 at 4. In support, the Government submitted a declaration by Thomas A. DiBiase, General Counsel for the U.S. Capitol Police Department, dated March 21, 2021 (the "March 2021 DiBiase Declaration"). As discussed *supra,* this is the same declaration the Government relied upon in opposing release of video exhibits to this Coalition in another Capitol riot prosecution, and which, two months prior, then-Chief Judge Beryl A. Howell held did not establish a security interest that would overcome the presumption of access to court records. *United States v. Torrens,* 560 F. Supp. 3d 283, 294

3

(D.D.C. 2021) ("The concerns articulated in the DiBiase Declaration are simply too generalized to show a risk of prejudice from disclosure of the five videos at issue in this case.").

In opposing Pope's motion, the Government represented that because of the "security concerns" articulated in the March 2021 DiBiase Declaration, "all CCTV footage produced in January 6 cases has been subject to a protective order like the one issued in Pope's case." Opp. at 6. On November 21, 2022, Defendant filed a reply, asserting that he has "taken great pains to stay within the protective order and I have urged others to do the same." *See* Resp. to the Gov't's Opp. to Modify the Protective Order and Compel Full Access to Discovery ("Opp."), Dkt. 72 at 7.[1]

After hearing arguments on Defendant's motion to modify, the Court took the motion under advisement and instructed the parties "to confer and discuss a solution for defendant to have access to discovery in order to properly prepare a defense in this matter." Dec. 2, 2022 Minute Order. Beginning in January of this year, Defendant reported the meet and confer was unsuccessful and provided several updates on the disagreements. *See* Status Update on Efforts Made to Obtain Local Discovery Access, Dkt. 78. In his February 17, 2023 filing regarding discovery disputes, Defendant argued that he should be provided full access to CCTV videos in evidence.com because "[t]he government has already allowed me to possess still images from every highly sensitive CCTV camera, which snaps the thin reed argument they made to prevent

---

[1] Pope also filed a motion to remove the "Sensitive" designation on a video exhibit he submitted under seal with this filing that he says depicts an "undercover MPD officer . . . urging protestors to advance up the northwest steps to the Capitol." *See* Mot. to Remove Designation of 'Sensitive' from Undercover MPD Videos and Release Them to the Public, Dkt. 82 at 1. Pope argues that "major news organizations are now contacting me asking about the undercover MPD video," therefore "it is best that this honorable court now publicly release this sealed exhibit in support of my motion." *Id.*

me full access to evidence.com." Resp. to the Gov't's Continued Opp. to Modify the Protective Order and Compel Full Access to Discovery at 18, Dkt. 81.

On March 2, 2023, Defendant submitted another update on pending discovery disputes between the parties, citing a POLITICO report that U.S. House leadership stated they would provide Capitol riot defendants and other news outlets access to this footage. *See* Update on Discovery Access Issues, Dkt. 85 at 2 (citing https://www.politico.com/news/2023/02/28/house-gop-moving-to-let-jan-6-defendants-access-capitol-security-footage-00084763). The POLITICO report was one of many news reports stating that Speaker of the House of Representatives Kevin McCarthy provided Fox News host Tucker Carlson access to more than 40,000 hours of footage. *Id*. Pope argued that granting him full, unrestricted access to discovery would "be an immediate benefit to defense preparations," but would "still fall short of what the Legislative Branch has promised, which includes 41,000 hours of relevant video, much of which the government has failed to produce in discovery." *Id*. at 1.

That same day, the Government responded to Defendant's discovery filings by asserting that Defendant's discovery motions are submitted "[u]nder the guise of his need to 'vigorously defend himself in court'" but Defendant truly desires "to remove designations of various materials so that he can publicize such materials." *See* Notice Regarding Def's 'Status Update on Efforts to Obtain Local Discovery Access' and Resp. to Def's Request to Remove Sensitivity Designations at 1, Dkt. 86. The Government also asserted that "many of the videos referenced by the defendant, even if his characterizations were accurate, would put officers at harm's risk if released *en masse*." *Id*. at 5.

The following day, this Court held a status conference and ordered the Government to submit a declaration addressing its representations about security concerns in de-designating

CCTV videos in light of reports of Tucker Carlson's access, and reports that the Capitol Police have been involved in discussions about release of videos to this member of the news media. *See* Mar. 3, 2023 Minute Order.

In response, the Government filed another declaration by DiBiase, in which he repeated that typical protocol is to limit access to CCTV footage due to security concerns. *See* Decl. of Thomas DiBiase ("March 2023 DiBiase Declaration"), Dkt. 88-1. DiBiase also stated the Majority Staff Director from the Committee on House Administration ("CHA") requested that "CHA be given the same access to the USCP footage that had been provided to the January 6 Select Committee," which the Capitol Police provided within "days." *Id.* ¶ 10. According to DiBiase, the Capitol Police learned through media reports on February 20, 2023, that staff for the Tucker Carlson show had been granted access to the CCTV videos. *Id.* ¶ 11. DiBiase also stated that the CHA Staff Director requested and was provided a list of excluded Capitol Police cameras "deemed to contain sensitive information such as evacuation routes or sensitive infrastructure or offices such as Sensitive Compartmented Information Facilities." *Id.* ¶ 12. DiBiase stated that he "emphasized the Capitol Police's desire to review every footage clip, whether it was on the Sensitive List or not, if it was going to be made public," which was "the same process followed by the Select Committee and the prosecutors in all of the criminal cases," yet only one of 40 clips shown during the Tucker Carlson show on March 6 and 7, 2023, had been pre-approved for publication by Capitol Police. *Id.* ¶¶ 13-14.

On March 17, 2023, the Court ordered the Government to "file a supplement to this declaration concerning media accounts that other media organizations will be given similar access to U.S. Capitol Police surveillance footage as that given to Tucker Carlson on or before March 24, 2023." *See* Mar. 17, 2023 Minute Order.

Now that Defendant's motion is briefed and awaiting adjudication, the Press Coalition respectfully moves to intervene in this matter to assert the public's distinct interest in receiving CCTV videos that Defendant would disseminate through the press but for their designation as "Sensitive" or "Highly Sensitive."

## ARGUMENT

### I.    The Press May Intervene For The Purpose Of Challenging A Protective Order

It is well settled that members of the press, like members of the public, have standing to intervene to challenge protective orders and confidentiality designations that restrict access to materials of public concern. *See League of Women Voters of the U.S. v. Newby*, 963 F.3d 130, 135 (D.C. Cir. 2020) ("Every circuit court that has considered the question—including this one—has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders." (internal marks omitted)); *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (embracing a "flexible approach" to intervention given "our longstanding tradition of public access to court records" so that "third parties [can] have their day in court to contest the scope or need for confidentiality," and "hold[ing] that third parties may be allowed to permissively intervene under [the Federal Civil Rules] for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order") (citations and internal marks omitted); *In re Guantanamo Bay Detainee Litig.*, 630 F. Supp. 2d 1, 4 (D.D.C. 2009) (noting that the Court had granted press motion to intervene "for the limited purpose of opposing the government's motion" to designate unclassified material as "protected" under the Protective Order governing Guantanamo Bay prosecutions); *cf. United States v. Hubbard*, 650 F.2d 293, 311 n.67 (D.C. Cir. 1980) (noting that "[f]ederal courts have frequently permitted third parties to assert their interests in *preventing* disclosure of material sought in criminal proceedings" (emphasis added)).

7

Here, the Press Coalition seeks to intervene for the limited purpose of challenging the Government's use of the Protective Order to prevent Defendant from making any CCTV videos available to the public. Under the law of this Circuit, the Court should permit such intervention.

## II.   The Government Fails To Justify Designating CCTV Videos as "Sensitive" or "Highly Sensitive"

The Protective Order provides that "the burden of demonstrating the need for a protective order remains with the government at all times." *See* Dkt. 26 at 5. The Government has not demonstrated such a need with respect to the CCTV videos, and it cannot do so on these facts.

According to DiBiase, access to Capitol surveillance footage must be restricted because "less restricted access to the CC[T]V system could present a dire safety risk to the Capitol and its inhabitants; even a knowledge of, for example, the location of each CC[T]V camera might enable a bad actor to exploit vulnerabilities in the system." *See* March 2023 DiBiase Decl. ¶ 7; *see also* March 2021 DiBiase Decl. ¶ 16 ("the Department is concerned that defendants may be provided access to large sections of footage or even all of the footage, and would deem such information, in the aggregate, to constitute 'security information'" and would provide defendants "with a clear picture of the interior of the Capitol"). But by DiBiase's own admission, *dozens* of CCTV videos have already been publicly released. March 2023 DiBiase Decl. ¶ 13 n.2 (noting "approximately 15 clips" were shown during Trump's impeachment proceedings); *id.* ¶ 14 ("approximately 40 clips" were shown during Tucker Carlson's March 6 and 7 programs).[2]

Moreover, the Government has already attempted to rely on vague security concerns asserted by DiBiase to prevent release of CCTV videos in a Capitol riot case, which were

---

[2] *See also, e.g.*, Jan. 6th Committee, *July 21, 2022 Select Committee Hearing*, https://www.youtube.com/watch?v=pbRVqWbHGuo (Capitol security video shown at 54:30, 56:20, 56:40); Minute Order of June 24, 2021, *In re Application of Press Coalition for Certain Sealed Video Exhibits*, 21-mc-85-CRC (D.D.C.) (ordering release of four video compilations shown to the court in *United States v. Egtvedt*, 21-cr-177 (D.D.C.), which included CCTV

rejected by the then-Chief Judge of this District. In *United States v. Torrens*, the Government submitted five CCTV video clips in connection with a sentencing hearing, and in response to the Press Coalition's request that they be publicly released, the Government relied on the March 2021 DiBiase Declaration to argue "unfettered" access to CCTV videos "may . . . give rise to a significant threat to the building and those victimized by the events of January 6, 2021." 560 F. Supp. 3d at 292. Then-Chief Judge Beryl A. Howell weighed the Government's security concerns as articulated in the March 2021 DiBiase Declaration against the common law presumption of access to judicial records and held the Government did not overcome the presumption. *Id.* at 294. Judge Howell noted the need for public access "is very strong, as evidenced by the extraordinary public interest surrounding the events that took place at the U.S. Capitol on January 6." *Id.* at 292. Judge Howell further stated that while the Government's "interest in maintaining the security of the U.S. Capitol is indisputably very strong," the asserted risk of prejudice from release of the videos "is speculative and attenuated," and in particular, the March 2021 DiBiase Declaration was "simply too generalized to show a risk of prejudice from disclosure of the five videos at issue in this case." *Id.* at 293. The court was thus convinced that, "[a]s petitioners persuasively argue, the asserted security risk is undercut by the already extensive release of CC[T]V footage from the Capitol." *Id.* at 292.[3]

The D.C. Circuit addressed an analogous situation in *Washington Post v. Robinson*, where the *Post* sought access to the plea agreement of a district employee who cooperated with

footage, after "both the government and the defendant have indicated their consent to the release"); *Jackson*, 2021 U.S. Dist. LEXIS 49841, at *2 (D.D.C. Mar. 17, 2021) (noting the Government took no position on a Press Coalition member's request for release of Capitol surveillance videos shown at a detention hearing).

[3] The Government's alleged security concerns have seemingly abated following this decision, and the Government has ceased objecting to release of CCTV video exhibits submitted in Capitol riot prosecutions requested by the Press Coalition. *E.g.* Notice of Withdrawal of Govt's Mot. to

an investigation into Mayor Marion Barry. 935 F.2d 282, 283-85 (D.C. Cir. 1991). The government argued that the record should remain sealed because it "was part of an ongoing criminal investigation that might be compromised or that might embarrass innocent parties if publicized," because "release of the agreement may [have made] it difficult to secure the cooperation of other witnesses," and because "the safety of [the cooperator] and his family would have been placed at risk." *Id.* at 291 (citation, internal marks, and alterations omitted). The court rejected these speculative concerns, reasoning that the substantial amount of already-public information about the investigation and the cooperator's involvement, including information reported by the press, meant that unsealing the plea agreement "could hardly have posed any *additional* threat to the ongoing criminal investigation." *Id.* at 292 (emphasis added).

Because the public already has access to an enormous volume of CCTV videos from inside the Capitol, the Government likewise cannot demonstrate that permitting Defendant to republish *other* CCTV videos would pose any further threat to the security of the Capitol. Especially when weighed against the public's interest in viewing videos of "the most significant assault on the Capitol since the War of 1812," *rump v. Thompson*, 20 F.4th 10, 18-19 (D.C. Cir. 2021), the Government cannot justify maintaining its designation of the CCTV videos as "Sensitive" or "Highly Sensitive." The Court should therefore order the Government to remove that designation for CCTV videos.

---

Seal Video Exhibit, *U.S. v. Jensen*, 21-cr-6-TJK (D.D.C.), Dkt. 47, (withdrawing motion to seal CCTV video exhibit in response to minute order requesting a status report given the ruling in *U.S. v. Torrens*); Resp. to Minute Order Regarding Additional Video Exhibits and Release, *U.S. v. Schornak*, 21-cr-278-BAH (D.D.C.), Dkt. 67 (listing seven CCTV video exhibits submitted to the judge and stating that "[t]he government has no objection to any of the videos submitted to this Court to be released to the public").

## CONCLUSION

For the foregoing reasons, the Press Coalition respectfully requests that the Court grant its motion to intervene, order the Government to remove the "Sensitive" or "Highly Sensitive" designation from CCTV videos, and grant such other and further relief as is just and proper.

Dated: March 23, 2023   Respectfully submitted,

           BALLARD SPAHR LLP

           */s/ Charles D. Tobin*
           Charles D. Tobin (#455593)
           Maxwell S. Mishkin (#1031356)
           Lauren Russell (#1697195)
           1909 K Street, NW, 12th Floor
           Washington, DC 20006
           Telephone: (202) 661-2200
           Fax: (202) 661-2299
           tobinc@ballardspahr.com
           mishkinm@ballardspahr.com
           russelll@ballardspahr.com

           *Counsel for the Press Coalition*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of March 2023, I caused true and correct copies of

the foregoing to be served via electronic mail and U.S. Mail on the following:

Jason M. Crawford
CROWELL & MORING LLP
Civil Division, Fraud Section
1001 Pennsylvania Ave NW
Washington, DC 20004
jcrawford@crowell.com

Kelly Elizabeth Moran
USAO
601 D Street NW
Washington, DC 20503
kelly.moran@usdoj.gov

*Attorneys for the United States*


WILLIAM POPE
1106 NW Jackson
Topeka, KS 66608
will@freestatekansas.com

*Pro se Defendant*

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)