UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-cr-128-RC |
| | : | |
| WILLIAM ALEXANDER POPE | : | |
| | : | |
| Defendant. | : | |
| | : | |
| CABLE NEWS NETWORK, INC., et al., | : | |
| Intervenors. | : | |

## UNITED STATES' OPPOSITION TO THE PRESS COALITION'S MOTION TO INTERVENE

The United States of America hereby opposes the third-party intervener's ("Press Coalition") Motion to Intervene insofar as it (1) challenges the government's designation of U.S. Capitol security video and other video as "Sensitive" and "Highly Sensitive" pursuant to the parties' Protective Order Governing Discovery issued on May 5, 2021 (ECF No. 26), and (2) asks the Court to require the government to provide that video to the press and the public. The Press Coalition's Motion appears to rest on a theory that because some Capitol CCV video has been released at various trials or through other means, the government has no legitimate concerns as to the bulk release of the remaining tens of thousands of hours of CCV footage relating to January 6, 2021. In this case, however, the government has not submitted the videos at issue in the defendant's case to the Court, and upon information and belief, these videos have never been the subject of any judicial decision; thus, it is not a "judicial record" to which any public right of access might attach. Insofar as the Press Coalition seeks to challenge the government's designation of the videos as "Sensitive" and "Highly Sensitive" on behalf of the defendant, the Press Coalition's arguments both fail to appreciate the meaningful differences between still images and videos and, taken to

1

their logical conclusion, would allow the public dissemination of thousands of hours of video from security cameras inside the U.S. Capitol, thus creating the very dangers to the Capitol's security that the "Sensitive" and "Highly Sensitive" designation seeks to prevent. The Press Coalition's Motion to Intervene should be denied.

## I. Background

The relevant background to the Press Coalition's Motion to Intervene is as follows:

On May 5, 2021, at the government's request and with the defendant's consent, the Court entered a protective order governing discovery in this case. ECF No. 26. The protective order allows the government to designate certain materials provided in discovery as "Sensitive" or "Highly Sensitive," and expressly recognizes that "[s]urveillance camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds" is among the "[e]xamples of materials that the United States may [so] designate" (ECF No. 26 at 1). Among other things, the protective order prevents the dissemination of materials designated as "Sensitive" or "Highly Sensitive": "to any persons other than Defendant, the legal defense team, or the person to whom the Sensitive or Highly Sensitive information solely and directly pertains or his/her counsel, without agreement of the United States or prior authorization from the Court" (*id.* at 2).

After the Court entered the protective order, the government provided to the defendant's standby counsel, Nicole Cubbage, footage from the U.S. Capitol Police's closed-circuit video system that it designated as "Highly Sensitive". On October 30, 2022, the defendant moved the Court to remove the "Highly Sensitive" designation from Capitol CCV (ECF No. 67), which the government opposed (ECF No. 71).

On November 21, 2022, and February 21, 2023, the defendant filed supplemental motions relating to the designation of certain videos as sensitive and highly sensitive. ECF Nos. 72 and 82.

The defendant's filings (ECF Nos. 72 and 82), refer to Relativity items MPD-005-000032, -000033, -000034, -000035, -000036, and -000037, disclosed January 14, 2022, as part of Global Production No. 10, related to six files from Metropolitan Police Department's ("MPD's") Electronic Surveillance Unit ("ESU"). Those motions are pending.

On March 28, 2023, the Press Coalition filed the instant Motion to Intervene for the "limited purpose of challenging the Government's designation of surveillance video from the United States Capitol as 'Sensitive' or 'Highly Sensitive,' which improperly prevents Defendant William Pope from presenting that material to the press and the public." ECF No. 94 at 2. The Press Coalition asserts that: "the Government cannot demonstrate a legitimate need to designate surveillance footage as "Sensitive" or "Highly Sensitive" as many videos from Capitol surveillance cameras have already been made public by the Department of Justice, Congress, and the press. The Court should therefore order the Government to remove the challenged designation and to permit Defendant to release videos to the press and public.'" *Id.* The Press Coalition further asks the Court to "order the Government to remove the challenged designation and to permit Defendant to release video clips to the press and the public" (*id.*). For the purposes of this opposition, the government assumes that the Press Coalition's request is broad and related to CCV and/or videos currently subject to ongoing litigation.

II.     **Argument**

The government will not contest the Press Coalition's ability to intervene at this time for the purpose of challenging the government's designation of surveillance video as "Sensitive" and "Highly Sensitive" under the parties' protective order. The Court should, however, deny the Press Coalition's Motion to Intervene on the merits. There is no legal basis for the Press Coalition's request that the Court require the government to make "available to the press and the public"

criminal discovery that the government has never filed with or submitted to the Court, that has never been the subject of a judicial decision, and that has only been submitted to the Court as part of a defense motion to remove the videos' "Sensitive" and "Highly Sensitive" designations. And the government's designation of the videos as "Sensitive" and "Highly Sensitive" under the protective order was entirely appropriate.

### A.   The Press Coalition May Intervene in Limited Circumstances

It is unclear whether the Press Coalition may intervene in this case to challenge the government's designation of the video clips at issue as "Sensitive" and "Highly Sensitive" under the parties' protective order. As the Second Circuit has explained, although "[t]he Federal Rules of Criminal Procedure make no reference to a motion to intervene in a criminal case[,] . . . such motions are common . . . to assert the public's First Amendment right of access to criminal proceedings." *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) (citing cases). That court thus held "that a motion to intervene to assert the public's First Amendment right of access to criminal proceedings is proper." *Id.* But, as discussed below, the video at issue is not a judicial record, and thus the public has no right of access to that video: "the media's right of access does not extend to information gathered through discovery that is not part of the public record[.]" *Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d 893, 898 (7th Cir. 1994); *see also, e.g.*, *United States v. Bundy*, No.: 2:16-cr-046-GMN-PAL, 2016 U.S. Dist. LEXIS 166626, at *9 (D. Nev. Nov. 30, 2016) ("[T]he U.S. Supreme Court has long held that there is no common law or First Amendment public right of access to *discovery* information, let alone any presumption of a right to access. . . . The qualified First Amendment right of access to judicial proceeding and documents simply does not extend to discovery materials."); *In re Special Proceedings*, 291 F. Supp. 2d 44, 48 (D.R.I. 2003) ("the media have a presumptive common-law right of access to judicial records but not to

4

potential evidence possessed by the parties") (citing cases). Moreover, there is a standing order that allows the press access to videos that are actually used as exhibits, or otherwise introduced as evidence, in court. *See, e.g.*, *United States v. Puma*, No. 21-0454 (PLF), 2023 WL 2727755, at *2 (D.D.C. March 31, 2023) (discussing Standing Order 21-28). In *In re Press Coalition's Motion*, No. 1:21-mc-155-RCL, 2022 WL 227090 (D.D.C. Jan. 26, 2022), the Court found it "dispositive" that the documents sought by the Press Coalition were not judicial records: "But to determine whether this important right [of public access to judicial records] is implicated, the Court must first ask whether 'judicial records' are at issue. . . . Here, that question is dispositive. Morgan-Lloyd's community service records are not judicial records, so the common-law right of access does not apply. The Court will accordingly DENY the Press Coalition's application." *Id.* at *2.

Although the press has no right of access to discovery exchanged between the parties, the Seventh Circuit in *Grove Fresh* nonetheless held in the civil context that "the press does have standing to challenge a protective order for abuse or impropriety." 24 F.3d at 898. And, in civil cases, courts regularly allow non-parties to intervene to challenge the propriety of the designation of discovery materials as protected pursuant to a protective order. *See, e.g.*, *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1351 (9th Cir. 2013); *Shingara v. Skiles*, 420 F.3d 301, 303 (3d Cir. 2005); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166 (3d Cir. 1993); *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 354-55 (11th Cir. 1987). Thus, the government assumes (but does not concede) that limited intervention may be permissible. *See, e.g.*, *United States v. Loughner*, 807 F. Supp. 2d 828, 831-32 (D. Ariz. 2011) (assuming the media had a right to intervene even though caselaw appeared "to support a limited right [to intervene] that only attaches when court proceedings, and materials that are either filed or lodged with the court, are at issue").

### B. The Press Coalition May Not Seek Disclosure of the Videos at Issue

There is no legal basis for the Press Coalition's demand that the Court "order the Government . . . to make the video clip available to the press and the public" (ECF No. 94 at 2). The government has never filed the clips at issue in the Press Coalition's motion with the Court and such video – to the extent the Press Coalition is sweepingly referring to all litigated videos – has never influenced a judicial decision, and thus it is not a "judicial record" to which any right of public access might attach. While the Press Coalition's motion does not meaningfully distinguish which video(s) it seeks to access, we nonetheless refer to the CCV and MPD videos in the same bucket.

As the D.C. Circuit recently explained, although "third parties may intervene in cases for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order[,]" they "may seek disclosure only of 'public records,' which, in the context of court proceedings, are called 'judicial records.'" *League of Women Voters of the U.S. v. Newby*, 963 F.3d 130, 132 (D.C. Cir. 2020). But materials provided in discovery are not judicial records. *See, e.g.*, *SEC v. American Int'l Group*, 712 F.3d 1, 4 (D.C. Cir. 2013) ("though filing a document with the court is not sufficient to render the document a judicial record, it is very much a prerequisite"); *United States v. Kravetz*, 706 F.3d 47, 55 (1st Cir. 2013) ("[T]he courts of appeals have uniformly held that the public has no common law or constitutional right of access to materials that are gained through civil discovery but neither introduced as evidence at trial nor submitted to the court as documentation in support of motions or trial papers."). As the Eleventh Circuit has explained, "documents collected during discovery are not 'judicial records.' Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume

that the sole purpose of discovery is to assist trial preparation." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986).

The fact that the defendant submitted the video clips to the Court as part of his motion to remove their designations does not somehow transform that video onto a judicial record. The D.C. Circuit has repeatedly held that "not all documents filed with courts are judicial records." *American Int'l Group*, 712 F.3d at 3; *see also Leopold v. United States*, 964 F.3d 1121, 1128 (D.C. 2020) (same). Instead, "what makes a document a judicial record and subjects it to the common law right of access is the role it plays in the adjudicatory process." *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997). To be a judicial record, the item must, at a minimum, be "intended to influence" a court decision. *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 668 (D.C. Cir. 2017). The concept of judicial records "assumes a judicial decision. If none occurs, documents are just documents; with nothing judicial to record, there are no judicial records." *El-Sayegh*, 131 F.3d at 162. The Press Coalition's reliance on *United States v. Torrens (*60 F. Supp. 3d 283 (D.D.C. 2021)) is misguided; access to records used in Court or relied upon in Court is drastically different than those records which have not been played in Court, submitted to the Court for consideration, or otherwise not used by the government to establish the prosecution.

Here, the videos have not influenced any judicial decision, and thus are not a judicial record to which the common-law right of access would apply. *See American Int'l Group*, 712 F.3d at 3-4 ("The IC reports are not judicial records subject to the right of access because the district court made no decisions about them or that otherwise relied on them."). This will remain true even after the Court rules on the defendant's motion to remove the security designations from the videos: for obvious reasons, adjudication regarding a document's public disclosure is insufficient to transform that document into a judicial record. *See El-Sayegh*, 131 F.3d at 163 (holding that document was

not a judicial record where it "played no role in any adjudicatory function—save, of course, those functions relating to its very disclosure"). Indeed, this Court's ruling on the MPD videos will deal with sensitivity designations of multiple videos that do not show the defendant, do not implicate the defendant and do not legally influence this pending prosecution. While the Court may properly rule on such designations, the mere invocation of the content of the videos during litigation over protective order designations does not creatively transform such content into a judicial record that "played . . . an adjudicatory function." *Id.* The circumstances are ironic: the defendant seeks to share videos with the press (his explicit appeal in numerous motions), and thus references (with no connection to his own case) the videos in question. The Press Coalition now seeks to obtain access to said videos on the grounds that they are or will become judicial records, simply by virtue of the defendant filing a motion to expand access outside of the protective order, so that he can share such videos with the press. This arguable abuse of the discovery process is circular in nature.

In reality, because the Press Coalition has no right of access to the video clip at issue, there is no legal basis for its request that the Court order the government to provide the press and the public with access to that video. If circumstances change with respect to this video during the pending litigation, the government will reassess its position as appropriate.

### C. The Highly Sensitive Designation Is Appropriate

The Court should also deny the Press Coalition's Motion to Intervene insofar as it seeks to require the government to remove the "Sensitive" and "Highly Sensitive" designations from Capitol CCV.

When a non-party intervenor challenges another party's designation of a document or other item produced in discovery as protected pursuant to an existing protective order, the party seeking to keep the document protected bears the burden of establishing "good cause" to do so. *See, e.g.*,

*Blum*, 712 F.3d at 1355; *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994); *United States v. Concord Mgmt. & Consulting LLC*, 404 F. Supp. 3d 67, 74 (D.D.C. 2019). To establish "good cause," the party must "show[ ] that specific prejudice or harm" will result from removing the challenged item's protected designation. *Blum*, 712 F.3d at 1355 (quotation marks omitted). "It is well established that protective orders are appropriate where the disclosure of discovery could jeopardize the national security of the United States, compromise an ongoing investigation, or infringe on the privacy of uncharged third parties and others associated with a case." *Concord Mgmt.*, 404 F. Supp. 3d at 75 (citing cases). Indeed, many courts "have granted protective orders regarding unclassified, but sensitive material vital to national security." *United States v. Lindh*, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002) (quotation marks omitted).

Here, there appears to be no dispute that the government may properly designate footage from the U.S. Capitol Police's closed-circuit video system as "Sensitive" and "Highly Sensitive" under the protective order. Indeed, the protective order itself expressly contemplates that result. ECF No. 23. As the government explained in its opposition to the defendant's motion to remove the designations from the video clips at issue in the defendant's motions (ECF Nos. 72 and 82), access to the Capitol's closed-circuit video system is strictly limited (ECF Nos. 71 and 88). And, more specifically, the Capitol Police are aware of efforts made by individuals, whether participants in the Capitol Attack or not, to gather information about the interior of the U.S. Capitol that is generally not publicly available (ECF No. 71). The Capitol Police are appropriately concerned "that providing unfettered access to hours of extremely sensitive information to defendants who have already shown a desire to interfere with the democratic process will result in the layout, vulnerabilities, and security weaknesses of the U.S. Capitol being collected, exposed and passed on to those who might wish to attack Capitol again." ECF No. 71. *See generally Dhiab v. Trump*,

9

852 F.3d 1087, 1096-97 (D.C. Cir. 2017) ("The government's expert judgment was that militants could study the recordings repeatedly and slowly, looking for 'patterns' of 'mistakes' not identifiable from firsthand experience or written descriptions. Even if the recordings contained no new information, the government thus demonstrated good cause for sealing them.") (citation omitted). The government has thus consistently designated footage from the Capitol Police's closed-circuit video system as "Highly Sensitive" when producing it in discovery in cases involving the January 6, 2021, Capitol Attack. Although the Press Coalition did not make this argument directly, the defendant has made much of the fact that he could theoretically create a flip-book version of a given Sensitive or Highly Sensitive video and share that flip book with the press. ECF No. 72. The Court has previously determined, in *Puma*, that screen captures are distinct from videos. *See Puma*, 2023 WL 2727755, at *4 ("Although the screenshots were derived from the videos, the videos themselves contain a much fuller and more vivid representation of what Mr. Puma experienced that day – a picture which cannot be conveyed in still images alone. . . . While there has been some degree of public access to portions of these videos given the public disclosure of a few screenshots, it is not accurate to say that there has been prior public access to these videos in their entirety. The majority of these videos has not been disclosed."). Further, as another judge in this District has concluded, "maintaining the confidentiality of [the Capitol Police's] footage is vital to protecting the Capitol—especially as to those who have sought to attack it." *United States v. McCaughey*, No. 1:21-cr-40 (TNM), 2021 WL 1564463, at *4 (D.D.C. April 21, 2021).

Notwithstanding the foregoing, the Press Coalition argues that "The Government cannot demonstrate a legitimate need to designate surveillance footage as "Sensitive" or "Highly Sensitive" as many videos from Capitol surveillance cameras have already been made public by the Department of Justice, Congress, and the press." (ECF No. 94 at 2). Were the Court to accept

10

this argument, burnished with very few facts related to how many of those "videos" have actually been made public, it would have ramifications for the Capitol Police's ability to protect the U.S. Capitol.

As an initial matter, there are significant differences between the information that can be gleaned from a still image and the information that can be learned from video, such that designation of such content remains paramount. For example, still images do not show whether the camera at issue is moving or static. *Cf. Lee v. Andersen*, 616 F.3d 803, 808 (8th Cir. 2010) ("The camera rotated 360 degrees in a time period of 118 seconds, focusing on certain doors and windows before panning out for a wider view of the surrounding area."). Even if a camera does not move automatically, still images do not show whether its movement can be controlled remotely. *Cf. InTouch Techs., Inc. v. VGo Communs., Inc.*, 751 F.3d 1327, 1333 (1st Cir. 2014) ("The technology relates to controlling the movement of a remote video camera in real time directly responsive to movement of a remote mouse pointer."). And even for a static camera, still images do not reveal whether the camera has zoom capabilities. Additionally, still images do not show the number of frames per second at which the video is recorded, and thus the level of detail it may capture. *Cf. Ochoa v. Beard*, No. CV 15-0443-FMO (KES), 2016 U.S. Dist. LEXIS 95384, at *26 (C.D. Cal. June 16, 2016) ("Pinchak *did* call White to testify that the video from the relevant surveillance camera recorded only 6 frames per second rather than the standard 24 or 30 frames. Indeed, Pinchak used this fact in his closing statement to explain why there was no muzzle flash from Alfredo's supposed gun."). Therefore, although a handful of still images from video footage have been included in public filings in *this* case, those images do not convey the full range and depth of information that the U.S. Capitol's closed-circuit video system potentially may capture. Were videos from that system made public, those intent on attacking the Capitol "could study the

recordings repeatedly and slowly, looking for 'patterns' of 'mistakes' not identifiable from" still images; thus, "[e]ven if the recordings contained no new information," there is "good cause for sealing them." *Dhiab*, 852 F.3d at 1096-97.

Moreover, the Coalition's motion would require the government to de-designate many hours of security footage from video cameras throughout the U.S. Capitol. The Press Coalition claims that:

> because the public already has access to an enormous volume of CCTV videos from inside the Capitol, the Government…cannot demonstrate that permitting Defendant to republish *other* CCTV videos would pose any further threat to the security of the Capitol. Especially when weighed against the public's interest in viewing videos of "the most significant assault on the Capitol since the War of 1812," [T]*rump v. Thompson*, 20 F.4th 10, 18-19 (D.C. Cir. 2021), the Government cannot justify maintaining its designation of the CCTV videos as "Sensitive" or "Highly Sensitive."

ECF No. 94 at 7. The Capitol Police did not consent to the release of approximately 40 clips of Capitol CCV to the Tucker Carlson Show, or to the broadcast of that same footage on March 6 and 7, 2023. ECF No. 94 at 8. If these factors are sufficient to prevent the government from designating security footage from inside the U.S. Capitol as Highly Sensitive under the protective order, the government would not be able to protect any of the security footage that it has disclosed through Global and Case-Specific Discovery, thus creating the very security concerns the protective order is meant to mitigate. *See McCaughey*, 2021 WL 1564463, at *4.

To be clear, the Press Coalition claims are also unsupported in its own motion. According to the Press Coalition, the "public already has access to an enormous volume of CCV videos from inside of the Capitol." ECF No. 94, at 7. Undersigned counsel is aware that certain, shorter clips inside of the Capitol have been used in litigation (including trials) of other January 6 defendants, and during Congressional hearings regarding January 6, 2021. Open-source videos or certain body-worn camera materials have also been disseminated as part of public trials. But the Press Coalition

does not attempt to quantify or clarify the list of CCV videos already released to the public, such that widespread dissemination of all videos would be appropriate or legally justified. Moreover, the Press Coalition presumably already has access to those videos shared with the Press or the public.

Even requiring the government to remove its Highly Sensitive designation from the specific CCV clip at issue in the defendant's motion [ECF Nos. 72 and 82] "may seem innocuous when viewed in isolation," but nonetheless poses serious security concerns under a "mosaic theory." *Kasza v. Whitman*, 325 F.3d 1178, 1181 (9th Cir. 2003). Under that theory, "separate disclosures of otherwise innocuous information could be assembled by a requester or other person to reveal 'how, when, [and] under which circumstances[] certain techniques are employed' by law enforcement and investigative agencies. . . . Thus, the only way to prevent anyone from constructing the broader 'mosaic' is to shield each individual piece from disclosure." *Whittaker v. DOJ*, No. 18-cv-01434 (APM), 2020 WL 6075681, at *5 (D.D.C. Oct. 15, 2020). This theory "finds support in both Supreme Court and D.C. Circuit precedent" and "[a]s a result, in cases implicating national security, courts have permitted the government to rely on [a mosaic approach] to justify withholding agency records that form only a small piece of the larger puzzle." *Shapiro v. DOJ*, 239 F. Supp. 3d 100, 115 (D.D.C. 2017). The Capitol Police have correctly invoked the "mosaic theory" in seeking to protect the video footage from their closed-circuit video system, noting the security concerns implicated by the aggregation of information (ECF Nos. 71 and 88). For instance, "even if some information about the U.S. Capitol's layout is available online, [the Capitol Police's video] footage provides far more detailed information, including, for example, the precise location of the vast network of cameras." *McCaughey*, 2021 WL 1564463, at *4. The government thus has good cause to designate the Capitol CCV at issue as Highly Sensitive under

the parties' protective order, notwithstanding the fact that some other Capitol CCV videos, or a few still images from the videos at issue, are publicly available. Nor does the narrower request to obtain a CCV clip here or there somehow transmute press access to thousands of hours of video in the government's holdings.

WHEREFORE, the Government asks that the Press Coalition's Motion to Intervene be denied.

Respectfully submitted,
MATTHEW GRAVES
UNITED STATES ATTORNEY
DC Bar No.: 481052

*/s/ Kelly E. Moran*
KELLY E. MORAN
NY Bar No. 57764171
Assistant United States Attorney
U.S. Attorney's Office
District of Columbia
601 D Street NW
Washington, DC 20530
Kelly.moran@doj.gov
(202) 252-2407