IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

WILLIAM ALEXANDER POPE,

    Defendant.

CABLE NEWS NETWORK, INC., et al.,

    Proposed Intervenors.

Case No. 1:21-cr-128-RC

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
THE PRESS COALITION'S MOTION TO INTERVENE**

Proposed Intervenors the Press Coalition[1] respectfully submit this reply memorandum in further support of their motion ("Mot.") to intervene in this matter for the limited purpose of challenging the Government's designation of surveillance video from the United States Capitol as "Sensitive" or "Highly Sensitive," which improperly prevents Defendant William Pope from sharing that material with the press and the public.[2] In its opposition ("Opp."), the Government mischaracterizes the relief that the Press Coalition seeks and responds to arguments the Press Coalition did not even make. Moreover, the Government fails to justify the continued

---

[1] The Press Coalition consists of Cable News Network, Inc., Advance Publications, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, CBS Broadcasting Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, POLITICO LLC, Pro Publica, Inc., Tegna, Inc., and WP Company LLC d/b/a The Washington Post.

[2] Defendant has indicated he wants to make certain CCTV videos public. *See* Mot. to Remove Designation of 'Sensitive' from Undercover MPD Videos and Release Them to the Public, Dkt. 82 at 1.

designations in light of the extensive public disclosures of surveillance and other video recordings made inside the Capitol on January 6, 2021.

Because the Government has failed to carry its burden, the Court should grant the Press Coalition's motion, order the Government to remove the sensitivity designations from the surveillance videos at issue, and allow Defendant to share those videos with the public.

## I. The Court Should Permit The Press Coalition To Intervene In This Case.

The law of this Circuit is clear that the Press Coalition may intervene to challenge protective orders and confidentiality designations that restrict access to materials of public concern. *See* Mot. at 7-8 (citing, *inter alia*, *League of Women Voters v. Newby*, 963 F.3d 130, 135 (D.C. Cir. 2020)). In response, the Government acknowledges that "in civil cases, courts regularly allow non-parties to intervene to challenge the propriety of the designation of discovery materials as protected pursuant to a protective order" and therefore it "assumes (but does not concede) that limited intervention may be permissible." Opp. at 5. "[T]he Court may treat the [non-movant's] failure to oppose the [movant's] arguments as a decision to concede those arguments." *Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 268 (D.D.C. 2012), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020); *see also Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("the Court will construe [non-movant's] failure to refute the [movant's] assertion . . . as conceded"), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004). The Court should therefore grant the Press Coalition's request to intervene for the purposes set forth in the Motion.

## II. The Government's Arguments About The Right Of Access Are A Red Herring.

The Government makes the inapposite argument that "[t]here is no legal basis for the Press Coalition's demand that the Court 'order the Government . . . to make the video clip available to the press and public' (ECF No. 94 at 2)." *See* Opp. at 6 (Government's alteration). The Press Coalition made no such demand. Indeed, the quoted phrase "make the video clip

2

available to the press and public" does not appear *anywhere* in the Press Coalition's motion. The Government's arguments about whether the surveillance videos are subject to those public rights of access, *see* Opp. at 6-8, are therefore irrelevant.

Instead, the Press Coalition asks the Court to remove the sensitivity designations that the Government placed on the surveillance videos provided to Defendant in discovery. That will allow the Defendant to provide these videos to the public, if he so chooses.

### III. The Government Has Not Justified Maintaining Its Sensitivity Designations.

The Government fails to carry its burden of demonstrating the need for continued designation of the surveillance videos it produced to Defendant as "Sensitive" or "Highly Sensitive."[3]

First, the Government again makes an irrelevant assertion that "there appears to be no dispute that [it] may properly designate footage from the U.S. Capitol Police's closed-circuit video system as 'Sensitive' and 'Highly Sensitive' under the protective order." Opp. at 9. But the whole thrust of the Press Coalition's motion is that even if the Government's designations are permissible under the Protective Order, it cannot justify maintaining those designations now given the intervening public release of massive amounts of Capitol riot videos, including other surveillance videos. Indeed, the Protective Order exempts from its scope materials that "[a]re, or later become, part of the public court record," Dkt. 26 at 5, which makes clear that the Government knew the justification for its sensitivity designations would erode over time.

Second, the Government suggests that the release of Capitol surveillance videos to former Fox News host Tucker Carlson should not factor into determining whether good cause exists to maintain its sensitivity designations because "the Capitol Police did not consent to the

---

[3] The Government concedes it bears this burden. *See* Opp. at 8 ("the party seeking to keep the document protected bears the burden of establishing 'good cause' to do so").

3

release" of these videos "or to the broadcast of that same footage." Opp. at 12. Regardless of the Capitol Police's position, the Speaker of the House officially released the videos to a member of the news media, and that release makes superfluous the Government's purported concerns about the disclosure of "the layout, vulnerabilities, and security weaknesses of the U.S. Capitol," Opp. at 9.

Third, the Government complains that "the Press Coalition does not attempt to quantify or clarify the list of [surveillance] videos already released to the public, such that widespread dissemination of all videos would be appropriate or legally justified." Opp. at 12-13. But the Press Coalition is not obliged to justify removing sensitivity designations – the Government needs to justify maintaining those designations. *See* Dkt. 26 at 5 ("the burden of demonstrating the need for a protective order remains with the government at all times").

Fourth, the Government asserts that removing sensitivity designations from the surveillance videos produced to Defendant "poses serious security concerns" arising out of the possible "aggregation of information" from multiple videos. Opp. at 13. But that is precisely the concern then-Chief Judge Beryl A. Howell characterized – back in September 2021 – as "undercut by the already extensive release of [surveillance] footage from the Capitol." *United States v. Torrens*, 560 F. Supp. 3d 283, 293-94 (D.D.C. 2021) ("The government hypothesizes that bad actors could use the five videos at issue in this case, in conjunction with other video, to track the movement of individuals through the Capitol and thereby discern the floor plan. This concern is too general to support the government's asserted need for secrecy."). Two years of additional video releases since the *Torrens* ruling only undercut that rationale even further.[4]

---

[4] The Press Coalition has now intervened in more than 100 of the January 6 prosecutions in this District, securing dozens of hours of video through Court orders granting its motions for access. As a service to the public, Press Coalition member ProPublica has posted to the web most of the video the coalition has secured. *See Video Evidence Shown in the Capitol Insurrection*

4

Finally, disclosure of surveillance cameras' zoom and movement capabilities, *see* Opp. at 11, would not pose a national security risk. As seasoned photojournalist and media law attorney Mickey Osterreicher observed in responding to the first declaration of Capitol Police Department General Counsel Thomas DiBiase, pan, tilt, and zoom capabilities on surveillance cameras "are not remarkable or unique technologies for security cameras" and "it would not disclose sensitive security information for the public to know that CCTV cameras are in service in the heavily monitored Capitol building or how many of the cameras in the Capitol have [pan-tilt-zoom] capability." *See* Decl. of Mickey Osterreicher ¶ 7, *United States v. Torrens*, No. 21-cr-204-BAH-2 (D.D.C. Sept. 12, 2021), Dkt. 82-1.

Because all of the Government's arguments for maintaining these sensitivity designations collapse under scrutiny, the Government has not shown good cause to continue designating the surveillance videos it produced to Defendant as "Sensitive" or "Highly Sensitive." The Court should therefore order the Government to remove that designation for the videos at issue here.

## CONCLUSION

For the foregoing reasons and those set out in its initial Motion, the Press Coalition respectfully requests that the Court permit it to intervene in this matter, order the Government to remove the "Sensitive" or "Highly Sensitive" designation from CCTV videos, and grant such other and further relief as is just and proper.

---

*Criminal Cases*, ProPublica (July 27, 2021), https://projects.propublica.org/jan-6-video-evidence/.

Dated: April 25, 2023

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren Russell (#1697195)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of April 2023, I caused true and correct copies of the foregoing to be served via ECF on counsel of record and via electronic mail and U.S. Mail on the following:

WILLIAM POPE
1106 NW Jackson
Topeka, KS 66608
will@freestatekansas.com

*Pro se Defendant*

                                                /s/ *Charles D. Tobin*
                                                Charles D. Tobin (#455593)