## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Criminal Action No.: 21-0128 (RC) |
| v. | : | |
| | : | Re Document No.:   67 |
| WILLIAM POPE, | : | |
| | : | |
| Defendant. | : | |

## ORDER

### DENYING DEFENDANT'S MOTION TO MODIFY PROTECTIVE ORDER

Defendant William Pope was indicted on charges arising out of his alleged participation in the riot at the Capitol on January 6, 2021.  *See* Superseding Indictment, ECF No. 46.  On the Government's unopposed motion, *see* Gov't's Unopposed Mot. Protective Order, ECF No. 23, the Court entered a protective order to govern discovery under Fed. R. Crim. P. 16(d)(1), *see* Protective Order, ECF No. 26.  Among other things, the protective order provides for differential treatment of case-specific and global discovery material bearing different sensitivity designations.[1]  Specifically, as relevant here, it permits Defendant to possess "Sensitive" material but only permits Defendant to view "Highly Sensitive" material.  *See id.* at 2–4.  The Highly Sensitive material in question is U.S. Capitol Police ("USCP") CCTV surveillance

---

[1] Case-specific discovery refers to discovery that is particular to Defendant, while global discovery refers to discovery that has been made available to all January 6 defendants.  *See* Gov't's Req. *Faretta* Inquiry at 2, ECF No. 60.  The Government made three case-specific productions, each of which included material designated as "Sensitive" or "Highly Sensitive." *Id.* at 3–4.  With respect to global discovery, the Government placed "24,000 files consisting of body-worn and hand-held camera footage from five law enforcement agencies and surveillance-camera footage from three law enforcement agencies" into an "evidence.com video repository" managed and administered by the Federal Public Defender for the District of Columbia. *Id.* at 4. Over 20,000 of these files consist of U.S. Capitol Police CCTV surveillance footage designated as "Sensitive" or "Highly Sensitive."  *Id.*  All other global discovery materials—totaling almost 2.2 million files—were provided via a Relativity database.  *See id.* at 5.

footage of the Capitol on January 6.[2]  While the protective order permits Defendant to view

material designated Highly Sensitive, it requires that he do so only under supervision of defense

counsel or an attorney, investigator, paralegal, or support staff person employed by defense

counsel.  *Id.*  The order specifies that defense counsel, may, after notice to the Government,

"supervise Defendant by allowing access to Highly Sensitive materials through a cloud-based

delivery system that permits Defendant to view the materials but does not permit Defendant the

ability to download."  *Id.* at 4.  Now proceeding *pro se*,[3] Defendant moves to modify the

protective order to permit him to directly access and possess USCP surveillance video designated

Highly Sensitive.  *See generally* Def.'s Mot. Modify Protective Order ("Def.'s Mot."), ECF No.

67.

Federal Rule of Criminal Procedure 16 "requires the Government to produce, upon the

defendant's request, any documents and data that are material to preparing the defense."  *United

States v. McCaughey*, 534 F. Supp. 3d 132, 137 (D.D.C. 2021) (citation omitted); *see* Fed. R.

Crim P. 16(a)(1)(A)–(G).  However, it also provides the Court discretion to regulate discovery,

permitting it to "deny, restrict, or defer discovery or inspection, or grant other appropriate relief"

---

[2] Other types of materials were also designated as Highly Sensitive.  *See, e.g.*, Gov't's Req. *Faretta* Inquiry at 4 (listing Grant Jury material produced to Defendant as designated Highly Sensitive).  However, Defendant's motion focuses exclusively on USCP surveillance video marked Highly Sensitive, so the Court's analysis also focuses on such material.

[3] On June 29, 2021, Defendant's counsel moved to withdraw and indicated that Defendant intended to proceed *pro se*.  *See* Mot. Withdraw at 1, ECF No. 57.  The Government did not oppose Defendant's motion, but emphasized that, before allowing Defendant to proceed *pro se*, the Court should "correct Defendant's faulty assumption" that proceeding *pro se* would entitle him to ignore the protective order and gain direct access to the discovery database.  Gov't's Req. *Faretta* Inquiry at 1.  The Court held a *Faretta* hearing at which it found Defendant competent to waive counsel and ordered standby counsel appointed, while also stating that the protective order would remain in place pending any motion to modify it after Defendant had a chance to confer with standby counsel.  *See* Minute Order (Aug. 2, 2022).  Nicole Cubbage was thereafter appointed as standby counsel.  *See* Notice of Att'y Appearance, ECF No. 61.

on a showing of "good cause." Fed. R. Crim. P. 16(d)(1). "[A]mong the considerations to be taken into account by the court [are] the safety of witnesses and others, a particular danger of perjury or witness intimidation, [and] the protection of information vital to national security." *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (citation omitted). "[O]nce a showing of good cause has been made, the court has relatively unconstrained discretion to fashion an appropriate protective order." *United States v. Johnson*, 314 F. Supp. 3d 248, 251 (D.D.C. 2018).

Here, Defendant argues that the protective order's restrictions violate his Sixth Amendment right to conduct his own defense.[4] *See* Def.'s Mot. at 1–5. While the Court

---

[4] Defendant also argues that the requirement for standby counsel to supervise his access to Highly Sensitive material violates his Equal Protection and Due Process rights. *See* Def.'s Mot. at 2–4. These arguments are without merit. A "class of one" Equal Protection claim alleges that the party "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). But Defendant focuses exclusively on comparing his situation to that of represented defendants, and makes no allegations that similarly situated *pro se* defendants have been treated differently without any rational basis. *See* Def.'s Mot. at 5–6; *see also* Gov't's Opp'n at 7–8, ECF No. 71 (explaining that "none of the other 900+ January 6 defendants have received . . . direct unsupervised access to global discovery" and that "standby counsel has been appointed [to facilitate access to discovery] in *every* [January 6] case" involving a *pro se* defendant).

With respect to Defendant's Due Process argument, Defendant does not contest that, in addition to the ability to possess and control Sensitive material and still images of video designated Highly Sensitive, he has full access to view all Highly Sensitive material, even though he must undertake procedures in order to do so under the supervision of standby counsel. Instead, Defendant alleges that a journalist released a video designated as Highly Sensitive, and that this somehow establishes a *Brady* violation. *See* Def.'s Mot. at 19. Setting aside the fact that Defendant has access to Highly Sensitive material so there is no allegation that anything was actually withheld, the protective order explicitly exempts from its requirements "[m]aterials that the defense obtains by means other than discovery." Protective Order ¶ 11. Absent specific allegations of exculpatory material actually withheld, the Court can see no violation of the Government's continuing obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). *See United States v. Ruiz*, 536 U.S. 622, 629 (2002) ("[T]he Constitution does not require the prosecutor to share all useful information with the defendant.").

acknowledges that the protective order's restrictions may pose some inconvenience to Defendant, it finds that they are based on good cause and do not violate Defendant's right to conduct his defense.

The Government has established good cause for the requirement that standby counsel mediate Defendant's access to USCP surveillance footage designated Highly Sensitive.  The Government submits a declaration from Thomas A. DiBiase, the General Counsel of the USCP.  *See* DiBiase Decl., Ex. A to Gov't's Opp'n, ECF No. 71-1.  Mr. DiBiase, quoting language USCP has included in motions for protective orders in criminal cases in D.C. Superior Court, explains that "the purpose of the [Capitol surveillance] cameras is to assist in the maintenance of national security by detecting threats to U.S. Congressmen, their staff, and constituents, deterring and preventing terrorism, and providing for the safety and security of the Capitol Building and Grounds."  *Id.* ¶¶ 8–9.  He goes on to explain that USCP has "significant concerns with the release of any of its footage to defendants in the Capitol attack cases unless there are safeguards in place to prevent its copying and dissemination."  *Id.* ¶ 14.  This is based on USCP's awareness that participants in the January 6 riot made efforts to "gather information regarding the interior of the U.S. Capitol, including references to the tunnels below the Grounds and maps of the building's layout."  *Id.*  He explains USCP's concern that "unfettered access to hours of extremely sensitive information" would result in "vulnerabilities and security weaknesses of the U.S. Capitol being collected, exposed and passed on to those who might wish to attack the Capitol again."  *Id.*  On this basis, and in line with the approach taken by other courts in this District, *see, e.g.*, Min. Order, *United States v. Clark*, No. 22-cr-409 (Feb. 8, 2023) (denying *pro se* January 6 defendant "unrestricted access to the online discovery databases"); Order at 3–4, *United States v. White*, No. 21-cr-563 (Oct. 17, 2022) (appointing standby counsel to facilitate

*pro se* January 6 defendant's access to discovery consistent with the protective order), the Court finds that good cause exists for the protective order's requirement that Defendant have supervised, view-only access to Highly Sensitive CCTV footage, *see United States v. Concord Mgmt. & Consulting*, 404 F. Supp. 3d 67, 73 (D.D.C. 2019) ("It is well established that protective orders are appropriate where the disclosure of discovery could jeopardize the national security of the United States . . . .").

To be sure, as Defendant points out, the good cause analysis is complicated somewhat by recent reports that leadership in the House of Representatives has provided access to view the CCTV footage to personnel from Tucker Carlson Tonight, a Fox News television show. *See* Def.'s Update Disc. Access Issues at 1–2, ECF No. 85; Mike Allen, *McCarthy gives Tucker Carlson access to trove of Jan. 6 riot tape*, Axios, Feb. 20, 2023, https://www.axios.com/2023/02/20/kevin-mccarthy-tucker-carlson-jan-6-riot-footage. However, according to a supplemental declaration from Mr. DiBiase, House leadership only provided personnel from the show access to view the footage using terminals in a House Office Building, and there only while "supervised by staff from [the Committee on House Administration]." DiBiase Suppl. Decl. ¶¶ 10–11, ECF No. 88-1. Mr. DiBiase explains that he was "informed that . . . no footage had been physically turned over to the show," *id.* ¶ 11, though he acknowledges that approximately forty-one clips were ultimately shown during the Tucker Carlson Tonight show on March 6 and March 7, 2023, *see id.* ¶ 14. Still, Mr. DiBiase states that just one of those clips was designated Sensitive, and that clip was shown to him and approved for release ahead of time. *See id*.

There is considerable uncertainty as to whether and how House leadership will make any future disclosures. Many reports suggest that House leadership will proceed cautiously, sensitive

to the same concerns animating the Court's finding of good cause.  *See, e.g.*, Emily Brooks &
Mike Lillis, *McCarthy, GOP pump brakes on release of Jan. 6 footage to Tucker Carlson*,  THE
HILL, Feb. 28, 2023, https://thehill.com/homenews/house/3878242-mccarthy-gop-pump-brakes-
on-release-of-jan-6-footage-to-tucker-carlson/.[5]  Others suggest a somewhat more cavalier
approach.  *See, e.g.*, Lawrence Richard, *McCarthy says Republicans will 'slowly roll out' Jan. 6
footage to 'every' news agency: 'Goal is transparency,'* Fox News, Mar. 13, 2023,
https://www.foxnews.com/politics/mccarthy-republicans-slowly-roll-out-jan-6-footage-every-
news-agency-goal-transparency.[6]  However this dynamic situation evolves, at this juncture, the
parties point to no additional disclosure of non-public CCTV footage beyond the mediated
access provided by House leadership to the Tucker Carlson Tonight show.  *See* Gov't's Mem.
Supp. DiBiase Suppl. Decl. and Protective Order at 1, ECF No. 90 ("Upon information and
belief, no media organizations other than the [Tucker Carlson Tonight show] has been given

---

[5] For example, this article quotes Speaker of the House Kevin McCarthy as saying,
"[w]e're working through [the footage].  We work with the Capitol Police as well, so we'll make
sure security is taken care of."  Brooks & Lillis.  It reports that Speaker McCarthy "stressed" that
Tucker Carlson Tonight personnel were not interested in footage showing "exit routes."  *Id.*  It
also quotes Representative Barry Loudermilk, the chairman of the House Administration
Committee on Oversight, as saying that he and others were "working on putting protocols
together and policies and procedures and schedules" to govern footage disclosures.  *Id.*
Representative Loudermilk also described the Tucker Carlson show's access as limited and
subject to security review, saying: "It's basically controlled access to be able to view tapes.
Can't record, can't take anything with you.  Then they will request any particular clips that—that
they may need, and then we'll make sure that there's nothing sensitive, nothing classified—you
know, escape routes."  *Id.*

[6] Notably, even in the interview reported on in this article, Speaker McCarthy suggests
that news agencies only would be able to obtain access to the footage by coming to view it at the
Capitol: "I didn't give [Carlson] the tapes, I allowed him to come see them, just like an exclusive
with anybody else. . . .  We will slowly roll out to every individual news agency [so] they could
come see the tapes as well."  Richard.

access to the material at issue in this case.").[7]  The fact of that mediated access alone, based on the information presently available to the Court, does not defeat the security interest advanced by the protective order in preventing unmediated access to Highly Sensitive material by Defendant.[8] *Cf. United States v. Cudd*, 534 F. Supp. 3d 48, 54 (D.D.C. 2021) ("[T]hat video footage of the January 6 events is publicly available does not diminish the need for confidentiality of the [CCTV] footage . . . .").

---

[7] It also bears mention that Tucker Carlson reportedly no longer hosts a show on Fox News.  *See* Oliver Darcy & Marshall Cohen, *Tucker Carlson Out at Fox News*, CNN, Apr. 24, 2023, https://www.cnn.com/2023/04/24/media/tucker-carlson-fox-news/index.html.

[8] Defendant has separately moved to remove the Sensitive designation from certain footage in order to share exhibits with news organizations, based on his belief that "the media and the public should not have to rely on [his] descriptions [of this footage] alone" and the "public interest and concern regarding these exhibits is understandably high."  Def.'s Mot. Remove Sensitive Designations at 1–2, 4, ECF No. 82; *see also* Def.'s Update Disc. Access Issues at 4 ("My motion seeks to unseal [certain footage] to allow the American people to see exactly what happened.").  At the same time, Defendant acknowledges that he does not understand and feels no obligation to protect, beyond following the protective order, the Court's interest in preventing pretrial publicity that could prejudice the parties, witnesses, or third parties involved in this case or any of the many other January 6 cases.  *See* Def.'s Resp. Gov't Mem. ("Def.'s Suppl. Mem.") at 7, ECF No. 95 ("First off, I do not know if [an ethical code on pretrial publicity] exist[s], as the government tends to make things up. . . .  I am not an attorney and have no intention to become one, and I do not know what the ethical standards of the lawyering trade are." (footnotes omitted)).  This bolsters the Court's finding of good cause to prevent Defendant from obtaining unfettered access to footage designated Highly Sensitive.  *See Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979) (explaining that "a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity" and accordingly "may surely take protective measures even when they are not strictly and inescapably necessary"); *United States v. Cudd*, 534 F. Supp. 3d 48, 56 (D.D.C. 2021) (rejecting January 6 defendant's "concern . . . about the limitations on her ability to try this case in the court of public opinion pretrial through dissemination of selected evidence" under a similar protective order on grounds that "[t]he Court's priority is to ensure fair criminal trials to the Government, [the defendant], and other defendants related to the January 6 incident, not cater to parties' interests in selective disclosures to the media" and "pretrial publicity of discovery in this case may injure other defendants, witnesses, and third parties whose personal information was collected in the Government's investigation").

In addition, the protective order's restrictions do not violate Defendant's right to conduct his defense. Under the Sixth Amendment, a *pro se* defendant has the right to "control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984). However, the Court "may—even over objection by the accused—appoint a 'standby counsel to aid the accused." *Farretta v. Cal.*, 422 U.S. 806, 834 n.46 (1975). Still, a *pro se* defendant "is entitled to preserve actual control over the case he chooses to present to the jury," so participation by standby counsel over the defendant's objection must not "substantially interfere with any significant tactical decisions" made by the defendant. *McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984).

At the outset, it bears repeating that Defendant has full access to possess all Sensitive materials and to view all Highly Sensitive material under supervision by standby counsel. *See* Protective Order ¶¶ 4–6. In addition, Defendant may create still images from Highly Sensitive footage for use in this case. *See* Gov't's Resp. to Def.'s Status Report ("Gov't Suppl. Mem.") at 4, ECF No. 80. The protective order also provides for a process by which Defendant can dispute a sensitivity designation or seek redactions that would reduce or eliminate a sensitivity designation.[9] *See* Protective Order ¶ 8.

Defendant explained during a December 2, 2022 conference that he is primarily frustrated by technological delays in gaining access to view large volumes of Highly Sensitive material due to the fact that he resides in Topeka, Kansas, while standby counsel, who provides him viewing access through a cloud-based service, is based in Washington D.C. At the Court's

---

[9] Indeed, as noted *supra* note 8, Defendant has already moved to remove the Sensitive designation from certain footage. *See generally* Def.'s Mot. Remove Sensitive Designations.

suggestion, Defendant explored options for a local attorney to assist standby counsel by supervising Defendant in person, thereby eliminating any remote-access delays. *See generally* Def.'s Status Update, ECF No. 78. Defendant identified a local attorney located approximately 35 minutes away from his home that could provide Defendant a conference room and supervise him for several hours per week.[10] *Id.* at 9–10.

The Government blesses this option as "eminently reasonable," Gov't's Suppl. Mem. at 2, but Defendant complains that traveling the 35 minutes to the office of this attorney, whom he chose to contact in the first place, "would cost [him] time and money" and therefore constitutes a "Jim Crow era poll tax[]." Def.'s Status Report at 11. Defendant's decision to reject this available option to enhance the efficiency of his review of Highly Sensitive material does not alter the Court's conclusion that the protective order's restrictions are based on good cause and do not violate Defendant's right to conduct his defense. Defendant retains access to review Highly Sensitive material, and any inconvenience associated with the requirement for standby counsel to supervise that review merely reflects an appropriate balance, envisioned by the Federal Rules of Criminal Procedure, between Defendant's entitlement to discovery of evidence "material" to his defense and "the protection of information vital to the national security." Fed. R. Crim. P. 16(a)(1)(E); *id.* Advisory Comm. Notes to 1966 Amendment; *cf. United States v. Workman*, No. 18-cr-20, 2019 WL 276843, at *2 (W.D. Va. Jan. 22, 2019) ("Although [defendant] argues that the requirement that he meet with his counsel to review the discovery materials is inconvenient and burdensome because he will have to take approximately 50 hours

---

[10] As reported by Defendant, the attorney agreed to accommodate him for four hours per week and "believe[s]" that he will be able to accommodate him for eight or more hours per week after moving offices this month. *See* Def.'s Status Report at 9–10. The Court remains willing to appoint this or another local attorney to assist Defendant at his request.

off work to do so, the hardship to him is relatively minor in light of the potential for harm to the government's witnesses.").

Contrary to Defendant's overheated complaints of injury from the protective order, *see, e.g.*, Def.'s Update Disc. Access Issues at 8–9 (claiming that the Government, in seeking to enforce the protective order, has "behaved like rabid outlaws rushing the city jail in a western movie, whooping and hollering for this court to violate my Constitutional rights and to rush me to the nearest tree with a noose around my neck," and comparing this "deviance from justice" to "the institution of slavery, the brutalization of native Americans, and the internment of Japanese-Americans"), standby counsel simply acts as a conduit to provide Defendant viewing access to Highly Sensitive material, a role that involves no interference with Defendant's tactical decisions whatsoever. *See United States v. Williamson*, No. 20-cr-195, 2021 WL 5178853, at *2 (D.D.C. Nov. 8, 2021) (finding that order requiring standby counsel to review and file all pretrial motions to prevent frivolous motions does not violate defendant's ability to conduct his own defense). As another court in this District recently explained in a January 6 case, standby counsel's "narrow" role of facilitating access to discovery does not "in any way impact [Defendant's] ability to 'present [his] own case in [his] own way." Order at 3, *United States v. White*, No. 21-cr-563 (Oct. 17, 2022) (quoting *McKaskle*, 465 U.S. at 177).

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion to Modify the Protective Order, ECF No. 67, is **DENIED**.

**SO ORDERED**.

Dated:  April 26, 2023                                      RUDOLPH CONTRERAS
                                                                         United States District Judge