APPEAL,CAP,CAT B

# U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: <u>1:21–cr–00128–RC</u>–1

Case title: USA v. POPE et al

Magistrate judge case number:  1:21–mj–00217–ZMF

Date Filed: 02/17/2021

Assigned to: Judge Rudolph
Contreras

### **Defendant (1)**

| | | |
|---|---|---|
| **WILLIAM POPE** | represented by | **WILLIAM POPE** |
| | | 1106 NW Jackson |
| | | Topeka, KS 66608 |
| | | 785–817–9349 |
| | | Email: <u>will@freestatekansas.com</u> |
| | | PRO SE |
| | | |
| | | **Gregory Bruce English** |
| | | ENGLISH LAW FIRM, PLLC |
| | | 601 King Street |
| | | Suite 406 |
| | | Alexandria, VA 22314 |
| | | (703) 739–1368 |
| | | Fax: (703) 836–6842 |
| | | Email: <u>gbeuva@gmail.com</u> |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Nicole Ann Cubbage** |
| | | LAW OFFICE OF NICOLE CUBBAGE |
| | | 712 H. Street NE |
| | | Unit 570 |
| | | Washington, DC 20002 |
| | | 703–209–4546 |
| | | Email: <u>cubbagelaw@gmail.com</u> |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |
| | | |
| | | **Terry Eaton** |
| | | DOJ–CRM |
| | | 1301 New York Avenue, N.W. |
| | | 2nd Floor, Suite 251 |
| | | Washington, DC 20005 |

1

202–514–1320
Email: terry.eaton@usdoj.gov
*TERMINATED: 01/06/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Pending Counts**                              **Disposition**

18 U.S.C. 231(a)(3); CIVIL
DISORDER; Civil Disorder
(1)

18:231(a)(3); CIVIL DISORDER;
Civil Disorder
(1s)

18 U.S.C. 1512(c)(2) and 2;
TAMPERING WITH A
WITNESS, VICTIM OR
INFORMANT; Obstruction of an
Official Proceeding and Aiding
and Abetting
(2)

18:1512(c)(2) and 2;
TAMPERING WITH A
WITNESS, VICTIM OR
INFORMANT; Obstruction of an
Official Proceeding and Aiding
and Abetting
(2s)

18 U.S.C. 1752(a)(1);
TEMPORARY RESIDENCE OF
THE PRESIDENT; Entering and
Remaining in a Restricted
Building or Grounds
(3)

18:1752(a)(1); TEMPORARY
RESIDENCE OF THE
PRESIDENT; Entering and
Remaining in a Restricted
Building or Grounds
(3s)

18 U.S.C. 1752(a)(2);
TEMPORARY RESIDENCE OF
THE PRESIDENT; Disorderly and
Disruptive Conduct in a Restricted
Building or Grounds
(4)

18:1752(a)(2); TEMPORARY
RESIDENCE OF THE

2

PRESIDENT; Disorderly and
Disruptive Conduct in a Restricted
Building or Grounds
(4s)

18 U.S.C. 1752(a)(3);
TEMPORARY RESIDENCE OF
THE PRESIDENT; Impeding
Ingress and Egress in a Restricted
Building or Grounds
(5)

18:1752(a)(3); TEMPORARY
RESIDENCE OF THE
PRESIDENT; Impeding Ingress
and Egress in a Restricted
Building or Grounds
(5s)

40 U.S.C. 5104(e)(2)(D);
FEDERAL STATUTES, OTHER;
Disorderly Conduct in a Capitol
Building
(6)

40:5104(e)(2)(D); VIOLENT
ENTRY AND DISORDERLY
CONDUCT ON CAPITOL
GROUNDS; Disorderly Conduct
in a Capitol Building
(6s)

40 U.S.C. 5104(e)(2)(E);
FEDERAL STATUTES, OTHER;
Impeding Passage Through the
Capitol Grounds or Buildings
(7)

40:5104(e)(2)(E); VIOLENT
ENTRY AND DISORDERLY
CONDUCT ON CAPITOL
GROUNDS; Impeding Passage
Through the Capitol Grounds or
Buildings
(7s)

40 U.S.C. 5104(e)(2)(G);
FEDERAL STATUTES, OTHER;
Parading, Demonstrating, or
Picketing in a Capitol Building
(8)

40:5104(e)(2)(G); VIOLENT
ENTRY AND DISORDERLY
CONDUCT ON CAPITOL
GROUNDS; Parading,

Demonstrating, or Picketing in a
Capitol Building
(8s)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level
(Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| COMPLAINT in VIOLATION of 18 U.S.C. 1512(c)(2); 18 U.S.C. 231(a)(3); 18 U.S.C. 1752(a)(1); 18 U.S.C. 1752(a)(2); 40 U.S.C. 5104(e)(2)(D); 40 U.S.C. 5104(e)(2)(E); 40 U.S.C. 5104(e)(2)(G) | |

---

**Interested Party**

| **PRESS COALITION** | represented by | **Charles D. Tobin** |
|---|---|---|
| | | BALLARD SPAHR LLP |
| | | 1909 K Street, NW |
| | | 12th Floor |
| | | Washington, DC 20006 |
| | | 202−661−2218 |
| | | Fax: 202−661−2299 |
| | | Email: tobinc@ballardspahr.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |
| | | |
| | | **Lauren Russell** |
| | | BALLARD SPAHR LLP |
| | | 1909 K Street, NW |
| | | 12th Floor |
| | | Washington, DC 20006 |
| | | 202−661−2200 |
| | | Fax: 202−661−2299 |
| | | Email: russelll@ballardspahr.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

*Designation: Retained*

**Maxwell S. Mishkin**
BALLARD SPAHR LLP
1909 K Street, NW
12th Floor
Washington, DC 20006
(202) 508–1140
Fax: (202) 661–2299
Email: mishkinm@ballardspahr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Plaintiff**

USA                                    represented by   **Jason M. Crawford**
CROWELL & MORING LLP
Civil Division, Fraud Section
1001 Pennsylvania Ave NW
Washington, DC 20004
202–624–2768
Email: jcrawford@crowell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Jeffrey Napoleon Poulin**
U.S. ATTORNEY'S OFFICE FOR
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252–2641
Email: jeffrey.poulin@usdoj.gov
*TERMINATED: 05/12/2021*
*LEAD ATTORNEY*
*Designation: Assistant U.S. Attorney*

**Kelly Elizabeth Moran**
USAO
601 D Street NW
Washington, DC 20503
202–740–4690
Email: kelly.moran@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Jacob Ryan Steiner**
DOJ–CRM
1301 New York Avenue NW

10th Floor
Washington, DC 20530
202–924–5829
Email: jacob.steiner@usdoj.gov
*TERMINATED: 10/14/2021*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Mike Mitchell**
DOJ–USAO
LRM: Rocca, Pamela
1290 West Myrtle Street
Suite 500
Boise, ID 83702
(208) 676–7341
Email: mike.mitchell@usdoj.gov
*TERMINATED: 04/04/2022*
*Designation: Assistant U.S. Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/10/2021 | 1 | SEALED COMPLAINT as to WILLIAM POPE (1), MICHAEL POPE (2). (Attachments: # 1 Statement of Facts) (zltp) [1:21–mj–00217–ZMF] (Entered: 02/10/2021) |
| 02/10/2021 | 3 | MOTION to Seal Case by USA as to WILLIAM POPE, MICHAEL POPE. (Attachments: # 1 Text of Proposed Order)(zltp) [1:21–mj–00217–ZMF] (Entered: 02/10/2021) |
| 02/10/2021 | 4 | ORDER granting 3 Motion to Seal Case as to WILLIAM POPE (1), MICHAEL POPE (2). Signed by Magistrate Judge Zia M. Faruqui on 2/10/21. (zltp) [1:21–mj–00217–ZMF] (Entered: 02/10/2021) |
| 02/11/2021 | 5 | NOTICE OF ATTORNEY APPEARANCE Jeffrey Napoleon Poulin appearing for USA. (zltp) [1:21–mj–00217–ZMF] (Entered: 02/12/2021) |
| 02/12/2021 | | Case unsealed as to WILLIAM POPE (zstd) [1:21–mj–00217–ZMF] (Entered: 02/25/2021) |
| 02/12/2021 | | Arrest of WILLIAM POPE in US District Court District of Kansas (Topeka). (bb) (Entered: 03/31/2021) |
| 02/17/2021 | 8 | INDICTMENT as to WILLIAM POPE (1) count(s) 1, 2, 3, 4, 5, 6, 7, 8, MICHAEL POPE (2) count(s) 1, 2, 3, 4, 5, 6, 7, 8. (zltp) (Entered: 02/25/2021) |
| 03/02/2021 | 13 | NOTICE OF ATTORNEY APPEARANCE: Terry Eaton appearing for WILLIAM POPE *Notice of Attorney Appearance* (Eaton, Terry) (Entered: 03/02/2021) |
| 03/05/2021 | | Minute Entry for proceedings held before Judge Rudolph Contreras: Arraignment and Status Conference as to defendants WILLIAM POPE (1) and Michael Pope (2) held on 3/5/2021. Defendant William Pope enters a plea of NOT GUILTY to counts 1,2,3,4,5,6,7 and 8 of the indictment filed on 2/17/2021. Conditions of release are set as to defendant William Pope (1), and the defendant acknowledges the conditions on the record. Conditions of release as to defendant Michael Pope (2) are modified as stated on the record. Parties inform the court of the status of this action. Speedy trial is |

| | | |
|---|---|---|
| | | excluded (XT) from 3/5/2021 to 5/3/2021 in the interest of justice as to both defendants. Next status conference is set for 5/3/2021 at 11:30 AM before Judge Rudolph Contreras. Bond Status of Defendant: Defendants on Personal Recognizance Bond; Court Reporter: Janice Dickman; Defense Attorney: Terry Eaton for W. Pope; Carlos Vanegas for M. Pope; US Attorney: JEffrey N. Poulin; (tj) (Entered: 03/05/2021) |
| 03/05/2021 | 16 | ORDER Setting Conditions of Release as to WILLIAM POPE (1) Personal Recognizance Bond (Signed by Judge Rudolph Contreras on 3/5/2021). (tj) (Entered: 03/05/2021) |
| 03/05/2021 | | MINUTE ORDER as to WILLIAM POPE (1) AND MICHAEL POPE (2): Pursuant to the Due Process Protections Act, the Court ORDERS that all government counsel shall review their disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, as set forth in Local Criminal Rule 5.1, and comply with those provisions. The failure to comply could result in dismissal of the indictment or information, dismissal of individual charges, exclusion of government evidence or witnesses, continuances, Bar discipline, or any other remedy that is just under the circumstances. (So Ordered Judge Rudolph Contreras on 3/5/2021). (tj) (Entered: 03/05/2021) |
| 03/05/2021 | 18 | Rule 5(c)(3) Documents Received as to WILLIAM POPE from US District Court District of Kansas (Topeka) Case Number 5:21–mj–5017–ADM (bb) (Entered: 03/31/2021) |
| 04/30/2021 | | Set/Reset Hearings as to WILLIAM POPE, MICHAEL POPE: Status Conference currently scheduled for 5/3/2021 is hereby RESCHEDULED for 5/5/2021 at 11:30 AM before Judge Rudolph Contreras via Zoom Video. (tj) (Entered: 04/30/2021) |
| 05/04/2021 | 22 | Joint MOTION to Continue *May 5, 2021 Status Hearing* by USA as to WILLIAM POPE, MICHAEL POPE. (Attachments: # 1 Text of Proposed Order)(Poulin, Jeffrey) (Entered: 05/04/2021) |
| 05/04/2021 | 23 | Unopposed MOTION for Protective Order by USA as to WILLIAM POPE, MICHAEL POPE. (Attachments: # 1 Text of Proposed Order)(Poulin, Jeffrey) (Entered: 05/04/2021) |
| 05/04/2021 | 24 | NOTICE *OF FILING DISCOVERY LETTER* by USA as to WILLIAM POPE, MICHAEL POPE (Attachments: # 1 Notice to Counsel/Party)(Poulin, Jeffrey) (Entered: 05/04/2021) |
| 05/04/2021 | 25 | MOTION to Exclude Time Under the Speedy Trial Act by USA as to WILLIAM POPE, MICHAEL POPE. (See Docket Entry 22 to View Document). (zhsj) (Entered: 05/04/2021) |
| 05/04/2021 | | MINIUTE ORDER as to defendants WILLIAM POPE (1) and MICHAEL POPE (2): Upon consideration of the motion for continuance 22 , the status conference currently scheduled for May 5, 2021 at 11:30am is hereby VACATED. The status conference is hereby RESCHEDULED for June 18, 2021 @ 11:00am before Judge Rudolph Contreras via Zoom Video. It is further ORDERED that pursuant the agreement contained in the motion for a continuance, the Speedy Trial Act is tolled through June 18, 2021 in the interest of justice. (So Ordered Judge Rudolph Contreras on 5/4/2021) (tj) (Entered: 05/04/2021) |
| 05/05/2021 | 26 | |

| | | |
|---|---|---|
| | | PROTECTIVE ORDER setting forth procedures for handling confidential material; allowing designated material to be filed under seal as to defendants WILLIAM POPE (1) and MICHAEL POPE (2). (Signed by Judge Rudolph Contreras on 5/5/2021) (tj) (Entered: 05/05/2021) |
| 05/12/2021 | 27 | NOTICE OF SUBSTITUTION OF COUNSEL as to USA. Attorney Steiner, Jacob Ryan added. Substituting for attorney Jeffrey N. Poulin (Steiner, Jacob) (Entered: 05/12/2021) |
| 06/17/2021 | | MINUTE ORDER as to WILLIAM POPE (1) and MICHAEL POPE (2): Status Conference currently scheduled for 6/18/2021 @ 11:00am, is hereby RESCHEDULED for 6/22/2021 at 2:00 PM before Judge Rudolph Contreras via Zoom Video. (So Ordsered Judge Rudolph Contreras on 6/17/2021). (tj) (Entered: 06/17/2021) |
| 06/22/2021 | | Minute Entry for proceedings held before Judge Rudolph Contreras: Status Conference as to WILLIAM POPE (1), MICHAEL POPE (2) held on 6/22/2021. Parties inform the court of the status of this action. Oral request to continue this matter for a period of 60 days is GRANTED, and the next status conference is set for 8/23/2021 at 11:00 AM before Judge Rudolph Contreras via Zoom Video. Speedy trial is excluded (XT) from 6/22/2021 until 8/23/2021 in the interest of justice. Bond Status of Defendant: Both Defendant remain on personal recognizance/with consent to appear by video; Court Reporter: Nancy Meyer; Defense Attorney: Terry Eaton for W. Pope; Carlos Vanegas for M. Pope; US Attorney: Jacob Steiner; (tj) (Entered: 06/22/2021) |
| 07/12/2021 | 30 | NOTICE *of Memorandum Regarding Status of Discovery* by USA as to WILLIAM POPE, MICHAEL POPE (Attachments: # 1 Exhibit A)(Steiner, Jacob) (Entered: 07/12/2021) |
| 07/27/2021 | 31 | Unopposed MOTION for Disclosure *of Rule 6(e) and Sealed Materials* by USA as to WILLIAM POPE, MICHAEL POPE. (Attachments: # 1 Text of Proposed Order)(Steiner, Jacob) (Entered: 07/27/2021) |
| 07/28/2021 | 32 | ORDER granting 31 the Motion for Disclosure as to defendants WILLIAM POPE (1), and MICHAEL POPE (2). (See order for details) (Signed by Judge Rudolph Contreras on 7/27/2021). (tj) (Entered: 07/28/2021) |
| 08/14/2021 | 33 | NOTICE *of Filing Discovery Letter* by USA as to WILLIAM POPE, MICHAEL POPE (Attachments: # 1 Notice to Counsel/Party Discovery Letter)(Steiner, Jacob) (Entered: 08/14/2021) |
| 08/18/2021 | 34 | Joint MOTION to Continue *August 23, 2021 Status Conference* by USA as to WILLIAM POPE, MICHAEL POPE. (Attachments: # 1 Text of Proposed Order)(Steiner, Jacob) (Entered: 08/18/2021) |
| 08/18/2021 | 35 | JOINT MOTION to Exclude Time Under the Speedy Trial Actby USA as to WILLIAM POPE, MICHAEL POPE. (See Docket Entry 34 to View Document). (zhsj) (Entered: 08/19/2021) |
| 08/19/2021 | | MINIUTE ORDER as to defendants WILLIAM POPE (1) and MICHAEL POPE (2): Upon consideration of the motion for continuance 34 , the status conference currently scheduled for August 23, 2021 is hereby VACATED. The status conference is hereby RESCHEDULED for October 18, 2021 @ 9:30am before Judge Rudolph Contreras via Zoom Video. It is further ORDERED that pursuant the agreement contained in the |

| | | |
|---|---|---|
| | | motion for a continuance 35 , the Speedy Trial Act is tolled through October 18, 2021 in the interest of justice. (So Ordered Judge Rudolph Contreras on 8/19/2021 (tj) (Entered: 08/19/2021) |
| 09/22/2021 | 38 | NOTICE *of September 14 Memorandum Regarding Status of Discovery* by USA as to WILLIAM POPE, MICHAEL POPE (Attachments: # 1 Memorandum in Support August 24 Memorandum)(Steiner, Jacob) (Entered: 09/22/2021) |
| 10/14/2021 | 41 | NOTICE OF SUBSTITUTION OF COUNSEL as to USA. Attorney Mitchell, Mike added. Substituting for attorney Jacob R. Steiner (Mitchell, Mike) (Entered: 10/14/2021) |
| 10/14/2021 | 42 | Unopposed MOTION to Continue *Status Conference* by USA as to WILLIAM POPE, MICHAEL POPE. (Mitchell, Mike) (Entered: 10/14/2021) |
| 10/14/2021 | 43 | UNOPPOSED MOTION to Exclude Time Under the Speedy Trial Act by USA as to WILLIAM POPE, MICHAEL POPE. (See Docket Entry 42 to View Document). (zhsj) (Entered: 10/15/2021) |
| 10/15/2021 | | MINUTE ORDER as to WILLIAM POPE (1) and MICHAEL POPE (2): Upon consideration of the motion for continuance 42 , 43 the status conference currently scheduled for October 18, 2021 is hereby VACATED. The status conference is hereby RESCHEDULED for January 11, 2022 @ 2:00pm before Judge Rudolph Contreras via Zoom Video. It is further ORDERED that pursuant the agreement contained in the motion for a continuance, the Speedy Trial Act is tolled through January 22, 2022 in the interest of justice. (So Ordered Judge Rudolph Contreras on 10/15/2021). (tj) (Entered: 10/15/2021) |
| 10/21/2021 | 44 | NOTICE *OF DISCOVERY STATUS* by USA as to WILLIAM POPE, MICHAEL POPE (Mitchell, Mike) (Entered: 10/21/2021) |
| 11/10/2021 | 45 | NOTICE *Regarding Status of Discovery* by USA as to WILLIAM POPE, MICHAEL POPE (Mitchell, Mike) (Entered: 11/10/2021) |
| 11/10/2021 | 46 | FIRST SUPERSEDING INDICTMENT as to WILLIAM POPE (1) count(s) 1s, 2s, 3s, 4s, 5s, 6s, 7s, 8s, MICHAEL POPE (2) count(s) 1s, 2s, 3s, 4s, 5s, 6s, 7s, 8s. (bb) (Entered: 11/17/2021) |
| 01/06/2022 | 49 | MOTION to Substitute Attorney by WILLIAM POPE. (English, Gregory) (Entered: 01/06/2022) |
| 01/06/2022 | | MINUTE ORDER granting 49 Motion to Substitute Attorney as to WILLIAM POPE: It is hereby ORDERED that the motion to Substitute Attorney is granted. It is FURTHER ORDERED that Terry Eaton is excused from further participation in this case. It is FURTHER ORDERED that the Clerk shall enter the appearance of Gregory B. English as court–appointed counsel for defendant WILLIAM POPE in this matter. SO ORDERED. Signed by Judge Rudolph Contreras on 1/6/22. (lcrc2) (Entered: 01/06/2022) |
| 01/11/2022 | | Minute Entry for proceedings held before Judge Rudolph Contreras:Arraignment as to WILLIAM POPE (1) and MICHAEL POPE (2) held on 1/11/22. Defendants enter a plea of NOT GUILTY to Counts 1s,2s,3s,4s,5s,6s,7s,8s of the Superseding Indictment filed on 11/10/2022. Oral motion to continue this case for a period of 60 days is GRANTED for reasons stated on the record. Next Status Conference is set for 3/11/2022 at 9:30 AM before Judge Rudolph Contreras via Zoom Video. Bond Status of Defendants: Personal Recognizance with consent to appear by video; Court |

| | | Reporter: Nancy Meyer; Defense Attorney: Gregory English for W. Pope; Bruce Searby for defendant M. Pope; US Attorney: Michael Mitchell; (tj) (Entered: 01/12/2022) |
|---|---|---|
| 02/15/2022 | 52 | NOTICE *REGARDING STATUS OF DISCOVERY AS OF FEBRUARY 2022* by USA as to WILLIAM POPE, MICHAEL POPE (Mitchell, Mike) (Entered: 02/15/2022) |
| 03/08/2022 | 53 | MOTION to Continue *Status Conference and Move for Excludable Delay* by USA as to WILLIAM POPE, MICHAEL POPE. (Mitchell, Mike) (Entered: 03/08/2022) |
| 03/08/2022 | 54 | MOTION for Excludable Day by USA as to WILLIAM POPE, MICHAEL POPE. (See Docket Entry 53 to View Document) (zhsj) (Entered: 03/09/2022) |
| 03/09/2022 | | MINUTE ORDER as to WILLIAM POPE (1) and MICHAEL POPE (2): Upon consideration of the motion for continuance 53 , the status conference currently scheduled for March 11, 2022 is hereby VACATED. The status conference is hereby RESCHEDULED for May 19,2022 at 9:30am (EST) before Judge Rudolph Contreras. It is further ORDERED that pursuant the agreement contained in the motion for a continuance, the Speedy Trial Act is tolled through May 19, 2022 in the interest of justice. (So Ordered Judge Rudolph Contreras on 3/9/2022). (tj) (Entered: 03/09/2022) |
| 04/04/2022 | 55 | NOTICE OF SUBSTITUTION OF COUNSEL as to USA. Attorney Crawford, Jason M. added. (Crawford, Jason) (Entered: 04/04/2022) |
| 05/11/2022 | 56 | Joint MOTION to Continue *Status Conference*, Joint MOTION to Exclude *Time Under the Speedy Trial Act* by USA as to WILLIAM POPE, MICHAEL POPE. (Crawford, Jason) (Entered: 05/11/2022) |
| 05/12/2022 | | MINUTE ORDER as to WILLIAM POPE (1) and MICHAEL POPE (2): Upon consideration of the joint motion for a continuance 56 , the status conference currently scheduled for May 19, 2022 at 9:30 is hereby VACATED. The status conference is RESCHEDULED for July 20, 2022 at 2:00pm (EST) before Judge Rudolph Contreras via zoom video. It is further ORDERED that pursuant the agreement contained in the motion for a continuance, the Speedy Trial Act is tolled through July 20, 2022 in the interest of justice. (So Ordered Judge Rudolph Contreras on 5/12/2022). (tj) (Entered: 05/12/2022) |
| 06/29/2022 | 57 | MOTION to Withdraw as Attorney by Gregory B. English. by WILLIAM POPE. (English, Gregory) (Entered: 06/29/2022) |
| 07/17/2022 | 60 | RESPONSE by USA as to WILLIAM POPE re 57 MOTION to Withdraw as Attorney by Gregory B. English. *Request for Faretta Inquiry In Response To Defendant William Popes Request To Proceed Pro Se* (Attachments: # 1 Exhibit Exhibits A–C)(Crawford, Jason) (Entered: 07/17/2022) |
| 07/20/2022 | | Minute Entry for proceedings held before Judge Rudolph Contreras: Status Conference as to WILLIAM POPE (1) held on 7/20/2022. Speedy trial is excluded (XT) from 7/20/22 until 8/2/22 in the interest of justice as to WILLIAM POPE (1). Faretta Hearing set for 8/2/2022 at 10:00 AM before Judge Rudolph Contreras via Zoom. Bond Status of Defendant WILLIAM POPE (1): Continued on personal recognizance/with consent to appear by video. US Attorney: Jason M. Crawford; Defense Attorney: Gregory English; Court Reporter: Nancy Meyer. (zgdf) (Entered: 07/20/2022) |
| 08/02/2022 | | |

| | | |
|---|---|---|
| | | Minute Entry for proceedings held before Judge Rudolph Contreras:Status Conference as to WILLIAM POPE held on 8/2/2022. Defendant consents to waive his constitutional right to counsel. The court determines that the defendant is competent to proceed without counsel, and the court will appoint stand–by counsel to assist the defendant once confirmed. Defense Counsel Gregory English will remain as counsel of record until stand–by counsel is confirmed. Speedy trial is excluded (XT) from 8/2/2022 to 9/1/2022 in the interest of justice. Next status conference is set for 9/1/2022 at 11:30 AM before Judge Rudolph Contreras via zoom video. Bond Status of Defendant: Personal Recognizance with consent to appear virtually; Court Reporter: Nancy Meyer; Defense Attorney: Gregory English; US Attorney: Jason M. Crawford; (tj) (Entered: 08/02/2022) |
| 08/08/2022 | 61 | NOTICE OF ATTORNEY APPEARANCE: Nicole Ann Cubbage appearing for WILLIAM POPE *standby counsel* (Cubbage, Nicole) (Entered: 08/08/2022) |
| 09/01/2022 | | Minute Entry for video Status Conference held before Judge Rudolph Contreras as to WILLIAM POPE (1) on 9/1/2022. Defendant shall file motions within 60 days. Further Status Conference set for 11/4/2022 at 9:30 AM VTC before Judge Rudolph Contreras. The court finds it in the interest of justice to toll the speedy trial clock from 9/1/2022 through 11/4/2022.Bond Status of Defendant: remains on personal recognizance; Court Reporter: Lisa Griffith; Defense Attorney: Nicole A. Cubbage (stand–by Counsel); US Attorney: Jason Crawford. (lsj) (Entered: 09/01/2022) |
| 09/29/2022 | 64 | MOTION to Access *e–filing system* by WILLIAM POPE. (Attachments: # 1 Text of Proposed Order)(Cubbage, Nicole) (Entered: 09/29/2022) |
| 09/30/2022 | | MINUTE ORDER granting in part 64 Defendant's Motion to Grant Access to E–Filing System: It is hereby ORDERED that standby counsel Ms. Nicole Cubbage shall be granted access to use the CM/ECF system. In order for the Court to grant Mr. Pope access as a *pro se* party, he must submit a written motion "describing [his] access to the internet, confirming the capacity to file documents and receive filings electronically on a regular basis, and confirming that he... either has viewed the Clerk's Office on–line tutorial or has been permitted to file electronically in other federal courts." Local Criminal Rule 49(b). Accordingly, Mr. Pope may refile a motion with the necessary information for the Court's consideration in accordance with Local Rule 49(b), which may be found at: https://www.dcd.uscourts.gov/court–info/local–rules–and–orders/local–rules. SO ORDERED. Signed by Judge Rudolph Contreras on 9/30/22. (lcrc2) (Entered: 09/30/2022) |
| 10/06/2022 | 66 | Second MOTION to Access *CM/ECF filing system Pro Se* by WILLIAM POPE. (Attachments: # 1 Text of Proposed Order)(Cubbage, Nicole) (Entered: 10/06/2022) |
| 10/06/2022 | | MINUTE ORDER granting 66 Defendant's Motion for CM/ECF Credentials: It is hereby ORDERED that Defendant William Pope (1) shall be granted access to use the CM/ECF system. SO ORDERED. Signed by Judge Rudolph Contreras on 10/6/22. (lcrc2) (Entered: 10/06/2022) |
| 10/30/2022 | 67 | MOTION to Modify *Protective Order*, MOTION to Compel *Full Access to Discovery* by WILLIAM POPE. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Text of Proposed Order)(Cubbage, Nicole) (Entered: 10/30/2022) |
| | | *Main Document* |
| | | Attachment # 1 *Exhibit* |

| | | |
|---|---|---|
| | | Attachment # 2 *Exhibit* |
| | | Attachment # 3 *Exhibit* |
| | | Attachment # 4 *Text of Proposed Order* |
| 11/04/2022 | | Minute Entry for proceedings held before Judge Rudolph Contreras:Status Conference as to WILLIAM POPE held on 11/4/2022. Parties inform the court of the status of this action. Government counsel will file a response to defendant's motion to modify the protective order by 11/14/22. Motion Hearing set for 12/2/2022 at 10:00 AM in Telephonic/VTC before Judge Rudolph Contreras. Bond Status of Defendant: Personal Recognizance; Court Reporter: Nancy Meyer; Defense Attorney: Defendant appears pro se with stand by counsel Nicole Cubbage; US Attorney: Jason Crawford; (tj) (Entered: 11/04/2022) |
| 11/07/2022 | 70 | REQUEST to Exclude Time Under the Speedy Trial Act by USA as to WILLIAM POPE. (See Docket Entry 69 to View Document). (zhsj) (Entered: 11/08/2022) |
| 11/12/2022 | 71 | Memorandum in Opposition by USA as to WILLIAM POPE re 67 Motion to Modify, Motion to Compel (Attachments: # 1 Exhibit A DiBiase Declaration, # 2 Exhibit B Twitter Post)(Crawford, Jason) (Entered: 11/12/2022) |
| 11/21/2022 | 72 | REPLY TO OPPOSITION to Motion by WILLIAM POPE re 67 MOTION to Modify *Protective Order* MOTION to Compel *Full Access to Discovery* (Attachments: # 1 Exhibit Exhibit 2)(Cubbage, Nicole) (Entered: 11/21/2022) |
| 12/02/2022 | | Minute Entry for proceedings held before Judge Rudolph Contreras:Motion Hearing held on 12/2/2022 re 67 MOTION to Modify *Protective Order* MOTION to Compel *Full Access to Discovery* filed by WILLIAM POPE. Oral argument heard, and the court's takes the motion under advisement. The court directs the parties to confer and discuss a solution for defendant to have access to discovery in order to properly prepare a defense in this matter. Next Status Conference is set for 2/3/2023 at 9:30 AM before Judge Rudolph Contreras. Bond Status of Defendant: Personal Recognizance; Court Reporter: Nancy Meyer; Defense Attorney: Appearing Pro Se (with stand–by counsel Nicole Cubbage); US Attorney: Jason M. Crawford; (tj) (Entered: 12/02/2022) |
| 01/04/2023 | 75 | NOTICE OF ATTORNEY APPEARANCE Kelly Elizabeth Moran appearing for USA. (Moran, Kelly) (Entered: 01/04/2023) |
| 01/04/2023 | 76 | NOTICE OF ATTORNEY APPEARANCE Kelly Elizabeth Moran appearing for USA. (Moran, Kelly) (Entered: 01/04/2023) |
| 02/02/2023 | 78 | RESPONSE by WILLIAM POPE re 67 MOTION to Modify *Protective Order* MOTION to Compel *Full Access to Discovery STATUS UPDATE ON EFFORTS MADE TO OBTAIN LOCAL DISCOVERY ACCESS* (POPE, WILLIAM) (Entered: 02/02/2023) |
| 02/03/2023 | | Minute Entry for virtual proceedings held before Judge Rudolph Contreras:Status Conference as to WILLIAM POPE (1) and MICHAEL POPE (2) held on 2/3/2023. Parties inform the court of the status of this action. Motion for severance to be filed by defendant Michael Pope. Government response to motion filed by William Pope is due by 2/10/2023. Speedy trial excluded (XT) from 2/3/23 to 3/3/23 as to defendant MICHAEL POPE. Speedy trial is tolled as to defendant William Pope due to a pending motion awaiting the courts ruling. Next status conference is set for 3/3/2023 at 9:30 AM before Judge Rudolph Contreras via zoom video. Bond Status of |

| | | | |
|---|---|---|---|
| | | | Defendant: Defendants 1 and 2: Personal Recognizance with consent to appear virtually; Court Reporter: Nancy Meyer; Defense Attorney: Nicole Cuttage (Stand–by Counsel) Deft 1: Bruce Searby for deft 1; US Attorney: Kelly Moran; (tj) (Entered: 02/03/2023) |
| 02/10/2023 | 80 | | RESPONSE by USA as to WILLIAM POPE, MICHAEL POPE re 23 Unopposed MOTION for Protective Order *Response to Defendant's Status Update Regarding Discovery Access* (Moran, Kelly) (Entered: 02/10/2023) |
| 02/17/2023 | 81 | | RESPONSE by WILLIAM POPE re 67 MOTION to Modify *Protective Order* MOTION to Compel *Full Access to Discovery RESPONSE TO THE GOVERNMENTS CONTINUED OPPOSITION TO MODIFY THE PROTECTIVE ODER AND COMPEL FULL ACCESS TO DISCOVERY*, REPLY TO OPPOSITION to Motion by WILLIAM POPE re 67 MOTION to Modify *Protective Order* MOTION to Compel *Full Access to Discovery* (Attachments: # 1 Exhibit Exhibit 1: A Flipbook of Still Images)(POPE, WILLIAM) (Entered: 02/17/2023) |
| 02/21/2023 | 82 | | MOTION to Remove Designation of 'Sensitive' from Undercover MPD Videos and Release them to the Public by WILLIAM POPE re 81 Response to document, Reply to opposition to Motion, 72 Reply to opposition to Motion. (Attachments: # 1 Text of Proposed Order Propose Order to Remove 'Sensitive' Designation from Video Files Showing Undercover MPD inciting the January 6 Crowd) (POPE, WILLIAM). Modified Text on 2/22/2023 (zhsj). (Entered: 02/21/2023) |
| 03/01/2023 | 87 | | Attachment A Acceptance by WILLIAM POPE re 26 Protective Order. "Leave to File Granted" by Judge Rudolph Contreras on 3/1/2023. (zhsj) (Entered: 03/03/2023) |
| 03/02/2023 | 85 | | RESPONSE by WILLIAM POPE re 67 MOTION to Modify *Protective Order* MOTION to Compel *Full Access to Discovery*, 82 MOTION *UPDATE ON DISCOVERY ACCESS ISSUES* (POPE, WILLIAM) (Entered: 03/02/2023) |
| 03/02/2023 | 86 | | RESPONSE by USA as to WILLIAM POPE, MICHAEL POPE re 82 MOTION *in response to defendant's motion to remove sensitivity designations* (Moran, Kelly) (Entered: 03/02/2023) |
| 03/03/2023 | | | Minute Entry for virtual proceedings held before Judge Rudolph Contreras: Status Conference as to WILLIAM POPE (1) and MICHAEL POPE (2) held on 3/3/2023. Speedy trial excludable (XT) from 3/3/23 to 4/3/23 as to defendant MICHAEL POPE (2). Speedy trial is tolled as to defendant William Pope due to a pending motion awaiting the courts ruling. Government's Declaration due by 3/17/23 as to WILLIAM POPE (1). Defendant WILLIAM POPE response due one week later. Next status conference set for 4/3/2023 at 2:00 PM before Judge Rudolph Contreras via zoom video. Bond Status of Defendants 1 and 2: Personal Recognizance with consent to appear virtually; Court Reporter: Sara Wick; Defense Attorney: Defense Attorney: Nicole Cubbage (Stand–by Counsel) Deft 1: Bruce Searby for deft 2; US Attorney: Kelly Moran. (zgf) (Entered: 03/03/2023) |
| 03/17/2023 | 88 | | NOTICE by USA as to WILLIAM POPE, MICHAEL POPE (Attachments: # 1 Declaration)(Moran, Kelly) (Entered: 03/17/2023) |
| 03/17/2023 | 89 | | MOTION for Extension of Time to *FILE SUPPLEMENTAL MOTION REGARDING THE DECLARATION OF THE UNITED STATES CAPITOL POLICE AND THE PROTECTIVE ORDER* by USA as to WILLIAM POPE, MICHAEL POPE. (Moran, Kelly) (Entered: 03/17/2023) |

| 03/17/2023 | | MINUTE ORDER as to WILLIAM POPE (1) and MICHAEL POPE (2): Upon consideration of 88 the Declaration of the General Counsel of the U.S. Capitol Police, it is hereby ORDERED that the Government shall file a supplement to this declaration concerning media accounts that other media organizations will be given similar access to U.S. Capitol Police surveillance footage as that given to Tucker Carlson on or before March 24, 2023. SO ORDERED. Signed by Judge Rudolph Contreras on 3/17/23. (lcrc2) (Entered: 03/17/2023) |
|---|---|---|
| 03/24/2023 | 90 | NOTICE *MEMORANDUM IN SUPPORT OF THE UNITED STATES CAPITOL POLICE DECLARATION OF THOMAS A. DIBIASE AND THE PROTECTIVE ORDER of Supplemental Motion Regarding the Declaration of the United States Capitol Police and the Protective Order* by USA as to WILLIAM POPE, MICHAEL POPE re 88 Notice (Other), 89 MOTION for Extension of Time to *FILE SUPPLEMENTAL MOTION REGARDING THE DECLARATION OF THE UNITED STATES CAPITOL POLICE AND THE PROTECTIVE ORDER* (Moran, Kelly) Modified on 3/27/2023 (znmw). (Entered: 03/24/2023) |
| 03/27/2023 | 92 | MOTION TO CONTINUE by WILLIAM POPE re Status Conference, Speedy Trial – Excludable Start Set Hearings,,, *MOTION TO POSTPONE STATUS HEARING DUE TO JURY DUTY* (Attachments: # 1 Text of Proposed Order Proposed Order)(POPE, WILLIAM) Modified on 3/27/2023 to correct event type (ztj). (Entered: 03/27/2023) |
| 03/28/2023 | 94 | MOTION to Intervene by PRESS COALITION as to WILLIAM POPE, MICHAEL POPE. "Leave to File Granted" by Judge Rudolph Contreras on 3/28/2023. (zhsj) (Entered: 03/28/2023) |
| 03/29/2023 | | MINUTE ORDER as to WILLIAM POPE (1) granting 92 motion to continue the status conference currently scheduled for April 3, 2023 at 2:00pm. The Status Conference is hereby RESCHEDULED for April 13, 2023 at 3:30 PM before Judge Rudolph Contreras via zoom video. Upon consent of the parties, speedy trial is hereby excluded (XT) from April 3, 2023 to April 13, 2023 in the interest of justice. (So Ordered Judge Rudolph Contreras on 3/29/2023). (tj) Modified on 4/27/2023 to include the defendant's name (zcdw). (Entered: 03/29/2023) |
| 03/31/2023 | 95 | Memorandum in Opposition by WILLIAM POPE re 67 Motion to Modify, Motion to Compel, 82 Response to motion,, Motion for Miscellaneous Relief, 89 Motion for Extension of Time to *RESPONSE TO THE GOVERNMENTS MEMORANDUM AND UPDATE ON OTHER MATTERS CONCERNING DISCOVERY* (Attachments: # 1 Exhibit Exhibit 1 – Details of Video Leak)(POPE, WILLIAM) (Entered: 04/01/2023) |
| 04/11/2023 | 96 | MOTION for Extension of Time to File Response/Reply as to 94 MOTION to Intervene by USA as to WILLIAM POPE, MICHAEL POPE. (Moran, Kelly) (Entered: 04/11/2023) |
| 04/13/2023 | 99 | REPLY in Support by WILLIAM POPE re 96 MOTION for Extension of Time to File Response/Reply as to 94 MOTION to Intervene , 94 MOTION to Intervene *MEMORANDUM IN SUPPORT OF THE GOVERNMENTS MOTION FOR AN EXTENTION OF TIME TO RESPOND TO THE PRESS COALITIONS MOTION TO INTERVENE* (POPE, WILLIAM) (Entered: 04/13/2023) |
| 04/13/2023 | | Minute Entry for proceedings held before Judge Rudolph Contreras: Status Conference as to WILLIAM POPE (1), MICHAEL POPE (2) held on 4/13/2023. Parties inform the court of the status of this action. Parties to meet and confer on discovery issue by 4/27/23. Defendant William Pope requests access to video evidence. Parties consent to the exclusion of speedy trial (XT) from 4/13/23 to |

| | | |
|---|---|---|
| | | 5/12/23 in the interest of justice. Next Status Conference is set for 5/12/2023 at 11:00 AM before Judge Rudolph Contreras via zoom. Bond Status of Defendant: on Personal Recognizance; Court Reporter: Nancy Meyer; Defense Attorney: William Pope (Pro Se) with standby counsel Nicole Cubbage; Bruce Searby for defendant Michael Pope; US Attorney: Kelly Moran; (tj) (Entered: 04/28/2023) |
| 04/18/2023 | 100 | Memorandum in Opposition by USA as to WILLIAM POPE, MICHAEL POPE re 94 Motion for Miscellaneous Relief *Opposition to Press Coalition Motion to Intervene* (Moran, Kelly) (Entered: 04/18/2023) |
| 04/25/2023 | 101 | REPLY in Support by PRESS COALITION as to WILLIAM POPE, MICHAEL POPE re 94 MOTION to Intervene (Tobin, Charles) (Entered: 04/25/2023) |
| 04/25/2023 | 102 | REPLY by WILLIAM POPE re 100 Memorandum in Opposition, 101 Reply in Support *REPLY TO THE GOVERNMENTS OPPOSITION TO THE PRESS COALITIONS MOTION TO INTERVENE* (POPE, WILLIAM) (Entered: 04/25/2023) |
| 04/26/2023 | 103 | ORDER as to WILLIAM POPE (1) denying 67 Defendant's Motion to Modify Protective Order. See document for details. Signed by Judge Rudolph Contreras on 4/26/23. (lcrc2) (Entered: 04/26/2023) |
| 04/27/2023 | 104 | Joint STATUS REPORT *Regarding Defendant Access to Discovery* by USA as to WILLIAM POPE, MICHAEL POPE (Moran, Kelly) (Entered: 04/27/2023) |
| 05/03/2023 | 105 | RESPONSE TO ORDER OF THE COURT by WILLIAM POPE re 16 Order Setting Conditions of Release *MOTION TO MODIFY CONDITIONS OF RELEASE* (Attachments: # 1 USCA Order Proposed Order)(POPE, WILLIAM) (Entered: 05/03/2023) |
| 05/03/2023 | | MINUTE ORDER as to WILLIAM POPE: Upon consideration of 105 Defendant William Pope's Motion to Modify Conditions of Release, it is hereby ORDERED that the Government shall provide notice to the Court, on or before May 5, 2023, whether it opposes a temporary modification of Defendant's conditions of release to permit him to travel to D.C. on May 8, 2023 for the purpose of viewing Capitol CCTV footage, per Defendant's assertion in his motion that he was invited to do so by Congress. SO ORDERED. Signed by Judge Rudolph Contreras on 5/3/23. (lcrc2) (Entered: 05/03/2023) |
| 05/03/2023 | 106 | RESPONSE TO ORDER OF THE COURT by WILLIAM POPE re Order,, *SUPPORT FOR MODIFIED RELEASE CONDITIONS* (POPE, WILLIAM) (Entered: 05/03/2023) |
| 05/03/2023 | 107 | NOTICE OF APPEAL (Interlocutory) by WILLIAM POPE re 103 Order on Motion to Modify the Protective Order. Fee Status: No Fee Paid, Defendant is Represented CJA. Parties have been notified. (zhsj) (Entered: 05/04/2023) |

## United States District Court for the District of Columbia

UNITED STATES OF AMERICA )
)
vs. )
)
WILLIAM ALEXANDER POPE )

Criminal No. **21-CR-00128**

### NOTICE OF APPEAL

Name and address of appellant:

**WILLIAM POPE
1101 NW JACKSON ST.
TOPEKA, KANSAS 66608**

Name and address of appellant's attorney: **N/A**

Offense:

Concise statement of judgment or order, giving date, and any sentence:

**I am respectfully appealing Judge Contreras' order Denying
Defendant's Motion to Modify the Protective Order. (ECF No. 103)**

Name and institution where now confined, if not on bail: **N/A**

I, the above named appellant, hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from the above-stated judgment.

May 2, 2023
DATE

APPELLANT

ATTORNEY FOR APPELLANT

| | | |
|---|---|---|
| GOVT. APPEAL, NO FEE | | |
| CJA, NO FEE | ✔ | |
| PAID USDC FEE | | |
| PAID USCA FEE | | |

Does counsel wish to appear on appeal?     YES ☐     NO ☐
Has counsel ordered transcripts?              YES ☐     NO ✔
Is this appeal pursuant to the 1984 Sentencing Reform Act?     YES ☐     NO ☐

16

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Criminal Action No.: 21-0128 (RC) |
| v. | : | |
| | : | Re Document No.:    67 |
| WILLIAM POPE, | : | |
| | : | |
| Defendant. | : | |

## ORDER

### DENYING DEFENDANT'S MOTION TO MODIFY PROTECTIVE ORDER

Defendant William Pope was indicted on charges arising out of his alleged participation

in the riot at the Capitol on January 6, 2021.  *See* Superseding Indictment, ECF No. 46.  On the

Government's unopposed motion, *see* Gov't's Unopposed Mot. Protective Order, ECF No. 23,

the Court entered a protective order to govern discovery under Fed. R. Crim. P. 16(d)(1), *see*

Protective Order, ECF No. 26.  Among other things, the protective order provides for differential

treatment of case-specific and global discovery material bearing different sensitivity

designations.[1]  Specifically, as relevant here, it permits Defendant to possess "Sensitive"

material but only permits Defendant to view "Highly Sensitive" material.  *See id.* at 2–4.  The

Highly Sensitive material in question is U.S. Capitol Police ("USCP") CCTV surveillance

---

[1] Case-specific discovery refers to discovery that is particular to Defendant, while global discovery refers to discovery that has been made available to all January 6 defendants.  *See* Gov't's Req. *Faretta* Inquiry at 2, ECF No. 60.  The Government made three case-specific productions, each of which included material designated as "Sensitive" or "Highly Sensitive." *Id.* at 3–4.  With respect to global discovery, the Government placed "24,000 files consisting of body-worn and hand-held camera footage from five law enforcement agencies and surveillance-camera footage from three law enforcement agencies" into an "evidence.com video repository" managed and administered by the Federal Public Defender for the District of Columbia. *Id.* at 4. Over 20,000 of these files consist of U.S. Capitol Police CCTV surveillance footage designated as "Sensitive" or "Highly Sensitive."  *Id.*  All other global discovery materials—totaling almost 2.2 million files—were provided via a Relativity database.  *See id.* at 5.

footage of the Capitol on January 6.[2]  While the protective order permits Defendant to view material designated Highly Sensitive, it requires that he do so only under supervision of defense counsel or an attorney, investigator, paralegal, or support staff person employed by defense counsel.  *Id.*  The order specifies that defense counsel, may, after notice to the Government, "supervise Defendant by allowing access to Highly Sensitive materials through a cloud-based delivery system that permits Defendant to view the materials but does not permit Defendant the ability to download."  *Id.* at 4.  Now proceeding *pro se*,[3] Defendant moves to modify the protective order to permit him to directly access and possess USCP surveillance video designated Highly Sensitive.  *See generally* Def.'s Mot. Modify Protective Order ("Def.'s Mot."), ECF No. 67.

Federal Rule of Criminal Procedure 16 "requires the Government to produce, upon the defendant's request, any documents and data that are material to preparing the defense."  *United States v. McCaughey*, 534 F. Supp. 3d 132, 137 (D.D.C. 2021) (citation omitted); *see* Fed. R. Crim P. 16(a)(1)(A)–(G).  However, it also provides the Court discretion to regulate discovery, permitting it to "deny, restrict, or defer discovery or inspection, or grant other appropriate relief"

---

[2] Other types of materials were also designated as Highly Sensitive.  *See, e.g.*, Gov't's Req. *Faretta* Inquiry at 4 (listing Grant Jury material produced to Defendant as designated Highly Sensitive).  However, Defendant's motion focuses exclusively on USCP surveillance video marked Highly Sensitive, so the Court's analysis also focuses on such material.

[3] On June 29, 2021, Defendant's counsel moved to withdraw and indicated that Defendant intended to proceed *pro se*.  *See* Mot. Withdraw at 1, ECF No. 57.  The Government did not oppose Defendant's motion, but emphasized that, before allowing Defendant to proceed *pro se*, the Court should "correct Defendant's faulty assumption" that proceeding *pro se* would entitle him to ignore the protective order and gain direct access to the discovery database.  Gov't's Req. *Faretta* Inquiry at 1.  The Court held a *Faretta* hearing at which it found Defendant competent to waive counsel and ordered standby counsel appointed, while also stating that the protective order would remain in place pending any motion to modify it after Defendant had a chance to confer with standby counsel.  *See* Minute Order (Aug. 2, 2022).  Nicole Cubbage was thereafter appointed as standby counsel.  *See* Notice of Att'y Appearance, ECF No. 61.

2

on a showing of "good cause." Fed. R. Crim. P. 16(d)(1). "[A]mong the considerations to be taken into account by the court [are] the safety of witnesses and others, a particular danger of perjury or witness intimidation, [and] the protection of information vital to national security." *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (citation omitted). "[O]nce a showing of good cause has been made, the court has relatively unconstrained discretion to fashion an appropriate protective order." *United States v. Johnson*, 314 F. Supp. 3d 248, 251 (D.D.C. 2018).

Here, Defendant argues that the protective order's restrictions violate his Sixth Amendment right to conduct his own defense.[4]  *See* Def.'s Mot. at 1–5.  While the Court

---

[4] Defendant also argues that the requirement for standby counsel to supervise his access to Highly Sensitive material violates his Equal Protection and Due Process rights.  *See* Def.'s Mot. at 2–4.  These arguments are without merit.  A "class of one" Equal Protection claim alleges that the party "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  But Defendant focuses exclusively on comparing his situation to that of represented defendants, and makes no allegations that similarly situated *pro se* defendants have been treated differently without any rational basis.  *See* Def.'s Mot. at 5–6; *see also* Gov't's Opp'n at 7–8, ECF No. 71 (explaining that "none of the other 900+ January 6 defendants have received . . . direct unsupervised access to global discovery" and that "standby counsel has been appointed [to facilitate access to discovery] in *every* [January 6] case" involving a *pro se* defendant).

With respect to Defendant's Due Process argument, Defendant does not contest that, in addition to the ability to possess and control Sensitive material and still images of video designated Highly Sensitive, he has full access to view all Highly Sensitive material, even though he must undertake procedures in order to do so under the supervision of standby counsel. Instead, Defendant alleges that a journalist released a video designated as Highly Sensitive, and that this somehow establishes a *Brady* violation.  *See* Def.'s Mot. at 19.  Setting aside the fact that Defendant has access to Highly Sensitive material so there is no allegation that anything was actually withheld, the protective order explicitly exempts from its requirements "[m]aterials that the defense obtains by means other than discovery."  Protective Order ¶ 11.  Absent specific allegations of exculpatory material actually withheld, the Court can see no violation of the Government's continuing obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).  *See United States v. Ruiz*, 536 U.S. 622, 629 (2002) ("[T]he Constitution does not require the prosecutor to share all useful information with the defendant.").

3

acknowledges that the protective order's restrictions may pose some inconvenience to Defendant, it finds that they are based on good cause and do not violate Defendant's right to conduct his defense.

The Government has established good cause for the requirement that standby counsel mediate Defendant's access to USCP surveillance footage designated Highly Sensitive. The Government submits a declaration from Thomas A. DiBiase, the General Counsel of the USCP. *See* DiBiase Decl., Ex. A to Gov't's Opp'n, ECF No. 71-1. Mr. DiBiase, quoting language USCP has included in motions for protective orders in criminal cases in D.C. Superior Court, explains that "the purpose of the [Capitol surveillance] cameras is to assist in the maintenance of national security by detecting threats to U.S. Congressmen, their staff, and constituents, deterring and preventing terrorism, and providing for the safety and security of the Capitol Building and Grounds." *Id.* ¶¶ 8–9. He goes on to explain that USCP has "significant concerns with the release of any of its footage to defendants in the Capitol attack cases unless there are safeguards in place to prevent its copying and dissemination." *Id.* ¶ 14. This is based on USCP's awareness that participants in the January 6 riot made efforts to "gather information regarding the interior of the U.S. Capitol, including references to the tunnels below the Grounds and maps of the building's layout." *Id.* He explains USCP's concern that "unfettered access to hours of extremely sensitive information" would result in "vulnerabilities and security weaknesses of the U.S. Capitol being collected, exposed and passed on to those who might wish to attack the Capitol again." *Id.* On this basis, and in line with the approach taken by other courts in this District, *see, e.g.*, Min. Order, *United States v. Clark*, No. 22-cr-409 (Feb. 8, 2023) (denying *pro se* January 6 defendant "unrestricted access to the online discovery databases"); Order at 3–4, *United States v. White*, No. 21-cr-563 (Oct. 17, 2022) (appointing standby counsel to facilitate

4

*pro se* January 6 defendant's access to discovery consistent with the protective order), the Court finds that good cause exists for the protective order's requirement that Defendant have supervised, view-only access to Highly Sensitive CCTV footage, *see United States v. Concord Mgmt. & Consulting*, 404 F. Supp. 3d 67, 73 (D.D.C. 2019) ("It is well established that protective orders are appropriate where the disclosure of discovery could jeopardize the national security of the United States . . . .").

To be sure, as Defendant points out, the good cause analysis is complicated somewhat by recent reports that leadership in the House of Representatives has provided access to view the CCTV footage to personnel from Tucker Carlson Tonight, a Fox News television show. *See* Def.'s Update Disc. Access Issues at 1–2, ECF No. 85; Mike Allen, *McCarthy gives Tucker Carlson access to trove of Jan. 6 riot tape*, Axios, Feb. 20, 2023, https://www.axios.com/2023/02/20/kevin-mccarthy-tucker-carlson-jan-6-riot-footage. However, according to a supplemental declaration from Mr. DiBiase, House leadership only provided personnel from the show access to view the footage using terminals in a House Office Building, and there only while "supervised by staff from [the Committee on House Administration]." DiBiase Suppl. Decl. ¶¶ 10–11, ECF No. 88-1. Mr. DiBiase explains that he was "informed that . . . no footage had been physically turned over to the show," *id.* ¶ 11, though he acknowledges that approximately forty-one clips were ultimately shown during the Tucker Carlson Tonight show on March 6 and March 7, 2023, *see id.* ¶ 14. Still, Mr. DiBiase states that just one of those clips was designated Sensitive, and that clip was shown to him and approved for release ahead of time. *See id*.

There is considerable uncertainty as to whether and how House leadership will make any future disclosures. Many reports suggest that House leadership will proceed cautiously, sensitive

to the same concerns animating the Court's finding of good cause.  *See, e.g.*, Emily Brooks &
Mike Lillis, *McCarthy, GOP pump brakes on release of Jan. 6 footage to Tucker Carlson*, THE
HILL, Feb. 28, 2023, https://thehill.com/homenews/house/3878242-mccarthy-gop-pump-brakes-
on-release-of-jan-6-footage-to-tucker-carlson/.[5]  Others suggest a somewhat more cavalier
approach.  *See, e.g.*, Lawrence Richard, *McCarthy says Republicans will 'slowly roll out' Jan. 6
footage to 'every' news agency: 'Goal is transparency,'* Fox News, Mar. 13, 2023,
https://www.foxnews.com/politics/mccarthy-republicans-slowly-roll-out-jan-6-footage-every-
news-agency-goal-transparency.[6]  However this dynamic situation evolves, at this juncture, the
parties point to no additional disclosure of non-public CCTV footage beyond the mediated
access provided by House leadership to the Tucker Carlson Tonight show.  *See* Gov't's Mem.
Supp. DiBiase Suppl. Decl. and Protective Order at 1, ECF No. 90 ("Upon information and
belief, no media organizations other than the [Tucker Carlson Tonight show] has been given

---

[5] For example, this article quotes Speaker of the House Kevin McCarthy as saying,
"[w]e're working through [the footage].  We work with the Capitol Police as well, so we'll make
sure security is taken care of."  Brooks & Lillis.  It reports that Speaker McCarthy "stressed" that
Tucker Carlson Tonight personnel were not interested in footage showing "exit routes."  *Id.*  It
also quotes Representative Barry Loudermilk, the chairman of the House Administration
Committee on Oversight, as saying that he and others were "working on putting protocols
together and policies and procedures and schedules" to govern footage disclosures.  *Id.*
Representative Loudermilk also described the Tucker Carlson show's access as limited and
subject to security review, saying: "It's basically controlled access to be able to view tapes.
Can't record, can't take anything with you.  Then they will request any particular clips that—that
they may need, and then we'll make sure that there's nothing sensitive, nothing classified—you
know, escape routes."  *Id.*

[6] Notably, even in the interview reported on in this article, Speaker McCarthy suggests
that news agencies only would be able to obtain access to the footage by coming to view it at the
Capitol: "I didn't give [Carlson] the tapes, I allowed him to come see them, just like an exclusive
with anybody else. . . .  We will slowly roll out to every individual news agency [so] they could
come see the tapes as well."  Richard.

6

access to the material at issue in this case.").[7]  The fact of that mediated access alone, based on

the information presently available to the Court, does not defeat the security interest advanced by

the protective order in preventing unmediated access to Highly Sensitive material by Defendant.[8]

*Cf. United States v. Cudd*, 534 F. Supp. 3d 48, 54 (D.D.C. 2021) ("[T]hat video footage of the

January 6 events is publicly available does not diminish the need for confidentiality of the

[CCTV] footage . . . .").

---

[7] It also bears mention that Tucker Carlson reportedly no longer hosts a show on Fox News.  *See* Oliver Darcy & Marshall Cohen, *Tucker Carlson Out at Fox News*, CNN, Apr. 24, 2023, https://www.cnn.com/2023/04/24/media/tucker-carlson-fox-news/index.html.

[8] Defendant has separately moved to remove the Sensitive designation from certain footage in order to share exhibits with news organizations, based on his belief that "the media and the public should not have to rely on [his] descriptions [of this footage] alone" and the "public interest and concern regarding these exhibits is understandably high."  Def.'s Mot. Remove Sensitive Designations at 1–2, 4, ECF No. 82; *see also* Def.'s Update Disc. Access Issues at 4 ("My motion seeks to unseal [certain footage] to allow the American people to see exactly what happened.").  At the same time, Defendant acknowledges that he does not understand and feels no obligation to protect, beyond following the protective order, the Court's interest in preventing pretrial publicity that could prejudice the parties, witnesses, or third parties involved in this case or any of the many other January 6 cases.  *See* Def.'s Resp. Gov't Mem. ("Def.'s Suppl. Mem.") at 7, ECF No. 95 ("First off, I do not know if [an ethical code on pretrial publicity] exist[s], as the government tends to make things up. . . .  I am not an attorney and have no intention to become one, and I do not know what the ethical standards of the lawyering trade are." (footnotes omitted)).  This bolsters the Court's finding of good cause to prevent Defendant from obtaining unfettered access to footage designated Highly Sensitive.  *See Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979) (explaining that "a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity" and accordingly "may surely take protective measures even when they are not strictly and inescapably necessary"); *United States v. Cudd*, 534 F. Supp. 3d 48, 56 (D.D.C. 2021) (rejecting January 6 defendant's "concern . . . about the limitations on her ability to try this case in the court of public opinion pretrial through dissemination of selected evidence" under a similar protective order on grounds that "[t]he Court's priority is to ensure fair criminal trials to the Government, [the defendant], and other defendants related to the January 6 incident, not cater to parties' interests in selective disclosures to the media" and "pretrial publicity of discovery in this case may injure other defendants, witnesses, and third parties whose personal information was collected in the Government's investigation").

In addition, the protective order's restrictions do not violate Defendant's right to conduct his defense.  Under the Sixth Amendment, a *pro se* defendant has the right to "control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial."  *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984).  However, the Court "may—even over objection by the accused—appoint a 'standby counsel to aid the accused."  *Farretta v. Cal.*, 422 U.S. 806, 834 n.46 (1975).  Still, a *pro se* defendant "is entitled to preserve actual control over the case he chooses to present to the jury," so participation by standby counsel over the defendant's objection must not "substantially interfere with any significant tactical decisions" made by the defendant.  *McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984).

At the outset, it bears repeating that Defendant has full access to possess all Sensitive materials and to view all Highly Sensitive material under supervision by standby counsel.  *See* Protective Order ¶¶ 4–6.  In addition, Defendant may create still images from Highly Sensitive footage for use in this case.  *See* Gov't's Resp. to Def.'s Status Report ("Gov't Suppl. Mem.") at 4, ECF No. 80.  The protective order also provides for a process by which Defendant can dispute a sensitivity designation or seek redactions that would reduce or eliminate a sensitivity designation.[9]  *See* Protective Order ¶ 8.

Defendant explained during a December 2, 2022 conference that he is primarily frustrated by technological delays in gaining access to view large volumes of Highly Sensitive material due to the fact that he resides in Topeka, Kansas, while standby counsel, who provides him viewing access through a cloud-based service, is based in Washington D.C.  At the Court's

---

[9] Indeed, as noted *supra* note 8, Defendant has already moved to remove the Sensitive designation from certain footage.  *See generally* Def.'s Mot. Remove Sensitive Designations.

suggestion, Defendant explored options for a local attorney to assist standby counsel by supervising Defendant in person, thereby eliminating any remote-access delays. *See generally* Def.'s Status Update, ECF No. 78.  Defendant identified a local attorney located approximately 35 minutes away from his home that could provide Defendant a conference room and supervise him for several hours per week.[10]  *Id.* at 9–10.

The Government blesses this option as "eminently reasonable," Gov't's Suppl. Mem. at 2, but Defendant complains that traveling the 35 minutes to the office of this attorney, whom he chose to contact in the first place, "would cost [him] time and money" and therefore constitutes a "Jim Crow era poll tax[]." Def.'s Status Report at 11.  Defendant's decision to reject this available option to enhance the efficiency of his review of Highly Sensitive material does not alter the Court's conclusion that the protective order's restrictions are based on good cause and do not violate Defendant's right to conduct his defense.  Defendant retains access to review Highly Sensitive material, and any inconvenience associated with the requirement for standby counsel to supervise that review merely reflects an appropriate balance, envisioned by the Federal Rules of Criminal Procedure, between Defendant's entitlement to discovery of evidence "material" to his defense and "the protection of information vital to the national security."  Fed. R. Crim. P. 16(a)(1)(E); *id.* Advisory Comm. Notes to 1966 Amendment; *cf. United States v. Workman*, No. 18-cr-20, 2019 WL 276843, at *2 (W.D. Va. Jan. 22, 2019) ("Although [defendant] argues that the requirement that he meet with his counsel to review the discovery materials is inconvenient and burdensome because he will have to take approximately 50 hours

---

[10] As reported by Defendant, the attorney agreed to accommodate him for four hours per week and "believe[s]" that he will be able to accommodate him for eight or more hours per week after moving offices this month.  *See* Def.'s Status Report at 9–10.  The Court remains willing to appoint this or another local attorney to assist Defendant at his request.

9

off work to do so, the hardship to him is relatively minor in light of the potential for harm to the government's witnesses.").

Contrary to Defendant's overheated complaints of injury from the protective order, *see, e.g.*, Def.'s Update Disc. Access Issues at 8–9 (claiming that the Government, in seeking to enforce the protective order, has "behaved like rabid outlaws rushing the city jail in a western movie, whooping and hollering for this court to violate my Constitutional rights and to rush me to the nearest tree with a noose around my neck," and comparing this "deviance from justice" to "the institution of slavery, the brutalization of native Americans, and the internment of Japanese-Americans"), standby counsel simply acts as a conduit to provide Defendant viewing access to Highly Sensitive material, a role that involves no interference with Defendant's tactical decisions whatsoever. *See United States v. Williamson*, No. 20-cr-195, 2021 WL 5178853, at *2 (D.D.C. Nov. 8, 2021) (finding that order requiring standby counsel to review and file all pretrial motions to prevent frivolous motions does not violate defendant's ability to conduct his own defense). As another court in this District recently explained in a January 6 case, standby counsel's "narrow" role of facilitating access to discovery does not "in any way impact [Defendant's] ability to 'present [his] own case in [his] own way." Order at 3, *United States v. White*, No. 21-cr-563 (Oct. 17, 2022) (quoting *McKaskle*, 465 U.S. at 177).

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion to Modify the Protective Order, ECF No. 67, is **DENIED**.

**SO ORDERED**.

Dated:  April 26, 2023                                RUDOLPH CONTRERAS
                                                      United States District Judge

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                v.

WILLIAM ALEXANDER POPE,

             Defendant   .

Case No.: 1:21-cr-00128-RC

## MOTION TO MODIFY THE PROTECTIVE ORDER AND TO COMPEL FULL ACCESS TO DISCOVERY

I, William Pope, pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure respectfully request this Honorable Court to modify the existing protective order in this case concerning the disclosure and retention of discovery deemed sensitive and highly sensitive in this matter; and respectfully request the government be compelled to fulfill their Brady obligations and provide me full access to that discovery through the Relativity and evidence.com indexes that is equivalent to access granted officers of the court in other January 6 cases.

## OVERVIEW

The sixth amendment was enacted to ensure American citizens have an absolute right to be informed about the nature and the cause of accusations brought against them in legal proceedings, and that they my contest those accusations in court. The sixth amendment also grants that defendants have a right to legal counsel. However, this does not mean a defendant must be represented by counsel. Our Supreme Court has ruled the State must not "thrust counsel on the accused, against his considered wish," and that counsel must not be "interposed between an unwilling defendant and his right to defend himself personally" (Faretta v. California, 422 U.S. 820 (1975)):

*The Sixth Amendment does not provide merely that a defense shall be made for the accused;*

*it grants to the accused personally the right to make his defense. It is the accused, not*

*counsel, who must be "informed of the nature and cause of the accusation," who must be*

*"confronted with the witnesses against him," and who must be accorded "compulsory*

*process for obtaining witnesses in his favor." Although not stated in the Amendment in so*

*many words, the right to self-representation—to make one's own defense personally—is*

*thus necessarily implied by the structure of the Amendment.*

Faretta 422 U.S. 818 (1975) also noted of the sixth amendment that "because these rights

are basic to our adversary system of criminal justice, they are part of the 'due process of law' that is

guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States."

So, to deny me the right to personally confront accusations against me, would also deny me

my right to due process.

This honorable court has correctly recognized my right to represent myself, but the question

remains before the court whether I will be allowed to exercise this right in full or whether the

government will succeed in making it a hollow right.

The due process of the fifth and fourteenth amendments also includes the right to examine

evidence, including favorable evidence. Yet in the January 6 cases, the government seeks to put

conditions on defendants who exercise their sixth amendment right to self-represent. Such

conditions would prevent Pro Se defendants from directly accessing discovery, including

exculpatory discovery, and hinder them from adequately preparing their defense.

The great Americans who enacted our sixth amendment did not make it conditional on the

whims or wishes of the prosecution. The constitutional rights of defendants to be informed about

the nature of accusations and confront them are recognized as absolute, and legal proceedings –

such as the one we are engaged in now – are the very context where these sixth amendment rights

were intended to be exercised. To confront accusations by the government, defendants must have due process under law, which includes access to discovery. By restricting a Pro Se defendant's fifth and fourteenth amendment rights to due process of discovery, the government is effectually punishing defendants who choose to represent themselves, which denies the fourteenth amendment right of Pro Se defendants to have equal protection under the law.

The government has circumvented my Pro Se rights by creating two, unequal systems of discovery access. One is a system of full access to discovery granted to representative counsel in their capacity as officers of the court on behalf of January 6 defendants. The other is a system of restricted discovery access forced upon Pro Se defendants, who having exercised their right to represent themselves are recognized as the officers of the court in their own cases.

Here in Topeka, five blocks from my house, is St. Mark's A.M.E. Church – a physically modest limestone and brick building where a railroad welder named Oliver Brown once preached. A couple blocks beyond St. Mark's is the weathered McKinley Elementary School, which was once segregated and now is boarded up.

Seventy years ago, American society separated everything from rail cars to elementary schools on the basis of race. Here in Topeka, Oliver Brown's daughter had to travel across town to a segregated school because she was prohibited from attending the all-white public school in their own neighborhood. Those in government who created and maintained this policy of segregation attempted to justify it based on a wronghearted interpretation of the fourteenth amendment – Plessy v. Ferguson 163 U.S. 537 (1896) – that rail lines could enforce separation of black passengers and white passengers as long as the physical condition of those separate rail cars was equal.

Fortunately, Mr. Brown and others challenged our Topeka Public Schools in court, which led to the U.S. Supreme Court overturning the Plessy doctrine of separate but equal. On the 50th anniversary of the Oliver Brown v. Topeka Board of Education ruling, the week I graduated from

Topeka Public Schools, I attended the dedication of Brown v. Board of Education National Historic Site here in Topeka. That day at Monroe Elementary School, Justice Breyer told us in the crowd that, "before May 17, 1954, the words 'Equal Justice Under Law' chiseled in stone above the Supreme Court's door rang with irony; after May 17, 1954, those words began to mean what they say." Having known many Topekans who attended segregated all-black schools, and having worked for the government at Brown v. Board of Education National Historic Site on loan from the historic all black pioneer town of Nicodemus, the principles that SEPARATE IS NOT EQUAL and that America is a nation of EQUAL PROTECTION UNDER LAW are deeply etched into my sense of justice.

Yet from time to time, injustices still occur in American society (and at times injustices are still perpetrated by our own government) and petitions must be brought before the court appealing that long held constitutional standards like EQUAL PROTECTION and SEPARATE IS NOT EQUAL be reaffirmed in a new context.

So it is, I find myself in a position where the government now forces me, as a Pro Se defendant, into a separate system for discovery from that which other officers of the court have access to. And not only do Pro Se defendants have separate discovery access from other officers of the court, but their access is not equal.

By the government segregating Pro Se officers of the court into a separate, unequal system of discovery access from other officers of the court, the government is also putting those Pro Se defendants into a separate rail car from all other January 6 defendants. As the one representing myself in court, I am the only one who can manage and make decisions in my case, and I am the only one who can confront witnesses with evidence from discovery. The government conditionalizing my sixth amendment rights denies me my fifth and fourteenth amendment rights

to due process and prevents me as a Pro Se defendant from having the same protections of law as the January 6 defendants who have opted for representative counsel.

Citizens who exercise their right to self-represent should not, by doing so, be forced to relinquish other rights, including the right to explore and examine evidence as they investigate their own case. Yet the government's position on discovery access requires defendants to choose one right and forfeit others. This motion argues that defendants have both the right to self-represent and the due process right to discovery. Withholding discovery access from Pro Se defendants denies them due process and violates the equal protection clause of the fourteenth amendment.

The government's arbitrary construct of separate systems and disparate access to discovery has great personal consequences to me because it occurs in a context where the government has levied criminal accusations against me and seeks to deprive me of my liberty. Though the government's representative, Mr. Crawford, has correctly stated in a recent call that my conduct on January 6 was "entirely peaceful," and though I am rightly presumed innocent by the laws of our country, I still am in a position where I must go through the process of defending myself in court against all charges levied against me. To do that I need full and equal access to discovery.

## BACKGROUND

On May 5, 2021, this Court entered a Protective Order for Government Discovery in this case (Exhibit 1: Protective Order).  This order dictated that I, the defendant, would not be able to view highly sensitive government videos and discovery unless accompanied by State interposed counsel and that I, the defendant, could not keep or retain copies of any documents that were subject to this restriction. (See Figure 1, emphasis added).



*Figure 1: Excerpt from the current protective order.*

At the time I signed the protective order, I was represented by Mr. Terry Eaton. Thereafter, Mr. Eaton only shared USCP video with me on one occasion and for only a few short minutes, which meant I was almost entirely in the dark as to the scope and nature of discovery in my case.

After Mr. Eaton closed his practice, Mr. English was appointed by the court to be my counsel. Mr. English began practicing law before I was born, and his practice predated the use of computers, so he never developed the technical proficiency needed to handle the digital discovery in my case. As I noted in my previous letter to the court, Mr. English never gained access to the government databases while he represented me, so in the year and a half since my arrest I had not seen most of my discovery.

Because of my direct knowledge of events, I know the details of my case better that anyone and I made the decision to represent myself. The court granted me Pro Se status and then appointed Mrs. Cubbage to be my standby counsel on August 8, 2022. While a standby counsel can advise and assist in some ways, they cannot manage a Pro Se defendant's case or direct their defense. And

a standby counsel should not become a barrier, filter, or undue burden to a Pro Se defendant examining the evidence. In the case of McKaskie v. Wiggins U.S. 165, 174 (1984), the court ruled "the pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial."

While the current protective order was designed for what has become the more common attorney-client relationship, it severely restricts the ability of Pro Se defendants to examine discovery and make informed decisions in the organization and content of their own defense. Exercising my constitutional right to represent myself as the officer of the court in my own case necessitates that I have full access to discovery. Without such access, the right to represent oneself is effectively a hollow right. The government's opposition to granting me full discovery access denies me due process and creates an undue burden limiting my ability to adequately confront witnesses and accusations.

I have attempted to dialogue with the government on these matters so they might be resolved outside of court. During a September 23, 2022, call with Mr. Crawford (the current government representative in this case), Mr. Crawford did state that my conduct on January 6 was "entirely peaceful" and that I did not destroy or steal anything. However, Mr. Crawford affirmed that the government intends to oppose Pro Se defendants gaining full access to discovery unless they are compelled by order to honor my constitutional rights. Since the matter could not be resolved through dialogue, I am bringing this motion to the court to modify the protective order and compel the due process of discovery access.

## TWO STANDARDS of DISCOVERY ACCESS

The government's position on access to discovery creates two separate, unequal standards for officers of the court in the January 6 cases.

Representative defense counsel are granted full access to the discovery databases and may use features of those systems to organize a defense. They may also download discovery files and use those downloaded files to create work product and exhibits to aid in their defense.

In contrast, Pro Se defendants – who are the officers of the court in their cases – have only limited access to one of the two discovery databases used by the government, have no direct access to the other database, and have no access to features of those systems that allow pieces of evidence to be organized for a defense. These features include the ability to track evidence that has been examined, the ability to tag evidence deemed important for defense, the ability to create witness files, the ability to create work product, and to save specific searches and narrow searches to find relevant materials.

Pro Se defendants are also prevented from downloading files directly, and from possessing files which the government arbitrarily classifies as highly sensitive. These access restrictions prevent Pro Se defendants from preparing work product and court exhibits. Such exhibits might demonstrate how events unfolded frame by frame, or compare multiple vantage points in a split screen, or enlarge materials to make key evidence more visible to a jury. These exhibits are needed for confronting witnesses, but this access disparity allows the government (which has full access to all discovery) to have an unfair advantage against Pro Se defendants when contesting these charges in court.

So, while the government (in this context of discovery access for Pro Se defendants) upholds the 'separate' of what I had thought was a defunct Plessy ruling, they at the same time ignore the 'equal' requirement from Plessy. My position is parallel to the Supreme Court's decision in Oliver Brown's case, that access should not be separate and must be equal.

I would not have to raise this fourteenth amendment questions of equal protection, were the government not also placing conditions on the absolute right of citizens to represent themselves; conditions that deny me the due process of examining evidence which is recognized in our fifth and fourteenth amendments.

## THE COMPARTMENTALIZATION of JANURY 6 DISCOVERY

To understand the dynamics of discovery access in January 6 cases and the arguments raised in this motion, it is important for the court to understand how the government creates two separate, unequal systems of access by compartmentalizing discovery for the January 6 cases.

**Case Specific and Global Discovery**

For each January 6 defendant, the government chooses what will be considered case specific discovery. This case specific discovery is what the government says is directly relevant to a defendant's case. Beyond that, there are more than 3 million files of various types that are included in global discovery. The global discovery is intended to provide defendants access to the broader context of January 6, however I have found there are also many items in the global discovery that are specifically relevant to individual defendants such as myself.

Unfortunately, the government has not identified to defendants all of the items in the global discovery productions that are specifically relevant to their individual cases, and the government has left those items out of defendant's case-specific discovery. For instance, there are USCP cameras in the evidence.com index which the government has failed to point out as being relevant to my case. There are also exculpatory materials in the Relativity Index (which the government

prevents me from accessing) that I have only discovered after their public release as exhibits in other cases.

The government's omissions from case-specific discovery will force me as a Pro Se defendant to search through more than 3 million files to find what is specifically relevant to my case. However, I cannot even conduct full searches because I do not have access to all the discovery productions. By not identifying all directly relevant discovery the government is able to hide exculpatory evidence like needles in a haystack. The government argues that they are technically providing all exculpatory materials and fulfilling their Brady obligations, but one must search the haystack to find those materials. And Pro Se defendants are prohibited from sorting through the haystack.

Already, my standby counsel has shown me video files in the global discovery that are relevant to my case and exculpatory to me as a defendant. These files were not listed by the government in my case specific discovery.

I have also found exhibits that have been made public from other January 6 cases that contain information relevant to my own case, yet these have not been listed in my case specific discovery. If I had not stumbled across these materials on the internet, I may have never found them. This is because the protective order and the government's current policy prohibiting defendants access to the Relativity index severely restricts my ability to find and examine relevant evidence in global discovery productions.

**The Sensitivity Classifications of Discovery**

Beyond the case and global compartmentalization, the government has also put in place a classification system for discovery. For instance, the U.S Capitol security footage is classified as either sensitive or highly sensitive. These classifications do not limit access for representative counsel, but under the conditions set forth in the current protective order these classifications do restrict the access of defendants, including Pro Se defendants to examine evidence. Those restrictions create an undue burden and adversely impact my ability to prepare a defense.

Beyond the sensitive and highly sensitive designations, there are also some items in discovery that have no sensitivity designation, and some items which the government does not provide access to at all. For instance, the government has established six categories of excluded security footage (See Exhibit 3 below from Global Discovery Production No. 12, March 4, 2022). Some of those categories, such as X-Ray machine image feeds or security footage of daycare centers in the Capitol complex, may not be relevant to any case.

---

**B.  Disclosure about USCP CCV**

The USCP captured footage from all Capitol interior, all Capitol Visitor Center ("CVC") interior, and all exterior CCV cameras that were in place on January 6, 2021.  We have produced all such footage to the defense instance of evidence.com except footage depicting:

1. Critical infrastructure, e.g., communication and security closets, fire doors in the basement levels of the CVC, loading docks.
2. X-Ray machine image feed.
3. Intel and Sensitive Compartmented Information Facility ("SCIF") office lobbies.
4. Tunnels and subways.
5. Evacuation routes and shelter-in-place locations utilized by, *inter alia*, members of Congress, their staff, and the Vice President, on January 6, 2021.
6. Daycare centers and the Senate page dormitory (i.e., exterior footage that provides views of the entrances to these facilities and daycare playgrounds).

---

*Figure 2: The excluded categories of USCP video not provided to defendants. From Global Discovery Production No. 12, section B*

Other categories, such as security footage showing movements of the Vice President and members of Congress, may be relevant because the government has used some of that footage as exhibits in other January 6 trials. Currently the government is able to pick and choose what they will use from those excluded categories, while defense teams are left without a full understanding of what the excluded categories contain. This creates a situation where Pro Se defendants and even representative counsel must defend against the government's hand-picked clips from excluded categories that may be lacking important context. This also denies defendants the ability to confront adversarial witnesses with contextual evidence from the excluded categories.

There is also the question of whether the government has withheld any other video or relevant materials. I asked Mr. Crawford if there is any security footage that does not fall into their six excluded categories that also has not been produced in global discovery. In his email response, Mr. Crawford performed considerable rhetorical dancing but did not directly answer the question with a yes or no. He may be restricted by his superiors on what he is allowed to say, but in the absence of an absolute denial, I must assume it possible that the government is withholding additional relevant video from both representative counsel and Pro Se defendants.

**The Storage Indexes Used for Discovery**

Discovery is also compartmentalized by the index systems the government uses to store and transmit discovery to defense teams. There are two main databases the government uses to provide access to January 6 discovery: evidence.com and the Relativity index. Both index systems host material that is designated by the government as sensitive and highly sensitive.

The evidence.com index holds footage from US Capitol Police, US Secret Service, and Metropolitan Police Department security cameras. Evidence.com also hosts body worn camera footage from various responding agencies. Representative counsel have full access to the evidence.com index, and may download files directly to use in the creation of work product to prepare for defense of clients.

Pro Se defendants initially have no access to the discovery hosted on evidence.com. In my case I have had to request access to cameras individually. My standby counsel then goes through a tedious process of individually granting me access to each camera I request. Once she shares the camera with me, I have only viewing access. My account is prevented from downloading any discovery directly regardless of whether the camera is designated sensitive (which the protective order allows me to possess) or highly sensitive (which the protective order currently prohibits me from possessing pending the outcome of this motion).

Even though my standby counsel has invested considerable time into granting me viewing access for files I request, I still have no access to most of the discovery hosted on evidence.com, and I have no direct access to the more than 3 million files in the Relativity Index. This means I have access to far less than 1% of the total January 6 discovery.

And with the voluminous amount of discovery, it is easy to lose track of what is relevant to my case as there is no way for me to organize or download relevant videos once viewed. This creates an additional obstacle for me as I attempt to manage the large amount of data in my case.

And while the government has provided spreadsheets containing the names of files hosted on evidence.com (which allows me to specifically request individual files), they have not provided me spreadsheets of all the files hosted in Relativity. What the government does provide are broad generalizations of the types of files in Relativity. But, as my standby counsel has shown me, the only way to know what files are in those categories is to have direct access to the system (see attachment 1, which shows the generalized categories of global productions made to date).

Even having a spreadsheet of file names for evidence.com has limited usefulness. Many of the camera names and codes are not intuitive, and the files are often listed with different timestamps, even for the same camera. For instance, a video file showing a scene from 2:20 p.m. EST might be displayed as 1920, while the next file from the same camera uses 1440 for 2:40 p.m. EST. The only way to figure out which cameras and timestamps are needed is to have direct access.

Some of the video files are also corrupted, and the government's spreadsheet which tells which videos are corrupted has been classified as highly sensitive. Because this spreadsheet is classified as highly sensitive, I am prevented by the current protective order from possessing it and am unable to use it as a reference unless my standby counsel shows it to me in a video conference. This is yet another undue burden for Pro Se defendants.

It is also difficult to use the list of video files without knowing where those cameras are. The government has produced maps of those camera locations that were intended to simplify the research process for defense counsel. However, the government has classified those maps as highly sensitive, so I, as a Pro Se defendant am prohibited by the current protective order from possessing those maps (the same tools that other representative officers of the court have access to). This prohibition increases the likelihood that I will miss finding crucial video evidence when preparing my defense.

The government even stated in a recent filing in another January 6 case that the camera maps are needed to find and understand the 30,000+ files in evidence.com:

> *". . . the video files, which were provided to the defense via evidence.com. amount to over nine terabytes of information and would take 102 days to view. To find relevant footage from the Capitol Police's surveillance system and adequately prepare for trial, one would need to use the maps which display the locations of the interior and exterior cameras. The government therefore provided the defense with maps that display these locations. The government provided fifteen camera maps of the interior of the Capitol Visitor's Center and the interior of the Capitol, and one camera map of the Capitol grounds. The maps depict the general location of the cameras that are identified by unique number in each USCP CCV video filename." (ECF 87, 1:21-cr-00177-CRC, Filed July 5, 2022).*

So, while the government publicly acknowledges that the maps are necessary to "adequately prepare for trial," they are preventing Pro Se defendants from using those maps, which prevents us from adequately preparing for trial. This means the government is making access to discovery most difficult for those who are newest to the justice system. Currently, the only way for me to reference these maps is to constantly pester my standby counsel to show them to me in video conferences. Doing so is not only time intensive and disruptive to her work in other cases, but also creates an undue burden for me as I prepare my own defense.

Since I do not have the maps which the government acknowledges are needed for constant reference, my best option is to guess from the spreadsheet at which files might be useful to my case, and then send a list of file numbers for my standby counsel to share with me.

This approach has odds of success similar to shooting in the dark and praying to hit the target. Many of the files I request end up being completely irrelevant to my case, which wastes my time and the time of my standby counsel. And even though I have spent considerable time searching through videos my standby counsel has shared with me on evidence.com, there are still several large gaps in the timeline I am creating of the events of my case.

The second database the government uses to store January 6 discovery is the Relativity Index. This database includes most of the more than 3 million files in global discovery. Representative counsel have been given full access to Relativity, but the government has been insistent that defendants – including Pro Se defendants – be prevented from directly accessing Relativity.

Relativity, like evidence.com, uses the sensitive and highly sensitive designations applied by the government. Yet while I am granted limited access on evidence.com, I have no access to Relativity. This creates a system where the government can hide evidence from Pro Se defendants by placing it in one index (Relativity) rather than the other (evidence.com).

The only way I can currently view any of the files in Relativity is by video conferencing with my State interposed standby counsel who is busy working on other cases. So, not only am I challenged to find needles amongst 3 million pieces of hay, but I have to do so in the very limited time my standby counsel has for showing me the Relativity haystack.

So far, my standby counsel Mrs. Cubbage has shown me the Relativity Index on one brief occasion. At that time, she pointed out to me that Relativity includes tools that help attorneys organize evidence in their cases as they prepare a defense. For instance, these tools enable users to conduct and save searches, create work product, and create witness files.

Since the government is preventing me from accessing Relativity directly, they are also preventing me from having the same tools that officers of the court in other January 6 cases have access to. This puts me at an even greater disadvantage in organizing evidence and preparing my defense. Greater access to discovery materials is also needed to identify additional witness credibility issues and new topics for investigation.

Mrs. Cubbage also briefly showed me some video files that are hosted on Relativity. Since those videos are not compressed like videos hosted on YouTube, they require more internet bandwidth for the images to get to my standby counsel's computer and then be transmitted over a video conferencing system (like Zoom) to where I can see it. This State interposed go-between method results in the video display lagging on my screen. Normally, video plays at 30 or even 60 frames per second, but when Mrs. Cubbage tries to transmit video from Relativity to me, I might see one frame every other second. This results in a very choppy playback that skips substantial chunks of visual information, and makes it impossible for me, as the officer of the court in my case, to examine the evidence fully and adequately. Mrs. Cubbage also lacks a computer capable of storing and working with all the large video files that will be needed in my case, which hinders her from downloading and sending me even the sensitive files (which I am allowed to possess) unless she first deletes other important files from her computer to create space.

The solution to these access and transmission issues is for me to have direct access to Relativity that is equal to other officers of the court in January 6 cases so I can view materials from the platform and download relevant materials to the computer I have built for working with video.

All of the above factors make preparing for trial unduly burdensome for Pro Se defendants and are materially disadvantaging my ability to mount a defense.

## THE GOVERNMENT DECLINES to IDENTIFY REQUESTED BRADY MATERIALS

On August 26, 2022, I emailed Mr. Crawford, the government's representative, requesting the government identify several individuals who appeared to be filming in locations and times the government has alleged me to be. I also requested the government turn over any video, audio, or photos those individuals recorded. My email included video screenshots of the individuals requested, as well as the location where those individuals were sighted.

Initially, Mr. Crawford declined to identify any of those individuals and claimed that I had not demonstrated that they, or any media they captured, were material to my case. I reminded Mr. Crawford that since the government has provided discovery to me alleging me to be in those locations at those times, it was likely that those individuals captured evidence that was exculpatory to my case. I then asked Mr. Crawford to file a motion to dismiss if he was not alleging me to be in those locations at those times. A few days later Mr. Crawford produced information on one of the dozens of individuals I had requested, a Mr. David Ticas.

The charging documents for David Antonio Ticas were filed with the court on September 9, 2021, so this man was not only known to the government, but he was arrested nearly a year before I requested his identity from the government. Yet, the relevant video evidence Mr. Ticas collected has not been produced in my case specific discovery.

In his September 1, 2022 email identifying Mr. Ticas, Mr. Crawford said he believed the scoped contents of Mr. Ticas' phone were added to Relativity on March 28, 2022. However, I have asked Mrs. Cubbage to search for media captured by Mr. Ticas in Relativity, and as of October 30, 2022, she was only able to find two files in Mr. Ticas' Relativity folder. Neither of those files were the video I requested from Mr. Crawford.

On October 28, 2022 I was surprised to see that an NBC journalist had tweeted out the 'highly sensitive' video from Mr. Ticas' cell phone that I had requested from Mr. Crawford. I have been told by Mrs. Cubbage this file is not available in Relativity, but now this file has been publicly released to the entire world as an exhibit in Mr. Ticas' case. When can I expect the government to add it to my case specific discovery?

Unfortunately, the government's failure to produce the Brady material from Mr. Ticas phone is not the only example. Recently, exhibits released following the Ochs/DiCarlo sentencing have become public, and as with Mr. Ticas' video, I discovered those 'highly sensitive' Brady materials on Twitter. Yes, the government has unsuccessfully tried to troll my Twitter use in their last humorless filing, but how can they expect me to stay off Twitter when the platform provides me important Brady materials the government fails to produce?

Defendants should not have to rely on the public release of court exhibits as a means of obtaining exculpatory materials for their own defense. Providing such discovery is the Brady obligation of the government and is in the interest of justice (which is presumably still their core mission). Unfortunately, my experience has been that the Department of Justice has obstructed my access to search discovery while also failing to provide the Brady materials I directly request.

## THE PROTECTIVE ORDER PLACES an UNDUE BURDEN on PRO SE DEFENDANTS

The current protective order makes it more difficult for Pro Se defendants to examine evidence, makes it more likely that they will miss finding exculpatory evidence, and makes it more time consuming for Pro Se defendants to prepare their defense.

When Oliver Brown became the lead plaintiff in the suit brought against the Topeka Board of Education, his daughter was prevented from attending a nearby all-white school and instead had to travel across town to the Monroe Elementary School. In addition to denying his children equal protection, this additional travel was an undue burden.

Pro Se defendants are forced to work harder and jump through more time-consuming hoops to view and obtain discovery through the system the government has forced upon them. This is an undue burden shouldered by Pro Se defendants.

I am even prevented from taking screen shots from highly sensitive cameras for use in work product. So, even though the government has already publicly revealed clips from highly sensitive cameras that convey their approximate location, they still arbitrarily argue the position of these cameras is highly sensitive.

Since I cannot download video directly, I must request my standby counsel to send me sensitive video (the classification the protective order allows me to possess) through an online storage service such as Dropbox. This service is an additional cost to her and me. But before she can upload videos to Dropbox, she must download them to her own computer, which has limited storage capacity and is unable to handle the amount of video relevant to this case. It also takes considerable time for her to download the video, upload it to another service, and then for me to download it to my computer. These additional steps greatly increase the amount of time and effort required to prepare a defense.

The government wishes the court to interpose my standby counsel as a filter between me, the officer of the court in my own case, and the discovery. However, Faretta 422 U.S. 820 (1975) makes clear that counsel "shall be an aid to a willing defendant – not an organ of the State interposed between an unwilling defendant and his right to defend himself personally":

*The counsel provision supplements this design. It speaks of the "assistance" of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists.*

While I appreciate the work of Mrs. Cubbage, no standby counsel should be thrust as a barrier between a Pro Se defendant and their own discovery. I am "unwilling" to have such interposition to my discovery access, and the State interposing counsel in such a way is not only against my "considered wish" but also "violates the logic of the amendment."

The Supreme Court emphatically noted in Faretta 422 U.S. 821 (1975) that only the British Star Chamber "adopted a practice of forcing counsel on an unwilling defendant in a criminal proceeding," and that "for those reasons, and because it specialized in trying 'political' offenses, the Star Chamber has for centuries symbolized disregard of basic individual rights."

If our government now seeks to transform this honorable court into such a Star Chamber – that is they implore this court to inflict similar deprivations of rights on defendants wishing to represent themselves – then I, in my unwavering allegiance to the United States Constitution must petition this honorable court as an officer thereof to rebuff the government's subversive requests and compel them to honor the basic individual rights enshrined in our national charter.

## PRO SE DEFENDANTS NEED to CREATE WORK PRODUCT and EXHIBITS

The government blocking Pro Se defendants from directly accessing more than 3 million files of discovery in the Relativity Index, prevents Pro Se defendants from examining the evidence brought against them. When the government also blocks Pro Se defendants from possessing discovery classified by the government as highly sensitive, the government prevents defendants from creating work product and exhibits.

These restrictions certainly limit the extent to which defendants can examine the evidence but preventing Pro Se defendants from creating exhibits also severely restricts their ability to confront that evidence in court.

Creating work product also enables Pro Se defendants to examine the evidence in more depth. For instance, the large amount of video discovery in January 6 cases necessitates the creation of video timelines to understand how events unfolded. Syncing multiple video files together into work product allows the evidence to be examined and analyzed in ways that cannot be achieved by viewing each video file individually without context. Creating such work product also enables Pro Se defendant to create better exhibits for court.

As a Pro Se defendant, I need to be able to enlarge and slow down video to show jurors exactly what did and did not happen. I also need access to video so I can create split screen exhibits that show jurors multiple perspectives of specific moments in time.

As this court noted in our last hearing, the government routinely utilizes highly sensitive footage in their own compilation video exhibits. When Pro Se defendants are prohibited from created synchronized exhibits they are at a distinct disadvantage, because the government is bound by no such restrictions.

For instance, in other January 6 cases, such as the current Oath Keepers trial, the government has presented video exhibits that place video clips out of order and that are marked with the wrong timestamps. This practice can mislead a jury as to the sequence and nature of events, corrupt jury deliberations, and prevent defendants from receiving justice.

If I am to defend myself against similar misleading and prejudicial exhibits, I must be able to show the jury the correct sequence of events and with correct timestamps. To do that, I need access to all discovery, including what the government has labeled as highly sensitive, because synchronizing moments relevant to my case will require me to work directly with those files.

Exhibits are also needed to confront and impeach false witnesses. For instance, the government has provided me a summary of statements made by a Capitol Police officer who claimed that a man he believed was from Michigan attempted to grab his baton. Later that officer, when shown an image of me, alleged that I was the baton-grabbing culprit.

Not only is Michigan one of the few states I have never been to (though I do hope to visit Michigan's National Parks someday), and not only is this officer's original description of the supposed baton-grabber completely different than my own physical features, but the government's own footage shows this incident never occurred.

In our September 23, 2022 call, Mr. Crawford brought up this officer's statement as an example of an officer incorrectly recalling events. Mr. Crawford even noted that this accusation did not seem like something I would do since my conduct in life and on January 6 has been entirely peaceful.

However, Mr. Crawford is only detailed to this judicial district and my case temporarily and he expects to eventually be replaced by another government attorney. It is possible that a replacement prosecutor might try to bring this officer's provably false accusations against me in court. This Capitol Police officer may be a good man suffering a clouded memory, but if he were to testify against me, I would need to present video exhibits to confront that officer's recollection of events. This is only one example, but there are other witnesses I will need to confront with video evidence.

The government has even acknowledged that I will need to possess highly sensitive video for my defense. They have proposed allowing me to directly access a limited number of 'highly sensitive' videos only within the three months prior to a potential trial. This proposal disadvantages me because the government is already producing, reusing, and honing exhibits for January 6 cases that outline their preferred narrative of events.

The three months preceding a trial are also filled with many other tasks and obligations, which will limit the time I have available to prepare adequate video exhibits for my defense. Furthermore, the government preventing me from creating work product and exhibits now hinders me from developing a more advanced understanding of the case that will inform and inspire future motions that could discourage the government from taking this case to trial.

In preparing this motion, I have read the fifth and fourteenth amendments repeatedly and I have yet to find a time limit on a defendant's due process rights to discovery access. I have also not found an exception to the equal protection clause that restricts Pro Se officers of the court to a short period of direct discovery access, while representative officers of the court have no such limitations. And I have found no amendment that grants the U.S. Attorney for the District of Columbia the power to arbitrarily deny American citizens these rights.

Compilation videos and other video exhibits take time to develop and require direct access to original footage.  I am being denied the ability to create these exhibits by the current protective order and by the government's policies restricting access to Relativity and evidence.com. These factors will deprive me of the opportunity to confront my accusers on an equal footing in court.

## WITHOLDING ACCESS to DISCOVERY is not JUSTIFIED

The government has argued that January 6 defendants must not be given direct access to discovery due to the crimes the government has alleged them to have committed and due to what the government claims are national security concerns regarding the layout of the Capitol.

If the government's first argument was valid, no defendant in American history would be given due process access to discovery. But our Constitution grants due process because the very intent of our law is to allow the accused access to evidence so they might confront their accusers.

Furthermore, I have no criminal history, I have never used illegal drugs, I have been a productive member of society, I have fully complied with the conditions the court has set for pretrial release, and I have fully complied with the current protective order. I have a long track record of being trustworthy and our law rightfully presumes me innocent.

In the past, the federal government has entrusted me as an employee of the National Park Service to account for all fee revenue in Yellowstone National Park. In the Yellowstone finance office, there were times when we had half a million dollars in cash sitting on the table, and we made sure every penny of it was deposited into government accounts. In fact, I personally adopted the additional precaution of never taking my own wallet into the counting area so there would never be cash on my person were there an instance when a transaction could not be balanced. But everything balanced because we were trustworthy and very skilled in our service to America.

There are many other examples of my dependability. When working as an auditor for the state government of Kansas, I frequently handled sensitive files and I always safeguarded that information. I left that job three years ago when I began my Ph.D. program, but even now I do not discuss classified details of state agencies we audited.

As a graduate teaching assistant and adjunct professor, I was charged with safeguarding confidential student data, and I always did. In other jobs I have had to protect employee payroll information and medical records. In every instance, I have done so.

The government has also already granted that defendants may possess materials designated sensitive and be shown materials designated highly sensitive, and earlier this year the government began allowing defendants to view highly sensitive video directly from evidence.com without an attorney present.

If a defendant had ill intent, it would not be difficult for them to record highly sensitive video from their screen using a camera or some type of screen capturing software. But I have no such ill intent, which is why I am bringing this petition to the court. My sole motivation for wanting full access to discovery is to defend myself against accusations the government has brought against me, and I will do that the right way.

As for the government's claim that certain Capitol footage is highly sensitive due to national security concerns related to the layout of the building, the government has already publicly released video clips from many of these 'highly sensitive' cameras. For instance, cameras showing the Columbus Doors, the Rotunda, the Senate Wing Doors, the Crypt, the Senate Carriage Doors, and many other areas of the Capitol are designated highly sensitive, yet video from those cameras has been released to the public. I assume the government would concede that these releases of highly sensitive video have not jeopardized national security. The government has even sent me a

link to a highly sensitive video that is now public on the internet because they believe it is relevant to my own case.

Surely, I am not a national security threat for downloading a 'highly sensitive' video the government shared with the entire world! I am also not a national security threat for viewing these highly sensitive videos on evidence.com (as the government has allowed), and I will not be a national security threat if I possess these videos for the purpose of preparing my defense. If the government would rather hide these videos than honor my constitutional right to access discovery, they should motion to drop these charges. But as long as these accusations stand, I must not be denied my right to confront them with evidence.

Mr. Crawford has even stated (on a call witnessed by my standby counsel) that my conduct on January 6 was entirely peaceful, and that I damaged nothing and stole nothing. This testimony of my upright conduct by the government's own attorney further demonstrates that I am neither a threat to national security, nor a threat to misuse materials the court has placed under seal.

### **THE COURT has the AUTHORITY to MODIFY the PROTECTIVE ORDER**

The government has made their position on Pro Se access to discovery clear in their recent *Global Productions 1-20 Cover Letter* (See Exhibit 2). The State expects standby counsel to be interposed between Pro Se defendants and their discovery (Exhibit 2, section A.4.). They also refuse to grant any January 6 defendant access to Relativity due to the number of 'highly sensitive' needles they have hidden in that haystack (Exhibit 2, B.2.), and for those reasons they also refuse to grant Pro Se defendants access to Relativity (Exhibit 2, B.3.).

However, the government does allow for the possibility that Pro Se January 6 defendants might reach a "suitable compromise" with the assigned prosecutor. The government also concedes

the court may order the government to cease denying Pro Se defendants their fifth and fourteenth amendment rights to the due process of discovery access (Exhibit 2, B.3.).

I have made good faith attempts to dialogue with the government on this issue, but their position has proven to be inflexible. This has left me no option but to ask this honorable court to modify the protective order and to compel the government to grant me, as a Pro Se defendant, direct access to my discovery.

The D.C. Circuit has recognized the need for flexibility in considering protective orders. The Federal Rules of Criminal Procedure give district courts the discretion to enter protective orders (subject always to the Sixth Amendment's limitations), and "at any time the court may, for good cause . . . grant other appropriate relief." Fed.R.Crim.P.16(d). The burden of showing "good cause" is on the party (the government) seeking the order. But it is a very high bar to deny a citizen his rights.

To modify the order is not to remove it. If the order is modified to grant me direct access, I will still be bound by the requirement to protect these discovery materials and keep them under seal. But if I do not have access, I do not have due process as a Pro Se defendant.

In our nation's history, thirty-eight Supreme Court justices had no law degree. Some never finished high school. The last without a degree, Stanley Forman Reed, joined the unanimous decision in Brown v. Board of Education of Topeka, which many consider the most significant in the history of the court. These justices and many past Pro Se defendants have demonstrated that the capacity to navigate the law is not dependent on university degrees, but individual devotion to constitutional principles and the pursuit of justice.

Self-representation in court is a long-held American tradition. As Faretta 422 U.S. 821 (1975) quotes from Warren's *A History of the American Bar* (1911), early Americans were highly skeptical of Lawyers because their experience had been that attorneys were "bent on the conviction of those who opposed the King's prerogatives, and twisting the law to secure convictions." That description might also fit many modern prosecutors, which is why our fifth, sixth, and fourteenth amendment rights must be exercised and protected from attempts to encroach upon them. This includes exercising and defending the right to represent oneself and defending the due process implications of exercising that right.

In 1954, the United States Supreme Court ruled that SEPARATE IS NOT EQUAL, and that a 35-year-old Topekan named Oliver Brown could send his children to an integrated school. I am not Oliver Brown, but I am an "entirely peaceful" Topekan arrested three days after my 35th birthday. I am now defending myself against charges which did not exist as law during the life of Oliver Brown, and I am in need of the same EQUAL PROTECTION that Oliver Brown found seventy years ago through our court system.

So, I ask whether the words I saw on January 6 – the words EQUAL JUSTICE UNDER LAW chiseled into the Supreme Court – still "mean what they say" as Justice Breyer attested to us at the Monroe Elementary School nearly two decades ago. Or has America returned to being a nation of separate and unequal systems for citizens the government wishes to contain or treat differently?

This current system imposed by the government forces Pro Se defendants to have unequal and inadequate access to discovery. I ask this honorable court to modify the protective order and compel the government to honor fifth, sixth, and fourteenth amendment rights, which will provide me full access to discovery – the evidence I need to vigorously confront my accusers in court.

WHEREFORE I, William Alexander Pope, respectfully requests that this motion be granted.

Respectfully Submitted,

By: William Pope

_____/s/_____

William Pope
Pro Se Officer of the Court

Filed by Nicole Cubbage, Standby Counsel
DC Bar No. 999203
712 H. Street N.E., Unit 570
Washington, D.C.  20002
703-209-4546
cubbagelaw@gmail.com
Standby Attorney for William Pope

Certificate of Service

I certify that a copy of the forgoing was filed electronically for all parties of record on this 30th day of October, 2022.

_____/s/_____
William Alexander Pope, Pro Se

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Case No. 21-cr-128 (RC)** |
| | : | |
| WILLIAM POPE, and | : | |
| MICHAEL POPE, | : | |
| | : | |
| Defendants. | : | |

## PROTECTIVE ORDER GOVERNING DISCOVERY

To expedite the flow of discovery material between the parties and adequately protect the

United States' legitimate interests, it is, pursuant to the Court's authority under Fed. R. Crim. P.

16(d)(1) and with the consent of the parties, ORDERED:

1.  **Materials Subject to this Order.**  This Order governs materials provided by the

United States at any stage of discovery during this case and which the United States has

identified as either "Sensitive" or "Highly Sensitive."  Examples of materials that the United

States may designate as "Sensitive" or "Highly Sensitive" pursuant to this Order include but are

not limited to:

   a.  Personal identity information as identified in Rule 49.1 of the Federal Rules of Criminal Procedure, as well as telephone numbers, email addresses, driver's license numbers, and similar unique identifying information;
   b.  Information regarding the government's confidential sources;
   c.  Information that may jeopardize witness security;
   d.  Contact information for, photographs of, and private conversations with individuals that do not appear to be related to the criminal conduct in this case;
   e.  Medical or mental health records;
   f.  Sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges;
   g.  Surveillance camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds;[1]

---

[1] To be clear, this does not include footage from body worn cameras from other police departments that responded on January 6, 2021, the vast amount of which the United States will *not* designate as Sensitive or Highly Sensitive. (Body worn camera footage will be marked Sensitive or Highly Sensitive only if it contains material described in paragraph one above or for a similar reason not anticipated by this Order.)

      h.   Repair estimates from the Architect of the Capitol;

      i.   Materials designated as "security information" pursuant 2 U.S.C. §1979; and

      j.   Tax returns or tax information.

This Order will not be used to designate materials as Sensitive or Highly Sensitive unless such designation is necessary for one of the reasons stated in this paragraph or for a similar reason not anticipated by this Order. The government agrees to make every effort to provide discovery in a manner that will allow for most discovery to be produced without such designations.

      2.    **Defendant.** Any reference to "Defendant" herein refers individually to each defendant identified in the caption above.

      3.    **Legal Defense Team.** The "legal defense team" includes defense counsel (defined as counsel of record in this case, including any post-conviction or appellate counsel) and any attorneys, investigators, paralegals, support staff, and expert witnesses who are advising or assisting defense counsel in connection with this case.

      4.    **Rules for the Handling of Sensitive and Highly Sensitive Materials.**

        a.   **Limitations on Use.** Defendant and the legal defense team may use Sensitive and Highly Sensitive discovery materials solely in connection with the defense of this case and any other case connected to the events at the United States Capitol on January 6, 2021, including any post-conviction or appellate litigation, and for no other purpose, and in connection with no other proceeding, without further order of this Court.

        b.   **Limitations on Dissemination.** No Sensitive or Highly Sensitive materials, or the information contained therein, may be disclosed to any persons other than Defendant, the legal defense team, or the person to whom the Sensitive or Highly Sensitive information solely and directly pertains or his/her counsel, without agreement of the United States or prior authorization from the Court.

        c.   **Limitations on Reproduction.** Defendant, the legal defense team, and authorized persons shall not copy or reproduce the Sensitive or Highly Sensitive materials except in order to provide copies of the materials for use in connection with this case by Defendant, the legal defense team, the person to whom the Sensitive or Highly Sensitive information solely and directly

2

pertains or his/her counsel, and other persons to whom the Court may
authorize disclosure (collectively, "authorized persons").

If defense counsel provides Defendant access to Sensitive or Highly Sensitive
materials, defense counsel must advise Defendant that Defendant may not
record any personal identity information as identified in Rule 49.1 of the
Federal Rules of Criminal Procedure or any telephone numbers, email
addresses, driver's license numbers, and similar unique identifying
information.  By signing the attached affirmation, Defendant agrees not to do
so.

Copies and reproductions, and any notes or records made in relation to the
contents of the Sensitive and Highly Sensitive materials, are to be treated in
the same manner as the original materials.

   d.  **Court Filings.**  Absent prior agreement by the parties or permission from the
Court, no party shall disclose materials designated as Sensitive or Highly
Sensitive in any public filing with the Court. Such materials shall be
submitted under seal in accordance with Local Criminal Rule 49(f)(6). The
Clerk of Court shall accept for filing under seal any filings made in
compliance with that Rule and so marked by the parties pursuant to this Order.

   e.  **Court Hearings.**  The restrictions in this Order shall not limit either party in
the use of the materials in judicial proceedings in this case. The procedures for
use of designated Sensitive and Highly Sensitive materials during any hearing
or the trial of this matter shall be determined by the parties and the Court in
advance of the hearing or trial. No party shall disclose materials designated
Sensitive or Highly Sensitive in open court without agreement by the parties
that such materials may be disclosed in open court or prior authorization by
the Court.

5.    **Additional Rules for Handling of Sensitive Materials.**  The following
additional terms apply to Sensitive materials:

   a.  **Storage.**  Sensitive materials must be maintained in the custody and control of
Defendant, the legal defense team, and authorized persons.  This restriction
shall not apply to the person to whom the Sensitive information solely and
directly pertains or his/her attorney.

6.    **Additional Rules for Handling of Highly Sensitive Materials.**  The following
additional rules apply to Highly Sensitive materials:

   a.  **Additional Limitations on Dissemination.**  Defense counsel may not provide
a copy of Highly Sensitive materials to Defendant or permit Defendant to

3

view such materials unsupervised by defense counsel or an attorney, investigator, paralegal, or support staff person employed by defense counsel. The parties agree that defense counsel or an attorney, investigator, paralegal, or support staff person employed by defense counsel, may supervise Defendant by allowing access to Highly Sensitive materials through a cloud-based delivery system that permits Defendant to view the materials but does not permit Defendant the ability to download; provided that, prior to doing so, defense counsel first provides notice to the United States and allow the United States to file an objection with the Court if no agreement is reached.

b. **Additional Limitations on Reproduction.** Counsel agrees that prior to showing materials to Defendant designated as Highly Sensitive, counsel or an attorney, investigator, paralegal, or support staff person employed by defense counsel will read Defendant the relevant parts of this Order, and remind Defendant of the consequences of violating the Order. If Defendant takes notes regarding Highly Sensitive materials, counsel or an attorney, investigator, paralegal, or support staff person employed by defense counsel must take reasonable steps to determine whether Defendant has copied any personal identity information as identified in Rule 49.1 of the Federal Rules of Criminal Procedure or any telephone numbers, email addresses, driver's license numbers, and similar unique identifying information.

c. **Storage.** Highly Sensitive materials must be maintained in the custody and control of the legal defense team and authorized persons. This restriction shall not apply to the person to whom the Highly Sensitive information solely and directly pertains or his/her attorney.

7. **Viewing by Incarcerated Defendants.** If Defendant is in the custody of the United States Marshals Service, defense counsel is authorized to provide a copy of discovery materials to the appropriate point of contact so that the defendant can view the discovery materials, subject to the terms of this Order.

8. **Disputes.** The parties shall make a good faith effort to resolve any dispute about a sensitivity designation before requesting the Court's intervention. The United States may agree to remove or reduce a sensitivity designation without further order of this Court. Whenever the redaction of specified information will resolve the basis for which a sensitivity designation was applied, the United States will agree to redaction, and such redaction will render the materials no longer subject to this Order. Any agreement to reduce or remove a sensitivity designation or to

4

redact specific information shall be memorialized in writing.

9.     **Modification Permitted.** Nothing in this Order shall prevent any party from seeking modification of this Order nor prevent the defense from contesting a sensitivity designation.  The parties agree that the burden of demonstrating the need for a protective order remains with the government at all times.

10.    **Failure not Waiver.**  The failure by the United States to designate any materials as Sensitive or Highly Sensitive upon disclosure shall not constitute a waiver of the United States' ability to later designate the materials as Sensitive or Highly Sensitive but the government must separately identify and memorialize the changed status of those materials in writing.

11.    **Automatic Exclusions from this Order.**  This Order does not apply to materials that:

   a. Are, or later become, part of the public court record, including materials that have been received in evidence in this or other public trials or hearings;

   b. Were derived directly from Defendant or that pertain solely to Defendant. Examples of such materials include Defendant's own financial records, telephone records, digital device downloads, social media records, electronic communications, arrest records, and statements to law enforcement;[2] and

   c. Materials that the defense obtains by means other than discovery.

12.    **Government's Discovery Obligations.**  Nothing in this Order modifies the United States' obligations at any stage of discovery in this case pursuant to Federal Rules of Criminal Procedure 16 and 26.2, Local Criminal Rule 5.1, 18 U.S.C. § 3500 (the Jencks Act), and the government's general obligation to produce exculpatory and impeachment information in

---

[2]  Discoverable materials that were derived directly from Defendant or that pertain solely to Defendant are exempt from this Order regardless of whether the United States has designated any such materials as "Sensitive" or "Highly Sensitive" because the same materials are being provided or made available to co-defendants or other persons charged in connection with the events at the United States Capitol on January 6, 2021.

5

criminal cases.

13.    **Defense Counsel's Obligations.**  Defense counsel must provide a copy of this Order to, and review the terms of this Order with, members of the legal defense team, Defendant, and any other person, before providing them access to Sensitive or Highly Sensitive materials. Defense counsel must obtain a fully executed copy of Attachment A before providing Defendant access to Sensitive or Highly Sensitive materials, and must file a copy with the Court within one week of execution.

14.    **No Ruling on Discoverability or Admissibility**.  This Order does not constitute a ruling on the question of whether any particular material is properly discoverable or admissible and does not constitute any ruling on any potential objection to the discoverability or admissibility of any material.

15.    **Duration.**  The terms of this Order shall remain in effect after the conclusion of this case and the parties shall be bound by it unless otherwise ordered by the Court.

**SO ORDERED** this 5th day of May , 2021.

_____
HONORABLE RUDOLPH CONTRERAS
United States District Judge

6

## <u>ATTACHMENT A</u>

### Defendant (William Pope)'s Acceptance

I have read this Protective Order and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Protective Order and all matters relating to it.  I fully understand this Protective Order and voluntarily agree to it.  No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Protective Order fully.

_____        _____
Date                                                                          William Pope
                                                                                  Defendant

7

## ATTACHMENT A

### Defendant (Michael Pope)'s Acceptance

I have read this Protective Order and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Protective Order and all matters relating to it.   I fully understand this Protective Order and voluntarily agree to it.   No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Protective Order fully.

_____          _____
Date                                                          Michael Pope
                                                                  Defendant

8



U.S. Department of Justice

Matthew M. Graves
United States Attorney

*District of Columbia*

---

*601 D Street, N.W.*
*Washington, D.C.  20530*

October 7, 2022

Re:   Capitol Siege Cases
       Defense Discovery Databases
       Global Discovery Productions 1-20

Dear Counsel:

This letter summarizes the status of discovery database access for you and your respective clients (or in the case of standby counsel, for you and your *pro se* defendant), and the procedures for gaining access to those databases.  Further, this letter memorializes the global discovery productions that have been made available by the Capitol Siege Section-Discovery Unit to date.[1]

## I.  **Defense Databases**

The Federal Public Defender for the District of Columbia ("FPD") is acting as the discovery liaison for counsel in all Capitol Siege cases.  In connection with that role, FPD is administering evidence.com and Relativity databases for the purpose of receiving global discovery productions and making them accessible to Capitol Siege defense counsel.  The government cannot access or view what occurs in any of the defense databases.

---

[1] By way of illustration, global discovery (as distinguished from case-specific discovery), includes materials such as:

- Voluminous video footage, radio runs, and tips;
- Case-specific materials from other subjects' investigations, such as the results of searches of digital devices and Stored Communications Act accounts and subject interviews;
- Documents likely to be relevant to many charged individuals, e.g., documents related to interstate commerce or proof of an official proceeding;
- Documents commonly requested by defense counsel, e.g., investigations to allegations of officer complicity; and
- Tools we have obtained or developed that may assist defendants in identifying relevant information.

### A.  Evidence.com

Evidence.com is an online video repository developed and hosted by Axon Enterprise, Inc. ("Axon").  We are using evidence.com to share voluminous amounts of video footage to FPD's wholly separate "instance" of evidence.com.

#### 1.  Access by Defense Counsel to FPD Instance of Evidence.com

Since October 18, 2021, all Capitol Siege defense counsel have been able to request a license from FPD to view voluminous amounts of video footage we have shared to FPD's instance of evidence.com.

#### 2.  Access by Clients on Pretrial Release to Videos in FPD Instance of Evidence.com

Defense counsel's license enables counsel to use evidence.com to share videos with clients who are on pretrial release, subject to the terms of the protective order concerning videos designated as sensitive or highly sensitive.  We have agreed to waive the requirement that a defendant be supervised while viewing highly sensitive video shared to the FPD instance of evidence.com in cases where:

    a.  A protective order has been entered in the relevant case;

    b.  The defendant has executed the written acknowledgement to the protective order (or been subject to an equivalent admonishment by the Court);

    c.  Access is provided to the client via FPD's instance of evidence.com (i.e., not downloaded); and

    d.  The ability of the defendant to download or reshare is suppressed by counsel before the video is shared.[2]

#### 3.  Evidence.com Access for Defendants Detained in the D.C. Department of Corrections

As of February 9, 2022, through an unprecedented collaboration among the government, FPD, FPD's National Litigation Support Team ("NLST"), American Prison Data Systems ("APDS"), the D.C. Department of Corrections ("DOC"), and Axon, a separate, stand-alone instance of evidence.com has been made available to allow Capitol Siege defendants housed in the DOC to view video footage.  This DOC instance of evidence.com is a mirror image of the FPD instance of evidence.com and it is also administered by FPD.

The government and FPD have drafted a memorandum of understanding describing, among other things, the requirements for inmates to obtain access.[3]  In brief, the government will

---

[2] To be clear, this exception pertains solely to defendants' viewing of highly sensitive video in FPD's instance of evidence.com.  It does not apply to any other highly sensitive documents (including video) that have been produced by any other mechanism (e.g., USAfx or another file transfer system, Relativity, or a storage device).

[3] The memorandum addresses topics including: (1) the contents of the DOC instance; (2) administration of the instance; (3) requirements for access by detained defendants, whether represented by counsel or *pro se*; (4) procedures for an inmate to obtain an APDS educational tablet (most already have one); (5) the

make a request for an inmate to gain access to the DOC instance of evidence.com over an APDS educational tablet once the assigned prosecutor notifies the Capitol Siege Discovery Unit Chief that one of the following three things has occurred:

    a. The inmate has signed Attachment A to the protective order;

    b. The inmate has stated on the record in court that s/he has read the protective order, reviewed it with his/her attorney, understands the protective order, and agrees to abide by it; or

    c. A defense attorney has represented to the assigned prosecutor in writing that they have reviewed the protective order with their client and have been authorized to sign Attachment A on their client's behalf; and (b) the defense attorney also agrees that at the next scheduled hearing in which the client is present, s/he will put on the record that s/he signed Attachment A on the client's behalf after reviewing the protective order with him or her.

If you have a client who is housed in the DOC who would like access to the DOC instance of evidence.com, please notify the prosecutor assigned to your case when one of these conditions is satisfied.

## 4. **Access to Evidence.com by _Pro Se_ Defendants**

Subject to the terms described in Sections I(A)(2) and A(3) above, standby counsel can use their own licenses for the FPD instance of evidence.com to share videos with _pro se_ defendants on pretrial release, and detained _pro se_ defendants can view video in the DOC instance.

## 5. **Indexes**

Productions are accompanied by indexes of the files produced to the defense evidence.com repositories.  The indexes are provided via the assigned prosecutors through USAfx.

## B. **Relativity**

Relativity is a cloud-based eDiscovery platform that offers functionalities including document organization, review, production, and analytics within a single environment.  We are using Relativity to share documents to FPD's separate Relativity workspace.  (To be clear, documents may include video. Only voluminous video is shared via evidence.com.)

## 1. **Access by Defense Counsel to FPD Relativity Workspace**

Since January 21, 2022, all Capitol Siege defense counsel have been able to request a license from FPD to view materials in FPD's Relativity workspace.  As the Relativity database is in a FedRAMP, secure environment, completing the process for obtaining access is time-consuming and requires a number of steps.  Thus, counsel should plan for the process to take _at_

---

process for adding an evidence.com link to an APDS educational tablet; (6) the permissions settings required for the instance; (7) how the protective order works in connection with this instance; and (8) persons with visibility into an inmate's activities in the instance.

*least* one week from when you first submit your FPD Relativity License Request Form to when you will be granted access the Relativity database. Depending on the number of simultaneous requests, it could take even more time. Thus, we urge you to apply for access to FPD's Relativity workspace as soon as possible.

## 2. <u>Access by Defendants to Materials in FPD Relativity Database</u>

No defendants will be provided licenses to access the FPD Relativity workspace, given the extensive volume of highly sensitive materials currently therein and those that we will produce in the future. (Please see Section 5 of the Discovery Unit's February 9, 2022 Status Memorandum for examples of such types of information.)

We will notify the defense as materials are added to the FPD Relativity workspace so that counsel and defendants may collaborate to identify any materials a defendant should review in a particular case. Subject to the protective order, defense counsel can share such documents with their respective clients through a variety of mechanisms including Internet-based file transfer systems or traditional storage devices, such as hard drives, flash drives, and discs. Further, FPD and its vendor are also attempting to determine if it will be possible for defendants to view selected materials within the FPD Relativity workspace, utilizing permissions that would ensure that only the selected materials are viewable by the relevant client.

In those instances where a defendant wishes to view highly sensitive documents in FPD's Relativity workspace, counsel or another member of the legal defense team must supervise the defendant unless: (1) the defendant and the assigned prosecutor are able to reach a suitable compromise about the documents in question or (2) the Court orders otherwise. The protective order's requirements for highly sensitive documents apply regardless of whether a defendant is detained or on pretrial release.

## 3. *Pro Se* <u>Defendants</u>

For the reasons elaborated in Section 5 of the Discovery Unit's February 9, 2022 Status Memorandum, the government will not agree to provide *pro se* defendants access to FPD's Relativity workspace. However, prosecutors assigned to *pro se* cases will share production indexes with both *pro se* defendants and their standby counsel. Standby counsel should discuss the materials on the production index with the *pro se* defendant, and subject to the protective order, s/he can share any materials requested utilizing the same mechanisms available to represented defendants described above. Further, in those instances where a *pro se* defendant wishes to view highly sensitive documents, standby counsel or his/her staff must supervise the defendant unless: (1) the defendant and the assigned prosecutor are able to reach a suitable compromise or (2) the Court orders otherwise.

## 4. <u>Production Prefixes and Production Indexes</u>

When we initially began producing global discovery, documents were produced in numbers production volumes that began with the prefix "DOJCB." We later added the production prefix "DOJ_ABD" to refers to production volumes that consist of the following types of materials: (a) Files from digital devices (e.g., cell phones and laptop computers) or

4

Stored Communications Act ("SCA") accounts (e.g., gmail, Facebook, Twitter) that have been identified by law enforcement as relevant to the Capitol Siege investigation; and (b) recorded interviews with investigation subjects.  Productions are accompanied by separate DOJCB and DOJ_ABD indexes, which are provided via the assigned prosecutors through USAfx.

### 5.  **Production Fields**

When we provide discovery to the defense Relativity database, it includes metadata (i.e., information about the documents being provided, such as the name of the original custodian, the document's filename, or the name of the individual associated with a device or document).  To the extent such data has been provided for a particular item, it should be viewable in the defense database as a "field" (i.e., a column). A glossary we have provided (CAPD_006180913) identifies and describes the fields we have provided, including whether the information in the field is government work product.

In both DOJCB and DOJ_ABD volumes, you may identify items associated with a particular individual by filtering in the CODE_IndivDefendant field on the relevant subject's name.  (Notwithstanding the name of the field, the fact that a person is named does not mean that they are in fact charged in a case.)  In DOJ_ABD volumes, you can identify the interview subject or individual from whom a device was derived by filtering on the 1B1D_Subject field (i.e., column).  You can learn more about the type of device or SCA account by filtering on the 1B1D_Device Description field.  These are all subjective work product fields we provided to the defense Relativity database solely to assist defense counsel in locating materials that may be relevant to specific individuals. The information we use to code items as being associated to a particular defendant is derived from a variety of methods, including text searches and original case file information.  Inadvertent miscoding can thus result in cases where individuals have similar names, or from overly broad search terms, human error, or other factors.  Accordingly, as the information available to us evolves, the names listed in that field may grow or shrink for any given document or group of documents.

### C.  **Questions**

If you have any questions about obtaining access to defense databases, or you are experiencing difficulties or challenges with gaining access, please email please email Shelli Peterson at Shelli_Peterson@fd.org.

## II.  **Protective Order**

Sensitivity designations for the materials produced are identified in these indexes that accompany discovery productions and in the defense databases.

If you receive any materials, whether in case-specific or global discovery, designated Sensitive or Highly Sensitive and (a) there is no protective order entered in the applicable case or (b) your client has refused to sign a written acknowledgment that s/he has read, understands and agrees to abide by the terms of the applicable protective order, we request that you refrain from disseminating those materials to your client. Instead, please inform the assigned prosecutor in writing and give them at least one week to file a motion with the Court to ensure that discovery materials are adequately protected.

### III.   Productions to Date

Following is a summary of the global discovery productions made to date.  At the time you receive this letter, you should also receive an invitation to a USAfx folder containing indexes of the files we have produced to FPD's instance of evidence.com and FPD's Relativity workspace.

### Global Production No. 1

On September 10, 2021, the following materials, now accessible in the FPD Relativity workspace, were made available for sharing via USAfx:

- 35 files consisting of 28 reports from U.S. Capitol Police (USCP) Office of Professional Responsibility ("OPR") investigations of alleged wrongdoing by USCP officers on January 6, 2021 (CAPD_000000001- CAPD_000000848.)

Officer names, witness names, and complainant names were redacted and these files are not subject to a sensitivity designation under the protective order.  However, if you observe that an officer's name has not been redacted, and that officer is a subject of or witness to the allegation of misconduct, you must treat that information as Highly Sensitive under the protective order. That means you cannot share it with your client unsupervised unless you first redact it, and that the information can only be used consistent with the protective order's rules for handling Highly Sensitive materials.  Should you observe such information, please notify us so that we may make an appropriate designation known to all Capitol Breach defendants.

### Global Production No. 2

On September 24, 2021, the following materials were shared to the defense instance of evidence.com:

- 4,044 files (over one terabyte) consisting of USCP Closed Circuit Video ("CCV") footage from 118 cameras.  The contents of footage shared includes video from the interior of the U.S. Capitol Visitor Center and from the Capitol grounds.  These files are designated Sensitive under the protective order (FPD CCTV_001 SENSITIVE.)[4]

---

[4] To determine the starting date/time of USCP CCV video, you will need to look to the format of the title of each video in evidence.com. Each CCV video will have a date and time (in 24-hour format) at the end of the filename that refers to the starting date/time of that video. The times are either in local time (EST) or in UTC (EST +5 hours). To determine the correct starting time, check if the filename has or does not have spaces. File names without spaces are in EST format. File names with spaces are in UTC format. For example:

- File name: 5061501RFWestRoof_2021-01-06_11h40min01s657ms.mp4
    - There are no spaces in this file name and therefore the time is in EST format.

- File name: 5061 501 RF West Roof - 2021-01-07_01h00min02s.mp4

6

On September 24, 2021, the following materials, now accessible in FPD's Relativity workspace, were shared via USAfx:

- Forty-two files that consist of Metropolitan Police Department ("MPD") internal investigation reports and exhibits (CAPD_000000849 to CAPD_000001587).  These reports and exhibits are unredacted and thus designated Highly Sensitive under the protective order.
- Twenty files consisting of digital exhibits to previously produced USCP OPR reports.  Any applicable sensitivity designations are reflected in the index (CAPD_000001588 to CAPD_000001607).

**Global Production No. 3**
On October 1, 2021, the following materials were shared to the defense instance of evidence.com:

- 11,176 files (over 3 terabytes) consisting of USCP CCV footage from 339 cameras.  The contents of footage shared includes video from the interior of the U.S. Capitol Visitor Center and from the Capitol grounds.  These files are designated Sensitive under the protective order (FPD CCTV_002 SENSITIVE).
- 1,676 files consisting of MPD body-worn-camera ("BWC") footage recorded between approximately 1:00 p.m. and 6:00 p.m. on January 6, 2021.  These files are not subject to a sensitivity designation under the protective order.  Nevertheless, to the extent you intend to disseminate these materials to any persons other than your client, the legal defense team, or the person to whom the footage solely and directly pertains or his/her counsel, please ensure that you have reviewed the footage first and do not disseminate further any footage: (1) in which an individual provides or displays personal identifying information[5] or (2) depicting personal information that may be highly embarrassing to either the officer wearing the camera or a person depicted in the footage.[6]  Such information is at the very least Sensitive under the protective order.  Should you observe such information, please notify us so that we may make an appropriate designation known to all Capitol Breach defendants (FPD_MPD BWC 001).

---

      o  There are spaces in this file name and therefore the time is in UTC format (EST +5 hours).

[5] Personal identifying information includes civilian names and nicknames, and all social security numbers, driver's license numbers, physical addresses, e-mail addresses, any other contact information, financial information, medical information, and mental health history information.

[6] For example, while we believe we have already identified and segregated such footage, we are aware of instances where an officer may have forgotten to turn off his or her body-worn-camera while using a restroom.

**Global Production No. 4**

On October 8, 2021, the following materials were shared to the defense instance of evidence.com:

- 1,705 files consisting of USCP CCV footage from 58 cameras.  The contents of footage shared includes video from the interior of the U.S. Capitol Visitor Center and from the Capitol grounds.  These files are designated Sensitive (not Highly Sensitive) under the protective order (FPD CCTV_003 SENSITIVE).

On October 15, 2021, the following materials, now accessible in the FPD Relativity workspace, were made available for sharing via USAfx:

- 15 maps of the interior of Capitol Visitor's Center and the interior of the Capitol, all of which are designated Highly Sensitive under the protective order (CAPD_0001648 - CAPD_0001662).
- USCP Radio Communications on Main Ops 1 and 2 (CAPD_0001615 - CAPD_0001616, respectively), which are also Exhibit 7 to USCP Office of Professional Responsibility Report ("OPR") 21-006A (previously provided).  These items are designated Sensitive under the protective order.
- Draft transcripts of the radio communications described above.  These items are also designated Sensitive under the protective order (CAPD_0001663 - CAPD_0001664).
- 11 additional digital exhibits (6 audio, 3 videos, and 2 images) to previously produced USCP OPR reports. The applicable sensitivity designation for each exhibit is listed in the index (CAPD_0001617, CAPD_0001620-CAPD_0001623, CAPD_0001627, CAPD_0001634, CAPD_0001639, CAPD_0001644, CAPD_0001645, CAPD_0001647).
- MPD Radio Global Positioning Satellite ("GPS") Spreadsheet.  This item is designated Sensitive under the protective order (CAPD_0001665).[7]

---

[7] The MPD GPS spreadsheet is work product that was created by the Discovery Team based on records provided to us by the D.C. Office of Unified Communications ("OUC") through MPD.  In many instances, the subscriber alias for a radio is an individual officer's Computer Aided Dispatch ("CAD") number and last name.  This same information can be used to search for that officer's body-worn-camera footage in evidence.com.  For ease of use, you may wish to consider plotting the information provided on a time-scaled map using commercially available GPS mapping software.  To be clear, this MPD Radio GPS information is being provided to you solely for the purpose of assisting you in locating officers who may have recorded body-worn-camera footage at a particular location and time.  We do not purport to vouch for the accuracy or admissibility of the radio location data information.  (Although OUC requested it on our behalf, OUC was unable to obtain radius of accuracy information for the location data.)  We also do not intend to indicate that each officer who used a radio was also utilizing body-worn-camera.  In fact, many officers (e.g., Detectives and Officers with the rank of Inspector and above) are generally not required to wear them.

**Global Production No. 5**

On October 22, 2021, the following materials were shared to the defense instance of evidence.com:

- 142 files consisting of U.S. Secret Service ("USSS") surveillance exterior camera footage from January 6, 2021 (FPD_USSS 001).
- 4,204 files consisting of USCP CCV footage from 123 cameras.  The contents of footage shared includes video from the interior of the U.S. Capitol.  These files are designated Highly Sensitive under the protective order (FPD CCTV_004 HIGHLY SENSITIVE and FPD CCTV_005 HIGHLY SENSITIVE).

On October 22, 2021, the following materials, now accessible in the FPD Relativity workspace, were made available for sharing via USAfx.

- A camera map of the Capitol Grounds. The camera map is work product that was created at the request of the Discovery Team, and all camera locations depicted are approximate. It is designated Highly Sensitive under the protective order (CAPD_0001666).
- Ten aerial surveillance images received from MPD (CAPD_0001667 to CAPD_0001676).
- Six demonstration permits received from the USCP (CAPD_0001677 to CAPD_0001753).
- A spreadsheet containing the filenames/titles, starting times, video length, and date of the USSS video contained in FPD_USSS 001. This spreadsheet is work product that was created by the Discovery Team (CAPD_0001768).

**Global Production No. 6**

On October 29, 2021, the following materials, now accessible in the FPD Relativity workspace, were made available for sharing via USAfx:

- 30 digital audio files consisting of 30 hours of MPD radio transmissions (Special Operations Division ("SOD") channel), beginning on January 6, 2021, at 12:00 a.m. and ending January 7, 2021 at 6:00 a.m.  (CAPD_000001769 to CAPD_000001798). These files are designated Sensitive under the protective order.
- A 673-page transcript of the MPD radio transmissions (SOD channel) (CAPD_000001799 to CAPD_000002471). This file is designated Sensitive under the protective order. To facilitate your review, we have attached an index that associates the Bates number for each audio file with the relevant pages of the transcript.
- USCP after-action reports (176 pages, redacted).  This file is designated Sensitive under the protective order (CAPD_000002472 to CAPD_000002647).

On October 29, 2021, the following materials were shared to the defense instance of evidence.com:

9

- 24 files consisting of approximately 4 hours of BWC footage recorded by 11 Fairfax County Police officers.  The footage begins on January 6, 2021, at 3:39 p.m. (and depicts the officers traveling to Washington, D.C.).  The footage from the Capitol begins at 5:18 p.m.  Two of these files have been designated Highly Sensitive (FPD_FAIRFAX BWC 001; FPD_FAIRFAX BWC 002 HIGHLY SENSITIVE).

- 60 files consisting of approximately 37 hours of BWC footage recorded by 22 Montgomery County Police officers.  The footage begins on January 6, 2021, at 3:03 pm.  One of these files has been designated Highly Sensitive (FPD_MONTGOMERYCO BWC 001; FPD_MONTGOMERYCO BWC 002 HIGHLY SENSITIVE).

## Global Production No. 7

On November 5, 2021, the following materials, now accessible in the FPD Relativity workspace, were made available for sharing via USAfx:

- 159 documents largely consisting of Federal Bureau of Investigation ("FBI") reports of interview of law enforcement officers about their experiences on January 6, 2021, and accompanying exhibits.  These documents are designated Sensitive under the protective order (CAPD_000002648 to CAPD_000002902).

## Global Production No. 8

On November 30, 2021, the following materials, now accessible in the FPD Relativity workspace, were made available for sharing via USAfx:

- 2 new reports and 16 associated exhibits (8 video, 8 audio) of USCP investigations of alleged wrongdoing by USCP officers on January 6, 2021. Officer names, witness names, and complainant names have been redacted. These are supplements to our original production of reports on September 10, 2021.  The Bates numbers are reflected in the attached index.

- 40 additional digital exhibits (30 audio, 7 videos, and 3 PDFs) to previously produced USCP OPR reports. The applicable sensitivity designation for each exhibit is listed in the index.  These are supplements to our productions of September 10 and October 15, 2021.  The Bates numbers are reflected in the attached index and complete the gaps in previous productions related to the same reports.

- Detailed Zone Maps of Zone A (US Capitol) and Zone B (Terrace) for Body Worn Camera (CAPD_000003191 and CAPD_000003192).  These maps are designated Sensitive under the protective order.  (The Zone Map of the exterior of the Capitol (CAPD_0001666) was produced in Global Production No. 5.) All three Zone Maps are U.S. Attorney's Office ("USAO") Work Product.

- BWC Summary Spreadsheet Version 1 - USAO Work Product (CAPD_000003190).  This document is designated Sensitive under the protective order.  The spreadsheet was

created by USAO staff based on a review of BWC from responding law enforcement agencies including MPD, Montgomery County Police Department, and Fairfax County Police Department.[8]

On November 30, 2021, 1,063 files consisting of approximately 714 hours of BWC footage recorded by 675 MPD officers were shared to the defense instance of evidence.com. The files were shared in three separate folders, as follows:

---

[8] _How to Use the BWC Summary Spreadsheet and Zone Maps with Evidence.com_
On the spreadsheet, the columns titled "Officer Last Name" and "Officer First Name" correspond to tags within evidence.com identifying the officer who uploaded the video (typically, but not always, the recording officer). If, upon reviewing the spreadsheet, you want to review a particular video, enter the officer's last name in the "Tag" column in evidence.com and select the desired officer's name when it appears. Evidence.com will then display all the videos uploaded by that officer. Next, look in the "Recorded On" column in evidence.com for the same or a similar start time to the time listed in the "Time Video Starts" column of the spreadsheet. (Note: BWC footage in evidence.com contains a "Recorded On" time which may vary from the time burned into the footage itself. The "Recorded On" time reflects the time the officer manually hit the record button. The time burned into the video may precede the "Recorded On" time by one or two minutes because when an officer manually begins recording, the program preserves events the camera viewed shortly before the camera was manually initiated. The "Time Video Starts" column reflects the "Recorded On" time. However, staff who created the spreadsheet sometimes listed the burned-in time rather than "Recorded On" time.)

Columns in the spreadsheet labeled "APO," "UE," "Attack on Media," "Dest. of Property," and "Other Crimes" denote the timestamp in the video where a reviewer noted his/her observation of potential criminal acts. "N" means no such acts were observed by the reviewer.

The column in the spreadsheet labeled, "If entered Capitol, at what time?" lists the time the officer entered the Capitol based on the footage in the video.

Columns in the spreadsheet labeled "Loc @ 12:00" through "Loc @ 0000" identify where the reviewer believes the officer was located at a specific time. For example, if the column labeled "Loc @ 1530" had the value "Inside" listed, the reviewer concluded the officer was inside the Capitol at 3:30 p.m. If, alternatively, it had the value "Zone A2" listed, the reviewer believed the officer was in Zone A2 as depicted on the applicable Zone Map.

_Caveat_
This spreadsheet is being provided solely for the purpose of assisting you in locating relevant BWC footage. It is neither intended nor admissible as a statement of the government under Federal Rule of Evidence 801. It was created by over sixty individuals, not all of whom are attorneys. It was initially created as an investigative tool to assist prosecutors in locating relevant evidence. It has not been comprehensively quality-checked for accuracy. It may contain errors or statements that are inconsistent with ultimate charging decisions. Further, descriptions of events may not completely reflect the contents of a video.

- 927 files consisting of approximately 526 hours of BWC footage recorded by 545 MPD officers, beginning either before 1:00 p.m. or after 6:00 p.m. on January 6, 2021 (FPD_MPD BWC 002).
- 77 files consisting of approximately 70 hours of BWC footage recorded by 73 MPD officers, beginning between 1:00 and 6:00 p.m. on January 6, 2021 (FPD_MPD BWC 004).
- 59 files consisting of approximately 118 hours of BWC footage recorded by 57 MPD officers that are designated Highly Sensitive under the protective order (FPD_MPD BWC 003 HIGHLY SENSITIVE).

**Global Production No. 9**

On December 17, 2021, the following materials were shared to FPD's Relativity workspace:

- A detailed timeline of the events of January 6, 2021 from the USCP. This timeline is designated Sensitive under the protective order (CAPD_000003193).

- 162 Use of Force Reports for employees of USCP.  These reports are designated Sensitive under the protective order (CAPD_000003217 - CAPD_000003597).

- 64 audio recordings of Virginia State Police Radio Communications and related incident history detail reports. These files are designated Sensitive under the protective order (CAPD_000003598 - CAPD_000003698).

- BWC Summary Spreadsheet Version 2 - USAO Work Product (CAPD_000003190_1). This document is designated Sensitive under the protective order.  Version 1 of the Spreadsheet was provided in Global Production No. 8.  Version 2 has been updated to include additional BWC footage from the Arlington County Police Department ("ACPD").

**Global Production No. 10**

On January 14, 2022, the following materials were shared to the defense Relativity workspace:

- 10 videos from the House Recording Studio, including a Certificate of Authenticity, and FBI Report of Interview of Olga Ramirez Kornacki, Director of the House of Representatives TV Gallery.  These materials are designated Sensitive under the protective order (CAPD_000003699 - CAPD_000003711).

- Files from MPD's Electronic Surveillance Unit including 6 reports and 65 videos recorded by officers dressed in plain clothes.  These materials are designated Sensitive under the protective order (CAPD_000003712 - CAPD_000003798).

- MPD's Report of U.S. Capitol Police Officer Byrd's Use of Force and accompanying attachments. These materials were redacted by MPD (CAPD_000003810 - CAPD_000004120).

- Attachments to MPD's Investigative Reports concerning Use of Force. These attachments are primarily video and audio files.  These materials are designated Highly Sensitive under the protective order (CAPD_000004121 - CAPD_000004242).[9]

- 10 videos from the Senate Recording Studio, a Certificate of Authenticity, and an FBI Report documenting receipt of the video. These files are designated Sensitive under the protective order (CAPD_000004246 - CAPD_000004255).

**Global Production No. 11**

On Friday, January 28, 2022, the following materials were produced to the defense Relativity workspace:

- USCP materials, designated as Sensitive under the protective order, including the following:
    o Eight audio files of USCP Communications via radio (CAPD_000022923 - CAPD_000022927 ) and conference bridge (CAPD_000023003 - CAPD_000023005).
    o Radio Communications Chronology (CAPD_000022928).
    o Redacted Transcript of the Dignitary Protection Detail Radio Channel (CAPD_000023006).
    o Lists of Conference Bridge attendees (CAPD_000023044 and CAPD_000023047).

- A spreadsheet listing start times of the pole camera video from ACPD (CAPD_000004267). The spreadsheet corresponds with the 19 files shared via evidence.com explained below.  It is USAO work product being provided solely to assist you in your review of voluminous footage.

- 18,484 files of Anonymous Tips and related documentation made to MPD, designated Sensitive under the protective order (CAPD_000004286 - CAPD_000022908).
    o Please note that CAPD_000011603 - CAPD_000011616 are spreadsheets that list the tips received. Many tipsters attached images or videos to their submissions that were memorialized in the "moID" column of the spreadsheet. To identify any image or video file that corresponds to the tip, please copy the value from the moID field and paste it into the "FileName" field in the defense Relativity database.  If there is no content in the moID field of the spreadsheet, or if copying

---

[9] 39 files previously produced in Global Production No. 2 were provided again for reference since many of the attachments relate to those reports.  The re-produced documents are flagged as such in the index.

13

the contents of the moID field does not cause Relativity to bring up another file, this means no attachment was associated with the tip.

- Files related to interstate commerce including:
  - o 3 Reports of interviews of Safeway Store Managers (CAPD_000004268 - CAPD_000004270), designated Sensitive under the protective order.
  - o 4 files from Safeway Grocery stores (CAPD_000022909 - CAPD_000022922), designated Sensitive under the Protective Order.
  - o 2 files from the District of Columbia Government (CAPD_000004256 - CAPD_000004266).

- 3 files from the USSS involving the security of Vice President Pence, designated Sensitive under the protective order (CAPD_000023049 - CAPD_000023052).

- FBI Reports of Interview of the following individuals, designated Sensitive under the protective order:
  - o USSS Employees Lanelle Hawa and Paul Wade (CAPD_000004276 - CAPD_000004285).
  - o Ralf Oberti, Freelance Cameraman (CAPD_000004271).

For simplicity, the Bates range for certain voluminous records (e.g., 18,484 files of Anonymous Tips and related documentation) is summarized in the index (as opposed to being listed line by line).

On January 27, 2022, 104 files consisting of approximately 102 hours of BWC and pole camera footage recorded by approximately 54 ACPD officers were shared to the defense instance of evidence.com.  The files, described below, were shared in three separate folders, as follows:

- 84 files consisting of approximately 99 hours of BWC footage recorded by 53 ACPD officers, between 2:00 and 7:00 p.m. on January 6, 2021, designated Sensitive under the protective order (FPD_ARLINGTON BWC 001 SENSITIVE).
- 1 file consisting of 2 hours and 15 minutes of BWC footage recorded by 1 ACPD officer, beginning at 3:34 p.m. on January 6, 2021, designated Highly Sensitive under the protective order (FPD_ARLINGTON BWC 002 HIGHLY SENSITIVE).
- 19 files consisting of approximately 1 hour and 13 minutes of pole camera footage recorded by the ACPD, designated Sensitive under the protective order (FPD_ARLINGTON Polecam 003 SENSITIVE).

**Global Production No. 12**

Global Production No. 12 consisted of (A) Relativity production volumes DOJCB_012, DOJCB_013, DOJ_ABD_001, and DOJ_ABD_002; (B) a disclosure about USCP CCV footage; and (C) two evidence.com productions (one re-release and one new).

14

A. **Relativity Productions**

1. **Volume DOJCB_012**:  On February 21, 2022, documents identified as relevant to *United States v. Guy Reffitt*, were shared to the defense Relativity database (CAPD_000038964 - CAPD_000050937).

2. **Volume DOJCB_013**:  On March 4, 2022, the following documents were shared to the defense Relativity database:
   a.  Over 250 FBI interviews of USCP and MPD officers, and associated exhibits (889 files total) (CAPD_000052939 - CAPD_000053427).
   b.  Three search warrants and related materials pertaining to a total of 63 Facebook accounts (CAPD_000050938 - CAPD_000051089).
   c.  Two search warrants and related materials pertaining to the FBI's collection of Google account subscriber information and location data from the Capitol and restricted perimeter, i.e., the Google geofence warrants (CAPD_000051162 - CAPD_000052152).
   d.  An application and related orders issued pursuant to 18 U.S.C. 2703(d), requiring twelve cell service providers to provide basic subscriber information and call records for devices that, according to location data obtained pursuant to the Google geofence warrants, were present within the U.S. Capitol on January 6, 2021 (CAPD_000051090 - CAPD_000051161).
   e.  One search warrant and related materials requiring Facebook to provide information for accounts associated with 2,087 advertising identifiers (CAPD_000052153 - CAPD_000052257).
   f.  Ten search warrants and related materials pertaining to anonymized location data collected by ten data aggregation companies (CAPD_000052258 - CAPD_000052696).
   g.  Six search warrants and related materials pertaining to the FBI's collection of cell tower data from Verizon, AT&T, and T-Mobile/Sprint (CAPD_000052697 - CAPD_000052938).

   Items (c) through (g) were redacted to remove law enforcement sensitive information, for example, the precise location of cellular network infrastructure that provided cellular service to the Capitol on January 6, 2021; and information that would identify the confidential sources of certain anonymized location data.  In certain instances, we also redacted the precise account information sought, as analysis of the results continues to reveal accounts associated with individuals who were lawfully present on January 6, 2021, e.g., members of Congress, their staff, and law enforcement.  Relatedly, we do not intend to produce *en masse* the data received in response to items (c) through (g) above because it contains such information, and the process of identifying that information continues even today.  Relevant data obtained pursuant to items (c)

15

through (g) will be provided in case-specific discovery, and requests for such data should be addressed to the assigned prosecutor.

      3. **Volume DOJ_ABD_001:** On February 11, 2022, DOJ_ABD items associated with John Daniel Andries, Cynthia Ballenger, and Nicole Prado were produced to the defense Relativity database (CAPD_000023053 - CAPD_000024418).

      4. **Volume DOJ_ABD_002:** On February 21, 2022, DOJ_ABD items associated with Guy Reffitt were produced to the defense Relativity database (CAPD_000024419 - CAPD_000038963).

For simplicity, the Bates range for certain voluminous records (e.g., files that are all derived from the same digital device) is summarized in the index (as opposed to being listed line by line). Sensitivity designations for the materials described above are identified in the index.

### B. **Disclosure about USCP CCV**

The USCP captured footage from all Capitol interior, all Capitol Visitor Center ("CVC") interior, and all exterior CCV cameras that were in place on January 6, 2021.  We have produced all such footage to the defense instance of evidence.com except footage depicting:

1. Critical infrastructure, e.g., communication and security closets, fire doors in the basement levels of the CVC, loading docks.
2. X-Ray machine image feed.
3. Intel and Sensitive Compartmented Information Facility ("SCIF") office lobbies.
4. Tunnels and subways.
5. Evacuation routes and shelter-in-place locations utilized by, *inter alia*, members of Congress, their staff, and the Vice President, on January 6, 2021.
6. Daycare centers and the Senate page dormitory (i.e., exterior footage that provides views of the entrances to these facilities and daycare playgrounds).

Items 1-5 above have been designated as security information by the USCP Board pursuant to 2 U.S.C. § 1979.  The USCP has conducted a review of the footage comprised by Items 1-5 above and has determined that most of the footage does not depict purported rioters. We do not intend to produce such footage in discovery.

Five video files (approximately 31 minutes of footage) that fall into the Item 5 category depict purported rioters.  We are conducting a review of this footage to determine whether it depicts any charged defendants, and we will make disclosures in cases involving those defendants as required by Rule 16 or *Brady* and its progeny, in a manner we deem appropriate to protect the security interests at stake.

While Item 6 does not constitute security information, it is nevertheless irrelevant because the USCP's review determined that none of this footage depicts purported rioters.  Thus, we do not intend to produce this footage in discovery.

16

### C. **Evidence.com Productions**

1. Re-Released Footage

On Tuesday, December 14, 2021, the government learned that we had inadvertently disclosed to the defense instance of evidence.com USCP CCV that had been designated as security information by the USCP Board pursuant to 2 U.S.C. § 1979. As an initial matter, at our request, FPD restricted access to the entire defense evidence.com instance while we assessed what happened.  On Monday, December 20, 2021, FPD restored access to the defense instance of evidence.com, except for 702 files, while we worked through this matter with the USCP.

On Friday, January 14, 2022, we authorized FPD's re-release of 642 of 702 files that had been deleted or restricted at our request.  (The remainder comprise part of the footage designated as security information by the USCP, discussed in Part B above.)  Sixteen of those 642 files, described below, had been deleted by FPD at our request.  We reshared those files on March 1, 2022, in the following folders:

- 14 files of exterior footage, approximately 5 hours in length (FPD CCTV_006 RE-RELEASE SENSITVE).[10]
- 2 files of interior footage, approximately 40 minutes in length (FPD CCTV_007 RE-RELEASE HIGHLY SENSITIVE).

2. New Production

On March 4, 2022, 66 files consisting of approximately 35 hours of BWC footage recorded by 14 Virginia State Police officers were shared to the defense instance of evidence.com.  The files, described below, were shared in a folder, as follows:

- 66 files consisting of approximately 35 hours of BWC footage recorded by 14 VSP officers on January 6, 2021, designated Highly Sensitive under the protective order (FPD_VIRGINIA_STATE_POLICE BWC 001 HIGHLY SENSITIVE).

## **Global Production No. 13**

Global Production No. 13 consisted of Relativity production volumes DOJCB_014, DOJCB_015, DOJ_ABD_003, and DOJ_ABD_004.

### A. **Relativity Productions**

1. **Volume DOJCB_014:**  On March 22, 2022, the following documents were shared to the defense Relativity database:
   a.  Video footage from the French news agency Bangumi and associated materials (CAPD_000054936 - CAPD_000054954).

---

[10] The files in FPD CCTV_006 RE-RELEASE SENSITIVE are being re-produced with a reduced sensitivity designation.  They were previously designated Highly Sensitive and are now designated Sensitive.

    b.  MPD files including:
- i. Arrest Paperwork (CAPD_000054955 - CAPD_000057723).
- ii. Criminal Investigative Division BOLO Files (CAPD_000057724 - CAPD_000057992).
- iii. Curfew Arrest Paperwork (CAPD_000057993 - CAPD_000058211).
- iv. Tips (CAPD_000058212 - CAPD_000058578).
- v. BOLO Materials (CAPD_000058579 - CAPD_000058617).
- vi. Video Recorded by VSP and provided to MPD (CAPD_000058618 - CAPD_000058619).
- vii. Event Chronologies for Emergency Calls (CAPD_000058620 - CAPD_000058838).
- viii. Situational Awareness Documents (CAPD_000058839 - CAPD_000058893).
- ix. Radio and GPS Information (CAPD_000058894).
- x. Transcripts of Radio Communications on MPD-1 Channel from January 6 and 7, 2021 (CAPD_000058895 - CAPD_000059161).
- xi. Documents Related to Use of Force (CAPD_000059162 - CAPD_000059174).

    c.  USCP files including:
- i. Board Orders (CAPD_000059175 - CAPD_000059182).
- ii. National Capital Region Mutual Aid Agreement (CAPD_000059183 - CAPD_000059220).
- iii. Emails and Communications (CAPD_000059221 - CAPD_000060468).
- iv. Summary of Abandoned Property from January 6, 2021 (CAPD_000060469 - CAPD_000060473).
- v. Prisoner Processing Paperwork (CAPD_000060474 - CAPD_000060514).
- vi. Event Chronology for January 6th (CAPD_000060515 - CAPD_000060594).

2. **Volume DOJCB_015**: On March 25, 2022, the following documents were shared to the defense Relativity database:

    a.  Documents identified as relevant to (1) *United States v. Dustin Thompson* and (2) *United States v. Jacob Fracker and Thomas Robertson* (CAPD_000073343 - CAPD_000073992, except for the documents described in (b) through (d) below, which were inadvertently intermingled in this Bates range).

    b.  VSP Body Worn Camera Start Times and Officer Assignment Spreadsheet. This spreadsheet consists of USAO work product and is being provided solely to assist the defense in locating potentially relevant evidence (CAPD_000073739).

    c.  VSP - Division 27 (Fairfax) - Body-Worn-Camera Deployment Tracker (CAPD_000073993).

    d.  USCP Emails and Communications (CAPD_000073888 and CAPD_000073924).

18

3. **Volume DOJ_ABD_003:**  On March 18, 2022, DOJ_ABD items associated with 14 individuals, William Isaacs, Donovan Crowl, Patrick McCaughey, Christopher Quaglin, Joseph Hackett, Kevin Seefried, Roberto Minuta, Anthime Gionet, David Alan Blair, Anthony Williams, Brian Ulrich, Dustin Thompson, and Geoffrey Sills, were produced to the defense Relativity database (CAPD_000060595 - CAPD_000073342).

4. **Volume DOJ_ABD_004**: On March 28, 2022, DOJ_ABD items associated with 90 individuals (listed in the attached index) were produced to the defense Relativity database (CAPD_000073994 - CAPD_000076394).

**Global Production No. 14**

Global Production No. 14 consisted of Relativity production volumes DOJCB_016, DOJCB_017, DOJ_ABD_005, DOJ_ABD_006, and DOJ_ABD_007.  This production included materials responsive to defense discovery requests concerning James "Ray" Epps.

1. **Volume DOJCB_016:**  On April 14, 2022, the following documents were shared to the defense Relativity database:
   a. Ray Epps materials (CAPD_000363525 - CAPD_000363536).
   b. A work product spreadsheet of MPD BWC serial numbers and original owner names (CAPD_000363537).
   c. MPD Injured Officer Case Files (CAPD_000363538 - CAPD_000363620, CAPD_000363696, CAPD_000363697,  CAPD_000363699 - CAPD_000363702, CAPD_000363822 - CAPD_000363863, CAPD_000363873 - CAPD_000363873).
   d. Prince George's County Police materials (CAPD_000363621 - CAPD_000363622).
   e. USCP Crime Scene Unit Materials (CAPD_000363623 - CAPD_000363694).
   f. USCP Comprehensive After-Action Report (CAPD_000363695).
   g. Documents related to Nicholas Rodean (CAPD_000363698, CAPD_000363864 - CAPD_000363872).
   h. Documents related to Charles Donohoe (CAPD_000363703 - CAPD_000363727).

19

The government is aware that Ray Epps has been the subject of a variety of media articles[11] and a topic of congressional hearings.[12]  Public statements by the House Select Committee on January 6 indicate that it has interviewed Mr. Epps[13] and media reports citing counsel for Mr. Epps indicate that the Committee did so again on Friday, January 21, 2022.[14] Included within the Ray Epps materials described in 1(a) above (CAPD_000363525 - CAPD_000363536) are:

      a.  Audio recording of a January 8, 2021 call to FBI's National Threat Operations Center (NTOC) from Ray Epps (CAPD_000363534). This material is designated Highly Sensitive under the protective order.

      b.  Audio recording of March 3, 2021 interview of Ray Epps and corresponding documents including photographs, notes, and 302 summary (CAPD_000363525, CAPD_000363532 - CAPD_000363533, CAPD_000363536). This material is designated Highly Sensitive under the protective order.

---

[11] *See e.g.*, Anne Ryman, *Arizona Man Went to Washington for Day of Capitol Riot, Appears to Talk About Plans in Video*, Arizona Republic (published 6:51 PM MT Jan. 11, 2021; updated 10:47 AM MT Jan. 12, 2021) (available at *https://www.azcentral.com/story/news/local/arizona/2021/01/11/fbi-capitol-investigation-arizona-trump-supporter/6624406002/* (last visited 1/19/2022); *Who is Ray Epps?*, Snopes.com (published Jan. 7, 2022) (available at https://www.snopes.com/articles/389126/who-is-ray-epps/) (last visited 1/19/2022).

[12] *See* Oversight of the United States Department of Justice:  Hearing Before the House Committee on the Judiciary, 117 Cong. (October 21, 2021) (Testimony of Attorney General Merrick B. Garland) (available at https://twitter.com/RepThomasMassie/status/1451310873604206597?ext=HHwWisC5_Zrji6QoAAAA); The Domestic Terrorism Threat One Year After January 6:  Hearing Before Senate Committee on the Judiciary, 117 Cong. (January 11, 2022) (Questions of Senator Ted Cruz) (available at https://www.judiciary.senate.gov/meetings/the-domestic-terrorism-threat-one-year-after-january-6 at 01:53:30).

[13] House Select Committee on January 6th (@January6thCmte), Twitter (Jan. 11, 2022, 3:58 PM) https://twitter.com/January6thCmte/status/1481007562187280387 ("The Select Committee is aware of unsupported claims that Ray Epps was an FBI informant based on the fact that he was on the FBI Wanted list an then was removed from that list without being charged");  House Select Committee on January 6th (@January6thCmte), Twitter (Jan. 11, 2022, 3:58 PM) https://twitter.com/January6thCmte/status/1481007564188012544 ("The Committee has interviewed Epps.  Epps informed us that he was not employed by, working with, or acting at the direction of any law enforcement agency on Jan 5th or 6th or at any other time, & that he has never been an informant for the FBI or any other law enforcement agency.")

[14] Kyle Cheney, *Figure at Center of Pro-Trump Jan. 6 Theories to Speak with Select Committee Friday*, Politico (Jan. 18, 2022 02:38 PM EST) (available at https://www.politico.com/news/2022/01/18/ray-epps-jan-6-select-committee-527306).

     c.  Audio recording of April 13, 2021 interview of James "Jim" Epps Jr., the son of Ray Epps (CAPD_000363526). This material is designated Highly Sensitive under the protective order.

     d.  Video footage from January 6, 2021 that includes the individual identified as Ray Epps on January 6, 2021, including two clips from longer open source videos and clips from the BWC footage of MPD Officers Lazewski, Spajic, Ross, and Naticchione (CAPD_000363527- CAPD_000363531, CAPD_000363535).

2.  **Volume DOJCB_017**:  On April 22, 2022, the following documents were shared to the defense Relativity database:

     a.  USCP Casework files related to the following individuals: Larry Brock Jr., Lisa Marie Eisenhart, Joshua Hernandez, Adam Johnson, Kevin Lyons, Richard McGinnish, Eric Munchel, Ronnie Presley, and Ronald Sandlin (CAPD_000386435 and CAPD_000386949).

     b.  Materials gathered by the FBI related to Enrique Tarrio (CAPD_000386950 and CAPD_000389278).

3.  **Volume DOJ_ABD_005:**  On April 12, 2022, DOJ_ABD items associated with 29 individuals (listed in the attached index) were produced to the defense Relativity database (CAPD_000076395 - CAPD_000275396).

4.  **Volume DOJ_ABD_006**: On April 14, 2022, DOJ_ABD items associated with 47 individuals (listed in the attached index) were produced to the defense Relativity database (CAPD_000275397 - CAPD_000363524).

5.  **Volume DOJ_ABD_007**: On April 22, 2022, DOJ_ABD items associated with 41 individuals (listed in the attached index) were produced to the defense Relativity database (CAPD_000363877 - CAPD_000386434).

**Global Production No. 15**

    Global Production No. 15 consisted of Relativity production volumes DOJCB_018, This letter addresses Capitol Siege Section Discovery Unit Global Production No. 15, consisting of Relativity production volumes DOJCB_018, DOJCB_019, DOJ_ABD_008, and DOJ_ABD_009.

1.  **Volume DOJCB_018:**  On May 3, 2022, the following documents were shared to the defense Relativity database:

     a.  FBI interview memoranda from interviews of 48 law enforcement officers from multiple agencies and accompanying exhibits (CAPD_000434759 - CAPD_000434941, CAPD_000435145 - CAPD_000435163, CAPD_000435198 - CAPD_000435206, CAPD_000437229 -

CAPD_00437281, CAPD_000443219 - CAPD_000443228, and CAPD_000443263 - CAPD_000443270).
   b. USCP files related to assaults on officers (CAPD_000434942 - CAPD_000435099).
   c. USCP Casework Files (CAPD_000435100 - CAPD_000435144).
   d. Materials gathered by the FBI related to Ronald Loehrke (CAPD_000435207 and CAPD_000437228).
   e. Materials gathered by the FBI related to Zach Rehl (CAPD_000435164 - CAPD_000435197, CAPD_000442094 - CAPD_000443218).
   f. Materials gathered by the FBI related to Ethan Nordean (CAPD_000437282 - CAPD_000442093).
   g. USCP files related to Robert Sanford (CAPD_000443229 - CAPD_000443262).

2. **Volume DOJCB_019**:  The FBI has 60-plus social media accounts (Twitter, Facebook, YouTube, etc.) which are managed by FBI Headquarters and Field Offices. The National Threat Operations Center evaluates comments directed toward these social media accounts for potential crimes, threats of harm to an individual, or national security threats.  On May 6, 2022, 40,481 social media comments directed toward FBI social media accounts were shared to the defense Relativity database (CAPD_000443271 and CAPD_000483792).

3. **Volume DOJ_ABD_008:**  On May 3, 2022, DOJ_ABD items associated with 52 individuals (listed in the attached index) were produced to the defense Relativity database (CAPD_000389279 - CAPD_000434758).

4. **Volume DOJ_ABD_009**: On May 6, 2022, DOJ_ABD items associated with 59 individuals (listed in the attached index) were produced to the defense Relativity database (CAPD_000483793 - CAPD_000530146).

**Global Production No. 16**
     Global Production No. 16 consisted of Relativity production volumes DOJCB_020 through and including DOJCB_023, and DOJ_ABD_010 through and including DOJ_ABD_015, and one evidence.com production.

   A. **Relativity Productions**

   1. **Volume DOJCB_020:**  On June 10, 2022, the following documents were shared to the defense Relativity database:
      a. USCP Criminal Investigations Division ("CID") Files (CAPD_001134934).
      b. USCP Crime Scene Unit Documents, Photos, & Files (CAPD_001134935 - CAPD_001135530).

22

    c.  USCP Emails and Communications (CAPD_001135531-
CAPD_001136175).

    d.  USCP Text Messages (CAPD_001136176- CAPD_001136190).

    e.  Materials gathered by the USCP related to Richard Barnett
(CAPD_001136191- CAPD_001136928).

    f.  Materials gathered by the FBI related to Joseph Biggs (United States v.
Ethan Nordean *et al.* Case No 21-cr-00175) (CAPD_001136929 -
CAPD_001138562).

    g.  Materials gathered by the USCP related to Hunter Ehmke
(CAPD_001138563 - CAPD_001138597).

    h.  Materials gathered by the USCP related to Mark Mazza
(CAPD_001138598 - CAPD_001147399).

    i.  Materials gathered by the USCP related to Jesus Delamora Rivera
(CAPD_001147400 - CAPD_001147403).

    j.  Materials gathered by the USCP related to Scott Scheib
(CAPD_001147406 - CAPD_001147438).

    k.  Materials gathered by the USCP related to Mark Squatrito
(CAPD_001147439 - CAPD_001148255).

    l.  Materials gathered by the USCP related to Michael Taylor
(CAPD_001148256 - CAPD_001148375).

    m.  Materials gathered by the US Capitol Police related to Andrew Wrigley
(CAPD_001147404 (also Nicholas Rodean) and CAPD_001148376 -
CAPD_001155915).

2.  **Volume DOJCB_021:**  On June 10, 2022, the following documents were shared
to the defense Relativity database:

    a.  USCP Crime Scene Unit Files (CAPD_001155916 - CAPD_001156344).

    b.  Materials gathered by the FBI relevant to 100T-WF-3414040-SUB_A
(CAPD_001156345 - CAPD_001161560; CAPD_001173601 -
CAPD_001175769; CAPD_001180538 - CAPD_001180552;
CAPD_001181951 - CAPD_001182347).[15]

    c.  Materials gathered by the FBI relevant 100T-WF-3414040-SUB_B
(CAPD_001161561 - CAPD_001173600; CAPD_001175770 -
CAPD_001180537; CAPD_001180553 - CAPD_001181779;
CAPD_001181780 - CAPD_001181950).

---

[15] Items coded by the identifier 100T-WF-3414040-SUB_A are associated with the following charged
cases: (a) United States v. Elmer Stewart Rhodes, III et al., Case No. 22-cr-00015; (b) United States v.
Donovan Crowl et al., Case No. 21-cr-00028; and (c) United States v. Jonathan Walden, Case No. 22-cr-
00014.

3. **Volume DOJCB_022:** On June 17, 2022, materials gathered by the FBI relevant to relating to 100T-WF-3414040-SUB_B were shared to the defense database.[16]

4. **Volume DOJCB_023:** The National Threat Operations Center opened a tip-line for individuals to provide information regarding the identification of people involved in illegal activities on January 6, 2021. On June 24, 2022, 21,319 such tips were shared to the defense Relativity database. These tips were being provided in redacted format to protect the identity of the person providing the tip (CAPD_001947969 - CAPD_001969317).

5. **Volume DOJ_ABD_010:** On May 17, 2022, DOJ_ABD items associated with 93 individuals (listed in the attached index) were produced to the defense Relativity database (CAPD_000530147- CAPD_000625849).

6. **Volume DOJ_ABD_011:** On May 27, 2022, DOJ_ABD items associated with 59 individuals (listed in the attached index) were produced to the defense Relativity database (CAPD_000625850- CAPD_000706670).

7. **Volume DOJ_ABD_012:** On June 3, 2022, DOJ_ABD items associated with 46 individuals (listed in the attached index) were produced to the defense Relativity database (CAPD_000706671- CAPD_001134933).

8. **Volume DOJ_ABD_013:** On June 13, 2022, DOJ_ABD items associated with 38 individuals (listed in the attached index) were produced to the defense Relativity database (CAPD_001182348 - CAPD_001334328).

9. **Volume DOJ_ABD_014:** On June 17, 2022, DOJ_ABD items associated with 24 individuals (listed in the attached index) were produced to the defense Relativity database (CAPD_001334329 - CAPD_001868624).

10. **Volume DOJ_ABD_015:** On June 24, 2022, DOJ_ABD items associated with 56 individuals (listed in the attached index) were produced to the defense Relativity database (CAPD_001969318- CAPD_002152348).

---

[16] Items coded by the identifier 100T-WF-3414040-SUB_B are associated with the following charged cases: (a) United States v. Ethan Nordean *et al.,* Case No 21-cr-00175; (b) United States v. Nicholas Ochs *et al.*, Case No. 21-cr-00073; (c) United States v. Alan Fischer III *et al.,* Case No. 22-cr-00011; (d) United States v. Jeffery Finley, Case No. 21-cr-00526; (e) United States v. Gilbert Fonticoba, Case No. 21-cr-00638; (f) United States v. Gabriel Garcia, Case No. 21-cr-00129; (g) United States v. Arthur Jackman *et al.*, Case No. 21-cr-00378; (h) United States v. Isaiah Giddings *et al.*, Case No. 21-mj-00689; (i) United States v. Matthew Greene *et al.*, Case No. 21-cr-00052; (j) United States v. Ronald Loehrke *et al.*, Case No. 21-mj-00672; (k) United States v. Daniel Scott *et al.*, Case No. 21-cr-00292; and (l) United States v. Christopher Kuehne *et al.*, 21-cr-00160.

24

### B. **Evidence.com Productions**

On June 15, 2022, 12 files consisting of approximately 30 hours of MPD CCTV footage recorded by 2 cameras between the hours of 10:00 a.m. on January 6, 2021 and 2:00 a.m. on January 7, 2021 were shared to the defense instance of evidence.com. These files are designated Sensitive under the protective order. (FPD_MPD CCTV 001 SENSITIVE).

Timestamps are available for these videos, but because of an evidence.com technical limitation, timestamps for MPD CCTV footage are only viewable when the footage is downloaded and viewed in the app VLC (available for free at https://www.videolan.org/vlc/).

To view the timestamp of the MPD CCTV footage you must:
1. Download the individual CCTV file you want to view.
2. Open that video in VLC.
3. If the timestamp doesn't show immediately, right-click anywhere on the video > open the "subtitle" menu > open the "sub track" menu and select 'Track 1 – [English]".

## **Global Production No. 17**

Global Production No. 17 consisted of Relativity production volumes DOJCB_024 and DOJ_ABD_016.

1. **Volume DOJCB_024:** On July 11, 2022, the following materials were produced with this volume (CAPD_003356950 - CAPD_003362900).
   a. Report of Interview of FBI Supervisory Special Agent regarding the effects of OC Spray and Accompanying Notes (CAPD_003356953 - CAPD_003356956, and CAPD_003356981 - CAPD_003356983).[17]

---

[17] According to trainers at the Metropolitan Police Department's Maurice T. Turner Jr. Metropolitan Police Academy, Oleoresin Capsicum spray ("OC spray") is a less-than-lethal munition designed to incapacitate a target without causing physical injury.  OC spray is deployed against all MPD recruits as part of their training.  These hundreds of annual applications of OC spray in a sterile training environment against fit and healthy individuals routinely achieve their intended goal, namely the diminishment of the physical capabilities of the recruit/trainee without meaningful injury.  While there have been very rare instances where a recruit/trainee has needed medical intervention following the application of OC spray, most individuals experience a significant amount of pain and diminished capacity.

Included in this production is an FD-302 of an interview with Gerald "Ken" Western, Supervisory Special Agent in the FBI's Physical Training Unit at the FBI Training Academy, detailing his experience and knowledge regarding OC spray (see CAPD_003356981).  Upon reviewing this FD-302, SSA Western had the following comments:

- Paragraph 8 under Details, Sentence 1: The context of this statement is that New Agents when exposed to OC make the statements they felt like they were dying or could not breathe.

- Paragraph 11, Sentence 1: The individual had asthma and went to the hospital but it did not require hospitalization nor did anaphylaxis occur.

25

    b.  Report of interview with Sophie Gousset with related documents (CAPD_003356950 - CAPD_003356952, and CAPD_003356977 - CAPD_003356980).

    c.  Materials gathered by the FBI related to the following individuals:

        i.  Corinne Montoni (CAPD_003359508 - CAPD_003359676)

        ii.  Jeremy Sorvisto (CAPD_003359677 - CAPD_003362460)

        iii.  Valerie Ehrke (CAPD_003359025 - CAPD_003359449)

        iv.  Michael Stepakoff (CAPD_003362461 - CAPD_003362690)

        v.  Paul Von Bernewitz (CAPD_003362693 - CAPD_003362900).

    d.  USCP Casework Files (CAPD_003356984 - CAPD_003357005).

    e.  USCP Emails and Communications (CAPD_003357006 - CAPD_003357191).

    f.  USCP Prisoner Processing Unit Files (CAPD_003357192 - CAPD_003357252).

    g.  USCP OPR Report 21-006, Related News Footage (CAPD_003358039).

    h.  Materials gathered by the USCP related to the following individuals:

        i.  David Blair (CAPD_003358040 - CAPD_003358064)

        ii.  Terry Brown (CAPD_003358065)

        iii.  Lonnie Coffman (CAPD_003358066 - CAPD_003359024)

        iv.  Mark Leffingwell (CAPD_003359450 - CAPD_003359489)

        v.  Mark Mazza (CAPD_003359490 - CAPD_003359507)

        vi.  Michael Taylor (CAPD_003362691 - CAPD_003362692).

    i.  Photographs provided by MPD (CAPD_003356957 - CAPD_003356976).

2.  **Volume DOJ_ABD_016:**  On July 6, 2022, DOJ_ABD items associated with 36 individuals (listed in the attached index) were produced to the defense Relativity database (CAPD_002152349 - CAPD_003356949).

## Global Production No. 18

    Global Production No. 18 consisted of Relativity production volumes DOJCB_025 through and including DOJCB_027 and DOJ_ABD_017 through and including DOJ_ABD_022, and three evidence.com productions.

---

- Paragraph 12, Sentence 2: I do not know that a defibrillator is not authorized in an OC contaminated environment.  During the agent's summation, this point was reiterated that I have not seen any information an AED was not permitted in an OC environment.  We did talk about the hazard with a Taser but was not sure it pertained to an AED.

- Paragraph 12, last sentence: This is not my statement.  I am an EMT so an individual could still perform medical interventions even in an OC environment.

26

1. **Volume DOJCB_025:**  The National Threat Operations Center opened a tip-line for individuals to provide information regarding the identification of people involved in illegal activities on January 6, 2021.  On July 25, 2022, 20,783 such tips were shared to the defense Relativity database.  These tips were being provided in redacted format to protect the identity of the person providing the tip (CAPD_004657580 - CAPD_004678433).

2. **Volume DOJCB_026:**  On August 12, 2022, the following materials were produced with this volume.
   a. Selected USCP emails responsive to a search for the terms "Oath Keepers," "Oathkeepers," or "Stewart Rhodes" for the period 11/9/20 to 1/6/21 (CAPD_005105994 - CAPD_005106025; CAPD_005108104 - CAPD_005108434).
   b. Certificate of Authenticity from Sophie Gousset Lacroix for video provided to Bangumi (CAPD_005106026).
   c. Press photos from Agence France-Presse (CAPD_005106027 - CAPD_005108103).
   d. US Park Police Radio Communications (CAPD_005108435 - CAPD_005110091).
   e. Materials gathered by the Federal Bureau of Investigation ("FBI") related to Michael Stepakoff (CAPD_005110092 - CAPD_005110094).

3. **Volume DOJCB_027:**  On August 19, 2022, materials gathered by the FBI related to the following individuals were shared to the defense Relativity database:
   a. Zachary Jordan Alam (CAPD_005110095 - CAPD_005110232).
   b. Samuel Earl Digangi (CAPD_005110233 - CAPD_005110235).
   c. Andrew William Griswold (CAPD_005110236 - CAPD_005110378).
   d. Richard Lee Harris (CAPD_005110379 - CAPD_005110895).
   e. Timothy Allen Hart (CAPD_005110896 - CAPD_005110917).
   f. Andrew Alan Hernandez (CAPD_005110918 - CAPD_005110989).
   g. Lawrence Joseph Ligas (CAPD_005110990 - CAPD_005111003).
   h. Megan Dawn Paradise (CAPD_005111004 - CAPD_005111102).
   i. Audrey Anne Southard-Rumsey (CAPD_005111103 - CAPD_005111164).
   j. John Earle Sullivan (CAPD_005111165 - CAPD_005111515).
   k. George Amos Tenney III (CAPD_005111516 - CAPD_005111780).
   l. Jonah Westbury (CAPD_005111781 - CAPD_005111786).
   m. Darrell Alan Youngers (CAPD_005111787 - CAPD_005111907).

4. **Volume DOJ_ABD_017:**  On July 18, 2022, DOJ_ABD items associated with 21 individuals were produced to the defense Relativity database (CAPD_003362901 - CAPD_004105083).

5. **Volume DOJ_ABD_018:**  On July 20, 2022, DOJ_ABD items associated with 31 individuals were produced to the defense Relativity database (CAPD_004105084 - CAPD_004456900).

6. **Volume DOJ_ABD_019:**  On July 25, 2022, DOJ_ABD items associated with 31 individuals were produced to the defense Relativity database (CAPD_004456901 - CAPD_004657579).

7. **Volume DOJ_ABD_020:**  On July 28, 2022, DOJ_ABD items associated with 21 individuals were produced to the defense Relativity database (CAPD_004678434 - CAPD_004694545).

   Pursuant to a Stored Communications Act search warrant, Apple provided data for three independent iCloud accounts – those associated with Sandra Parker, Elmer Stewart Rhodes and Bennie Parker – in one production.  As a forensic matter, because of the manner in which the information was provided to us, we were unable to split the accounts into three separate DOJ_ABD items. Accordingly, the META_Custodian field for this data (CAPD_004685281 to CAPD_004688632) inaccurately lists Rhodes as the Custodian for information derived from the Parkers' accounts.

8. **Volume DOJ_ABD_021:**  On August 3, 2022, DOJ_ABD items associated with 43 individuals were produced to the defense Relativity database (CAPD_004694546 - CAPD_004971662).

9. **Volume DOJ_ABD_022:**  On August 11, 2022, DOJ_ABD items associated with 13 individuals, and open source social media gathered by the FBI relating to 100T-WF-3414040-SUB_B were produced to the defense Relativity database (CAPD_004971663 - CAPD_005105993).

**Global Production No. 19**

Global Production No. 19 consisted of Relativity production volumes DOJCB_028 to DOJCB_029 and DOJ_ABD_023 to DOJ_ABD_024.

1. **Volume DOJCB_028:**  On September 13, 2022, materials gathered by the FBI related to 63 individuals (listed in the attached index) were shared to the defense Relativity database (CAPD_006028083 - CAPD_006043175).

2. **Volume DOJCB_029:**  On September 16, 2022, the following materials were produced with this volume:

   a. Map and spreadsheet concerning USCP CCTV in evidence.com (CAPD_006180911 - CAPD_006180912).

28

To effort to assist the defense in locating relevant USCP CCTV exterior camera footage, enclosed is government work product consisting of: (a) a spreadsheet of exterior camera names and names of nearest buildings and (b) a map showing the location of the buildings identified on the spreadsheet.  In addition, to the extent currently known to the CSS Discovery Unit, the spreadsheet identifies exterior, interior, and CVC cameras that were not installed or that experienced recording gaps or distortion (e.g., static or pixelated images) during recording on January 6, 2021.[18]

      b.  Glossary of Plum Production Fields and Descriptions (CAPD_006180913).[19]
      c.  US Capitol Police Civil Disturbance Unit ("CDU") Operational Plan (various drafts) (CAPD_006180916 - CAPD_006180979).
      d.  Materials gathered by the FBI related to 26 individuals who are listed in the attached index (CAPD_006180980 - CAPD_006183399).

3. **Volume DOJ_ABD_023:**  On August 31, 2022, DOJ_ABD items associated with 82 individuals, open source videos gathered by the FBI relating to 100T-WF-3414040-SUB_A and 100T-WF-3414040-SUB_B, as well as video surveillance footage gathered by the FBI relating to 100T-WF-3414040-SUB_B, were produced to the defense Relativity database (CAPD_005111908 - CAPD_005939291).

4. **Volume DOJ_ABD_024:**  On September 1, 2022, DOJ_ABD items associated with 26 individuals (identified in the attached index) were produced to the defense Relativity database (CAPD_005939292 - CAPD_006028082).

---

[18] According to a representative of the USCP, recording gaps and footage distortion can occur for any number of reasons, including signal degradation and loss of power to a network switch.  Signal degradation typically occurs when faulty cables are disturbed (e.g., by wind, vibrations, people, or stress from data that exceeds a degraded cable's limits), and may affect an individual camera or group of cameras connected to a network switch.  In most cases, loss or distortion of signal is intermittent and will correct itself when the source of the signal degradation/interference has corrected itself.  A loss of power to a network switch may result from events including power surges, short circuits, and line damage, and will affect any cameras connected to the network switch.  While the exact cause of the power failure to cameras on January 6, 2021 has not been identified, it is worth noting that all the affected cameras were on the north side of the Capitol, which is the same side as the Inauguration trailer.  A significant amount of power is run above ground via a temporary conduit to the Inauguration trailer, platform, and media tower.  It is thus feasible that when the media tower conduit or other power lines in that area were damaged, a power failure resulted.  (All equipment is supported by battery backup and therefore it is possible that once the cameras dropped offline, they had been running on battery backup for 40 minutes or more.)  It is also possible that the power to the affected cameras was restored when building engineers addressed a loss of power to other devices, lights, or outlets that likely occurred at the same time the cameras lost power.

[19] See page 5.

**Global Production No. 20**
   Global Production No. 20 consisted of Relativity production volumes DOJCB_030 to DOJCB_033 and DOJ_ABD_025 to DOJ_ABD_030.

1. **Volume DOJCB_030:**  The National Threat Operations Center opened a tip-line for individuals to provide information regarding the identification of people involved in illegal activities on January 6, 2021.  On September 30, 2022, 9,727 such tips were shared to the defense Relativity database.  These tips were being provided in redacted format to protect the identity of the person providing the tip (CAPD_006183400 - CAPD_006193213).

2. **Volume DOJCB_031:**  On September 26, 2022, selected U.S. Capitol Police ("USCP") emails and communications responsive to discovery requests in *United States v. Elmer Stewart Rhodes, III et al.,* Case No. 22-cr-00015 and relevant to individuals associated with the CODE_IndivDefendant identifier 100T-WF-3414040-SUB_A, were shared to the defense Relativity database (CAPD_006193214 - CAPD_006211845).

3. **Volume DOJCB_032:**  On October 3, 2022, materials gathered by the FBI relevant to individuals associated with the CODE_IndivDefendant identifier 100T-WF-3414040-SUB_B and 17 other individuals listed in the attached index were shared to the defense Relativity database (CAPD_006584839 - CAPD_006586121).

4. **Volume DOJCB_033:**  On October 5, 2022, the following materials were produced with this volume.
   a. AUSA Alyse Constantinide was tasked with responding to the U.S. Capitol on January 6, 2021.  This production includes photos and videos she took on scene. (CAPD_006586122 - CAPD_006586134)
   b. Materials gathered by the FBI related to the following individuals:
      i. Neil Ashcraft (CAPD_006586135 - CAPD_006586135).
      ii. James Haffner (CAPD_006586136 - CAPD_006586139).
      iii. Richard Barnett (CAPD_006586140 - CAPD_006587868).
      iv. Willard Thomas Bostic Jr. (CAPD_006587869 - CAPD_006587869).
      v. John J. Carl (CAPD_006587870 - CAPD_006587872).
      vi. Timothy Allen Hart (CAPD_006587873 - CAPD_006588103).
      vii. Roger Jones (CAPD_006588104 - CAPD_006588108).
      viii. Cole Andre Temple (CAPD_006588109 - CAPD_006588153).
      ix. Adam Mark Weibling (CAPD_006588154 - CAPD_006588412).

5. **Volume DOJ_ABD_025:**  On September 16, 2022, DOJ_ABD items associated with 44 individuals (identified in the attached index) were produced to the defense Relativity database (CAPD_006043176 - CAPD_006081209).

30

6. **Volume DOJ_ABD_026:** On September 21, 2022, DOJ_ABD items associated with 24 individuals (identified in the attached index) were produced to the defense Relativity database (CAPD_006081210 - CAPD_006180910).

7. **Volume DOJ_ABD_027:** On September 23, 2022, DOJ_ABD items associated with 68 individuals (identified in the attached index) were produced to the defense Relativity database (CAPD_006211846 - CAPD_006291845).

8. **Volume DOJ_ABD_028:** On September 26, 2022, DOJ_ABD items associated with 55 individuals (identified in the attached index) were produced to the defense Relativity database (CAPD_006291846 - CAPD_006571492).

9. **Volume DOJ_ABD_029:** On September 28, 2022, DOJ_ABD items associated with 20 individuals (identified in the attached index) were produced to the defense Relativity database (CAPD_006571493 - CAPD_006584838).

10. **Volume DOJ_ABD_030:** On October 6, 2022, DOJ_ABD items associated with 58 individuals (identified in the attached index) were produced to the defense Relativity database (CAPD_006588413 - CAPD_006625677).

\*\*\*

As of October 7, 2022, over 3.49 million files (over 4.64 terabytes of information) have been provided to the defense Relativity workspace. These files include (but are not limited to) the results of searches of 689 digital devices and 376 Stored Communications Act accounts; 1,743 FBI FD-302s and related attachments (FD-302s generally consist of memoranda of interviews and other investigative steps); 330 digital recordings of subject interviews; and 91,811 (redacted or anonymous) tips. Over 30,000 files consisting of body-worn and hand-held camera footage from five law enforcement agencies and surveillance-camera footage from three law enforcement agencies and the Hilton Garden Inn have been shared to the defense evidence.com video repositories. For context, the files provided amount to over nine terabytes of information and would take at least 105 days to view continuously.

We will forward additional discovery as it becomes available.

Sincerely,

EMILY A. MILLER
Chief, Discovery Unit
Capitol Siege Section

31



U.S. Department of Justice

Matthew M. Graves
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C.  20530*

March 4, 2022

Re: Capitol Siege Cases
Global Discovery Production No. 12

Dear Counsel:

This letter addresses Capitol Breach Discovery Unit Global Production No. 12, consisting of (A) Relativity production volumes DOJCB_012, DOJCB_013, DOJ_ABD_001, and DOJ_ABD_002; (B) a disclosure about U.S. Capitol Police ("USCP") closed circuit video ("CCV") footage; (C) two evidence.com productions (one re-release and one new); and (D) a reminder about the applicability of the Protective Order.

### A. Relativity Productions

Materials shared to the defense Relativity workspace will become available to you upon your receipt of a license to access Relativity.[1]  Please be advised that sharing voluminous documents to the defense Relativity workspace can sometimes take several hours or days, depending on the size of files being shared.

1. **Volume DOJCB_012:**  On February 21, 2022, documents identified as relevant to *United States v. Guy Reffitt*, were shared to the defense Relativity database (CAPD_000038964 - CAPD_000050937).

2. **Volume DOJCB_013**:  On March 4, 2022, the following documents were shared to the defense Relativity database:

a. Over 250 Federal Bureau of Investigation ("FBI") interviews of USCP and Metropolitan Police Department officers, and associated exhibits (889 files total) (CAPD_000052939 - CAPD_000053427).

---

[1] If you have never received an invitation to obtain a Relativity license, or you are experiencing difficulties or challenges with gaining access, please email Shelli Peterson at Shelli_Peterson@fd.org.

b. Three search warrants and related materials pertaining to a total of 63 Facebook accounts (CAPD_000050938 - CAPD_000051089).

c. Two search warrants and related materials pertaining to the FBI's collection of Google account subscriber information and location data from the Capitol and restricted perimeter, i.e., the Google geofence warrants (CAPD_000051162 - CAPD_000052152).

d. An application and related orders issued pursuant to 18 U.S.C. 2703(d), requiring twelve cell service providers to provide basic subscriber information and call records for devices that, according to location data obtained pursuant to the Google geofence warrants, were present within the U.S. Capitol on January 6, 2021 (CAPD_000051090 - CAPD_000051161).

e. One search warrant and related materials requiring Facebook to provide information for accounts associated with 2,087 advertising identifiers (CAPD_000052153 - CAPD_000052257).

f. Ten search warrants and related materials pertaining to anonymized location data collected by ten data aggregation companies (CAPD_000052258 - CAPD_000052696).

g. Six search warrants and related materials pertaining to the FBI's collection of cell tower data from Verizon, AT&T, and T-Mobile/Sprint (CAPD_000052697 - CAPD_000052938).

Items (c) through (g) have been redacted to remove law enforcement sensitive information, for example, the precise location of cellular network infrastructure that provided cellular service to the Capitol on January 6, 2021; and information that would identify the confidential sources of certain anonymized location data. In certain instances, we have also redacted the precise account information sought, as analysis of the results continues to reveal accounts associated with individuals who were lawfully present on January 6, 2021, e.g., members of Congress, their staff, and law enforcement. Relatedly, we do not intend to produce *en masse* the data received in response to items (c) through (g) above because it contains such information, and the process of identifying that information continues even today. Relevant data obtained pursuant to items (c) through (g) will be provided in case-specific discovery, and requests for such data should be addressed to the assigned prosecutor.

3. **Volume DOJ_ABD_001:**[2] On February 11, 2022, DOJ_ABD items associated with John Daniel Andries, Cynthia Ballenger, and Nicole Prado were produced to the defense Relativity database (CAPD_000023053 - CAPD_000024418).

---

[2] Until now, as above, all USAfx/Relativity productions have been identified by the volume prefix "DOJCB" followed by a number. Going forward, we will utilize an additional volume prefix, "DOJ_ABD," to identify production volumes that consist of the following types of materials:

1. Files from digital devices (e.g., cell phones and laptop computers) or Stored Communications Act accounts (e.g., gmail, Facebook, Twitter) that have been identified by law enforcement as relevant to the Capitol Siege investigation;

2. Recorded interviews with investigation subjects; and

2

4. **Volume DOJ_ABD_002:** On February 21, 2022, DOJ_ABD items associated with Guy Reffitt were produced to the defense Relativity database (CAPD_000024419 - CAPD_000038963).

5. **All Prior Productions:**  At this juncture, the defense Relativity workspace contains all global discovery productions (i.e., Global Production Nos. 1-11) that were previously made by USAfx.

As of today, 34,095 documents have been provided to the defense Relativity database.

A corresponding index has been made available via USAfx. The PDF version of the index corresponds to this global production (only).  The Excel version of the index corresponds to this production and also includes all prior global productions.  For simplicity, the Bates range for certain voluminous records (e.g., files that are all derived from the same digital device) is summarized in the index (as opposed to being listed line by line).  Sensitivity designations for the materials described above are identified in the index.

## B.  Disclosure about USCP CCV
The USCP captured footage from all Capitol interior, all Capitol Visitor Center ("CVC") interior, and all exterior CCV cameras that were in place on January 6, 2021.  We have produced all such footage to the defense instance of evidence.com except footage depicting:

1. Critical infrastructure, e.g., communication and security closets, fire doors in the basement levels of the CVC, loading docks.
2. X-Ray machine image feed.
3. Intel and Sensitive Compartmented Information Facility ("SCIF") office lobbies.
4. Tunnels and subways.
5. Evacuation routes and shelter-in-place locations utilized by, *inter alia*, members of Congress, their staff, and the Vice President, on January 6, 2021.
6. Daycare centers and the Senate page dormitory (i.e., exterior footage that provides views of the entrances to these facilities and daycare playgrounds).

Items 1-5 above have been designated as security information by the USCP Board pursuant to 2 U.S.C. § 1979.  The USCP has conducted a review of the footage comprised by Items 1-5 above and has determined that most of the footage does not depict purported rioters.  We do not intend to produce such footage in discovery.

Five video files (approximately 31 minutes of footage) that fall into the Item 5 category depict purported rioters.  We are conducting a review of this footage to determine whether it

---

3.  Aerial surveillance footage.

3

depicts any charged defendants, and we will make disclosures in cases involving those defendants as required by Rule 16 or *Brady* and its progeny, in a manner we deem appropriate to protect the security interests at stake.

While Item 6 does not constitute security information, it is nevertheless irrelevant because the USCP's review determined that none of this footage depicts purported rioters. Thus, we do not intend to produce this footage in discovery.

### C. **Evidence.com Productions**

Materials shared via evidence.com will become available to you upon your receipt of a license to access evidence.com.[3]  Please be advised that sharing voluminous video files can sometimes take several hours or days, depending on the size of files being shared.

*Re-Released Footage*

On Tuesday, December 14, 2021, the government learned that we had inadvertently disclosed to the defense instance of evidence.com USCP CCV that had been designated as security information by the USCP Board pursuant to 2 U.S.C. § 1979. As an initial matter, at our request, FPD restricted access to the entire defense evidence.com instance while we assessed what happened.  On Monday, December 20, 2021, FPD restored access to the defense instance of evidence.com, except for 702 files, while we worked through this matter with the USCP.

On Friday, January 14, 2022, we authorized FPD's re-release of 642 of 702 files that had been deleted or restricted at our request.  (The remainder comprise part of the footage designated as security information by the USCP, discussed in Part B above.)  Sixteen of those 642 files, described below, had been deleted by FPD at our request.  We reshared those files on March 1, 2022, in the following folders:

- 14 files of exterior footage, approximately 5 hours in length (FPD CCTV_006 RE-RELEASE SENSITVE).[4]
- 2 files of interior footage, approximately 40 minutes in length (FPD CCTV_007 RE-RELEASE HIGHLY SENSITIVE).

---

[3] If you have never received an invitation to obtain a license for evidence.com, please email Shelli Peterson at Shelli_Peterson@fd.org.

[4] The files in FPD CCTV_006 RE-RELEASE SENSITIVE are being re-produced with a reduced sensitivity designation.  They were previously designated Highly Sensitive and are now designated Sensitive.

4

*New Production*
    On March 4, 2022, 66 files consisting of approximately 35 hours of body-worn-camera ("BWC") footage recorded by 14 Virginia State Police ("VSP") officers were shared to the defense instance of evidence.com.  The files, described below, were shared in a folder, as follows:

- 66 files consisting of approximately 35 hours of BWC footage recorded by 14 VSP officers on January 6, 2021, designated Highly Sensitive under the protective order (FPD_VIRGINIA_STATE_POLICE BWC 001 HIGHLY SENSITIVE).

Corresponding evidence.com indexes for all the evidence.com productions discussed above have been made available via USAfx. (Indexes for all the additional videos currently in the defense instance of evidence.com were previously produced.)

**D.  Application of Protective Order**
    If you receive any materials designated Sensitive or Highly Sensitive and (a) there is no protective order entered in the applicable case or (b) your client has refused to sign a written acknowledgment that s/he has read, understands and agrees to abide by the terms of the applicable protective order, we request that you refrain from disseminating those materials to your client. Instead, please inform the assigned prosecutor in writing and give them at least one week to file a motion with the Court to ensure that discovery materials are adequately protected.

***

    We will forward additional discovery as it becomes available.

Sincerely,

EMILY A. MILLER
Chief, Discovery Unit
Capitol Siege Section

5