```
1                BEFORE THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
2

3    UNITED STATES OF AMERICA,        .
                                      .  Case Number 21-cr-128
4             Plaintiff,              .
                                      .
5        vs.                          .
                                      .
6    WILLIAM POPE and MICHAEL POPE, . March 3, 2023
                                      .  9:30 a.m.
7             Defendants.             .
     - - - - - - - - - - - - - - - -

8

9                    TRANSCRIPT OF STATUS CONFERENCE
                  BEFORE THE HONORABLE RUDOLPH CONTRERAS
10                   UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the United States:        KELLY MORAN, AUSA
                                   United States Attorney's Office
14                                 601 D Street Northwest
                                   Washington, D.C. 20579
15

16   For Defendant W. Pope:        WILLIAM POPE, PRO SE

17                                 NICOLE ANN CUBBAGE, ESQ.
                                   Law Office of Nicole Cubbage
18                                 712 H Street Northeast
                                   Unit 570
19                                 Washington, D.C. 20002

20   For Defendant M. Pope:        BRUCE SEARBY, ESQ.
                                   Searby PLLC
21                                 2000 P Street Northwest
                                   Suite 750
22                                 Washington, D.C. 20036

23   Official Court Reporter:      SARA A. WICK, RPR, CRR
                                   333 Constitution Avenue Northwest
24                                 Room 4704-B
                                   Washington, D.C. 20001
25                                 202-354-3284
```

P R O C E E D I N G S

(All participants present via video conference.)

COURTROOM DEPUTY:  Your Honor, we are on the record in Criminal Case 21-128, United States of America versus William Pope and Michael Pope.

Starting with government counsel, please state your appearance for the record.

MS. MORAN:  Good morning, Your Honor.  Kelly Moran on behalf of the United States.

DEFENDANT W. POPE:  William Pope, representing himself.

MS. CUBBAGE:  Nicole Cubbage, standby counsel for Mr. Pope.

MR. SEARBY:  Good morning, Your Honor.  Bruce Searby for Mr. Michael Pope.

THE COURT:  All right.  Good morning, everybody.

So let's start off with Michael Pope since the issues are a little bit more straightforward.  Can someone fill me in where things stand and where things are heading with respect to him.

MR. SEARBY:  Sure, Your Honor.

As you may recall, the last time that this case was called, we asked for an extra 30 days, waiving Speedy Trial Act time, so that the government could, with a fresh set of eyes, take a look at this case and re-evaluate the potential for a pretrial settlement.

1          Ms. Moran and I did have a meeting, and I -- the last I

2     knew, there was going to be some renewed review of the file,

3     where things stood now.

4          I think it's notable that there's some interesting evidence

5     that Mr. William Pope has brought forward out of the discovery.

6     I think that there's a lot of reason for this case to settle

7     still.

8          I've invited government counsel to come back to me with any

9     questions to, you know, redo a proffer that we had done with the

10    previous counsel.  And that last part has not yet happened, but

11    we're certainly still at this point interested in those

12    discussions and seeing them play out, and we would certainly,

13    you know, want to keep that door open.

14             THE COURT:  All right.  Ms. Moran?

15             MS. MORAN:  Your Honor, all of Mr. Searby's

16    representations are correct.  I did take a renewed look at all

17    of the discovery and at the case.  Mr. Searby and I met.  We

18    went through the exact same presentation that had been used in

19    the reverse proffer.

20         I did have meetings with my supervisor.  At this time we

21    are not making a misdemeanor -- we are not going to be offering

22    a misdemeanor resolution in this case at this time.  And it's my

23    understanding from Mr. Searby that that is the only resolution

24    that at this point would be acceptable to Michael Pope.

25         With that said, Your Honor, of course, I am willing to and

1    happy to have more conversations with Mr. Searby.  I believe

2    that the representation regarding newly discovered evidence is

3    addressed well in the response that was filed by the government

4    last night.  I don't find that particularly compelling.  But to

5    the extent that there's any other information Mr. Searby or

6    Mr. Pope want me to look at, I am always happy to consider that

7    and to take that to my supervisors.

8            THE COURT:  All right.  Mr. Searby, with that, where

9    do you want to head next?

10           MR. SEARBY:  Well, I'm not sure that we were able to

11   do the very same, you know, proffer of evidence that we were

12   able to do with Mr. Crawford.  I do think that -- I would love

13   to, of course, understand where the government's coming from at

14   this point with that position.  So if there's the possibility

15   for some further dialogue, we would take advantage of that and

16   suggest that the case be put over for another 30 days to allow

17   that opportunity to happen.

18           THE COURT:  Mr. Moran, are you amenable to another 30

19   days of dialogue, tolling the speedy trial clock between now and

20   then?

21           MS. MORAN:  Yes, Your Honor, and I'm also to that

22   point happy to engage in another reverse proffer or have any

23   conversations that need to take place.

24           THE COURT:  All right.  Mr. Searby, I gather from your

25   comments that Mr. Michael Pope is willing to toll the time

1    between now and 30 days in order to have that continued

2    dialogue?

3              MR. SEARBY:  Yes, Your Honor.

4              THE COURT:  All right.  Gwen, do you have my calendar?

5    You're on mute.

6              COURTROOM DEPUTY:  That always happens.  I'm sorry,

7    Your Honor.

8         Yes, 30 days will put us on Monday, April the 3rd, and we

9    can do this in the afternoon at 2:00 or 2:30 for a status.

10             MR. SEARBY:  That is fine with Mr. Michael Pope's

11   side, Your Honor.

12             MS. MORAN:  And that's fine for the government, Your

13   Honor.

14             THE COURT:  Gwen, you said Monday, April 3rd, at what

15   time?

16             COURTROOM DEPUTY:  We can do it at 2:00 or 2:30, Your

17   Honor, whatever time you would prefer to start.

18             THE COURT:  2:00 is fine.

19             COURTROOM DEPUTY:  Okay.  It will be April the 3rd at

20   2:00 p.m.

21             THE COURT:  All right.  With respect to William Pope,

22   the parties have continued to file things all the way up until

23   last evening.  So I had hoped to rule on the motion by today,

24   but there's a lot going on.  So what I would like to do is I

25   would like to hear more from the government on what I'm reading

1    in the papers about production of the CCTV video to Tucker

2    Carlson and to -- after a point of exclusivity, to other news

3    outlets, and then also it seems like there's disclosures being

4    made to individual defendants on a case-by-case basis.  I don't

5    know what "case-by-case basis" means and why the Speaker gets to

6    choose which defendants get to see what.

7        But I would like -- you know, I know that the Capitol

8    Police is not the Speaker's office, but it seems from what I'm

9    reading in the papers that the Capitol Police has been involved

10   in those discussions.  So I would like a declaration from the

11   Capitol Police within two weeks as to exactly what all those

12   things mean and whether there's been any restrictions whatsoever

13   as to what the press can do with those videos, CCTV videos, once

14   they receive them.

15       From what I read, Tucker Carlson seems to think he has

16   unfettered discretion what he can do with those videos, which in

17   this circuit, with respect to privilege, this circuit has said

18   you have to guard privileges like crown jewels.  If the press is

19   given unfettered access to these videos, they don't seem to be

20   treating these things like crown jewels.

21       So I would like that within two weeks, which I guess puts

22   it at March 17.

23       And then Mr. William Pope and Ms. Cubbage, to the extent

24   you want to chime in as well, I will have Mr. William Pope

25   respond to whatever the government says.

1        The government can also, when it files that declaration,

2   also indicate to me what -- the context in which you want me to

3   look at those disclosures and what impact you believe it has on

4   Mr. William Pope's request for access.

5        And then Ms. Cubbage and Mr. William Pope can respond in

6   kind, and then we will talk about it again.

7        Ms. Cubbage and Mr. William Pope, does that date we just

8   set, April 3rd at 2:00, work for the two of you?

9        DEFENDANT W. POPE:  That would be fine for me, Your

10  Honor.

11        MS. CUBBAGE:  Your Honor, I'm currently scheduled to

12  be in trial at that time, but I'm not 100 percent sure that's a

13  solid date.  So we can go ahead, and if there's any conflict, I

14  will let the Court know.

15        THE COURT:  Okay.  Perfect.  If it turns out you are

16  in trial, just touch base with the other parties, and we can set

17  a new date, and just communicate that to the Court.  Obviously,

18  there's no magic to that specific date for the Court.

19        Let me hear from Ms. Moran some more about your opposition

20  to the other motion, the motion to take the designations off

21  those videos, the MPD videos.  Your response was a little vague

22  and a little devoid of case law.  So I would like to hear your

23  justification.  Obviously, the protective order set up a process

24  for doing exactly what Mr. William Pope did.  So I would like to

25  hear some more as to why I shouldn't allow for that.

1          MS. MORAN:  Certainly, Your Honor.

2      And I think at the heart of the government's argument is

3  that we don't understand the relevance of these videos to

4  Mr. Pope's criminal matter and why this is being treated as a

5  discovery issue.  In fact, there is a FOIA process, as Your

6  Honor knows and Mr. Pope knows, that can be used to gather

7  information for the purposes that Mr. Pope hopes to use them,

8  which by his own candid admission is in large part to give it to

9  the press.  It just doesn't seem like a criminal discovery

10  issue, Your Honor.

11      And I think that the allegations that the government has

12  been suppressing or hiding this video are erroneous and are, in

13  fact, undermined by the fact that Mr. Pope is the individual who

14  has these videos and who brought them to the attention of the

15  Court.

16      So we just don't believe that this redesignation is a

17  discovery issue.  It doesn't appear relevant to Mr. Pope's case.

18  We are willing to litigate and ready to litigate any defenses at

19  the appropriate point.  This is not an effort on the part of the

20  government to stop an entrapment defense at this point through

21  the discovery process.

22      And, you know, to my earlier point, Mr. Pope candidly says

23  that he wants to share this information with the public and

24  wants to use media in this case.  One of the reasons we have a

25  protective order in place is to protect the integrity of the

1    judicial process.

2         So for those reasons, and Your Honor, I can continue -- I

3    take your point that the recent news in the press about how this

4    material is going to be disseminated otherwise, I do think it

5    will be helpful to the Court to have some transparency into what

6    that process looks like, because my understanding -- and

7    granted, Your Honor, I'm not read in at the highest levels of

8    this.  My understanding is that the press is not accurate in

9    terms of the scope and the access that individuals in the media

10   are receiving or will be receiving.

11        THE COURT:  All right.  Well, that's exactly why I

12   want to get a sworn declaration.

13        All right.  Going back to -- you know, I think you're

14   complaining two different issues.  This isn't the CCTV videos,

15   which we will deal with in the other context.  This is those MPD

16   videos is my understanding of what Mr. Pope wants to

17   dedesignate.  And even if it's not a criminal discovery issue,

18   it's a protective order issue.  Most discovery is not subject to

19   a protective order unless there's a special reason, and I'm not

20   hearing a particularly good special reason.

21        Is there anything that prevents Mr. Pope -- assuming the

22   discovery was not subject to a protective order, what prevents

23   Mr. Pope of sharing it with the press?

24        MS. MORAN:  Your Honor, the government's concern and

25   why it has been designated as such is that it could be a safety

1  issue for the officers involved in filming that material.  And

2  it also could have great relevance to the cases of those

3  individuals who did directly interact with the individuals in

4  the crowd who were filming on that GoPro video.

5       So it's more a matter of trying to protect the sanctity of

6  other cases, as well as the physical safety of the officers who

7  were participating in filming on this body cam -- or excuse me,

8  on this GoPro video.

9       THE COURT:  Do you know if those tapes have been

10  played in court in any other case?

11       MS. MORAN:  I don't, Your Honor, and I can -- and when

12  I file my next motion, Your Honor, I will include that

13  information.

14       THE COURT:  All right.  And I'm going to need some

15  more legal support for any argument that I shouldn't dedesignate

16  these, because even -- I'm sensitive to the argument that it

17  might put these officers at risk, but the -- your pleading

18  didn't provide a whole lot of support for that proposition.

19       MS. MORAN:  Certainly, Your Honor.

20       THE COURT:  Either factual or legal.  So I don't want

21  to put the officers at risk.  So I'm going to give you another

22  opportunity to make that case.  But in the typical case,

23  discovery is not subject to a protective order, and there's many

24  a defendant that use the press for their own purposes, in

25  particular in high-profile cases.  And I didn't see anything in

1    your pleading that says he doesn't -- anything prevents him from

2    doing that under the law.

3        So under the protective order, I believe it's your burden,

4    and I'm not sure you're there.

5            MS. MORAN:  Yes, Your Honor.  Understood.

6            THE COURT:  Any other issues that we need to deal with

7    today?

8            COURTROOM DEPUTY:  Your Honor, on the response by the

9    defense after the government files their declaration, did you

10   have a date for that response?  I know that you wanted the

11   declaration by March the 17th, but I --

12           THE COURT:  And the response a week later.

13           COURTROOM DEPUTY:  A week later, okay.

14           THE COURT:  Mr. William Pope, anything else you want

15   me to deal with today?

16           DEFENDANT W. POPE:  Your Honor, I would note that the

17   day after January 6, 2021, the Department of Justice rushed to

18   do a press conference and taint the reputations and inflame

19   public perception of everyone who came to Washington, D.C., that

20   day.  They have been using the press for two years to try to

21   taint and poison the jury pool, and I have the right to use my

22   First Amendment rights to defend myself.  And I consider this an

23   important attack on the First Amendment by them accusing me of

24   using my First Amendment in a way that hurts them.

25       And I'm not out to do any damage to an officer or hurt the

1    officers.  But the public deserves to know what happened on

2    January 6.  And at every trial, the government presents a

3    montage video of how they say events unfolded, and defendants

4    should have a right to present a similar video showing how

5    events unfolded, including how events unfolded by the influence

6    of police that day.

7          So this video should be public.  We already have members of

8    major networks who are putting out misinformation regarding this

9    video.  And if the video were out, they wouldn't be posting that

10   misinformation.  Just last night, you had an NBC reporter who

11   shared clips from the government's filing that spread

12   misinformation.  So this video needs to come out sooner than

13   later.

14         And I would also note, Your Honor, and I think this is

15   significant, the government hasn't responded to any of my

16   e-mails since our last status conference, including, you know,

17   last status conference the government noted their desire to

18   resolve things pretrial, and they haven't responded to an e-mail

19   regarding that.

20         So I find that concerning.  I think the government, not

21   only are they hiding information from the American public, but

22   they're also not -- they're not being authentic in their stated

23   desire to handle this in the court.  If they want to handle this

24   through e-mail and try to work things out, they should do that,

25   but they haven't been doing that.

1    I have a right to defend myself.  We have an adversarial

2    system of justice.  And if they want to be my adversary in

3    court, that comes with the consequences, you know.  So I'm going

4    to defend myself, and respectfully, I filed these motions, and

5    I'm doing the best that I can to represent myself.

6         THE COURT:  So, Ms. Moran, I need you to communicate

7    with Mr. William Pope.  Your pleading from last night is

8    dripping with annoyance, which that may -- you may very well be

9    annoyed with Mr. William Pope, but he's who you have to deal

10   with.  So I need you to deal with him professionally as you

11   would with counsel.

12        MS. MORAN:  Understood, Your Honor.  I'm not annoyed.

13   I apologize, Mr. Pope.  I recall receiving two e-mails from

14   you, one asking if we would be offering a misdemeanor in this

15   case, which I've answered on the record, and I apologize, I

16   didn't get a chance to communicate that to you in person.  I had

17   discussed with Mr. Searby whether Michael Pope might be entitled

18   to a misdemeanor, and I apologize that you felt left out of that

19   conversation.

20   The second e-mail, I found difficult to understand.  It was

21   regarding your access to Relativity, which I believed was an

22   issue we had not yet settled.  So I felt it best to wait until

23   we had come before the judge to get a ruling on discovery.  So I

24   will respond to you in writing to that effect as well.

25        DEFENDANT W. POPE:  I also sent another e-mail

1   regarding false information that you put in my charging

2   document, and the government has continued to let that go

3   without correction, and newspapers and other members of the

4   media are disseminating that false information, which damages my

5   reputation.  So if you would please respond to that e-mail as

6   well, I would appreciate it.

7               MS. MORAN:  I will.  Thank you.

8               THE COURT:  All right.  If there's nothing else,

9   you're excused.  Thank you.

10          And the time is tolled between now and the April 3rd date

11  in the interest of justice so we can deal with all these various

12  issues and the pending motions.

13          Thank you.

14          (Proceedings adjourned at 9:50 a.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER

        I, Sara A. Wick, certify that the foregoing is a
correct transcript from the record of proceedings in the
above-entitled matter.



/s/ Sara A. Wick                  March 12, 2023
SIGNATURE OF COURT REPORTER       DATE