UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-cr-128 (RC) |
| : | |
| WILLIAM POPE, and : | |
| MICHAEL POPE, : | |
| : | |
| Defendants. | |

## GOVERNMENT'S RESPONSE TO DEFENDANT MICHAEL POPE'S MOTION TO SEVER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Response in Opposition to Defendant Michael Pope's Motion to Sever (ECF No. 122). Pope contends that the charges against him were misjoined and asks the Court to sever the cases for trial under Rule 14. However, as described in greater detail below, the defendants were properly joined in this case. Additionally, a Rule 14 severance is inappropriate here when defendants have failed to show a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. Therefore, the Court should deny Pope's motion.

As a baseline, the "weight of authority in this circuit and elsewhere regards Rule 8(b) as providing the sole standard for determining the permissibility of joinder of offenses" in cases with multiple defendants. *United States v. Wilson*, 26 F.3d 142, 153 n.4 (D.C. Cir. 1994) (citations omitted); *see also United States v. Perry*, 731 F.2d 985, 989 (D.C. Cir. 1984); *United States v. Jackson*, 562 F.2d 789, 793-94 (D.C. Cir. 1977). Rule 8(b) permits joinder of defendants "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). This circuit construes Rule 8(b)

broadly in favor of joinder. *See United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991) ("[T]his circuit's law makes it difficult to prevail on a claim that there has been a misjoinder under Rule 8(b)."). Michael Pope's objections to joinder are that his trial strategies, such as his willingness to stipulate to certain facts or evidence and his possible desire to proceed with a bench trial, will differ so significantly from his brother's trial strategy that to try their cases together would present a significant risk of prejudice to Michael Pope. Further, Michael Pope argues that severance is appropriate because he will be prejudiced by his co-defendant's decision to proceed *pro se*, and because the government has cited no evidence of Pope's knowledge of or collaboration with his brother's felonious conduct. ECF No. 122 at 7, 10. Neither objection is accurate, and neither forms a valid basis for severance.

## FACTUAL BACKGROUND

Defendants Michael Pope and William Pope have been charged with various crimes relating to the attack on the U.S. Capitol on January 6, 2021. The defendants, who are brothers, were indicted on February 17, 2021, for obstruction of law enforcement during a civil disorder (Count 1); obstruction of an official proceeding (Count 2); entering a restricted building or grounds (Count 3); disorderly conduct in a restricted building (Count 4); impeding ingress and egress in a restricted building or grounds (Count 5); disorderly conduct in a Capitol building (Count 6); impeding passage through the Capitol grounds of buildings (Count 7); and parading, demonstrating, or picketing in a Capitol building (Count 8). *See* Indictment ("Indictment"), ECF No. 8. The government will present evidence that, beginning on December 26, 2020, the Popes used Facebook Messenger to plan their trip to D.C. They discussed their itinerary, their transportation options, the gear and weapons they would bring, and their escape plan if something were to go wrong. They discussed attending President Trump's rally in Atlanta, but decided to

skip it in favor of meeting closer to D.C. and traveling down the East Coast to Charleston, South Carolina, after the January 6 rally. In early January, Michael suggested "set[ting] up a cache in a locker" but William responded that it was better to wear backpacks and bring National Park Service gear to change into as "a good escape plan." William planned to "bring pepper spray, [] knives, and . . . flagpoles for defense" as well as "plates to put in our packs to provide some protection." William sent Michael one of President Trump's Tweets containing the phrase "Stop The Steal." William also sent Michael an article about the Proud Boys' plan to travel to D.C. and to be incognito, to which Michael replied, "[i]nteresting that they may [be] changing up their colors." William told Michael he reserved tickets for the Stop the Steal rally; but, William said, "they may screen for knives, etc to get into the white house complex," which "changes our approach to what gear we can/must pack." Michael responded that it "shouldn't be a big deal" and that they might not allow backpacks.

The Popes arrived at the National Mall around 7:00 a.m. on January 6. Each carried a flagpole with an American flag. William was wearing a blue and red jacket, a "USA" baseball hat, and a small green or tan backpack. Michael was wearing a black jacket, a black stocking hat, and a larger green or tan backpack. The Popes decided not to go into President's Park because the flagpoles they were carrying would not be allowed. Instead, they listened to President Trump's speech from near the Washington Monument.

The Popes entered the Capitol through the Senate Carriage Doors, at approximately 2:18:08 p.m. Just prior to their entry, police were ushering rioters out of the Senate Carriage Doors. Although the doors remained open, police had the entry largely under control. A crowd began to grow just outside the doors, putting additional pressure on the officers. William was near the front of this crowd. He used his body to push his way into the building, maneuvering past a police officer

who was attempting to block the entryway. Michael also entered the Capitol, immediately behind William. After the Popes entered, police managed to close one of the two doors. A scuffle broke out between police and rioters, just as William repositioned himself to be in the doorway. An officer reached past William to deploy pepper spray at the crowd. William wedged the flagpole he was carrying into the door jamb to keep it from closing at approximately 2:18:43 p.m. Officers were able to close the other door, but not the one William was holding open. Officers were able to remove the flagpole approximately thirty seconds later, at 2:19:24 p.m. Multiple officers were required to physically remove William from blocking the door. After pulling William away, officers closed and locked the Senate Carriage Doors. William then continued into the Capitol building behind his brother.

While William was holding the door open, Michael was inside the Capitol. Michael entered a Senate elevator at approximately 2:19:30 p.m. Officers directed Michael to leave the elevator, but he refused. Michael tensed up his body and stood still, requiring three officers to pull him from the elevator, at approximately 2:19:48 p.m. Following these encounters with law enforcement officers, the Popes continued roaming through the Capitol. The Popes left the Capitol at approximately 2:37:56 p.m., after being inside the building for about 20 minutes.

## ARGUMENT

The cases against the defendants are properly joined. In cases with multiple defendants and multiple offenses, the "weight of authority in this circuit and elsewhere regards Rule 8(b) as providing the sole standard for determining the permissibility of joinder of offenses." *United States v. Wilson*, 26 F.3d 142, 153 n. 4 (D.C. Cir. 1994) (citations omitted); *see also United States v. Brown*, 16 F.3d 423, 427 (D.C. Cir. 1994). Rule 8(b) provides:

> JOINDER OF DEFENDANTS. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or *in the same series of acts* or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. Crim. P. 8(b) (emphasis added). "Rule 8 not only may shield a party from prejudicial joinder but also serves to protect a variety of other interests served by joint trials including the interests in 'conserv[ing] state funds, diminish[ing] inconvenience to witnesses and public authorities, and avoid[ing] delays in bringing those accused of crime to trial.'" *Brown*, 16 F.3d at 428 (internal citations omitted). "There is a preference in the federal system for joint trials." *United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019). This Circuit construes Rule 8(b) broadly in favor of joinder. *See United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991); *United States v. Jackson*, 562 F.2d 789, 796-97 (D.C. Cir. 1977) (Rule 8 is "interpreted broadly in favor of initial joinder"). Thus, it is "difficult to prevail on a claim that there has been a misjoinder under Rule 8(b)." *Nicely*, 922 F.2d at 853.

The propriety of joinder "is determined as a legal matter by evaluating only the 'indictment [and] any *other pretrial evidence offered by the Government*.'" *United States v. Carson*, 455 F.3d 336, 372 (D.C. Cir. 2006) (emphasis added; internal citations omitted). Joinder under Rule 8(b) "is appropriate if there is a 'logical relationship between the acts or transactions' so that a joint trial produces a 'benefit to the courts.'" *United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1996) (quoting *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984)).

Defendants who are properly joined under Rule 8 "may seek severance under Rule 14, which provides that '[i]f the joinder of offenses or defendants . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.'" *United States v. Wilson*, 605 F.3d 985, 1015 (D.C. Cir. 2010) (quoting Fed. R. Crim. P. 14(a)). Rule 14 "does not require severance even if prejudice

is shown," and district courts "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993). Indeed, district courts retain "significant flexibility to determine how to remedy a potential risk of prejudice, including ordering lesser forms of relief such as limiting jury instructions." *Bikundi*, 926 F.3d at 780 (citing *United States v. Moore*, 651 F.3d 30, 95 (D.C. Cir. 2011)); *see United States v. Butler*, 822 F.2d 1191, 1194 (D.C. Cir. 1987) (acknowledging trial judges are given great latitude to balance interests, including to preserve judicial and prosecutorial resources, and denying defendant's motion to sever).

Once multiple defendants are properly joined in the same indictment under Rule 8(b), courts should only grant severance under Rule 14 "sparingly because of the 'strong interests favoring joint trials, particularly the desire to conserve the time of courts, prosecutors, witnesses, and jurors.'" *United States v. Celis*, 608 F.3d 818, 844 (D.C. Cir. 2010) (citation omitted). The relevant portion of Rule 14 reads as follows:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a). Although "the standard of 'appears to prejudice a defendant' set out in Rule 14(a) for consideration of severance, does not, on its face, provide an onerous test, the discretion afforded to district courts must be exercised with appreciation of the policy reasons favoring joinder." *United States v. Bikundi*, 14-cr-30 (BAH), 2016 WL 912169, at *42 (D.D.C. Mar. 7, 2016). In fact, the D.C. Circuit has instructed that for severance to be proper "[t]here must be a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v.*

*Bostick*, 791 F.3d 127, 152-53 (D.C. Cir. 2015) (citation and punctuation omitted); *see also United States v. Glover*, 681 F.3d 411, 417 (D.C. Cir. 2012) (affirming district court's denial of defense motion to sever trial citing same standard). Accordingly, severance is not required simply because a defendant might have a better chance of acquittal if tried separately. *See United States v. Halliman*, 923 F.2d 873, 884 (D.C. Cir. 1991). Salient factors the Court should consider, and which militate against severance, include whether separate trials would involve (1) the presentation of the same evidence; (2) testimony from the same witnesses; and (3) the same illegal conduct. *See United States v. Manner*, 887 F.2d 317 (D.C. Cir. 1989).

### I. Joinder is appropriate because the defendants participated in the same "series of acts" and the evidence against them is largely the same.

The defendants were properly joined because the Pope brothers not only participated in the attack on the U.S. Capitol but they also participated in the same "series of acts" when they traveled together to Washington D.C., onto the restricted Capitol grounds, into and through the Capitol building, and finally off Capitol grounds. Contrary to Michael Pope's claims, the evidence shows that the defendants acted in unison when, beyond their coordinated movements, they entered the Capitol together and remained together throughout their time in the Capitol. The government thus anticipates that the majority of witnesses and evidence that it will present will be largely the same for both defendants. The "'strong interests favoring joint trials, particularly the desire to conserve the time of courts, prosecutors, witnesses, and jurors,'" *Celis*, 608 F.3d at 844, thus apply to this case.

That the defendants are not charged with conspiracy is of no importance. *See United States v. Gbemisola*, 225 F.3d 753, 760 (D.C. Cir. 2000); *United States v. Rittweger*, 524 F.3d 171, 177-78 (2d Cir. 2008). What matters is that the defendants' actions throughout their journey leading up to and including January 6 amounted to their "participat[ion] in the … same series of actions …,

constituting an offense or offenses." Rule 8(b). The overlap in the charged conduct triggers "the presumption and common practice [that] favor trying together defendants who are charged with crimes arising out of a common core of facts." *United States v. De La Paz-Rentas*, 613 F.3d 18, 23 (1st Cir. 2010). Additionally, each defendant is charged with furthering a civil disorder, which "like a conspiracy, requires multiple people." *United States v. Patrick McCaughey et al.*, No. 1:21-CR-00040 (TNM), 2022 WL 1604655, at *2 (D.D.C. May 20, 2022). Thus, the defendants traveled and worked together, and it is appropriate for them to be tried together. These defendants—who are brothers—coordinated their travel to Washington D.C. and throughout Capitol grounds together and worked together at the same time and place to interfere with officers trying to stop rioters from entering the Capitol so that the Certification could resume. *See e.g.*, *McCaughey*, 2022 WL 1604655, at *2 (denying motion to sever in a January 6 case and finding that a "clear logical relationship" existed between the defendants' acts when "defendants allegedly battled police officers in the same location and at the same time.").

The efficiency interest for the Court and witnesses and the interest in speedy trials are significant in this case. There is substantial overlapping evidence, namely: (1) the footage of the defendants' crimes from CCTV, body-worn camera, and third parties; (2) communications and photos concerning the Pope's trip to Washington for the rally; and (3) testimony from common "overview" witnesses including witnesses from the U.S. Capitol Police and U.S. Secret Service. That Michael Pope now indicates that he wishes to proceed with a bench trial does not undermine the "preference in the federal system for joint trials." *Bikundi* at 780 (D.C. Cir. 2019). The defendant does not have a right to a bench trial without the consent of the government. Fed. R. Crim. P. 23(a).

Contrary to defendant Michael Pope's motion, judicial economy is not served by conducting two trials, before the same judge and prosecuted by the same attorney, with identical or near-identical witness and exhibit lists. Moreover, as the defendant concedes in his own motion, "this Court is not *required* to give Michael Pope a separate trial from his *pro se* co-defendant." ECF No. 122. The mere fact that a co-defendant wishes to proceed *pro se* does not warrant severance, and the defendant's motion does not allege any specific facts that would distinguish this case from the holding in *Veteto*. 710 F.2d 136 (11th Cir. 1983). For these reasons, the defendant's motion should be denied as the defendant has not made a sufficient showing to support his request for joinder.

## II. Denial of Pope's severance motion will not result in a violation of his Sixth Amendment right to a speedy trial.

Pope contends that severance is necessary to preserve his Sixth Amendment right to a speedy trial. (ECF No. 122 at 4). This argument is without merit because there has been no violation of Pope's speedy trial right under the Speedy Trial Act, much less his speedy trial right under the Sixth Amendment. Thus, Pope cannot claim that a joint trial will compromise his right to a speedy trial.

While the absence of a Speedy Trial Act violation "does not *ipso facto* defeat a Sixth Amendment speedy trial claim," it is an "unusual case in which the [Speedy Trial] Act is followed but the Constitution violated." *United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014) (internal quotation marks omitted). In assessing whether a defendant's Sixth Amendment right to a speedy trial has been violated, the Court must consider four factors: "'[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *Id.* (alteration in original) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

Under the first factor, which "is to some extent a triggering mechanism," *Barker*, 407 U.S. at 530, a defendant must make a threshold showing that the delay between the accusation and the trial was presumptively prejudicial, as "by definition, [a defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness," *Doggett v. United States*, 505 U.S. 647, 652 (1992). Without such a showing of presumptive prejudice, there is "no necessity for inquiry into the other factors." *Barker*, 407 U.S. at 530.

Whether a delay is presumptively prejudicial depends upon the "peculiar circumstances of the case," and therefore requires judicial findings. *Barker*, 407 U.S. at 530-31; *see also United States v. Marshall*, 669 F.3d 288, 295-96 (D.C. Cir. 2011) (requiring the district court to make factual findings regarding defendant's allegation that the government did not overcome the presumption of prejudice for delays over one year).

The defendant cannot show, and this Court should not find, that the government is not "prosecut[ing] his case with customary promptness," *see Doggett*, 505 U.S. at 652, given the government's diligent efforts to address unprecedentedly complex discovery issues.[1] Even in cases involving detained defendants with substantially longer periods of pre-trial delay, the D.C. Circuit has found no violation of the Sixth Amendment speedy trial guarantee. *See, e.g.*, *Rice*, 746 F.3d at 1082 ("[A]lthough Rice suffered lengthy [twenty-six month] 'pretrial incarceration' and 'anxiety and concern,' he does not even attempt to argue that he suffered 'the most serious' form

---

[1] Even assuming, *arguendo*, that the length of the delay gives rise to a "presumption of prejudice," the presumption is rebuttable, and the threshold requirement—the length of the delay—is only "one factor among several." *Doggett*, 505 U.S. at 652. As explained below, defendant has not attempted to show the kind of actual prejudice that would establish a Sixth Amendment violation.

of prejudice: the impairment of his defense." (quoting *Barker*, 407 U.S. at 532)); *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 203 (D.C. Cir. 2013) (three-and-one half years of pretrial delay did not violate the Sixth Amendment). In *United States v. Taylor*, No. 18-198 (JEB), 2020 WL 7264070 (D.D.C. Dec. 10, 2020), Judge Boasberg denied a defendant's motion to dismiss for a speedy trial violation, finding that his Sixth Amendment right had not been infringed notwithstanding the fact that the defendant had at that point been detained pending trial for 28 months.[2]

The second and third *Barker* factors—the reason for the delay and the defendant's assertion of his right to a speedy trial—also cut against Pope. The Court has tolled time eight times under the Speedy Trial Act (Min. Order, May 4, 2021; August 19, 2021; October 15, 2021; March 9, 2022; May 12, 2022; September 1, 2022; February 3, 2023; March 3, 2022.). Until filing of the instant motion to sever on June 12, 2023, the defendant had affirmatively waived time under the Speedy Trial Act.[3]

Finally, with respect to the fourth *Barker* factor, prejudice, defendant does not contend, much less demonstrate, that any delay has impeded his ability to prepare his defense, which is the primary "prejudice" that the speedy trial right seeks to avoid. *See Barker*, 407 U.S. at 532 (the "most serious" form of prejudice arising from delay is "the possibility that the defense will be impaired").

Because Pope "offers no explanation of how the delay impaired [his] defense," he "fails to show that [his] Sixth Amendment right to a speedy trial was violated." *United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019); *see also Mitchell v. United States*, 841 F. Supp. 2d 322, 330

---

[2] Here, the defendant is not, and has never been, detained.
[3] The defendant has continually waived time to facilitate plea negotiations with the government. These negotiations are ongoing as of the date of this filing.

(D.D.C. 2012) (no *Barker* prejudice where defendant did not allege "witness disappearance or death and the inability of a witness to recall events accurately due to the passage of time"). That is because "the defendant cannot merely allege possible prejudice, he must show that his defense was impaired such that he suffered actual and substantial prejudice as a result of the delay." *United States v. Koller*, 956 F.2d 1408, 1414 (7th Cir. 1992); *see also United States v. Omran*, 641 F. App'x 427, 429 (5th Cir. 2016) (per curiam) (unpublished) (defendant's "vague and conclusory assertions are insufficient to show the extreme prejudice or willfulness by the prosecution to delay his trial which would require an examination of the *Barker* factors").

"[A] defendant generally cannot establish a Sixth Amendment speedy trial claim, however long the delay, if the government pursued the prosecution with 'reasonable diligence,' and the defendant fails to show that the delay resulted in 'specific prejudice to his defense." *United States v. Parga-Rivas*, 689 F. Supp. 2d 25, 29 (D.D.C. 2009) (quoting *Doggett*, 505 U.S. at 656); *see also Barker*, 407 U.S. at 522 (rejecting a rigid rule because of the "unsatisfactorily severe remedy of dismissal of the indictment"). This Court should hold that no Sixth Amendment violation has occurred. Further, the Court should reject the defendant's prospective argument that severance is warranted by some risk of a potential future violation of his right to a speedy trial.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny Pope's motion to sever.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: /s/   Kelly E. Moran

KELLY E. MORAN
NY Bar No. 57764171
Assistant United States Attorney
U.S. Department of Justice
601 D Street NW
Washington, DC 20530
(202) 252-2407
Kelly.Moran@usdoj.gov