**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 21-cr-128 (RC)** |
| | **:** | |
| **WILLIAM POPE, and** | **:** | |
| **MICHAEL POPE,** | **:** | |
| | **:** | |
| Defendants. | | |

**GOVERNMENT'S OPPOSITION**
**TO DEFENDANT WILLIAM POPE'S MOTION TO COMPEL AND**
**CROSS-MOTION FOR MODIFICATION OF PROTECTIVE ORDER**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes pro se defendant William Pope's motion (ECF No. 127) to compel the government to supply him with a hard drive containing copies of all sensitive and undesignated discovery previously produced to defendant through the Relativity database administered by the Federal Public Defender ("FPD"). In making his request for additional access, defendant relies upon the terms of the standard protective order (ECF No. 26), which generally authorizes him to possess discovery materials that are designated sensitive or undesignated (*id*. at ¶ 5(a).[1]

To the government's knowledge, in practice, no other defendant (pro se or through counsel) has been given physical custody of all such materials. The defendant's unprecedented request should be denied. The materials he seeks to possess are largely immaterial to his case. He already has reasonable access to all relevant materials in the database through standby counsel. He was warned repeatedly that proceeding pro se would not serve as a justification for gaining direct access

---

[1] There are no undesignated materials in the Relativity database, so the defendant's request is in effect a request to obtain physical custody of all sensitive materials in the database.

to the complete contents of the database, and his current motion is simply an attempt to end-run that limitation. To the extent the government has previously agreed to accommodate the defendant's request by providing the requested materials via hard drive, the government now recognizes it was mistaken.  Granting the defendant any further access will result in consequences that include subjecting enormous amounts of information to untraceable misuse or abuse. Moreover, the domino effect that could result from granting the defendant's request would effectively collapse the carefully constructed system of discovery that has worked in over 1,000 cases, including those of more than a dozen pro se defendants.  Finally, as set forth below, there are valid reasons to be suspicious of the defendant's relentless pursuit of personal custody of such a wide swath of materials.

As written, paragraph 5 of the protective order entitles the defendant to maintain custody and control of sensitive materials.  The protective order, however, grants no substantive rights to discovery (*id.* at ¶ 14). Further, it is subject to modification at any time (Id. at ¶ 9). Accordingly, to ensure the defendant's right of access is reasonably balanced against the need to protect the contents of the database and to prevent the complete dismantling of the current system of discovery, the government hereby requests the Court modify the protective order (a) to limit the defendant's right to maintain physical custody of discovery materials to those already provided to him in case-specific discovery and those hereinafter reasonably requested; and (b) to require him upon disposition of his case to return to his standby counsel or the government any and all discovery materials not otherwise exempt from protection. *See id.* at ¶ 11.

## RELEVANT PROCEDURAL BACKGROUND

Defendant William Pope (along with his brother, Michael Pope), has been charged with various crimes relating to the attack on the U.S. Capitol on January 6, 2021. *See* Indictment (ECF

No. 8).  On May 5, 2021, this Court entered a protective order governing discovery (ECF No. 26). On June 29, 2022, the defendant's appointed counsel filed a motion to withdraw (ECF No. 57), attaching a letter from the defendant requesting to exercise his constitutional right to represent himself. Among defendant's stated reasons for proceeding pro se was his purported need for greater access to global discovery.  In response, the government took no position on defendant's decision to proceed pro se, but made clear that the government would oppose any requests for direct unfettered access to the two discovery platforms—*i.e.*, evidence.com and Relativity ("the FPD Relativity Database"). *See* ECF No. 71 at 2. During the *Farretta* colloquy on August 2, 2022, the Court repeated, for defendant's benefit, the government's position that, under the terms of the existing protective order, defendant would need stand-by counsel to facilitate his access to global discovery. Tr., Aug. 2, 2022, at 28.  With a full understanding of the government's position, defendant elected to proceed pro se, and on August 8, Nicole Cubbage entered an appearance as standby counsel.

On October 3, 2022, the defendant filed a motion seeking to modify the existing protective order concerning the "disclosure and retention of discovery deemed sensitive and highly sensitive in this matter; and respectfully request the government be compelled to fulfill their Brady obligations and provide me full access to that discovery through Relativity and evidence.com indexes that is equivalent to access granted officer of the court in other January 6 cases." *See* ECF No. 67 at 1. Couched as an equal protection argument, defendant claimed to be: "in a position where the government now forces me, as a Pro Se defendant, into a separate system for discovery from that which other officers of the court have access to. And not only do Pro Se defendants have separate discovery access from other officers of the court, but their access is not equal." *Id.* at 4. Defendant put forward two primary arguments: (1) that standby counsel's facilitation of discovery

impacts his ability to control the direction of his case; and (2) the existing protective order imposes on his Sixth Amendment right to present an effective defense by denying him meaningful access to discovery. These arguments were rejected in the Court's April 6, 2023 Order. ECF No. 103 2-3. The defendant appealed this Order; his appeal was dismissed on July 21, 2023. 23-3063 USA v. William Pope "Per Curiam Order Filed (Special Panel)" (1:21-cr-00128-RC-1).

While the defendant's appeal was pending, on April 13, 2023, standby counsel reiterated defendant's request for a "a hard drive with all the sensitive and lower-designated files." Tr., April 13, 2023 at 13.   The assigned prosecutor, feeling constrained by paragraph 5 of the protective order, agreed to explore that possibility:

> I will talk to our IT people and see. I have no objection to creating a physical manifestation of this discovery. I don't know the practicability given the size of it… I don't know if any defendant who has been given a – you know, for lack of a better term, token to access the Relativity database directly. But I agree that there should be some work-around for his access to sensitive information. Another alternative would be creating a credential for local counsel who could also help facilitate this, if local counsel were the avenue that the Court decides to take.

Tr., April 13, 2023 at 15.

In a phone call on April 27, 2023, *inter alia*, the assigned prosecutor suggested to the defendant and Ms. Cubbage that a physical copy of the discovery could be created in respect to sensitive and undesignated materials. The prosecutor also reminded the defendant that his local counsel could obtain access to the same materials by obtaining a Relativity license. The defendant asked instead that the government endeavor to create a physical copy of the discovery. Following that phone call, the parties filed a joint status update indicating that the government would "serve on the defendant a physical copy of those items contained in Global Discovery that are marked 'Sensitive,' and those items which have no security designations." ECF No. 104.

The assigned prosecutor then took a number of steps to attempt to provide the defendant with a hard drive of the materials in question. After consulting with the Discovery Unit of the Capitol Siege Section, on May 12, 2023, the assigned prosecutor represented to the Court:

> We have been working together . . . to ensure that Mr. Pope has access to his case specific discovery and to sensitive information. We have encountered some roadblocks, just technologically. So, on my end, I've been working with our discovery unit to figure out how we can provide Mr. Pope with information that has been designated as sensitive . . . . In the past we've never done this because we have provided – we have provided case specific-discovery and specifically requested sensitive, undesignated information in physical copy. . .  It would be very burdensome on everyone involved to – to put this into – a physical repository. . . . I'm going to focus, first, on getting case-specific and discovery items that Mr. Pope can articulate to me specifically he wants in hard copy. And I think, you know, in the interest of time and getting this information to him as quickly as possible, we can also reengage getting a Relativity token for standby counsel – not Ms. Cubbage, but standby counsel in Topeka.

Tr., May 12, 2023 at 6-8.

On June 12, 2023, Assistant United States Attorney Emily Miller appeared at a scheduled status hearing to update the Court on the government's ongoing efforts to support Pope's access to discovery. AUSA Miller did not object to the defendant's access to all sensitive and undesignated materials, but indicated that it is the responsibility of the Federal Public Defender's Office to facilitate this access because FPD controls Relativity tokens for all defendants' counsels. The defendant was directed to contact FPD to gain access to global discovery.

Following that hearing, AUSA Miller conferred with FPD about defendant's case.  FPD was unwilling to provide defendant with direct access to all Sensitive materials.

After FPD resisted the request to provide defendant with all materials designated sensitive, the assigned prosecutor and the Discovery Unit engaged in further discussions about how realistically to fulfill the government's prior representation that it would provide the materials via hard drive.  As a result of this additional discussion, for the reasons described throughout, the

government concluded it was neither appropriate nor feasible to do so.  On July 12, 2023, the assigned prosecutor informed the defendant that the government would not provide him with a hard drive containing all sensitive information in the Relativity database and that the government would respond to the defendant's forthcoming motion to compel.

On July 13, 2023, the defendant filed a motion to compel the government to fulfill its "promise" to provide defendant with a hard drive containing all sensitive global discovery.

## STATUS OF DISCOVERY

**Case-Specific Discovery.** The defendant has already been given custody of all discovery to which he is entitled to pursuant to Federal Rules of Criminal Procedure 16 and 26.2, Local Criminal Rule 5.1(a), the provisions of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), and the Jencks Act, 18 U.S.C. § 3500.  The government is aware of its on-going discovery obligations and will supplement these materials if and when required. To the extent the defendant makes further requests for materials to which he is entitled, the government will also continue to make those materials available to him, consistent with the terms of the existing protective order.

In the time defendant has proceeded pro se, the government has fielded an extraordinarily high volume of discovery requests from him, and the government has made a good faith effort to assist him when he has made reasonable requests—*e.g.*, checking with the FBI to see if a specific rioter has been identified, and serving all of defendant's case-specific discovery directly to him. The government regularly provides the defendant and his standby counsel with global discovery letters and indexes from which he can continue to identify other potentially relevant materials and request physical custody on an item-by-item basis. The government has previously, at the

defendant's request, downloaded large quantities of data from global discovery and served that information directly on defendant.

**Global Discovery.** The defendant also has been provided or offered reasonable accommodations for viewing materials located in defense discovery databases.  He can view over nine terabytes of video shared to him via Evidence.com.  He also has several options for viewing materials in the FPD Relativity Database, which include screensharing with standby counsel, Ms. Cubbage, or, as previously suggested by both the government and the Court, obtaining additional local counsel, who also would have access to the FPD Relativity Database. Defendant's chief argument is that these options are less convenient for him than having custody of a hard drive containing all sensitive materials provided in global discovery.

This Court previously agreed that local standby counsel was an appropriate remedy to allow defendant to access Highly Sensitive discovery; the defendant appealed this Court's order, and his appeal was dismissed on July 21, 2023. *Pope*, Case No. 23-3063, Document No. 2008895. The government now requests that the Court extend the reasoning in its prior order to Sensitive materials located in global discovery.

## ARGUMENT

There are numerous reasons the defendant's request for physical custody of all sensitive materials in the FPD Relativity database ought to be denied, including the following:

First, all materials defendant is entitled to receive have been provided in case-specific discovery, and where the defendant has made reasonable requests for additional information, the government has complied with those requests.  The government will continue to do so.

Second, defendant has reasonable access to <u>all</u> of the contents of the FPD Relativity database – whether or not he is entitled to them – through not one but two standby counsels.

Defendant's access to discovery is equal to or greater than that enjoyed by every defendant, pro se or represented, in more than 1,000 cases that have been charged to date.

Third, the materials are vast and require protection from misuse or dissemination for purposes unrelated to the defense of the defendant's case. The materials include, for example, reports of investigation into certain members of law enforcement who were alleged to be complicit in the riot; more than 180,000 tips the government received after January 6th, memoranda of interviews with officers who were victims of assaults; reports identifying by name the officers who used force on the date of the riot; extensive radio communications from multiple police departments; case materials relevant to hundreds of other subjects—including uncharged individuals; personally identifiable information (PII) for defendants, witnesses and victims; and attorney work product provided to assist the defense in understanding the voluminous evidence in these cases. In determining whether good cause for a protective order exists, "courts have considered whether: (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and (3) the public's interest in disclosure outweighs the possible harm." *United States v. Dixon*, 355 F. Supp. 3d at 4 (D.D.C. 2019) (citing Fed. R. Crim. P. 16(a)(1)(A)–(G)); *see also United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) ("[A]mong the considerations to be taken into account by the court will be *the safety of witnesses and others*, a particular danger of perjury or witness intimidation, and the protection of information vital to national security.") (emphasis added). "[O]nce a showing of good cause has been made, the court has relatively unconstrained discretion to fashion an appropriate protective order." *United States v. Johnson*, 314 F. Supp. 3d 248, 251 (D.D.C. 2018).

Fourth, the defendant is not an officer of the Court, and his motivations for possessing the materials *en masse* are suspect given their general lack of relevance to his specific case and his

proclivity for public attention.[2]   Defendant maintains an active social media presence and his posts have encouraged sharing January 6 video footage. See ECF 60-1. This Court has similarly voiced concerns regarding the defendant's desire to share criminal discovery from his and other January 6th Cases with the media:

> Defendant has separately moved to remove the Sensitive designation from certain footage in order to share exhibits with news organizations, based on his belief that "the media and the public should not have to rely on [his] descriptions [of this footage] alone" and the "public interest and concern regarding these exhibits is understandably high." Def.'s Mot. Remove Sensitive Designations at 1–2, 4, ECF No. 82; see also Def.'s Update Disc. Access Issues at 4 ("My motion seeks to unseal [certain footage] to allow the American people to see exactly what happened."). At the same time, Defendant acknowledges that he does not understand and feels no obligation to protect, beyond following the protective order, the Court's interest in preventing pretrial publicity that could prejudice the parties, witnesses, or third parties involved in this case or any of the many other January 6 cases. See Def.'s Resp. Gov't Mem. ("Def.'s Suppl. Mem.") at 7, ECF No. 95 ("First off, I do not know if [an ethical code on pretrial publicity] exist[s], as the government tends to make things up. . . . I am not an attorney and have no intention to become one, and I do not know what the ethical standards of the lawyering trade are." (footnotes omitted)). This bolsters the Court's finding of good cause to prevent Defendant from obtaining unfettered access to footage designated Highly Sensitive. See *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979) (explaining that "a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity" and accordingly "may surely take protective measures even when they are not strictly and inescapably necessary"); *United States v. Cudd*, 534 F. Supp. 3d 48, 56 (D.D.C. 2021) (rejecting January 6 defendant's "concern . . . about the limitations on her ability to try this case in the court of public opinion pretrial through dissemination of selected evidence" under a similar protective order on grounds that "[t]he Court's priority is to ensure fair criminal trials to the Government, [the defendant], and other defendants related to the January 6 incident, not cater to parties' interests in selective disclosures to the media" and "pretrial publicity of discovery in this case may injure other defendants, witnesses, and third parties whose personal information was collected in the Government's investigation").

Order Denying Defendant's Motion to Modify Protective Order. ECF No. 103 at 7.

Fifth, once this Court's jurisdiction comes to an end, it will be unable to limit defendant's use or dissemination of the materials in question.   It is not difficult to imagine the potential

---

[2] For example, the defendant recently requested "all tips sent to the FBI" and a list of all law enforcement personnel at the Capitol on January 6th.  The government has received more than 180,000 tips, none of which have any relevance to defendant's case.

consequences that could result from the dissemination *en masse* of the materials requested. Given defendant's proclivity for releasing materials through whatever loopholes exist, his desire to try his case in the press, his relentless pursuit of custody of materials that have no apparent relevance to a valid defense, and the potential danger to third parties that could result from a broad release of such materials, it is extremely important for this Court to take additional steps to protect the information.  See *United States v. Edward Kelley*, 22-cr-00408 (January 6th defendant charged with conspiracy, retaliating against a federal official, interstate communication of a threat, and solicitation to commit a crime of violence following a plot to murder 37 people who had participated in the January 6th investigation into Mr. Kelley, including law enforcement officers who were present at the arrest of Mr. Kelley for his January 6th-related charges). *See also United States v. Concord Mgmt. & Consulting*, 404 F. Supp. 3d 67, 73 (D.D.C. 2019) ("It is well established that protective orders are appropriate where the disclosure of discovery could jeopardize the national security of the United States . . . .").

Sixth, providing the requested materials in hard drive format presents an onerous on-going burden on the government, which already made the materials available via a database to which defendant, and all similarly situated defendants, has access through standby counsel.  As of June 19, 2023, over 5.83 million files (over 8.27 terabytes of information) have been provided to the FPD Relativity database. A substantial amount of this information is designated sensitive. Production of all existing sensitive materials in Relativity via hard drive would involve almost a million files and an encrypted hard drive capable of storing more than 1.2 terabytes of data. Moreover, materials are uploaded to the FPD Relativity Database on a regular basis.  A precedent requiring the government (or for that matter FPD) to make the materials available on hard drive would require weekly updates that are both unjustified and onerous.

Seventh, providing the requested materials in hard drive format increases the chances that the defendant will view and possess materials that were mistakenly provided. On previous occasions where errors have been discovered – e.g., documents that are insufficiently redacted – the government has clawed back items from the FPD database and send a replacement document that is fully accessible to the January 6 defense bar.  But if this defendant is regularly permitted to obtain custody of all sensitive materials in the database, this process will be far more onerous, if not impossible to execute.

Eighth, if this Court were to set a precedent that allowed defendant access to materials outside of the established databases (Relativity and Evidence.com) it would trigger an avalanche of similarly-situated defendants and their counsel who would seek equal access.[3]  The burden of producing discovery to hundreds of defendants outside of the existing channels would disrupt the entire process.  As several judges have noted, the current system has been remarkably successful at providing defendants access to discovery in hundreds of cases, including more than a dozen pro se defendants. *See, e.g., United States v. Clark*, No. 22-cr-409 (Feb. 8, 2023 Minute Order) (denying pro se January 6 defendant "unrestricted access to the online discovery databases"); *United States v. White*, No. 21-cr-563 (Oct. 17, 2022) (Order at 3-4) (appointing standby counsel to facilitate pro se January 6 defendant's access to discovery consistent with the protective order). If this Court were to entertain defendant's request for a customized production of materials, the entire system would likely collapse. Protective orders are used "not only to resolve individual discovery disputes, but also to expedite the flow of discovery in cases involving a large amount of sensitive information." *United States v. Johnson*, 314 F. Supp. 3d 248, 251 (D.D.C. 2018).

---

[3] The government has received numerous requests from attorneys representing rioters for hard drives containing the entire contents  of Relativity.  If the Court were to grant defendant's motion, the government would be compelled to produce hard drives for every defendant or defense attorney who made a similar request.

Finally, there is no prejudice to the defendant from requiring him to initially review all materials in the Relativity database – other than those deemed specifically relevant to his case – with his standby counsel, either at counsel's office or virtually.

Defendant has alleged that standby counsel imposes upon him a "barrier, filter, or undue burden" keeping him from the discovery that he says he needs. ECF 67 at 7. The opposite is true— standby counsel was appointed to facilitate his access to material that he would otherwise not be allowed to access because of the sensitive nature of much of the content. ECF No. 71 at 2. The defendant was warned that going pro se would not be an avenue to database access. ECF No. 52. Defendant had a full understanding of the government's position when he decided to proceed pro se.

Defendant contends that the existing discovery system hampers his ability to develop an adequate defense, but this claim is unsubstantiated. Courts regularly find that the requirement to have a defendant review protected discovery in the presence of counsel is proper and consistent with the Constitution. *See e.g.*, *United States v. Workman*, No. 18-CR-00020, 2019 WL 276843 (W.D. Va. Jan. 22, 2019) (upholding protective order issued by magistrate judge permitting defendant to access certain sensitive materials only in the presence of counsel); *United States v. Johnson*, 191 F.Supp.3d 363, 373 (M.D. Pa. 2016) ("requiring the Defendants to review the protected documents in the presence of counsel in no way impairs the effectiveness of their proffered defenses"); *United States v. Moore*, 322 Fed. Appx. 78, 83 (2d Cir. 2009) (affirming district court decision entering protective order allowing defendant to view certain discovery materials only in the presence of defense counsel). Defendant states that the protective order is limiting his ability to create work product and witness files (ECF No. 67 at 8), but it is not clear how the protective order is preventing him from creating these materials, and any prejudice he is

encountering simply does not outweigh the need to protect the material and uphold the overall system of discovery as described above.

Many of the discovery challenges defendant complains of appear to be of his own creation because of his pursuit of a defense that is based on unsupportable, immaterial, and highly speculative conspiracy theories. The government has provided defendant with the discovery he is entitled to and more – even when it has not been clear how such information would be discoverable. ECF No. 80 at 5 (citing *United States v. Marshall*, 132 F.3d 63, 69 (D.C. Cir. 1998) ("To give rise to a disclosure obligation, the evidence's materiality must, of course, be evident to a reasonable prosecutor.")); *United States v. Slough*, 22 F. Supp. 3d 1, 5 (D.D.C. 2014) (requested evidence must bear "more than some abstract logistical relationship to the issues in the case"); *United States v. Williamson*, No. CR 14-151 (RMC), 2014 WL 12695538, at *2 (D.D.C. Oct. 23, 2014) (Rule 16 cannot be used to engage in a "fishing expedition."); *cf United States v. George,* 786 F. Supp. 11, 15 (D.D.C. 1991) ("At least one of the rationales behind the materiality requirement (and limiting discovery by criminal defendants generally) is to insure that the government not expend excessive time and effort securing documents for the defendant")).

Indeed, it might be more convenient for defendant to have direct access to global discovery, but a defendant's convenience is not the applicable standard where the government has made a showing of good cause for a protective order. The relevant question is whether the limitations imposed on defendant are reasonable in light of the government's security concerns. *See, e.g.*, *United States v. Bisong*, 645 F.3d 384, 396-97 (D.C. Cir. 2011) (pro se defendant's contention that the district court denied him an opportunity to review discovery and prepare his pro se defense failed where district court ensured standby counsel had access to the discovery materials and was getting defendant the records he requested prior to trial); *United States v. Galloway*, 749 F.3d 238,

242 (4th Cir. 2014) (requirement that pro se defendant review discovery in the courthouse's lockup area and restriction on bringing discovery materials back to the detention center where he was being held did not deprive defendant of meaningful access to discovery); *United States v. Sarno*, 73 F.3d 1470, 1492 (9th Cir.1995) (no constitutional violation where government allowed defendant to review discovery to determine which documents should be copied for his pretrial preparation—but gave him only 20 hours to inspect 250,000 pages of material). Here, defendant complains that he is not personally able to utilize various tools in Relativity (ECF No. 67 at 8), but a defendant's constitutional right of access to the courts does not include a constitutional right to unfettered access to the eDiscovery platform of their choice. *See, e.g.*, *United States v. Cecrle*, No. 2:12-CR-400-JAD-GWF, 2014 WL 31674, at *6 (D. Nev. Jan. 3, 2014) (constitutional right of access to the courts does not require that access to materials be provided in any particular way).

## <u>GOVERNMENT'S MOTION TO MODIFY PROTECTIVE ORDER</u>

The terms of the Protective Order permit either party to seek modification. ECF No. 26 at 9. For the same reasons the government opposes defendant's motion to compel, the government also moves to modify the Protective Order as follows:

 a. Defendant may not use, reproduce, or disseminate any materials produced in this case, whether "Sensitive," "Highly Sensitive," or undesignated, for any purpose other than the preparation of his defense;

 b. Upon a verdict being reached, defendant shall return all discovery materials produced in this case, whether "Sensitive," "Highly Sensitive," or undesignated, to standby counsel or to the government and shall certify that he has not retained any copies of any discovery materials. In the event of an appeal, the defendant shall be permitted to

retain custody of discovery materials produced through the pendency of the appeal process.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion to compel should be denied, and the government's motion to modify the protective order ought to be granted.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052

By:   */s/ Kelly E. Moran*
KELLY E. MORAN
Assistant United States Attorney
NY Bar No. 5776471
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-740-4690
kelly.moran@usdoj.gov