**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

United States of America,    ) Criminal Action
                             ) No. 1:21-cr-00128-RC-1
                 Plaintiff,  )
                             )
vs.                          ) **Motion Hearing** (via Zoom)
                             )
William Pope,                ) Washington, D.C.
                             ) **December 2, 2022**
                 Defendant.  ) Time:  10:00 a.m.
_____

**Transcript of Motion Hearing** (via Zoom)
**Held Before**
**The Honorable Rudolph Contreras** (via Zoom)
**United States District Judge**
_____

A P P E A R A N C E S

For the Government:    **Jason M. Crawford**
(via Zoom)             UNITED STATES ATTORNEY'S OFFICE
                       FOR THE DISTRICT OF COLUMBIA
                       601 D Street, Northwest
                       Washington, D.C. 20579

Defendant:             **William Pope,** pro se
(via Zoom)

For the Defendant as Standby Counsel:
(via Zoom)             **Nicole A. Cubbage**
                       LAW OFFICE OF NICOLE CUBBAGE
                       712 H Street, Northeast, Unit 570
                       Washington, D.C. 20002
_____

Stenographic Official Court Reporter:
(via Zoom)             Nancy J. Meyer
                       Registered Diplomate Reporter
                       Certified Realtime Reporter
                       333 Constitution Avenue, Northwest
                       Washington, D.C. 20001
                       202-354-3118

Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.

1                    P R O C E E D I N G S

2              (REPORTER'S NOTE:  This hearing was held during the
COVID-19 pandemic restrictions and is subject to the
3    limitations of technology associated with the use of
technology, including but not limited to telephone and video
4    signal interference, static, signal interruptions, and other
restrictions and limitations associated with remote court
5    reporting via telephone, speakerphone, and/or
videoconferencing.)

6

7              THE COURTROOM DEPUTY:  Judge, this is Criminal Action

8    21-128, United States of America v. William Pope.

9              For the United States, I have Jason Crawford.

10   William Pope is appearing pro se, with standby counsel

11   Nicole Cubbage.  Our court reporter today is Nancy Meyer.

12             All parties are present.

13             THE COURT:  Good morning, everybody.

14             So, Mr. Pope, I assume that under the CARES Act, you're

15   willing to appear today by video rather than waiting until it

16   can be safely done in person; is that right?

17             DEFENDANT WILLIAM POPE:  Yes, Your Honor.

18             THE COURT:  Okay.  All right.  The one thing I had

19   before me is the motion to modify the protective order so that

20   Mr. Pope gets full and unfettered access to the discovery and

21   be placed in the same spot as if he were defense counsel.

22             Is there anything else that we need to deal with today?

23             MR. CRAWFORD:  Not from the government.

24             DEFENDANT WILLIAM POPE:  No, Your Honor.  That's

25   really the one thing I need to take care of before I can move

1    on to other things.

2           THE COURT:  All right.  Do -- Mr. Pope, do you want

3    to make argument on your motion, or do you want to submit on

4    the papers?

5           DEFENDANT WILLIAM POPE:  Your Honor, I believe I made

6    a good argument in the motion and in my response to the

7    government.

8           Essentially, I'm representing myself.  I'm exercising my

9    Sixth Amendment right to do that, to confront my accusers in

10   court.  And to do that, I need access to my discovery.  And I

11   have Fifth Amendment due process rights that should give me

12   that access to the discovery, but the government is trying to

13   prevent me from having full and direct access, which I need, to

14   analyze the evidence and prepare my defense.

15          I've laid out this in my motion.  The -- the discovery

16   is not too complex for me to evaluate.  The government has not

17   demonstrated that I am a threat if I have access to that.  In

18   fact, right now they allow me to have viewing access to all of

19   the highly sensitive files.  So there's no reason that I can't

20   possess them.  I've -- the government has acknowledged in our

21   September call that I was entirely peaceful on January 6th.

22   I'm not a threat, and I need access to the discovery in order

23   to prepare work product, to organize files relevant to my

24   defense, and to move forward with this case.

25          I did present an exhibit to the Court in my response to

1    the government's opposition.  It was a video showing an

2    undercover Metropolitan Police officer joining the crowd in

3    chants, urging the crowd to move forward up the stairs and

4    scaffolding on the Capitol.  And I would not have been able to

5    present that exhibit to the Court had that video been

6    classified as highly sensitive because, currently, the

7    protective order prevents me from having direct access to

8    highly sensitive files.

9        So that protective order is currently preventing me from

10   confronting my accusers in court, if I need to in the future

11   use highly sensitive video to confront a false statement made

12   by the government in any --

13            THE COURT REPORTER:  Judge, I'm frozen right now.

14            (REPORTER'S NOTE:  Loss of internet connection.)

15            THE COURT:  All right.  Are you back?

16            THE COURT REPORTER:  What I last heard was "So that

17   protective order is currently preventing me from confronting my

18   accusers in court, if I need to in the future use highly

19   sensitive video to confront a false statement made by the

20   government in any" --

21            DEFENDANT WILLIAM POPE:  I probably trailed off when

22   you lost contact there.

23        Essentially, the government -- I asked the government

24   whether there were any government employees or people working

25   on behalf of the government who were urging people to move

1    forward on the Capitol.  And Mr. Crawford told me that no one

2    working for any federal, state, or local agency had done that,

3    that he was aware of.  And I needed to use this video to show

4    that, actually, there were people that were working on active

5    duty that day who were encouraging people to move forward up

6    the stairs and up the scaffolding, to refute the statement the

7    government made.  And had that been highly sensitive video, I

8    wouldn't have been able to do that.

9         Also, you know, because they made that statement in a

10   response to my motion, I only have a seven-day window in order

11   to respond to that, a week window.  And I think it fell on a

12   Monday because they turned it in on the weekend.

13        But the government, if they had their wishes, I won't be

14   able to -- they're willing to allow me to file a motion to

15   request access to, you know, one or two highly sensitive files,

16   if I need them in the future.  But I would have to file that

17   motion within that seven-day window and get a response from the

18   Court if I were able to -- be able to return an exhibit to

19   their response within that period of time.  And it's just not

20   practical to do that.  So this interferes with my ability to

21   confront my accusers and to have the due process that I need to

22   defend myself in court.

23        I've laid many other arguments forward, how this

24   places an undue burden.  When my standby counsel -- we did

25   test one time where she logged into the Relativity system

1   and tried to play video for me over the Zoom that we were

2   using.  So she was playing it from the internet.  It had to

3   download to her computer and then be transmitted back over

4   Zoom to my computer, and the -- the image lagged on the

5   screen.  So I'd only see one frame every few seconds, which

6   completely prevents me from analyzing the evidence.  I can't

7   evaluate the evidence if I can't actually see it in that

8   fashion.

9        And the only way to do that would be to have her

10  download everything, all 3.8 million files, from the government

11  system and then transmit them to me, which right now she can't

12  even do that because of the -- I'm prohibited from accessing

13  the highly sensitive video.

14       But, essentially, the government has not demonstrated

15  that I'm a threat.  They allow me to view this video.  So how

16  is it more of a threat for me to actually have access to it to

17  create work product and to prepare my defense?  And I've laid

18  that out in my motion.

19       *Faretta* makes it clear that the government cannot

20  interpose counsel between me and my ability to -- or present my

21  defense, and they would be doing that by preventing me from

22  having access to the discovery from conducting research and

23  preparing my case.

24       The *McKaskie* ruling said that I have to be able to

25  present my own case in my own way, and as a Ph.D. student, my

1    own way is to ask questions, to look at the evidence, and to

2    find answers from that.  And if I don't have direct access to

3    the actual relevant facts, you know, I'm being prevented from

4    managing my own case in my own way.

5         So I've asked the Court to modify the protective order

6    to allow me to have access to highly sensitive files and to

7    compel the government to give me full access to evidence.com

8    and the Relativity index.

9         Evidence.com, I currently have partial access.  I can

10   view -- I can view some videos, but my standby counsel, she has

11   to go and individually share each one, and I don't really know

12   what those videos are until she shares them with me.  So I have

13   access to a few of the videos in there.  I don't have access to

14   all of them currently.  I believe I should have access to the

15   full system and be able to download, if I need to, to prepare a

16   work product or court exhibit.

17        The Relativity index I have no access at all.  The

18   government is trying to prevent me from having that.  So,

19   essentially, I am only able to access less than -- far less

20   than 1 percent of the entire discovery in the January 6th

21   cases.  And this is a huge burden on me if I'm to prepare a

22   defense and to confront my accuser in court.

23        With that, I'll let the rest of my motion and response

24   speak.

25             THE COURT:  Sure.  And I know you're at somewhat of a

1    disadvantage not being a lawyer, but you rely primarily on the

2    broad principles set forth in *Faretta* and other cases.  The

3    government cites a number of more specific cases involving

4    discovery, in particular pro se cases.  You distinguish each of

5    them individually, but do you have any cases that apply the

6    broader principles of *Faretta* in the way that you're asking me

7    to do?

8            DEFENDANT WILLIAM POPE:  Well, Your Honor, there's

9    several cases that allow the Court to modify protective orders

10   or modify access to -- access to discovery.  For instance,

11   *U.S. v. Brown*, the Court can place reasonable limitations on

12   standby counsel on their actions.

13          Currently, what the government is asking is they want

14   this counsel to be interposed between me and my discovery, to

15   act like a filter.  And while Ms. Cubbage, she is a great

16   resource as far as knowledge of procedure that I may not have,

17   she can't replace me actually preparing my defense.

18          And she's got a lot of other cases she's working on.

19   She's been busy this entire week preparing for a trial she has

20   next week; so it's not like she can spend unlimited time with

21   me on Zoom to go through all the files in the government

22   system.

23          And unless I have an ability to actually go through and

24   see what is in the 3.8 million or however many files they have

25   now, I -- there's no way for me to adequately prepare a

1    defense.

2         You know, I have -- I believe -- you know, while the

3    government has presented other cases, as I put forth in my

4    motion, I do not believe those cases apply, and I think the

5    basic foundational principles of our -- our Constitution, of

6    our amendments, and of the precedent set forth by the

7    Supreme Court in *Faretta* and *McKaskie* are more than enough to

8    justify me having access to my discovery.  I have an absolute

9    right to the facts of my case and to be able to use those facts

10   to confront my accusers in court.

11        THE COURT:  Do you have a specific case in which

12   there's a pro se defendant and there's evidence that's

13   considered sensitive in some fashion that the government has

14   asked be limited in its -- in the pro se defendant's access and

15   that the court has applied *Faretta* in the way you're asking me

16   to?

17        Obviously, none of the other January 6th pro se

18   defendants have gotten that access, direct access, in the way

19   you're asking.  So I'm -- you know, you're asking me to be a

20   trailblazer in a sense, and I want to know if there's a

21   specific case.  I understand that you're at somewhat of a

22   disadvantage not being a lawyer, but if there's a specific case

23   that applies *Faretta* in the way you're asking me to.

24        DEFENDANT WILLIAM POPE:  Well, in a sense, I think

25   you may have to be a trailblazer, Your Honor.  I'm not aware of

1    every case that's ever been argued.  I also believe that a lot

2    of pro se defendants are, in a way, at a disadvantage.  You

3    know, maybe they -- they haven't studied *Faretta* and *McKaskie*

4    and everything that that would entitle them to, and maybe they

5    haven't made the arguments that I've made before.

6          So if I -- you know, I used to be a trail builder on the

7    Grand Canyon trail crews.  So if I have to build a trail, I'm

8    going to build it.  And I believe I have some good materials to

9    build it with.  I have the Fifth Amendment.  I have the Sixth

10   Amendment.  I have *Faretta* and I have *McKaskie*, and I think

11   I've built a pretty good trail with my motion.

12              THE COURT:  All right.

13          Mr. Crawford.

14              MR. CRAWFORD:  Thank you, Your Honor.

15          So I'd like to just make a few comments focused less on

16   the legal argument.  I think I would rest on the authorities we

17   cited.

18          As Your Honor alluded to, Mr. Pope's motion isn't really

19   grounded in analysis of Rule 16 and rests mostly on his

20   interpretation of what the framers intended.  We're asking the

21   Court to apply the standard of 16(d)(1), which requires a

22   balancing of interests.  As Mr. Pope has stated, he has a

23   Sixth Amendment right to present an effective defense, but that

24   needs to be balanced against the government's showing of -- of

25   good cause and its security concerns.

1      We think that the government has been very creative and

2   forward leaning in these investigations in trying to come up

3   with practical solutions for defendants like Mr. Pope.  We will

4   continue to try to find practical solutions.  It's clear to the

5   government that this defendant is not going to entertain those

6   type of solutions until it's clear to him from the Court that

7   he's not going to get unfettered access.

8      I'd like to -- since we're asking for the Court to

9   maintain the status quo and to direct Mr. Pope to work within

10   the current framework, I do just want to make sure the record

11   is clear in terms of what Mr. Pope currently has access to in

12   the two platforms.

13      So in evidence.com, that contains all the body-worn

14   camera footage.  That, for the most part, is designated as

15   sensitive, which means he can view it, download, possess it.

16   The CCTV footage from the U.S. Capitol Police, particularly for

17   the footage on the inside, that is marked highly sensitive.  As

18   Mr. Pope alluded to, Ms. Cubbage can share everything that's

19   inside of evidence.com for Mr. Pope to pull up and review.  She

20   can share --

21      THE COURT:  Does she have to do that video by video?

22      MR. CRAWFORD:  So my understanding -- and Ms. Cubbage

23   can correct me if I'm wrong.  But my understanding -- I've

24   passed along this information to Ms. Cubbage.  I think she

25   can do it in batches of, say, a hundred at a time.  And so --

1   and she can set how long those last before they expire.  So

2   there's nothing to prohibit her from essentially sharing

3   everything that's available in evidence.com for -- for Mr. Pope

4   to review.

5         As we noted in our motion, at the start of these cases,

6   the protective order did require defendants to be in the

7   presence of counsel when reviewing highly sensitive

8   information, and the government made a good faith

9   accommodation, realizing that that placed a burden on defense

10   counsel and on defendants.  And so we've made a good faith

11   accommodation.  And the fact that Mr. Pope can now, you know,

12   think of ways to work around that, to record it or violate the

13   protective order, doesn't mean that that's not a reasonable

14   protection that we still want to limit the downloading of that

15   material.

16         His reply goes to some length to try to attack the

17   author of the affidavit from the U.S. Capitol Police.  And

18   putting aside the -- the merits of Mr. Pope's attack, it

19   ignores the fact that well before January 6th, the

20   U.S. Capitol Police have had a long-standing concern about

21   footage getting out into the public domain, and they've always

22   wanted that to be released pursuant to a protective order.  And

23   they have a global interest in limiting the amount of general

24   public consumption.

25         Mr. Pope is certainly right that when that footage is

1   used as an exhibit in court, it is being released to the

2   public, but that doesn't mean that the floodgates should just

3   open and defendants like Mr. Pope should be able to just

4   download it en masse.  In terms of the Relativity database, as

5   noted in his reply, he can review and possess footage like the

6   footage he provided to the Court.

7        And I do want to just make a few points about the video

8   clip he provided to the Court.  First of all, on the merits, I

9   think there will probably be a point in the future when we can

10  argue over the relevance of that footage to Mr. Pope's case.  I

11  don't think we would agree with the characterization that an

12  MPD officer looking to capture on footage rioters going into

13  the building and saying go, go, go is inciting them to break

14  the law.

15       I will note that the -- the clip is edited, as Mr. Pope

16  acknowledges.  And, you know, one piece that's not included

17  in the clip is the MPD officer as he was going up the stairs

18  shortly before he says go, go, go, he looks down at his own

19  iPhone and it shows that the time is shortly after 2:20,

20  which means that on the total opposite side of the Capitol --

21  this -- this footage was taken on the West Front -- Mr. Pope

22  and his brother had already gone inside the building on the

23  other side.

24       So it's certainly the government's view that this

25  officer saying go, go, go, not only wasn't inciting the people

1      around them, it would have been impossible for that officer to

2      have incited Mr. Pope to go inside the building.

3              But for purposes of this motion, the fact that Mr. Pope

4      seems to think that this is a smoking gun or is important, it

5      suggests the system is working.  He found it.  He can get it

6      before the Court.  He seems to think that he has to file a

7      motion in order to change the designation.  As I've explained

8      to Mr. Pope, the current protective order allows him to make

9      requests to change designations.  He has made this sort of

10     blanket request that he should get access to everything, but to

11     date, there haven't been any specific requests to change the

12     designations of videos.

13             As the Court alluded to at one of our earlier hearings,

14     the government agrees that video evidence is important in these

15     cases, and as a pro se defendant, Mr. Pope is certainly

16     entitled to create exhibits, create his own work product.  And

17     in the spirit of trying to come up with, you know, practical

18     solutions, we have suggested that as part of the Court's

19     scheduling order, you know, we could have a date far out for

20     Mr. Pope to identify the universe of highly sensitive video

21     that he wants to use.

22             You know, we would, obviously, need to double-check with

23     the U.S. Capitol Police, but the thought being that, you know,

24     that would give him time to create his work product, to create

25     his exhibits.  But what we can't allow is for him to have

1    unfettered access now.

2          And, again, the concerns are more global than specific

3    to Mr. Pope himself.  He goes to, you know, some length in his

4    reply to talk about his First Amendment rights.  And to be

5    clear, he's not being prosecuted for anything he has said on

6    social media, but we can't ignore the fact that his active

7    social media presence does affect the government's view of, you

8    know, the risk of him going into a database with information

9    about confidential informants.  There have already been leaks

10   in January 6th cases involving informants.

11         And to just give the Court one example, the video

12   attachment that Mr. Pope provided, he tweeted about it shortly

13   thereafter.  And reading now from a tweet from his handle

14   FreeStateWill, November 28th:  Don't forget about the

15   undercover police who recorded themselves repeatedly telling

16   people to move up the stairs to the Capitol.  Winking smiley

17   face emoticon.

18         To -- to be clear, I don't think this is a violation of

19   the protective order, but, you know, this sort of comment,

20   which, frankly, the FBI doesn't have time to follow and track,

21   certainly animates our concern of having a pro se defendant in

22   a database with a lot of information that were to get out could

23   put individuals' lives at stake.

24              THE COURT:  I had a case, a civil case, a couple

25   years ago in which a pro se plaintiff assured me that he would

1    abide by a protective order and got some sensitive information

2    and immediately posted it all on the internet.  You know,

3    when -- when I'm dealing with an attorney, I can take an

4    attorney's license or put the gears in motion to take an

5    attorney's license, which is a significant deterrent.  My

6    instruments with a pro se party are far more blunt and less

7    effective in serving as a deterrent from things like that

8    happening.

9         And I agree with the government that the information

10   is sensitive.  In fact, I was actually surprised to read

11   that they've given away, essentially, maps of where every

12   camera is located.  That's highly sensitive under any

13   definition.

14             MS. CUBBAGE:  Your Honor, may I be heard briefly?

15             THE COURT:  Of course.

16             MS. CUBBAGE:  So I want to clarify for the record

17   kind of the process that -- that I have to play as an

18   intermediary between the actual evidence and Mr. Pope.

19        First of all, on evidence.com, Mr. Crawford has been

20   very -- he has accurately described the process, which is that

21   I can batch up to a hundred files per camera for Mr. Pope.  But

22   what we really have is a situation where Mr. Pope is kind of

23   shooting a target -- at a target in the dark, which is he's got

24   to request what camera he wants me to get.  And then I have to

25   go in and find the camera, and then only when I'm in the -- in

1   the evidence.com can I look at the files and say, well, this

2   is -- this camera isn't even working or this camera doesn't

3   even point at the direction we want.  But if it does, then I

4   batch up to as many files that are available for that camera,

5   and I set a 365-day limit for him to look at those.

6        It took, you know, maybe within the first month to

7   refine that process, but now with access to some of the indices

8   about what cameras are supposed to point at what certain

9   things, Mr. Pope can kind of look at that and say, I'm going to

10  guess that these ten cameras might show me or something

11  relevant to me, please batch these files.

12       So I go in.  I go to evidence.com.  I batch these

13  files, and I share them through a mechanism in evidence.com

14  that allows him to only view.  So even if they're sensitive,

15  highly sensitive, he's in a view-only format when he gets

16  the invitation to look at these files.  Some of them are, in

17  fact, only sensitive.  I have to go back then, after he

18  identifies which ones he wants that are sensitive, and I can

19  download those and share the sensitive-only ones with him to

20  possess.

21       But the highly sensitive ones, which mostly cover the

22  interior cameras, as Mr. Crawford alluded to, he can only view

23  those.  So he's at a disadvantage, as he stated, to create his

24  own work product from any of those interior cameras; which I'm

25  sure Your Honor is -- has seen in other cases, it's really

1    important to kind of slow down those images, to kind of

2    juxtapose those to what is happening at other places.  All

3    that's very relevant.  And, in fact, at trial, I suspect

4    that trial exhibits will need to be, you know, made that kind

5    of put those -- those pieces together.

6         But the problem for Mr. Pope is that because he's such

7    an excellent researcher, he's really hampered in -- once you

8    look at one video, it makes you say, well, what's happening

9    just off that frame?  There's a different camera that pertains

10   to just, you know, where these people walked.  I want to follow

11   them.  And you only get that by being able to research and look

12   at the files and then, as you're looking at it, figure out what

13   the next camera over is, go batch those files.

14        I'm not doing that for him because I'm -- what I'm doing

15   is merely batching his ideas about what he wants to look at,

16   and then he looks at them, and then he doesn't have the ability

17   to follow up on his own.  So that's the first problem.

18        And -- and in evidence.com, I'd say we're -- we're

19   actually working better than -- than I even imagined

20   because he is actually getting to see things.  That's -- that's

21   great.

22        The bigger problem is Relativity, which even attorneys

23   like myself who've used Relativity in the past are having an

24   extreme difficulty parsing through 3 million pages of

25   documents.  It's a -- it's a huge platform, and even when I

1   want to batch 11 documents from a search, I'm not able to batch

2   anything on Relativity.  It's a one-document download each

3   time.

4        So if I run a search that says I want to see all the

5   use-of-force reports from the U.S. Capitol Police -- and I even

6   have, you know, to narrow it to a defendant -- if it pulls up

7   11 hits on Relativity, I can't -- I can't even batch that, even

8   if it was just sensitive, not highly sensitive, and share that

9   with Mr. Pope.  I have to then one by one download each of

10  those documents and then zip them up and send them to Mr. Pope.

11  Now, that's an 11 document.

12       Now imagine if we're talking about very, very

13  megabyte-heavy video files.  They take 20 minutes to download.

14  Then they take, you know, 20 minutes for me to upload to

15  Dropbox to share.  And that's only if I can share them, because

16  they're sensitive.

17       So there are -- there's -- there's a universe of

18  documents that Mr. Pope can't even begin to research through

19  because he doesn't have access to Relativity.  We tried to do

20  it through Zoom.  The lag time was, you know, unworkable.

21  We -- I tried to share my screen through Zoom to let him

22  fashion the searches so that maybe, as a work-around, he could

23  get in and type his own searches through Relativity while I

24  watched through the sharing of the screen.  That wasn't

25  workable because of the lag time.  It's just a very bulky

 1    system because it's so full of megabyte-heavy files.  You just

 2    can't -- you can't navigate it quickly like that.  And to

 3    interpose myself between Mr. Pope's ability doubles the length

 4    of time.

 5         And Mr. Crawford may be able to speak to using

 6    Relativity on the government end, but I know that everyone

 7    who's using it -- I mean, we're glad it's all there.  We're

 8    glad we have access to it.  But it is not an easy system to

 9    learn or access, even if you're trained and have direct access

10    to it.

11         So now what you're doing is interposing someone

12    like myself between Mr. Pope, and it doubles or triples the

13    amount of time to the point where he's just not going to

14    see the things he wants to see.  The videos that he used

15    for his exhibit, for example, were only called to his

16    attention by me because I had come across them in another case.

17    I said, "You might be interested in these.  Let me share

18    those."

19         It took us a day and a half for me to share those GoPro

20    videos -- that he used to clip that -- with him because

21    Deloitte had to upload the files.  They were so intensive you

22    couldn't upload them directly.  They had to put them into an

23    FTP, which is a file transfer protocol program.  I had to get a

24    special code to access that.  It took a day for them to get

25    them up, and then I had to download them.  Then I had to

1     Dropbox them to Mr. Pope, and then he had access to them.  But

2     that was a day and a half for six videos.

3          So I -- I say these things as, you know, a way to

4     inform the Court of the reality on the ground what dealing

5     with these very, very document-intensive, data-intensive

6     databases really present as a barrier to accessing the

7     information.

8          THE COURT:  Well, I agree with you that there are

9     problems, but I agree with Mr. Crawford that I think these are

10    issues that can be dealt with within the realm of the

11    protective order.  And I'm disinclined to give Mr. Pope

12    unfettered access for all of the reasons the government has

13    expressed.

14         With that said, I want to resolve these bottleneck- --

15    for lack of a better word -- type problems so that Mr. Pope can

16    access discovery he needs.  And, you know, perhaps Mr. Crawford

17    is right; is that once I deny the motion to get unfettered

18    access, that I can get the parties together to think about more

19    creative ways.  It almost sounds like what Mr. Pope needs is a

20    paralegal.

21         And, you know, I don't know what has been explored to

22    date as to whether there's space at the -- at the federal

23    public defender in Topeka where he can access discovery or

24    whether -- I don't know if there's a law school in Topeka,

25    whether there's a law professor there that can, you know,

1    assist.  But I think we need to explore these issues short of

2    giving Mr. Pope unfettered access.  And I don't know if it'll

3    be helpful if I appoint a magistrate judge, which is a little

4    bit more accessible than me these days, to mediate some of

5    these particular issues so that they can be done quickly,

6    whether that would be helpful.  But I think we need to explore

7    all these issues and get to a place where we all get -- you

8    know, as The Rolling Stones said, we may not get what we want,

9    but we might get what we need, so.

10                    DEFENDANT WILLIAM POPE:  Your Honor?

11                    THE COURT:  Yes.

12                    DEFENDANT WILLIAM POPE:  As I mentioned, appointing a

13    paralegal doesn't allow me to actually examine the evidence and

14    create work product.  This is a big part of analyzing evidence.

15    Because if you can't time-sync video together to see what's

16    going on in different locations, you can't fully examine the

17    evidence.  And the government is currently preventing me from

18    doing that by preventing me from possessing the evidence.

19          And I have not released any sensitive or highly

20    sensitive video to the public.  I have not violated the

21    protective order in any way.  I've fully complied with the

22    protective order, and I'm not asking to violate it in the

23    future.  I'm asking to stay within it, just to modify it to

24    allow me to have that access that I need to create the work

25    product to prepare my defense.  And there's no way for me to

1      manage my own case in my own way if I'm not able to do the

2      research in my own way.

3              Again, this is a Fifth Amendment issue.  I have a right

4      to due process.  I have a right to discovery.  And if I can't

5      examine the evidence to confront my accusers, like I did with

6      Mr. Crawford making the false statement about the government

7      not being aware of people who were urging the crowd forward,

8      that is relevant because I had to confront a statement the

9      government made.  And I need to have direct access to discovery

10     in order to be able to do that.

11             There's just no way for me to prepare my own case in

12     my own way if somebody else is handling the evidence.  How can

13     I do research if they're the ones sifting through it.  I have

14     to be able to look at it and examine whether or not that would

15     be relevant to me and relevant to the defense I'm trying to

16     make.

17             THE COURT:  Perhaps you will convince me at some

18     point, Mr. Pope, but in the short term, we need to explore

19     other alternatives and see if we can work out some of these

20     issues in a way that's satisfactory to everybody.  And so

21     that's what I would like to endeavor to do in the next

22     30, 45 days, see if we can find a solution that's workable, but

23     in the short term, I'm not going to grant you unfettered access

24     in the way you seek.

25             But I want the three of you to put your heads together

1    and see what's possible.  I will make some inquiries on my end

2    to see what's possible, and -- and, hopefully, we can come up

3    with some sort of solution or sets of solutions.  You know,

4    obviously, some things, you know, like -- like preparing

5    exhibits for trial are a long way off and we don't have to deal

6    with those in the next 45 days.  It's more as far as analyzing

7    what's there at this point.

8         And so I want the parties to work together and to work

9    with me or work with a magistrate judge, if that sounds like it

10   would be easier, to get those things accomplished.

11        MR. CRAWFORD:  If I could just comment on one point

12   Your Honor made earlier.  I think Ms. Cubbage's

13   characterization of Relativity is -- is accurate.  I mean, I

14   think some of the issues she has described are not unique --

15   are -- are true of all cases, not just pro se cases.  And I

16   think Ms. Cubbage was appointed to this case for the right

17   reason.  I think she's one of the more capable attorneys in

18   navigating the database.

19        I do hear her out when she says that part of the

20   problem, since she and Mr. Pope are not in the same location,

21   there's extra steps in the process.  And I think Your Honor's

22   suggestion of having someone who could supervise Mr. Pope, if

23   they could potentially be in the same location, I think might

24   mitigate some of these concerns and that he could still, sort

25   of, be in the driver's seat in terms of doing his research.  I

1     agree with his characterization he's a very capable researcher.

2     But that would still allow someone with a law license to sort

3     of be keeping an eye on things.  And whether that's at the

4     federal public defender's office or whether it makes sense to

5     have sort of a co-standby counsel that is in the Topeka area

6     where they could actually meet in person, the government

7     wouldn't have any objection to that.

8          I don't know the best way to move that forward,

9     if that's of interest to Mr. Pope, but I think that would,

10    certainly, be an agreeable path forward for the government.

11         DEFENDANT WILLIAM POPE:  Your Honor, it goes beyond

12    me just needing to view the evidence.  If I go to a room in

13    Topeka and view the evidence or have Ms. Cubbage broadcast it

14    to me over the internet, that does not resolve my problem

15    because I need to be able to access the evidence to create work

16    product to time-sync to see when things happened, and that

17    requires a computer capable of doing that, that requires

18    special software.  And if the court doesn't have that, then I'm

19    not going to be able to do that.  And how am I going to be able

20    to save that work product?  Do I have to keep it in a court

21    or -- you know, I mean, it's just very impracticable and places

22    undue burdens on me as a pro se officer of the court to defend

23    myself.

24         THE COURT:  Well, that's something we're going to

25    have to explore, at least in the short term.  So I expect the

1    parties to work in good faith and see if we can resolve some of

2    these issues and come up with some creative solutions.

3           So what makes sense as far as when to get back together

4    in this case for the next status hearing?

5           MR. CRAWFORD:  Maybe 30 days' time, if that's

6    agreeable to Mr. Pope.

7           DEFENDANT WILLIAM POPE:  The government hasn't

8    demonstrated any flexibility on actually resolving things,

9    Your Honor.  I don't know if it can be in 30 days.

10          THE COURT:  Well, given the holidays, I think 30 days

11   is probably a little bit overly optimistic, but --

12          DEFENDANT WILLIAM POPE:  Can we do -- why don't we

13   make it 60?

14          THE COURT:  All right.  Let's do 60 days.

15        Tanya, what's 60?

16          THE COURTROOM DEPUTY:  Judge, I'm looking at

17   February 2nd, but we have a trial that week.  Do you want to do

18   it that Friday at 9:30; Friday, February 3rd?

19          THE COURT:  Friday is the 3rd, is that what you said?

20          THE COURTROOM DEPUTY:  Yes.

21          THE COURT:  The 3rd at 9:30, how does that work for

22   the parties?

23          MR. CRAWFORD:  It's good for the government.  Thank

24   you.

25          DEFENDANT WILLIAM POPE:  That would be fine.

1    THE COURTROOM DEPUTY:  This will be by Zoom; correct,

2    Judge?

3    THE COURT:  It will be by Zoom.

4    And I find that it's in the interests of justice to toll

5    the time between now and then so we can work out all these

6    discovery issues, which are turning out to be a little more

7    vexing than we perhaps have foreseen.

8    Any interest on me appointing a magistrate judge to work

9    more hands-on with some of these issues?

10    MR. CRAWFORD:  No objection from the government.

11    DEFENDANT WILLIAM POPE:  I prefer to speak with my

12    standby counsel before I make any --

13    Another thing, Your Honor, I'd like to ask.  Are

14    you denying the motion, or are you just putting it on hold for

15    now?

16    THE COURT:  I'm putting it on hold for -- for the

17    time being, although I gave you pretty much what my thoughts

18    are.  If you want me to rule today, I will, but --

19    DEFENDANT WILLIAM POPE:  You can keep it on hold for

20    now.

21    THE COURT:  Okay.

22    DEFENDANT WILLIAM POPE:  I mean, if you deny it, I'm

23    probably going to appeal it, so just --

24    THE COURT:  That's why I asked you.  If you want me

25    to rule on it today, I'm happy to do that.  I'm not sure a

1    court -- the Court of Appeals would hear it, but.

2           DEFENDANT WILLIAM POPE:  Your Honor, you've asked us

3    to make a good faith effort to find a resolution to it.  We

4    will do that.  If not, we'll report back to you.  And if we

5    need to make an appeal, we will.

6           THE COURT:  All right.  So I'm going to -- I'm going

7    to talk to A.J. Kramer, the local federal public defender,

8    about what resources might be available in Topeka later today.

9    He's going to be in the building later today, and he said he

10   would swing by, and then -- do you know, Mr. Pope, if there's a

11   law school in Topeka?

12          DEFENDANT WILLIAM POPE:  They do have Washburn law

13   school, but I don't have any contacts over there.

14          THE COURT:  What's the name of it again?

15          DEFENDANT WILLIAM POPE:  Washburn University law

16   school.

17          THE COURT:  W-a-s-h-b-u-r-n?

18          DEFENDANT WILLIAM POPE:  Correct.  Yeah.

19          THE COURT:  They might have a criminal law clinic

20   that might find this tremendously interesting, that might have

21   resources to get some students working on it as well to kind of

22   deal with the volume issues.  So I'll inquire into that as

23   well.  And, hopefully, with our four heads together we can come

24   up with some good ideas.

25          Anything else we need to resolve today?

1          MR. CRAWFORD:  Not from the government.  Thank you.

2          DEFENDANT WILLIAM POPE:  No, Your Honor.

3          THE COURT:  All right.  Thank you.

4     Thank you for all your help, Ms. Cubbage.  You've been

5  very helpful.

6          MS. CUBBAGE:  Thank you, Your Honor.

7          THE COURT:  Have a good holiday.

8          THE COURTROOM DEPUTY:  This court is adjourned.

9          (Proceedings were concluded at 10:44 a.m.)

1          CERTIFICATE OF STENOGRAPHIC OFFICIAL COURT REPORTER

2

3          I, Nancy J. Meyer, Registered Diplomate Reporter,

4     Certified Realtime Reporter, do hereby certify that the above

5     and foregoing constitutes a true and accurate transcript of my

6     stenograph notes and is a full, true, and complete transcript

7     of the proceedings to the best of my ability.

8

9                    Dated this 21st day of July, 2023.

10

11                   /s/ Nancy J. Meyer                    
                     Nancy J. Meyer
12                   Official Court Reporter
                     Registered Diplomate Reporter
13                   Certified Realtime Reporter
                     333 Constitution Avenue Northwest
14                   Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25