```
            UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA

United States of America,      ) Criminal Action
                               ) No. 1:21-cr-00128-RC
              Plaintiff,       )
                               )
vs.                            ) Status Conference (via Zoom)
                               )
William Pope and Michael Pope, ) Washington, D.C.
                               ) April 13, 2023
              Defendants.      ) Time: 3:30 p.m.
_____

        Transcript of Status Conference (via Zoom)
                       Held Before
        The Honorable Rudolph Contreras (via Zoom)
                 United States District Judge
_____

                     A P P E A R A N C E S

For the Government:       Kelly E. Moran
(via Zoom)                UNITED STATES ATTORNEY'S OFFICE
                          FOR THE DISTRICT OF COLUMBIA
                          601 D Street, Northwest
                          Washington, D.C. 20579

Defendant:                William Pope, pro se
(via Zoom)

For the Defendant as Standby Counsel:
(via Zoom)                Nicole A. Cubbage
                          LAW OFFICE OF NICOLE CUBBAGE
                          712 H Street, Northeast, Unit 570
                          Washington, D.C. 20002

For the Defendant Michael Pope:
(via Zoom)                Bruce H. Searby
                          SEARBY PLLC
                          2000 P Street, Northwest, Suite 750
                          Washington, D.C. 20036
_____

Stenographic Official Court Reporter:
(via Zoom)                Nancy J. Meyer
                          Registered Diplomate Reporter
                          Certified Realtime Reporter
                          333 Constitution Avenue, Northwest
                          Washington, D.C. 20001
```

```
                       P R O C E E D I N G S
```

1

2              (REPORTER'S NOTE: This hearing was held during the
   COVID-19 pandemic restrictions and is subject to the
3  limitations of technology associated with the use of
   technology, including but not limited to telephone and video
4  signal interference, static, signal interruptions, and other
   restrictions and limitations associated with remote court
5  reporting via telephone, speakerphone, and/or
   videoconferencing.)

6

7         THE COURTROOM DEPUTY: Your Honor, this is

8  Criminal Action 21-128, United States v. William Pope and

9  Michael Pope.

10        For the United States, I have Kelly Moran. For

11 William Pope -- William Pope is appearing pro se, with standby

12 counsel Nicole Cubbage. And for Michael Pope, I have Bruce

13 Searby. Our court reporter again today is Nancy Meyer.

14       All parties are present.

15        THE COURT: Good afternoon, everybody.

16        DEFENDANT WILLIAM POPE: Good afternoon.

17        THE COURT: So let's start with Mr. Searby. I gather

18 that your client, Michael Pope, is amenable to appearing by

19 video today?

20        MR. SEARBY: He is, Your Honor.

21        THE COURT: And, Mr. William Pope, I gather you are

22 as well?

23        DEFENDANT WILLIAM POPE: Yes, Your Honor.

24        THE COURT: All right. So it's not something we have

25 to deal with today. But with the President signing the end of

1  the emergency, certain of my authorities are likely to vanish
2  soon.  So that's something the parties should discuss amongst
3  themselves because I know no one is here in D.C. and so that,
4  you know, I think it's probably in most people's interests that
5  these, in particular, status-type hearings continue to happen
6  by video.  But that's something the parties should -- between
7  now and whatever we do next, at the next hearing, folks should
8  talk about that and determine how we should proceed in those
9  instances.
10         All right.  So let's, for the moment, put aside the
11 issue of Mr. William Pope's protective order and access to the
12 videos, since that's the most substantiative of the things that
13 need to be discussed.
14         Is there -- are there any other issues we need to
15 discuss today?
16         MR. SEARBY:  No, Your Honor.  Bruce Searby for
17 Mr. Michael Pope.
18         We are -- the government and Mr. Michael Pope are still
19 trying to resolve the case, and so we're going to be asking for
20 another 30 days.  There was an attempt to do a meaty discussion
21 toward the end of March, but that got derailed by illness.  And
22 now we -- it, actually, was quite -- quite a while before, you
23 know, that resolved itself.  And so we're now planning on a
24 meeting in late April.
25         And so, again, you know, I've always thought this case

1   should resolve itself.  It sounds like there's another thousand
2   January 6th cases on its way to this court, if you believe
3   *The Washington Post*.  And so I think that more than ever this
4   case should resolve itself, and that's what we're going to try
5   to do.
6              THE COURT:  All right.  Ms. Moran, do you have any
7   objection to proceeding in that way?
8              MS. MORAN:  No, Your Honor.
9              THE COURT:  Okay.  And I gather, Mr. Searby, that
10  your client, Mr. Michael Pope, is willing to toll the Speedy
11  Trial Act between now and then?
12             MR. SEARBY:  Yes, Your Honor.
13             THE COURT:  All right.  So we'll go ahead and do that
14  and toll the time between now and then and 30 days.
15          So what's 30 days, Tanya?
16             THE COURTROOM DEPUTY:  Sorry.  Judge, I'm looking at
17  the calendar now.  It's very slow.  I'm trying to get it
18  together.
19          Is everyone available on Friday, May 12th at 11:00 a.m.?
20             MR. SEARBY:  Your Honor, I am.
21             MS. MORAN:  That is fine for the government.  Thank
22  you.
23             THE COURT:  So you said what?  May 12th at 11:00?
24             THE COURTROOM DEPUTY:  Yes, Judge.
25             THE COURT:  Okay.

```
 1                    DEFENDANT WILLIAM POPE:  That would be fine for me as
 2      well.
 3                    THE COURT:  Okay.
 4                    MS. CUBBAGE:  Me as well.  Thank you.
 5                    THE COURT:  All right.  So -- and, Mr. William Pope,
 6      you're amenable to tolling the Speedy Trial Act between now and
 7      then as well?
 8                    DEFENDANT WILLIAM POPE:  Yes, Your Honor.
 9             And I would point out that the government has not yet
10      responded to my email from two and a half months ago about
11      potentially resolving pretrial.
12                    THE COURT:  Okay.  All right.  So the parties have
13      moved for a continuance pursuant to the Speedy Trial Act.  The
14      Court finds that the ends of justice served by a continuance
15      outweigh the best interests of the public and the defendant in
16      a speedy trial.
17             The Court finds that failure to grant the continuance
18      would deny counsel for the defendant and the attorney for the
19      government the reasonable time necessary for effective
20      preparation, including the reasonable time for Mr. Michael Pope
21      to discuss the possibility of resolving the case before
22      trial with the government, and for Mr. William Pope to review
23      the enormous amount of discovery that he has endeavored to
24      review.
25             Therefore, the time under the act is tolled between now
```

1   and the next status hearing that is now set for May 12th at
2   11:00 a.m.
3           Mr. Searby, are there any other issues regarding
4   Michael Pope you need to discuss today?
5           MR. SEARBY:  No, Your Honor.
6           THE COURT:  All right.  You're welcome to stay for
7   the rest of this, if you wish, but neither of you have to stay
8   if you don't wish.
9           And we'll turn now to --
10          THE COURTROOM DEPUTY:  This will be held by Zoom,
11  Judge?
12          THE COURT:  Well, let's tentatively set it by Zoom,
13  and then the parties can express their opinion to me between
14  now and then as to whether they have a contrary view.  Depends
15  on what the nature of the hearing is we're dealing with at that
16  time.
17          But if it remains a routine status hearing, the parties
18  can tell me what they think -- whether I still have the
19  authority to do that by Zoom under the rules that existed prior
20  to the pandemic.  So all right.
21          So we're back to Mr. William Pope and his request to be
22  able to directly access the video evidence in Relativity; to be
23  given the same access he would if were a practicing attorney.
24              (REPORTER'S NOTE:  Mr. Searby and Mr. Michael Pope
25  left.)

1              THE COURT:  So, Ms. Moran, why don't -- you know, I
2     didn't -- I didn't find your response particularly satisfactory
3     as to what the impact, if any, is about what was -- what seems
4     to be, essentially, unlimited access given to Tucker Carlson to
5     the same information Mr. -- or, essentially, the same
6     information Mr. Pope seeks to have access to.
7              And, you know, what -- Mr. Tucker Carlson and presumably
8     more than one staff member had unlimited access to that, you
9     know, given that he -- that he devoted, from what I read, a
10    week of his show to promoting Viktor Orbán.  I'm not sure he
11    would pass any sort of security clearance.  So if
12    Tucker Carlson can see it all, why can't Mr. William Pope, who
13    has agreed to abide by the protective order?
14             MS. MORAN:  Your Honor, all of the information
15    that -- that I have is the same information that you've
16    received.
17             What I will say is I think it's clear from the filings
18    and from the position of the Capitol Police that there is a
19    lack of understanding at many levels of just what information
20    was transmitted in what way.
21             It's the government's position that Mr. Pope received
22    adequate access to discovery through the many iterations of our
23    back-and-forth and, specifically, the -- the option of using a
24    local attorney and somebody who can oversee this access to
25    discovery.

1          I think it's notable, Your Honor, that even the
2    Architect of the Capitol is not given unfettered access to
3    Capitol CCTV in instances where a civil suit takes place and
4    the incident occurs on Capitol Grounds.  Unless there's a
5    fatality or a very dire injury, that video is not released by
6    Capitol Police.
7          So it is incredibly securely maintained by the
8    Capitol Police.  And I can't speak to what I don't know, so I
9    don't want to speculate as to what other videos will be
10   released.  I know that in the past few weeks additional video,
11   to my knowledge, has not been released to the media.  So I
12   don't know the significance of that.  But any additional
13   information I provided you would be speculative, Your Honor.
14   And I don't want to speculate.
15             THE COURT:  Well, I'm not sure you answered my
16   question.
17         So I'm not talking about what the Architect of the
18   Capitol normally does or what anyone else normally does,
19   because I'm talking specifically about this one disclosure
20   that, based on the Capitol Police's declaration, seems pretty
21   liberal as far as access and any sort of veto power over what
22   was published publicly to the entire nation.
23         How should I view that disclosure versus what Mr. Pope
24   is asking for?
25             MS. MORAN:  Your Honor, I think that the government

1    has established good cause that the protective order is
2    necessary.  I think that this Court, the defendant, and the
3    government entered into the protective order understanding that
4    the breadth of information from various sources and of varying
5    national security interest should be provided to litigants so
6    that they can build their criminal case.
7         Putting aside the fact that Mr. Pope has made it very
8    clear that his rationale for wanting to possess these items
9    personally is not to build his criminal case; it's largely to
10   share that information with others -- putting aside that
11   fact -- it is not a hindrance on his ability to build his
12   criminal case to use one of the avenues that we've discussed,
13   and that countless other judges have, you know, come up with
14   novel solutions, such as instituting investigators to work with
15   pro se litigants so they can see the discovery, or having an
16   attorney supervise access to that discovery.
17        I think that it would be a sweeping and unnecessary
18   privilege that would be provided to Mr. Pope for him to gain
19   access that no other January 6th litigant has access to and,
20   frankly, has no legitimate need per why the protective order
21   was put in place.  And the goal of this being his own criminal
22   case, there's no greater access need for Mr. Pope than any
23   other January 6th litigant.
24             THE COURT:  All right.  Mr. Pope -- Mr. William Pope,
25   do you want to respond?

1           DEFENDANT WILLIAM POPE:  Yes, Your Honor.

2           You know, as I pointed out in my filings, the

3   government's given me full access to take as many screenshots

4   of the highly sensitive videos I want to.  And if I wanted, I

5   could assemble that into a flip book, and it would play just

6   like a video would.

7           The -- the government is, essentially, arguing that they

8   don't want me to possess the movement of people in the video.

9   But I can take a screenshot of the exact location of where

10  these cameras are, and they're okay with that.  So their

11  security argument is pretty empty.  And I've pointed that out

12  in my motions.

13          I'd also point out that the first DiBiase declaration

14  noted that it was the FBI that requested his declaration,

15  not he that volunteered it, not he that sought the protective

16  order.  But the FBI sought the protective order to keep

17  the video under seal and hidden away.  So I don't know why that

18  is.

19          I'd also point out that the two declarations from

20  Mr. DiBiase are contradictory in many ways.  He says that he

21  turned over more than 14,000 hours of footage to some

22  committees and then he turned over 12,600 hours to other

23  committees.  And the government has produced less than 6,000

24  hours to defendants in discovery.

25          Now -- and that's relevant because the cameras that

1    DiBiase said that he turned over to the government were from
2    inside the Capitol, exterior cameras, and the visitors center
3    cameras, which are all relevant to January 6th cases.  And yet
4    the government is, apparently, hiding approximately 800 cameras
5    from defendants.
6         You know, I have tried to take a very measured approach
7    with my motion to modify the protective order and abide by the
8    protective order.  I'm seeking access to discovery so I can
9    defend myself.
10             THE COURT:  I understand that.  And the issue with
11   the discrepancy that you allege in the cameras, that, in my
12   view, goes beyond the scope of your motion.  So if you want
13   to file a separate motion that indicates that you're not
14   provided by all the discovery to which you're entitled by
15   virtue of the comparisons you've made, by all means do that.
16   But I view that as beyond the scope of the current motion
17   that's pending.
18             DEFENDANT WILLIAM POPE:  And I -- and I intend to do
19   that, Your Honor.  I've already begun working on that.
20        But I -- and I merely pointed that out, though, that
21   there are discrepancies between the two DiBiase declarations.
22   And, in fact, we may need to hear -- have an evidentiary
23   hearing with Mr. DiBiase to question him on what actually the
24   facts are.
25             And I think this Court does need to inventory all the

1    video that the government has possession of because it appears
2    like they're not turning over all discovery to defendants.
3         But, again, I've tried to take a very measured approach.
4    You know, if the government wants to oppose me modifying the
5    protective order, then that leaves me with the avenue of
6    motioning to change the sensitivity designation of all the
7    files, as the Press Coalition has done.  And I'm prepared to do
8    that if I have to, but I feel like my current motion is more
9    measured.
10        And, you know, I'm trying to abide by the protective
11   order.  I haven't leaked any files.  I haven't done anything
12   like that.  I've tried to fully comply with the order that I
13   signed, and I'm just trying to have access that I need to
14   defend myself in court.
15        THE COURT:  Anything else you want to add?
16        DEFENDANT WILLIAM POPE:  Well, you know, two months
17   ago I did request that the government provide me copies of all
18   files that are not sensitive or only designated as sensitive
19   but not highly sensitive because I can possess those files.
20   But the government hasn't done that yet.
21        I have requested that my standby counsel order me a few
22   files from Relativity because I have no access to the 5 million
23   files there right now, and she's been having technical
24   difficulties.  She could explain that more to you, if you'd
25   like.  But, essentially, you know, I have no access to more

1    than 99 percent of discovery right now.

2             THE COURT:  Okay.  Ms. Cubbage?

3             MS. CUBBAGE:  Yes, Your Honor.  So in an attempt to
4    get Mr. Pope access to at least a small subset of the files he
5    seeks through Relativity, I worked with Deloitte to set up a
6    file transfer protocol where Deloitte actually batches the
7    files.

8         So there were over a hundred sensitive-only.  So these
9    are things that Mr. Pope can possess:  undercover officer and
10   surveillance unit videos.

11        I asked Deloitte to batch those and put them on this
12   file transfer protocol and asked them to give Mr. Pope
13   credentials to access that upload himself.  So it's stuff he
14   can possess.  It's not in violation of the protective order.
15   And they refuse to allow him to access it.

16        Well, I've tried probably -- it's five, six hours of
17   attempts to try to download those files.  They're so huge, so
18   megapixel intensive, that pretty much every time I try to
19   download them, it crashes.

20        Now, even if I were successful at downloading these
21   hundred and so files, I would then have to reupload them to a
22   sharing protocol that I have access to and invite Mr. Pope to.
23   So what we're talking about is the files are so huge off of
24   Relativity that Deloitte -- the people who run the Relativity
25   platform have to batch them for me.  And then they invite me to

```
1     view them and download them, but they won't invite Mr. Pope.
2              I just -- I don't see that there's a reason why he can't
3     have at least the ability to download things he's lawfully
4     under the protective order able to possess, rather than go
5     through this game where I have to sit there and spend hours
6     downloading, then reuploading, and then inviting him to do
7     that.
8              So I think at the bare minimum, it -- I would ask that
9     the Court order his ability to have credentials for the
10    file-sharing protocol that is used by Deloitte.  And, really,
11    that's the only way I'm able to batch large numbers of files
12    for him off of Relativity.
13             Evidence.com has a built-in way where I can invite him,
14    and then I can batch files and send him, and he can view
15    through evidence.com.  So we're okay with that.
16             But it's the -- it's the 5 million files on Relativity
17    that not only is it very difficult for me to get on Zoom and
18    show him Relativity while we're doing it, but then even
19    collecting the vast number of files he wishes to view, which
20    he's allowed to review because the sensitivity designation
21    is, in fact, sensitive or lower, it's almost impossible to get
22    the bulk of that information transferred over to him to look
23    at.
24             So if the government is willing to make a hard drive
25    with all the sensitive and lower-designated files for Mr. Pope,
```

1    that would solve a lot of the problem.  But I know that he's
2    asked for that.  He asked for that after the last hearing.  He
3    copied me.  I had him ask Ms. Moran as well, and we haven't
4    heard anything.  So, you know, I'm not sure where we are in
5    that process right now.
6              THE COURT:  Ms. Moran, do you have any insight you
7    can share with me as to overcoming some of these technical
8    issues?
9              MS. MORAN:  Yes, Your Honor.
10          Ms. Cubbage, would you mind forwarding me that email
11   when you have the chance.
12          Mr. Pope, several of his emails to me and mine to him
13   have been bounced back.  So that is an issue we've already
14   worked through, and I've cc'd Ms. Cubbage on those
15   bounced-backs as well.  So maybe that's what happened.
16          I apologize.  I was not aware of this back-and-forth
17   with Deloitte.
18          I received an email from Mr. Pope probably in
19   February asking for credential, but at that time we had not --
20   we had not come to a conclusion on access.  So I thought it was
21   premature.  Please do forward me that.  I will talk to our
22   IT people and see.
23          I have no objection to creating a physical manifestation
24   of this discovery.  I don't know the practicability given the
25   size of it.  I -- I don't know if any defendant who has been

1   given a -- you know, for lack of a better term, token to access
2   Relativity directly.  But I agree that there should be some
3   work-around for his access to sensitive information.
4           Another alternative would be creating a credential
5   for local counsel who could also help facilitate this, if
6   local counsel were the avenue that the Court decides to take.
7           THE COURT:  All right.  So let's have the parties
8   meet and confer within the next two weeks to resolve these
9   issues and file something with the Court by the 27th.  And,
10  hopefully, those matters can be worked out.
11          And then I will endeavor to resolve the motion, which I
12  was prepared to resolve until this whole Tucker Carlson thing
13  erupted.  So I will endeavor to resolve it now before the next
14  status hearing.
15          Anything else -- any other issues we have to resolve
16  today?
17          MS. MORAN:  No, Your Honor, not from the government.
18          DEFENDANT WILLIAM POPE:  No, Your Honor.
19          THE COURT:  All right.  Thank you.  You're excused.
20          (Proceedings were concluded at 4:03 p.m.)
21  Proceedings recorded by mechanical stenography.  Transcript
    produced by computer-aided transcription.
22
23
24
25

CERTIFICATE OF STENOGRAPHIC OFFICIAL COURT REPORTER

I, Nancy J. Meyer, Registered Diplomate Reporter, Certified Realtime Reporter, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenograph notes and is a full, true, and complete transcript of the proceedings to the best of my ability.

Dated this 21st day of July, 2023.

/s/ Nancy J. Meyer
Nancy J. Meyer
Official Court Reporter
Registered Diplomate Reporter
Certified Realtime Reporter
333 Constitution Avenue Northwest
Washington, D.C. 20001
202-354-3118