```
1                   IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
2

3       United States of America,      ) Criminal Action
                                        ) No. 21-cr-128
4                          Plaintiff,   )
                                        ) STATUS REPORT
5       vs.                             ) BY VIDEO
                                        )
6       William Pope, et al.,           ) Washington, DC
                                        ) June 12, 2023
7                          Defendants.  ) Time:  1:30 p.m.
        _____
8
                       TRANSCRIPT OF STATUS REPORT
9                            HELD BEFORE
                   THE HONORABLE JUDGE RUDOLPH CONTRERAS
10                    UNITED STATES DISTRICT JUDGE
        _____
11
                         A P P E A R A N C E S
12
        For Plaintiff:    Kelly Moran
13                        Andrew Floyd
                          Emily Miller
14                        United States Attorney's Office
                          601 D Street NW
15                        Washington, DC  20530
                          Email: Kelly.moran@usdoj.gov
16      For Defendant:
          William Pope    Pro se
17                        Nicole Cubbage (Standby Counsel)
                          LAW OFFICE OF NICOLE CUBBAGE
18                        712 H. Street NE, Unit 570
                          Washington, DC 20002
19                        703-209-4546
                          Email: Cubbagelaw@gmail.com
20
          Michael Pope    Bruce Hamilton Searby
21                        SEARBY PLLC
                          2000 P Street NW, Suite 750
22                        Washington, DC 20036
                          202-750-6165
23                        Email: Bsearby@searby.law

24      Court Reporter:   Janice E. Dickman, RMR, CRR, CRC
                          Email:  Janice_E_Dickman@dcd.uscourts.gov
25
```

1    * * * * * * *P R O C E E D I N G S* * * * * * *

2         THE COURTROOM DEPUTY:  Judge, we're ready to begin.

3    This is criminal action 21-128, *United States of America versus*

4    *William Pope and Michael Pope*.

5         Counsel, please state your appearances for the

6    record.

7         MR. SEARBY:  Bruce Searby for the defendant Michael

8    Pope, Your Honor.

9         DEFENDANT WILLIAM POPE:  William Pope, representing

10   himself.

11        MS. CUBBAGE:  Nicole Cubbage, standby counsel for

12   Mr. Pope, pro se.

13        MS. MORAN:  Kelly Moran on behalf of the

14   United States.  I'm joined by AUSAs Emily Miller and Andrew

15   Floyd.  Good afternoon.

16        THE COURT:  Good afternoon, everybody.  So,

17   Mr. Searby, I gather that your filing of the motion to sever

18   means that the meeting did not go well?

19        MR. SEARBY:  I'm not so sure, Your Honor.  And I'll

20   let AUSA Moran explain that there may be some -- there may be

21   some potential for a resolution, despite my filing this

22   morning.  So, in any event, the motion is on file and I think

23   that we should probably have an answer from the government, you

24   know, shortly, and be able to potentially avoid briefing the

25   hearing motion.  But I'll let AUSA Moran speak.

1          MS. MORAN:  Those representations are spot on, Your

2    Honor.  The government is contemplating whether -- we are

3    considering the misdemeanor offer in Mr. Michael Pope's case.

4    We are in the process of finalizing that.  And I had told

5    Mr. Searby that in the case that it falls through, we will

6    proceed with the motion to sever, responding to the motion to

7    sever.  But as it stands, that proffer process is still in

8    play.

9          THE COURT:  Okay.  All right.  So perhaps it makes

10   sense to come back in 30 days, and that will either be a

11   hearing on the motion or change of plea hearing.  Does that

12   make sense?

13         MR. SEARBY:  Yes, Your Honor.

14         MS. MORAN:  Yes, Your Honor.

15         THE COURT:  Okay.  What's 30 days, Tanya?

16         THE COURTROOM DEPUTY:  Judge, I'm looking at July

17   14th.  Everyone available at 2 p.m.?

18         MR. SEARBY:  Yes.

19         MS. MORAN:  Yes.  Thank you.

20         THE COURT:  Okay.  So we'll schedule that July 13th,

21   at 2 p.m., if there is a change of plea or a motions hearing on

22   the motion to sever.

23         So, Ms. Moran, if things don't work out, how much

24   time do you need to respond to the motion to sever?

25         MS. MORAN:  I would request the two weeks, Your

1    Honor.  I'm hopeful that I'll have an answer before then and it

2    would be able to guide whether a response to that motion will

3    be necessary.

4         THE COURT:  Of course.  So let's --

5         MS. MORAN:  Decide whether a response to that is

6    necessary.

7         THE COURT:  -- make your response due the 26th.  And

8    then, Mr. Searby, you can file a reply one week thereafter,

9    which is July 3rd.  Do you plan on working on the 3rd?

10        MR. SEARBY:  Your Honor, I might be in the air on the

11   3rd.

12        THE COURT:  Okay.  So let's just make it the 7th,

13   then, for the reply.

14        MR. SEARBY:  Thank you, Your Honor.

15        THE COURT:  All right.  All right.  Mr. William Pope,

16   what's going on in your case?

17        DEFENDANT WILLIAM POPE:  Good afternoon, Your Honor.

18   Good to see you again.  As you know, I've got two pending

19   motions before you.  I've got a motion to compel the government

20   to inventory all CCTV that they have in their possession.  I've

21   raised the fact that there's serious discrepancies between what

22   they provided in discovery and what I was able to view on the

23   congressional access terminals.  And also, this raises the

24   issue that potentially Mr. Dubias wasn't fully honest in the

25   statements that he provided to the Court, which have been used

1    to prevent me from having full access to the discovery.  So

2    that's a high concern of mine.

3         I also have a motion to change sensitivity

4    designations of all "highly" files to "sensitive," since those

5    files -- I'm not able to access them right now because of that

6    highly sensitive designation, and that would compel the

7    government to at least justify why they've chosen that highly

8    sensitive designation, rather than to arbitrarily slap it on

9    anything they want to.  And as you know, there's a great

10   problem of over-classification in the government.

11        So I do have those two pending motions right now, and

12   then I also filed a notice to the Court yesterday.  We had a

13   call on Friday about the government promised to provide a

14   physical copy of all files I'm allowed to possess, which would

15   include anything designated sensitive or have no sensitivity

16   designation.  That was electronic filing No. 104 in this case.

17   But in the call on Friday, they seemed to be walking that back,

18   which concerns me because I need that access in order to sift

19   through the evidence and find *Brady* materials.

20        So I wanted to bring that to the Court's attention.

21   And I may need to file a motion to compel, if I don't get that

22   soon, as the government has promised.  And then I have a couple

23   other issues.  But if the Court would like to dialogue on any

24   of those before I move forward, I would be happy to do that.

25             THE COURT:  Sure.  Well, let me -- Ms. Moran, I think

1    you've responded to the motions already, is that right?

2              MS. MORAN:  That's correct, Your Honor.

3              THE COURT:  So are they ripe now?

4              MS. MORAN:  Your Honor, the government is -- believes

5    that we can proceed on the papers in this case.  As to the

6    defendant's first motion, we believe that --

7              THE COURT:  Ms. Moran, you're --

8              MS. MORAN:  This issue is --

9              THE COURT:  Ms. Moran --

10             MS. MORAN:  I apologize, Judge.

11             THE COURT:  Your connection is very unstable.

12             MS. MORAN:  Give me one moment.  I apologize.  We've

13   all been having issues today.

14             Is it any better now?

15             THE COURT:  Well, it comes and goes.  So maybe you

16   can go voice only?

17             MS. MORAN:  Sure.

18             (Pause.)

19             MS. MORAN:  Can everybody hear me?

20             THE COURT:  Yeah, I think that is better.

21             MS. MORAN:  I apologize, everyone.  I think we've all

22   been struggling with connectivity today.

23             To answer your question, Your Honor, we believe that

24   we can proceed on the papers as to the defendant's two written

25   motions.  One I believe is not jurisdictionally appropriate at

1   this time, given the defendant's filing of a notice of appeal.

2   As to the other, Your Honor, the defendant is requesting that

3   the government be compelled to create an inventory of all items

4   in discovery outside of the indices that have already been

5   provided to the defendant.  He provides no legal basis for this

6   request, and it's the government's position that the government

7   should not be compelled to create an inventory because the

8   defendant wishes to cross-reference that inventory with another

9   repository of data that another branch of government possesses.

10              THE COURT:  All right.

11              MS. MORAN:  And, Your Honor, as to the matter of

12  discovery, I have here with me AUSA Emily Miller who is a

13  leader in the discovery practice at the office.  To summarize

14  for Your Honor, there are some logistical concerns with giving

15  Mr. Pope a hard drive.  The chief logistical concern --

16  (internet dropped off) -- un-descriptive thumbs on a hard

17  drive.  And I want to, to the best extent possible --

18              DEFENDANT WILLIAM POPE:  I'm having trouble hearing

19  here.

20              THE COURT:  So am I.

21              MS. MILLER:  Can I just -- Your Honor, can you hear

22  me?

23              THE COURT:  Yeah, why don't you jump in, Ms. Miller.

24              MS. MILLER:  Okay.  Thank you.  On this issue, I've

25  sort of -- I was just told about this late Friday.  I did some

1    digging around this morning and I think the short answer is we

2    should probably regroup shortly.  But this is how I look at it,

3    having set up these databases:  We've paid for the defense to

4    have a database, it's fully staffed.  They have a vendor, the

5    vendor can give exports.  And like in any other case, if the

6    defense wanted materials on a hard drive, they have to procure

7    a hard drive and have materials to which Mr. Pope is

8    legitimately entitled downloaded to that hard drive.

9          Can you hear me okay?  Because you all look frozen.

10   Because I don't want to keep bothering you --

11         THE COURT:  Yes, go on.

12         MS. MILLER:  Okay.  So I contacted Shelli Peterson,

13   who is the lead FPD person on that side, the defense database

14   side of things.  The way I look at it, the discovery has been

15   provided.  It's there.  It's on the other side.  And the

16   court's already ruled about what Mr. Pope's entitled to or not.

17         So at this point we're really just talking about

18   logistics, and I don't think that these logistics are up to us

19   anymore.  Like, I think that Mr. Pope and his standby counsel,

20   Ms. Cubbage, should be going to Shelli Peterson and to the

21   defense Deloitte vendor and telling them that the judge has

22   ordered that Mr. Pope's entitled to sensitive materials on a

23   hard drive, and they can procure the hard drive, whatever way

24   they typically do, and provide those materials.

25         I think what Ms. Moran was trying to say, which I

1    don't think is really any of our business, is that, you know,

2    these materials are not going to necessarily -- you're not

3    going to necessarily be able to tell, by file names and things

4    like that, what these materials exactly are, that's why there

5    are indexes and things like that that we've already provided.

6    But it might look confusing when you're trying to look over

7    300,000 files, which is what this would be, maybe 400,000 on a

8    hard drive.  But I don't think we need to cross that bridge

9    right now.  I think we just need to get whatever it is that

10   Mr. Pope says he's entitled to on that hard drive from his

11   defense provider.

12          And I just don't think this should be the

13   government's issue anymore.  And, so, Ms. Peterson told me, she

14   was talking to her tech people and talking to her vendor -- I

15   only talked to her this morning for the first time at like

16   8 o'clock this morning.  She said she didn't think she would

17   have an answer in time for this hearing and she would get back

18   to me as soon as she could.

19          I think that's where we're at with this.  And I

20   should just say, obviously we provide new stuff every week.  So

21   if there's going to be a procedure where Mr. Pope gets provided

22   whatever is designated sensitive each week, that's another

23   thing for him and his standby counsel to work out with the

24   defense sector and the defense database administrator, which is

25   FPD.

1    MS. CUBBAGE:  Your Honor, may I be heard just briefly

2    on the logistics of that?  So when we first asked the

3    government to provide all the sensitive files, Ms. Peterson was

4    also asked by email to do the same.  I got no response from

5    Ms. Peterson.  This was months ago.

6        Secondly, we've worked with Deloitte to try to look

7    at even a fraction of what Mr. Pope is allowed to see.  They've

8    uploaded it to a file transfer protocol website where I'm only

9    given access.  I've asked both Deloitte and Ms. Peterson to

10   allow Mr. Pope to have credentials to the file sharing website

11   where, if I make a request to them to upload things, he can

12   download them himself.  We've gotten no response on that.

13       So this isn't the first time either the Deloitte

14   people, the federal public defender's office, or the government

15   has been made aware of Mr. Pope's inability to access the

16   materials that he's legally allowed to possess.  Maybe this is

17   what it takes to get someone to do this, and perhaps an order

18   from this Court requiring that to happen would be necessary at

19   this point.

20       THE COURT:  All right.  Well, Mr. Pope, why don't you

21   touch base with Ms. Cubbage, and Ms. Peterson, if need be.  And

22   then right now all I have is that notice in which you indicated

23   you might file a motion to compel.  So why don't you touch base

24   with Ms. Cubbage, and Ms. Peterson, if need be, decide what you

25   need to do, and if you have to file that motion to compel.

1    DEFENDANT WILLIAM POPE:  Yes, Your Honor.  And I'm

2    sorry you have to deal with all these technical details.  You

3    know, I did shoot that email out to Nicole to pass on to

4    Deloitte and the FPD back in early February, and at that time

5    we also sent it to the government.  I'm just trying to get

6    access to the discovery and actually be able to look at what

7    I'm entitled to possess.  And I haven't been able to get that

8    yet.  But we will touch base and do that.

9         THE COURT:  I'll need her to get the case moving as

10   well.

11        And, Mr. William Pope, are you available on that July

12   13th date as well.

13        DEFENDANT WILLIAM POPE:  Yes, Your Honor.

14        THE COURT:  Okay.  Ms. Cubbage?

15        MS. CUBBAGE:  (Nods head.)  Yes, Your Honor.  Sorry.

16        THE COURT:  That's all right.  You can join us on

17   that date as well.  And I don't know if any motion to compel

18   would be ripe by then, but if it is ripe by then, we'll take it

19   up then as well.

20        DEFENDANT WILLIAM POPE:  And, Your Honor, I did have

21   other issues.

22        THE COURT:  Sure.  Go ahead.

23        DEFENDANT WILLIAM POPE:  As you know, I filed that

24   appeal, and for that I received a notice on our district court

25   docket that one transcript had been prepared for that.  But

1    there were other hearings that we had where transcripts, I

2    believe, are relevant to the appeal.  For instance, we had a

3    hearing back in December, and there were other hearings as

4    well.

5            So for the one transcript that was prepared for me

6    there was no charge, but when I requested the other transcripts

7    that I believe are relevant, I was told there would be a bill

8    for that.  I don't fully understand the process of why some are

9    being charged and others aren't.  And I've requested -- I've

10   actually filed a motion on the appeals court side seeking the

11   appointment of a temporary advisory counsel to help me through

12   the transcript issue and some other procedural things.  But

13   Nicole has never dealt with appeals before, so she really

14   doesn't know the process for this either.  So I'm just --

15           THE COURT:  That will make three of us, because I

16   have no idea happens with respect to transcripts either.  But,

17   you know, to the extent that you need anything from me, file a

18   very brief motion of some sort.  But --

19           THE COURTROOM DEPUTY:  Judge, I was told by Nancy

20   that she was in contact with another court reporter who

21   supplied Mr. Pope with the transcript and she was going to send

22   out a bill to him, and I'm not sure if she's gotten around to

23   that.  But Mr. Pope will be billed for that.  But Nancy said

24   that she advised Mr. Pope that the transcript was not free, and

25   she would be charging for that as well.

1        THE COURT:  All right.  Well, maybe, Mr. Pope, maybe

2    Ms. Cubbage can put you in touch with someone on the defense

3    side that has a little bit more experience on how to get those

4    transcripts paid for.

5        DEFENDANT WILLIAM POPE:  Okay.

6        THE COURT:  It's, unfortunately, something I don't

7    know off the top of my head either.  So --

8        DEFENDANT WILLIAM POPE:  I appreciate that, Your

9    Honor.  And then just one final concern.  I had some recent

10   reporting in several news outlets that the FBI had been doing

11   illegal spying on January 6 defendants using FISA technology,

12   and I find that highly concerning.  And so I would move the

13   Court to order the government to cease any illegal spying and

14   to turn over anything that they have gathered during that to

15   the defense.

16       THE COURT:  All right.  That's likely something

17   you'll have to put in a written motion, if you want.  That's a

18   rather complicated issue.

19       DEFENDANT WILLIAM POPE:  Okay.

20       THE COURT:  Are you referring to the querying of the

21   702 database, or do you --

22       DEFENDANT WILLIAM POPE:  Yeah, I've just seen the

23   reports.  And I don't know -- I don't know who all was the

24   target of that, but if I have been a target or currently am a

25   target, I think that's inappropriate, that illegally spying on

1    defendants that way.  So if I need to put something in writing,

2    I will, but I just wanted to raise that to the Court today.

3              THE COURT:  Okay.  So I --

4              MS. MORAN:  Your Honor, the government's

5    understanding is that there is a notice provision to those laws

6    and that the government will fulfill its legal obligation.  I'm

7    happy to answer any written motion the defendant files.

8              THE COURT:  All right.  So just for your education,

9    Mr. Pope, I believe what you're talking about is the querying

10   of the 702 database.  And if you remember, back -- going back

11   to George W. Bush days, there was bulk collection -- post

12   September 11th there was bulk collection of communications and

13   then congress ended up putting together -- ratifying part of

14   that program, and it's referred to as 702.

15             So there's communications of a database created of

16   communications of foreigners, communications with foreigners.

17   So if you had a communication with your brother, for instance,

18   that wouldn't be in the database.  If you communicated with a

19   foreigner, if the foreigner was targeted, your communication

20   might be in there.  And I believe that if what you read is what

21   I think it is, the only -- there were some queries of January 6

22   names to that database.

23             So it would be rather limited, whatever is in that

24   database.  So it's not spying in the sense of someone's tapping

25   your phone line or your email or anything like that.  It would

1    be communications caught in that targeting of foreigners.  And

2    the reason foreigners get put in that database is typically,

3    although not exclusively, terrorism matters.  You know, I have

4    no idea who you communicate with, but the average American

5    citizen is not in that database.  But --

6         DEFENDANT WILLIAM POPE:  Okay.  As far as I know, I

7    haven't been communicating with foreign -- but, I -- it does

8    concern me that there'd be spy technology illegally used

9    against January 6 defendants.

10         THE COURT:  And DOJ -- you know, the reason that came

11   to light is because DOJ told the FBI that they shouldn't be

12   using the 702 database for those types of things.

13         And I believe the reason all of this came to light is

14   because an opinion, when I was the presiding judge of the

15   Foreign Intelligence Court, was declassified and some of those

16   details were made public.  I am no longer in that capacity as

17   of a couple weeks ago.  So I'm back to just doing my day job,

18   fortunately.

19         DEFENDANT WILLIAM POPE:  Congratulations, sir.

20         THE COURT:  Thank you.  My wife is thrilled.  So,

21   anyway, so it's not spying in the sense of, you know, like the

22   target -- people that are targeted under FISC in which their

23   communications are intercepted in real time.  But it's the

24   database of communications with foreigners in which the

25   foreigners have been targeted, assuming you and I are talking

1    about the same thing.  I suspect we are.

2              DEFENDANT WILLIAM POPE:  Yeah.

3              THE COURT:  But that's the context.  But if you need

4    to file something --

5              DEFENDANT WILLIAM POPE:  Just going off of reporting,

6    so I probably don't have the background on it that you do.  But

7    is it my understanding then that if the government did conduct

8    any illegal spying on a defendant, that they would notify them

9    of that, or --

10             THE COURT:  Not to my knowledge.  But, I don't -- you

11   know, I wasn't involved in any aspect of that, so I don't know

12   what the regulations are, the agency regulations are.  The

13   court wouldn't notify you, the Foreign Intelligence Court.

14             DEFENDANT WILLIAM POPE:  Okay.  So I would need to

15   file a motion, if I wanted to compel them to stop that or to

16   turn over a notice of what they had taken?

17             THE COURT:  You know, I think they've already

18   stopped.  But, why don't you look at my opinion that was

19   declassified and you probably will get a better sense of what

20   it is and what happened, and perhaps after that you can talk to

21   Ms. Cubbage and devise a game plan as to what, if anything, you

22   feel you need to do.

23             I'm not sure that there will be a lot of avenues for

24   you to deal with that.  But -- and, obviously, if there is

25   information that's exculpatory, I think it will end up, through

```
 1    different process, end up making its way to the prosecution
 2    team.  But usually the two things are not coordinated.
 3              DEFENDANT WILLIAM POPE:  Okay.  Thank you, Your
 4    Honor.  I'll look into it.
 5              THE COURT:  All right.  So we'll get back together on
 6    July 13th, at 2 p.m.
 7              I think all the pending motions toll the time between
 8    now and then.  Does anyone have a contrary view to that?
 9              (No response.)
10              THE COURT:  Mr. Searby, I see you nodding no, but --
11              MR. SEARBY:  There we go.  No, Your Honor.
12              THE COURT:  All right.  Mr. Pope, do you have a
13    contrary view of that?
14              DEFENDANT WILLIAM POPE:  No, Your Honor.
15              THE COURT:  Government?
16              MS. MORAN:  No, Your Honor.  Thank you.
17              THE COURT:  Okay.  All right.  I'll see you in about
18    a month.  You're excused.
19              MS. MORAN:  Thank you.
20                          *   *   *
21
22
23
24
25
```

1               CERTIFICATE OF OFFICIAL COURT REPORTER

2

3        I, JANICE DICKMAN, do hereby certify that the above and

4    foregoing constitutes a true and accurate transcript of my

5    stenographic notes and is a full, true and complete transcript

6    of the proceedings to the best of my ability.

7                          Dated this 3rd day of September, 2023

8

9

10                         _____

11                         Janice E. Dickman, CRR, CMR, CCR
                           Official Court Reporter
12                         Room 6523
                           333 Constitution Avenue, N.W.
13                         Washington, D.C.  20001

14

15

16

17

18

19

20

21

22

23

24

25