**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> WILLIAM ALEXANDER POPE, <br><br> Defendant. | Case No.: 1:21-cr-00128-RC |

# RESPONSE TO THE GOVERNMENT'S OPPOSITION TO INVENTORY AND PRODUCE BRADY MATERIALS
## (ECF NO. 161)

The United States Supreme Court in Brady v. Maryland, 373 U.S. 83 (1963) found that the government violates a defendant's right to due process if they withhold evidence that is material to a defendant's defense against a determination of guilt.

Rule 16(a)(1)(E)(I) of Federal Criminal Procedure requires that "upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph" materials within the government's possession if "the item is material to preparing the defense."

In ECF Nos. 149 and 155, the two motions I have made to supplement ECF No. 113 (which seeks to compel the government to inventory and produce all Capitol Police CCTV that has been in their possession) I raised the example of the government's failure to comply with Rule 16 in the Oath Keepers trial. That instance demonstrates that the government failed to produce Capitol CCTV that was material to cross-examining multiple witnesses (Dunn and Lazarus) who gave false testimony against the defendants, and that violation of Brady was material to a determination of guilt.

The government's extreme and improper use of 18 U.S.C. 1512(c)(2) in January 6 cases has led to the government taking on massive systemic risk, and that risk and procedural chaos has been recklessly dumped into the entire court system by the government. The government is also pushing massive systemic risk into the District Court by hiding relevant materials among a haystack of 8 million January 6 discovery documents housed in a slow and poorly functioning discovery system. By choosing a technology system that inhibits efficient and total review, the government has prevented defense teams from finding relevant and exculpatory materials. The challenge is even greater in my case, since I am prevented from directly accessing this IT system to search the government's discovery haystack; and this summer, the government asked this Court to throw me in the D.C. Gulag to prevent me from examining any evidence at all. But while these impediments to meaningful discovery access obstruct due process, the even greater evil is the government withholding relevant materials from the defense entirely. The Court has already felt the tip of this systemic risk iceberg with the Dunn and Lazarus perjury. But the government's titanic discovery endeavor will take on more water as the facts of January 6 continue to seep past the flimsy hull of the government's novel approach to subverting Brady.

When responding to my second supplemental motion (ECF No. 155), the government failed to address their Brady failures related to the Dunn and Lazarus perjury. The government also insinuated that I am merely speculating that some of the CCTV might be exculpatory to my case (ECF No. 161 at 2). I would agree that speculation of withheld Brady is warranted by every January 6 defense team since the government intentionally withheld video of Lazarus in the tunnels that would have been used by defendants to impeach both Lazarus and Dunn.

But in my case, I am not merely speculating that the government has withheld cameras that are relevant and exculpatory. I know the government has withheld materials because I have been to the Congressional terminals and have seen cameras the government has not produced.

Two of the accusations that the government has brought against me are 18 U.S.C. 1752(a)(1) and 18 U.S.C. 1752(a)(2), which are "Entering and Remaining in a Restricted Building of Grounds," and "Disorderly and Disruptive Conduct in a Restricted Building or Grounds." To reach a determination of guilt on these two charges, the government must prove beyond a reasonable doubt several key components of these statutes, but one of the core components is the government's claim that the grounds were restricted. This component is also related to several of the other charges brought against me, so any evidence that would show the grounds were not officially restricted, or that officers allowed people onto the grounds is both material to my defense, and subject to the government's Rule 16 production obligations.

On prior occasions, and in just the last week, the government has produced 302s to the defense documenting the government's interviews of officers who were on the NE plaza on January 6, 2021. In many ways, these statements are favorable to my defense, but these interviews indicate that the government intends to make events on the NE plaza a central part of their case-in-chief. Because of this, the government has a Brady obligation to produce all materials relevant to the NE Plaza, including all Capitol CCTV cameras.

At the congressional terminals, the CCTV map shows that there are four CCTV cameras at the Delaware Ave. guardhouse. Yet the government has only produced one of these four cameras in discovery. The New Jersey Ave. guardhouse also has four cameras near the SE Plaza, but the government has withheld one of them from discovery.



Figure 1: The government has only produced one of the four cameras at the Delaware Ave. Gaurdhouse near the NE Plaza.



Figure 2: The government has only produced three of the four cameras at the New Jersey Ave. Guardhouse by the SE Plaza.

These guardhouse cameras are just two of the many examples I could give the Court of CCTV cameras the government has withheld. As I've noted in previous filings, the government has withheld more than 1000 Capitol CCTV cameras from discovery. But for my case, the NE guardhouse is incredibly important because these missing cameras captured crucial contextual information that is exculpatory to me as a defendant, and material to the outcome of this case.



Figure 3: The Delaware Ave. Gaurdhouse cameras have a direct view of the Capitol's NE Plaza.

To illustrate this, I have included Sealed Exhibit 1, which includes footage from CCTV camera 0812 that looks towards the circle planter and the Delaware Ave. Guardhouse. At the 2:25 mark of this exhibit, I have synced in a public video recorded by Marcus Dipaola[1], which shows police allowing protesters past the gates. For the first part of the video, the CCTV shows police allowing people to walk past the circle planter that my brother and I were peacefully standing on. At the 2:28 mark of the video, Dipaola's footage shows police allowing people past barricades. My brother and I only left the planter once we turned and saw what we perceived to

---

[1] A publicly available version of the DiPaola video without the CCTV Camera 0812 sync can be accessed here: https://archive.org/details/q8CA9ejbJgbghbBiN

be the police allowing people onto the plaza.² But while Camera 0812 and Dipaola's video will be important exhibits at my trial, Camera 0812 does not show the full context of this scene, or what happened immediately afterwards. For that reason, the guardhouse cameras are crucial, material evidence for my defense, which the government is withholding from me.



*Figure 4: The DiPaola video has been seen millions of times, leaving many with the impression that police allowed people past the gates. This is the same impression my brother and I had when we turned around and saw it in person.*

---

² I am also including Sealed Exhibit 2, which shows the DiPaola sync at 25% speed. This is clear evidence that our movement forward only began when we saw what we perceived to be police allowing people onto the plaza.

The government seems to be very nervous about the facts of the NE Plaza, because just this week Mr. Ontell sent me a video that crops out contextual and exculpatory information from the original video from which it was sourced.



Figure 5: The video produced this week by the government crops out exculpatory information from the original video.



Figure 6: The original, unaltered video shows that numerous persons pulled bike racks into my brother and I.

The government is likely to use deceptive exhibits like this in trial, so I need as many angles of this moment, and who was involved, as possible. The Delaware Ave. guardhouse cameras capture some of this information, but the government has intentionally withheld these Brady materials from discovery.

As noted before, this evidence being withheld by the government – more than 1000 CCTV cameras in all - creates massive systemic risk both for the government and the District Court. This withholding of Brady materials also denies defendants due process. My motion to compel the government to inventory and produce all CCTV they have possessed allows the Court to begin mitigating this systemic risk, and it allows for me, the defendant, to have access to Rule 16 materials which will deter a jury from wrongfully finding guilt in my case.

I therefore again move that my motions on this matter be granted in full.

By: William Pope

/s/

William Pope
Pro Se Officer of the Court
Topeka, Kansas

Certificate of Service
I certify that a copy of this was filed electronically for all parties on December 19, 2023.

/s/
William Alexander Pope, Pro Se