# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:21-cr-00128-RC |
| v. | |
| WILLIAM ALEXANDER POPE, | |
| Defendant. | |

# REPLY TO THE GOVERNMENT'S REPLY (ECF NO. 174) TO MY RESPONSE (ECF NO. 165) TO THE GOVERNMENT'S OPPOSITION (ECF NO. 161) TO MY SECOND SUPPLEMENTAL MOTION (ECF NO. 155) TO MY MOTION TO COMPEL THE GOVERNMENT TO INVENTORY AND PRODUCE ALL CAPITOL POLICE CCTV FOOTAGE (ECF NO. 113) WHICH WAS FILED BECAUSE THE GOVERNMENT IS WITHHOLDING BRADY MATERIALS

On December 30, 2023, the government filed ECF No. 174 in reply to ECF No. 165. The government's reply is quite unusual, even for a government filing, as local rule 47(d) only permits the original moving party to reply to an opposition. There is no allowance for the opposing party to submit a second memorandum. Local rule LCrR 47(d) also requires that replies be filed within seven days. The government filed their second memorandum eleven days after I submitted ECF No. 165. The government has submitted their unusual, desperate, second reply because they understand that if my motion to compel production is granted, the government will be forced to produce Brady materials they have withheld from hundreds of January 6 defendants. Since our government has taken the liberty to disregard local rules, I am taking the liberty to file this additional reply, since I am the original moving party.

As I noted in ECF No. 165. at 2, these Brady violations are a massive systemic risk that the government foolishly took on and then dumped on the Courts. Attorneys in U.S. v. Nordean

(1:21-cr-00175) have indicated they intend to litigate the matter of CCTV withheld by the government, since those withheld recordings show that government witnesses (Dunn and Lazarus) were in completely different parts of the Capitol and what they testified to was factually impossible. The Court should note that the government, in responding to this matter, has not denied they withheld Brady materials from Nordean, et al, that were material to a finding of guilt. The government also has not denied that the guardhouse cameras I pointed out in ECF No. 165 at 3, do indeed exist and are material to my defense. Instead, the government used a flourish of words in ECF No. 174[1] to muddy the waters and pretend they were contesting the existence of these cameras without giving a flat-out denial to the Court.[2]

But if there are no guardhouse cameras to produce, why is the government freaking out about them and filing unusual, desperate, second replies?

The government hopes the Court will abandon simple logic; that even though the placement of cameras on the east side of the Capitol was designed to be symmetrical, the government wishes the Court to believe that for the two guardhouses there was no construction design symmetry; that some genius put three cameras on the south guardhouse, but only wired one camera to the north guardhouse. Such intentional asymmetric design would leave Capitol Police blind in certain directions at one of their busiest entrances.

---

[1] In ECF No. 174, the government also contended that a video they recently produced in discovery (which crops out suspicious actors who pulled bike racks into my brother and I), was sourced from the internet, rather than created by the government. However, the source the government obtained the video from is a so-called 'sedition hunter,' which is a group of individuals the government has listed in court filings as being government informants. On Monday, December 18, 2023, I asked Mr. Ontell whether the video in question had been created by a government asset. Mr. Ontell, did not respond, so I followed up on December 22, 2023, again asking if this particular 'sedition hunter' was a government contractor or CHS. Mr. Ontell has not yet answered this simple question, so it seems likely that the manipulated video, which crops out exculpatory information, was created by a government asset.

[2] The government also muddily insinuated to the Court in ECF No. 86 at 3, that I was wrong about the undercover police provocateurs, before the government finally admitted that I was completely right in ECF No. 90 at 2.

Asymmetric camera placement of this kind would also imply that Capitol Police have a lower CCTV priority for the Senate side than they do for the House side of the Capitol.

Yet despite the government desperately hoping the Court will suspend basic critical thinking on this matter, the reality is, I am right. There are four cameras on each guardhouse, and the placement is entirely symmetrical. To illustrate this symmetrical design, I am including Sealed Exhibit 1, which includes screenshots from guardhouse CCTV cameras. The first screenshot comes from the only North Guardhouse camera the government has produced. The second screenshot comes from a camera on the South Guardhouse that symmetrically mirrors the camera from the North Guardhouse. The third screenshot comes from a South Guardhouse camera that faces towards the East Plaza and looks directly at the large round planter on the south end of the plaza. The government has not produced the North Gaurdhouse camera that symmetrically mirrors this perspective from the South Guardhouse – a perspective that would have captured events that are material to my defense.

I filed my original motion to compel the government to inventory and produce all CCTV (ECF No. 113) because I went to the Congressional CCTV terminals and saw that these and other cameras appear on the terminal maps but are missing in discovery. Because of this, I filed ECF No. 113 while I was still in Washington.

However, despite the government suggesting that I had the opportunity to view the footage from these cameras when I was in Washington (ECF No. 174 at 1), I did not. While the location of these cameras was visible on the terminal map, certain January 6 recordings, including from these specific cameras, had not yet been uploaded to the terminals. However, I was told that Congress does have the January 6 video from these cameras. And due to the position of these cameras I believe these recordings are relevant and exculpatory in my case.

Furthermore, it is the responsibility of the Department of Justice, not the Legislative Branch, to directly provide discovery to defendants (See Protective Order, ECF No. 26, Section 12). Thomas DiBiase has sworn that all Capitol CCTV from this time period was provided by Capitol Police to the Department of Justice (ECF No. 71-1 at 5). The problem is those Legislative Branch materials have not yet been relayed in full to the Defense by the DOJ.

The government has only produced 650 Capitol CCTV cameras[3] in discovery. Yet DiBiase swears that USCP produced more than 14,000 hours to the FBI for an eight-hour period. If the Court were to take out a calculator and divide 14,000 hours by the 8-hour time period, the sum of this calculation would not be 650 cameras, but 1750 cameras.[4]

Table 1: By the end of October 2021, the government had produced four batches totaling 638 USCP CCTV cameras in discovery. However, on December 14, 2021, the government removed 702 USCP CCTV video files from discovery under the pretense that some of that video had been designated as 'security information' by the Capitol Police Board. The government later restored 642 of those 702 files on January 14, 2022, but subsequent CCTV indexes listed only 637 cameras, rather than 638, so the government removed an entire camera from discovery. Since then, 13 additional cameras have trickled in for a total of 650.

| Global Production Number | Production Date | Number of CCTV Cameras Produced |
|---|---|---|
| Global Production No. 2 | Friday, September 24, 2021 | 118 |
| Global Production No. 3 | Friday, October 1, 2021 | 339 |
| Global Production No. 4 | Friday, October 8, 2021 | 58 |
| Global Production No. 5 | Friday, October 22, 2021 | 123 |
| Global Production No. 12 | Tuesday, December 14, 2021 | -1 |
| Global Production No. 24 | Wednesday, January 18, 2023 | 4 |
| Global Production No. 24 | Friday, January 20, 2023 | 1 |
| Global Production No. 25 | Friday, February 17, 2023 | 8 |
| | TOTAL: | 650 |

---

[3] To evidence the total of 650 camera, I am including Sealed Exhibit 2, which is the government's Global Discovery Productions 1-29 Letter. This letter lists when the cameras were produced in discovery. Table 1 summarizes when the government made changes to the number of cameras available to defense teams.

[4] Even though 14,000 divided by 8 is 1750, DiBiase swore there were more than 14,000 hours, so there must be more than 1750 cameras. Speaker Johnson recently released a statement (See: https://www.speaker.gov/speaker-johnson-statement-on-january-6-2021-u-s-capitol-security-tapes/) saying there are 44,000 hours of CCTV from January 6. Dividing 44,000 hours by 24 hours, shows there would need to be at least 1834 cameras to record 44,000 hours of video in one day. The government's 650 camera production falls far short of this!

The DiBiase Declaration (ECF No. 71-1) is a sworn statement that the government is withholding evidence – at least 1100 CCTV cameras. These missing hours are painfully evident in January 6 cases, such as Nordean, et al, where the government violated Section 12 of the Protective Order, by not fulfilling their "obligation to produce exculpatory and impeachment information." By opposing my motion to compel production, including the guardhouse cameras, the government seeks to violate Section 12 of the Protective Order in my case as well. As I noted in ECF No. 165 at 6, the government has not produced vantage points from the guardhouse that are material to my defense. The government has intentionally withheld these Brady materials to deny me due process and obstruct proceeding in this case.

The Court needs only the sworn statement of Thomas DiBiase (14,000+ hours), the government's own global production letters (650 cameras), and a basic calculator to know that the government has failed to produce all 1750+ Capitol CCTV cameras in discovery.

I therefore again urge that my motion on this matter be promptly granted in full.

By: William Pope
/s/
William Pope
Pro Se Officer of the Court
Topeka, Kansas

Certificate of Service
I certify that a copy of this was filed electronically for all parties on January 1, 2024.
/s/
William Alexander Pope, Pro Se