## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:21-cr-00128-RC |
| v. | |
| WILLIAM ALEXANDER POPE, | |
| Defendant. | |

# REPLY TO THE GOVERNMENT'S OPPOSITION (ECF No. 207) TO DISMISS CHARGES DUE TO SELECTIVE PROSECUTION.

In the government's opposition to my motion to dismiss, they have made two basic arguments. The government claims that I do not fall into a protected class, and they argue that the example of Epps alone is not enough to demonstrate selective prosecution. However, in *United States v. Armstrong*, 517 U.S. 464 (1996), the Supreme Court found that prosecutorial discretion is subject to constitutional constraints, including the "equal protection component of the Due Process Clause of the Fifth Amendment." All American citizens are considered a protected class by our Constitution. Among these rights is the right to equal protection under the law. This equal protection is not restricted to guarding against prosecutorial selectivity on the basis of race, religion, sex, etc.; our Fifth Amendment due process rights encompass protection against any "arbitrary classification."

In the case of Mr. Epps, the government identified him as one of their first 20 wanted individuals, but for nearly three years chose to file no charges on Mr. Epps. After considerable public scrutiny, the government eventually alleged that Mr. Epps engaged in felonious conduct, yet favorably allowed him to pre-plea to a single misdemeanor.

As a citizen with a right to equal protection under the law, it occurs to me that had I pushed a sign into police and publicly called for people to go into the Capitol, I too might have received the government's favor. I presume it is only my lack of these provocative behaviors that prevents me from being arbitrarily classified as Mr. Epps and receiving the same favored treatment. However, the government claims that their favor towards Epps is not evidence enough, so in reply to the government's opposition, I am providing several additional examples. These examples include individuals who are both charged and uncharged, with the uncharged examples already being widely known by the government and the public. All of these individuals engaged in provocateur behaviors that I abstained from, yet they have been treated more favorably by the government than I or my brother have.

**Pam Hemphill**

Like Epps, Pam Hemphill urged people to go into the Capitol on January 5 and January 6 (21-cr-00555). At a little after 11 a.m. on January 6, Hemphill began following the Proud Boys and repeatedly suggesting they help her push her way into the Capitol.

Video shows that at 1:44 p.m., Pam Hemphill became the first person to push through police lines on the east side of the Capitol and that she stayed behind police lines by herself for approximately seven minutes, during which time she repeatedly called for others to join her. Hemphill eventually returned, but again became the first person past the east center lines at 1:59 p.m., leading the entire crowd onto the east plaza. When Capitol Police formed a line on the east center steps, Hemphill was again the first person past them. Hemphill eventually entered the Capitol through the Columbus Doors. When police formed a line in the rotunda, Hemphill once again became the only person to cross it.

Incredibly, Hemphill may be the only person from January 6 to be the first across four different police lines. Yet despite Hemphill sounding like a broken record continuously urging others to help her push into the Capitol, and despite Hemphill pushing past four different police lines, the government bestowed extreme favor on Mrs. Hemphill (compared to their treatment of my brother and I), charging her with only misdemeanors.

This leaves me confused as to what behaviors the government is seeking to deter. Would I have received fewer charges had I repeatedly implored the Proud Boys to push into the Capitol? Should I have entered the East Plaza when no one else was there, and called for others to cross the line? Should I have tried to outrun Mrs. Hemphill to the steps? This doesn't make sense.

**Treniss Evans**

Shortly after I began representing myself, Mr. Crawford raised the possibility of a felony plea deal. I asked Mr. Crawford why the government was wanting me to plea to Obstruction with a range of 41 to 51 months when some felony Obstruction defendants like Treniss Evans were receiving misdemeanor pleas. This disparate treatment continues to confuse me, since Mr. Evans was captured on video bullhorning for people to bring rifles and rope and telling them to ignore police crowd control devices as he marched to the Capitol. Stranger still is that the Capitol Police issued a BOLO on Mr. Evans (considering him potentially armed and dangerous) half an hour before any protestors were even on Capitol grounds, yet now he is favored more than I.

Would I have received a misdemeanor plea offer had Capitol Police considered me armed and dangerous? Should I have brought a bullhorn to D.C. and incited the crowd to bring rifles and rope? Should I have drunk whiskey inside the Capitol? To me these questions sound absurd,

but for some strange reason, the government has favored Mr. Evans with a misdemeanor deal, while the government continues to seek 30 years in prison for me.

**Megan Paradise**

Like Epps, Paradise was captured on video near the Ellipse telling people to "storm the Capitol" when the President finished speaking. Paradise eventually went to the east lines and again bullhorned for the crowd to go inside the Capitol, specifically saying she didn't care if she got arrested. In addition to this, Paradise engaged in direct confrontation with police at the bike racks during multiple attempts to push through. Paradise was also involved in the push up the east center steps, and then bullhorned for people to push forward and to take shields from police near the Columbus Doors. Paradise eventually became #9 on the FBI wanted list.

Strangely, Paradise met with the FBI shortly after January 6, and gave them her phone. The government has produced the contents of this phone in evidence, but Megan Paradise still hasn't been arrested despite saying she didn't mind being arrested on January 6.

Among the contents of her phone are several videos showing Paradise standing behind and right beside Mr. Epps on the morning of January 6 at 15th and Constitution Ave. Video also shows Megan pushing past police to get into the Columbus Doors.

In one video, Paradise records her feet on a desk in Speaker Pelosi's office at the moment Mr. Richard Barnett walks in the room. Barnett, inspired by Paradise, then sat at the desk next to Paradise and put his boots on that desk – a moment that became a viral image.

Yet while Barnett is languishing in prison, the government has seemingly bestowed extreme favor on Megan Paradise. Would Bigo have been better off if he had stolen a signed baseball from Pelosi's office like Paradise did? Would I have been better off had I stood by Mr.

Epps on the morning of January 6, or bullhorned for people to storm the Capitol like Paradise did? Did I err in not bullhorning that I didn't care if I were arrested? Perhaps I should have bullhorned for the crowd to take police shields so that I too could avoid charges? Why is the government treating this provocateur more favorably than my "entirely peaceful" behavior?

**Ronald Loerhke and James Haffner**

In lieu of dropping these selective charges, perhaps the Court could instead elect to put my case in eternal magistrate limbo like the strange case of Loehrke and Haffner, defendants who were arrested on a felony complaint in December 2021, but two years later have still not been indicted by the government despite them being at the initial barricades with Epps and engaging in a coordinated effort to pull police away from the Columbus Doors. If their case need not ever be brought up from the magistrate level to bother the District Court, why should mine?

**Doug Hagman and Sam Andrews**

In mid-December, Doug Hagmann (who claims he has been an FBI informational and operational asset) and Sam Andrews (who claimed during Ferguson that he had worked compartmented operations for a 3-letter agency) called for 500k armed men to march on Washington on January 4. On January 6, Andrews and other individuals at the Capitol were reporting live to Hagmann's online broadcast when Hagmann ordered them to "breach the chambers." Hagmann also claimed to have 140+ of his people inside and around the Capitol. Yet despite this seeming like a major, coordinated conspiracy by Hagmann and Andrews, the government has strangely showed them extreme favor and ignored them completely. Would I have been better off had I called for 500k armed men to march on Washington? Why is the government deterring my "entirely peaceful" actions and not theirs? This is bizarre!

**Keith Lee and Kenny Lee**

Prior to January 6, the Lee brothers were known for organizing massive 'Drag The Interstate' convoys across the country. In the days immediately prior to January 6, the Lee's circulated a flier advertising "Operation Occupy the Capitol" scheduled for January 6 at noon.



On January 6, video shows that the Lee brothers were on the east side of the United States Capitol at noon, encouraging the crowd to break through police lines and suggesting that police wouldn't be able to arrest all of them if everyone goes at once. The Lee brothers eventually entered the Capitol through the east Columbus Doors, yet despite being some of the most notable provocateurs, they have not been arrested by the government.

In U.S. v. Caplinger, 21-cr-00342, ECF No. 46 at 46, the government sought to justify a sentence request of three months in prison and 36 months of probation, in part because Caplinger had posted the Lee brother's 'Operation Occupy the Capitol' flyer to social media in later

December. Likewise, in U.S. v. Barnett, 21-cr-00038, the government cross-examined Mr. Barnett on him sharing the 'Operation Occupy the Capitol' flier to social media. The government also cited Barnett's use of the flyer as justification for requesting that Mr. Barnett be sentenced to 87 months in prison (21-cr-38, ECF No. 199 at 4).

Rather than make an example of the Lee Brothers, whose logo is on the flyer and who urged people to rush police lines all at once, the government has thus far given the Lee Brothers a pass, while bringing down the hammer on those who merely reshared their flyer.

And why should the Pope brothers, who did not share the 'Occupy' flyer, have to fight for three years in court and face thirty years of felony and misdemeanor charges, if the Lee brothers do not? Would the government have even bothered arresting me if I too were captured on video organizing people to rush police lines in mass?

**Conclusion**

Despite D.C. U.S. Attorney Michael Sherwin coming out on January 7, 2021, saying that those who report themselves would be treated more favorably, the DOJ's selective handling of these cases shows us that the exact opposite has been true. The government has misrepresented my actions from the beginning (See ECF No. 147 at 4) and has bestowed their most severe charges on me for abstaining from violence or provocateur behaviors of Epps, Hemphill, Paradise, Evans, Lee, Hagmann, and Andrews.

This filing is full of questions, because I don't understand why these others have received the government's selective favor, while I have received the government's selective scorn. To me, this disparity is not equal justice.

Having gone through this experience, I must give advice to those considering attending future protests at the Capitol. First, I recommend you stay home because the January 6 prosecutions have had a significant chilling effect on First Amendment speech and press activity. But if you do decide to exercise the First Amendment at the Capitol, it seems you can greatly minimize your odds of being prosecuted severely if you repeatedly tell people to go inside the Capitol and that you don't care if you get arrested. At least this is what the examples of Epps, Paradise, Hemphill, Lee, and others have shown us.

In the January 6 selective prosecutions, the DOJ has established clear deterrents against self-reporting and deterrents to agreeing to voluntary interviews. Unless you were a provocateur on January 6, the DOJ's message is clear; self-reporting will only hurt you. The pragmatic legal path (given these DOJ deterrents) is to be as uncooperative as possible. These charging practices seems to run counter to the government's 'raindrop theory' (ECF 147 at 12) since one would think the government would prioritize charging the most influential raindrops, but it seems the government loves people like Megan Paradise who bullhorned to take police shields, and people like Hemphill who tried to convince Proud Boys to push their way into the Capitol.

For those who were present on January 6 who are still wondering if they will be arrested, consider that the five-year statute of limitations expires in less than two years. You can play a numbers game. The so-called 'sedition hunters' have identified ~3400 people who went inside the Capitol, and recently, the DOJ has been charging less than 300 a year. More than 2000 of 'insiders' remain uncharged, and most of them will avoid prosecution entirely unless the rate of arrests drastically increases. It sucks for those of us who the DOJ selectively decided to screw over with extreme charges, but our loss is apparently your gain. Freedom for the many is at the expense of the few. Equal justice comes to those who wait out the statute of limitations, not those

who self-report. Perhaps the DOJ could have settled all cases equally had they not gone so extreme on some of us, but nobody is accusing the government of being logical or fair.

Being only a Pro Se defendant, I admit that I am untrained in the law, but even a novice like myself can see that for my brother and I to face more severe charges than some of the most provocative individuals from January 6 is bizarre, and not in any way equal protection under the law. I in no way encourage the provocateur behaviors I've described above, and I write this with satire included because laughing is the only way for me to make sense of these disparities, but I do file this reply will all respect to the Court.

By: William Pope

/s/

William Pope

Pro Se Officer of the Court

Topeka, Kansas

Certificate of Service
I certify that a copy of this was filed electronically for
all parties of record on February 6, 2024.

/s/
William Alexander Pope, Pro Se