# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

WILLIAM ALEXANDER POPE,

Defendant.

Case No.: 1:21-cr-00128-RC

## MOTION TO COMPEL IDENTIFICATION OF MATERIAL FBI WITNESSES AND PRODUCTION OF RELATED DISCOVERY

Three years ago today, the government arrested me on a complaint related to events at the United State Capitol on January 6, 2021. But had the government listened to the observations that their own agents made while in the crowd at the Capitol, those exculpatory facts may have prevented my arrest entirely. Yet three years later, the government continues to ignore what their agents observed related to my case. In fact, the government has failed to notify me that these FBI agents were even in the crowd, that they made exculpatory observations, and that they collected photographic and video evidence relevant and favorable to my defense. For these reasons, I have no choice but to motion this Honorable Court to compel the government to identify all FBI agents who were material witnesses at the Capitol, and to produce all photographs, videos, and records related to their presence. Furthermore, a former FBI agent, John Guandolo, has sworn under penalty of perjury that he was in the crowd on the east side of the Capitol with an FBI agent, and has said in interviews that he was with several active-duty FBI agents on January 6, and that he and those agents have been interviewed by the FBI regarding their observations. I therefore must move this court to compel the government to produce all FBI 302s related to John Guandolo and these active-duty FBI agents who were in the crowd at the Capitol.

**Form FBI John Guandolo was with Active-Duty FBI Agents at the Capitol on January 6**

In a sworn declaration dated November 14, 2022 (See Exhibit 1: Expert Report of John Guandolo in the case of *Kowalke v. Eastman,* 3AN-22.07404 CI, Superior Court of the State of Alaska), John Guandolo attested under penalty of perjury that he had previously worked for the FBI as their liaison to Capitol Police (Section 1), and that he "was present with an FBI colleague – Special Agent – near the Capitol on January 6, 2021" (Section 3).

Guandolo's sworn statement is consistent with his past public statements. In a January 7, 2021, *America Can We Talk* interview[1] Guandolo said of the crowd at the Capitol "I was shocked at the restraint they showed – I was actually present yesterday afternoon with people in law enforcement – people I knew in federal and local law enforcement, and we kind of remarked about that – like I was amazed people were as restrained as they were" (see the 3 minute 55 second mark). Guandolo also attested that Capitol Police waved people up the steps to the Capitol (see the 8-minute mark), and that he and his "colleagues" were watching and have video and photographic evidence (see the 10-minute mark).

Though in most interviews Guandolo says he went to the Capitol to pray, during his testimony in *Kowalke v. Eastman* (See Day 5[2] from 9:39 a.m.), Guandolo was asked on cross-examination whether he was there at the Capitol "on the job." Guandolo answered in an unusually choppy way: "I was actually, uh, there, uh, originally, I was invited, uh, on my own time and I ended up, uh, I will, I will say, use your phrase 'on the job' because I did, uh, report as, uh, the leader of UTT from the Capitol while I was there." In a follow-up question, counsel

---

[1] Guandolo's America Can We Talk interview from January 7, 2021, can be accessed here: https://rumble.com/vcjoex-john-guandolo-acwt-interview-1.7.21.html

[2] The Day 5 proceedings of Kowalke v. Eastman can be viewed here: https://youtube.com/watch?v=tOHX1sTANAA

for the plaintiff asked whether Guandolo was "on the job" in a law enforcement capacity. Guandolo answered no.[3]

When asked whether he had been in a restricted area at the Capitol on January 6, 2021, Guandolo testified, "I wasn't in the restricted area of the Capitol. I don't even know what you're referring to." In follow-up, counsel for the plaintiff asked whether Guandolo had known from his experience as FBI Liaison to Capitol Police whether Capitol grounds are on occasion restricted to public access. Guandolo testified, "yes sir." Guandolo also testified that he was aware that part of the grounds was restricted on January 6, however, Guandolo was unable to define what that restricted area was. Guandolo testified, "I can't speak to that directly," and further testified that he believed he was in a permitted area. Guandolo's lack of knowledge of what was restricted is relevant to my case, since Guandolo witnessed people entering the East Plaza, and as I detail in this motion, CCTV also shows that Guandolo went onto the East Plaza with individuals he has claimed work for the FBI.[4]

Guandolo also testified that, "I personally witnessed individuals walk up the stairs to the Capitol, have conversations with the two or three police officers that were stationed midway up, I watched the Capitol Police point up the stairs, and they calmly . . . went up and went in those doors . . .  Capitol Police watched them, and the police at the top of the stairs didn't stop them." (See *Kowalke v. Eastman* Day 5 testimony from around 10:11 a.m.).

---

[3] Guandolo's 'UTT' job stands for his now-defunct organization, Understanding The Threat, which Guandolo spun from his Department of Defense work in asymmetric and information warfare in 2012.

[4] If a former FBI Liaison to Capitol Police and active-duty FBI were not able to discern that the East Plaza was a restricted area, how is someone from out of town who has no such experience to be expected to discern this?

During another interview[5] at a Reawaken America Tour event Guandolo said "I actually spent most of the day with a couple colleagues that were still active-duty FBI . . . and when they arrived, I walked over and was hanging with them, and the guy I came with, he was hanging with the other people" (See from the 17:56 mark). Guandolo added, "so we were sitting there chatting and as things started getting more energized and the police took down the barricades, and we watched all these guys – and I actually took a quick video of it going up the steps – and we were watching, you know, guys walking up the steps talking to Capitol Police with big Trump banners and the police would like point up the stairs and these guys would walk up the stairs and we were like 'I guess they don't care if they go in.'"



*Figure 1: Guandolo's description of the two active-duty FBI colleagues he was with when he recorded people going up the steps can be matched to the two men that CCTV camera 7231 recorded Guandolo next to at that precise time.*

Guandolo's assertion that he and active-duty FBI agents were seemingly in agreement that they perceived Capitol Police didn't care if people entered the East Plaza or the Capitol

---

[5] Guandolo's Reawaken America Tour interview can be accessed here: https://rumble.com/vrnodu-john-guandolo-reawaken-america-tour-dallas.html

itself, is highly relevant and exculpatory to my own case, since these agents directly witnessed these incidents and can testify favorably on my behalf.

During the same Reawaken interview, Guandolo acknowledged they "stayed there [at the Capitol] pretty late into the evening" (See from the 20:46 mark). Guandolo also noted that, "of the several FBI guys I was talking to that day, the two that I knew and then several guys I got introduced . . . there was a pretty good agreement, like whatever was going on here there was much more to it, but it's being portrayed as something its absolutely not." This statement alone indicates that there were numerous active-duty FBI agents in the crowd at the Capitol on January 6, who were in contact with John Guandolo. The government has a clear obligation to identify these material witnesses whose testimony will be favorable to my defense.

In the January 6 documentary *Capitol Punishment*[6], Guandolo again said, "for a good portion of the day I was with law enforcement, FBI, etc..." (See from the 55-minute mark).

In a 2022 interview[7] with Tomi Lahren, Guandolo said that the event he attended on the east lawn of the Capitol "was set up by people that I used to work with in Washington, D.C. – really good folks, and they set up this, basically a time, a permitted space, right on the grass, right in front of the Capitol, to pray" (See the 23-minute mark). This interview was done in the summer of 2022, and Guandolo noted that "a few weeks ago, I got interviewed, finally, by the FBI." This statement indicates that the FBI possesses discoverable information on Mr. Guandolo, and likely have at least one FBI 302 memorializing their conversations with Guandolo (See the 26-minute mark).

---

[6] An archived version of Capitol Punishment can be accessed here:
https://archive.org/details/PyhyHiWv6rfC7wCos

[7] The Tomi Lahren interview can be accessed here: https://youtube.com/watch?v=RtecSRgW1eA&t=5s

In a January 27, 2024 interview[8] on Cowboy Logic, Guandolo said of the FBI agents he was with, "the ones who were there with me, um, both got formerly interviewed and had to explain themselves, which is interesting, they were not. . . both had taken the day off, so they weren't in an official capacity at the event, and yet they were questioned by their own leadership, about what they were doing, and why there were with me, interestingly" (See from the 17:20 mark). This account implies that the FBI knows the identities and possesses discoverable 302 interview summaries of the agents Guandolo was with. Guandolo also stated that both of these agents told the FBI that they had a constitutional right to be wherever they want when off duty, and that they didn't do anything that "violates FBI policy." Since these agents believe themselves to be in alignment with FBI policy and the Constitution, yet CCTV shows them in the area that the government alleges to be restricted, their testimony will be favorable to my defense against the government's accusations that I was is a restricted area.

In a Turning Point USA production[9] Guandolo said, "I spent most of the day there with a friend of mine in the FBI, and we watched what was going on." Guandolo also added that, "I watched patriots walk up the steps . . . and I watched them talk to Capitol Police, and I watched Capitol Police like halfway up the steps nod their heads, stand aside, and these guys walked up and walked in" (See the 15-minute mark). Guandolo noted that he was watching this while standing next to an FBI agent and talking about what they were observing. In the Tomi Lahren interview Guandolo also said, "I spent a good portion of the day with a friend of mine who is still active in the FBI, and we met another friend of ours in the FBI – I spent a lot of the time with

---

[8] The Cowboy Logic interview can be accessed here: https://rumble.com/v48u53b-cowboy-logic-012724-john-guandolo-fbi-whistleblower.html

[9] The Turning Point USA production *FBI Whistleblower: The Enemy Within* can be accessed here: https://rumble.com/v1lil91-fbi-whistleblower-the-enemy-within.html

them – and as we were standing next to each other watching, we literally, like guys would walk by us, we're like 'there's antifa, there's antifa, there's antifa'" (See the 27-minute mark).

In the Turning Point USA feature, Guandolo also claimed, "what I did witness is people that were clearly hostile antifa or BLM; we did see specific individuals – there's footage and photographs of specific BLM leaders, antifa leaders, inside the Capitol." The January 6 footage Guandolo chose to pair with that assessment (See from the 15:59 mark) featured the individual who pushed me in the Senate Carriage Door that I have repeatedly requested the government identify. I described this in detail in ECF No. 147 at 8. The fact that Guandolo is claiming that he and his active-duty FBI colleagues were able to identify the individuals pictured in this clip makes these FBI agents extremely important material witnesses in my defense. Guandolo has also acknowledged in sworn testimony that he reviewed John Sullivan's footage inside the Capitol, so he has presumably evaluated the actions of #FrodoThe Fash at the Senate Carriage Doors (See Kowalke v. Eastman Day 4[10], at 15:00:40 Alaska time).



*Figure 2: Guandolo used this video featuring #FrodoTheFash, who pushed me in the Senate Carriage Door, to claim he and his active-duty FBI colleagues were able to identify specific hostile individuals. See the 15:58 mark of the Turning Point USA feature.*

---

[10] Kowalke v. Eastman Day 4 testimony can be viewed here: https://www.youtube.com/watch?v=rX6z4Hb_REc

**Video Analysis of John Guandolo and his FBI Colleagues at the Capitol**

On January 6, 2021, former FBI liaison to Capitol Police John Guandolo posted a video of himself on the east front of the Capitol building to Parler.[11] In the video, Guandolo noted that President Trump was still speaking, and that "when he's done, we expect those crowds to head over here to the U.S. Capitol." Guandolo also noted that "we're looking forward to that." Guandolo's use of "we" and "we're" implies that the colleagues he was with – active-duty FBI agents – were also expecting crowds to head over to the Capitol after the President's speech.



*Figure 3: John Guandolo recorded himself at the east front during President Trump's speech and noted that "we" expect people to walk down to the Capitol afterwards. It's curious why the FBI did not anticipate this if their employees did.*

On January 7, Guandolo posted a longer video montage to his YouTube channel that included additional clips that he recorded on January 5 and January 6. An archived copy of Guandolo's YouTube page that was captured later that month shows the video listed, but it has

---

[11] An archived copy of Guandolo's Parler post and video is available here:
https://web.archive.org/web/20210110174445/https://parler.com/post/7ef778beec604d4f9163ff1ad482b785

since been removed from his channel.[12] Fortunately, I was able to find another copy that had

been saved to altcensored.com, and I am including that video as Exhibit 2[13]. The clips from this

montage also match b-roll video used in the Turning Point USA production featuring Guandolo

and the *Capitol Punishment* documentary. In addition to this, I have been able to verify that these

clips match Guandolo's locations at the Capitol by syncing them to Capitol CCTV.



*Figure 4: John Guandolo's video shows that he and his FBI colleagues had a clear view of the East Plaza as they become material witnesses to (and cheered on) the events that unfolded, which are relevant to my defense.*

The video Guandolo recorded supports his claim that he did attend a permitted event on

the east side of the Capitol on the morning of January 6, and that he and his FBI colleagues had a

clear view of the East Plaza. Guandolo has also noted this perspective in his sworn testimony in

*Kowalke v. Eastman*. As this Court knows from my numerous filings, and from my brother's

---

[12] Guandolo's archived YouTube showing his January 6 montage 'Boston Massacre 2021' can be accessed here: https://web.archive.org/web/20210130130907/https://www.youtube.com/channel/UCXY4laB0vrcGiYS6XI6M6xA

[13] Exhibit 2 can be accessed here: https://rumble.com/v4cwg1b-exhibit-john-guandolos-j6-video-montage.html

recent bench trial, events on the East Plaza of the Capitol are highly relevant to my case, and

favorable material witnesses are likely to bolster my defense in the minds of jurors.



*Figure 5: Guandolo's video montage shows him filming beside the individual I have labeled as Colleague 3.*



*Figure 6: Speaker Johnson released footage from Camera 0902 that shows the permitted event that Guandolo and his active-duty FBI colleagues attended, but Johnson had his staff blur the details whenever the camera zoomed in on this group.*

Since I have the video that Guandolo recorded of people running up the east steps of the Capitol at 2:06 p.m., I was able to sync Guandolo's recording of people running up the steps to CCTV from camera 0933, to determine that Guandolo's recording began at exactly 2:06:13 p.m.

By determining this exact time, I have also been able to sync Guandolo's video to CCTV from camera 7231, which is at the west end of the southeast egg pointed directly at the permitted event. This CCTV shows Guandolo standing behind the stage with the active-duty FBI colleagues he has repeatedly described in testimony and interviews. As people began to run up the steps, Guandolo raised a recording device and pointed it towards the east center steps, which precisely syncs to the clip Guandolo released in his video montage.

Captured in the audio[14] of Guandolo's recording is the sound of clapping and a man exclaiming, "Oh! Oh! Oh man! This is huge!!!"  When Guandolo's video is synced to CCTV camera 7231, this clapping sound directly matches the video of the FBI colleague on Guandolo's right (Colleague 2) who was vigorously clapping. The clapping colleague is also seen turning towards Guandolo and the movements of this FBI agent's mouth precisely match the audio of the man exclaiming, "Oh! Oh! Oh man! This is huge!!!"

I am submitting this synchronized video exhibit to the Court as Sealed Exhibit 3[15] since in contains CCTV footage from cameras 0933 and 7231 that has been designated by the government as sensitive making it subject to the protective order. However, since this video is

---

[14] In the Turning Point USA production featuring Guandolo, this clip of the steps appears at the 15-minute mark, but producers seem to have replaced the original audio of the clapping and FBI voice with generic crowd noise.

[15] Since Exhibit 3 contains video the government has designated as 'sensitive' under the protective order, and since Speaker Johnson has not yet released this CCTV, I am submitting it under seal to all parties.

highly exculpatory to me, and since I have a right to confront the government's accusations in Court and in public, I move that the Court release the seal on this video as soon as possible.[16]

While this synchronized audio and video further validates the authenticity of the Guandolo montage, it also indicates that active-duty FBI agents perceived events at the Capitol to not be criminal. From the clapping and celebratory expression we can conclude that these FBI agents were in favor of people accessing the building and that they believed the people had a First Amendment right to be there. The clapping also speaks to the agent's state of mind; that this FBI agent would be a favorable witness to my defense and in defense of others.



*Figure 7: CCTV Camera 7231 shows that Guandolo's Colleague 3 was at times pointing out things they were witnessing.*

---

[16] I am also sending a copy of this exhibit and unredacted filing to members of Congress to aid their investigation of January 6 and their oversight of Capitol Police (whom these active-duty FBI agents have surmised allowed people to access the Capitol). Since USCP General Counsel Thomas DiBiase has already made clear that this CCTV belongs to Congress (see ECF 71-1), I understand that Congress is not restricted from access. The sworn DiBiase declaration specifically says that DiBiase already gave a copy of this footage to Congress, so I am not giving Congress any CCTV they do not already possess, I am merely providing Congress with a lawful copy of their CCTV synced to Guandolo's video (plus the unredacted images from this filing). Whatever Congress chooses to do with this sealed exhibit and unredacted filing is up to them. Speaker Johnson has pledged to release all the CCTV, so Congress could make these items public, but the sealed exhibit and unredacted filing will not be publicly released by me without Court permission or Congressional action. The 'United State of America' is also designated as one of the parties in this case, and Congress is a co-equal branch of the U.S. government, so Congress is eligible to receive the "flow of discovery material between parties" as the Court ordered in ECF No. 26 at 1. Nothing in the protective order limits the flow of discovery from the defendant to only the Executive and Judicial Branches. And the very nature of the accusations brought against me makes the Legislative Branch a party in this case.



*Figure 8: Public footage from the east side of the Capitol captured Guandolo's three colleagues before 2 p.m.*



*Figure 9: Public footage shows Guandolo's FBI colleagues witnessing Capitol Police allowing people up the steps to the Capitol.*

Guandolo has also stated on many occasions that he and his FBI colleagues witnessed a red star cluster that was shot into the sky at around 2:43 p.m., and that he and his FBI colleagues (one of whom Guandolo says was a Marine), actively discussed what it meant. Guandolo has stated his belief that there was some type of organized Color Revolution at play.

The testimony of Guandolo's FBI colleagues will also speak to the police posture they witnessed on the east side of the Capitol. Guandolo has testified under oath and has repeated in numerous interviews that Capitol Police stood by and allowed people access to the east side of the Capitol. This includes Guandolo stating on record that Capitol Police watched as protestors walked into the building. Public video and Capitol CCTV also shows that Guandolo's FBI colleagues were witnessing this in real time. The law enforcement expertise these FBI agents can share will be highly convincing to a jury that may not understand welcoming police tactics.



*Figure 10: Camera 0948 shows Guandolo and his FBI colleagues did not leave the east side of the Capitol until 2:55 p.m., which is after I had left Capitol grounds. Furthermore, this camera shows that Guandolo and his colleagues were in what the government now alleges to be a restricted area. The fact that active-duty FBI and a former FBI liaison to Capitol Police did not perceive this to be restricted is favorable to the defense of all January 6 defendants.*

At 2:55 p.m., multiple Capitol CCTV cameras show Guandolo and his colleagues walking through what the government alleges to be the restricted area, heading from the east side of the Capitol to the south side. Since Guandolo and his FBI colleagues were on the east side long before I arrived at the Capitol, and since 2:55 p.m. is after when my brother and I had left Capitol grounds, Guandolo and his FBI colleagues were material witnesses on the east side of the Capitol at all times my brother and I were there. This makes their testimony even more relevant as they can testify to how events unfolded over that full span of time.



*Figure 11: CCTV recordings from cameras 0811 and 0767 at 2:55 p.m. give a clearer view of Guandolo and his colleagues within the government's alleged restricted area, including clear facial shots of FBI Colleague 2 who clapped when protestors ran up the east center steps to the Capitol. This will make it easy to authenticate witnesses during sworn testimony.*

It is also noteworthy that as Guandolo and his FBI colleagues were walking around to the north side of the Capitol, Camera 0811 catches Guandolo looking over to his right and apparently speaking to an individual just off screen. Four seconds later, the individual I noted as being #FenceCutterBulwark in ECF No. 139 at 23, appears from this exact location. Then #FenceCutterBulwark turned back to the direction where Guandolo and his colleagues had

walked off camera. As a reminder, #FenceCutterBulwark also had an interaction with MPD
undercover officer Ryan Roe, where Roe thanked #FenceCutterBulwark for removing fencing on
the west lawn. Since Guandolo has said he interacted with (presumably plain clothes) local law
enforcement in the crowd on January 6, and since #FenceCutterBulwark also interacted with
undercover local law enforcement, it's possible that #FenceCutterBulwark was introduced to
Guandolo by Guandolo's FBI colleagues. These facts reinforce my motion to compel the
government to produce discovery related to undercover MPD and #FenceCutterBulwark (ECF
No. 139). If numerous individuals connected to the FBI and law enforcement did not consider
Capitol grounds to be statutorily restricted on January 6, that is highly favorable to my defense.



*Figure 12: CCTV camera 0811 shows Guandolo and his FBI colleagues walking around to the South side of the Capitol. At approximately 2:55:29, Guandolo looked to his right and appeared to be speaking to someone outside the camera's frame of view. Four seconds later, #FenceCutterBulwark (whom I am seeking information on related to ECF No. 139) and his colleague appeared from that same location. Afterwards, #FenceCutterBulwark looked back towards Guandolo and his FBI colleagues.*

Guandolo's video montage also includes a clip from the west front looking up towards
the tunnel area, and Guandolo has stated that he and his FBI colleagues were at the Capitol until
late into the evening, so it's possible their testimony could be useful to defendants who were on
west side of the Capitol. However, I had left Capitol grounds before people entered the tunnel, so
the relevance of that to my case is minimal, and I am not covering that in detail in this filing.
However, Guandolo has said that his FBI colleagues introduced him to several other FBI agents
who happened to be exercising First Amendment rights in the crowd at the Capitol, so it seems

likely that there were additional FBI employees who witnessed events within the government's alleged restricted area that are relevant to my case. For this reason, I am asking the Court to compel the government to identify all FBI employees who were on U.S. Capitol grounds between 12:30 p.m. and 3:00 p.m. on January 6, 2021.

**The Due Process and Compulsory Process to Compel Witness Identification and Testimony**

The Sixth Amendment (in addition to acknowledging my right to represent myself in my own way) guarantees me a "compulsory process for obtaining witnesses" in my favor. In Pennsylvania v. Ritchie, 480 U.S. 40 (1987), the Supreme Court found that the government has the due process "obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." This is consistent with *Brady v. Maryland*, 373 U.S. 83 (1963). However, in *Pennsylvania v. Ritchie*, 480 U.S. 56 (1987) the Supreme Court acknowledged they have yet to determine whether the Compulsory Process Clause includes the right to compel the discovery of witnesses, so they chose to "adopt a due process analysis." The Court also found that though a defendant does not have the right to search all government files that were excluded from discovery, the defense can bring withheld evidence to the attention of the Court for due process determination, and further production can be compelled. This determination hinges on both the materiality of evidence and the likelihood that the evidence could create reasonable doubt in the mind of a jury.

This motion centers on the presence of multiple active-duty FBI agents who were in the crowd at the capitol and were material witnesses to events on the East Plaza that are relevant to my case. The fact that these FBI agents witnessed these events has been affirmed in a sworn declaration from former FBI Liaison to Capitol Police John Guandolo, and repeated in multiple interviews Guandolo has given. Guandolo has also asserted that he and active-duty agents agreed

that the crowd on the East Plaza was restrained and that they were not under the impression that the barricades represented a restricted area. Guandolo has also insisted that police let people onto the plaza and up the steps. Furthermore, CCTV shows that Guandolo and his FBI colleagues were elated that people were in this area. This is evidenced by their joyful facial expressions and body language, loud clapping, and celebratory outburst ("Oh! Oh! Oh man! This is huge!!!") as people were running up the steps to the Capitol.

Since Guandolo's account is favorable evidence to my defense and likely to create incredible doubt in the mind of a jury, the government has a clear Brady obligation to produce the names of these FBI witnesses and all materials related to their presence, including their communications, video and photographs they recorded, and any subsequent memorandums that were produced. Furthermore, the mere fact that these individuals are former and current FBI employees means that favorable testimony from the lens of their professional expertise is likely to counter any negative testimony from other FBI agents testifying against me on behalf of the government who may have similar professional experiences.

In essence, I have a Due Process right to obtain this favorable information (the identities of all FBI witnesses and related discoverable materials), and a Compulsory Process right to compel favorable testimony from these FBI agents. As I noted in ECF No. 81 beginning at 10, the government initiated attempts to discourage me from probing the presence of government employees at the Capitol, including attempts to prevent me from using an entrapment defense, and the government's efforts to limit my access to discovery are ongoing. I also attempted to confer with the government by phone and email regarding whether there were government employees who did things that the government has charged as crimes in January 6 cases.

The fact that these FBI employees in good conscience entered what the government is now alleging to be a restricted area subject to 18 U.S.C. 1752(a)(1, 2, 3) demonstrates that reasonable active-duty federal law enforcement officers who were witnessing the events at real time (and a former FBI Liaison to Capitol Police) did not perceive this area to be statutorily restricted. Furthermore, these FBI agents assessed in real-time that the Capitol Police posture on the East Plaza was inviting people towards the Capitol. Most notably, these FBI agents applauded as people got closer to the Capitol to exercise their First Amendment rights.

And it is significant that there were several agents present. The testimony of these FBI agents who believed it was acceptable to be in this alleged restricted area will weigh favorably on the minds of the jury against any contrary testimony brought by the government. For this reason, the Court should compel the government to identify all FBI agents who directly witnessed events at the Capitol since the exculpatory testimony of many, many agents will lend strength in numbers to my defense. All of these facts are highly exculpatory and relevant to my case, and the identity of these agents and officers and all related discoverable materials should be produced so that I can exercise my Constitutional right to compel favorable testimony and defend myself against the government's unwarranted accusations.



*Figure 13: CCTV camera 0767. Whether the government likes it or not, their FBI employees were in the crowd at the Capitol, and witnessed facts that are favorable to my defense. The Sixth Amendment guarantees my right to compel their testimony.*

I therefore move that the honorable District Court so compel the government to identify all FBI employees who were on Capitol Grounds, as well as all other local law enforcement with whom John Guandolo had contact, and to produce all related discovery.

Submitted respectfully to the Court,


By: William Pope

   /s/

William Pope

Pro Se Officer of the Court

Topeka, Kansas


Certificate of Service
I certify that a redacted copy of this was filed electronically for
all parties of record on February 12, 2024.

An unredacted copy of this filing and the sealed exhibit have been emailed to all parties.

Happy Arrestiversary!

/s/
William Alexander Pope, Pro Se

# MUG SHOT

## 2-12-21



"As for you, you meant evil against me, but God meant it for good in order to
bring about this present result, to preserve many people." – Genesis 50:20

# NEVER SURRENDER!