# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**WILLIAM ALEXANDER POPE,**<br><br>Defendant. | Case No.: 1:21-cr-00128-RC |

## REPLY TO THE GOVERNMENT'S OPPOSITION TO IDENTIFYING THEIR EMPLOYEES – FBI AGENTS – WHO WOULD BE FAVORABLE WITNESSES IN MY DEFENSE

On Friday, March 15, 2024, I filed ECF No. 223 seeking Court clarification on whether the government had filed a motion to file sealed and redacted copies of their response to ECF No. 212 with the Court. I have not yet heard back from the Court on whether the government's motion has been docketed, of if the Court has granted or denied their request to file under seal. However, since the government emailed me their motion to file (See Exhibit 1) and the redacted copy of their response (See Exhibit 2) on Wednesday, March 13, 2024, and since I have not yet received guidance back from the Court, I am filing this reply seven days after receipt from the government. Since I do not have document numbers to refer to, this filing is in reply to the government's response which is included as Exhibit 2.

At no point in the government's response did the government deny that Guandolo's associates are FBI agents, or that these agents were both "formerly interviewed" by the FBI as Guandolo has stated (ECF No. 212 at 6). Such a straight up denial would have been the easiest way for the government to put this issue to rest, but instead the government forced the Court to

labor through ten pages of opposition that desperately attempt to convolute the issue and dodge due process by the government pretending they have no idea who these FBI agents are.

The fact is, Guandolo filed a sworn affidavit at the risk of perjuring himself which states that he was "present with an FBI colleague – Special Agent – near the Capitol on January 6" (See ECF No. 212-1 at Section 3). This sworn declaration supports Guandolo's many public statements as I have outlined in ECF No. 212, where Guandolo claims to have met with several FBI agents at the Capitol.

Were Guandolo lying about an FBI agent being with him at the Capitol, both the DOJ and the Alaska State Court would hold him accountable for filing a false sworn statement, but the government has not charged Guandolo with perjury. Instead, the government insists in their response (See Exhibit 2 at 2) that they have "no obligation to investigate" these individuals that Guandolo has identified as FBI agents. This statement runs counter to everything the government has been doing for the past three years. Why is the government rabidly hunting "entirely peaceful" Americans like me down, but not these colleagues of Guandolo? If the government is no longer concerned with investigating individuals who entered their alleged restricted area, they should drop my charges and ignore me as well. But since the government has not dropped my charges, I have to exercise my Constitutional right to confront these allegations and insist on a due process for obtaining favorable testimony from these FBI agents.

To be clear, at no point have I suggested that these FBI agents with Guandolo were involved in an "inside job" as the government has claimed on page 3 of their response. My motion to compel identification is entirely centered on obtaining favorable testimony from eyewitnesses who are employed by the FBI, and that their favorable testimony is likely to be a determining factor in me being found not guilty (ECF No. 212 at 19). The fact that one of these

FBI agents was elated and clapping as people ran up the steps, and that all of these FBI agents found it to be permissible to enter the government's alleged restricted area, is highly persuasive. Furthermore, these agents were witnessing the same permissive police actions that my brother and I witnessed on the east side, and these agents were in close proximity to my brother and I.



*Figure 1: My brother and I walked right past the group that Guandolo has said included FBI agents and local law enforcement. At various times we were within 35 yards of Guandolo and his colleagues. [This camera has been released by Speaker Johnson].*

As I noted in ECF No. 212, Guandolo and his FBI colleagues witnessed events on the East Side of the Capitol and made professional observations about invitational police behavior. Regardless of what each officer felt they were doing, the perception Capitol Police left on many, including myself and these FBI agents, was that police were allowing people to enter the East Plaza and approach the Capitol. I noted this in great detail in ECF No. 165 at 5, (which is connected to a pending motion to compel the government to produce all CCTV in discovery).

In addition to Guandolo's FBI colleagues witnessing many of the same events that I did, Figure 1 shows that my brother and I were at times within 35 yards of Guandolo's group, while Guandolo and his FBI colleagues were still in the vicinity. The actions of Guandolo and his FBI associates also demonstrate that they determined for themselves that it was permissible to be in the government's alleged restrict area both before and after my brother left Capitol grounds.

The government is attempting to argue in their response that police did not invite people onto the steps, but rather that "officers were overrun by a violent angry mob" (See Footnote 3 on Page 2 of Exhibit 2). However, CCTV footage from Camera 7202 shows that Guandolo's clapping FBI Colleague 2 went up on the steps at 2:28 p.m. to take group pictures. The government is Monday morning quarterbacking this, arguing after the fact that police did not let people on the steps, when the government's own FBI employee who was on the ground at the Capitol found it to be reasonable and permissible to be in this area at the time. I am submitting the video of this FBI agent walking up the steps to the Capitol as Exhibit 3.[1]

Since this FBI Agent has professional law enforcement training, and since he found it permissible to walk up on the steps while three Capitol Police officers looked on nearby (See Figure 2), it is reasonable for me to conclude that this FBI agent will provide favorable testimony about the permissive actions of police that is likely to sway a jury away from a determination of guilt. This justifies the due process argument I made in ECF No. 212 at 17.



*Figure 2: At 2:28 p.m., Guandolo's clapping FBI colleague went up on the SE steps of the Capitol to take photos of a group he was with. The three Capitol Police near him did not seem to impress upon this FBI agent that he was not allowed to be there.*

---

[1] Exhibit 3 contains CCTV from Camera 7202 that was recently released by Speaker Johnson, and can be accessed here: https://rumble.com/v4kjbx0-exhibit-3.html

In addition to this, the government raises a good point on Page 7 in Footnote 5 of their response to ECF No. 212. The government writes, "The prosecution is responsible for disclosure of favorable evidence "'known to those acting on the government's behalf in the case, including the police.'" I'm glad the government has conceded this.

The fact is, a uniformed FBI Swat team arrived on the east side of the Capitol at 2:33 p.m., removing barricades in the process, which left the government's alleged restricted area even more open. Immediately upon these uniformed FBI arriving, the individual I identified as Guandolo's FBI Colleague 1 in ECF 212, walked up to the FBI Swat vehicles and talked with them for approximately five minutes. This could indicate that FBI Colleague 1 was indeed on the clock at the Capitol on January 6, or that the uniformed FBI swat team did not consider the events at the Capitol to be a pressing matter and that they had time to shoot the breeze with an off-duty FBI colleague.



Figure 3: CCTV Camera 0675 shows Guandolo's FBI Colleague 1 walking back to the group that FBI Colleague 2 photographed on the steps after talking with the uniformed FBI swat team for approximately five minutes.

But regardless of whether this conversation between uniformed and non-uniformed FBI was for work or pleasure, it demonstrates that uniformed FBI working on the government's behalf know who this FBI agent in plain clothes is. It also shows that uniformed FBI did not consider it important to tell a plain clothes FBI agent to stay out of what the government now

alleges to be a restricted area. So, the government cannot argue this information (FBI Colleague 1's identity) is unknown to the government, and their Footnote 5 concedes that they are responsible for disclosure of this favorable evidence under LcrR 5.1(a).

After Guandolo's Colleague 1 returned to his group, they walked north along the path at the same time my brother and I were approaching the same area.

**The Government Has Withheld Discovery That Would Identify These FBI Witnesses**

On Page 10 of their response, the government claims that I failed to show that the government knows of or possesses information related to my motion to compel. Obviously, the previous section demonstrates that the FBI swat team knows who at least one of Guandolo's colleagues is. However, in addition to this video evidence and Guandolo's statement that the government has interviewed the FBI agents he was with (See ECF No. 212 at 6), the government also possesses mass surveillance geofence data that would identify who these FBI agents are.

In Global Production No. 12, the government produced two search warrants for the mass collection of geofenced Google account subscriber information, ten search warrants pertaining to aggregated location data, and six search warrants collecting location data from Verizon, AT&T and T-Mobile/Sprint cell towers. While the government collected this data, their Global Production Letter No. 12 explicitly states they intend to withhold from discovery the mass data they received as a result of these warrants, thus preventing defendants such as myself from using this geolocation data to identify and compel favorable witnesses who might testify on our behalf.

As CCTV clearly shows, John Guandolo and his colleagues were using cell phones at the Capitol, and those cell phones went inside the government's alleged restricted area, which would trigger their inclusion in the mass geofenced data collection that resulted from the government's

warrants. Thus, the government knows who these individuals are, or can easily find out, but the government is preventing me from accessing this discoverable geofence data that I would use to identify favorable witnesses.

This issue of withholding geolocation data goes beyond just identifying the FBI agents Guandolo was with. There are many other individuals who I was in close proximity to who were filming with cell phones, including inside and outside of the Senate Carriage Doors, that would be relevant to my case. The video recorded by those cellular devices and the testimony of these individuals would be favorable to my defense and likely to influence a determination of innocence. In fact, any audio these devices recorded is essential evidence needed for cross-examining Capitol Police officers whose recollection of what was said or done in key situations may have become fuzzy or imagined.

For these reasons, I must ask the Court to compel the government to produce the unredacted data obtained from all mass geofencing warrants related to the January 6 cases.

**The Government's Raindrop Theory Further Justifies Witness Identification**

As I noted in ECF No. 147 at 12, the government has in case after case invoked a raindrop theory inspired by Judge Kollar-Kotelly's ruling in *United States v. Rivera*, 21-cr-00060-CKK, No. 62 at 13, to argue that every person in the government's alleged restricted area at the Capitol was a raindrop that contributed to a field flooding. If this were to be true, then Guandolo and his FBI associates also elected to become raindrops inside the government's alleged restricted area, and their presence also contributed to the field flooding. Since the government continues invoking this raindrop theory in January 6 cases, I must prepare to defend against it. The testimony of Guandolo and his FBI associates is likely to confirm that based on

their training and professional judgement they did not perceive this area to be restricted, nor did they perceive that the presence of numerous individuals inside this area (including themselves) was creating a flooding effect of civil disorder. This is clearly evidenced by these (supposedly off-duty) FBI's agents making the professionally informed decision to enter what the government now alleges to be a restricted area and to take pictures up on the steps of the Capitol. Since these are all current or former FBI agents, and since Guandolo is a former FBI Liaison to Capitol Police, their professional eyewitness perspectives are likely to be effective at countering the government's raindrop theory and will be a persuasive and determining factor in my exoneration on several charges, including the felony civil disorder.

Furthermore, despite the government claiming in Footnote 2 on Page 1 of their response that me seeking the identification of all FBI and other law enforcement that Guandolo interacted with is overbroad, my request for this information falls entirely within the scope of the government's Raindrop Theory. By the government's logic, all raindrops in the crowd on Capitol grounds played a causal role, even those who are employed by the FBI or other law enforcement. For me to counter this novel legal theory, I must call many of those 'raindrops' to testify, and those best suited to testify are the very FBI agents who chose to be a part of what the government alleges to be a "mob of hundreds of people" (See Exhibit 2 at 2).

All of these FBI agents at the Capitol (presumably exercising their professional judgement at the time) did not perceive the gathering to be a "mob" because they ultimately chose to join it. These FBI agents presumably believed they were acting within their Constitutional oaths, exercising First Amendment rights of assembly and speech in a public space. Why else would so many supposedly off-duty FBI agents be at the Capitol?

The collective force of all of these FBI agents testifying favorably on my behalf (that they did not perceive themselves to be members of a "mob") is likely to be overwhelmingly persuasive to a jury that the government's raindrop theory is false and that it was not obvious to those present that the grounds were statutorily restricted. The sheer number of these agents testifying favorably on my behalf will create a cumulative effect that could not be gained from the testimony of one agent alone. The more raindrops that fill the courtroom with their favorable perspectives, the fuller the glass will be for me (the wrongly accused).

So, my request is not overbroad. In order to defeat a macro legal theory, I have to put on a macro legal defense. Even if some of these FBI agents did not personally witness or interact with me, they did witness macro-level facts pertaining to the government's flooded field theory, so their eye-witness testimony is within the scope of my defense and will be materially relevant.

For these reasons and those stated in ECF No. 212, I again move the court to grant my motion to compel the government to recognize my due process right to obtain the identification of these FBI agents who were eyewitnesses to events at the Capitol and can be compelled to testify favorably on my behalf!

Submitted respectfully to the Court,

By: William Pope
    /s/
William Pope
Pro Se Officer of the Court
Topeka, Kansas

<u>Certificate of Service</u>
I certify that a copy of this was filed electronically for
all parties of record on March 20, 2024.
/s/
William Alexander Pope, Pro Se
