# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

v.

**WILLIAM ALEXANDER POPE,**

Defendant.

Case No.: 1:21-cr-00128-RC

---

## REPLY TO THE GOVERNMENT's OPPOSITION TO MY MOTIONS TO TRAVEL TO D.C. FOR OBSERVING TRIALS AND INSPECTING EVIDENCE AT THE CAPTIOL

## AND REPLY TO THE GOVERNMENT'S OPPOSITION TO PROVIDING A BILL OF PARTICULARS

In ECF No. 232, the government opposed two of my motions, ECF Nos. 227 and 231, where I sought particulars about the charges I face, and Court permission to travel to Washington so that I can observe the conduct of January 6 trials and inspect important evidence during a scheduled walkthrough of the Capitol. However, the arguments the government used were empty, since other January 6 defendants have already been in the Capitol in the time since January 6, 2021. The government also believed I would be going in the Capitol last May and had no opposition to me being there. Furthermore, the physical properties of the Capitol itself play a much larger role in my case than in most other cases, since when I was trying to stay out of the way of police, an officer bumped me causing my flagpole to enter the joint of the door without my knowledge. Accordingly, I need to inspect this evidence so that I can adequately examine witnesses in Court. The government's argument that I should not observe a trial is also hollow since others have been permitted to do so without objection. And the government has not adequately specified my charges, thus warranting the Court to order a Bill of Particulars.

**The Importance of Observing Other January 6 Trials**

I did not anticipate the government opposing my request to travel to Washington to observe other January 6 trials, since the government has not opposed such requests made by other defendants. My motion, ECF No. 227, even attempted to follow the format used *U.S. v. Garcia*, 21-cr-00129-ABJ, where the government presented the defendant with multiple trials on different weeks that he might observe (See Garcia ECF No. 74 at 1)[1]. The government's opposition has misconstrued my motion to be an open-ended request. What I actually requested was to "be presented with several options for trials I might observe that include charges similar to my own" (ECF No. 227 at 1)[2]. And as I noted in my proposed order, I would give notice to pretrial services and the Court before traveling to Washington.

> **ORDER**
>
> Pending before this Court is the defendant's motion seeking to observe the conduct of other January 6 trials, and to be granted a bill of particulars. The government shall:
>
> - Provide Mr. Pope with at least three options for weeks he might travel to D.C. to observe trials.
>   - These options should include weeks where Mr. Pope might observe both a bench and a jury trial, including voir dire, and should be at least two months prior to his trial. At least one of the trials each week should included defense against the two felony charges (Counts One and Two) that Mr. Pope must defend against.
>   - Mr. Pope shall file a memorandum with the court and notify pretrial of his travel plans at least 48 hours in advance per his release conditions.
>   - Defendant is allowed to freely travel to and within Washington, D.C. and the surrounding area (the states of Maryland and Virginia), during the week he visits to observe trials.

*Figure 1: In my proposed order for ECF No. 227, the government would provide me with at least three options for weeks I might observe trials, and I would both notify pretrial services and file notice with the Court before my travel to Washington.*

---

[1] In the Garcia case, the government also noted that defendant Matthew Martin (21-cr-00394-TNM) had previously been allowed to travel to Washington to view the January 6 trial of *U.S. v. Griffin*, 21-cr-00092. The suggested trials the government offered Garcia included the trials of Daniel Egtvedt on the week of June 6, 2022, and the trial of Christian Secor, beginning on June 22, 2022.

[2] The reason I requested that the government to provide me with options for trials to observe is because the government has a better grasp on what cases are coming up that might be similar to my own. However, if there needs to be a more specific request from me, I would prefer to attend trials either the week of April 29 or the week of May 6, so that I could also do the walkthrough of the Capitol in the same trip.

Ironically, while the government now argues that I should be kept out of D.C. because I am "subject to the 'least restrictive' combination of conditions necessary to ensure the safety of the community" (ECF No. 232 at 9), the government did not oppose Gabriel Garcia's request to observe a January 6 trial, even though Mr. Garcia had far more restrictive release conditions than my own, including an ankle monitor and curfew.

While the government did propose me attending trials in the District Court of Kansas, this Court is likely well aware that different courts have different local rules and procedures. Furthermore, the January 6 trials are categorically different that any trials in Kansas. I would not derive anywhere near the same benefit from observing a murder trial in Kansas that I would from observing a January 6 case that features charges similar to my own. If the D.C. District Court grants change of venue motions, I would be happy to attend a January 6 trial somewhere other than the District of Columbia. I would also be happy to view trials over the internet if the D.C. District Court decides to expand public access. However, these two options are not currently available to me, so the only alternative is to travel to D.C. to observe a trial in person.

I would note that the Sixth Amendment grants the right to a public trial. If I am excluded from attending a trial in the D.C. District Court, then these January 6 trials are not fully public. The government's attempts to prevent certain individuals from attending January 6 trials threatens to turn these cases into "secret tribunals" and "effective instruments of oppression" as the Supreme Court warned in *Estes v. Texas*, 381 U.S. 532 (1965). The Supreme Court has also ruled in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) that the First Amendment guarantees the right of the public to attend criminal trials. The Richmond case also recognizes that the press has a right to attend trials.

As I previously noted in ECF No. 147 at 4, I am a journalist. I have a degree from the University of Iowa School of Journalism. My doctoral dissertation was going to be on local journalism. My media company, Free State Kansas, was registered with the State of Kansas in 2017, and that registration is still current. I have also been recognized as a journalist by the federal government when making Freedom of Information Act requests. And on January 6, 2021, I had a camera and laptop and intended to report on events in Washington, and I livestreamed reports and posted updates to my Facebook page (a page that identified me as a journalist).

If I were to seek permission from the Court to travel to Washington to report on a January 6 trial so that I could publish articles to my company's news website, would the Court stop me? Or would the Court recognize my First Amendment right as the Supreme Court did in *Richmond v. Virginia*? The government's opposition to me observing trials is unconstitutional.

**The Government Previously Had No Objection to Me Being at the United States Capitol**

The Court might recall that the government did not oppose me traveling to Washington in May 2023 to view CCTV (See the government's filing ECF No. 109). In fact, the government assumed in their filing that I would be, "viewing the videos at the U.S. Capitol."

If the government was ok with me viewing CCTV (January 6 evidence) at the United States Capitol last year, why are they now opposed to me inspecting physical features of the Capitol building (also January 6 evidence) that are relevant to my case?

To be clear, even though the government assumed I would be viewing CCTV in the Capitol and were not opposed to me being in the Capitol to view CCTV, as with many other aspects of this case, the government was clueless about the facts. The CCTV terminals were actually located near the Capitol in a Congressional office building.

Every day that I was in Washington last May, I walked past the Capitol and greeted Capitol Police along the street. To get to the CCTV terminals, I had to go through Capitol Police security every day, and the officers who screened me were very friendly and cool about me being there. None of the officers I met exhibited the victimhood that Mr. Beckworth imagines in ECF No. 232. In fact, one former Capitol Police officer who was inside the Capitol on January 6, bought me coffee and we had a very friendly conversation. There were zero issues during my trip to Washington last May. I was entirely peaceful, just as I was on January 6, 2021.

The government's claim that "allowing William Pope to travel to Washington, D.C. would cut against these efforts to limit the potential danger to the community" is absolutely absurd.[3] As AUSA Jason Crawford previously acknowledged, I was "entirely peaceful" on January 6. When I was arrested, I was told by agents that the government wasn't seeking pre-trial detainment because the government didn't consider me a threat. Furthermore, I have no criminal

---

[3] I may be old fashioned, and only a Pro Se, but shouldn't justice prioritize the truth? Mr. Beckworth's descriptions of events have been so lacking in factual reality, I'm not sure if Beckworth is lying maliciously or simply hasn't reviewed the evidence and is lazily making stuff up. For instance, In ECF No. 232 at 9, Beckworth claims that I "paraded through the Capitol for more than 20 minutes," when CCTV clearly shows that I was in the Capitol less than 20 minutes. Beckworth claims that I "was at the forefront of a crowd that breached police barricades," when I showed in ECF No. 165 Exhibit 2, that police allowed dozens of protestors into the area before I even got off of the planter. Mr. Beckworth also falsely claims that I came to the Capitol to disrupt election certification, and that I recorded a video expressing intent to obstruct (See ECF No. 232 at 1). As I noted in ECF No. 147 at 4, I am a journalist and when cell service allowed, I was issuing live reports to my dedicated journalism page on Facebook. Nothing in my video conveys an intent to obstruct, only an intent to report on events as they were happening. It is entirely inappropriate for the government to criminalize my First Amendment protected press activity. Mr. Beckworth also recently filed ECF No. 235 as a response in my brother's case, which completely misconstrues facts, omits key exculpatory information (such as the reasons why we were concerned about our safety), and embarrassingly rearranges key details to manufacture false narratives. For instance, on page 4, Mr. Beckworth claims I "wedged" my flagpole in the door, and that "while William Pope was holding the door open, Michael Pope had slipped in." Again, as I point out in great detail in ECF No. 147 at 10, I did not wedge the door, the flagpole entered the door without my knowledge as I was trying to stay out of the way of police and got bumped by an officer. Furthermore, Michael was already in the Capitol long before the officer bumped my flag into the door, so Mr. Beckworth's claim that Michael slipped in afterward is factually impossible. Again, I do not know whether Mr. Beckworth's obvious errors here are due to analytical slacking or some malicious desire to deceive the Court, I only know that Beckworth is habitually wrong, and him being wrong about the facts should not be used to prevent me from visiting Washington to observe trials and inspect evidence at the Capitol. I prefer not to make such strong assessments of the government's performance, but the Court should know that it is a great frustration to me, the defendant, for the government to be completely divorced from the facts of this case and to seemingly be trying this case out of a desire to wrongfully convict at the cost of sacrificing the truth and their own integrity.

record. In the government's list of the counts I face (ECF No. 232 at 2), Mr. Beckworth was unable to include any assault charges, because I did not assault any Capitol Police. So, because I was "entirely peaceful" there are no victims for Mr. Beckworth to claim would be revictimized.

**I Have No Desire To Travel to Washington – I Only Go Because I Have To**

If I can be quite honest with the Court, I have absolutely no personal desire to visit Washington, D.C., simply because the city has been a huge pain in my side for the past three years. It is not simply that Washington lacks hospitality, but that there is a groupthink culture of government extremism that has permeated Washington to the extent where many of the folks in Washington have no conception of what the rest of the America is like. Yet not knowing America, they go out of their way to hunt down peaceful citizens from across the country. My critique of Washington is not newly acquired. I once worked for the federal government in places like Yellowstone and the Grand Canyon, and I times I traveled to Washington for training with the National Park Service. The culture inside the Washington bubble is unlike anywhere else in America. Even though there are some great park employees in Washington, the distance and arrogant disconnect among some at the top of the agency from the on the ground employees in parks across the country was stunning. This same cultural distance and disconnect is also seen (yet more pronounced) in the government's arrogant handling of January 6 cases. The rest of the country sees it, and the government's conduct is exasperating contempt for Washington at a time when we should be looking for ways to cool the tension, come together as a nation, and restore respectability to government institutions.[4]

---

[4] At the North Entrance of Yellowstone National Park stands the Roosevelt Arch, which Theodore Roosevelt laid the cornerstone for in 1903. Inscribed upon it are the words "FOR THE BENEFIT AND ENJOYMENT OF THE PEOPLE," taken from the Organic Act of 1872. These days, many in the federal government embrace the dangerous

So, I do not motion the Court for travel to Washington because I want to be there. I would rather be as far away from Washington as possible. I only move the Court for permission to travel because I have business to attend to: I need to inspect physical evidence at the Capitol, and I want to observe a trial or trials so that I can be adequately prepared to defend myself. If the government doesn't want me to come to Washington, they can drop my charges, and I will gladly stick to more desirable parts of the country.

**The Importance of Inspecting Relevant Factual Evidence at the Capitol**

Even though the government is gracious in ECF No. 232 at 2, to acknowledge that my last time inside the Capitol was only a harmless tour (for which they have excessively pursued me with thirty years of federal charges), I am not seeking to join a walkthrough of the building just so that I can do another tour. I am going because I need to inspect physical properties of the Capitol that are relevant to my case, so that I can examine witnesses and defend myself in Court.

The government has falsely alleged that I was "jamming" and "wedging" my flagpole in the Senate Carraige Doors (ECF No. 232 at 1 and 9) even though the CCTV clearly shows that my back was to the joint in the door, and I had no clue that the officer bumping me had cause the flag to go into the door joint. By inspecting the door and the area around the door, I believe a walkthrough of this area will allow me to observe important properties of the area that will prove that it was physically impossible for me to know that my flag was in the door, until the point when it jolted in my arms from the door being closed.

Furthermore, when I was pushed into the Capitol, the person pushing me continued pushing until I had faceplanted a nearby wall. As I pointed out in ECF No. 147 at 9, I do not

---

operating philosophy of 'we are better than the people.' Each agency should cure this attitude by adding to their mission statements the words carved in the Roosevelt Arch: "FOR THE BENEFIT AND ENJOYMENT OF THE PEOPLE."

faceplant walls for fun. The physical characteristics of the area I was pushed from (outside the Capitol) and the wall I was pushed into, are also key facets of my defense. I need to be able to observe the size of this area, and any physical characteristics of the area that might have exacerbated me toppling over as my feet tried to remain in place while I was being pushed into the Capitol by #FrodoTheFash.

      As counsel for O. J. Simpson once pointed out, "if the gloves don't fit, you must acquit." The physical nature of the small gloves on Mr. Simpson's large hands was convincing evidence that likely affected the outcome of his trial. So it is in my case, where the physical nature of the door is a key component of the government's allegations against me. I believe that if I am not allowed to inspect this physical evidence, my ability to examine witnesses and argue my defense will be irreversibly impaired. This physical evidence is just as important as the CCTV.



*Figure 2: As the O.J. Simpson trial demonstrated, "if the glove don't fit, you must acquit." Physical properties of evidence often demonstrate that it was physically impossible for a defendant to have done what they are accused of. The physical properties of the Senate Carriage Doors will show that it was physically impossible for me to know that my flagpole was in the door.*

**Other January 6 Defendants Have Already Been Back Inside the United States Capitol**

On the afternoon of November 10, 2023, January 6 defendant Adam Johnson (21-cr-648), the "Lectern Guy," took a public tour of the United States Capitol. Video tweeted by Johnson at the time shows him smiling dangerously in the rotunda.[5] When I reached out to Johnson about his Capitol Tour, he gave a positive review and commented, "I'll be there again next month."



*Figure 3: Despite Johnson revisiting the Capitol in November 2023, no Capitol Police reported being revictimized.*

I also reached out to defendant Steve Baker (23-cr-121), who was recently arrested for his First Amendment journalism activity on January 6. Since then, Baker has held a Capitol press pass and has been inside the United States Capitol, but Steve has only revictimized dishonest and corrupt Capitol Police through his investigative reporting for Blaze Media. Baker tells me that his Capitol press badge was just renewed and he will continue to report from the Capitol.

---

[5] Johnson's scary smiling video can be viewed here: https://x.com/lecternleader/status/1723080318951854260
WARNING: Government prosecutors who might be revictimized by Adam's smiling peacefulness should not view.

**The Possibility of Delaying Travel to Washington**

It is necessity for me to personally inspect physical aspects of the Capitol building unless the government is willing to stipulate certain facts about the nature of the building and incidents around the door pertaining to my case. If such stipulations can be agreed upon, I would be willing to forgo my walkthrough of the Capitol. However, the government would either need to make those concessions quickly (before the May tour), or the trial date would need to be pushed back to allow sufficient time to discuss stipulations.[6] Furthermore, if trial is delayed as we discuss stipulations, I would also delay plans to visit Washington to observe a January 6 trial, since I would rather fit both tasks into the same trip.

**I Need Particulars So I Can Understand the Specifics of the Charges I Face**

In ECF No. 232 at 4, the government cited Federal Rule of Criminal Procedure 7(c)(1) as justification for only providing statutory language in my indictment. This is, however, insufficient information for me to fully understand the charges brought against me. For instance, many of the charges I face include vague words that I asked to be defined in ECF No. 227.

I am a Pro Se defendant and the terms I have asked to be defined in ECF No. 227, are generic to me, lacking the specificity needed for me to know what exactly I must defend against. An example of such a generic term is "lawful authority" as used in Counts Three, Four, and Five of my indictment. What is it, and how would one obtain it? Does the police telling me to stay inside the Capitol and to go further into the Capitol constitute lawful authority to be there?

Since I lack a legal background, I don't have the foundation on some of these elements that attorneys might have. So what may not be generic to them is generic to me.

---

[6] I would still need to arrange a later walkthrough of the Capitol should stipulations not be agreed on.

The Supreme Court Ruled in *United States v. Cruikshank*, 92 U.S. 544 (1875):

> *The indictment must set forth the offence with clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged; and every ingredient of which the offence is composed must be accurately and clearly alleged. It is an elementary principle of criminal pleading, that, where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition, but it must state the species, — it must descend to particulars.*

My motion for particulars also requests more specificity on the specifics of what the threshold for certain allegations is. For instance, I have requested clarity on the threshold for disorderly and disruptive conduct. It seems to me that there must be some point where conduct crosses from orderly to disorderly in the eyes of the law, but if I do not know what that point is, how do I know when I've crossed it, and how do I defend against a threshold I do understand?

There are also some terms that I think I understand such as Ingress and Egress,[7] however there is no clarity as to what conduct of mine these terms are being applied to. Having reviewed the CCTV, I cannot see any individual whose ingress or egress I "obstructed and impeded." If I don't understand whose exit or entrance I am alleged to have impeded, or what act I am charged for, how can I defend against that accusation? Without particulars, my only defense is to walk each government witness through every second of video and repeatedly ask them "was I

---

[7] I used ingress and egress frequently when I worked at Space Camp, so my understanding of these terms is as they relate to how NASA would use them when an astronaut enters or exits a spacecraft.

impeding ingress or egress here?" and "whose ingress was being impeded?" This would have to be done for every particular I don't understand, which will add days of cross-examination.[8]

Or when was I parading? Does the government allege me to have 'paraded' the entire time I was in the Capitol, even when I was clearly carrying out obedience to a police order? Or was there a specific action I must defend? Does me saying "U.S.A" or holding an American flag (as Congress does at every State of the Union address inside the Capitol) constitute parading, demonstrating, or picketing? I don't understand this charge, so I am asking the Court for clarity.

Perhaps most mystifying to me is how the government can allege I had "intent" to impede or obstruct, when I had no such intent at all.[9] And since I had no intent, I also have no clue what they are alleging "intent" to be. It seems to me that the government is opposed to providing these particulars because they themselves don't know what the particulars would be if they were forced to define them because they have made up these allegations without facts.

I have requested all the particulars listed in ECF No. 227, because I don't understand the "ingredients" of the allegations I face, and because I have a Sixth Amendment right "to be informed of the nature and cause of the accusation." If the government is unable to define these specifics (mens rea and actus reus), why am I even charged?

The government's arguments against providing particulars are empty. The Court has discretion to grant a Bill of Particulars, and my status as a Pro Se defendant creates a greater need for me to understand with clarity all aspects of the charges I face, and the specific acts to which the government is applying them.

---

[8] Granting a Bill of Particulars would both satisfy my Sixth Amendment right to be informed and improve economy of cross-examination time during trial. Without knowing specifics, I will be defending with scattershot questioning.

[9] They may not be great attorneys, but these prosecutors are terrible mind readers!

```
```
**Summarization of Motions**

As I stated in my motion, ECF No. 227, attending a January 6 will help prepare my own defense, and will acclimate me to the flow of trial conduct and procedure,[10] which I believe will lead to efficiencies for the Court in my own trial. There are certain physical characteristics of the Capitol related to my case that cannot be discerned from anything in the discovery databases, and the Federal Rules of Criminal Procedure acknowledge my right to physically inspect this evidence. I also cannot be fully informed about the charges brought against me without a Bill of Particulars. So, for the forgoing reasons, I again move that the Court grant these motions.

Submitted respectfully to the Court,

By: William Pope

/s/

William Pope

Pro Se Officer of the Court

Topeka, Kansas

Certificate of Service
I certify that a copy of this was filed electronically for all parties of record on April 12, 2024.

/s/
William Alexander Pope, Pro Se

---

[10] Observing trials in person is qualitatively different than reading a procedural manual. This is why law schools require practicums and mock trials. Even the prosecutors on my case could use more practical experience.