**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 21-128 (RC) |
| | : | |
| WILLIAM ALEXANDER POPE, | : | Re Document Nos.:  113, 127, 130, |
| | : | 139, 155, 206, |
| | : | 212, 214 |
| Defendant. | : | |
| | : | |

**ORDER**

**DENYING DEFENDANT'S MOTION TO COMPEL THE GOVERNMENT TO INVENTORY AND
PRODUCE ALL CAPITOL POLICE CCTV FOOTAGE; DENYING DEFENDANT'S MOTION TO
COMPEL THE GOVERNMENT TO SERVE ON THE DEFENDANT ALL DISCOVERY MATERIALS
DESIGNATED AS SENSITIVE OR WHICH HAVE NO SENSITIVITY DESIGNATION; GRANTING IN
PART AND DENYING IN PART GOVERNMENT'S CROSS-MOTION FOR MODIFICATION OF
PROTECTIVE ORDER; DENYING DEFENDANT'S MOTION TO COMPEL THE GOVERNMENT TO
PRODUCE ALL MATERIALS RELATED TO UNDERCOVER POLICE AND MISSING POLICY BODY
CAMERA RECORDINGS; DENYING DEFENDANT'S SECOND SUPPLEMENTAL MOTION TO
COMPEL INVENTORY AND PRODUCTION OF ALL UNITED STATES CAPITOL POLICE CCTV
FOOTAGE; DENYING DEFENDANT'S MOTION TO MODIFY THE PROTECTIVE ORDER; DENYING
DEFENDANT'S MOTION TO COMPEL IDENTIFICATION OF MATERIAL FBI WITNESSES AND
PRODUCTION OF RELATED DISCOVERY; DENYING DEFENDANT'S MOTION TO COMPEL THE
GOVERNMENT TO COMPLY WITH THE PROTECTIVE ORDER GOVERNING DISCOVERY**

## I.  INTRODUCTION

The United States indicted Defendant William Pope on charges arising out of his alleged

participation in a riot at the United States Capitol on January 6, 2021.  *See* Superseding

Indictment, ECF No. 46.  Pope has filed several motions related to his access to certain discovery

materials.  The Court addresses each of Pope's motions sequentially.

## II.  MOTION TO COMPEL THE GOVERNMENT TO INVENTORY AND PRODUCE
## ALL CAPITOL CCTV FOOTAGE, ECF NO. 113

Pope's first motion requests that the Court compel the Government to inventory and

produce all Capitol Police CCTV footage.  *See* Mot. Compel Gov't to Inventory and Produce All

Capitol CCTV Footage ("First Mot. to Compel"), ECF No. 113.  Pope alleges that "video files are missing from many of the[] [Capitol Police CCTV] cameras, including cameras the Congressional access terminals have mapped as being in key locations on Capitol grounds." *Id.* at 1.  He further contends that the footage from these cameras is "highly relevant" to his case. *See id.*  And, Pope says, the Government's failure to provide that footage violates his rights under *Brady v. Maryland*, 373 U.S. 83 (1963).  *See id.* at 2.

In response, the Government argues that it is not required, under *Brady*, to produce all Capitol Police CCTV footage and that it has already exceeded its *Brady* obligations by providing Defendant with access to case-specific and global discovery materials.  *See* Gov't's Corrected Resp. to Def.'s Mot. to Compel at 2 ("Gov't Corrected Resp."), ECF No. 117.  The Government explains that it has "created itemized indices of every item that has been produced in Global and Case Specific Discovery; these indices have been produced to the defendant in this case, just as they have been produced to all January 6th defendants." *Id.*[1]  The Government argues that it is not required to do more.  *Id.*  Moreover, the Government explains that—to the extent that Pope wishes to cross-reference global discovery material with information he has obtained from the legislature—he is free to do so.  *Id.*

"Under the Constitutional doctrine of *Brady v. Maryland*, 373 U.S. 83 (1963) and the statutory regime of Federal Rule of Criminal Procedure 16, defendants bear the burden of establishing their entitlement to the information they demand." *United States v. Nichols*, No. 21-

---

[1] As another judge in this district has described, the Global Discovery in January 6 cases "includes 5.83 million files, amounting to 8.27 terabytes of information, consisting of materials such as 507 digital recordings of subject interviews[,] the results of searches of 813 digital devices . . . [and] over 30,000 files of video footage, including body-worn cameras, hand-held cameras, and surveillance cameras." *United States v. Nichols*, No. 21-CR-117, 2023 WL 6809937, at *6 (D.D.C. Oct. 16, 2023) (citation omitted).

CR-117, 2023 WL 6809937, at *1 (D.D.C. Oct. 16, 2023).  While *Brady* holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment," 373 U.S. at 87, "there is no general constitutional right to discovery in a criminal case, and *Brady* did not create one," *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  "If evidence does not meet the standard of *Brady*, then the defendant has no right to that information unless the Federal Rules of Criminal Procedure or a court's local rules provide otherwise."  *Nichols*, 2023 WL 6809937, at *4.

"There are three components of a . . . *Brady* violation."  *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  First, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching" of the government's witnesses.  *Id.* Second, "that evidence must have been suppressed by the State, either willfully or inadvertently."  *Id.* at 282.  This means that the evidence must be in the government's possession, *United States v. Trie*, 21 F. Supp. 2d 7, 23 (D.D.C. 1998), although the prosecution also "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police," *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).  Third, the defendant must have "established the prejudice necessary to satisfy the 'materiality' inquiry."  *Greene*, 527 U.S. at 282.  For evidence to be material, there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).  A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome."  *Id.*  The evidence may be material "either to guilt or to punishment."  *Brady*, 373 U.S. at 87.  Materiality "must be evaluated in the context of the entire record."  *United States v.*

*Agurs*, 427 U.S. 97, 112 (1976).  However, "mere speculation is not sufficient to sustain a *Brady*

claim."  *United States v. Mason*, 951 F.3d 567, 573 (D.C. Cir. 2020) (citation omitted).

      Under Federal Rule of Criminal Procedure 16, the Government must provide a defendant

several categories of information.  Rule 16(a)(1)(E) requires the Government, at a defendant's

request, to "permit the defendant to inspect and to copy . . . documents, data, [and] photographs,

. . . if the item is within the government's possession, custody, or control and" either (1) "the

item is material to preparing the defense," (2) "the government intends to use the item in its case-

in-chief at trial," or (3) "the item was obtained from or belongs to the defendant."  Fed. R. Crim.

P. 16(a)(1)(E).  Evidence is "material" under Rule 16 "as long as there is a strong indication that

it will play an important role in uncovering admissible evidence, aiding witness preparation,

corroborating testimony, or assisting impeachment or rebuttal."  *United States v. Slough*, 22 F.

Supp. 3d 1, 4 (D.D.C. 2014) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir.

1993)).  The Rule 16 materiality standard is "not a heavy burden," but the government need only

disclose information if it "enable[s] the defendant significantly to alter the quantum of proof in

his favor."  *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996) (citation omitted).

      Here, Pope has failed to show that the Government has committed a *Brady* violation, or a

violation of Rule 16, by refusing to turn over *all* Capitol Police CCTV footage.  First, Pope has

not explained how the video footage he alleges is missing would be favorable to him.  *See*

*generally* First Mot. to Compel.  While Pope asserts that the missing camera footage is "highly

relevant to January 6 cases, including [his] own," *id.* at 1, he does not explain what he expects

the footage to show or why that footage would assist in his defense.  Much of the camera footage

that Pope requests depicts areas where Pope never set foot.  That footage is therefore not

beneficial to Pope's case.

Second, Pope has not shown that additional video footage is within the Government's

possession.  Although Pope argues that certain materials he has obtained from Congress

demonstrate that additional cameras existed at the Capitol, he does not show that the prosecution

possesses footage from these cameras.  *See id.* at 1–2.  And the Government represents that it

created indices of every item it has produced in discovery.  *See* Gov't's Corrected Response at 2.

"Normally," courts "accept the government's representations as to what documents in its

possession are 'material.'"  *Lloyd*, 992 F.2d at 352; *Nichols*, 2023 WL 6809937, at *7 (rejecting

January 6 defendant's contention that government was hiding footage from 1,100 cameras

because "[i]t takes 'more than the adverse party's conclusory suspicions to impel the adjudicator

to delve behind the government's representation that it has conducted a *Brady* review and found

nothing'" and defendant offered only bare speculation that footage was missing (citation

omitted)); *see also* Def.'s Reply in Supp. of First Mot. to Compel at 2, ECF No. 119 (Defendant

arguing that "the government has failed to produce at least 1100 cameras in the January 6

discovery").

Third, Pope has provided no reason beyond a speculative level to believe that the

additional video footage he seeks is material to his case.  In other words, even if the Government

possessed additional footage—which Pope has not shown—Pope has also failed to show that the

additional footage would play an important role in uncovering admissible evidence, aiding

witness preparation, corroborating testimony, or assisting in impeachment or rebuttal.  Like some

other January 6 defendants, Pope's defense appears to involve an argument that "shadowy teams

of plainclothes government agents orchestrated the attack" on the Capitol.  *See Nichols*, 2023

WL 6809937, at *7; *see* Def.'s Reply in Supp. of First Mot. to Compel at 2 n.2 (stating that

"undercover police incit[ed] the crowd" at the Capitol).  That said, Pope has not argued that he

ever talked to the alleged government agents or that he was otherwise influenced by the government to enter the Capitol. Therefore, the Court cannot see how discovery materials about events and individuals that Pope was not involved with are material to Pope's defense.

For much the same reason, Pope cannot meet his burden under Rule 16 because he has not established either (1) that the footage is "material to preparing the defense," (2) is intended by the government to be used in its case-in-chief at trial, or (3) was obtained from or belongs to him. *See* Fed. R. Crim. P. 16(a)(1)(E). Although the materiality standard of Rule 16 is not identical to that of *Brady*, Pope fails under both for basically the same reason. He has failed to show that video footage of scenes at the Capitol that he was not part of are material to his defense. Accordingly, the Court denies Pope's motion to compel the government to inventory and produce all Capitol Police CCTV footage.[2]

---

[2] In Pope's Second Supplemental Motion to Compel Inventory and Production of All Capitol Police CCTV Footage, ECF No. 155, Pope asks for the same relief that he requests in his first motion to compel. As far as the Court can tell, this motion to compel differs only in the justification Pope provides for why he requires the video footage. In particular, Pope argues that the video footage would allow him to cross-examine Government witnesses. *See id.* at 1–2. While it is true that evidence that can be used for impeachment purposes must be disclosed to a defendant under *Brady*, *see Strickler*, 527 U.S. at 281–82, Pope has provided no facts or evidence to show that impeachment evidence exists with respect to his case. Pope argues that, in an unrelated January 6 case, CCTV footage revealed that government witnesses' testimony was unreliable. *See* Reply in Supp. of Second Suppl. Mot. to Compel the Gov't to Inventory and Produce All Capitol Police CCTV Footage at 1–3, ECF No. 155. The inference Pope appears to draw is that additional CCTV footage will allow him to impeach the Government's witnesses in his own case. Nevertheless, "[b]are speculation," is insufficient to "suggest the existence of favorable materials." *United States v. Williams-Davis*, 90 F.3d 490, 514 (D.C. Cir. 1996).

Additionally, Pope's complaint that some of the videos sent to him by the Government are cropped appears to be misplaced and a non-issue. This is so because, as the Government explains, "the video is open-source and was not edited by the government." Gov't Resp. to Second Supp. Mot. to Compel at 2, ECF No. 174. The Court understands this to mean that the Government produced the video in the state in which the Government received it, without any manipulation by the Government. Moreover, Pope appears to already possess footage of the East Front of the Capitol that is not cropped, *see* Def.'s Resp. to Gov't's Opp'n to Inventory and Produce Brady Materials at 8, ECF No. 165, and additional footage of the East Front is available

### III.  MOTION TO COMPEL THE GOVERNMENT TO SERVE ON THE DEFENDANT ALL DISCOVERY MATERIALS DESIGNATED AS SENSITIVE OR WHICH HAVE NO SENSITIVITY DESIGNATION, ECF NO. 127

Pope next moves the Court to compel the Government to serve *all* discovery materials designated as sensitive, or which have no sensitivity designation, in a physical format, such as a hard drive.  *See generally* Mot. to Compel the Gov't to Serve on the Def. All Disc. Materials Designated as Sensitive or Which Have No Sensitivity Designation ("Second Mot. to Compel"), ECF No. 127.  The Government argues that the Court should deny Pope's motion for the following reasons: (1) Pope has received all case-specific discovery and the Government has complied with reasonable, ongoing requests for global discovery materials; (2) Pope has access to all discovery on the Relativity platform, through his standby counsel; (3) the materials Pope seeks require protection from misuse or unrelated dissemination; (4) Pope has requested materials that are not relevant to his case; (5) the Court will be unable to limit Pope's use or dissemination of the materials at issue once the case is over; (6) provision via hard drive puts an on-going, unnecessary burden on the Government because the materials are already available through standby counsel; (7) provision via hard drive increases the odds that Pope views mistakenly provided materials; and (8) granting Pope's request would trigger an onslaught of requests from other defendants in January 6 cases.  *See* Gov't's Opp'n to Second Mot. to Compel at 7–14, ECF No. 130.

Although it is unfortunate that the Government made a promise that it later retracted, the Court agrees with the Government that physical service of *all* sensitive and undesignated materials in unwarranted.  The Government has explained that Pope has access to all global

---

in the Global Discovery database, which Pope can view with the supervision of his standby counsel.

discovery under supervision of his standby counsel by searching the Relativity database. *Id.* at 14. "At the end of the day, while the Court understands Defendant's desire to view the discovery that the Government produced, the Government is not obligated to re-produce directly to Defendant materials that it has already produced." *United States v. Beckley*, No. 21-CR-285, 2024 WL 245737, at *5 (D.D.C. Jan. 23, 2024). Rather, Pope "may view whatever discovery he likes by coordinating with his [standby] counsel" and reviewing the materials accessible in the Relativity database. *Id.* The fact that Pope cannot access the documents by himself "is of no moment," because the Court and the Government have made clear that Defendant's *pro se* status does not allow him "unfettered access to materials." *Id.* at *4; *see also* Notice Regarding Status of Disc., ECF No. 52. The Government has produced to Pope everything that it is required to produce.

The Government additionally cross-moves to modify the Court's protective order so that Pope may only view materials designated as sensitive within the Global Discovery in the presence of standby counsel, without the option of downloading those materials, and that Pope be required to return any sensitive evidence he has to the Government at the close of his proceedings. *See* Gov't's Opp'n to Second Mot. to Compel at 2. The Court grants the Government's motion in part and denies the Government's motion in part.

As the Court explained in its prior Order Denying Defendant's Motion to Modify Protective Order, ECF No. 103, Federal Rule of Criminal Procedure 16 provides the Court discretion to regulate discovery, permitting it to "deny, restrict, or defer discovery or inspection, or grant other appropriate relief" on a showing of "good cause." Fed. R. Crim. P. 16(d)(1). "[A]mong the considerations to be taken into account by the court [are] the safety of witnesses and others, a particular danger of perjury or witness intimidation, [and] the protection of

information vital to national security." *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (second alteration in original) (citation omitted). "[O]nce a showing of good cause has been made, the court has relatively unconstrained discretion to fashion an appropriate protective order." *United States v. Johnson*, 314 F. Supp. 3d 248, 251 (D.D.C. 2018).

Although the Court will not compel the Government to serve *all* materials designated as sensitive on Defendant, the Court will not restrict Defendant from possessing *some* additional materials designated as sensitive. In particular, Pope may possess any materials designated as sensitive that are specifically relevant to his case. If Pope can identify sensitive materials that depict or relate directly to his own conduct, he may continue to request those specific materials from the Government.

That said, the Court will grant the Government's motion with respect to the disposition of materials at the end of Pope's proceedings. Once his case is over, Pope's interest in possessing sensitive discovery materials will be outweighed by the Government's interest in protecting national security by ensuring that the sensitive materials are not unlawfully disseminated. *See, e.g.*, *United States v. Bisong*, 645 F.3d 384, 396–97 (D.C. Cir. 2011) (discussing limitations on a defendant's access to discovery materials in light of government's "security needs"). Accordingly, the Court grants the Government's motion to modify the protective order in part and Defendant is required to return all sensitive materials in his possession to the Government at the conclusion of his proceedings.[3]

---

[3] Defendant appears to cross-move the Government's cross-motion in his reply brief. *See* Reply in Supp. of Second Mot. to Compel at 9–12, ECF No. 138. Pope argues that the Government has spied on his communications. *Id.* He bases this contention on the fact that the Government appeared to know about his decision to appeal an order before he filed his appeal. *Id.* at 11. Therefore, Pope moves the Court to compel the Government to cease spying on him and produce all of his intercepted communications. *Id.* at 12. To begin with, the Court observes

## IV.  MOTION TO COMPEL GOVERNMENT TO PRODUCE ALL MATERIALS RELATED TO UNDERCOVER POLICE AND TO PRODUCE MISSING BODY CAMERA RECORDINGS, ECF NO. 139

Pope's next motion is similar in many respects to the motions discussed above.  *See generally* Mot. Compel Gov't to Produce All Materials Related to Undercover Police ("Third Mot. to Compel"), ECF No. 139.  In short, Pope requests that the Court compel the Government to produce (1) all unredacted materials provided by the D.C. Metropolitan Police Department ("MPD") to the Government; (2) all unaltered police body camera recordings from January 6; (3) all information on the "handler" of a specific individual at the January 6 riot; (4) reports on all body worn cameras that malfunctioned on January 6; (5) reports on all body worn cameras that were lost or stolen on January 6; (6) and reports on all officers who were investigated by MPD Internal Affairs for not activating their body worn cameras during the events of January 6.  *Id.* at 39–40.  He contends that this evidence will show that undercover officers encouraged other individuals on January 6 to break the law, "which set off a chain of events that influence[d]

---

that a party may not raise a new issue for the first time in a reply brief.  *See Romero v. RBS Constr. Corp.*, No. 18-CV-179, 2022 WL 522989, at *6 (D.D.C. Feb. 22, 2022).  And the Court further observes that Defendant Pope has not identified a rule authorizing the Court to do what he asks.

Even if the Court reaches Pope's cross-motion, however, the Court will not grant it. Defendant may have intended to move under Federal Rule of Criminal Procedure 16(d)(1). Under Rule 16(d)(1) "the [C]ourt *may, for good cause*, deny, restrict, or defer discovery or inspection, *or grant other appropriate relief*."  Fed. R. Crim. P. 16(d)(1) (emphases added).  The Court has "considerable discretion" under Rule 16.  *United States v. Dixon*, 355 F. Supp. 3d 1, 8 (D.D.C. 2019).  Here, the Court concludes that Defendant has not shown good cause for his motion.  Although Pope contends that the Government must have either spied on him or lied in its briefing, Pope has failed to demonstrate that his conspiratorial theory is more likely than that the Government simply erred about dates and did not, in fact, spy on him.  Accordingly, the Court will not grant Pope's request.

[Defendant's] own case." *Id.* at 5.  In response, the Government argues that these materials are not relevant to Pope's case.  *See* Gov't's Resp. to Third Mot. to Compel at 1–2, ECF No. 145.[4]

Applying the *Brady* and Rule 16 analyses discussed above, *see supra* Part II, the Court concludes that Pope has not demonstrated that the Government has an obligation to produce the materials he seeks.  As explained above, the Government's obligation under *Brady* extends only to the production of discovery that is relevant and material to a defendant's case.  *See Nichols*, 2023 WL 6809937, at *4.  Pope argues that the police camera footage is relevant to his case because he would like to use it to show that undercover law enforcement officers encouraged and instigated the riot on January 6.  *See* Third Mot. to Compel. at 5–7.  While evidence of undercover officers instigating the riot on January 6 could—hypothetically—be helpful and material to Pope's case, Pope's motion "never identifies a single individual *he interacted with* whom he now suspects to be an undercover actor."  *United States v. Zink*, No. 21-CR-191, 2023 WL 5206143, at *3 (D.D.C. Aug. 14, 2023) (emphasis added); *see also Garcia v. Does*, 779 F.3d 84, 95 (2d Cir. 2015) (declining to extend the entrapment-by-estoppel defense to a case that involved the location and movements of protestors who argued that their prosecuted conduct had been implicitly approved by the police, but could not show that it was "affirmatively authorized" by the police); *United States v. Orenuga*, 430 F.3d 1158, 1165 (D.C. Cir. 2005) (explaining that

---

[4] Defendant points out that the Government's response was filed over 14 days after Defendant's motion and that his motion should therefore be treated as conceded under Local Criminal Rule 47(b).  *See* Reply in Supp. of Third Mot. to Compel at 1, ECF No. 147.  Given both that the Government earlier moved to have Defendant's motion to compel removed from the docket and the flurry of motions involved in this case, the Court concludes that the minimal delay in the Government's response did not prejudice Pope and therefore exercises its discretion not to treat his motion as conceded.  *See United States v. Slatten*, 50 F. Supp. 3d 29, 31 (D.D.C. 2014) ("Given the hectic flurry of motions in this case leading up to the date of trial, the Court will not consider this motion to be conceded, notwithstanding the government's late-filed opposition."), *aff'd*, 865 F.3d 767 (D.C. Cir. 2017).

"entrapment defense requires evidence that (1) the crime was induced by the Government, and (2) appellant lacked a 'predisposition . . . to engage in the criminal conduct'" (citation omitted)).

Pope's motion requests a broad swath of video footage from several officers, none of whom he demonstrates had any interaction with him.  Indeed, much of the footage Pope requests depicts areas of the Capitol that Pope did not visit.  *See* Gov't's Resp. to Third Mot. to Compel at 2 (explaining that Government intends to argue that Defendant breached the East side of the Capitol while the video footage Defendant requests depicts the West side of the Capitol). Although Pope argues that some of the footage depicts the East side of the Capitol, he does not substantiate that argument and does not contend that he spoke with any of the officers he alleges were present on the East side of the Capitol.  *See* Reply in Supp. of Third. Mot. to Compel at 2, ECF No. 147; *see also Lloyd*, 992 F.2d at 352 ("Normally [courts] accept the government's representations as to what documents in its possession are 'material.'").

To the extent Pope wishes to argue an entrapment defense, he must "produc[e] evidence of government inducement" to show that he "commit[ed] [the] crime not due to any predisposition, but solely as a result of government inducement."  *United States v. Jenrette*, 744 F.2d 817, 821 (D.C. Cir. 1984).  Although Pope argues that the Government has evidence showing undercover officers speaking with other individuals at the January 6 riot, *see* Third Mot. to Compel at 12–31, Pope does not say that he himself spoke with or was induced by any undercover officer.  Therefore, he cannot make an entrapment defense with the evidence he seeks from the Government, and the material he seeks is irrelevant and immaterial.[5]  For much the same reason, Pope is not entitled to this material under Federal Rule of Criminal Procedure

---

[5] The Court notes that the Government represents that "it is not aware of any interaction between the [D]efendant and any of these officers."  Gov't's Resp. to Third Mot. to Compel at 2.

16 because the footage is not material to his defense, the Government does not intend to use it in its case-in-chief, and the footage was not obtained from Defendant.  *See* Fed. R. Crim. P. 16(a)(1)(E).  Accordingly, the Court will deny Pope's motion—subject to reconsideration if Pope can demonstrate that the discovery he requests depicts *his* interactions with an individual he believes to be an undercover officer and he can articulate how that individual influenced his conduct.

## V.  MOTION TO MODIFY PROTECTIVE ORDER TO ALLOW DEFENDANT DISCOVERY ACCESS, ECF NO. 206

Pope's next motion requests that the Court modify the protective order in this case.  *See* Mot. to Modify Protective Order, ECF No. 206.  The protective order in this case governs the method by which Pope can view portions of the Government's discovery productions.  *See* Protective Order, ECF No. 26.  Pope argues that he is "prohibited by the protective order from possessing crucial evidence that directly pertains to [his] case."  Mot. to Modify Protective Order at 1–2.  The Government counters that Defendant's request is overbroad because Pope requests that he be given unsupervised access to materials that are not directly relevant to his case.  *See* Gov't's Resp. to Def.'s Mot. to Modify Protective Order at 1–2, ECF No. 213.  The Government does not, however, oppose Defendant's use of materials that the Government introduced in the trial of Michael Pope—Defendant's brother—or of material that is directly relevant to Defendant.  *Id.*

The Court denies Defendant's motion.  As the Court concluded in its prior Order, "[t]he Government has established good cause for the requirement that standby counsel mediate Defendant's access to USCP surveillance footage designated Highly Sensitive."  *See* Order Denying Def.'s Mot. to Modify Protective Order at 4, ECF No. 103.  The Court also held that the "protective order's restrictions do not violate Defendant's right to conduct his defense."  *Id.* at 8.

The Court sees no reason to depart from its prior holding.  Defendant is free to utilize any highly sensitive materials he chooses in his defense provided he does so while supervised by standby counsel.  As the Court previously observed

> Defendant's decision to reject this available option to enhance the efficiency of his review of Highly Sensitive material does not alter the Court's conclusion that the protective order's restrictions are based on good cause and do not violate Defendant's right to conduct his defense.  Defendant retains access to review Highly Sensitive material, and any inconvenience associated with the requirement for standby counsel to supervise that review merely reflects an appropriate balance, envisioned by the Federal Rules of Criminal Procedure, between Defendant's entitlement to discovery of evidence "material" to his defense and "the protection of information vital to the national security."

*Id.* (citing Fed. R. Crim. P. 16(a)(1)(E)).  As has been made clear to Defendant throughout this case, Defendant's choice to proceed *pro se* does not entitle him to direct access to the highly sensitive materials in the Government's Global Discovery database.  To reiterate, Defendant may review—but not download—any material in the Global Discovery database that he needs, provided he do so under the supervision of standby counsel.[6]  The Court denies Pope's motion to modify the protective order.

## VI.  MOTION TO COMPEL IDENTIFICATION OF MATERIAL FBI WITNESSES AND PRODUCTION OF RELATED DISCOVERY, ECF NO. 212

Pope next requests the Court to compel the Government to (1) identify all Federal Bureau of Investigation agents present at the Capitol on January 6 and produce all related discovery, (2) produce all discovery related to a former FBI employee, John D. Guandolo, and (3) identify all

---

[6] Defendant may also use the materials provided to him in his case-specific discovery. These materials include—among other items—"U.S. Capitol Police ('USCP') Closed Circuit Video ('CCV') footage from inside the Capitol by the Senate Carriage door," "[a] confidential tip identifying Pope at the Capitol," "USCP CCV footage showing Pope attempting to force open a door inside the office suite of Speaker of the House Nancy Pelosi," and "Grand Jury material." Request for *Faretta* Inquiry at 4, ECF No. 60.

local law enforcement Guandolo interacted with on January 6 and produce all related discovery. *See* Mot. to Compel Identification of Material FBI Witnesses ("Fourth Mot. to Compel") at 1, ECF No. 212.

Defendant says that Guandolo has "attested under penalty of perjury," and in various public statements and interviews, that he had previously worked for the FBI and was present near the Capitol on January 6, 2021.  Fourth Mot. to Compel at 2–7 (citation omitted).  Defendant also says additional, active-duty FBI employees were present: "Guandolo said 'I actually spent most of the day with a couple colleagues that were still active-duty FBI.'"  *Id.* at 4.  Defendant argues that he has "a Due Process right to obtain this favorable information (the identities of all FBI witnesses and related discoverable materials)" and "a Compulsory Process right to compel favorable testimony from these FBI agents" under the Sixth Amendment.  *Id.* at 18.  The Government counters that disclosure of the information Defendant seeks is not mandated by "the rules of criminal discovery," the Sixth Amendment, or *Brady*.  *See* Gov't's Mot. to File Redacted Version of Gov't's Resp. to Fourth Mot. to Compel ("Gov't's Resp. to Fourth Mot. to Compel") at 3–10, ECF No. 222-1.  The Court agrees with the Government and finds that Defendant has failed to show that the Government has an obligation to produce the requested material.

Defendant asserts two rights to the requested discovery: a Due Process right and a Compulsory Process right.  *See* Fourth Mot. to Compel at 18.  Pope argues that the Government is required to identify FBI witnesses under the Sixth Amendment Compulsory Process Clause. *Id.*  Defendant cites *Pennsylvania v. Ritchie*, noting that the "Sixth Amendment . . . guarantees [him] a 'compulsory process for obtaining witnesses' in [his] favor."  *Id.* (citing 480 U.S. 39, 45 n.5 (1987)).  Stemming from this Sixth Amendment assertion, Pope separately argues that the

Government has a "due process" obligation to produce the requested material.  *See* Fourth Mot. to Compel at 17 (citing *Ritchie*, 480 U.S. at 57).

As Defendant notes, the Court in *Ritchie* evaluated the defendant's Sixth Amendment Compulsory Process Clause claim "under the broader protections of the Due Process Clause of the Fourteenth Amendment" "[b]ecause the applicability of the Sixth Amendment to this type of case is unsettled, and . . . Fourteenth Amendment precedents addressing the fundamental fairness of trials establish a clear framework for review."  *Ritchie*, 480 U.S. at 56.  The Supreme Court in *Ritchie* therefore explained that the "government has the obligation to turn over evidence *in its possession* that is both *favorable* to the accused and *material* to guilt or punishment."  *Id.* at 57 (emphases added); *see also United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (explaining that violation of Compulsory Process Clause requires a defendant to show that unavailable "testimony would have been both material and favorable to his defense"); *United States v. Hsin-Yung*, 97 F. Supp. 2d 24, 30 (D.D.C. 2000) (denying Compulsory Process Clause and Due Process Clause claims because defendant did not show that requested witnesses' testimony was "material or favorable").  Consequently, the standard by which the Court evaluates a Sixth Amendment Compulsory Process Clause claim follows the *Brady* analysis outlined above.  *See supra* Part II.  Given that analysis, the Court concludes that Defendant has failed to show how the identities of all FBI agents and local law enforcement allegedly present at the Capitol satisfy the three *Brady* prongs.

Pope has failed to show that the identities and associated discovery of active FBI agents and local law enforcement are "favorable"—or relevant—to his case.  Defendant argues that the identities of active FBI agents and other law enforcement officers are exculpatory because these individuals could testify that (1) Capitol Police officers permitted individuals to enter restricted

grounds and (2) civilian participants at the Capitol could not have known which areas were restricted. *See* Fourth Mot. to Compel at 2, 3 n.4 ("If a former FBI Liaison to Capitol Police and active-duty FBI were not able to discern that the East Plaza was a restricted area, how is someone from out of town who has no such experience to be expected to discern this?").[7]  The fact that FBI officers may have been present on January 6, however, "has no bearing on [a] defendant's actual guilt or innocence" in this instance. *United States v. Brock*, 628 F. Supp. 3d 85, 101 (D.D.C. 2022) (emphasis omitted).  While courts in this district have suggested that government officers' conduct *could* have bearing on a defendant's culpability if the government's conduct caused the defendant's own conduct or bore on a defendant's own mental state, Pope does not claim that the identified FBI agents or law enforcement officers directly influenced *his* behavior on January 6 or that these FBI agents otherwise witnessed his behavior.

Defendant does not claim or provide any evidence that he had any interaction with the alleged agents.  While Defendant provides video and photographic evidence showing that former FBI employee Guandolo and other alleged FBI agents were located on the East side of the Capitol, *see* Fourth Mot. to Compel at 8–9, 15, there is no support to suggest Defendant saw or spoke with Guandolo or other alleged FBI agents (or that Pope knew they were government agents at that time).  Moreover, as the Government points out, Guandolo was hundreds of feet from Pope's location when Pope entered the Capitol and a large mob of individuals separated them.  *See* Gov't's Resp. to Fourth Mot. to Compel at 2 ("The location where Guandolo

---

[7] Defendant's arguments are largely academic.  First, as revealed in Michael Pope's trial, there is video evidence that Defendant was outside the bicycle racks set up to keep people out of the restricted area and officers attempted to keep people out until they were overrun by rioters. Second, there is no dispute that Defendant entered the Capitol Building.  None of the information Defendant seeks has any bearing on whether the Capitol Building was restricted.  And, if Defendant had stayed in the restricted area *outside* of the Capitol Building he very likely would not have been charged.

allegedly crossed into a restricted area was nowhere near the place or time that . . . Pope breached the restricted area," Defendant "was not visible from Guandolo's vantage point" and "while Guandolo and his associates were on the East Front, where . . . Pope also was, they were hundreds of feet from . . . Pope."). And the conduct that Guandolo did observe—*e.g.*, individuals climbing the Capitol steps—is distinct from Pope's conduct entering the Capitol through the carriage doors. Where the discovery included in Defendant's widespread request does not speak to Defendant's guilt or innocence, Defendant has failed to show the material requested is relevant. *See Brock*, 828 F. Supp. 3d at 101 (finding the defendant failed to show "how the requested material would have any relevance to his guilt or punishment" where he sought identification of government actors at January 6, but did not allege that his actions were caused by government actors).

Pope similarly fails to show how the information requested would have an impact on the outcome of his case. As explained above, because alleged FBI agents and law enforcement officers had no interaction with Defendant and no influence on Defendant's actions, Defendant has failed to show that testimony or identification of these individuals would change the outcome of his case.

Moreover, the Government argues that a defendant "'is precluded from . . . arguing or presenting evidence of alleged inaction by law enforcement unless the defendant specifically observed or was otherwise aware of such conduct at the time he committed the offenses he is charged with.'" Gov't Resp. to Fourth Mot. to Compel at 2 n.3 (quoting Minute Order, *United States v. Michael Pope*, 21-cr-128 (D.D.C. Jan. 10, 2024)). While Defendant and Guandolo were both present in the East Front area, the photographic and video evidence provided by Defendant does not suggest that Defendant and Guandolo ever interacted with each other, or that Defendant

would have any way of knowing Guandolo and his colleagues were FBI agents. *Cf. United States v. Rhine*, No. 21-CR-687, 2023 WL 2072450, at *10 (D.D.C. Feb. 17, 2023) (holding that evidence of law enforcement actions at the Capitol were "only probative as to [d]efendant's mental state to the extent that he was aware of or could have perceived" them). Thus, evidence that current or former FBI agents also ventured into restricted Capitol grounds and their perceptions of those actions is immaterial to Defendant's defense because he did not interact with them, was unaware of their capacity as law enforcement at the time he entered the Capitol, and it is speculative that those individuals have anything specific to say about Defendant's perceptions, intentions, or conduct on January 6.

Consequently, Pope has failed to show that the requested discovery meets the standard for evaluating Compulsory Process Clause or Due Process Clause claims. The Court is open to reconsidering a narrowed version of this motion that requests the Government to provide the identity of any FBI agents who interacted with Defendant in some manner—if any such individuals exist. As it stands however, "the Court declines to order such wide-sweeping discovery that is, in essence, simply a fishing expedition." *Brock*, 628 F. Supp. 3d at 101.[8]

## VII.  MOTION TO COMPEL GOVERNMENT TO COMPLY WITH PROTECTIVE ORDER, ECF NO. 214

Defendant's final motion asks the Court to compel the Government to provide Defendant with access to discovery materials that have been introduced into evidence in other January 6

---

[8] The Court agrees with the Government's statement that Defendant is free to reach out to Guandolo, the alleged former FBI agent, and request additional information from him. *See* Gov't's Resp. to Fourth Mot. to Compel at 9 (stating that "Pope is free to attempt to contact Mr. Guandolo and investigate what he may know about" FBI agents who were present in the crowd at the Capitol on January 6). But the Government does not have to conduct Defendant's investigation for him. *See Nichols*, 2023 WL 6809937, at *12 (explaining that the prosecution is not obligated to search the entire "leviathan that is the federal government" and is required only to identify materials that are closely aligned with the prosecution).

cases.  *See generally* Mot. Compel the Gov't to Comply with the Protective Order Governing Discovery ("Fifth Mot. to Compel"), ECF No. 214.  In particular, Defendant argues that the Government has not complied with Section 11(a) of the protective order, *id.* at 1, which, among other provisions, excludes from the protective order discovery materials that "[a]re, or later become, part of the public court record, including materials that have been received in evidence in this or other public trials or hearings," *see* Protective Order ¶ 11(a).  Pope argues that many documents that the Government has continued to designate as "sensitive" or "highly sensitive" should no longer be subject to the protective order because they have become part of the public record in other January 6 trials.  *See* Fifth Mot. to Compel at 1.  The Government appears to argue that, although not subject to the protective order, the materials that Pope seeks are irrelevant to Pope's case and that he is not entitled to them in discovery.  *See* Gov't's Resp. to Fifth Mot. to Compel at 2–3, ECF No. 218.

While certain discovery materials may fall outside the scope of the protective order, the protective order does not *require* the Government to identify those materials.  Indeed, the protective order states that it "does not constitute a ruling on the question of whether any particular material is properly discoverable . . . and does not constitute any ruling on any potential objection to the discoverability . . . of any material."  Protective Order ¶ 14.  Defendant appears to confuse a document's sensitivity designation, or lack thereof, with whether the Government has an obligation to identify that document in discovery.  As explained above, the Government has a *Brady* obligation to disclose documents that are both relevant and material to the defense.  But the Government is not required to produce or identify documents that are irrelevant or immaterial.  *See United States v. Kelly*, 707 F.2d 1460, 1472 n.62 (D.C. Cir. 1983) (explaining that the government "is not required to . . . produce insignificant or irrelevant

evidence").  And the Government must only disclose information under Rule 16(a)(1)(E) that is either "material to preparing the defense," used by the government in its case-in-chief, or was obtained from the defendant.  Fed. R. Crim. P. 16(a)(1)(E).  Barring those circumstances, the Government is not required to produce material to Defendant.  *See*, *e.g.*, *United States v. Marshall*, 132 F.3d 63, 69 n.2 (D.C. Cir. 1998) ("To give rise to a disclosure obligation, the evidence's materiality must, of course, be evident to a reasonable prosecutor."); *Ritchie*, 480 U.S. at 59 ("A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files."); *Weatherford*, 429 U.S. at 559 (holding that there is no general constitutional right to discovery).

Defendant has not demonstrated how the evidence produced in all other January 6 cases is material to his own case.  While the Government acknowledges that some evidence produced in other January 6 cases—particularly Michael Pope's case—is relevant and material to Defendant's case, that does not mean that Defendant is entitled to have the Government identify for him the evidence introduced in all other January 6 cases.  Accordingly, the Court denies Defendant's motion.[9]

## VIII.  CONCLUSION

For the reasons stated above, it is hereby **ORDERED** that Defendant's Motion to Compel the Government to Inventory and Produce All Capitol CCTV Footage (ECF No. 113) is **DENIED**; Defendant's Motion to Compel the Government to Serve on the Defendant All Discovery Materials Designated as Sensitive or Which Have No Sensitivity Designation (ECF

---

[9] With that said, although the Government is not required to identify that evidence for Defendant, a database that does identify that evidence for the press is already in existence.  The Court discerns no reason why Defendant should have fewer rights than the press.  Thus, absent written objection from the Government within two weeks, Defendant should be given access to that database.

No. 127) is **DENIED**; Defendant's Motion to Compel the Government to Produce All Materials Related to Undercover Police and to Produce Missing Police Body Camera Recordings (ECF No. 139) is **DENIED**; Defendant's Second Supplemental Motion to Compel Inventory and Production of All United States Capitol Police CCTV Footage (ECF No. 155) is **DENIED**; Defendant's Motion to Modify the Protective Order to Allow the Defendant Discovery Access (ECF No. 206) is **DENIED**; Defendant's Motion to Compel Identification of Material FBI Witnesses and Production of Related Discovery (ECF No. 212) is **DENIED**; Defendant's Motion to Compel the Government to Comply with the Protective Order (ECF No. 214) is **DENIED**; and the Government's Cross-Motion for Modification of Protective Order (ECF No. 130) is **GRANTED IN PART** and **DENIED IN PART**.

       **SO ORDERED**.

Dated:  April 23, 2024                      RUDOLPH CONTRERAS
                                            United States District Judge