# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:21-cr-00128-RC |
| v. | |
| WILLIAM ALEXANDER POPE, | |
| Defendant. | |

## MOTION TO RECONSIDER DENIAL OF ECF NO. 206

In ECF No. 239, the Court denied my motion seeking a slight modification to the protective order so that I can directly access highly sensitive materials related to my defense, so that I can prepare trial exhibits. On page 13 of the Court's order, the Court acknowledged that the government did not oppose me using materials that are "directly relevant to Defendant," but it was not clear to me if the Court was allowing me direct access to those highly sensitive materials that are directly relevant to me so that I can create defense exhibits. This is because on page 14 of the Court's order, the Court said I am not entitled to direct access of highly sensitive materials, and that I "may review – but not download."

I need direct access to some of these files that the government has designated as highly sensitive in order to synchronize them to other footage, and/or to zoom in on specific details, or to slow the playback speed to make it easier for a jury to see specific details. Without such access, I am unable to create crucial exhibits or adequately defend myself in Court. The standby counsel the Court has appointed lacks the technical and subject matter expertise that I have to do this. Therefore, I am respectfully asking the Court to clarify and reconsider the order denying ECF No. 206, since without sufficient access, I will be deprived of the ability to defend myself.

I also think it may be possible that the Court is not fully aware of what I actually have access to in 'case specific' discovery. While Section 11 of ECF No. 26 (the protective order), excludes from the protective order anything that "pertains" to the defendant, I have still never been given direct access to the Capitol CCTV clips pertaining directly to me that the government provided in my case specific discovery. Furthermore, the government only provided 13 such clips (from just 13 cameras) in my case specific discovery, but I have identified myself on more than four times as many CCTV cameras.

The clips the government did provide in case specific discovery also cut out crucial exculpatory information. For instance, one clip is only 13 seconds long, and cuts out key details pertaining directly to me. Some of the clips the government provides from the Senate Carriage area cut out the full length of the scene and context of my actions and also cut out the context of officers who will need to be cross-examined.

Essentially, the government has withheld dozens of CCTV cameras from my case-specific discovery that directly pertain to me and cut short most of the clips they produced. The government has also told me in the past that I must rely on the CCTV in global discovery to access the cameras that they didn't provide directly in the case specific discovery.

Since the Court's order was not clear to me on whether I am allowed to possess this video that pertains directly to me, I suspect the Court may presumed that I already have direct access to the CCTV clips from my case specific discovery, and that those clips are comprehensive of

everything that pertains to me. But this is not the case. Without CCTV from the global discovery, I will be prevented from having crucial evidence that pertains directly to my case.[1]

**Only a Handful of Cameras I Am Requesting are 'Highly Sensitive' and Not Yet Public**

As a general rule, the government has only designated interior Capitol CCTV cameras as 'highly sensitive' while exterior USCP cameras are designated as sensitive (which I am allowed to possess). Additionally, Congress has already publicly released several of the 'highly sensitive' interior cameras on Rumble that pertain directly to my case.[2] This leaves only nine[3] highly sensitive cameras that I am seeking direct access to for the creation of trial exhibits. They are:

- 0104 – Supreme Court Stairs
- 0114 – Senate Carriage Doors
- 0117 – Senate Carriage Doors
- 0179 – Memorial Door
- 0402 – Crypt North
- 0403 – Crypt South
- 0960 – Rotunda North
- 0964 – Statuary Hall West
- 0966 – Statuary Hall East

---

[1] The government finally sent me the exhibits from my brother's bench trial on April 30, 2024, however, the CCTV exhibits they provided were lower resolution than the original high-definition CCTV. I have requested the government send me copies in the original resolution files, since I will need to zoom in on important details. The clips also cut out some key details at the beginning and end of the sequences.

[2] Section 11c of the protective order allows me to possess materials obtained by means other than discovery.

[3] When I filed ECF No. 206 in January, there were far more cameras I needed that Congress had not yet published. Several were published shortly after the Court denied ECF No. 206.

There is a high likelihood that Congress will make these nine CCTV cameras public sometime this year, but that may not come in time for me to prepare exhibits for my trial. With this impending release by Congress in mind, it would be reasonable for the Court to balance concerns for protecting discovery with my need to possess files to prepare for trial and allow me to directly access to these files that pertain to me. Additionally, the government recently provided me clips from six[4] of these nine cameras for my brother's trial, however, the copies they provided me were degraded from the original high-definition resolution and cut out contextual information from the beginning and end of the sequences.

The 0114 and 0117 Senate Carriage Doors cameras are crucial to my defense, since they show me being pushed into the Capitol, then attempting to exit the Capitol after being pushed in, and they also show that I was not aware my flagpole had been inadvertently bumped into the door by an officer. The 0179 camera shows the time of my peaceful, voluntary exit. The cameras in the Crypt show me intentionally walking towards an exit voluntarily. And the cameras in the Rotunda and Statuary Hall show me being entirely peaceful. All of these cameras contain exculpatory evidence that I need to use in exhibits. For instance, without the ability for me to synchronize different camera angles, and to zoom in on my flagpole, and slow the speed, the jury will have greater difficulty determining the facts, which could affect the outcome of my trial.

---

[4] The government provided six reduced quality clips from cameras in the Senate Carriage area, the Crypt, Statuary Hall, and the Supreme Court Stairs. I am seeking the full resolution footage for these same scenes with the clips cut slightly longer so that I can go to trial with the full context of these sequences.

At a minimum, I need a few minutes of footage from these nine cameras. We discussed at our September 1, 2022, status conference,[5] that I would need this additional access in advance of trial to create defense exhibits, and the government did not object to that (See Figure 1).

```
 5         I do want to make clear that, at least the way the
 6    government is approaching this, we sort of see it as multiple
 7    stages.  Certainly if Mr. Pope is representing himself at
 8    trial, he is absolutely going to need the ability to
 9    manipulate and handle exhibits.  And when that time comes, if
10    he has a subset of videos that he wants to use as exhibits and
11    publish, we can definitely revisit the issue then.  But at
```

*Figure 1: At our September 1, 2022, hearing, the government acknowledged that I would need direct access before trial to "manipulate and handle exhibits," and that they were willing to grant that access for a selection of videos. (Transcript P. 8)*

**Circumstances Have Changed Significantly Since the Court Issued Order No. 103**

In ECF No. 103, the Court denied my motion to modify the protective order to allow me additional access to the Capitol CCTV (ECF No. 67), and the Court cited this order in justifying denial of ECF No. 206 (See Order No. 239 at 14). However, the Court acknowledged in Order No. 103 that the "good cause analysis" was complicated by the House of Representatives providing access to Tucker Carlson, and that there was "considerable uncertainty as to whether and how House leadership will make any future disclosures" (p. 5). The Court also rightly recognized that the amount of access to the CCTV was a "dynamic situation" that was likely to continue to "evolve" (p. 6). Ultimately, the Court denied me expanded access to the CCTV

---

[5] I originally requested the transcript for our 9/1/22 status conference in the spring of 2023, but the Court reporter for that hearing never responded. I again requested this transcript earlier this year, and finally received an invoice on February 14, 2024, but my standby was unable to obtain the transcript until just last week, April 25, 2024. Had I received this transcript sooner, I would have reference it in ECF No. 206, which I now ask the Court to reconsider.

because the Court believed that the circumstances had not yet evolved past restricted access through closed terminals at a congressional office building in Washington.

The House of Representatives is under new leadership since the Court issued Order No. 103, and Speaker Johnson has committed to releasing more than 40,000 hours of CCTV from January 6.[6] As of April 15, 2024, Representative Loudermilk estimates that more than half of that total has been released, and that the "Oversight Subcommittee will continue to release the remaining balance of footage online".[7] These cameras are being publicly posted to the internet,[8] and I have already been working to obtain much of the evidence I need online, including some of the evidence that the government failed to produce in discovery.

The "dynamic situation" the Court foresaw in Order No. 103, has indeed evolved, but there is no guarantee that all the CCTV cameras I need for exhibits will be published online in time for my trial. For this reason, I ask the Court to revisit the "good cause analysis" it made in Order No. 103, and to consider the shifting landscape of CCTV access. These nine cameras I'm requesting will become public, the only question is when. I believe it is fairer to allow me access to these files as soon as possible, since I am running short on time to prepare my defense. If these nine cameras are published after my trial, the end result for this CCTV will be the same as if the Court grants access now – it will become public. But the outcome of my case may be far different if my access to crucial evidence continues to be restricted.

---

[6] See Speaker Johnson's November 17, 2023 Press Release: https://www.speaker.gov/speaker-johnson-statement-on-january-6-2021-u-s-capitol-security-tapes/ [Note: Congress abandoned plans to blur the footage they released].

[7] See Rep. Loudermilk's April 15, 2024 Press Release: https://republicans-cha.house.gov/press-releases?ID=DB3B8B38-A01F-4C9D-AE0D-66D7AC962FB8

[8] See the House Administration Committee's Rumble Page for January 6 CCTV that is now public: https://rumble.com/c/CHASubcommitteeOnOversightRepublicanMajority/playlists

Since we have a short pretrial schedule, and by the time this motion is decided, I will already be hard pressed to finish preparing exhibits by the Joint Pretrial Statement deadline the Court has set for June 28, 2024, I appreciate the Court's speedy reconsideration of this matter!

Respectfully submitted to the Court,

By: William Pope

/s/

William Pope
Pro Se Officer of the Court
Topeka, Kansas

Certificate of Service
I certify a copy of this was filed electronically for all parties of record on May 3, 2024.
/s/
William Alexander Pope, Pro Se