# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

WILLIAM ALEXANDER POPE,

Defendant.

**Case No.: 1:21-cr-00128-RC**

## REPLY TO GOVERNMENT OPPOSITION TO CONTINUE TRIAL DATE

In ECF No. 237, I moved for my trial date to be continued until at least October 2024, due to numerous outstanding issues. Rather than working to resolve these critical issues over the past three weeks, the government has lazily opposed a continuance (ECF No. 250), hoping to sneak this case to trial without meeting their clear obligations. For instance, the government made no serious effort to retrieve and produce bodycam recordings from my arrest, which will show that my warrant was improperly served and that the seized contents of my phone should be suppressed. The government also produced a corrupted zip file of my phone data, that is completely unusable and does not satisfy their discovery obligations. Additionally, the government has not yet provided particulars for my charges as the Court ordered. These are some of the many unresolved issues and are clear examples of information and materials that I need for preparing pre-trial motions. With the Court's pretrial motions deadline set at May 13, which is just one week from today, even if these items are now immediately produced, I will not have adequate time to review them and draft related pretrial motions. I requested these things months and years ago, so it is unacceptable for these issues to still be unresolved at this deadline. Because of the government's continued obstruction and delay, I will not be ready for trial in July.

**The Government Has Not Provided Particulars for My Charges as the Court Ordered**

With less than a week to go before the Court's pretrial motions deadline, the government still has not provided the particulars for three of my charges that the Court required in Order No. 251. Without these particulars, I am unable to prepare a defense against these counts, and even if they are provided this week, I will not have sufficient time to study and consider the legal implications and draft relevant motions to dismiss, prior to the May 13, 2024, pre-trial motions deadline. The government first indicted me on these counts on February 19, 2021, so there is no reason for any delay. If the government, after three years, cannot immediately know and produce the particulars of these charges, then the entire grand jury process was a sham, and these counts should be dismissed. I am doing my best to prepare for the July 22, 2024, trial date, but without these particulars, I cannot adequately meet the motions deadline, and I will not be ready for trial.

**The Government Is Still Not Responding to Emails or My Notice of Discovery Request**

On March 22, 2024, I filed a notice of discovery request with the Court and emailed a copy of that request to the government. The government still has not responded to that letter. In ECF No. 237, I also listed several other emails the government had not responded to. In the three weeks since then, the government still hasn't responded to any of them. Because of this, I will be filing a motion to compel the government to substantially respond to all emails. This continued struggle to obtain basic information is preventing me from being ready for trial in July.

**The Government Has Not Identified Uniformed Officers That I Need to Call as Witnesses**

In conjunction with my March 22, 2024, discovery request letter, I emailed AUSA Ontell a document containing photos of uniformed officers I need to identify so that I can call them for testimony. The government still has not responded to that email or identified these crucial

witnesses. I should not have to constantly struggle with the government to receive this basic information that I need for trial. Without knowing what witnesses I can call, I cannot determine what evidence I will be able to introduce, or what defense I can put on. The government's continued refusal to provide this information (or even to respond to the request) will now require me to file an additional motion to compel in the coming days. Doing so takes my time away from other important filings and trial preparation to the extent that even though I am working long hours to prepare a defense, I will not be ready for trial in July.

**The Government Has Not Provided Accurate Discovery on my Self-Report Date**

In ECF No. 250 at 2, the government claimed they had provided me access to materials pertaining to my self-report. While the government has provided materials with the WRONG date on them, what the government has not provided, and what I am requesting, are all materials from that contain the ACTUAL date of my self-report. I need the original information from the FBI tips system, so I can examine government witnesses on why they listed the wrong date in court filings. I cannot go to trial without this evidence. Since the government has not fulfilled production obligations, I will now have to spend time filing another motion to compel.

**The Government Did Not Provide My Phone Data Directly and It Was Corrupted**

The government waited more than three years after my first appointed counsel, Mr. Eaton, first requested my unscoped phone data, to even attempt to provide it, and the government only did so after I filed a motion to continue the trial date. In addition to this, they produced a zip file to my standby counsel rather than directly to me, even though the phone data is my property. My standby counsel experienced multiple, time-consuming download failures before she was finally able to transfer the file to me. This intermediary step was unnecessary, and is another

example of the government doing everything they can to waste my time and make discovery access as difficult as possible. The data is also not in the original format[1] and seems to be corrupted. Neither I nor my Standby counsel have been able to load the data file, despite multiple time-consuming attempts to do so. The government producing a completely unusable data package is the same as them producing nothing at all, and it does not fulfill the government's discovery obligations. This obligation has not been met. I need my data in a usable format!

Even if the government provides the data in a usable form, I now only have two months to review it, and these months will be filled with an incredible amount of other work. The deadline for pretrial motions is also only one week away, and I am prevented from preparing related motions by the government's failure to provide a usable copy of my phone.

This is not due process!

This data should have been provided three years ago when it was requested! Even though I am doing the best I can to prepare for trial, the government's delayed and faulty productions make adequate preparation impossible. Because of this, I will not be ready for trial in July.

**The Government Has Not Provided Discovery on the Man Who Pushed Me into the Capitol**

To date, the government has provided no discovery on the man who pushed me into the Capitol, despite my many requests for this information. This is a central part of my defense, so I cannot go to trial without additional discovery.

---

[1] Rather than producing my phone data in the original format, the government has lumped it into a single file that requires specific software to open. Both my standby counsel and I received error messages when attempting to unzip the package, and neither of us were able to get the third-party software to open the corrupted data file.

For context, the pusher has been hashtagged as #FrodoTheFash. He was one of the earliest persons at the west front of the Capitol. An hour later, he pushed his way up the scaffolding and past police, and was one of the first to enter the Capitol through the Senate Wing Doors. He then resisted leaving the Capitol. After finally exiting through the Senate Carriage Doors, he turned around began trying to push back in those same doors. After first trying to push his way back in through police without success, he then began pushing me through the doors. After I was pushed in, I immediately attempted to return to the doors to exit the Capitol. As I was approaching the doors to exit, #FrodoTheFash again pushed past me to re-engage with officers. This second time he pushed me caused my hat to fall off and he created chaos in the area. His actions caused the police to change tactics from allowing people to exit, to closing the doors instead. After he was forced out and tried but failed to again push his way back into the Senate Carriage Doors, #FrodoTheFash then moved to the east center steps and joined a coordinated attack on police at the Columbus Doors at ~2:35 p.m. where video shows him pushing and pulling officers away from the doors. He then entered the Capitol a third time, and physically held officers back so they could not close the Columbus Doors. After this, #FrodoTheFash pushed past a police line that was in the Statuary Hall Connector and attempted to push his way into the House Chambers doors. Later, #FrodoTheFash attempted to push through a police line in the rotunda. Eventually he was forced out the Columbus Doors, but he then moved back to the west side of the Capitol where video shows him joining a heave-ho and pushing police in the tunnel. When police forced him out of the tunnel, it appears that #FrodoTheFash was directly on top of Roseann Boyland, who was crushed to death. Everywhere he went, #FrodoTheFash was pushing, yet despite engaging in more violence against police and protestors than perhaps anyone else, he hasn’t been arrested.

This serial pusher of January 6 is highly relevant to my case, since I never would have entered the Capitol had he not pushed me in. The government's failure to provide discovery on this individual will now force me to file another motion to compel, which takes my time away from other filings and trial preparation and prevents me from being ready for trial in July.[2]




*Figure 1: When enhanced to reveal more detail in the shadows Exhibit 100 from my brother's trial shows that the man in the gas mask, who is hashtagged #FrodoTheFash, repeatedly lunged into me, pushing me into the Capitol. In this frame, I was looking back to see who was pushing, but I could not see the pusher because my flag was blocking my view. Since I could not see who it was, at the time I believed it may have been an officer. This government exhibit used in my brother's trial reduced and the resolution from the original CCTV footage. I need the original high definition video to show these details as clearly as possible.*

**The Government Has Not Provided Discovery on FBI Informant James Ehren Knowles**

As I noted in ECF No. 237 at 14, FBI informant James Ehren Knowles was filming when he entered the Capitol through the Senate Wing Doors at 2:25 p.m. Because Knowles was a witness to my presence in this area, I intend to call him to testify, and I cannot go to trial without the video he recorded of me and my brother. Since the government has not provided this discovery willingly, I will now have to file an additional motion to compel production, which takes my time away from other trial preparations.

---

[2] A last minute discovery dump on #FrodoThe Fash will not be adequate, since this person's actions are a core part of my defense, and I will need time to review any materials that are produced and build them into my defense.

**The Government is Circumventing the Court's Order to Provide Access to Trial Exhibits**

In Court Order No. 239 at 21, the Court included Footnote 9, which directed the government to provide me access to the database that allows the press to obtain trial exhibits. However, on May 5, 2024, I received an email from AUSA Benet Kearney, that said the government instead intended to provide me access to those exhibits through the Relativity database. This not only circumvents the Court's direct order, but it also inhibits my access to these materials since I am being denied direct access to Relativity.[3] The government's failure to comply with the Court's order to provide me access to the same database that other journalists use, is slowing my ability to identify materials that can enhance my defense.

**Subject:** US v. Pope, 21 Cr. 128 -- Exhibits Made Available to the Media

Good Afternoon Mr. Pope and Ms. Cubbage,

We write to follow up on your motion regarding court exhibits (ECF No. 214). Exhibits made available to the media via the "drop box" referenced in Standing Order No. 21-28 (BAH) are being made available on the Relativity platform. A production was made available on February 27, 2024 and can be found at documents CAPD_015008551 - CAPD_015010335.

Thank you,

Benet J. Kearney
Assistant United States Attorney
Detailed to DC-USAO
United States Attorney's Office
Southern District of New York

*Figure 2: The government is trying to circumvent the Court's order to provide me access to the media database, by instead uploading those exhibits to Relativity, which I am prevented from having direct access to.*

**The Supreme Court's Ruling on the Obstruction Charge Affects My Trial Preparations**

In the government's opposition to my motion to continue, they pointed to the Court's January 10, 2024, minute order in my brother's case where the Court said my brother's attorney "has not made clear how he is burdened by having to defend against each of the charges against

[3] This ridiculous circumvention of the Court's order is compounded by the fact that my interposed standby counsel has a busy trial schedule and does not have time to provide me access via Relativity to hundreds of court exhibits which should already be public. The government is doing everything possible to inhibit my readiness for trial.

him at trial given the significant overlap between these charges" (ECF No. 250 at 4). However, the elements of Count Two, 18, U.S.C. 1512(c)(2), include the corrupt intent to obstruct, which is a distinct characteristic that none of my other charges have. The Supreme Court has recently implied in *United States v. Fischer*, No. 23-5572, and in other recent hearings, that they will soon provide guidance on what "corruptly" means. This could result in Count Two being dismissed from my case entirely, or it could mean that I have to take a new and unexpected approach to defending against this charge. Either way, I may not know until the very end of June, just three weeks before my trial is scheduled to begin, what my defense will need to include. If I have to show that I had no corrupt mens rea, I will need to call additional witnesses who can speak about my mental state immediately prior to January 6, and I will have to present additional evidence. Some witnesses I would have to call to defend myself against Count Two are professors at Kansas State University. If I bring them to trial in July, I will be interrupting their summer teaching schedule, and I will also be disclosing some of my private student records that would otherwise be protected under FERPA. These witnesses and evidence would not have pertained to my brother's case, but they are extremely favorable to me. I would rather not force some of my professors to make travel arrangements for trial in July or disclose my private student records to the government prior to the Fischer ruling, when there is a strong possibility that Count Two will be dismissed and that this evidence and testimony will not be needed. With these factors in mind, I believe my request to delay the trial is very reasonable.

**My Standby Counsel is Now Uncertain What Discovery I May Possess**

Following the Court's Order No. 239, my standby counsel became uncertain whether I was still allowed to possess and be given access to 'sensitive' materials. I also had concerns about whether I would be able to retain my case records for possible appeal, since many of my

notes and work product are irreversibly intertwined with sensitive files. Because of that, I filed ECF No. 253, to respectfully seek reconsideration and clarification of the Courts order. Since my standby counsel does not want to give me access to any new files until clarification is received, my preparation for trial is being greatly slowed, and I will not be ready for trial in July.

**The Government is Disregarding the Court's Order to Provide a Capitol Walkthrough**

On April 25, 2024, the Court ordered the government to provide me with a walkthrough tour of the Capitol during the week of July 8-12, 2024. However, in ECF No. 250 at 3, the government seemed to insist that they will not obey that Court order, and instead demanded that I join the tour on May 5, 2024, which was yesterday.[4] The government also claims they provided me with notice of upcoming tours on April 2, 2024, but they have never notified me of any Capitol tours – I had to find out by other means. The government further claims that a private tour would constitute different access than what counsel for other defendants have received. However, my standby counsel informs me that the government once arranged a private Capitol tour for her in the case of Leo Christopher Kelly (21-cr-00708).[5] Since the government is capable of arranging private tours for defense counsel, they can also arrange one for me during the week of July 8-12, 2024. My offer to visit the Capitol at another time (to convenience the government) only applied if my trial date gets moved back and another suitable tour date can be arranged.

---

[4] Since the government filed this motion late in the day on Monday, April 29, 2024, it would have been almost impossible for me to get Court approval for travel to D.C., then notify Pretrial Services 48 hours in advance of travel, and then have enough time to drive from Kansas to D.C. by Sunday, May 5, even if I had nothing else to do. But our pretrial motions deadline is May 13, and I am very busy trying to prepare filings. This ridiculous proposal is just another example of the government doing everything possible to prevent me from being ready for trial.

[5] This private Capitol Walkthrough was provided by Capitol Police Senior Counsel Lisa Walters. My Standby Counsel, Mrs. Cubbage also tells me that on the May 5, 2024, walkthrough, Ms. Walters told defense counsel that the January 6 evidentiary tour "is not the same walkthrough as the public tour – it is completely different."

**The Government Still Has Not Produced Bodycam Recordings From My Arrest**

In ECF No. 250 at 3, the government claimed to not be "not aware of any FBI body-worn camera footage of the defendant's February 12, 2021 arrest." This is an odd response, since the government appears to have mistakenly answered a different request than what I made. In ECF No. 237 at 3, I specified that it was "local law enforcement agencies" wearing body cameras, not FBI. I also referenced my March 22, 2024, notice of discovery request (ECF No. 226-1 at 1) which further specified that in addition to Task Force Officers (who were employed by the State of Kansas), my arrest was made by Topeka Police Department officers who wore body cameras.



**Bodycam Questions**

William Pope <[redacted]>

Wed 10/11/2023 2:35 PM

To: Moran, Kelly (USADC) <[redacted]@usdoj.gov>; Nicole Cubbage <[redacted]>

Hi Kelly,

Can you please send me all bodycam recordings from my arrest on February 12, 2021. I will need to reference these for pretrial motions.

*Figure 3: I first requested the bodycams from my arrest on October 11, 2023, more than nine months before my trial was scheduled to begin. The government had plenty of time to fulfill this request or ask for clarification, but instead they ignored me.*

To my knowledge, there were no FBI agents on scene for my arrest. It was the JTTF Task Force Officers who took my phone, and the Topeka Police Department (TPD) that handcuffed, searched, and transported me to the Shawnee County Jail. It seems the government has not even attempted to retrieve these bodycam recordings from law enforcement in Kansas.

According to Topeka Police Department policy (General Order No. 41.3.8 at Section E[6]), which has been in place since at least 2015,[7] TPD officers are required to activate their body

[6] The 2015 Topeka Police Department policy on body worn cameras can be accessed online here: https://www.lris.com/wp-content/uploads/2016/05/topeka_body_camera_policy.pdf

[7] The TPD bodycam policy was recently updated in April 2024, but the requirement for activating body cameras during arrests, searches, and warrant service remains in place. See TPD Policy 2.4: https://www.powerdms.com/public/TPKA/documents/735874

worn cameras during all law enforcement encounters, including arrests, searches, and the execution of any warrant. In addition to this, TPD Policy 4.6.4.A.4, which governs the transport of arrestees, requires officers to have body cameras activated "during all transportations of prisoners." TPD policy explicitly prohibits officers from deleting recordings without permission from the Chief. These policies make it highly unlikely that recordings of my arrest were not made or no longer exist. The DOJ even has a manual on bodycam use that cites the Topeka Police Department more than a dozen times as a model agency,[8] quoting the TPD Chief as saying, "Officers should try to leave the camera on to record exactly what a person says" (p.23).

> *"I tell the officers every day: You usually don't get hurt by the videos you have. What hurts you is when you are supposed to have a vid-eo but, for whatever reason, you don't."*
>
> – Ron Miller, Chief of Police, Topeka (Kansas) Police Department

*Figure 4: The DOJ repeatedly cited TPD Chief Miller in a DOJ manual on bodycam use. Miller is now the U.S. Marshall for Kansas.*

If the government is claiming they cannot find the recordings from my arrest, they are essentially accusing the numerous TPD officers who were on scene during my arrest of having all simultaneously violated the TPD body camera policy. Or perhaps the government has destroyed this crucial evidence, and this case should be dismissed with prejudice. These

[8] See: *Implementing a Body-Worn Camera Program,* by the U.S. Department of Justice: https://www.justice.gov/iso/opa/resources/472014912134715246869.pdf

recordings are crucial evidence since they involve all possible suppression issues, and I need them for filing pre-trial motions. We cannot proceed to trial with these issues unresolved.

According to my arrest warrant, those serving the warrant were forbidden from compelling me to provide the passcode to my phone. However, the arresting officers forced me to provide the device to them unlocked. The warrant explicitly says, "agents will not state or otherwise imply that the warrant requires the person to provide such information, and will make clear that providing any such information is voluntary and that the person is free to refuse the request." The arresting officers never told me that providing my device to them unlocked was voluntary or that I was free to refuse the request. I was ordered by the JTTF TFO to give them my phone unlocked, and I followed that order. I need all bodycam recordings that were made so I can show how the arresting officers improperly served the warrant, and that my phone data should be suppressed.[9] These bodycam recordings are also needed for cross-examination of witnesses who were involved in my arrest, including the JTTF TFO's who interviewed me.

These recordings are subject to FRCP 16(a)(1)(B)(ii), and the D.C. District Court has also implemented Local Rule LCrR 5.1, requiring the government to produce all Brady materials.[10] Section (b)(4) of this local rule specifically defines this requirement as including information that casts doubt on evidence. In addition to this, LCrR 5.1(e) specifically includes any local law enforcement agency, such as the Topeka Police Department, that participated in the investigation, and specifies that the government has an obligation to "seek from these sources all

---

[9] The government has already improperly used data from my phone as an exhibit in my brother Michael's trial (see ECF No. 198, at 4). Had the government promptly provided the arrest bodycams when I asked for them in October 2023, I would have filed a motion to suppress before my phone was entered on the record in my brother's trial.

[10] Kansas law also recognizes my right to review arrest bodycam recordings made by Kansas law enforcement and provides a legal process in Kansas courts when production obligations are not met (K.S.A. 45-254). If this issue is not resolved by the U.S. Attorney soon, I will be contacting the Kansas Attorney General to begin the legal process.

information subject to disclosure under this rule." If the government fails to comply with this obligation, LCrR 5.1(g) provides the Court remedies which include imposing evidentiary sanctions and granting a continuance.

I should not have to struggle with the government to get bodycam recordings that should have been a standard production. I requested these recordings seven months ago, but the government did not even attempt a response until April 29, 2024, so any delay in this matter is entirely the fault of the government. I will not waive my due process rights. I am insisting that my right to examine these bodycam recordings be honored since the events of my arrest pertain to the constitutionality of the arrest and the seizure of my phone data. These bodycams must be produced, and I must be given time to review the recordings and draft pretrial motions. The only way to rectify this situation other than dismissing this case is for the Court to compel production and to continue the trial date to allow time for due process to play out. The government's intentional delay and continued obstruction on this matter prevents me from being ready to present a defense and has made it impossible for this case to go to trial in July.

**These Remaining Issues Make the Current Pre-Trial Schedule an Impossibility**

On April 24, 2024, the Court issued a Pretrial Order (ECF No. 240). Under that order, all pre-trial motions are due by May 13, 2024, which is just one week from today. However, without being informed on the particulars for three of my charges, without bodycam recordings from my arrest, and without a usable copy of my phone data, I will be unable to adequately prepare all necessary pretrial motions by this deadline.[11] This information should have been provided to me long ago, so it is unfair to me, as a defendant, to be burdened with pre-trial process deadlines

[11] The government has also failed to provide crucial discovery on the man who pushed me into the Capitol, which I need for preparing a motion to dismiss.

when I am being denied my due process rights to be informed of my charges and be presented with basic discovery. The government has seemingly made no attempt to retrieve arrest bodycams from the Topeka Police Department, which pertain to all suppression issues. The government also sent me a corrupted copy of my phone data that is not usable.

Not only is the government absconding from their basic discovery obligations, but they also openly flaunt contempt for the Court's orders to provide access to the press portal and an evidentiary walkthrough of the Capitol. From the day of my arrest (when the warrant was illegally served) until now, my Constitutional rights have been continuously trampled by the government. All I am asking for is a fair process and an opportunity to confront my accusers on level ground. I believe I have a chance at justice if this trial is continued and these issues get resolved, but I cannot have faith in this legal process if my rights are disregarded by the government and this case is rushed to an unjust end.

As I noted in ECF No. 237 at 20, I value my right to a speedy trial, but a speedy trial is not a fair trial when it comes at the cost of my other due process rights. Despite making great efforts to prepare my defense, I cannot overcome the government's obstruction of my due process rights, and I will not be ready for trial in July. The Court should exercise its discretion in line with *Barker v. Wingo*, 407 U.S. 514, 1972), and continue the trial date until after these issues have been resolved and I am given adequate time to prepare.

Therefore, I again move that the trial date be continued.

Respectfully submitted to the Court,

By: William Pope

/s/

William Pope
Pro Se Officer of the Court
Topeka, Kansas

**Certificate of Service**

I certify a copy of this was filed electronically for all parties of record on May 6, 2024.
/s/
William Alexander Pope, Pro Se