# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

WILLIAM ALEXANDER POPE,

Defendant.

**Case No.: 1:21-cr-00128-RC**

## MOTION TO DISMISS CASE AND COMPEL DISCOVERY RELATED TO SELECTIVE PROSECUTION OF JOURNALISM ACTIVITY AND THE IMPROPER COMPULSORY SEIZURE OF PRESS INFORMATION; AND MOTION TO SUPRESS ALL INFORMATION IMPROPERLY SEIZED

On February 12, 2021, I was arrested on charges related to events at the United States Capitol on January 6, 2021. In connection to that, the government served warrants to seize my phone, my Twitter data, my Facebook data, and my Google data. All of those warrants collected data related to my activities as a journalist on and before January 6, 2021.

I had been reporting on events leading up to January 6, on my news website, Free State Kansas, and on associated social media accounts. On Facebook, I ran multiple pages related to my journalism, including Free State Kansas, The Western Cyclone (an affiliated publication connected to the historic all-black town of Nicodemus Kansas), and a page identifying me as 'Will Pope' (FreeStateWill) the owner and publisher of Free State Kansas. I also ran similar Instagram and Twitter accounts. On January 6, I posted news updates to my Facebook page, and when cell service allowed, I livestreamed updates from my phone directly to the Facebook page that identified me as a journalist. I also brought a camera and a laptop with me on the trip, and when I left the Capitol I did so intending to write and publish a story on the events of the day.

However, the stunning reaction from the DOJ, with threats to prosecute all who were on Capitol grounds, chilled my First Amendment press activity, and I chose not to publish.

I have previously referred to my journalism background in other case filings. In ECF No. 147 beginning at 4, I gave a detailed account of my journalism activities on January 6, and my history in journalism. In that filing, I included a screenshot from my website that showed my reporting on events leading up to January 6. Exhibit 147-1 shows that the federal government classified me as a member of the news media when I made FOIA requests. In ECF No. 147, I also noted that my concern for safety in Washington, and my consideration of wearing protective equipment (which I ultimately did not bring), was no different from reporters for the Washington Post and other outlets who wore body armor and helmets. Additionally, I also noted in ECF No. 147 that I have a master's degree from the University of Iowa School of Journalism, and that I was planning a Ph.D. dissertation on journalism in my doctoral program at Kansas State University. I also pointed out that my news company was registered as a business with the State of Kansas in 2017, and that registration remains current.

In ECF No. 259, I made similar points about my background in journalism, and due to the government's objections to me accessing the Capitol Cases Press Portal, I submitted an application to the Court for use of the Press Portal as a journalist. While most of my time is currently dedicated to my case, I still tweet news updates to the ~33,900 people who follow on my Twitter/X account that has identified me as a journalist since before January 6, 2021. However, because the government filed warrants for my Facebook data, I received a lifetime ban



*Figure 1: Most of my reporting was in written articles, but I also livestreamed to Facebook as I did on January 6.*

from Facebook and Instagram, so I can no longer connect with the thousands of Facebook users who made my page one of the most followed news sources in Kansas.

FBI reports that were produced to me in case specific discovery show that the government was aware at least by January 10, 2021, that I was a journalist and that I had been covering events leading up to January 6 on my news website, Free State Kansas. Despite this, the government did not give my actions on January 6 the benefit of the doubt, as they did with other journalists who entered the Capitol to cover events, and instead chose to seize my journalism data and arrest me.

Though I was arrested by the Biden administration, Attorney General Merrick Garland has made clear in a July 19, 2021, memorandum, that a "free and independent press is vital to the functioning of our democracy," and that balancing tests must be used to prevent compulsory production of records belonging to members of the press (See Exhibit 1). While this memorandum was issued following my arrest, Garland made clear that balancing tests of this nature long been employed by the Department of Justice. Furthermore, since my case is ongoing, and this new memorandum is now in effect, the government has an obligation dismiss the charges against me that fail this balancing test and all information seized from me should be returned and suppressed. Garland's memorandum also made clear that members of the news media should not be the target of investigations when their actions were within the "scope of

newsgathering activities," and he directed the Deputy Attorney General to develop procedures for the "appropriate destruction or return" of records that had been seized by the press.

Since I was reporting on events leading up to January 6 on my website, and since I was reporting live to my journalism Facebook page on the way to the Capitol, and since I was observing events that I intended to write about while at the Capitol, and since I took photographs of events at the Capitol to use in an article for my website, my actions on January 6 clearly fell within the parameters of newsgathering. As with many other events I reported on in Kansas, including at the Kansas State Capitol, I carried an American flag, and I wore a patriotic hat. I make this my practice to show that my allegiance is pro-American, and that the exercise of First Amendment press activity can be done simultaneously to the exercise of pro-American speech.[1]



*Figure 2: Even before the 2020 election, I often carried an American flag at events I reported on. This photo was taken with then Senate-candidate Roger Marshall outside the Kansas State Capitol. With all of the negativity surrounding the 2020 protests, I wanted to carry the flag to remind people to be pro-American. Since I didn't have a flagpole, I used an old walking stick that had been made from a lightweight Aspen sapling back when I worked at a youth camp in Colorado more than a decade earlier.*

While Attorney General Garland's memorandum notes the prohibition on using compulsory process against members of the press does not apply to members of the press who used criminal methods such as breaking and entering to obtain government information, there are

---

[1] The clauses of the First Amendment are not mutually exclusive. They can be exercised together at the same time. For instance, a newspaper can run a column on religion, which is an exercise of freedom of press and religion.

several reasons why this exception to the prohibition does not fit in my case. First, I never entered an area that demonstrators had not already gone in. Second, I entered areas for the purpose of newsgathering related to a historical event, not to seize classified government information. Third, I was pushed into the Capitol building and the government has failed to adequately analyze the video of my entrance. And lastly, many other members of the press entered the Capitol before and after me, even climbing through windows and pushing past police, but they have not been selectively charged as I have. It would be ridiculous to expect members of the free press to not pursue newsgathering wherever it takes them during a historical event.

**The Actions of Other Journalists on January 6**

I am not the first January 6 defendant to raise a journalism defense. Among those who have, Stephen Ethan Horn of North Carolina (21-cr-00301, Document 45), requested discovery related to the government's decision to charge him, but was denied by the Court. Stephen Michael Baker (24-cr-00121), also of North Carolina, also reportedly intends to raise this defense. Stephen Maury Baker (21-cr-273), no relation to Stephen Michael Baker, but also of North Carolina, peacefully livestreamed the events of January 6 for hours, and likely would have had a strong case for selective prosecution, but he opted to plead to a single misdemeanor and move on with his life. All of these Stephens from North Carolina were engaged in journalism on January 6, but have been charged. Unlike the many left-leaning journalists who entered the Capitol but have not been charged, these Stephen's typically report the news through the lens of more conservative or libertarian worldviews. The Department of Justice has selectively singled them out for prosecution based not on their conduct, but on their ideas.

While I haven't lived in North Carolina since 2012, and didn't bring my brother Stephen on January 6, I too have been singled out for selective prosecution as a conservative journalist.

The Court should consider the fact that many left-leaning journalists from left-leaning news outlets have been completely ignored by government prosecutors. In fact, the so-called sedition hunters have identified more than 800 journalists who were present on January 6, including more than 120 who were inside the Capitol.[2] For instance, far-left journalist John Farina of Status Coup,[3] hopped onto Capitol grounds before anyone else was there in order to film the crowd outside the walls. Farina then ran to the west front with protestors,[4] and eventually spent an extended period of time inside the tunnel. One could argue based on the government's application of the Civil Disorder statute in other cases that Farina being in the tunnel interfered with police clearing the area and contributed to more violence.



*Figure 3: Far-left journalist John Farina of Status Coup hopped onto Capitol grounds to film the crowd before the first breach.*

---

[2] The so-called sedition hunters January 6 Press List: https://docs.google.com/spreadsheets/d/1Q99-oFowU5ViHURSiyk3jSbggX3fIMIRHSUYKPKr7uY/edit#gid=0

[3] I followed Status Coup long before January 6 since I viewed it as a comparable peer in independent journalism.

[4] John Farina's footage of him running onto Capitol grounds can be viewed here: https://twitter.com/FreeStateWill/status/1761965383433560380

Many Journalists had far more dramatic entrances into the Capitol than I did. For instance, an RMG News journalist was on the front lines as people pushed up the scaffolding and past police, then he filmed the first windows being broken, and he climbed through the window in front of Dominic Pezzola to become the first person inside the Capitol. I do not wish this man to be arrested, since he captured important footage that is relevant and exculpatory to me, but the disparity between my severe charges and his lack of charges is astonishing.



*Figure 4: A journalist for RMG News journalist climbed through a broken window and became the fifth person inside the Capitol.*



*Figure 5: The RMG News journalist captured the moment police released us to walk further into the Capitol.*

ITV News also had a crew that entered the Capitol before I did. They produced an award-winning documentary of January 6, where journalist Robert Moore stated, "I felt confident the police would stop us at the building entrance, but astonishingly several officers with their hands in their pockets didn't seem to be bothered."[5] Moore and the ITV News filmed several scenes relevant to my case, and noted in their documentary that my brother and I seemed to just be observing events, and were categorically different than others in the Capitol.[6] I do not wish them to be arrested, I only point out that the government has bestowed selective favor on Robert Moore and his news crew.



*Figure 6: ITV News said that my brother and I seem to be just observing, rather than being driven by extremism.*

Jacob Chansley was the 29th person in the Capitol and is perhaps the most recognizable defendant from January 6. Most don't realize that the two people who walked in the door right in front of Chansley were journalists Brenden Gutenschwager and Ashley Gilbertson. In an HBO documentary, Gilbertson, who was working for the New York Times said, "I was just following the crowd." And Chansley followed immediately behind Gilbertson. Two of the next three people in the door behind Chansley were also journalists. All of them entered the Capitol before I did, but the government has bestowed selective favor on these four journalists.

---

[5] See clip of ITV News saying police let them in: https://twitter.com/FreeStateWill/status/1761980029578231958

[6] See clip of ITV News noting that my brother and I were categorically different than others they filmed: https://twitter.com/FreeStateWill/status/1790086890604941577



Los Angelas Times photographer Kent Nishimura also entered the Capitol. On January 6, he was wearing a helmet and body armor when he pushed his way past police at the Columbus Doors 15 seconds before the Oath Keepers (who were also wearing helmets and body armor) entered behind him. Nishimura's video is on YouTube, but the government has selectively ignored him. [7]



*Figure 7: Photographer Kent Nishimura pushed past police to enter the Capitol 15 seconds before the Oath Keepers. The officer on the left hand side of the screen was pulled through the door by the man who pushed me into the Capitol.*

---

[7] Kent Nishimura's video can be viewed here: https://www.youtube.com/watch?v=WUB814y5ns0&t=1347s

The questions of selective prosecution of dissident journalists should not be ignored by the Court. If the government chooses to prosecute journalists they are ideologically opposed to, while favoring others, then First Amendment press rights are on their deathbed. Since press and speech rights are protected by the First Amendment, and since selective ideological prosecution is prohibited by *United States v. Armstrong*, 517 U.S. 456 (1996), I have a right to bring this as a defense, and a right to compel the government to produce related discovery under *Brady v. Maryland*, 373 U.S. 83 (1963).

Therefore, I move that this case be dismissed due to the government selectively prosecuting dissident journalists while bestowing arbitrary favor on others. Should the Court wish to consider this matter further before dismissing, I move to compel the government to produce discovery related to the selective prosecution of journalists. Finally, I move the suppress all data that was seized from my phone and online accounts since all that data is connected to my journalism on and before January 6, 2021.

Respectfully submitted to the Court,

By: William Pope

/s/

William Pope
Pro Se Officer of the Court
Topeka, Kansas

Certificate of Service
I certify a copy of this was filed electronically for all parties of record on May 13, 2024.
/s/
William Alexander Pope, Pro Se