# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:21-cr-00128-RC |
| v. | |
| WILLIAM ALEXANDER POPE, | |
| Defendant. | |

## MOTION TO DISMISS CASE DUE TO MISSING EVIDENCE

I the defendant, William Pope, who am representing myself in this matter, move the Court to dismiss this case with prejudice. The government failed to seek and preserve bodycam recordings from my arrest as required by D.C. Local Rules LCrR 5.1(b), (c) and (e), and have violated my Constitutional Fifth Amendment Due Process rights. The Court is justified under LCrR 5.1(g) to impose evidentiary sanctions, continue the trial, and enter any other order that would be just under the circumstance, including dismissal of the case with prejudice.

**Factual Background**

On February 12, 2021, I was arrested on charges related to the January 6, 2021, events at the United States Capitol. The arrest was conducted by Kansas JTTF Task Force Officers, Topeka Police, and possibly other local law enforcement on behalf of the federal government. During that arrest, JTTF TFOs ordered me to give them my phone unlocked, in violation of the terms of the arrest warrant that required them to specify that providing the phone unlocked was voluntary. Additionally, I do not recall being mirandized. It was a bitterly cold day, and the officers seemed to be in a rush to get out of the cold. There were numerous officers on scene for my arrest, and I vividly recall that the Topeka Police officers were wearing body cameras and

were in position to record the seizure of my phone. After I was placed under arrest, Topeka Police transported me in a TPD vehicle to the Shawnee County Jail, where I was detained for five days until a magistrate judge conducted a release hearing.

A review of Topeka Police policy and procedures shows that these TPD officers were required to wear their body cameras during arrests, warrant service, and prisoner transport, and that they were required to ensure their body camera was charged and in good working condition. These officers were also required to upload the video to the Axon system, and those recordings were to be retained as evidence for five years. The Topeka Police Department also has policies in place to transfer that video directly to the U.S. Attorney in federal cases.

The federal government has an obligation to seek and obtain all evidence gathered by local law enforcement agencies who are involved in the investigation under LCrR 5.1(c). I assumed recordings from my arrest would be produced to me directly as a default production. However, when I still had not received those recordings after more than two years, I emailed AUSA Kelly Moran on October 11, 2023, asking for the bodycam recordings, and noting that I would need them for pre-trial motions (See ECF No. 256, at 10, Figure 3). The government never responded to that request.

On March 22, 2024, I submitted a Notice of Discovery Request (ECF No. 226) that noted that recordings from my arrest were made by Topeka Police but had not yet been produced. The government never responded to that discovery request. On April 14, 2024, I filed a motion to continue the trial date, noting that the government had not yet produced bodycams from my arrest (ECF No. 237 at 3). The government opposed that continuance on April 29, 2024, claiming they were "not aware of any FBI body-worn camera footage" from my arrest (ECF Mo. 250 at 3). As I pointed out in my May 6, 2024, reply to the government, I had never requested

FBI bodycams, but rather bodycam recordings from local law enforcement (ECF No. 256 at 10), and that those body cameras were needed to show that the warrant was improperly served. On May 10, 2024, the government emailed me a PDF summarizing an attempt by FBI case agent Clay Chase to obtain the recordings from TPD on May 2, 2024, which was four days before I filed my reply, and eight days before this information was produced to me. Agent Chase claims that after investigation, it was determined that no recordings connected with my arrest number had been retained by TPD. I believe a further investigation and audit is needed.

**Relevant Topeka Police Department Policies**

The entire Topeka Police Department bodycam policy is designed to ensure that video from my arrest was recorded, preserved, and transferred to the United States Attorney. There was either a massive failure by multiple TPD officers to follow their own policy, or the DOJ/FBI has intentionally failed to preserve bodycam evidence from my arrest.

The Topeka Police Department also has retention policies in place that require non-evidence bodycam video to be retained for three years, and bodycam video used as evidence to be retained for five years. When I requested the bodycam recordings from my arrest in October 2023, we were still within the three year preservation window, and even now, we are within the five year preservation window. The following are relevant policies taken from the Topeka Police Department Policy and Procedure Manual Section 2.4.

- 2.4.3(A)(3): Officers shall not edit, alter, erase, duplicate, copy, share, or otherwise distribute in any manner recordings without prior written authorization and approval of the Chief of Police or his or her designee.

- 2.4.3(C)(2): Officers, supervisors and field commanders who operate in a primarily uniformed capacity with focus on arrest & enforcement activities will be issued a BWC, as determined by the Chief of Police or his designee and shall be required to follow all procedures and protocols of this policy.
- 2.4.3(D)(1)
    - (a): Each officer and employee who is issued digital recording equipment shall be responsible for maintaining all the assigned equipment.
    - (b) Officers will inspect their recording equipment and ensure the camera is charged and operational prior to each shift. Cameras that are not functioning shall not be worn and shall be reported to a supervisor as soon as possible.
    - (c) If audio or video equipment is not functioning properly the officer will notify a supervisor and either complete an I.T. help desk ticket or submit a request for replacement depending on the type of equipment.
- 2.4.3(E): Recording Protocol
    - (1) Officers shall activate the BWC to record all calls for service and during all law enforcement related encounters and activities that occur while the officer is on duty or during the course of extra duty except where doing so would be unsafe, impossible, or impractical.
    - (2) Examples of "law enforcement related encounters and activities that occur while the officer is on duty or during the course of extra duty" include:
        - (c) arrests
        - (d) searches
        - (g) Execution of any warrant.

- - (5): Once activated, the BWC shall remain in Event Mode until the conclusion of the contact, the officer has left the scene, or a supervisor has authorized that a recording may cease.
  - (6): If an officer fails to activate the BWC, fails to record the entire contact, or interrupts the recording, the officer shall document either on camera or in their report why a recording was not made, was interrupted, or was terminated.
- 2.4.3(H): Download and storage:
  - (1) All videos will automatically label by CAD/RMS Integration standards and will include a category and incident/case number for officers on dispatched calls. For officers who are not on a dispatched call, the officer shall mark each BWC video capture with the incident/case number and one of the categories available on the system.
  - (2) If there is a case number associated with the event that the officer has recorded video/audio, that number shall be attached to the video/audio clip.
  - (3) Officers shall document in reports or citations if a BWC or other recording device was utilized during the incident.
  - (7) Media storage for the BWC:
    - (a) At the end of shift officers shall place the BWC into the Evidence Transfer Manager (ETM) for charging and uploading of media to Evidence.com. This also applies to extra duty officers who have used police powers. If there was no use of police powers the BWC can be uploaded at the officer's next shift.

- (b) The BWC should not be removed until media has been completely uploaded.

- 2.4.3(H) Media recording control and dissemination
    - (1) BWC video retention process:
        - (a) BWC video/audio and Axon Capture photos are retained on Evidence.com according to the classification assigned.
        - (c) Media retention schedule for each classification on Evidence.com will be set as follows:
            - (1) Non Evidence - 3 years
            - (2) Evidence - 5 years[1]

While the above policies come from the TPD policy that was effective on October 21, 2019,[2] the bodycam policy has for the most part stayed fairly consistent between 2015 and 2024.[3] The latest version of the TPD policy specifically states that "cases for the United States Attorneys' Office and sharing with outside agencies shall be done by the Axon Administrator or designee through Evidence.com for tracking purposes."[4]

---

[1] The 12/17/2018 version of the TPD bodycam policy classified arrests for automatic 5-year retention: https://ia803100.us.archive.org/23/items/5692732-2-4-Recording-devices/5692732-2-4-Recording-devices.pdf

[2] The 11/1/2019 version of the TPD bodycam policy: https://s3.amazonaws.com/cot-wp-uploads/wp-content/uploads/police/policies/2.4RecordingDevicesandImagingEquipment.pdf

[3] The 4/5/2024 version of the TPD bodycam policy: https://public.powerdms.com/TPKA/documents/735874

[4] I have not been able to locate when this clause first came into effect, but it would have been sometime between 2019 and 2024. I am making a separate discovery request for the policy documents that were in effect on the date of my arrest and the date when the bodycam recordings were deleted. However, regardless of the TPD policy on transferring recordings to the DOJ, the government had an obligation to seek and preserve these recordings.

**Legal Argument**

It is incomprehensible that these recordings were not retained since the Kansas Open Records Act requires them to be preserved (K.S.A. 45-254) and since under Kansas law the government was required to produce them to me within 20 days of me requesting them in October 2023; and since TPD policy has a mandatory 5-year retention rule for all evidence and 3 years for non-evidence (TPD Policy 2.4); and since the DOJ utilized the instrumentality of Kansas law enforcement and is therefore an agency that's required to comply with Kansas bodycam production requirements in my case, K.S.A. 45-217(i)(1); and since 18 U.S. Code § 1512(c)(1) makes it a federal crime to alter, destroy, mutilate, or conceal records that would "impair the object's integrity or availability for use in an official proceeding;" and since the government has a Due Process obligation to seek and preserve these materials under FRCP 16(a)(1)(B)(ii) and LCrR 5.1(b), (c), and (d).

The Fifth and Fourteenth also require that state and federal law enforcement not deprive me of Due Process, which includes the preservation and production of exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83 (1963). The Supreme Court also ruled in *California v. Trombetta*, 467 U.S. 488 (1984) that there is a constitutional duty to preserve "evidence that might be expected to play a significant role in the suspect's defense," especially when it is exculpatory, and it would be impossible to "obtain comparable evidence by other reasonably available means."

In my case these recordings pertained to the constitutionality of my arrest, the seizure of my phone, and the impeachment of the Task Force Officer who interviewed me. In ECF 259, I expressed that these recordings contained exculpatory information regarding the legality of the warrant service. I noted this vivid memory several days before the government disclosed to me

that the recordings had not been preserved. However, even if I were not confident of the exculpatory nature of these bodycam recordings, the Supreme Court found in *Arizona v. Youngblood*, 488 U.S. 68 (1988), that "the State's conduct has deprived the defendant, and the courts, of the opportunity to determine with certainty the import of this evidence."

If this recorded evidence is lost, it becomes more difficult to challenge the constitutionality of my arrest and the seizure of my phone. Impeachment evidence has also been lost related to the JTTF TFO who interviewed me and created early discovery in my case. I also gave notice to the government in October 2023, that these materials existed and should be preserved. The government ignored that request for months, which was a delay that possibly caused these materials to be lost if they were categorized for 3-year, rather than 5-year retention.

The Supreme Court ruled, "whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor." *Giglio v. United States*, 405 U.S. 150 (1972).

Since there is no comparable evidence that could replace the impeachment and suppression value of these bodycam recordings, this case should be dismissed with prejudice.

Respectfully submitted to the Court,

By: William Pope

/s/

William Pope
Pro Se Officer of the Court
Topeka, Kansas

<u>Certificate of Service</u>
I certify a copy of this was filed electronically for all parties of record on May 13, 2024.
<u>/s/</u>
William Alexander Pope, Pro Se