## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Case No. 21-cr-128 (RC)** |
| | : | |
| WILLIAM POPE, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S RESPONSE TO WILLIAM POPE'S MOTION TO COMPEL DISCOVERY RELATED TO HIS "RAINDROP THEORY" (ECF NO. 252) AND HIS MOTION TO RECONSIDER THE COURT'S PRIOR RULING (ECF NO. 255)

On May 3, 2024, the defendant, William Pope, filed a motion to compel the government to produce all evidence relating to his "Raindrop defense theory." ECF No. 252, Motion to Compel Discovery on Raindrop Theory ("Motion"). Because defendant's motion fails to set forth any legitimate basis to compel additional discovery, the court should deny the motion. Defendant's newly tendered "Raindrop Theory" defense is predicated upon the existence of two simultaneous feats: the riot on January 6 – and somehow, his alleged conduct at the core of this case – was the result of (1) government *inaction*, coupled with (2) covert actors who formed the external catalyst for a riot to occur. In his now-familiar broad and unsupported demand, defendant contends that such discovery would serve to prove "an entrapment by outrageous government conduct" defense – primarily that the government induced and/or goaded individual defendants into joining a massive riot and the mob that formed on Capitol grounds and seeks "all discovery related to failure to act on intelligence to enhance the Capitol's security posture, and all discovery related to undercover government operations at the Capitol." *Id.* at 1, 4. In a related filing, the defendant also moved to reconsider the Court's denial of his motions seeking discovery on alleged undercover FBI agents at the Capitol and body-worn camera ("BWC") footage that he contends is missing from discovery productions – motions that he originally made in furtherance of a similar theory. ECF No. 255.

As a matter of law, the defendant's theory is an attempt to backdoor an improper entrapment-by-estoppel argument. To be clear, no one (including the defendant) has alleged that government actors personally induced him to join a mob – regardless of who was present – and no one tricked or pressured the defendant to commit the acts alleged in the indictment. As a matter of fact, the defendant's theory relies almost entirely on speculation, and is divorced from the overall facts of what happened, both as a whole on January 6, 2021, and as to how the events of that day relate to his case. Notwithstanding his verbose attempt to prove his exhaustive and alleged sweeping investigation into his fanciful theory, at their core, the defendant's discovery demands are wholly untethered to the facts of this case or the law governing such "outrageous" claims. Because he has failed to offer a legitimate basis for his discovery request, the Court should deny this Motion.

## ARGUMENT

### I.  The Defendant's Raindrop Theory Is in Fact a Speculative and Unsupported Equitable Estoppel Argument

The defendant's motion outlines an impressive range of speculation and perceived oddities regarding government and non-government actors, all intended to support his "an entrapment by outrageous government conduct defense." ECF No. 252 at 1. In doing so, he attempts to use these various "facts" to support two legal theories underpinning this motion: (1) the government induced the events of January 6 by intentionally reducing the security of the Capitol building, therefore tantalizing would-be rioters to surge into the U.S. Capitol during the electoral college certification; and (2) the government saturated the crowd with undercover agents or officers, with the intent to sow discord, facilitating and generating the undercurrent of the riot and the crowd flooding into the building. With respect to the latter, those officers acted as "raindrops" – helping to create the

2

storm conditions necessary to the riot.[1]

Of course, the defendant is not the first defendant to wax poetic regarding the presence of unknown shadowy actors or failures by law enforcement officers to contain the riot, nor will he likely be the last. *See, e.g.*, *United States v. John George Todd III*, 22 Cr. 166 (BAH), Jan. 9, 2024, Minute Order (denying a motion to compel, concurring with the government that the request was a "fishing expedition fueled by conspiracy theories"). The government is also fully aware of its constitutional obligations pursuant to *Brady*, including identifying evidence that may undercut the evidence in each individual case, or undercut the elements of the offenses charged. Unsurprisingly, the defendant's motion is a continued wish list of things that either do not exist or are irrelevant, all of which are entirely disconnected from the allegations of this case.  Moreover, the defendant's laundry list of grievances and conspiracy theories seeks to send the government and this Court down a rabbit hole, by drawing the parties into an unnecessary back-and-forth to refute – by negative implication – every inane allegation the defendant has lobbied.

The government intends to file a motion *in limine* to preclude the defendant from transforming a straightforward criminal trial into an entrapment circus, riddled with conjecture and improper accusations. As this Court knows, the legal argument that the defendant is attempting to make is untenable in this context. As described by former Chief Judge Howell in *United States v. Chrestman*, "[t]o win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law

---

[1] Defendant's Raindrop Theory is derived from Judge Kollar-Kotelly's apt description of how a riot can only occur with individual participants: "Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood." *See United States v. Jesus Rivera*, 21 Cr. 60 (CKK), Nov. 3, 2022 Tr. at 3.

defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (*quoting United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)).

Underlying the defendant's instant motion is a request for records under the rules governing criminal discovery.  According to the defendant, if he only had this information, he would then be able to prove outrageous government conduct, thus undercutting the prosecution through an entrapment theory.  But "[t]he requisite level of outrageousness . . . is not established merely upon a showing of obnoxious behavior or even flagrant misconduct on the part of the police; the broad 'fundamental fairness' guarantee . . . is not transgressed absent 'coercion, violence or brutality to the person.'" *United States v. Kelly*, 707 F.2d 1460, 1476 (D.C. Cir. 1983) (Ginsberg, J., concurring) (citing *Irvine v. California*, 347 U.S. 128 (1954).  Indeed, courts uphold convictions where government agents, in *direct interaction with the defendant*, provided a difficult-to-obtain ingredient in the manufacturing an illegal narcotic, *United States v. Russell*, 411 U.S. 423 (1973), acted as both broker and purchaser in a narcotics sale, *Hampton v. United States*, 425 U.S. 484 (1976), and created an "elaborate hoax" involving a fictious investment company that offered bribes to public officials, *Kelly*, 707 F.2d 1460  (D.C. Cir. 1983).

Yes, despite the defendant's ongoing documentation of his suspicions regarding the January 6, 2021 riot, he is plainly unable to demonstrate that any person, let alone a government agent, misled him in any way, shape, or form. Indeed, his motion does not identify any factual

4

basis explaining how any person – law enforcement or otherwise – created the conditions that induced him to commit a crime. Nor does he cite to anything related to his experience that would expose whether he unfairly relied upon representations made by state actors. Instead, his motion is all-encompassing – a quintessential fishing expedition prohibited by the rules of criminal discovery. *See United States v. Williamson*, 2014 WL 12695538, at *2 (D.D.C. Oct. 23, 2014) (Rule 16 cannot be used to engage in a "fishing expedition").

Without such interaction, his request has no bounds, let alone logic. If the government were aware of a specific interaction proffered by the defendant, the government could – at the very least– assess the request and determine whether it was appropriately tailored. In fact, the government has routinely attempted to answer the defendant's wide-ranging inquiries – some legitimate and some not – throughout the pendency of this case. But his all-encompassing request, peppered with isolated and often confusing anecdotes,[2] does not demonstrate the legal theory he seeks to endorse and use.

As a factual matter, the defendant's actions belie any argument that he relied on any alleged outrageous action. As previously discussed, video evidence shows that the defendant chose to push past the police barricades on the east side of the Capitol and unlawfully entered the Capitol building through the Senate Carriage Doorway in the face of a line of Capitol Police officers. In both instances, officers were telling the crowd to move back and attempting to block the forward progression of the mob. As U.S. Capitol Police Captain Patton testified in the trial of Michael,

---

2 For example, the defendant cites two unsubstantiated, shorthand accounts from unnamed employees purported to work for the U.S. Department of Homeland Security as proof that there existed covert operations at the U.S. Capitol, and thus, by extension, the existence of scores of "DHS assets" during the riot. ECF No. 252, at 12.

Pope, the defendant's brother and co-defendant, he explicitly ordered rioters to leave the building at the Senate Carriage Door.

Defendant's argument also strains credulity. The government has endeavored to provide an enormous amount of video footage to the defendant. The government is not aware of any interaction between the defendant or any other person, let alone law enforcement, that would tend to support the defendant's Raindrop theory. Instead, such evidence uncontrovertibly proves that the U.S. Capitol was surrounded by barricades on January 6, that police attempted to stop the advance of rioters, that tear gas munitions were used to try to control the crowd, and that as rioters entered the building at the Senate Carriage Door, they ignored security equipment that was set up there. No reasonable human being could observe these developments at the seat of the legislature of the United States and believe that they were permitted to enter the building.

## II.    Rule 16 Does Not Authorize the Defendant's Broad Request

Turning to the specifics of defendant's motion to compel, the government has "an affirmative duty to disclose exculpatory evidence to the defense, even if no request has been made by the accused." *United States v. Borda*, 848 F.3d 1044, 1066 (D.C. Cir. 2017).  Federal Rule of Criminal Procedure 16 mandates the disclosure of any evidence that is material to the preparation of a defense. *United States v. Flynn*, 411 F. Supp. 3d 15, 28 (D.D.C. 2019).  Under Rule 16, the government must produce documents and objects, including "photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items," so long as two requirements are met. Fed. R. Crim. P. 16(a)(1)(E).

First, documents and objects enumerated in the rule must be "within the government's possession, custody, or control." *Id.* To be within the government's "possession, custody, or

control," the materials must be within the prosecutor's direct control or "maintained by other components of the government which are 'closely aligned with the prosecution.'" *United States v. Libby*, 429 F. Supp. 2d 1, 6 (D.D.C. 2006) (quoting *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)). This limitation ensures that courts do not adopt a "monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (applying a narrow view of government control of materials in the *Brady* context) (internal quotation and citation omitted).

Second, documents enumerated in the rule must be: (1) material to preparing the defense, (2) intended to be used in the government's case-in-chief at trial, or (3) obtained from or belonging to the defendant. Fed. R. Crim. P. 16(a)(1)(E). To prove materiality under the first factor, a defendant must make a preliminary showing that the information sought is in fact material by demonstrating that the document or object would "enable [] the defendant significantly to alter the quantum of proof in his favor." *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996). The defense must also show that the discovery sought would refute the government's case in chief. *United States v. Armstrong*, 517 U.S. 456, 463 (1996); *United States v. Rashed*, 234 F.3d 1280, 1285 (D.C. Cir. 2000). The document or object must bear more than "some abstract relationship to the issues in the case." *Libby*, 429 F. Supp. 2d at 7.

Courts impose such limits on defendants because the rule does not require a "broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up." *Jencks v. United States*, 353 U.S. 657, 667 (1957) (quoting *Gordon v. United States*, 344 U.S. 414, 419 (1953)). Moreover, Rule 16 does not convey an entitlement to discovery that is duplicative of documents and objects already provided. *See e.g.*, *United States v.*

*Sutton*, No. CR 21-0598-1 (PLF), 2022 WL 3134449, at *6 (D.D.C. Aug. 5, 2022); *United States v. Abu-Jihaad*, No. 3:07CR57 (MRK), 2008 WL 346121, at *5 (D. Conn. Feb. 4, 2008).

The government has complied, and continues to comply, with its obligations under Fed. R. Evid. 16 as well as *Brady v. Maryland*, 373 U.S. 83 (1963). In addition to case-specific discovery that has been provided to the defendant, as of April 1, 2024, more than 8.14 million files (over 10.55 terabytes of information) have been provided to the defense Relativity workspace. These files include (but are not limited to) the results of searches of 839 digital devices and 461 Stored Communications Act accounts; 20,775 FBI FD-302s and 30,631 related attachments (FD-302s generally consist of memoranda of interviews and other investigative steps); 528 digital recordings of subject interviews; and 210,537 (redacted or anonymous) tips.

The defendant's latest discovery demand relies, almost entirely, on unfounded conjecture. He speculates wildly on the role of the FBI,[3] the Department of Homeland Security, the Department of Defense, Capitol Police Intelligence, the Metropolitan Police Department, the Central Intelligence Agency, the Drug Enforcement Administration, and the Bureau of Alcohol, Tobacco, Firearms and Explosives. He offers no evidence to support any of his allegations

---

[3] The defendant notes that at least 39 FBI Special Agents and 10 FBI JTTF Task Force Officers have made sworn statements indicating they were on duty on January 6, 2021. Based on the exhibits he filed with the motion, it appears that the statements he refers to are the sworn affidavits used in the arrest of January 6 defendants. Just because an agent was on duty does not mean they were at the Capitol or even in Washington, D.C. For instance, an FBI agent in Topeka, Kansas may have been on duty on January 6, 2021, but that agent was not present at the Capitol. When he argues that the affidavits, "[drive] home the point that FBI affiants who attested that they were on duty on January 6 were working undercover at the Capitol," the defendant appears to conflate or misunderstand that FBI agents on duty are not necessarily FBI agents responding to (or in his mind, conspiring to incite) the riot at the Capitol on January 6. Moreover, even if an agent *was* at the Capitol, the relevant inquiry is whether that agent engaged in certain conduct that induced the defendant to commit a crime. As set forth herein, there is no evidence to support any inducement theory.

regarding the presence of these organizations.[4] At multiple points, the defendant conveniently avers that the agents he has identified are only a percentage of the officers who were there. *See* ECF No. 252 at 8 ("I believe the 49+ FBI Agents and FBI JTTF Task Force Officers who have attested that they were on duty on January 6, is only a small fraction of the number who were actually working at the Capitol."); *Id.* at 12 ("I now believe there were numerous DHS assets in Washington and at the Capitol on January 6."); *Id* at 19 ("Robertson may have had advance-intelligence on individuals from Colorado who traveled to Washington, and that Robertson covertly followed them onto Capitol grounds, and perhaps even into the Capitol."). But saying it doesn't make it so. Nor can the government meaningfully comb through a fishing expedition brimming with insinuation and conjecture.

The defendant provides no explanation regarding the connection between the materials sought by his motion and his case, nor does he explain how such materials would be material to any fact of consequence in this trial. *United States v. Marshall*, 132 F.2d 63, 69 (D.C. Cir 1998) ("To give rise to a disclosure obligation, the evidence's material must, of course, be evident to a reasonable prosecutor); *United States v. Slough*, 22 F. Supp 3d 1, 5 (D.D.C. 2014) (requested evidence must bear "more than some abstract logistical relationship to the issues in the case."); *cf. United States v. George*, 786 F. Supp. 11, 15 (D.D.C. 1991) ("At least one of the rationales behind the materiality requirement (and limiting discovery by criminal defendants generally) is to insure that the government not expend excessive time and effort securing documents for the defendant.").

To the extent that the defendant wishes to view materials related to other persons who have

---

[4] As discussed *supra*, the presence of any agents of these various organizations (undercover or not) would not insulate the defendant from his own criminal liability, absent an appropriate and relevant nexus to his conduct.

been investigated and/or prosecuted, the global discovery database is regularly maintained and updated with that information. Across the board, the government has provided thousands of pages of FBI records and data related to the riot at the U.S. Capitol. Moreover, in this case specifically, the government has entertained and responded to numerous discovery requests, including the defendant's repeated attempts to identify law enforcement officers he believes were engaged in improper conduct. The government has further provided, subject to the protective order, information related to allegations of officer misconduct and other related investigative reports. If he seeks additional information relating to any witness he believes induced *his* actions, the government believes it has already provided such information. Nonetheless, we continue to stand ready to address his growing list of demands, particularly as trial nears. But absent a showing of materiality, defendant's motion is factually and legally meritless.

### III.    The Court Should Further Deny the Defendant's Motion to Reconsider

On April 23, 2024, the court issued an order that, in part, denied the defendant's Motion to Compel the Government to Produce All Materials Related to Undercover Police and to Produce Missing Police Body Camera Recordings (ECF No. 139) and his Motion to Compel Identification of Material FBI Witnesses and Production of Related Discovery (ECF No. 212). *See* Order of the Court, ECF No. 239. The court should similarly reject this motion.

The Motion to Reconsider fails to raise any new or credible argument about why the court should reconsider its denial. He writes:

> In Order No. 239, the Court expressed openness to reconsidering ECF No. 139, if new information was presented on how the government directly influenced my actions...The discoverable material for outrageous conduct encompasses far more than just scenes directly involving me, since I would never have been on Capitol grounds had a cascading series of events caused by outrageous government conduct not occurred. This is evidenced both by the intelligence government agencies had

in advance that they failed to incorporate into a preventative posture, and in the large presence of undercover government operatives who were in the crowd at the Capitol who contributed to flooding the field.

ECF No. 255 at 1-2. Thus, the defendant concedes that his request is the same request as before, simply reimagined as his Raindrop Theory. In doing so, he implicitly acknowledges that his request bears no direct relation to his conduct, and is, instead, his own personal indictment against those he believed were really at fault on January 6, 2021. Ironically, in reframing his request, he provides no new evidence about any interaction – direct or indirect – that would have led him to the "cascading series of events" in the first place. Perhaps more importantly, none of these requests would have any bearing on whether the government could prove any of the elements of the crimes he is alleged to have had committed.

Beyond his continued reliance on speculation and guesswork, the defendant's arguments lack muster. Thus, the Court's pertinent analysis denying his original request should remain, and his Motion to Reconsider should be denied.

## CONCLUSION

Based on the foregoing, the government respectfully requests that the Court deny William Pope's Motion to Compel "Raindrop Theory" Discovery (ECF No. 252) as well as his Motion to Reconsider (ECF No. 255).

Respectfully submitted,
MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: *Matthew Beckwith*_____
Matthew Beckwith
DC Bar No: 90014452
Benet J. Kearney
NY Bar No. 4774048
Kelly Elizabeth Moran
NY Bar No. 5776471
Assistant United States Attorneys
601 D Street NW
Washington, DC 20530
Benet.Kearney@usdoj.gov
Kelly.Moran@usdoj.gov
Matthew.Beckwith@usdoj.gov
(212) 637 2260
(202) 740 4690
(202) 252 7109