# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 21-cr-128(RC)** |
| **v.** | : | |
| | : | |
| **WILLIAM POPE,** | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT, COMPEL DISCOVERY, AND SUPPRESS EVIDENCE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to Defendant William Pope's Motion To Dismiss Indictment (the "Motion") (ECF No. 270). In the Motion, the defendant seeks dismissal of the Indictment because of a purported failure by the Government to follow the Department of Justice's policy regarding charging members of the news media, as set forth in 28 C.F.R. § 50.10.(f)(2) (the "Policy"). The defendant further argues that the government has selectively prosecuted the defendant because he is a "dissident journalist," and he requests dismissal on this grounds or, in the alternative, moves to "compel the government to produce discovery related to the selective prosecution of journalists…[and] move [to] suppress all the data that was seized from my phone and online accounts since all that data is connected to my journalism on and before January 6, 2021." ECF No. 270 at 10. As the defendant's legal and factual arguments lack merit, his motion should be denied in its entirety.

First, the defendant has already filed a motion for discovery or dismissal due to selective prosecution. *See* ECF No. 178. The Court properly denied this motion on May 1, 2024. ECF No.

251. The Court has already considered the defendant's arguments proffered here. For example, in ECF No. 178 at 3, the defendant claimed that his journalistic activities may have led to his "selective prosecution." The Court, in return, correctly noted that the defendant "proffers no evidence to support th[ese] claim[s], however, only mere speculation of the Government's improper motivation." *Id*. This remains the same. There is no evidence of discriminatory motivation, let alone the "anecdotal evidence" that other courts in this district have found to be insufficient to sustain a selective prosecution claim. *See, e.g., United States v. Padilla*, No. 21-CR-214 (JDB), 2023 WL 1964214, at *6 (D.D.C. Feb. 13, 2023) (rejecting selective prosecution claim where discriminatory motive was based on "national trends of political protest" and allegations of "systemic partisan political motivation within the FBI and the Justice Department as a whole which is focused on Donald Trump and his January 6 supporters"). Importantly, the Government points out that it has prosecuted other individuals who have engaged in similar conduct to Defendant and who have similar backgrounds. *See* Gov't Resp. Def.'s Mot. to Dismiss at 4 n.1." ECF No. 251 at 4. The defendant's motion to compel discovery overlooks controlling precedent that is fatal to his request.  He seeks discovery for the purpose of filing a motion to dismiss for "selective prosecution;" namely, that the government is prosecuting Pope because of his status as a "dissident journalist." ECF No. 270 at 10.  Caselaw establishes that he is not entitled to this discovery without first making a heightened showing that he is being treated differently from those who were similarly situated but for his political views.  This he cannot do, for two main reasons: because he actively joined the riot and obstructed officers, he is not similarly situated to journalists who did no such thing; and second, he fails to show that he actually was a journalist in the first place.  The Court must deny his motion, as courts have denied all other similar selective- prosecution motions brought to date in January 6 cases.

2

A "presumption of regularity supports ... prosecutorial decisions" such that "in the absence of clear and convincing evidence to the contrary, courts presume that [the Attorney General and United States Attorneys] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted). This presumption exists because "the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis courts are competent to undertake." *Id*.; *see also United States v. Fokker Servs. B.V*., 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is ... at its most limited when reviewing the Executive's . . . charging determinations" because "the Judiciary ... generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted). The presumption of regularity "also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function." *Armstrong*, 517 U.S. at 465. A request for discovery in support of a claim of selective prosecution imposes a significant burden on the government, as it "requires discovery into the Government's files, an effort that will 'divert prosecutors' resources' and possibly disclose their strategy." *United States v. Judd*, 579 F. Supp. 3d 1, 4-5 (D.D.C. 2021) (MaFadden, J.) (quoting *Armstrong*, 517 U.S. at 468). "[A] defendant must [thus] present 'at least a colorable claim' of selective prosecution before any discovery is permitted." *Id.* at 5 (quoting *United States v. Irish People, Inc.*, 684 F.2d 928, 932 (D.C. Cir. 1982) (per curiam)). A colorable claim requires "some evidence tending to show the existence of the essential elements" of selective prosecution. *Armstrong*, 517 U.S. at 468 (internal

quotation marks and citations omitted). "This 'colorable claim' standard is a 'significant' and 'rigorous' one not easily surmounted." *Judd*, 579

F. Supp. 3d at 5.

A claim of selective prosecution – let alone embedded within a Motion to Dismiss – seeks to rebut the presumption of regularity by "assert[ing] that the prosecutor has brought the charge for reasons forbidden by the Constitution," *Armstrong*, 517 U.S. at 463, "such as race, religion, or other arbitrary classification," *id*. at 464 (citation omitted). That standard requires proof that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte*, 470 U.S. at 608; *see also Armstrong*, 517 U.S. at 465. "[T]he standard is a demanding one." *Armstrong*, 517 U.S. at 463. "[T]he D.C. Circuit has called for a two pronged showing that: (1) the defendant was 'singled out for prosecution from among others similarly situated' and (2) 'the prosecution was improperly motivated *i.e.*, based on race, religion or another arbitrary classification.'" *United States v. Stone*, 394 F. Supp. 3d 1, 30 (D.D.C. 2019) (quoting *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000)); *see also Irish People, Inc.*, 684 F.2d at 946. "This is a rigorous test; 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.'" *United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).  More recently, in the First Amendment context, the D.C. Circuit has held that, "to make out a First Amendment selective enforcement claim, the [individual] is not required to allege discriminatory intent.'" *Frederick Douglass Found., Inc. v. District of Columbia*, __ F.4th __, 2023 WL 5209556, at *12 (D.C. Cir. Aug. 15, 2023) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015)) (citations omitted). Discriminatory effect – a showing that the defendant has been treated differently from similarly situated individuals – is still required.

4

Courts in this district, including this Court, have rejected similar selective prosecution allegations advanced by defendants charged with criminal offenses stemming from their conduct on January 6. Indeed, this Court has previously rejected a selective prosecution allegation advanced by this very defendant. *See* ECF No 251; *See*, *e.g.*, *United States v. Miller*, 21-CR-119 (CJN), ECF 67 (. Dec. 21, 2021); *United States v. Bennet*, 21-CR-312 (JEB), 2023 WL 6847013 October 17, 2023) (also denying motion to compel discovery for a selective prosecution claim); *United States v. Costianes*, 21-CR- 180 (RJL) ((April 27, 2023) (Minute Order) (same); *United States v. McHugh*, 21-CR-453 (JDB), 2023 WL 2384444, at *13 (Mar. 6, 2023); *United States v. Padilla*, 21-CR-214 (JDB), 2023 WL 1964214, at *4-6 (Feb. 13, 2023); *United States v. Brock*, 21-CR-140 (JDB), 2022 WL 3910549, at *11-12 (Aug. 31, 2022); *United States v. Rhodes*, 22-CR-15 (APM), 2022 WL 3042200, at *4- 5 (Aug. 2, 2022) (Mehta, J.); *United States v. Judd*, 579 F. Supp. 3d at 5-9; *United States v. Griffin*, 549 F. Supp. 3d 49, 58 (D.D.C. July 2, 2021) (McFadden, J.).  To the government's knowledge, no court in this district has granted such a motion in the January 6 context.

The defendant, in support of a potential motion to dismiss for selective prosecution, seeks additional discovery that other "journalists" who are similarly situated to him (but with different political views) have not been prosecuted. In both law and fact, his allegation fails to establish a basis for the relief he now seeks.

To obtain discovery on a First Amendment selective prosecution claim, the defendant must set forth evidence that the prosecution "had a discriminatory effect," *Armstrong*, 517 U.S. at 465, by showing that "others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted." *Irish People*, 684 F.2d at 946 (citation omitted). As one judge has explained, an individual may be similarly situated to the defendant if*:*

5

> [He] committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant.

*Stone*, 394 F. Supp. 3d at 31 (Berman Jackson, J.) (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)); *see also United States v. Lewis*, 517 F.3d 20, 27-28 (1st Cir. 2008). "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *Id.*at 27 (internal citations omitted). "Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Branch Ministries*, 211 F.3d at 145 (citing *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)). Among the factors that must be considered when determining if defendants are "similarly situated" are "the comparability of the crimes, the similarities in the manner in which the crimes were committed, the relative efficacy of each prosecution as a deterrent, and the equivalency of the evidence against each prospective defendant." *Lewis*, 517 F.3d at 27-28 (internal citations omitted).

Here, the defendant fails to identify any sufficiently "similarly situated" individual or group of individuals that the government afforded "different treatment," in two respects. *Armstrong*, 571 U.S. at 470. First, he cannot identify any individuals with different political views who engaged in the same conduct he did – actually obstructing and impeding law enforcement – but have not been prosecuted. His conduct, in fact, places him in a category of individuals who *are* being prosecuted. The defendant entered the restricted perimeter around the Capitol and then participated in a push against police officers inside of the Senate Carriage Doors in an effort to breach the building at that location. Those actions alone demonstrate that

the defendant is not "similarly situated" to journalists who did not interact with law enforcement officers. The defendant's active participation in the riot places him among several other individuals who committed crimes while self-selectively (and often, after the fact) claiming to act as journalists that day – including one recent case involving a defendant with political views different from the defendant's, who, for example, said that he supported neither then-President Trump nor then-President-elect Biden and that he was willing to join a variety of political causes in support of his anti-government and anti-authority views. *United States v. John Earle Sullivan*, 21-CR-78 (RCL), Gov. Ex. 690-C0082.MP4.

But, in any event, and as this Court knows, being a journalist does not exculpate a person from engaging in criminal conduct. *See, e.g.*, *United States v. Shroyer,* 21-cr-5422 (TJK) (defendant who claimed to be a journalist sentenced to 60 days of incarceration after pleading guilty to a violation 18 U.S.C. § 1752(a)(1)); *United States v. Resnick*, 23-cr-443 (RC) (journalist pled guilty to civil disorder); *United States v. Horn*, 21-cr-301-TJK (defendant convicted at trial after claiming to be a journalist); *United States v. Rivera*, 21-cr-60 (CKK) (defendant claiming to be journalist convicted at trial). What these individuals have in common is that they all committed crimes at the Capitol; rather than just being there to document the riot, they joined it.

The defendant's "similarly-situated" claim also fails because, as a matter of facts, he cannot plausibly argue that he was acting as a journalist on January 6 and was thus similarly situated to credentialed members of the media whom he claims have not been prosecuted. Posting to social media as he walked from the former President's rally to the Capitol does not transform him into a journalist. The defendant and his brother debated whether to bring weapons or body armor to Washington, D.C. ahead of their trip. He did not appear to record any of what

was happening on January 6 at the Capitol. Nor was he invited into the U.S. Capitol by a legislator, staffer, or otherwise authorized person.   This behavior is inconsistent with someone who claims to be acting as a journalist. The defendant also does not proffer any information to suggest that he has ever held a press credential, been otherwise affiliated with a news organization, or identified himself as a member of the news media (regardless of political ideology or perspective).  And if his website, Free State Kansas, simply contained reporting, it is unclear why he would have deleted it—and, having done so, his unsupported assertions about their contents should not be credited.

After more than three years of investigating the defendant and his activities in the lead-up to and on January 6, 2021, the government has uncovered no corroborative evidence that would support the conclusion that the defendant was a freelance journalist on January 6. The government has also not found, either before or after the defendant's arrest in this case, any public media, outside of self-serving, often loquacious submissions, that suggest that the defendant informally or formally occupies a role of a journalist, reporter, correspondent, or any person associated with news dissemination activity.

Thus, unlike other credentialed journalists who are associated with newsgathering entities, the defendant proffers no information to distinguish him from others. Other journalists are therefore improper "comparator[s]" because they are *not* similarly situated.  *Stone*, 394 F. Supp. 3d at 31.  It follows that the situational and evidentiary differences between the defendant and those there for newsgathering on January 6 would be "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions." *Branch Ministries*, 211 F.3d at 145 (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997).

The defendant's remaining arguments are without merit. His motion to dismiss due to the Government's alleged lack of adherence to Department of Justice guidance should be denied for two independent reasons.[1]  First, Defendant's assertion that the Government failed to comply with the Policy lacks both a factual and legal foundation. The Government is fully aware of its DOJ policies, and scrupulously adheres to such guidance. The defendant's unsupported assertion to the contrary does not overcome the presumption of regularity and should therefore be rejected.

Second, the Policy expressly states that the it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States . . . ."  28 C.F.R. § 50.10(j).  Indeed, the D.C. Circuit has expressly held that the Policy "create[s] no enforceable right" and does not "confer substantive or procedural benefits upon individual media personnel."  *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1152-53 (D.C. Cir. 2006) ("Given the nature of the [Policy] . . ., we conclude that the [Policy] provide[s] no enforceable rights to any individuals, but merely guide[s] the discretion of the prosecutors.  We therefore need not reach the question of the Special Counsel's compliance with the [Policy].").  Notably, the defendant's Motion provides no authority for his position that the remedy for a violation of the Policy is dismissal of a felony criminal case.  Accordingly, for this second and independent reason, the Motion should be denied.

---

[1] The Government does not concede that Defendant was acting as a member of the news media on January 6, 2021 or that 28 C.F.R. § 50.10.(f)(2) applies in this matter.  The Court, however, need not resolve this issue.

## **CONCLUSION**

The Motion should thus be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Kelly Moran*
Kelly Moran
NY Bar No. 5776471
Benet J. Kearney
NY Bar No. 4774048
Matthew Beckwith
DC Bar No: 90014452
Assistant United States Attorneys
601 D Street NW
Washington, DC 20530
Benet.Kearney@usdoj.gov Kelly.Moran@usdoj.gov
Matthew.Beckwith@usdoj.gov
(212) 637 2260 / (202) 740 4690 / (202) 252 7109

10