UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-cr-128 (RC) |
| : | |
| WILLIAM POPE, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS
TO SUPPRESS EVIDENCE OBTAINED FROM HIS CELLPHONE
AND TO DISMISS THE INDICTMENT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, responds to motions filed by the defendant, William Pope, regarding body-worn camera ("BWC") footage of his arrest on February 12, 2021. Specifically, the defendant seeks discovery regarding BWC footage of his arrest and moves to suppress the contents of his cellphone, which was seized during his arrest pursuant to a search warrant. ECF Nos. 276, 283. The defendant also moves to dismiss the indictment on the grounds that the BWC footage was not preserved. ECF No. 275. The Court should deny both motions.

I.     FACTUAL BACKGROUND

In January 2021, the FBI began investigating the defendant in connection with his participation in the breach of the United States Capitol on January 6, 2021. *See* ECF No. 1. On February 2, 2021, Hon. Angel D. Mitchell, United States Magistrate Judge in the District of Kansas, authorized a search warrant for the defendant's person and residence, which included the authority to seize and search digital devices. *See* Exhibit A [search warrant]. In connection with the search, the warrant authorized the executing officers to compel the defendant to unlock digital devices using physical biometric characteristics (for example, a thumbprint or facial

2

characteristics), but not to compel the identification of which biometric characteristic(s) was required to unlock the device or the provision of the passcode for the device. *Id.* at 5-6.

On February 12, 2021, pursuant to an arrest warrant, four FBI agents and task force officers ("TFOs")[1] arrested the defendant at his residence and seized his cellphone pursuant to the search warrant. Two additional TPD officers took custody of the defendant and transported him to the Shawnee County Department of Corrections. Pursuant to the search warrant, the contents of the defendant's cellphone were extracted using the Cellebrite program by a TPD detective.

On October 11, 2023, the defendant sent an email to the assigned Assistant United States Attorney, requesting "all bodycam recordings from my arrest on February 12, 2021." Government counsel discussed this request with the assigned case agent, who confirmed that FBI agents do not wear bodyworn camera during arrests.

On April 29, 2024, the government followed up with the FBI to confirm whether there was BWC footage of the defendant's arrest. The FBI confirmed that FBI agents were not wearing BWCs during the arrest and contacted TPD to inquire whether any of the TFOs or other TPD officers were wearing or had activated BWCs during the defendant's arrest. An FBI agent then contacted TPD and was informed that only the two TPD officers (not the TFOs) were wearing BWC during the defendant's arrest, that recordings had been made whose length was consistent

---

[1] The TFOs were officers with the Topeka (Kansas) Police Department ("TPD").

with an arrest and transport, but that the recordings were flagged for deletion on February 12, 2024 – at the expiration of a three-year retention period – and deleted a week later on February 19, 2024.[2]

## II. THE COURT SHOULD DENY THE MOTION TO SUPPRESS

The defendant has not alleged sufficient factual issues to warrant a hearing on his motion. Further, even if a violation of the warrant were established, the government would have been able to gain access to the defendant's phone regardless of the violation. The motion should therefore be denied without a hearing.

### A. The Allegations in the Defendant's Motions are Not Sufficient to Raise a Claim That Warrants a Hearing.

#### 1. Applicable Law

Evidentiary hearings on a motion to suppress evidence "should not be set as a matter of course, but only when the petition alleges facts which if proved would require the grant of relief." *Cohen v. United States*, 378 F.2d 751, 760 (9th Cir. 1967) (citing *Grant v. United States*, 282 F.2d 165, 170 (2d Cir. 1960). The moving party must set forth factual allegations that are "sufficiently definite, specific, detailed and nonconjectural, to enable the court to conclude that a substantial claim is presented." *Id.* at 761. In the context of a motion to suppress, the court "need[s] a reasonable assurance that the evidence challenged is tainted or is 'a fruit of the poisonous tree'; mere conjecture will not suffice." *United States v. Weinberg*, 108 F. Supp. 567, 569 (D.D.C 1952). Conclusions based on "mere suspicions and innuendos" do not merit an evidentiary hearing. *Id.*

---

[2] FBI reports documenting this information were provided to the defendant on May 10, 2024 and May 28, 2024.

**2. Argument**

Here, the defendant has failed to allege specific conduct by law enforcement that violated the terms of the search warrant. Indeed, his motions are notable for what he does *not* say. In multiple filings, he states merely that officers "ordered [him] to give them [his] phone unlocked," ECF No. 275 at 1, and that they "forced [him] to give [his] cell phone to them unlocked," ECF No. 276 at 1. *See also* ECF 256 at 12 ("the arresting officers forced me to provide the device to them unlocked"). He asserts that this was a violation of the warrant because the executing officer were "required . . . to specify that providing the phone unlocked was voluntary." ECF No. 275 at 1; *see also* ECF No. 276 at 4-5. However, this is not so. The search warrant, which the defendant was provided as part of discovery in this case, the provisions of which the defendant is well aware, prohibited only certain forms of compulsion (and in fact, explicitly permitted other forms). Ex. A at 5-6; *see* ECF No. 256 at 12 ("those serving the warrant were forbidden from compelling me to provide the passcode to my phone"). Yet, the defendant has failed to allege *how* he was unlawfully compelled to unlock his phone, perhaps hoping that the Court will leap to the unfounded conclusion that it was in violation of the warrant. The Court should not do so. *See Cohen*, 378 F.2d at 760 ("factual allegations which are general and conclusory or based upon suspicion and conjecture will not suffice"); *United States v. Andreadis*, 234 F. Supp. 341, 344 (E.D.N.Y. 1964) ("Defendants' remedy in case of tainted evidence is a motion to suppress but in such a case mere suspicion, innuendo, conjecture or conclusion will not suffice"). In absence of a specific allegation supporting the defendant's conclusion, no hearing is merited.

### B. Even If Obtained in Violation of the Search Warrant, the Evidence on the Defendant's Cellphone Would Have Been (And Was) Inevitably Discovered.

#### 1. Applicable Law

"[W]here evidence would have been inevitably discovered by the police, regardless of police error, then the evidence will not be suppressed." *United States v. Alston*, 832 F. Supp. 1, 4 (D.D.C. 1993) (citing *Nix v. Williams*, 467 U.S. 431 (1984)). Thus, when evidence would have been discovered "in [the] normal course" of an investigation, *id.*, its "initial[] detect[ion] as a result of unlawful government conduct" is not grounds to suppress it, *Unites States v. Redrick*, 48 F.Supp. 3d 91, 107 (D.D.C. 2014). *See also United States v. Raymond*, 21 Cr. 380 (CKK), 2023 WL 7005341, at *12 (D.D.C. Oct. 24, 2023).

#### 2. Argument

Here, the defendant's cellphone was seized pursuant to a valid search warrant. The only alleged impropriety concerns the manner in which the phone was unlocked. Even assuming that officers inappropriately compelled the defendant to provide his passcode, law enforcement would inevitably been able to extract the contents of the phone without it.

Indeed, that is what they did. The TPD detective who processed the defendant's cellphone made the following notation in his report:[3]

> Search warrant for FBI S/A [Agent]. Device was powered on and PIN code locked. Removed SIM card from device to isolate from network. Device had Samsung 128GB SD card in it and was processed seperately [sic] from device. Used UFED-P to perform Physical extraction of device. Once completed, used UFED-P to bruteforce PIN code of device, [PIN]. SIM card also extracted seperately [sic] with UFED Touch. All exams merged into one.

---

[3] This notation is included in the extraction of the defendant's cellphone, which was produced to him on April 16, 2024 and on May 7, 2024.

When the detective received the device, it was on, but locked.  He was able to extract data from the phone without entering a passcode, but after performing the extraction "bruteforce[d]"[4] the passcode, and recorded it in case it was needed at a later point in the investigation.

Agents not only *would have been* able to access the defendant's cellphone without knowing the passcode, they did.  The contents of the phone therefore would have been (and were) inevitably discovered, regardless of what transpired during the defendant's arrest.  There are therefore no grounds to suppress and the motion should be denied without a hearing.  *See Cohen*, 378 F.2d at 760 ("Suppression may be proper for a reason of law appearing on the face of the motion.").

### III.     THE COURT SHOULD DENY THE MOTION TO DISMISS

The defendant also moves to dismiss the indictment in its entirety on the grounds that the deletion of BWC footage from his arrest constitutes a violation of his Due Process rights and Local Criminal rules 5.1(b), (c), and (e).  ECF No. 275 at 1.  There is no basis for the allegation that the government acted in bad faith by failing to obtain the BWC footage; nor is there any reason to believe that the footage would be exculpatory to the defendant or alter the outcome of his suppression motion.  The motion should therefore be denied.

**A. Applicable Law**

To establish a due process violation, the defendant must prove "that government failed *in bad faith* to preserve *material* and *potentially exculpatory* evidence."  *United States v. McKie*, 951 F.2d 399, 403 (D.C. Cir. 1991) (citing *Arizona v. Youngblood*, 48 U.S. 51, 58 (1988)); *see also United States v. Sheppard*, 21 Cr. 203 (JDB), 2022 WL 17978837, at *12 (D.D.C. Dec. 28, 2022)

---

[4] The term "bruteforce" refers to the process to trying passcodes in rapid succession until one is successful.

7

(same).  "[N]either negligence nor incompleteness violates the Due Process Clause." *United States v. Taylor*, 312 F. Supp. 3d 170, 179 (D.D.C. 2018); *see also Youngblood*, 48 U.S. at 58 (negligent failure to refrigerate semen samples taken from victim not bad faith).

### B. Argument

"Whenever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *Youngblood*, 488 U.S. at 57–58 (quoting *California v. Trombetta*, 467 U.S. 479, 486 (1984)).  In this case, however, although the content of the video footage of the defendant's arrest is unknown, it is clear that the import of that footage is minimal.  As outlined above, the TPD detective was (and would have been) able to extract the contents of the defendant's phone without his passcode.  Thus, even if the video were to demonstrate a violation of the search warrant, it would have no bearing on the outcome of his suppression motion.[5]

Further, as outlined above, the failure to obtain the BWC footage prior to its deletion was the result of a misunderstanding between the government and the FBI, not bad faith.  When the assigned AUSAs first inquired regarding BWC footage of the defendant's arrest, the FBI agent (who was not present for the defendant's arrest) understood them to be referring to BWC footage from the FBI (of which there was none).  It was not until later that the government and the FBI realized that the TPD offic*ers might have activated their BWC during the arrest.  See Illinois v. Fisher*, 540 U.S. 544, 548 (2004) (finding no due process violation when police acted in "good faith and in accord with their normal practice" destroyed a narcotics sample from the crime lab).

---

[5] Nor has the defendant alleged that the footage would be otherwise exculpatory.  The best he can offer is a vague assertion that the footage is necessary for "the impeachment of the Task Force Officer who interviewed [him]."  ECF No. 275 at 7; *see also* ECF No. 256 at 12, ECF No. 276.

8

The lack of bad faith by the government is further borne out by the fact that the BWC footage was deleted at the end of the three-year retention period, not before, and therefore was available for the defendant himself to request pursuant to the Kanas Open Records Act. *See* Kan. Stat. Ann. § 45-254 ("A person who is a subjection of [a body camera] recording" "may make a request to view [the] video recording. . . . The law enforcement agency shall allow the person to . . . view the requested video recording within 20 days after making the request").

### IV.     CONCLUSION

For the reasons set forth above, the defendant's motions to suppress the contents of his cellphone (ECF Nos. 276 and 283) and to dismiss the indictment (ECF No. 275) should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Benet J Kearney*
Benet J. Kearney
NY Bar No. 4774048
Kelly Elizabeth Moran
NY Bar No. 5776471
Matthew Beckwith
DC Bar No: 90014452
Assistant United States Attorneys
601 D Street NW
Washington, DC 20530
Benet.Kearney@usdoj.gov
Kelly.Moran@usdoj.gov
Matthew.Beckwith@usdoj.gov
(212) 637 2260 / (202) 740 4690 / (202) 252 7109