**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-128 (RC)** |
| | : | |
| **WILLIAM POPE,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' MOTIONS *IN LIMINE***

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this motion *in limine* to preclude the defendant, William Pope, from introducing certain evidence or making certain arguments at the trial in this case scheduled for July 22, 2024.

"Motions *in limine* are designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Barnes v. D.C.*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting *Graves v. District of Columbia*, 850 F.Supp.2d 6, 10 (D.D.C. 2011)). The United States offers the authorities and analysis below to promote efficiency and reduce the need to argue objections midtrial. For each motion herein, the United States asks that the Court grant the requested relief or, if the Court reserves ruling, to consider the below arguments when the relevant issues arise during trial.

**ARGUMENT**

**A. The Court Should Limit Cross-Examination and Evidence Regarding Sensitive Security Information.**

Pursuant to Fed. R. Evid. 401, 403, and 611(b), the government moves to limit the cross-examination of witnesses with the Secret Service Agency and to restrict the presentation of

evidence regarding the specific positions of United States Capitol Police ("USCP") surveillance cameras.

### 1. Legal Standard

It is well-established that a district court has the discretion to limit cross examination. *See Alford v. United States,* 282 U.S. 687 (1931) ("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."); *United States v. Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses."). A court has the discretion to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See e.g., United States v. Balistreri,* 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which that agent did not testify on direct examination and which did not pertain to the charges in the case), *overruled on other grounds* by *Fowler v. Butts,* 829 F.3d 788 (7th Cir. 2016). Other permissible reasons for limiting cross-examination include preventing harassment, prejudice, confusion of the issues, or repetitive, cumulative, or marginally relevant questioning. *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986).

While limiting a defendant's opportunity for cross-examination may implicate the constitutional right to confront witnesses, the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). Even evidence that may be relevant to an affirmative defense should be excluded until the defendant sufficiently establishes that defense through affirmative evidence

presented during his own case-in-chief. *See United States v. Lin,* 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol,* 636 F.2d 621, 663-64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief); *United States v. Stamp,* 458 F.2d 759, 773 (D.C. Cir. 1971) (finding trial court properly excluded cross examination of government's witness with response to matter only related to an affirmative defense and not elicited through direct exam).

As explained below, preventing the defendant from exploring certain topics regarding the Secret Service's protection of the Vice President will not infringe his Confrontation Clause right because those topics are not relevant to an element at issue in the case, provide no basis for impeaching the Secret Service witness, and do not implicate any affirmative defense. Nor will preventing the defendant from presenting evidence regarding the exact positions of USCP cameras infringe his Confrontation Clause right because these topics implicate national security concerns, are of marginal probative value, and any probative value can be addressed without compromising the Capitol Police's protective function.

> **2. Cross-Examination of Secret Service Witnesses Should Be Limited to Whether and Why the Capitol was Restricted on January 6, 2021.**

In Counts One, Three, and Four, the defendant is charged with violating 18 U.S.C. § 231 by obstructing, impeding, and interfering with, or attempting to obstruct, impede, or interfere with, law enforcement officers during the breach of the United States Capitol on January 6, 2021, and 18 U.S.C. §§ 1752(a)(1) and (2) by knowingly entering or remaining in a restricted building or grounds without lawful authority, and knowingly, and with intent to impede or disrupt the orderly conduct of Government business and official functions, engaging in disorderly or disruptive

conduct in, or within proximity of, any restricted building or grounds, when such conduct did in fact impede or disrupt Government business and official functions during the breach of the United States Capitol on January 6, 2021. Section 1752 defines "restricted buildings or grounds" to include any building or grounds temporarily visited by a person being protected by the Secret Service. 18 U.S.C. § 1752(c)(1)(B).

To meet its burden of proof at trial, the government expects to call a witness or witnesses from the United States Secret Service to testify that at the time of the Capitol breach, Secret Service agents were on duty to protect Vice President Mike Pence and his two immediate family members, all of whom were present at the Capitol. These officials will further testify about the Capitol breach's effect on the Secret Service's protection of Vice President Pence and his family members.

However, the nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to that agency's ability to protect high-ranking members of the Executive branch and, by extension, national security. Therefore, the government seeks an order limiting the cross-examination of the Secret Service witnesses to questioning about the function performed by the Secret Service as testified to on direct exam, in this case protecting the Vice President and his family. The defendant should be specifically foreclosed from questioning the witnesses about the following:

1. Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur;

2. Details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees.

To meet its burden of proof, the government intends to offer limited testimony about the

Secret Service's protection of certain officials on January 6, 2021. First, to establish a violation of 18 U.S.C. § 231(a)(3), the government must prove, among other things, that a civil disorder interfered with a federally protected function. 18 U.S.C. § 231(a)(3); *United States v. Red Feather,* 392 F. Supp. 916, 918-19 (D. S.D. 1975). A "federally protected function" includes any lawful function, operation, or action by a federal agency or officer. 18 U.S.C. § 232(3). Thus, the government must prove that the January 6 breach interfered with a federal agency or federal officer's performance of lawful duties. To meet this element, the government intends to offer the testimony that pursuant to authority under 18 U.S.C. § 3056(a)(1), on January 6, 2021, Secret Service agents were at the Capitol to protect Vice President Mike Pence and two members of his immediate family. [1]  A Secret Service official is further expected to explain how the events at the Capitol on that date affected the Secret Service's ability to protect Vice President Pence and his family.

To prove Counts Three and Four, which charge violations of § 1752(a)(1) and (2), the government must prove that the Capitol and its grounds were "restricted" because the Vice President and his family were present there and being protected by the Secret Service. *See* 18 U.S.C. § 1752(c)(1)(B) (defining restricted buildings and grounds).

Cross-examination of Secret Service witnesses about extraneous matters beyond the scope of direct examination should be excluded as irrelevant or unduly prejudicial. But the Secret Service's general protocols about relocation for safety should be excluded as irrelevant because such evidence does not tend to make a fact of consequence more or less probable. Fed. R. Evid. 401 (defining relevant evidence). Similarly, evidence of the nature of Secret Service protective

---

[1] The Secret Service is authorized to protect the Vice President and his immediate family. 18 U.S.C. §§ 3056(1) and (2).

details is not relevant in this case. The number or type of assigned agents on a protective detail does not alter the probability that the Capitol and its grounds were restricted at the time. None of the other elements to be proven, or available defenses, implicates further testimony from the Secret Service.

Even assuming the evidence to be excluded is marginally relevant, such relevance is substantially outweighed by the danger of confusion of the issues, mini-trials, undue delay, and waste of time. *See United States v. Mohammed,* 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005) (finding that information having broader national security concerns can be excluded under Rule 403 because its tendency to confuse the issues, mislead the jury, create side issues or a mini-trial can result in undue prejudice that substantially outweighs any probative value). Broader cross-examination of Secret Service witnesses could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses. *Id.*

### 3. The Defendant Should Be Precluded from Questioning Witnesses about the Exact Positions of Capitol Police Cameras, Introducing Such Evidence Themselves, or Admitting Capitol Police Maps of Camera Coverage.

To meet its burden of proof at trial, the government will present video evidence from a variety of sources, including USCP surveillance footage. As detailed in the Declaration of Thomas A. DiBiase, attached as Exhibit 1, the Capitol Police maintains an extensive closed-circuit video system which includes cameras inside the Capitol Building, inside other buildings within the Capitol complex, and outside on Capitol grounds. Those cameras captured thousands of hours of footage from the breach of the Capitol and have been instrumental in documenting the events of January 6, 2021. However, U.S. Capitol Police's surveillance system also serves an important, and ongoing, function in protecting Congress and, by extension, national security. In particular, the footage from the system is subject to limitations and controls on access and

dissemination. *See* Exhibit 1.

To find relevant footage from the Capitol Police's surveillance system and adequately prepare for trial, one would need to use maps which display the locations of the interior and exterior cameras. The government has therefore provided the defendant's standby counsel with maps that display these locations. However, due to the sensitive nature of these items, the government seeks an order limiting the defendant from probing, during cross-examination, the exact locations of Capitol Police surveillance cameras or from using the maps, which show each camera's physical location, as an exhibit at trial.

Evidence about the exact locations of cameras, and the maps used to locate the cameras, should be excluded due to the ongoing security needs of the Capitol. The defense can probe what Capitol Police's cameras show and do not show by asking about the general location of each camera. For example, a camera positioned inside the Lower West Terrace tunnel can be described as "inside the tunnel, facing out" without describing its exact height and depth within the tunnel and without showing a picture of the camera. Absent some concrete and specific defense need to probe the camera's location, there is nothing to be gained from such questioning. A general description, and the footage from the camera itself, will make clear what the camera recorded and what it did not. Additionally, presenting the map of all Capitol Police cameras would risk compromising these security concerns for no additional probative value: the map contains numerous cameras installed in parts of the Capitol that the defendant did not visit.

Even assuming the evidence to be excluded is marginally relevant, such relevance is substantially outweighed by the danger to national security. See *United States v. Mohammed*, 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005) (finding that information having broader national security concerns can be excluded under Rule 403 because its tendency to confuse the issues, mislead the

jury, create side issues or a mini-trial can result in undue prejudice that substantially outweighs any probative value). If the map of the Capitol cameras is introduced in this trial, or in any trial, it becomes available to the public. Immediately, anyone could learn about the Capitol Police's camera coverage as of January 6, 2021, and—importantly—could learn about the parts of the Capitol where cameras were not installed. Broader presentation of evidence about camera locations could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses. *Id.*

### 4. The Government Requests an *In Camera* Proceeding to Determine the Admissibility of Certain Evidence.

If the defendant believes that the presentation of the evidence described above is necessary, the government requests the hearing be conducted *in camera* and that any hearing regarding the Secret Service topics identified above be conducted ex parte. As noted, in this case, disclosure of certain information could prove detrimental to the Secret Service's ability to protect high-level government officials and to the Capitol Police's ability to protect members of Congress and affect our national security. Courts have found such considerations justify ex parte, *in camera* proceedings. *See Gilmore v. Palestinian Interim Self-Gov't Auth.,* 843 F.3d 958, 968 (D.C. Cir. 2016) (finding that while ex parte proceedings should be employed to resolve discovery disputes only in extraordinary circumstances, they are appropriate where disclosure could lead to substantial adverse consequences, such as where a party sought intelligence materials generated in the midst of a geopolitical conflict); *United States v. Nixon,* 418 U.S. 683, 714 (1974) (affirming district court's order for in camera inspection of subpoenaed presidential materials); *United States v. Kampiles,* 609 F.2d 1233, 1248 (7th Cir. 1979) ("It is settled that in camera ex parte proceedings to evaluate bona fide Government claims regarding national security information are proper."); *In re Taylor,* 567 F.2d 1183, 1188 (2d Cir. 1977) (finding that in

camera proceedings "serve to resolve, without disclosure, the conflict between the threatened deprivation of a party's constitutional rights and the Government's claim of privilege based on the needs of public security."); *United States v. Brown,* 539 F.2d 467, 470 (5th Cir. 1976) (per curiam) (same).

**B. This Court Should Preclude the Defendant From Arguing That the First Amendment or His Purported Status as a Journalist Authorized His Conduct on January 6, 2021 or Rendered Such Conduct Legal.**

In his filings in this case, the defendant has asserted that he is a member of the press and implied that this status should shield him from prosecution. *See, e.g.,* ECF No. 270. He has also asserted that, on January 6, 2021, he was exercising his First Amendment free speech rights. *See id.* at 4. Anticipating that the defendant may seek to oppose introduction of his statements on First Amendment grounds or may cite the First Amendment in arguments to the jury, the United States also moves *in limine* for a ruling that the admission of the defendant's statements does not violate the First Amendment and to preclude the defendant from eliciting evidence or arguing to the jury that his statements and actions were protected by the First Amendment.

**1. Admission of Defendant's Statements Does Not Violate the First Amendment**

The United States intends to introduce several statements, made by defendant, that will aid the jury's determination as to whether the United States has shown the requisite knowledge and intent to commit the offenses with which he is charged. The First Amendment does not bar the use of a defendant's statements as evidence in a criminal proceeding. *See Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) (holding that the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent"). Indeed, "[e]vidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like." *Id*.

Courts across the country, including in January 6th cases, have allowed evidence of defendants' statements for the purposes sanctioned by *Mitchell*.[2] As Judge Cooper ruled:

> Nor does the Court find any First Amendment concerns in the government's use of Robertson's statements to show intent. . . . If Robertson had expressed his views only through social media, he almost certainly would not be here. But he also allegedly took action—entering the Capitol without lawful authority in an alleged attempt to impede the Electoral College vote certification. His words remain relevant to his intent and motive for taking those alleged actions.

*United States v. Robertson*, 588 F. Supp. 3d 114, 124 (D.D.C. 2022) (internal citation omitted). *See also United States v. Sullivan,* 21 Cr. 78 (RCL), at November 7, 2023 Minute Order, granting ECF No. 88 Gov't Omnibus Motion In Limine.

The defendant's statements that shed light on the elements of the offenses, or motive or intent, should be admitted in this case as expressly permitted by *Mitchell*, regardless of whether any of those statements may otherwise constitute speech protected by the First Amendment.

## 2. Defendant Should Be Precluded From Raising a First Amendment Defense to the Jury

The United States also moves *in limine* to preclude defendant from arguing to the jury that his conduct was protected by the First Amendment. None of the offenses with which defendant is charged punish speech, as crimes such as threats or solicitation do. The crimes with which the defendant is charged punish the corrupt obstruction, influence, or impediment of an official proceeding); obstructing, impeding, or interfering with a law enforcement officer during a civil

---

[2] Outside of the context of January 6th, Mitchell has been cited to uphold the admission of a wide range of statements, including but not limited to rap lyrics, terrorist materials, and speeches advocating civil disobedience. See *United States v. Smith*, 967 F.3d 1196, 1205 (11th Cir. 2020) (rap lyrics); *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) (rap lyrics and tattoos); *United States v. Salameh*, 152 F.3d 88, 111–12 (2d Cir. 1998) (terrorist materials); *United States v. Fullmer*, 584 F.3d 132, 158 (9th Cir. 2009) (speeches advocating civil disobedience).

disorder; entering or remaining in a restricted area, engaging in disruptive conduct, and parading in the Capitol building, as well as other actions taken during the riot.

If the United States establishes the elements of any of the offenses with which defendant is charged, the First Amendment provides him no defense, even if the evidence of defendant's crimes is intertwined with, political discussion and rhetoric. *See United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("[A]lthough the conspiracy was closely related to, and indeed proved by, many of the defendants' conversations about political and religious matters, the conviction was based on an agreement to cooperate in the commission a crime, not simply to talk about it."); *see also United States v. Hassan*, 742 F.3d 104, 127–28 (4th Cir. 2014) (citing *Amawi*).

Similarly, the defendant's purported "newsgathering" on January 6, 2021 does not exculpate him and he should not be permitted to argue to the jury that it does. *United States v. Rivera*, 607 F.Supp.3d 1, 10 (D.D.C. 2022) (rejecting a defendant's "member of the media" defense, the Court noted filming for social media and engaging in the charged crimes are not "mutually exclusive"). But the defendant cannot even credibly make that claim. At no time has he proffered that he legitimately possessed a press credential on January 6, 2021, which would have been necessary for his entry into the Capitol. *See id.* at 2 (noting that, on January 6, 2021, "members of the media were permitted to enter the Capitol building only after they had been vetted by their company, by the Capitol Police, and issued official badges by the Sergeants-at-Arms").

Accordingly, any line of cross-examination or argument that the defendant may wish to make regarding the First Amendment is irrelevant because it lacks a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401, and because he is not entitled to a First Amendment defense as a matter of law. To the extent there is any relevance to the

defendant's First Amendment claims, the Court should exclude any questioning and argument along those lines under Fed. R. Evid. 403. Any attempt to shift the jury's attention to questions about whether defendant's statements were protected by the First Amendment, rather than the charged offenses risks confusing the issues, wasting time, and unfairly prejudicing the jury.

To be clear, the government does not seek to preclude the defendant from arguing that that he genuinely believed that he was authorized to enter the restricted area around the Capitol building or otherwise lacked the requisite mens rea for the charged offenses; this is a relevant and legitimate issue of fact for the jury. But the Court should not allow him to make legally unsound arguments to the jury.

**C.  This Court Should Preclude the Defendant From Introducing Evidence or Presenting Evidence Regarding Law Enforcement Action or Inaction Unless the Defendant Specifically Observed or Was Aware of Such Conduct on or before January 6, 2021.**

In ECF Nos 147 and 252, the defendant notified the Court and government of his intent to offer a "Raindrop Theory"[3] defense, based on the existence of two wild premises: the riot on January 6 – and somehow, his alleged conduct at the core of this case – was the result of (1) government inaction, coupled with (2) covert actors who formed the external catalyst for the riot. This is essentially an "entrapment by outrageous government conduct" defense – arguing that the government secretly plotted and goaded individual defendants into joining a massive riot where a violent mob stormed the Capitol and interrupted the certification of the 2020 presidential election.

As the government explained at length in ECF No. 318, responding to the Defendant's Motion for Discovery on his "Raindrop Theory," the Defendant's theory is nothing more than a

---

[3] Defendant's Raindrop Theory is derived from Judge Kollar-Kotelly's apt description of how a riot can only occur with individual participants: "Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood." See *United States v. Jesus Rivera*, 21 Cr. 60 (CKK), Nov. 3, 2022 Tr. at 3.

loose assemblage of personal grievances and conspiracy theories held together by no logic whatsoever. The Court should not allow this criminal trial to become a circus where the defendant is allowed to confuse the jury with conjecture and nonsensical conspiracy. The United States therefore moves *in limine* to preclude the defendant from presenting this speculative, unfounded, and freewheeling conspiracy theory to the jury, and to limit his presentation of evidence regarding law enforcement action or inaction to conduct that he observed or was otherwise aware of on January 6, 2021.

### 1. Entrapment by Estoppel

"To win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (Howell, C.J.) (quoting *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)).  Judges in this District have repeatedly rejected attempts by January 6-defendants to argue that President Trump or law enforcement officers protecting the U.S. Capitol Building gave them permission to enter the Capitol on January 6, 2021, see, e.g., *United States v. John George Todd III,* 1:22-cr-00166-BAH, January 9, 2024 Minute Order*, Chrestman*, 525 F. Supp. 3d at 30-33; Mem. & Order at 2, *United States v. Williams*, No. 21-cr-377, ECF No. 87 (D.D.C. June 8, 2022); *United States v. Easterday*, No. 22-cr-404, 2023 WL 6646384, at *2-3 (D.D.C. Oct. 12, 2023); *United States v. Bru*, No. 21-

cr-352, 2023 WL 4174293, at *2-3 (D.D.C. June 26, 2023); *United States v. Baez*, No. 21-cr-507, 2023 WL 6364648, at *6-8 (D.D.C. Sept. 29, 2023).

The defendant has given this Court no reason to deviate from this consistent case law in order to entertain his "Raindrop Theory." He has proffered no evidence supporting any element of the defense. Although he speculates wildly about scores of federal agents swarming about the Capitol grounds, he fails to identify *any* specific government actor that misled him personally; nor has he alleged that these unidentified actors misled him about the state of a law he is charged with violating, let alone that he relied on such a statement. And, even had the defendant alleged all of the above, he cannot show that any reliance on such a hypothetical government actor's statement was reasonable. Just as "no President may unilaterally abrogate criminal laws duly enacted by Congress as they apply to a subgroup of his most vehement supporters," no member of law enforcement could use his authority to allow individuals to enter the Capitol building during a violent riot, and after "obvious police barricades, police lines, and police orders restricting entry at the Capitol" had already been put in place by the United States Capitol Police and the Secret Service. *Chrestman*, 525 F. Supp. 3d at 32. As this Court has already noted, "Pope has not argued that he ever talked to the alleged government agents or that he was otherwise influenced by the government to enter the Capitol." ECF No. 239 at 5-6.

Unless the defendant can meet this threshold showing, he should be precluded from presenting an entrapment by estoppel defense at trial.

## 2. Evidence or Argument Regarding Hypothetical Events that the Defendant Did Not Personally Observe

The defendant's "Raindrop Theory" reaches further than an entrapment by estoppel defense, and seeks to distract and confuse the jury by weaving conspiracy theories from alleged events of which the defendant himself would not have been aware. For example, the defendant

14

will likely seek to introduce evidence regarding the observations of a former FBI employee who was present in the vicinity of the Capitol on January 6, 2021, with several other individuals who the defendant claims were current FBI agents.  But, as this Court has previously observed, the defendant has not alleged that he interacted with or saw these individuals, that they observed him, or that their vantage point was similar to his.  ECF No. 239 at 17-18.  Thus, evidence about or testimony from these individuals is entirely irrelevant to the defendant's charges.  Because the presentation of this evidence will serve only to confuse the jury and, as evidenced by the defendant's frequent and voluminous filings in this case, will take an extensive amount of time to present, the Court should preclude such evidences pursuant to Rule 403, unless the defendant can demonstrate that he personally observed or was otherwise aware of it on or before January 6, 2021.

### D. This Court Should Preclude the Defendant from Arguing in a Manner That Encourages Jury Nullification, Whether During Voir Dire or During Trial.

On his Twitter/X account, the defendant has made a number of statements reflecting his support for jury nullification, as evidenced below.



The defendant should be prohibited from making arguments or attempting to introduce irrelevant evidence that encourages jury nullification.   As the D.C. Circuit has made clear,

> A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law.  Such verdicts are lawless, a denial of due process and

constitute an exercise of erroneously seized power.

*United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983). Evidence that only serves to support a jury nullification argument or verdict has no relevance to guilt or innocence. *See United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975); *see also United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("No reversible error is committed when evidence, otherwise inadmissible under Rule 402 of the Federal Rules of Evidence, is excluded, even if the evidence might have encouraged the jury to disregard the law and to acquit the defendant"). In particular, the Court should permit no argument, evidence, or questioning regarding the following topics, which would serve only to encourage jurors to decide the case based on factors other than the facts and the law:

### 1. Selective Prosecution

The Defendant has previously claimed that he has been unfairly singled out for prosecution for a variety of reasons. *See, e.g.,* ECF No. 178 at 3 (suggesting selective prosecution based on his candidacy for local office, his enrollment in a Ph.D. program, his prior status a "white man in an all-black town," his leading of "dialogues on racial diversity," his religion, or his "journalistic activities"); ECF No. 270 at 5-6 (claiming selective prosecution because he is a "conservative journalist"). But a "selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). This Court has already denied the Defendant's motion for discovery or dismissal of charges based on a selective prosecution theory (ECF No. 178), finding that the Defendant "proffer[ed] no evidence to support [his] claim[s] . . . only mere speculation of the Government's improper motivation." ECF No. 251 at 4 (quoting *United States v. Bennett*, No. 21 Cr. 312 (JEB), 2023 WL 6847013, at *3 (D.D.C. Oct. 17, 2023)). Such arguments have no place in a trial, as they could serve as an improper

invitation for the jury to ignore its obligations under the law. *See United States v. Baez*, No. 21 Cr. 507 (PLF), 2023 WL 6364648, at *9 (D.D.C. Sept. 29, 2023) ("[T]he issue of selective prosecution is one to be determined by the court, as it relates to an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which [he] was charged." (quoting *Washington*, 705 F.2d at 495); *United States v. Sutton*, 636 F. Supp. 3d 179, 209–10 (D.D.C. 2022) (allegations of selective prosecution "are irrelevant, inappropriate for consideration by the jury, invite jury nullification, and distract from the issues at trial"). The Defendant should therefore be precluded from making such arguments.

### 2. Evidence Regarding Charges Brought Against Other Individuals (Or Lack Thereof)

Similarly, the defendant has repeatedly made comparisons between his conduct and that of others on the Capitol grounds on January 6, 2021 and referenced either the lack or less serious nature of the charges that have been filed against those individuals. *See, e.g.,* ECF Nos. 178, 244, 270. In addition to presenting inadmissible arguments regarding selective prosecution, addressed above, such evidence and argument should be excluded because it is irrelevant to the Defendant's guilt or innocence and invites the jury to improperly weigh the relative culpability of the defendant and speculate regarding punishment in the event of a conviction.

Evidence that some other individual is currently uncharged or has been charged with a lesser crime than those charged here has no probative value to the issues at trial, serves only to confuse or mislead the jury, and invites separate litigation regarding the conduct of the other individuals. *See United States v. Reed*, 641 F.3d 992, 993–94 (8th Cir. 2011) (collecting cases and observing that "[s]everal circuits have unanimously upheld the exclusion of evidence of prior charging decisions on the ground that many factors unrelated to guilt may influence those decisions and their admission therefore risks misleading the jury and confusing the issues"); *Baez*, No. 21

Cr. 507 (PLF), 2023 WL 6364648, at *10 ("[I]nviting the Court or the jury to weigh the defendant's culpability relative to other rioters is irrelevant and improper . . . [the defendant] will not be permitted to argue to the jury that her conduct could have been worse, or that her conduct was not as bad as the conduct of those around her" (internal quotation marks omitted).  To the extent that the defendant seeks to present evidence or arguments that other individuals remain uncharged or have been charged with lesser offenses, or that he is being treated more harshly than individuals who engaged in worse conduct, such evidence is irrelevant, inadmissible, and serves only to divert the jury's attention to matters unrelated to the defendant's guilt or innocence.

In the same vein, the defendant should not be permitted to arouse the jury's sympathy by introducing any evidence of or attempting to argue about the potential punishment he might face were he to be convicted (and that other individuals would not).  It is black-letter law that the jury should not consider such penalties in reaching its verdict.  *See, e.g.*, *United States v. Reed*, 726 F.2d 570, 579 (9th Cir. 1984) (a defendant's possible sentence "should never be considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused."); *Rogers v. United States*, 422 U.S. 35, 40 (1975) (jury should have been admonished that it "had no sentencing function and should reach its verdict without regard to what sentence might be imposed"). Such issues are irrelevant, and any reference to them would invite jury nullification and should be excluded. *See United States v. Bell*, 506 F.2d 207, 226 (D.C. Cir. 1974) ("evidence which has the effect of inspiring sympathy for the defendant or for the victim . . . is prejudicial and inadmissible when otherwise irrelevant") (internal citation omitted); *United States v. White*, 225 F. Supp. 514, 519 (D.D.C 1963) ("The proffered testimony (which was clearly designed solely to arouse sympathy for defendant) was thus properly excluded.").

### 3. Personal Attacks On or Evidence Regarding Members of the Prosecution Team

The government also moves to preclude the defendant from engaging in personal attacks on or introducing evidence regarding members of the prosecution team. This motion should be unnecessary; however, in the last several weeks, the defendant has made repeated personal attacks on members of the prosecution team in his filings and social media posts, and attached to his filings irrelevant personal information regarding two of the Assistant United States Attorneys handling this case. *See* ECF Nos. 308, 315, 317.

The Court's trial procedures should be sufficient to prevent the defendant from engaging in this type of harassment during trial. *See* ECF No. 240 at 3 (Trial Procedures ¶ 2) ("The Court expects the parties to exercise civility at all times"), 8 (Trial Procedures ¶ 8(b) ("[D]uring closing argument and throughout trial, that parties shall not . . . make personal attacks on the other party"). However, this defendant has previously failed to abide by court orders regarding the filing of sensitive information in this case, and demonstrated his proclivity to "play[] games" and engage in "semantics" in order to justify his violative conduct. ECF No. 193 (Sept. 15, 2023 Conf. Tr.) at 11. The Defendant should be given no such leeway at trial.

The trial will not be able to proceed in an orderly fashion if the defendant is allowed to launch *ad hominem* attacks against the prosecutors, paralegals, and agents who worked on this matter. Furthermore, the publication of personal information regarding the prosecution team could cause jurors to fear that the defendant would similarly misuse their own personal information in the event of a conviction, causing them to consider irrelevant issues in their deliberations. The defendant should not be allowed to continue his current course of personal attack against the prosecution team, the only purpose of which is to try and distract from his criminal conduct at the center of this case.

### E. Defendant's Claimed Good Character

#### 1. Character Generally

The Court should exclude evidence and argument from defendant introducing reputation or opinion evidence that the defendant is generous, charitable, family-oriented, religious, or a community participant. Evidence that a defendant possesses certain favorable character traits is admissible only when the trait is "pertinent" to the offense charged. Fed. R. Evid. 404(a)(2)(A); *see*, e.g., *United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007); *United States v. Santana-Camacho*, 931 F.2d 966, 967–68 (1st Cir. 1991) (Breyer, C.J.). But defendants may not provide evidence of possessing a generally good character. *See*, e.g., *United States v. Hill*, 40 F.3d 164, 168 (7th Cir. 1994) (court properly excluded "classic character evidence offered to prove that [defendant] had a good character and acted in conformity therewith"). Such evidence only promotes jury nullification and is not allowable. *See United States v. Joseph*, 567 F. App'x 844, 849 (11th Cir. 2014) ("[W]hen the district court restricted defense counsel's comments about [defendant]'s honor and social contributions—comments that were part of his jury nullification efforts—the court did not deny [defendant] the opportunity to make a legally tenable argument. Instead, it kept him from making impermissible arguments."). Because none of the above characteristics are relevant to the charged offenses, the Court should exclude any evidence and argument addressing these character traits.

#### 2. Specific Instances of Character

The Court should also exclude evidence and argument of specific instances of Defendant's good character, including caring for family members, donations, attending religious services, performing charitable or civic work, or other forms of generosity. Rule 405(b) makes clear that unless a defendant's character or character trait is "an essential element of a charge,

claim, or defense," he may not offer evidence of specific instances of good conduct. Fed. R. Evid. 405(b). Because none of the above instances of good conduct are relevant to an essential element of a charge, claim, or defense in this case, evidence of such should be excluded. See *United States v. Bernard*, 299 F.3d 467, 476 (5th Cir. 2002) (approving court's sentencing instruction that jurors should not "consider the religious views of the defendants"); *Santana-Camacho*, 931 F.2d at 967 (excluding evidence that defendant was a good family man and a kind man because it was not a trait relevant to the offense); *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (holding evidence of "bravery, attention to duty, perhaps community spirit" were "hardly 'pertinent' to the [charged] crimes"); *United States v. Morison*, 622 F. Supp. 1009, 10111 (D. Md. 1985) (holding "patriotism" was not a relevant trait to the charged offense).

## CONCLUSION

For the reasons set forth herein, the United States respectfully requests that the Court grant its motions *in limine*.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:  *Benet J. Kearney*_____
Benet J. Kearney
NY Bar No. 4774048
Matthew Beckwith
DC Bar No: 90014452
Kelly Elizabeth Moran
NY Bar No. 5776471
Assistant United States Attorneys
601 D Street NW
Washington, DC 20530
Benet.Kearney@usdoj.gov
Matthew.Beckwith@usdoj.gov
Kelly.Moran@usdoj.gov
(212) 637 2260
(202) 740 4690
(202) 252 7109