# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                              |     |                      |                     |
|------------------------------|-----|----------------------|---------------------|
| UNITED STATES OF AMERICA     | :   |                      |                     |
|                              | :   |                      |                     |
|     v.   | :   | Criminal Action No.: | 21-128 (RC)         |
|                              | :   |                      |                     |
| WILLIAM POPE,                | :   | Re Document Nos.:    | 237, 249, 252, 253  |
|                              | :   |                      | 254, 255, 262, 264  |
|     Defendant. | : |                | 265, 266, 267, 268  |
|                              | :   |                      | 269, 270, 271, 272  |
|                              | :   |                      | 273, 274, 275, 276  |
|                              | :   |                      | 278, 280, 281, 283  |

## ORDER

**DENYING DEFENDANT'S MOTION FOR EARLY DISCOVERY; DENYING DEFENDANT'S MOTION TO COMPEL 'RAINDROP THEORY' DISCOVERY; DENYING DEFENDANT'S MOTION TO RECONSIDER MOTIONS 139 AND 212; DENYING DEFENDANTS MOTION TO CLARIFY AND RECONSIDER, DENYING DEFENDANT'S MOTION TO RECONSIDER; DENYING DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF UNIFORMED OFFICERS WHO WERE MATERIAL WITNESSES TO EVENTS OF THIS CASE; DENYING DEFENDANT'S MOTION FOR EXPANDED PUBLIC ACCESS TO TRIAL; DENYING DEFENDANT'S MOTION TO CHANGE VENUE; DENYING DEFENDANT'S MOTION TO COMPEL THE GOVERNMENT TO IDENTIFY ALL EVIDENCE THAT HAS BEEN ALTERED OR DESTROYED; DENYING DEFENDANT'S MOTION TO DISMISS COUNT ONE, DENYING DEFENDANT'S MOTION TO DISMISS CASE FOR SELECTIVE PROSECUTION; DENYING DEFENDANT'S MOTION TO DISMISS COUNT TWO; DENYING DEFENDANT'S MOTION TO DISMISS COUNTS THREE, FOUR, AND SIX; DENYING DEFENDANT'S MOTION TO DISMISS COUNTS FIVE, SEVEN, AND EIGHT; DENYING DEFENDANT'S MOTION TO DISMISS CASE DUE TO MISSING EVIDENCE; DENYING DEFENDANT'S MOTION FOR LODGING AND TRAVEL EXPENSES; DENYING DEFENDANT'S MOTION TO COMPEL DISCOVERY ON INDIVIDUAL WHO PUSHED DEFENDANT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR ASSORTED REQUESTS AND DISCOVERY; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR DISCOVERY OF RECORDS RELATED TO DESTRUCTION OF BODY CAMERA RECORDINGS; DENYING DEFENDANT'S MOTION TO CONTINUE TRIAL DATE; GRANTING GOVERNMENT'S CROSS-MOTION TO AMEND PRETRIAL ORDER; GRANTING GOVERNMENT'S MOTION TO DISMISS COUNTS FIVE AND SEVEN**

Defendant William Pope has filed twenty-two motions related to his upcoming trial scheduled for July. The Government has responded to Defendant's motions and has filed two pre-trial motions of its own. The Court addresses each of the myriad motions below.

I.      **Motion for Early Disclosure of Materials (ECF No. 249) & Government's Cross-Motion for Witness List (ECF No. 264)**

*A.  Motion for Early Disclosure*

Defendant William Pope moves the Court to order an accelerated deadline for the pretrial disclosure of *Brady*, *Giglio*, and Jenks Act materials.  *See generally* Mot. Early Disc., ECF No. 249.  In particular, Pope would like "the government to produce any materials that will be needed for filing pretrial motions by May 3, 2024, and for all other materials to be produced no later than June 28, 2024."  *Id.* at 1.  In response, the Government states that it has been "been making discovery productions to the defendant, including *Brady* and *Giglio* materials, since shortly after his arrest in February 2021 and will continue to fulfill its obligations."  Gov.'s Opp'n Mot. Early Disc. at 1, ECF No. 264.  The Government further contends that the disclosure of Jencks Act and *Giglio* materials two weeks in advance of trial is sufficient for Defendant to be able to examine the materials and prepare to use them at trial because his brother's trial has already transpired, and Pope is able to use the information from that trial to prepare for his own trial.  *See id.* at 1–2.

The Court starts with the Government's obligation under the Jencks Act.  "The Jencks Act directs that in a criminal prosecution, statements made by government witnesses or prospective government witnesses are not open to discovery or inspection by the defense until said witnesses have testified on direct examination in the trial of the case."  *United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir. 1988).  In other words, "the government is not required to turn over Jencks material until after the witness has testified at trial."  *United States v. Celis*, 608 F.3d 818, 839 n. 9 (D.C. Cir. 2010).

Here, Pope contends that he should receive this information earlier because he is concerned that, because of his pro se status, it will be difficult for him to parse the volume of

Jencks material that the Government is likely to produce.  Nevertheless, as the Circuit has explained, "Congress provided for discovery of statements only after the witness has testified, out of concern for witness intimidation, subornation of perjury, and other threats to the integrity of the trial process. . . . This congressional determination is not to be disregarded by the courts." *Tarantino*, 846 F.2d at 1414.  Absent any basis for the early disclosure of Jencks Act material, Pope's motion for early disclosure must be denied.

Separately, Pope requests "timely" disclosure of *Brady and Giglio* material so that he can effectively prepare his defense.  *See* Mem. Supp. Mot. Early Disc. at 1, ECF No. 249-1.  The Government represents that it is aware of its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), and that "it has been making discovery productions to the defendant, including *Brady* and *Giglio* materials, since shortly after his arrest in February 2021 and will continue to fulfill its obligations."  Gov't's Opp'n Mot. Early Disc. at 1.  The Government further indicates that it will disclose *Giglio* materials, along with its Jencks Act material, two weeks before trial "to the extent that such materials have not already been shared."  *Id.* at 1–2.

Under *Brady*, 373 U.S. at 87 and Local Criminal Rule 5.1(a), the Government is required, as soon as reasonably possible, to disclose to the defense all information "favorable to an accused" that is "material either to guilt or to punishment," and that is known to the government. LCrR 5.1(a).  That includes "[i]nformation that casts doubt on the credibility or accuracy of any evidence, including witness testimony, the government anticipates using in its case-in-chief at trial" as well as "[i]mpeachment information."  LCrR 5.1(b)(4)-(5).  While disclosure is required under Rule 5.1, the Court "may set specific timelines for disclosure of any information encompassed by this rule," LCrR 5.1(f), and the precise contents of the disclosures are

"dependent on which witnesses the government intends to call at trial," LCrR 5.1(c).  That said, "[a] prosecutor's disclosure obligations under *Brady* begin as soon as the case is brought and continue throughout the pretrial and trial phases of the case, and even post-trial."  *United States v. Ford*, No. 15-cr-25 (PLF), 2016 WL 482871, at *5 (D.D.C. Feb. 4, 2016).  And "[a]ll such information must be disclosed promptly after it comes to the government's attention."  *Id.*  For *Giglio* material, the Court must, in its discretion, take steps to ensure that the material is disclosed sufficiently early to enable its effective use at trial, while taking into consideration the interests of the government, including possible concerns for witness safety.  *See id.*; *United States v. Pray*, 764 F. Supp. 2d 184, 189 (D.D.C. 2011).

Here, the Government has represented that it is aware of its obligation to disclose *Brady* material promptly and that is has done so and will continue to do so.  Pope has provided no convincing evidence that the Government has failed to provide *Brady* material within its possession.  "Based on the government's written . . . assurances," and Pope's lack of evidence that the Government is suppressing exculpatory material, "the Court is satisfied that the [G]overnment has been and will remain 'vigilant in ensuring that it fulfills its discovery and Brady . . . obligations.'"  *United States v. Apodaca*, 287 F. Supp. 3d 21, 41 (D.D.C. 2017) (quoting *United States v. Karake*, 281 F. Supp. 2d 302, 306 (D.D.C. 2003)).

Additionally, Pope presents no particularized reason for early disclosure of *Giglio* material besides the volume of discovery.  The Court determines that two weeks will permit the effective use of any *Giglio* material that has not yet produced.  Accordingly, the Court **ORDERS** the Government to disclose all Jencks Act, *Brady*, and *Giglio* material by two weeks before trial, at the latest.  *See* LCrR 5.1(f).  Pope's motion is **DENIED** as to his request for earlier disclosure.

*B. Cross-Motion for Witness List*

4

In addition to its opposition, the Government cross-moves and requests that the Court amend its Pretrial Order to require that both parties provide a list of non-expert witnesses they intend to call at trial. *See* Gov't's Opp'n Early Disc. at 2–3. The Government's primary argument for its cross-motion is that Pope has indicated an intention to call numerous witnesses, the testimony of many of whom the government anticipates it will seek to exclude. *Id.* at 2. Pope opposes this cross-motion arguing that (1) exposing his potential witnesses to the Government at this stage may intimidate those witnesses and prevent them from testifying on his behalf, (2) disclosing the witnesses he intends to call may reveal private information, and (3) he needs additional time to determine which witnesses he intends to call because the Government has not identified all the individuals who were in his vicinity on January 6. *See* Def.'s Reply Gov't's Opp'n Mot. Early Disc. at 2–4, ECF No. 291.

As the Government acknowledges, Federal Rule of Criminal Procedure 16 does not mandate disclosure of non-expert witness lists. *See* Gov't's Opp'n Early Disc. at 2; Fed. R. Crim. P. 16. Nevertheless, the Court concludes that requiring the parties to provide non-expert witness lists in their pretrial statement would improve efficiency for both the Court and the parties. Having the parties set forth in their pretrial statement what witnesses they intend to rely on will allow the Court to rule on any motions in limine to exclude particular types of testimony or witnesses prior to trial, and thereby help the parties to better prepare their respective arguments. Accordingly, the Court will require that the parties provide a list of non-expert witnesses they intend to rely on in their pretrial statement. *See United States v. McCaughey*, 534 F. Supp. 3d 132, 141 (D.D.C. 2021) ("Courts maintain 'considerable discretion' under Federal Rule of Criminal Procedure 16(d) 'to regulate discovery'."). Accordingly, the Government's cross-motion is **GRANTED**.

## II.     Motion to Compel 'Raindrop Theory' Discovery (ECF No. 252) and Motion to Reconsider Motions 139 and 212 (ECF No. 255)

Pope moves to compel what he calls "Raindrop Theory" discovery.  *See generally* Mot. Compel Raindrop Theory Disc., ECF No. 252.  In short, Pope argues that various government agencies had intelligence about the likelihood of a riot on January 6 but did not adequately prepare for that riot, thus allowing conditions to exist that induced rioters to storm the Capitol on January 6.  *Id.* at 3.  He further contends that individuals in the crowd at the Capitol were working undercover for the same government agencies, and that their presence at the Capitol contributed to the riot.  *Id.*  Because of these actions—or inactions—on the part of the government, Pope contends that he is entitled to an "entrapment by outrageous government conduct" defense and he seeks discovery to aid him in making that defense.  *Id.* at 5.  The Government's opposes Pope's motion.  *See generally* Gov't's Opp'n Mot. Compel "Raindrop Theory" Disc. and Mot. Reconsider, ECF No. 289.

Pope's argument is unavailing.  Even as Pope puts it, an entrapment by outrageous government conduct defense requires that the Government induce a defendant to act unlawfully.  *See* Mot. Compel Raindrop Theory Disc. at 3; *see also United States v. Trejo*, 136 F.3d 826, 827 (D.C. Cir. 1998) ("In entrapment cases the key inquiry is whether the defendant . . . is induced to [commit the offense] by government agents.").  But here, the Court cannot see how the government's inaction—assuming that such inaction even actually occurred—induced Pope to act unlawfully.  In other words, the Court cannot conclude that even if the government left the Capitol undefended, doing so induced Defendant into entering it.  *See United States v. Gaviria*, 116 F.3d 1498, 1534 (D.C. Cir. 1997) (holding that "Government has no duty to prevent a [defendant] from committing more crimes" and that "the Government's refusal to intervene does not constitute coercion" so as to constitute outrageous government conduct).

Moreover, the Court cannot see how the alleged presence of government agents among the crowd at the riot induced Pope to violate the law.  As this Court has repeated on several occasions, Pope has not provided evidence that he himself (1) knew that individuals in the crowd were government agents on January 6 or (2) that any of those alleged agents interacted with him and induced him to violate the law.  Read charitably, Pope's argument appears to be that he violated the law because so many other individuals—including alleged undercover agents—were violating the law.  But the fact that other individuals were violating the law does not rise to the level of inducement.  *C.f. United States v. McKinley*, 70 F.3d 1307, 1312 (D.C. Cir. 1995) ("Even when a government agent repeatedly requests that the defendant engage in criminal conduct, inducement is not established unless the requests are coupled with persuasive overtures . . . or unless there is evidence of reluctance on the defendant's part demonstrating that the repetition of the requests may have moved an otherwise unwilling person to commit a criminal act." (internal quotation marks and citation omitted)); *id.* ("[M]ere solicitation by the Government, to which the defendant acquiesced with reasonable readiness, does not evince inducement." (internal quotation marks and citation omitted)).

Although Pope attempts to draw an analogy to the Government's raindrop theory, that analogy is inapposite.  While it is true that each individual rioter on January 6 contributed to the chaos at the Capitol, it is *not* commensurately true that each rioter is absolved of his or her conduct merely because other individuals were also rioting.  Each individual must be responsible for his or her own behavior at the riot—irrespective of the conduct of other rioters.  The fact that January 6 defendants are held responsible for the general chaos under the "Raindrop Theory" is not inconsistent with this point; rather, individuals are held responsible for their own part in creating and adding to the general chaos.

The information Pope seeks, therefore, is irrelevant to his case.  The Court will reiterate what is has explained in past Orders: Pope is not entitled to information that is irrelevant to his own specific conduct.  *See United States v. Slough*, 22 F. Supp 3d 1, 5 (D.D.C. 2014) (requested evidence must bear "more than some abstract logistical relationship to the issues in the case" (internal quotation marks omitted)).  To the extent that discovery exists showing that Pope *himself* interacted with an undercover agent who induced him to violate the law, Pope can obtain that in discovery, but Pope is not entitled to broad discovery about undercover government agents or the government's preparations for January 6 (or lack thereof).[1]  The Government represents that it has not found any evidence showing that Pope himself interacted with undercover agents who induced him to violate the law, and no evidence contradicts that representation.  *See* Gov.'s Opp'n Mot. Compel Raindrop Theory Disc. at 2, 10.  Hence, there appears to be no discovery relevant to Pope with respect to undercover agents.

For much the same reason, the Court denies Pope's motion for reconsideration, *see* Mot. Reconsider Mots. 139 and 212, ECF No. 255.  In his motion for reconsideration, Pope asks the Court to reconsider its Order ("April Order"), ECF No. 239, denying his request for discovery on undercover police and FBI agents at the Capitol, as well as missing police body camera footage, and reports.  As the Court concluded when it entered its April Order, Defendant has not shown how any of this evidence is relevant to his case.  And Defendant's motion for reconsideration has put forward no new evidence.  Accordingly, the Court **DENIES** Pope's motions to compel "Raindrop Theory" discovery and for reconsideration.

---

[1] Beyond the issue of relevance, the Court also notes that there is no evidence that the government's conduct rose to the requisite level of outrageousness even if undercover officers were present in the crowd at the Capitol on January 6.  *See, e.g., United States v. Russell*, 411 U.S. 423 (1973).

### III.    Motions to Clarify and Reconsider (ECF Nos. 253, 254)

Pope moves the Court to reconsider and clarify its April Order amending the Protective Order in this case.  *See* First Mot. Reconsider, ECF No. 253.  The Court's April Order explained that Pope is required to return materials designated as sensitive after the termination of his proceedings.  *See* April Order at 9.

"Although the Federal Rules do not specifically provide for motions for reconsideration in criminal cases, the Supreme Court has recognized, in dicta, the utility of such motions." *United States v. Ferguson*, 574 F. Supp. 2d 111, 113 (D.D.C. 2008) (citing *United States v. Dieter*, 429 U.S. 6, 8 (1976)).  "This Court has adopted such a philosophy by regularly entertaining motions for reconsideration in a criminal context, applying the analogous Federal Rules of Civil Procedure."  *In re Extradition of Liuksila*, 133 F. Supp. 3d 249, 255 (D.D.C. 2016); *see also United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (listing cases applying standards from Federal Rules of Civil Procedure in reconsideration context).

The Court's decision to grant the Government's motion to modify its Protective Order was an interlocutory decision.  In this district a motion to reconsider an interlocutory decision may be granted "as justice requires."  *See, e.g., Coulibaly v. Tillerson*, 278 F. Supp. 3d 294, 301 (D.D.C. 2017); *United States v. Dynamic Visions, Inc.*, 321 F.R.D. 14, 16–17 (D.D.C. 2017); *Sunia*, 643 F. Supp. 2d at 60–61; *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005).  The proponent carries the burden of proving "that some harm, legal or at least tangible, would flow from a denial of reconsideration," and accordingly persuading the Court that to vindicate justice it must reconsider its decision.  *Dynamic Visions, Inc.*, 321 F.R.D. at 17 (internal quotation marks omitted) (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005)).

"In general, a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: '(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order.'" *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2008) (quoting *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003)), *aff'd*, No. 09-5349, 2010 WL 1632965 (D.C. Cir. Apr. 1, 2010); *McLaughlin v. Holder*, 864 F. Supp. 2d 134, 141 (D.D.C. 2012) (explaining that justice may also require reconsideration "where a controlling or significant change in the law or facts has occurred since the submission of the issue to the court" (quoting *Ficken v. Golden*, 696 F. Supp. 2d 21, 35 (D.D.C. 2010))).  However, motions for reconsideration "cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier." *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (internal quotation marks omitted) (quoting *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010)).

Here, Pope has not demonstrated any intervening change in law, the discovery of new and previously unavailable facts, or a clear error of law in the Court's April Order.  Rather, his arguments largely repeat his earlier opposition to the Government's motion.  Accordingly, the Court **DENIES** Pope's motions to reconsider its prior April Order amending the Protective Order.

However, to be clear, the Court's previous Order specified that "Pope may possess any materials designated as sensitive that are specifically relevant to his case," but that Pope "is required to return all sensitive materials in his possession to the Government at the conclusion of his proceedings."  April Order at 9.  As used in its April Order, Pope's proceedings include the

appeal, if any, in his case.[2]  And sensitive materials include materials provided to Pope by the Government.

### IV.     Motion to Compel Disclosure of All Uniformed Officers Who were Material Witnesses to Events of this Case (ECF No. 262)

Pope moves to compel the Government to disclose the identities of approximately 200 police officers who he has indicated through photographs that were at the Capitol on January 6 and in his vicinity.  *See* Mot. Compel Disc. Uniformed Officers, ECF No. 262.  The Government has previously stated that it has identified only 13 of the officers because many of images that Pope points to officers in "are pixelated, blurry, or depict only the back or top of officers' heads."  *See* Gov't's Opp'n Mot. Early Disc. at 2 n.1.  The Government does not appear to oppose this motion.

Under *Brady v. Maryland*, the Government has an obligation to disclose evidence to Pope if (1) that evidence is favorable to Pope, either because it is exculpatory or because it is impeaching, (2) that evidence is within the Government's possession or in the possession of others acting on the Government's behalf in the case, and (3) that evidence is material, meaning that the disclosure of the evidence could change the result of the proceeding.  *United States v. Nichols*, No. 21-cr-117 (RCL), 2023 WL 6809937, at *4 (D.D.C. Oct. 16, 2023).  Similarly, Federal Rule of Criminal Procedure 16(a) provides that the government must hand over to the defendant several categories of information.  Rule 16(a)(1)(E) requires the government, at a defendant's request, to "permit the defendant to inspect . . . data, photographs, . . . or copies or

---

[2] Pope additionally moves the Court to reconsider the denial of his motion seeking to modify the Court's Protective Order so that he can directly access certain highly sensitive video footage.  *See* Second Mot. Reconsider, ECF No. 254.  This motion is now moot because the Government has agreed to produce to Pope the footage he seeks.  *See* Gov't's Opp'n Second Mot. Clarify, ECF No. 287.

portions of any of these items, if the item is within the government's possession, custody, or control and" either (i) "the item is material to preparing the defense;" (ii) "the government intends to use the item in its case-in-chief at trial;" or (iii) "the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). Evidence is "material" under Rule 16 "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Slough*, 22 F. Supp. 3d 1, 4 (D.D.C. 2014) (internal quotation marks omitted) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)).

Here, the Government has not contested that the identities of the officers that Pope seeks to know are relevant and material to the preparation of Pope's defense. Nevertheless, the Court finds it difficult to understand how the identities of *all* officers at the Capitol in Pope's vicinity could be relevant and material to Pope's defense—especially given the low odds that any given police officer who did not interact with Pope will recall Pope's specific conduct out of the crowd of thousands of rioters. Thus, Pope has not shown how the identities of all the officers "would have any relevance to his guilt or punishment, let alone rise to the level of materiality, and the Court declines to order such wide-sweeping discovery that is, in essence, simply a fishing expedition." *United States v. Brock*, 628 F. Supp. 3d 85, 101 (D.D.C. 2022), *aff'd*, No. 23-3045, 2023 WL 3671002 (D.C. Cir. May 25, 2023). While Pope argues that officers in his vicinity *may* have seen his conduct, he does not identify any knowledge he expects any of these officers to possess. *See, e.g., United States v. Edelin*, 128 F. Supp. 2d 23, 34 (D.D.C. 2001) (denying defendant's discovery motion where defendant had "not even speculated as to the information the informants whose identities he requests might provide in aid of his defense"). Indeed, under the logic of Pope's argument, he could ask the government to identify all the rioters in the crowd

where he was located.  "Neither the Constitution nor the Federal Rules of Criminal Procedure require the prosecution to undertake a broad or blind fishing expedition . . . on the chance that something impeaching or exculpatory might turn up." *Nichols*, 2023 WL 6809937, at *14 (cleaned up).  The Court will not order such broad discovery absent an explanation of what information Pope expects to elicit and why he expects specific officers to have that information. *See United States v. Bennett*, No. 21-cr-312 (JEB), 2023 WL 6847013, at *3 (D.D.C. Oct. 17, 2023) ("[C]ourts do not permit defendants to use 'federal discovery for fishing expeditions to investigate mere speculation.'" (citation omitted)).  Accordingly, Pope's motion to compel discovery on the identities of all police officers in his vicinity is **DENIED**.[3]

### V.    Motion for Expanded Public Access to Trial (ECF No. 265)

Defendant Pope moves to have his trial streamed by live video or accessible by a call-in line for live audio.  *See* Mot. Expanded Pub. Access to Trial, ECF No. 265.  Pope justifies this request by arguing that expanded public access is in the public interest.  *See id.*

Although members of the public are welcome to sit in the courtroom and view the proceedings, the Court's current practice is not to permit the audio or video livestreaming of trials or other proceedings.  *See* LCrR 53.1; *see also Electronic Device Policy of the U.S. Courts of the D.C. Circuit*.  While judges in this District occasionally permitted livestreaming during the height of the Covid-19 pandemic, the Court has returned to in-person proceedings and livestreaming is no longer the Court's practice.  Accordingly, the Court **DENIES** Pope's motion.

### VI.    Motion to Change Venue (ECF No. 266)

---

[3] The Court notes, however, that to the extent the Government learns that a specific police officer has relevant and material information about Pope's conduct at the Capitol, it must disclose that information to Pope consistent with its obligation under *Brady*.

Pope moves to change the venue of his trial from this Court to the U.S. District Court for the Northern District of West Virginia.  *See* Mot. Change Venue, ECF No. 266.  As Pope recognizes, nearly identical "motions have been denied for every January 6 defendant that has filed one thus far." *Id.* at 1.  Pope's motion does not demand a different result.[4]

The D.C. Circuit's recent opinion in *U.S. v. Webster*, forecloses Pope's arguments.  *See United States v. Webster*, 102 F.4th 471, 478 (D.C. Cir. 2024).  As the Circuit explained, The Sixth Amendment guarantees criminal defendants an "impartial jury of the State and district wherein the crime shall have been committed." *Id.* at 479 (quoting U.S. Const. amend. VI).  That being so, "when 'extraordinary local prejudice' prevents impartiality, courts must transfer the trial to a location where an impartial jury can be drawn." *Id.* (citation omitted).  But "[p]rejudice across an entire jury pool can be presumed only in the extreme case where prejudicial publicity so poisoned the proceedings that it was impossible for the accused to receive a fair trial by an impartial jury." *Id.* (cleaned up).  And "[t]he Supreme Court has found presumptive prejudice in only the rare case where a jury pool was so pervasively exposed to prejudicial pretrial publicity *about the defendant* and the case that any subsequent court proceedings in [that] community would be but a hollow formality." *Id.* (cleaned up) (emphasis added).  The D.C. Circuit ultimately concluded that the defendant in *Webster* did "not clear that very high bar." *Id.*

---

[4] Pope argues that his motion should be deemed conceded because the Government did not file its response by the date set forth for oppositions in the Court's Pretrial Order.  *See* Reply to Gov't Opp'n Change of Venue at 1, ECF No. 307.  Pope is correct that several of the Government's briefs in opposition were filed late.  Be that as it may, the decision whether to treat motions as conceded is within the Court's discretion.  Here, the Court's Pretrial Order, ECF No. 240, set May 27, 2024, as the deadline for responses—which happens to have been Memorial Day.  It is, therefore, understandable that the Government inadvertently filed its responses one day late.  Accordingly, the Court will exercise its discretion not to treat the Government's responses in opposition that were filed one day late as conceded.

As in *Webster*, Pope has presented nothing to suggest that "that the District's jury pool had any preconceived notions about [Pope] or his guilt or innocence, or even knew who he was" and there is no "evidence of pervasive (or much of any) media coverage aimed at [Pope] and his conduct" specifically. *Id.* Rather, Pope focuses more broadly on the jury pool's views about the riot on January 6th more broadly. But as the D.C. Circuit has explained:

> [The] focus on the jury pool's opinion of January 6th and its perpetrators misses the point. We expect jurors to view significant criminal events in their hometown with an unapproving eye, whether it is the January 6th attack on the Capitol, a murder, or an armed robbery spree. Generalized disapproval of criminal conduct—even the specific conduct at issue in a defendant's case—says nothing about a juror's ability to be impartial in deciding whether a particular individual committed a crime or not. What the Constitution forbids is for a juror to hold a firmly entrenched view *about an individual defendant's guilt or innocence* before the trial starts.

*Id.* at 480 (emphasis added). "Given th[e] large, diverse pool of potential jurors [in the District] there is no basis to conclude 12 impartial individuals could not be empaneled." *Id.* at 481 (cleaned up). Contrary to Pope's argument, the political nature of the charges at issue do not change this analysis either. *See id.* ("[W]e have held that District juries could impartially adjudicate other criminal cases arising out of political matters.").

Additionally, none of the three factors that guide the Court's change of venue inquiry—"(1) the size and characteristics of the community in which the crime occurred; (2) whether press coverage of the crime contains a confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight; and (3) the time that elapsed between the crime and the trial"—militate in Pope's favor here. *United States v. Coffee*, No. 21-cr-327 (RC), 2023 WL 4450443, at *2 (D.D.C. July 11, 2023) (cleaned up). As this Court has held in other cases where defendants were charged with taking part in the January 6 riot, "the size and characteristics of the District of Columbia weigh against a presumption of prejudice."

15

Order, at 4, *United States v. Martin*, No. 21-cr-562 (RC), ECF No. 63 (D.D.C. May 7, 2024); *see also United States v. Brock*, 628 F. Supp. 3d 85, 95 (D.D.C. 2022) ("The Supreme Court has recognized a reduced likelihood of prejudice where venire was drawn from a pool of over 600,000 individuals." (internal quotation marks and citation omitted)).

With respect to publicity, "much of the coverage of the events of January 6 has been national, not local, in nature," such that the "influence of that coverage would be present wherever trial is held." *United States v. Ballenger*, 640 F. Supp. 3d 34, 40 (D.D.C. 2022) (quoting *Bochene*, 579 F. Supp. 3d at 182); *see also United States v. Chapin*, 515 F.2d 1274, 1288 (D.C. Cir. 1975) ("[P]recedent demands that the court take into account whether the publicity is sufficiently localized that potential jurors in another area would be free of any taint from exposure to the press, enabling the change to serve its purpose."). And, as the Circuit has explained, the publicity has focused on January 6 more broadly rather than on Pope specifically. Additionally, more than three years have elapsed since January 6, 2021. Although the events of January 6 continue to play a role in national media, those events are discussed less frequently today than they were three years ago.

Lastly, the Court concludes that thorough voir dire will be sufficient to root out any prejudice along the lines suggested by Defendant that calls into question a potential juror's ability to be impartial with respect to the charges against him. Accordingly, the Court **DENIES** Pope's motion to change venue.

### VII.   Motion to Compel the Government to Identify All Evidence that has been Altered or Destroyed and to Ban the Government from Using Corrupted Exhibits in Trial (ECF No. 267)

Pope moves to compel the Government to "identify all evidence they have altered, destroyed, mutilated, concealed, degraded, or corrupted, and to prohibit the government from using such evidence in trial." Mot. Compel. Gov't Identify Evidence at 1, ECF No. 267. In response, the Government represents that the evidence that it has provided has not been destroyed or altered, but rather that the video excerpts it has provided to Pope are "authentic, time-stamped USCP CCV footage from the interior and exterior of the U.S. Capitol building on January 6, 2021." *See* Gov't's Opp'n Mot. Compel Gov't Identify Evidence at 1, ECF No. 300. The Government further represents that it has "obtained from USCP and provided to the defendant" longer excerpts of the video footage he has sought. *See id.*; *see also* Notice of Disc., ECF No. 313.

Additionally, the Government has represented that it will not object to the authenticity of exhibits created from footage taken from the evidence.com database that do not have timestamps added to them, provided that the Government has the opportunity to compare those exhibits with the timestamped USCP CCV versions. *See* Gov't's Opp'n Mot. Compel Gov't Identify Evidence at 1–2.

It thus appears to the Court that the Government has provided Pope with all the video footage it has in its possession and that the footage has not been altered other than by adding time stamps. *See* Fed. R. Crim. P. 16(a)(1)(E) ("Upon a defendant's request, the government must permit the defendant to inspect . . . data . . . if the item is within the government's possession, custody, or control."). Although some of the footage may be blurry, if the Government does not possess non-blurry versions of the footage, the Court cannot compel it to produce a non-blurry version. Because the Government represents that it has turned over all the relevant video footage it has—blurry though some of it may be—and because Pope says he

intends to use the video footage from evidence.com, *see* Reply Gov't's Opp'n Mot. Compel
Gov't Identify Evidence at 2, ECF No. 306, there is nothing remaining for the Court to compel.
Accordingly, the Court **DENIES** Pope's motion as moot.

### VIII.   Motions to Dismiss (ECF Nos. 268, 270, 271, 273, 275, 278, 280)

*A. Count One*

In the first of several motions to dismiss, Pope moves to dismiss Count One of the First
Superseding Indictment.  *See* Mot. Dismiss Count One, ECF No. 268.  Pope makes several
arguments in favor of dismissal including that: (1) 18 U.S.C. § 231(a)(3) is unconstitutionally
vague and overbroad; (2) the indictment fails to allege a violation of 18 U.S.C. § 231(a)(3); and
(3) Congress lacked the power under the Commerce Clause to enact 18 U.S.C. § 231(a)(3).  *Id*.
The Government has opposed Pope's motion.  *See* Gov't's Opp'n Mots. Dismiss Counts, ECF
No. 297.

A criminal defendant may move to dismiss an indictment before trial based on a "defect
in the indictment," Fed. R. Crim. P. 12(b)(3)(B), including constitutional challenges, *see United
States v. Eshetu*, 863 F.3d 946, 952–3 (D.C. Cir. 2017).  "When considering a motion to dismiss
an indictment, a court assumes the truth of those factual allegations."  *United States v. Ballestas*,
795 F.3d 138, 149 (D.C. Cir. 2015) (citing *Boyce Motor Lines v. United States*, 342 U.S. 337,
343 n.16 (1952)).  A dismissal of an indictment "is granted only in unusual circumstances,"
because "a court's 'use [of] its supervisory power to dismiss an indictment . . . directly
encroaches upon the fundamental role of the grand jury.'"  *Id.* at 148 (quoting *Whitehouse v. U.S.
Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995)).

Pope's first contention—that Title 18 U.S.C. § 231(a)(3) is unconstitutionally vague—is
unavailing.  *See United States v. McHugh*, 583 F. Supp. 3d 1, 24–26 (D.D.C. 2022) ("Section
231(a)(3) is not unconstitutionally vague.").  "A law is unconstitutionally vague if 'it fails to give

ordinary people fair notice of the conduct it punishes' or if it is 'so standardless that it invites

arbitrary enforcement.'" *United States v. Gossjankowski*, No. 21-cr-123 (PLF), 2023 WL

130817, at *11 (D.D.C. Jan. 9, 2023) (quoting *Johnson v. United States*, 576 U.S. 591, 595

(2015). A statute is overbroad when it penalizes substantial protected activity "relative to the

statute's plainly legitimate sweep." *Id.* at *12 (quoting *United States v. Williams*, 553 U.S. 285,

292-93 (2008)). "Rarely, if ever, will an overbreadth challenge succeed against a law or

regulation that is not specifically addressed to speech or to conduct necessarily associated with

speech." *Id.* (quoting *Virginia v. Hicks*, 539 U.S. 113, 124 (2003)).

Pope contends that § 231(a)(3) is vague and overbroad because non-violent individuals

who engaged in non-forcible conduct could be swept within the statute's ambit merely by taking

part in a protest without realizing that their conduct is unlawful. *See* Mot. Dismiss Count One at

2–3. Title 18 U.S.C. § 231(a)(3) provides that:

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere
> with any fireman or law enforcement officer lawfully engaged in the lawful
> performance of his official duties incident to and during the commission of a civil
> disorder which in any way or degree obstructs, delays, or adversely affects
> commerce or the movement of any article or commodity in commerce or the
> conduct or performance of any federally protected function . . . [s]hall be fined
> under this title or imprisoned not more than five years, or both.

18 U.S.C. § 231(a)(3). The statute thus applies only to individuals who "commit[] or attempt[]

to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer."

*Id.* The phrase "obstruct, impede, or interfere" is not unconstitutionally vague because "[a]n

ordinary person would have an intuitive understanding of what is proscribed by a ban on

obstructing, impeding, or interfering with law enforcement." *McHugh*, 583 F. Supp. 3d at 27;

*Gossjankowski*, 2023 WL 130817, at *11 (same). "As opposed to words like 'annoying,'

'indecent,' or 'unreasonable,' which condition criminal liability on individualized, subjective

judgments, 'there are specific fact-based ways to determine whether a defendant's conduct

interferes with or impedes others.'" *McHugh*, 583 F. Supp. 3d at 27 (citation omitted).  "There is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation—the latter is perfectly normal, while the former is indicative of constitutional difficulty." *Id.*  "[W]hile many of the terms in § 231(a)(3) . . . may not mean the same thing to all people, all the time, everywhere or may call for the application of a qualitative standard . . . to real-world conduct, that does not render them unconstitutional." *Id.* (cleaned up).

Additionally, contrary to Pope's assertion, the statute does not criminalize conduct without a mens rea element, *see* Mot. Dismiss Count One at 13, because "[t]he text of § 231 itself points to a requirement of obstructive intent," *McHugh*, 583 F. Supp. 3d at 27; *United States v. Williams*, No. 21-cr-618 (ABJ), 2022 WL 2237301, at *7 (D.D.C. June 22, 2022) ("[I]n other words, the statute requires obstructive intent.").  For these reasons, § 231(a)(3) cannot be applied to merely any individual engaged in a lawful protest who was not aware of a civil disorder, as Pope contends.  And the fact that Pope does not believe his conduct should be criminalized is immaterial to the due process analysis here.

Nor is the statute overbroad.  This is so because "[t]he statute plainly covers conduct, not speech." *Gossjankowski*, 2023 WL 130817, at *12 (quoting *Williams*, 2022 WL 2237301, at *6); *see also United States v. Mostofsky*, 579 F. Supp. 3d 9, 22 (D.D.C. 2021) (explaining that most courts have interpreted § 231(a)(3)'s phrase "any act to obstruct, impede, or interfere with any fireman or law enforcement officer . . . not to include speech.").  "[A]lthough some 'acts' could also serve an expressive function, and one could come up with a hypothetical scenario in which the alleged interference involved particularly obstreperous speech, the law does not require dismissing a charge merely because there is a possibility that the provision could reach

some constitutionally protected activity." *Gossjankowski*, 2023 WL 130817, at \*12 (cleaned up).

"Since Section 231(a)(3) does not 'make unlawful a substantial amount of constitutionally

protected conduct,' it is not overbroad on its face." *Id.* (cleaned up).  While it is "true that there

could be limited instances in which speaking constitutes the 'act' of interfering with a law-

enforcement officer," the statute's text "indicates that it is targeted primarily if not exclusively at

conduct . . . rather than speech." *Mostofsky*, 579 F. Supp. 3d at 22 (internal quotation marks

omitted).  Nor does the "statute make unlawful a substantial amount of constitutionally protected

conduct." *Id.* (quoting *City of Houston v. Hill*, 482 U.S. 451, 459 (1987)).

While Pope raises several hypotheticals that he contends show how § 231(a)(3) could

infringe First Amendment rights, "[t]he mere fact that one can conceive of some impermissible

applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."

*Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).  Many

more potential applications would fall within the "statute's plainly legitimate sweep." *Williams*,

553 U.S. at 292-93.  These applications would include violent conduct because "where

demonstrations turn violent, they lose their protected quality as expression under the First

Amendment." *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972).  Non-violent conduct

could also be covered, because not all such conduct would be expressive or covered by the right

to assemble.  *See United States v. Hoffman*, 334 F. Supp. 504, 509 (D.D.C. 1971) (concluding

that 231(a)(3) was "not violative of constitutional guarantees of free speech and assembly"); *see

also United States v. Sargent*, No. 21-CR-258 (TFH), 2022 WL 1124817, at \*4 (D.D.C. Apr. 14,

2022) (holding that count charging defendant with violation of § 231(a)(3) charged "conduct, not

speech," and that § 231(a)(3) did "not proscribe lawfully protected speech or activities").

Accordingly, the Court concludes that § 231(a)(3) is not overbroad and does not violate the First Amendment as applied here.

Pope separately argues that the enactment of § 231(a)(3) exceeded Congress's powers under the Commerce Clause and that, in any event, his conduct did not "directly interfere[] with commerce." *See* Mot. Dismiss Count One at 15. His arguments fail for several reasons.

As an initial matter, § 231(a)(3) does not require that a defendant's conduct *directly* interfere with commerce. Rather—as explained above—section 231(a)(3) prohibits individuals from committing "any act to obstruct, impede, or interfere with any . . . law enforcement officer" who is performing official duties during the "commission of a civil disorder" and that civil disorder "in any way or degree obstructs, delays, or adversely affects commerce . . ." 18 U.S.C. § 231(a)(3). The "affects commerce" requirement in the statute applies to the "civil disorder"— not to the defendant's "act." *See Mostofsky*, 579 F. Supp. 3d at 18 (acknowledging that the commerce requirement modifies the term "civil disorder," not "any act"). By its plain terms, therefore, a defendant need not himself cause the obstruction to commerce in order for his conduct to fall within the ambit of the statute. *See United States v. Gillespie*, No. 22-cr-60, 2022 WL 17262218, at *2 (D.D.C. Nov. 29, 2022) ("Section 231 (a)(3) is also clear that an individual charged under this provision need not have participated in the civil disorder."). Rather, a defendant must merely interfere with police who are trying to control the commerce-obstructing civil disorder. *See United States v. Pugh*, 90 F.4th 1318, 1327 (11th Cir. 2024) ("Section 231(a)(3) does not require that the criminal act itself be linked to commerce—it requires only that the civil disorder incident to and during which the criminal act occurred be linked to commerce." (quotation marks omitted)); *United States v. Grider*, 651 F. Supp. 3d 1, 13 (D.D.C. 2022) (treating interference with officers and existence of civil disorder obstructing commerce as

distinct elements); *c.f. McHugh*, 583 F. Supp. 3d at 26 (holding that government need not "prove that a defendant knew that the civil disorder in question affected interstate commerce"); *United States v. Howard*, No. 21-CR-28, 2021 WL 3856290, at *10 (E.D. Wis. Aug. 30, 2021) (reiterating Magistrate's Report that "Section 231(a)(3) is perhaps unusual . . . in that the defendant need not personally do anything that affects interstate commerce" and noting that the "civil disorder (which must affect interstate commerce) may be perpetrated wholly by third parties").

Furthermore, even if the statute required interference with commerce by a defendant, judges in this district have held that "when a person deliberately commits some act to obstruct, impede or interfere with those officers who are attempting to quell an interference with interstate commerce, that person *is* impacting interstate commerce." *Mostofsky*, 579 F. Supp. 3d at 18 (cleaned up). In sum, the plain text of the § 231(a)(3) does not require that a defendant directly obstruct commerce, it requires only that the defendant interfere with law enforcement officers who are themselves quelling a civil disorder that interferes with commerce.

Relatedly, as the Government points out, "[i]n addition to its limited power to regulate foreign and interstate commerce under U.S. Const. Article I, Section 8, Clause 3, Congress has plenary power under U.S. Const. Article I, Section 8, Clause 17, to legislate regarding the District of Columbia." Gov't's Opp'n Mots. Dismiss Counts at 8, ECF No. 297. Moreover, § 231(a)(3) applies not only to civil disorders that obstruct "commerce" but also to civil disorders that obstruct "any federally protected function." 18 U.S.C. § 231(a)(3). Judges in this district have concluded that the United States Secret Service's protection of the Vice President on January 6 was a federally protected function. *See Gossjankowski*, 2023 WL 130817, at *14. Thus, even if the statute somehow required that Pope's own conduct directly interfered with

commerce or a federally protected function, Pope makes no argument that his conduct did not

"obstruct, impede, or interfere with . . . [the] performance of any federally protected function" by

hindering the Secret Service's protection of the Vice President when he entered the Capitol.  18

U.S.C. § 231(a)(3).

"Because Congress has plenary authority to regulate activities within the District of

Columbia, the Court need not address Defendant's argument that section 231 exceeds Congress'

authority to regulate interstate commerce."  *United States v. Grider*, 617 F. Supp. 3d 42, 49

(D.D.C. 2022).  "Not only may statutes of Congress of otherwise nationwide application be

applied to the District of Columbia, but Congress may also exercise all the police and regulatory

powers which a state legislature or municipal government would have in legislating for state or

local purposes."  *Id.* at 49–50 (citation omitted).  In other words, "within the District, Congress

did not need to rely on its Commerce Clause authority [to legislate], and so it is impossible to see

how a statute regulating conduct within the District of Columbia could exceed congressional

authority under the Commerce Clause."  *Mostofsky*, 579 F. Supp. 3d at 21 (cleaned up) (quoting

*United States v. Carson*, 455 F.3d 336, 368 (D.C. Cir. 2006)).  "The prohibition of riots is, of

course, a central police power and is one of the oldest common law and statutory crimes of

Anglo-American law."  *Grider*, 617 F. Supp. 3d at 50.  "As such, the Court need not reach

Defendant's Commerce-Clause argument in order to conclude that Congress has the

constitutional authority to regulate civil disorders within the District of Columbia."  *Id.*

The Court also rejects Pope's argument that the indictment has not sufficiently alleged a

violation of § 231(a)(3).  The Court has previously held that a nearly identical indictment

sufficiently alleged a violation of § 231(a)(3), *see* Min. Order, Jan. 11, 2024, *United States v.*

*Michael Pope*, 21-cr-128 (RC) (D.D.C. Jan. 11, 2024), and the Court sees no reason to hold differently with respect to Defendant.

Pope also appears to argue that § 231(a)(3) violates the Eighth Amendment.  *See* Mot. Dismiss Count One at 17–19.  Pope's argument is meritless.  Pope provides no authority or evidence to support his contention that the penalty for a violation of § 231(a)(3) is so disproportionate to the conduct he is charged with such that the statute violates the Eighth Amendment.  *See United States v. Slatten*, 865 F.3d 767, 811 (D.C. Cir. 2017) (holding that central to Eighth Amendment "is the requirement that the punishment for crime be graduated and proportioned to the offense" but that the "proportionality principle is narrow, and [] only forbids extreme sentences that are grossly disproportionate to the crime" (internal quotation marks and citation omitted)); *see also United States v. Nordean*, No. 21-cr-175 (TJK), 2022 WL 2375810, at *2 n.2 (D.D.C. June 20, 2022) (holding that "it is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work" and that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived" (internal quotation marks and citation omitted)).

Here, the Court concludes that the punishment for a violation of § 231(a)(3) is not so grossly disproportionate to conduct covered by the statute so as to violate the Eighth Amendment.  And indeed, this Court has already sentenced several defendants charged with similar conduct under § 231(a)(3).  For the foregoing reasons, the Court **DENIES** Pope's motion to dismiss Count One.

### B. Count Two

Pope moves to dismiss Count Two, "adopt[ing] the motion to dismiss that was filed in the case of *United States v. Fischer*, 21-cr-00234, Document 54."  *See* Mot. Dismiss Count Two, ECF No. 271.  Circuit precedent forecloses Pope's arguments.

Count Two charges Pope with violating 18 U.S.C. § 1512(c)(2).  *See* First Superseding Indictment at 2, ECF No. 46.  The D.C. Circuit specifically rejected the arguments made by the defendant in *Fischer*.  *See generally United States v. Fischer*, 64 F.4th 329, 335 (2023).  Specifically, the Circuit held that § 1512(c)(2) "encompasses all forms of obstructive conduct, including . . . efforts to stop Congress from certifying the results of the 2020 presidential election."  *Id*.  *Fischer* thus confirms that the indictment in this case is sufficient.  Because the Circuit specifically rejected the arguments that Pope adopts here, Pope's arguments are foreclosed by binding precedent.  Accordingly, the Court **DENIES** Pope's motion to dismiss Count Two.

### C. Counts Three and Four

Pope moves to dismiss Counts Three and Four, which charge him with entering and remaining in a restricted building, as well as disorderly and disruptive conduct in a restricted building, in violation of 18 U.S.C. §§ 1752(a)(1) and (a)(2), respectively.  *See* Mot. Dismiss Counts Three, Four, and Six, ECF No. 278; *see also* First Superseding Indictment at 2.  Pope argues for dismissal on the basis that he did not believe the grounds of the Capitol building were restricted on January 6 and that he did not intend to engage in disorderly or disruptive conduct. *See* Mot. Dismiss Counts Three, Four, and Six at 1.

As the Government points out, Pope has made no substantive legal arguments for dismissal of these counts.  *See* Gov't's Opp'n Mots. Dismiss Counts at 13–14.  Instead, Pope merely asserts that the Government cannot prove the elements of the crimes he is charged with. "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits."  *United States v. Todd*, No. 22-cr-166 (BAH), 2024 WL 111775, at *5 (D.D.C. Jan. 10, 2024) (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)).  "Courts have repeatedly

rejected the notion that defendants can challenge indictments on the ground that they are not supported by adequate or competent evidence, criticizing the position as running counter to the whole history of the grand jury institution." *Id.* (cleaned up). "Rather, pretrial dismissal of an indictment is unwarranted on sufficiency of evidence grounds unless the material facts are undisputed and only an issue of law is presented." *Id.* (internal quotation marks and citation omitted). Here, no facts have been stipulated to by the parties and thus every material fact of the case remains in dispute. Accordingly, the Court **DENIES** Pope's motion to dismiss Counts Three and Four.

### D. Count Six

Pope also moves to dismiss Count Six, which charges him with disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D). *See* Mot. Dismiss Counts Three, Four, and Six. Similar to his argument for dismissal of Counts Three and Four, Pope appears to argue that Count Six should be dismissed because he was not aware that the Capitol Building was restricted and that his conduct at the Capitol was outside "the range of normal protest." *See* Mot. Dismiss Counts Three, Four, and Six at 2. Because Pope has made no substantive legal arguments and merely argues over his mens rea, the Court **DENIES** Pope's motion to dismiss Count Six. *See Todd*, 2024 WL 111775, at *5.

### E. Count Eight

Pope moves to dismiss Count Eight, which charges him with parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2). *See* Mot. Dismiss Counts Five, Seven, and Eight, ECF No. 280. Pope argues that because the Government had not provided him with a bill of particulars by the deadline to file pre-trial motions, the Court should dismiss Count Eight because he has been deprived of the opportunity to confront the accusation

in Count Eight in a pre-trial motion.  *Id* at 1.  He also contends that the charges "do not meet the

requirements set forth in the Sixth Amendment."  *Id.*

The Government provided Pope with a bill of particulars within two weeks of the Court's

Order requiring it to do so, *see* Order ("May Order") at 14, ECF No. 251; Gov't's Statement of

Information, ECF No. 284.  The Court did not set a deadline for the Government to provide a bill

of particulars, *see* May Order at 14, but two weeks was a reasonable amount of time for the

Government to file the bill of particulars, especially given the large number of filings in this

case.  Pope has identified no authority supporting his argument that the Government's failure to

provide him a bill of particulars before the pre-trial motions deadline warrants dismissing this

Count against him.  *See generally* Mot. Dismiss Counts Five, Seven, and Eight; *see also*

*Nordean*, 2022 WL 2375810, at *2 n.2 (holding that "it is not enough merely to mention a

possible argument in the most skeletal way, leaving the court to do counsel's work" and that

"perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent

authority, are deemed waived" (internal quotation marks and citation omitted)).  Additionally,

the Court is unable to understand what "requirements set forth in the Sixth Amendment" Pope

argues are not satisfied here.  Read charitably, it may be that Pope intends to argue that he has

the right to know the nature of the charges against him.  *See* U.S. Const. Amend. VI ("In all

criminal prosecutions, the accused shall . . . be informed of the nature and cause of the

accusation.").  If that is so, he now knows the nature of the charges against him because the

Government has filed a bill of particulars.  And his reply brief does not in any way challenge the

adequacy of Count Eight after he had received the Bill of Particulars.  There is, therefore, no

Sixth Amendment problem at this point.  Accordingly, the Court **DENIES** Pope's motion to Dismiss Count Eight.[5]

### F. Motion to Dismiss Case for Selective Prosecution

Pope has also filed a motion to dismiss the entire case against him, or alternatively to compel discovery, based on his allegation that the Government is selectively prosecuting him based on the political tenor of his journalism.  *See* Mot. Dismiss Case Selective Prosecution ("Mot. Dismiss Case"), ECF No. 270.  Pope has previously filed a similar motion for discovery or dismissal due to selective prosecution, *see* Mot. for Disc. or Dismissal, ECF No. 178, which the Court has denied, *see* May Order.  Just as that motion failed, so too does this one.

A "presumption of regularity supports . . . prosecutorial decisions" such that "in the absence of clear and convincing evidence to the contrary, courts presume that [United States Attorneys] have properly discharged their official duties."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted).  As in Pope's earlier motion, there is no evidence of discriminatory motivation here, let alone the anecdotal evidence that other courts in this district have found to be insufficient to sustain a selective prosecution claim. Pope therefore fails to overcome the presumption of regularity.

For a selective prosecution claim, "the D.C. Circuit has called for a two pronged showing that: (1) the defendant was 'singled out for prosecution from among others similarly situated' and (2) 'the prosecution was improperly motivated *i.e.*, based on race, religion or another arbitrary classification.'"  *United States v. Stone*, 394 F. Supp. 3d 1, 30 (D.D.C. 2019) (quoting

---

[5] Pope's motion is moot with respect to his request to dismiss Counts Five and Seven because the Government has moved to dismiss those Counts pursuant to Federal Rule of Criminal Procedure 48(a), *see* Gov't's Mot. Dismiss Count Five and Count Seven, ECF No. 273, and the Court grants the Government's motion to dismiss.

*Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000)). "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *Id.* at 27.

Here, Pope fails to identify any sufficiently "similarly situated" individual that the Government afforded "different treatment." *Armstrong*, 571 U.S. at 470. First, he cannot identify any individuals with different political views who engaged in the same conduct but who have not been prosecuted. As alleged in the indictment, Defendant pushed his way into the Capitol building past police officers, which demonstrates that Pope is not "similarly situated" to journalists who did not interact with law enforcement officers or push their way into the Capitol past officers. *See id.* (requiring that defendant be similarly situated). Accordingly, Pope cannot sustain a selective prosecution claim. The Court **DENIES** Pope's motion to dismiss for selective prosecution.[6]

Separately from his selective prosecution argument, Pope moves to suppress all data retrieved from his "phone and online accounts since all that data is connected to my journalism on and before January 6, 2021." Mot. Dismiss Case at 10; Mot. Suppress, ECF No. 281. However, Pope cites no authority for suppressing data connected to journalism. *See Nordean*, 2022 WL 2375810, at *2 n.2 (holding that "it is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work" (internal quotation

---

[6] Pope also argues that this case should be dismissed because the Government has not complied with Department of Justice policies. *See* Mot. Dismiss Case at 3–4. Because Pope cites no authority for his argument that this alleged failure merits dismissal, and because the DOJ policy Pope points to does not create any right to such relief, *see* 28 C.F.R. § 50.10(j); *see also In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1152-53 (D.C. Cir. 2006) ("Given the nature of the [Policy] . . ., we conclude that the [Policy] provide[s] no enforceable rights to any individuals, but merely guide[s] the discretion of the prosecutors."), the Court concludes that even assuming *arguendo* that the Government violated its policy, dismissal of Pope's case is not warranted.

marks and citation omitted)).  It is possible that Pope intends to rely on the journalist's privilege, but that privilege is not absolute.  *C.f. Branzburg v. Hayes*, 408 U.S. 665, 692 (1972) ("[W]e cannot seriously entertain the notion that the First Amendment protects a newsman's agreement to conceal the criminal conduct of his source, or evidence thereof."); *U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Companies, Inc.*, 390 F. Supp. 2d 27, 32 (D.D.C. 2005) ("News gatherers are not entitled to an absolute privilege. . . .  In criminal cases, for example, the strong public interest in law enforcement can readily overcome the privilege.").  Because Pope lacks any basis for suppressing data related to his journalistic activities—assuming his activities count as such—the Court **DENIES** Pope's motion to suppress.

### G. Motion to Dismiss Case Due to Missing Evidence

Pope seeks dismissal of his case yet again, this time based on the Government's "fail[ure] to seek and preserve bodycam recordings from [his] arrest."  Mot. Dismiss Case Missing Evidence at 1, ECF No. 275.  This motion relates to the fact that the Government has not been able to produce body camera footage of Pope's arrest because that footage was deleted by the Topeka, Kansas, Police Department per that department's three-year records retention policy.  *See* Gov't's Opp'n Mot. Dismiss Case Due to Missing Evidence at 3–4 ("Gov't's Opp'n Mot. Missing Evidence"), ECF No. 298.  In particular, Pope argues that Local Criminal Rule 5.1(b), (c), and (e) as well as the Fifth Amendment required the Government to seek out and preserve the body camera recordings of his arrest from Kansas law enforcement and that the proper remedy for the Government's failure to do so is dismissal.  *See* Mot. Dismiss Case Missing Evidence at 1.

Pope's argument is fruitless.  To establish a due process violation resulting from the destruction of evidence, a defendant must prove "that the government failed *in bad faith* to preserve *material* and *potentially exculpatory* evidence."  *United States v. McKie*, 951 F.2d 399,

403 (D.C. Cir. 1991) (emphasis in original) (citing *Arizona v. Youngblood*, 48 U.S. 51, 58

(1988)); *see also United States v. Sheppard*, 21-cr-203 (JDB), 2022 WL 17978837, at \*12

(D.D.C. Dec. 28, 2022) (same).  "[N]either negligence nor incompleteness violates the Due

Process Clause."  *United States v. Taylor*, 312 F. Supp. 3d 170, 179 (D.D.C. 2018); *see also*

*Youngblood*, 48 U.S. at 58 (negligent failure to refrigerate biological evidence taken from victim

not bad faith).  "The Due Process Clause's proscription is hence confined to 'only those cases'

where the evidence is material or the police's conduct suggests there is exonerating evidence."

*Sheppard*, 2022 WL 17978837, at \*12.  And "cases discussing this standard squarely place the

burden on the defendant to show bad faith, including that the police had knowledge of the

exculpatory value of the destroyed evidence."  *Id.*

        Here, the Court concludes that the Government did not act in bad faith when it failed to

preserve and produce the body camera footage that Pope seeks.  This is so because local police

department officers—rather than federal law enforcement —wore the body cameras during

Pope's arrest.  *See* Gov't's Opp'n Mot. Missing Evidence at 3.  And the FBI agents involved in

the arrest did not themselves record the arrest.  *Id.*  Given that the Topeka Police Department

officers recorded the body camera footage, it makes sense that the Topeka Police Department

housed that footage.  As a result, a miscommunication occurred when the AUSA assigned to this

case asked the FBI about the existence of body camera footage of the defendant's arrest and the

FBI agent (who was not present for the defendant's arrest) understood the AUSA to be referring

to footage from the FBI (of which there was none).  It was not until later that the government and

the FBI realized that the Topeka Police Department officers might have activated their body

cameras during Pope's the arrest.  And, at that point, the footage was already deleted by the

Topeka Police Department.  While unfortunate, this series of events does not evince bad faith on

the part of the Government.  At most, it shows that the Government was negligent in its

preservation obligations.  The lack of bad faith by the government is further borne out by the fact

that the body camera footage was deleted at the end of the Department's three-year retention

period and not earlier.[7]  Because the Government did not act in bad faith in failing to ask the

Topeka Police Department to preserve the body camera footage, the Court declines to dismiss

the case against Defendant.  Accordingly, Pope's motion to dismiss due to missing evidence is

**DENIED**.

### IX.     Motion for Lodging and Travel Expenses (ECF No. 269)

Pope seeks to have the government pay for "all expenses for travel, lodging and food

during all mandatory Court appearances in the District of Columbia."  *See* Mot. Lodging and

Travel Expenses at 1, ECF No. 269.  The provision of travel expenses for criminal defendants is

governed by 18 U.S.C. § 4285.  The statute provides that the Court "may, when the interests of

justice would be served thereby and the United States judge or magistrate judge is satisfied, after

---

[7] Additionally, it is not clear that the body camera footage was "material and potentially exculpatory evidence."  *McKie*, 951 F.2d at 403.  Pope's argument appears to be that the body camera footage is material because it would show that the law enforcement officers who arrested him and seized his phone violated the warrant by compelling him to enter his passcode.  *See* Mot. Dismiss Case Missing Evidence at 1, 7–8.  However, the Government asserts that "[e]ven assuming that officers inappropriately compelled the defendant to provide his passcode, law enforcement would [have] inevitably been able to extract the contents of the phone without it," and in fact that law enforcement agents did actually bypass the phone's passcode.  *See* Gov't's Opp'n Mot. Missing Evidence at 6–7.  And "where evidence would have been inevitably discovered by the police, regardless of police error, then the evidence will not be suppressed."  *United States v. Alston*, 832 F. Supp. 1, 4 (D.D.C. 1993) (citing *Nix v. Williams*, 467 U.S. 431 (1984)); *see also* Order, at 6, *United States v. Joseph*, No. 23-cr-35 (RC), ECF No. 190 (D.D.C. May 23, 2024) ("[E]ven assuming arguendo that the Government unlawfully coerced [disclosure of a] passcode to Defendant's phone, the Government has met its burden of showing—by a preponderance of the evidence—that evidence contained on the phone (and any evidence derived therefrom) would have been inevitably discovered by lawful means.").  Thus, the inevitable discovery doctrine provides an alternative basis that the materials extracted from Pope's telephone need not be suppressed.  And Defendant does not describe any other evidence that must be suppressed as a result of the lost body camera footage.

appropriate inquiry, that the defendant is financially unable to provide the necessary

transportation to appear," direct the United States marshal to arrange or pay for a defendant's

travel from another judicial district and supply him with funds for subsistence expenses.  18

U.S.C. § 4285.

Section 4285 requires the Court to make an adequate inquiry that Pope is financially

unable to provide the necessary transportation to appear.  Judges in this District have made this

inquiry by requiring that defendants submit a sworn statement and supporting documentation

showing that they are unable to pay for transportation.  *See* Min. Order, Nov. 21, 2022, *United

States v. Adams*, No. 21-cr-212 (ABJ) (D.D.C. Nov. 21, 2022); Order ("*Bacon* Order"), *United

States v. Bacon*, No. 21-cr-488 (CRC), ECF No. 54 (D.D.C. Nov. 8, 2022); Min. Order, Nov. 7,

2022 ("*Rodriguez* Min. Order"), *United States v. Rodriguez*, No. 21-cr-483 (DLF) (D.D.C. Nov.

7, 2022).  Thus, if Pope would like funding for travel, he must file a CJA Form 23 financial

affidavit, attached documentary support for each of the attestations in the affidavit, and a sworn

declaration describing how he intends to travel to Washington, D.C.

Moreover, the Court agrees with other judges in this District that § 4285 does not provide

for the payment of expenses during or after trial.  *See Bacon* Order (explaining that "18 U.S.C. §

4285 authorizes funding only for travel to trial and subsistence required during that travel" but

that "Defendant would not be entitled to funds during trial or for travel accommodations to

return to" his home state); *see also Rodriguez* Min. Order ("The statute, however, only provides

for travel 'to the place where [the defendant's] appearance is required.'" (citation omitted)); *c.f.

United States v. James*, 762 F. Supp. 1, 2 (D.D.C. 1991) ("[T]he statute provides for a one way

ticket, notwithstanding the possible hardship to the defendant. That Congress has so limited

payment of costs is borne out by the fact that, while the statute authorizes payment to travel to

the court, once at the site of the court, the statute does not authorize payment of subsistence during the course of the trial or hearing.").  Because the statute does not provide for the cost of Pope's lodging in D.C. and Pope points to no other authority authorizing the Court to provide for those expenses, the Court cannot provide Pope with lodging expenses during his stay in D.C. Accordingly, Pope's motion is **DENIED**, but he may re-file with the required affidavit, exhibits, and declaration seeking travel expenses to the Court.

### X.      Motion to Compel Discovery on Individual Who Pushed Defendant (ECF No. 272)

Pope seeks to compel the Government to provide discovery on an individual who he alleges pushed him into the Capitol.  *See* Mot. Compel Disc. at 1, ECF 272.  As told by Pope, Pope has requested from the Government on several occasions any information the Government had about the identity of an individual who Pope says pushed him.  *See id.* at 2–3.  The Government responded that it has not been able to identify that individual.  *See id.*  Nevertheless, Pope argues that the Government has powerful facial recognition software that it can use to identify the individual and he also speculates that the unidentified individual may be a government operative.  *Id.* at 1.  As such, he believes the Government must provide him with the identity of that individual.

"Under the Constitutional doctrine of *Brady v. Maryland*, 373 U.S. 83 (1963) and the statutory regime of Federal Rule of Criminal Procedure 16, defendants bear the burden of establishing their entitlement to the information they demand."  *Nichols*, 2023 WL 6809937, at *1.  Among other requirements, to establish a *Brady* obligation, the evidence must be in the Government's possession.  *See United States v. Trie*, 21 F. Supp. 2d 7, 23 (D.D.C. 1998).  This means that the prosecution "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."  *Kyles v. Whitley*, 514 U.S.

419, 437 (1995).  Similarly, under Federal Rule of Criminal Procedure 16, the Government must "permit the defendant to inspect and to copy . . . documents, data, [and] photographs . . . *if the item is within the government's possession, custody, or control*" and the item is material to preparing the defense.  Fed. R. Crim. P. 16 (emphasis added).

Here, Pope has not shown that the identity of the individual he alleges pushed him is in the Government's possession or that the information is known to others acting on the Government's behalf.  Rather, Pope merely speculates that the Government's technology should allow it to identify that individual.  *See* Mot. Compel Disc. at 1.  The Government has represented to the Court that it is aware of Pope's request for this information but says that it has "no discoverable information" at this point.  "Normally," courts "accept the government's representations as to what documents in its possession are 'material.'"  *Lloyd*, 992 F.2d at 352. The Court will accept the Government's representation that it does not currently know the individual's identity, but the Court reminds the Government of its *Brady* obligation to obtain that information if it is within possession of an agent working on behalf of the Government.  And to the extent that the Government possesses information on the identity of the individual who Pope alleges pushed him, the Government must turn over that information within a reasonable time after it comes across such material, though the Government "may apply to the Court for a modification of the requirements of" Local Criminal Rule 5.1.  LCrR 5.1(d).  However, because the Government currently represents that it has no information about the individual, the Court cannot compel the Government to produce what it does not have.  Accordingly, Pope's motion to compel discovery on the individual who he alleges pushed him is **DENIED**.

### XI.    Motion for Assorted Requests and Discovery (ECF No. 274)

Pope has filed this motion to compel the Government to provide him with five categories of discovery: (1) discovery Pope has previously requested from the Government via email; (2)

materials from Pope's self-report date; (3) a video Pope alleges was filmed by alleged FBI informant James Ehren Knowles; (4) information possessed by Darrel Wayne Goins; and (5) all footage of Pope from the Senate Carriage Doors area that is in the Government's possession. *See generally* Mot. Assorted Disc. at 1–4, ECF No. 274.  The Government has represented to the Court that it will timely provide Pope with discovery to which he is entitled but has not otherwise opposed Pope's motion.

The Court must deny Pope's motion with respect to his request that the Court "compel the government to respond to all outstanding discovery requests made by email."  *See* Mot. Assorted Disc. at 1.  As the Court has already explained, "[u]nder the Constitutional doctrine of *Brady v. Maryland*, 373 U.S. 83 (1963) and the statutory regime of Federal Rule of Criminal Procedure 16, defendants bear the burden of establishing their entitlement to the information they demand."  *Nichols*, 2023 WL 6809937, at *1.  Pope's request here does not explain what information he seeks, let alone why he is entitled to it.  Without knowing the details of Pope's emails to the Government and what discovery those emails seek, the Court cannot conclude that the Government has a *Brady* or Rule 16 obligation to disclose that information.

Next, Pope's explanation for why he requires materials that the Government possesses containing the date of his self-reporting is sparse, but the Court concludes that he is not entitled to that discovery.  For *Brady* to apply, the evidence at issue (1) must be favorable to Pope, either because it is exculpatory, or because it is impeaching, (2) must be in the Government's possession, and (3) must be material.  *See Nichols*, 2023 WL 6809937, at *4.  Similarly, for Federal Rule of Criminal Procedure 16 to apply, the evidence must be within the Government's custody or control and helpful to preparing the defense or intended by the Government for use in its case in chief.  *See* Fed. R. Crim. P. 16(a)(1)(E).  Pope's motion does not explain how

information about his self-reporting to the Government is either relevant or material to his case, or what he hopes to use this information for. Because Pope does not explain how this information is required under either the *Brady* standard or Rule 16 standard, the Court will not compel the Government to produce it.

Pope's motion also asks the Court to compel the Government to produce video footage taken by James Ehren Knowles. *See* Mot. Assorted Disc. at 2. Pope says he needs this footage because it depicts his presence in the Capitol. *Id.* This information appears likely to help Pope prepare his defense because it presumably depicts his conduct in the Capitol on January 6. Accordingly, to the extent that the Government has this video footage in its possession, it must disclose that footage to Pope.

Pope's motion also seeks information about Darrell Wayne Goins who, Pope says, picked up Pope's hat in the Senate Carriage Doors area. *See id.* at 2. In particular, Pope seeks from the Government "any relevant information Goins may have." *See id.* To the extent that Goins (a) has "notes, communications, or other information related to how events transpired at the Senate Carriage Doors" area and (b) the Government now possesses that information, the Government is obligated to disclose that information to Pope. The Court observes, however, that it is unclear from Pope's motion whether Goins has any relevant information or whether the Government has that information within its possession.

Lastly, Pope requests "all footage of [Pope] in [the Government's] possession that has not already been provided in discovery." *Id.* at 3. Video footage of Pope's conduct in the Senate Carriage Doors area is likely to be relevant and material to the preparation of Pope's defense because he can use that evidence to display his conduct in that area. Accordingly—to the extent

the government possesses additional video footage depicting Pope in the Senate Carriage Doors area—the Government is obligated to disclose such information to Pope.

To summarize, the Court cannot determine what discovery Pope has sought in his emails to the Government and so denies Pope's motion to the extent that it broadly seeks to compel the Government to provide discovery he has asked for via email. And the Court cannot determine what relevance or materiality the information about Pope's self-reporting might have and so will not compel that information. However, the Court grants Pope's motion with respect to video footage taken by James Ehren Knowles, information from Darrell Wayne Goins, and videos taken of Pope in the Senate Carriage doors area—to the extent that the Government possesses such materials. The Court **GRANTS IN PART** and **DENIES IN PART** Pope's motion for assorted discovery.

### XII.    Motion for Discovery of Records Related to the Destruction of Body Camera Recordings (ECF No. 276) and Motion to Suppress (ECF No. 283)

Pope moves to suppress evidence that he alleges was illegally seized from him and additionally asks the Court to order various government agencies to investigate why body camera recordings of his arrest were not preserved as evidence. *See* Mot. Disc. Records Related to Destruction of Body Camera Recordings ("Mot. Disc. Records") at 1, 4, ECF No. 276. As alluded to above, the Government has not been able to produce body camera footage of Pope's arrest because that footage was deleted after three years by the Topeka Kansas Police Department. *See* Gov't's Opp'n Mot. Missing Evidence at 3.

"To prevail on a motion to suppress evidence as the fruit of a Fourth Amendment violation, a defendant must first establish that the search or seizure was illegal." *United States v. Holmes*, 505 F.3d 1288, 1292 (D.C. Cir. 2007). However, "where evidence would have been inevitably discovered by the police, regardless of police error, then the evidence will not be

suppressed." *United States v. Alston*, 832 F. Supp. 1, 4 (D.D.C. 1993) (citing *Nix v. Williams*, 467 U.S. 431 (1984)).  Thus, when evidence would have been discovered "in [the] normal course" of an investigation, *id.*, its "initial[] detect[ion] as a result of unlawful government conduct" is not grounds to suppress it, *United States v. Redrick*, 48 F. Supp. 3d 91, 107 (D.D.C. 2014); *see also United States v. Raymond*, 21-cr-380 (CKK), 2023 WL 7005341, at *12 (D.D.C. Oct. 24, 2023) ("The inevitable discovery doctrine applies, when, by a preponderance of the evidence, that even without the unlawful conduct, the evidence sought to be admitted would have been discovered anyway.").

Here, Pope has not established that the Government illegally seized information on his phone.  The lawful warrant executed by police officers authorized those officers "to obtain from William Alexander Pope . . . the compelled display of any physical biometric characteristics . . . necessary to unlock" his phone.  *See* Gov't's Opp'n Mot. Missing Evidence Ex. 1 at 5, ECF No. 298-1.  Officers were therefore authorized to compel Pope to unlock his phone, provided they did so using his biometric features, rather than demanding his passcode.  And there is no indication that officers compelled Pope to reveal his passcode.

Moreover, even if Pope had been compelled to unlock his phone using a passcode, suppression would not be warranted.  This is so because the Government would have inevitably retrieved the phone's contents even without that passcode.  *See Raymond*, 2023 WL 7005341, at *12 (no suppression where government would have inevitably discovered evidence); Order, at 6, *United States v. Joseph*, No. 23-cr-35 (RC), ECF No. 190 (D.D.C. May 23, 2024) ("The Court need not determine whether law enforcement unlawfully coerced . . . the passcode for Defendant's phone because the Court agrees with the Government that officers would have inevitably gained access to the contents of Defendant's phone by lawful means regardless of any

alleged coercion.").  As the Government points out, the detective who processed Pope's phone was able to extract the data from Pope's phone without entering a passcode by using specialized computer software.  *See* Gov't's Opp'n Mot. Missing Evidence at 6–7.  The fact that an officer actually managed to retrieve the data without the passcode shows that the Government would have inevitably retrieved the data regardless of whether Pope unlocked his phone using the passcode.  Accordingly, the Court **DENIES** Pope's motion to suppress.  *See Nix*, 467 U.S. at 444 n.5 ("[I]nevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification.").

Pope also requests that the Court "order all agencies involved in my case, including Kansas law enforcement agencies who participated in my arrest, to ascertain the entire circumstance by which the bodycam recordings from my arrest were not preserved as evidence, and to permit me to inspect and copy all related records."  Mot. Disc. Records at 1.  In particular, Pope requests nineteen categories of discovery.  *Id.* at 2–3.

The Court determines that the following categories are relevant to Pope's case, material, and within the Government's possession such that the Government has an obligation to disclose them: (1) The names of all agencies that participated in Pope's arrest; (2) the identities of all agents and officers who were on scene for Pope's arrest; (3) any audio or video recordings from Pope's arrest that can be retrieved or salvaged; and (4) all information regarding whether recordings were retained by other agencies or Axon.  These categories of discovery may help Pope to challenge the legality of his arrest or impeach witnesses by allowing him to subpoena officers or otherwise obtain additional information about his arrest.  Accordingly, the Government must produce this information to Defendant.

By contrast, the other categories of discovery Pope seeks do not appear relevant.  This is so because they relate to the preservation of the video of his arrest.  As the Court concluded above, the deletion of body camera video of Pope's arrest appears to have been conducted according to the Topeka Police Department's document retention policy and not undertaken by the Government in bad faith.  Moreover, evidence about the video footage's deletion does not appear material to any issue in Pope's case.  Accordingly, the Government is not obligated to produce that information.  For the foregoing reasons, Pope's motion is **GRANTED IN PART** and **DENIED IN PART**.

### XIII.   Motion to Continue Trial Date (ECF No. 237)

Pope moves to continue the date of his trial.  *See generally* Mot. Continue Trial Date, ECF No. 237.  Pope contends that continuance of his trial is merited because, he says, (1) the Government has failed to respond to repeated discovery requests, (2) some of his pre-trial motions remain pending, (3) his standby counsel has limited time to assist him, (4) he desires to attend a Capitol walkthrough, and (5) the Supreme Court's pending decision in *United States v. Fischer*, No. 23-5572, is relevant to his case.  *Id.* at 1, 15.  In response, the Government argues that Pope's reasons do not merit continuance.  *See* Gov't's Opp'n Mot. Continue Trial Date at 1, ECF No. 250.

"The ultimate question in evaluating a motion for continuance is whether a continuance is reasonably necessary for a just determination of the cause."  *United States v. Zink*, No. 21-CR-191 (JEB), 2023 WL 5672555, at *1 (D.D.C. Sept. 1, 2023) (internal quotation marks omitted) (quoting *United States v. Ashton*, 555 F.3d 1015, 1020 (D.C. Cir. 2009*)*).  In evaluating a defendant's request to continue trial, the Court must "consider the justifications offered by the party seeking a continuance, balancing them against the judicial system's interest in expeditious proceedings."  *United States v. Poston*, 902 F.2d 90, 96 (D.C. Cir. 1990).  The defendant's

justifications may include the need to obtain further evidence and "trial judges must balance the

right of an accused to have compulsory service for obtaining witnesses in his favor with the

government's interest in seeing guilt or innocence promptly adjudicated." *Ashton*, 555 F.3d at

1020.  Among the factors the Court must weigh when considering a motion for a continuance

are:

> the balanced convenience or inconvenience to the litigants, witnesses, counsel,
> and the court; whether the requested delay is for legitimate reasons, or whether it
> is dilatory, purposeful, or contrived; whether the defendant contributed to the
> circumstance which gives rise to the request for a continuance; . . . [and] whether
> denying the continuance will result in identifiable prejudice to defendant's case,
> and if so, whether this prejudice is of a material or substantial nature.

*United States v. Gantt*, 140 F.3d 249, 256 (D.C. Cir. 1998) (quoting *United States v. Burton*, 584

F.2d 485, 490–91 (D.C.Cir.1978)).  Due to the nature of the inquiry, trial judges "enjoy[ ] great

discretion in ruling on a motion for a continuance." *United States v. Gantt*, 140 F.3d 249, 256

(D.C. Cir. 1998) (citation omitted); *United States v. Eiland*, 738 F.3d 338, 355 (D.C. Cir. 2013)

("Trial judges necessarily require a great deal of latitude in scheduling trials.  Not the least of

their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the

same time, and this burden counsels against continuances except for compelling reasons."

(quoting *Morris v. Slappy*, 461 U.S. 1, 11 (1983)).

A continuance is not warranted here.  To begin with, this trial has been scheduled for

over nine months.  *See* Mot. Hearing (Sept. 15, 2023); *see also* Transcript of Status Conference

at 8–10, ECF 193.  Moving the trial at this point would be difficult given the Court's full trial

calendar.  Additionally, at the September 15, 2023, hearing, the Assistant United States Attorney

prosecuting this case informed the Court that her detail with the office is anticipated to end

shortly after when this trial is scheduled.  *See* Transcript of Status Conference at 9 (Ms. Moran

stating that she is "set to leave at the beginning of September").  Although additional government

attorneys have been assigned to prosecute this case, it would certainly inconvenience the Government to have to go froward without the attorney most familiar with the case.  Given the many months that Pope has had to prepare for trial, the inconvenience to the Government, and the inconvenience to the Court, the Court concludes that the balance weighs against continuance.

The Court also finds that the reasons for the requested delay here do not warrant a continuance.  Contrary to Defendant's assertion, the Government has responded to Pope's discovery requests and represents that it will continue to do so.  As the Court has explained in previous Orders, the discovery produced by the Government includes abundant material even beyond the Government's disclosure obligations.  The fact that Pope would like additional discovery, much of which, as set forth above, he is not entitled to under *Brady* and the Rules of Criminal Procedure, does not change the fact that the Government has already produced significant discovery.  It is understandable that some of the Government's discovery production has been delayed given the volume of Pope's requests.  And Pope has certainly spent an inordinate amount of time pursuing issues that are neither relevant nor material to the charges pending against him.  Much of that time has not been well-spent but, to the extent it has delayed his trial preparations, that is a problem of his own making.

Furthermore, Pope's argument that many of his pre-trial motions remain pending is unavailing because this Order resolves those pending motions.  Additionally, the number of pending motions is attributable to Pope's own conduct in filing duplicative motions and motions for reconsideration.  Indeed, even prior to this Order, the Court resolved a significant number of Pope's motions.  Moreover, Pope's argument that his standby counsel is too busy is speculative.  Pope's standby counsel is aware of the trial date in this case and the Court expects standby counsel to be ready to assist Pope.  Pope's desire to attend a Capitol walkthrough is also an

insufficient reason to delay this long-scheduled trial.  The Court will address the issue of a Capitol site visit by separate order resolving the Government's motion to clarify, ECF No. 243. Finally, the Supreme Court's disposition of *Fischer* is not an adequate reason to delay trial here. *See*, *e.g.*, *United States v. Spencer*, No. 21-cr-147 (CKK), 2024 WL 578953, at *4 (D.D.C. Feb. 13, 2024) (denying stay pending Supreme Court's disposition of *Fischer* because defendant was charged with other counts); *see also* Mem. Op., *United States v. Carnell*, No. 23-cr-139 (BAH) (D.D.C. Jan. 4, 2024), ECF No. 75 (denying motion to stay); *United States v. Warnagiris*, No. 21-cr-382 (PLF), 2023 WL 6926491, at *2 (D.D.C. Oct. 19, 2023) (denying request to hold case in abeyance pending resolution of *Fischer*); Min. Order, Dec. 27, 2023 *United States v. Michael Marroquin*, No. 23-cr-338 (JEB), (D.D.C. Dec. 27, 2023) ("Given that Defendant is charged with multiple other counts and that he will not be sentenced (if at all) before the Supreme Court decides *United States v. Fischer*, the Court ORDERS that his Motion to Stay is DENIED."). Pope is charged with counts unrelated to that implicated by *Fischer* and, accordingly, *Fischer* is not dispositive to Pope's case.[8]

Ultimately, the Court concludes that a continuance is not necessary to avoid prejudice to Pope.  Defendant has had many months to prepare for trial.  And as the Court has explained in numerous Orders, the Government has been complying with its discovery obligations and represents that it will continue to do so.  Moreover, the interests of the Government and the

---

[8] Pope contends that he will not be prepared for trial in July even though he is working long hours to prepare.  *See* Supp. Mot. Continue, ECF No. 263.  Pope has had almost ten months. That time is more than enough to prepare for trial, *see Eiland*, 738 F.3d at 355 (holding that "two months would provide [defendant] with enough time to prepare for trial, particularly because he had the advantage of being able to review the proceedings of" earlier trial on same charges), and, in the Court's view, Pope would be better prepared for trial if he spent his time focusing on evidence relevant to his specific conduct rather than evidence that the Court has held is irrelevant to the charges against him.  If defendants could delay trial by focusing on irrelevant evidence and then claiming that they are unprepared, defendants could delay trial indefinitely.

Court weigh against continuance.  Accordingly, the Court **DENIES** Pope's motion for a continuance.

\*  \*  \*

For the reasons stated above, it is hereby **ORDERED** that Defendant's motion for early disclosure of discovery materials (ECF No. 249) is **DENIED**; Defendant's motion to compel raindrop theory discovery (ECF No. 252) is **DENIED**; Defendant's motion to clarify and reconsider (ECF No. 253) is **DENIED**; Defendant's motion to reconsider (ECF No. 254) is **DENIED**; Defendant's motion to reconsider (ECF No. 255) is **DENIED**; Defendant's motion to compel disclosure of all uniformed officers who were material witnesses (ECF No. 262) is **DENIED**; Defendant's motion for expanded public access to trial (ECF No. 265) is **DENIED**; Defendant's motion to change venue (ECF No. 266) is **DENIED**; Defendant's motion to compel the government to identify evidence that has been altered or destroyed (ECF No. 267) is **DENIED**; Defendant's motion to dismiss Count One (ECF No. 268) is **DENIED**; Defendant's motion to dismiss case due to selective prosecution (ECF No. 270) is **DENIED**; Defendant's motion to dismiss Count Two (ECF No. 271) is **DENIED**; Defendant's Motion to Dismiss case due to missing evidence (ECF No. 275) is **DENIED**; Defendant's motion to dismiss Counts Three, Four, and Six (ECF No. 278) is **DENIED**; Defendant's motion to dismiss Counts Five, Seven, and Eight (ECF No. 280) is **DENIED**; Defendant's motion for lodging and travel expenses (ECF No. 269) is **DENIED**; Defendant's motion to compel discovery on the man who pushed Defendant (ECF No. 272) is **DENIED**; Defendant's motion for assorted discovery requests (ECF No. 274) is **GRANTED IN PART** and **DENIED IN PART**; Defendant's motion for discovery of records related to destruction of body camera footage (ECF No. 276) is **GRANTED IN PART** and **DENIED IN PART**; Defendant's motion to continue trial date (ECF

No. 237) is **DENIED**; Defendant's Motion to Suppress (ECF No. 281) is **DENIED**; Defendant's

Motion to Suppress (ECF No. 283) is **DENIED**; the Government's cross-motion to amend the

Pretrial Order (ECF No. 264) is **GRANTED;** and the Government's motion to dismiss Counts

Five and Seven (ECF No. 273) is **GRANTED**.

      **SO ORDERED**.

Dated:  June 18, 2024                                  RUDOLPH CONTRERAS
                                                  United States District Judge