UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-cr-128 (RC) |
| | : | |
| WILLIAM POPE, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR SANCTIONS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, responds to the motion filed by the defendant, William Pope, seeking sanctions for what he characterizes as "unprofessional" "misconduct" by the Assistant United States Attorneys handling his case. ECF No. 312 ("Mot." or the "Motion"). At no time has any member of the prosecution team engaged in any misconduct; the defendant's grievances do not warrant the imposition of sanctions. The Motion should therefore be denied.

Although the defendant makes sweeping assertions regarding the government's conduct in his case, his complaints break down into three categories: (1) the government's failure to preserve and obtain body-worn camera ("BWC") footage from his February 12, 2021 arrest; (2) the government's responses to his various and ongoing requests and emails; and (3) the government's erroneous inclusion of a phrase describing him as participating in assault on law enforcement officers in a filing. The defendant contends that, based on this conduct, the AUSAs have violated Rules 3.4(a) and (d), 3.8(b), and 8.4(a), (c), and (d) of the District of Columbia Rules of Professional Conduct.[1] The defendant's claims are meritless.

---

[1] The defendant alleges violations of the American Bar Association's Model Rules of Professional Conduct 3.4(a) and (d) and 3.8(a). The ABA Rules are models, however; D.C. Rules 3.4(a) and (d), and 3.8(b) are the most analogous to the ABA rules the defendant cites.

1

A. **BWC Footage**

As the government set forth in its Response to the Defendant's Motions to Suppress Evidence Obtained from his Cellphone and to Dismiss the Indictment (ECF No. 303), the defendant was arrested at his residence on February 12, 2021. Four FBI agents and task force officers ("TFOs") from the Topeka Police Department ("TPD") participated in the arrest. Two additional TPD officers took custody of the defendant and transported him to the Shawnee County Department of Corrections. During the course of the defendant's arrest, law enforcement seized the defendant's cellphone pursuant to a search warrant. ECF No. 303 at 1-2.

On October 11, 2023, the defendant sent an email to the assigned AUSA requesting BWC from his arrest. Counsel for the government discussed the request with the FBI case agent, who was not present for the defendant's arrest. They determined that FBI agents do not wear BWC during arrests and therefore believed that there was no footage to produce to the defendant. *Id.* at 2, 8. On April 29, 2024, the AUSA followed up with the FBI regarding BWC footage of the defendant's arrest, and, for the first time, learned that TPD officers might have been wearing BWC. The case agent then contacted TPD and learned that the two TPD officers who had transported the defendant from his arrest had worn BWC and that the BWCs had made recordings whose length was consistent with an arrest and transport. On February 12, 2024, these recordings were flagged for deletion at the end of a three-year retention period -- the normal course of TPD practice -- and were deleted a week later. *Id.* at 2-3. The defendant now claims that the failure to preserve these BWC recordings prior to deletion warrants sanctions – suspension from the practice of law and dismissal of the charges against him – under the D.C. Rules of Professional Conduct.

Rule 3.4(a) prohibits lawyers from "[o]bstruct[ing] another party's access to evidence or alter[ing], destroy[ing], or conceal[ing] evidence, or counsel[ing] or assist[ing] another person to

2

do so, if the lawyer reasonably should know that the evidence is or may be the subject of discovery or subpoena in any pending or imminent proceeding." As relevant here, Rule 3.4(d) prohibits lawyers from, "[i]n a pretrial procedure, . . . fail[ing] to make reasonably diligent efforts to comply with a legally proper discovery request by an opposing party." Under Rule 8.4, it is misconduct for a lawyer to "(a) [v]iolate or attempt to violate the Rules of Professional Conduct," or "(d) [e]ngage in conduct that seriously interferes with the administration of justice."

Here, none of the government attorneys obstructed access to or altered, destroyed, or deleted evidence. The TPD BWC footage was deleted in accordance with local policy and procedure, untethered to any action prompted by the Department of Justice. The government did nothing to expedite this process or to prevent the defendant from requesting the footage from TPD, which he was permitted to do. *See* Kan. Stat. Ann. § 45-254 ("A person who is a subjection of [a body camera] recording" "may make a request to view [the] video recording. . . . The law enforcement agency shall allow the person to . . . view the requested video recording within 20 days after making the request"). Nor did the government fail to make efforts to fulfill the defendant's request. To the contrary, after the defendant contacted the AUSA, the AUSA discussed the request with the FBI and believed in good faith, albeit incorrectly, that there was no material responsive to the request.

The defendant faults the government for not seeking clarification regarding his request. Mot. at 3-4. But the government did not misunderstand the defendant's request. Rather, the AUSA and the case agent believed that there was no footage to provide in response to it. While the defendant complains that the government did not "even give a courtesy acknowledgement of the request or convey that they had tried but failed," *id.* at 4, he does not explain how either proposed response would have altered the outcome. This honest miscommunication regarding

3

the video footage did not intentionally, or even recklessly obstruct the defendant's access to evidence – evidence to which he had legal access independent of Rule 16 discovery.[2]

### B.  Additional Requests by the Defendant

The defendant also claims that the government has a "track record" of not responding to his emails and requests.  Mot. at 3.  While the defendant's primary focus is on his October 2023 email regarding the BWC footage discussed above, he also references several other requests.  *Id.* (citing ECF No. 237 at 11-15).  As this Court is aware, the defendant has made an incredibly large number of requests for materials throughout the pendency of his case.  Some of those requests are for materials that are discoverable pursuant to Federal Rule of Criminal Procedure 16 or other disclosure obligations.  Many are not.  And many of these requests have since been resolved. *See, e.g.,* ECF Nos. 239 (order denying certain of the defendant's motions to compel production of materials), 250 at 2-3 (listing defendant's request that have been resolved); 257 (notice to Court that press portal materials were available in the Relativity database).  The government will continue to review and assess the defendant's requests and respond accordingly.

The defendant also highlights delay in responding to the defendant's May 29, 2024 email request for a non-public walkthrough of the Capitol on July 10 or 11, 2024 as an example of "government unprofessionalism."  Mot. at 4.  As the Court is aware, at the time of the defendant's email, the government had already filed a motion for clarification of the Court's April 25, 2024 Minute Order granting the defendant permission to travel to Washington, D.C. for a walkthrough of the Capitol the week of July 8, 2024 and explaining that no walkthrough was currently scheduled for that time period.  ECF No. 243.  In addition, at the time of the defendant's

---

[2]  As discussed in ECF No. 303, even were the footage available, it would not affect the outcome of any suppression motion by the defendant and the defendant has not identified any purpose for which he would seek to introduce the footage at trial.

4

May 29 email, the AUSA who was primarily responsible for communicating with USCP attorneys was out of the country and did not return until June 4, 2024.  The AUSA responded on June 6, 2024, explaining – consistent with the Motion for Clarification – that no walkthrough was scheduled in July and providing further information about the alleged "private Capitol tour" that defendant claimed had occurred in other cases.  *See* ECF No. 256 at 9.  After the defendant responded by accusing the government of being in contempt of a court order, the government filed a supplement to its Motion for Clarification.  ECF No. 321.  The government has continually sought to address the defendant's extensive demands by evaluating the law and facts relevant to each.  This request was no different.

### C. Characterization of the Defendant's Conduct

Finally, the defendant claims that the government has violated D.C. Rules of Professional Conduct 3.8(b) and 8.4(c) by referring to the defendant as one member of a mob who assaulted law enforcement officers: "The January 6, 2021 attack on the United States Capitol by a mob of thousands, some of whom—including the Defendant—assaulted law enforcement officers, was clearly a 'civil disorder.'" Mot. at 1; ECF No. 297 at 7.  Rule 3.8(b) prohibits prosecutors from "[f]il[ing] in court or maintain[ing] a charge that the prosecutor knows is not supported by probable cause."   Rule 8.4(c) prohibits lawyers from "[e]ngag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation."

To be clear, the defendant is not charged with assaulting law enforcement on January 6, 2021 and, barring the development of additional evidence, the government does not intended to charge him with assault offenses.  The inclusion of the phrase "including the Defendant" was a drafting error; should the defendant wish, the government will file an amended version of ECF 297.  But striking this phrase does not alter the government's argument that the January 6, 2021

attack on the Capitol constituted a civil disorder, that is, a "public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property of person of any other individual."   18 U.S.C. § 232(1).   It does not matter for this charge whether the defendant himself was one of the three or more persons committing acts of violence.   Further, the inclusion of this phrase in a responsive filing does not have the effect of bringing an additional charge against the defendant, whether supported by probable cause or not.

Throughout the pendency of this litigation, the defendant has often hyperbolized the nature of this prosecution.   The reality is far less nefarious than the defendant's accusations and claims. The instant Motion is no different. The defendant's constitutional rights have been scrupulously upheld.   The prosecutors have acted in good faith and in accordance with governing ethics and standards.   Nothing in the course of this prosecution warrants the extreme sanctions the defendant now seeks.   Thus, the government respectfully requests that the Motion be denied.

      Respectfully submitted,

      MATTHEW M. GRAVES
      United States Attorney
      D.C. Bar No. 481052

By:    */s/ Benet J Kearney*
      Benet J. Kearney
      NY Bar No. 4774048
      Kelly Elizabeth Moran
      NY Bar No. 5776471
      Matthew Beckwith
      DC Bar No: 90014452
      Assistant United States Attorneys
      601 D Street NW
      Washington, DC 20530
      Benet.Kearney@usdoj.gov
      Kelly.Moran@usdoj.gov
      Matthew.Beckwith@usdoj.gov
      (212) 637 2260 / (202) 740 4690 / (202) 252 7109