## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-cr-128 (RC)** |
| | : | |
| **WILLIAM POPE,** | : | |
| | : | |
| **Defendant.** | : | |

### <u>GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Response in Opposition to Defendant William Pope's Motion in Limine (ECF No. 323). The defendant is charged with, among other offenses, obstructing a police officer during a civil disorder, in violation of 18 U.S.C. § 231(a)(3) (Count 1); entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count 3); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count 4); disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count 6); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count 8). ECF No. 46.

With no legal analysis other than an umbrella citation to Fed. R. Evid. 401, 402, and 403 and the conclusory statement that all categories of evidence or argument he enumerates are "irrelevant, prejudicial, and/or inadmissible," ECF No. 323 at 1, the defendant asks the court to preclude thirteen separate categories of evidence or argument. Many of the defendant's requests are overbroad and ill-defined, and rely on factual inaccuracies and inaccurate characterizations of the case against him.

## ARGUMENT

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993), which is a "liberal" standard, *United States v. Moore*, No. 18-cr-198 (JEB), 2022 WL 715238, at *2 (D.D.C. Mar. 10, 2022). "In a criminal case, a fact is 'of consequence' if it makes it more or less likely that the defendant committed the charged conduct." *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020) (quoting Fed. R. Evid. 401); *see also United States v. Davis*, 636 F.3d 1281, 1298 (10th Cir. 2011) ("Relevant evidence tends to make a necessary element of an offense more or less probable."). However, courts do need to require "that each piece of evidence directly prove or disprove an element of the offense," so long as the evidence is "a step on one evidentiary route to the ultimate fact." *Id.* (quoting *Old Chief v. United States*, 519 U.S. 172, 179 (1997)) (internal quotation marks omitted).

A court may exclude relevant evidence if its probative value is "substantially outweighed' by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. While most relevant evidence is prejudicial, the rule excludes only evidence that is *unduly* prejudicial. *United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002), citing to *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir.1977) ("'[U]nfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'") "The gravamen of unfair prejudice is an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Orenuga*, 430 F.3d 1158, 1165 (D.C. Cir. 2005) (citing *Old Chief*, 519 U.S. at

2

180) (internal quotations omitted).

**I.**     **The Descriptors and Topics Defendant Seeks to Preclude Accurately Describe and are Relevant to the Events of January 6 and the Federal Rules of Evidence Do Not Preclude Them (Motions #1 and #13).**

The defendant lists 11 categories of words, phrases, and topics that he would like the Court to preclude the Government from using or referencing at trial:

1. Insurrection/Insurrectionists;
2. Sedition/Seditionists;
3. Terrorism/Terrorists;
4. Mob, riot, rioters, treason, traitors, conspiracy, conspirators, etc.;
5. Attack/Attacked;
6. Threat to Democracy;
7. Obstruction of an Official Proceeding;
8. The false claim that [he] wedged or jammed a flagpole into a door;
9. References to Proud Boys, Oath Keepers, Three Percenters, militias, or any other organization [to which he has no connection];
10. Any reports or insinuation that police died at the Capitol on January 6; and
11. Any other inflammatory [or] controversial language.

*See* ECF No. 323 at 1-2.

Essentially, the defendant asks the Court to prevent the United States from using language that accurately describes the events that took place at the Capitol on January 6th. Certain terms and phrases on this list are the most appropriate and frequently used phrases to describe the events that occurred at the riot on January 6th, as well as the rioters' objectives and this defendant's conduct and beliefs. The United States has no interest in extraneous or unnecessarily inflammatory topics: it only seeks to present the critical facts proving the charges that the defendant faces. Granting this motion would make candid presentation of the facts unnecessarily difficult and confusing, and the Court should deny the motion.

Rule 403 does not require the United States "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998). By their very nature, criminal charges involve an accusation that someone has wronged

another person or has wronged society.  Accordingly, such charges arouse emotion—and there is nothing improper about that.  In fact, while cautioning against prosecutorial misconduct in *United States v. Berger*, the Supreme Court simultaneously recognized that "[t]he United States Attorney . . . may prosecute with earnestness and vigor—indeed, he should do so." 295 U.S. 78, 88 (1935). "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom."  *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (quoting *United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)).  When a prosecutor's comments fairly characterize the offense, fairly characterize the defendant's conduct, and represent fair inferences from the evidence, they are not improper.  *Cf. Rude*, 88 F.3d at 1548 (the use of words like victim, deceit, outlandish, gibberish, charlatan, and scam was not improper); *Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) ("[T]here is no rule [of evidence or ethics] requiring the prosecutor to use a euphemism for [a crime] or preface it by the word 'alleged.'").

Here, the United States should not be required to dilute its language around the defendant's crimes or his participation in the attack on the Capitol. What took place on January 6, 2021, was in fact a riot involving rioters and an attack on the United States Capitol, the government of the United States, and American democracy. After carefully considering the facts of other January 6 cases, many other members of this Court have recognized the riot as just such an attack.  *See*, *e.g.*, *United States v. Mostofsky*, 1:21-cr-138 (JEB), Sent. Tr. at 40–41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to undermine [our] system of government."); *United States v. Rubenacker*, 1:21-cr-193 (BAH), Sent. Tr. at 147–48, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building" as part of the initial breach); *United States v. Languerand*, 1:21-cr-353 (JDB), Sent. Tr. at 33–34, January 26, 2022 ("[T]he effort undertaken

by those who stormed the Capitol . . . involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part.").  None of this language is hyperbole; rather, these findings used vivid and violent language because they described a visceral and violent event. So, too, will prosecutors and witnesses need to use appropriate language—and not euphemisms or disinfected and unwieldly language—to describe the nature and gravity of the defendant's conduct.

In another January 6 case, *United States v. Vincent Gillespie*, then-Chief Judge Howell denied a defendant's motion *in limine* to exclude references to substantially similar terms under Fed. R. Evid. 403.  Memorandum and Order, ECF No. 43, 1:22-cr-00060 (BAH) (Nov. 30, 2022). The court found that the terms "insurrection," "attack," "riot," "mob," and "rioters" "accurately describe[d] the events that occurred on January 6, 2021." *Id.* at 5–6 (collecting other cases using these terms to describe the events of January 6).  Then-Chief Judge Howell declined to "muzzl[e] the government or its witnesses from employing commonly used phrases to describe the events on January 6, 2021," and held that "the mere use of these terms does not . . . signal prejudice substantially outweighing their probative value" under Fed. R. Evid. 403. *Id.* at 6–7.  This Court should reach the same conclusion for the terms the defendant seeks to exclude and deny the defendant's motion in limine.

Further, it is clear that the defendant does not even know what terms he wishes the Government to refrain from using.  For example, he seeks to prevent the Government from using the words "mob, riot, rioters, treason, traitors, conspiracy, conspirators, etc." and "[a]ny other

inflammatory [or] controversial language." ECF No. 323 at 1 (emphasis added), 2.[1]  The Court should not entertain this overbroad and sweeping attempt to strangle the language of the trial, leaving prosecutors guessing as to which words are acceptable and which are not.

The defendant also moves to preclude the mention of "politics, political speech, or political figures."  The Government has no interest in making politics, or the defendant's political preferences, a focus of this trial.  However, it is not possible to divorce the charges against the defendant from the context in which they occurred: On January 6, 2021, a mob seeking to prevent a joint session of Congress from certifying the Electoral College vote from the 2020 Presidential Election attacked the Capitol.  The mention of political figures is relevant to proving the charges against the defendant: for example, that Vice President Pence – a politician – was or would be temporarily visiting the Capitol, *see* 18 U.S.C. § 1752(c)(1)(B), or that a joint session of Congress – at which senators and representatives – also politicians – were in attendance was disrupted, *see* 18 U.S.C. § 1752(a)(2) (requiring that the government prove that the defendant's "disorderly and disruptive conduct" "in fact, impede[d] or disrupt[ed] the orderly conduct of Government business or official functions"), or that the purpose of the joint session was to certify the results of the 2020 Presidential Election, which is relevant to the defendant's motive and intent in breaching the barricades around the Capitol grounds and entering the Capitol building.  These topics provide necessary context to the underlying charges and, for the same reasons as cited above, the Government should not be required to pretend or represent to the jury that January 6 was anything other than what it was.  The Court should deny this motion.

---

[1] Nor is it clear whether the defendant's objection to the phrase "Obstruction of an Official Proceeding" is only a reference to Count Two, which the government has since moved to dismiss, or to the fact that an official proceeding – Congress's certification of the electoral college vote – was obstructed by the breach of the Capitol on January 6, 2021.

II. **The Court Should Permit the Government to Introduce Evidence Relevant to the Charged Offenses (Motions #2a, #2b, #3).**

The defendant's second motion in limine contains two distinct requests within it: (1) the defendant seeks to preclude evidence regarding events for which he was not physically present, and (2) he seeks to preclude evidence recorded by individuals whom he describes as "any federal agents, employees, task force officers, confidential human sources, or any other human assets who were working on behalf of any federal agency or contractor, and who were moving barricades, engaging in violence, destroying property, entering the Capitol as part of the crowd, occupying an alleged restricted space, or influencing crowd behavior, unless the government first identifies and provides [him] discovery on all such individuals depicted in the video, and/or who recorded the video." *See* ECF No. 323 at 1-2. The defendant does not specify any particular recording that he seeks to preclude the government from offering at trial.

The defendant's third motion in limine seeks to preclude "all statements made by [Michael Pope] or any other defendant, protestor, journalist, or government official" to which he was not a party. *Id.* at 2. Again, he does not specify any particular statements or topics that he wishes to exclude from evidence.

Both requests are meritless, and courts have previously denied similar motions.

a. **General Evidence of the Events of January 6 and the Actions of Other Rioters at the Capitol is Relevant to Multiple Counts.**

Evidence regarding or depicting events for which the defendant was not physically present, including the actions of other rioters on January 6, 2021, is directly relevant to the offenses with which the defendant is charged.

To convict the defendant of Count One, a violation of 18 U.S.C. § 231(a)(3), the government must prove that (1) the defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with a law enforcement

officer, (2) at the time of the defendant's act, the officer was engaged in the lawful performance of their official duties incident to and during a civil disorder, and (3) the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce, the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function. 18 U.S.C. § 231(a)(3). "The term 'civil disorder' means any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1).

In order for the government to meet its burden as to Count One, it must introduce evidence that there was a group "of three or more persons" committing acts of violence that threaten or resulted in injury to persons or property.  The government must prove that the civil disorder – not the defendant – obstructed, delayed, or adversely affected a federally protected function, such as the U.S. Capitol Police's protection of the Capitol and its occupants. 18 U.S.C. § 231(a)(3). This element intrinsically broadens the scope of relevant evidence beyond the defendant's conduct to the conduct of the civil disorder's other participants, because the factfinder must receive proof that the riot disrupted the federally protected function. Therefore, if the Court granted the defendant's motion and restricted the government to presenting evidence *only* of the defendant's conduct on January 6, the Court would make it impossible for the government to prove its case as to Count One.

Similarly, to convict the defendant of Counts Three and Four, the Court must find that the defendant "knowingly" "enter[ed] or remain[ed]" in "restricted buildings or grounds." 18 U.S.C. §§ 1752(a)(1) and (2). "[T]he term restricted buildings or grounds means any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). With

8

these counts, the actions of other rioters contribute to the proof that the defendant possessed the necessary *mens rea* for each count. For example, if the government proves at trial that the defendant saw police officers guarding an entrance of the Capitol, rioters damaging that entrance, and the officers nonetheless attempting to stop rioters from entering the building, this evidence is relevant to show that the defendant knew that the public was not allowed in the Capitol building.

In other words, this evidence would show that the defendant knew that the Capitol was a restricted area. This example is one of many such situations where the actions of others provide the necessary context to understand the defendant's actions and motivations. *See e.g., United States v. Grider*, 21-cr-22 (CKK), 2022 WL 17829149, at *12 (D.D.C. Dec. 21, 2022) (noting that "[m]embership in a mass of rioters is particularly likely to disrupt Congressional business," in finding the defendant guilty of violating 18 U.S.C. § 1752(a)(2)). As Judge Kollar-Kotelly further stated in *MacAndrew*, "although the Government has not charged conspiracy in most January 6th cases, the collective nature of the mob likens these cases to those involving criminal conspiracies where individuals work in concert to achieve a collective goal—here, the disruption of Congressional proceedings." No. CR 21-730 (CKK), 2022 WL 17961247, at *3 (D.D.C. Dec. 27, 2022). Thus, this evidence would be relevant to these counts.

Additionally, statements or communications to which the defendant was not a party may be relevant to establishing the elements of certain offenses with which he is charged. For example, the USCP and United States Secret Service's notifications in preparation for Vice President Pence's visit to the Capitol, and officers and agents' relaying of information about the status of the breach in order to inform decision-making about his security, are relevant to demonstrating a disruption to the Secret Service's function of protecting the Vice President.

Because the nature of the charges requires evidence of the context and facts of January 6, 2021, the Court should deny the defendant's Motions in Limine on this issue.

### b. The Defendant's Continued Claims Regarding Covert Operatives Should Not Alter the Court's Evaluation of Relevant Evidence

The defendant has previously filed numerous motions describing his beliefs regarding the presence of covert federal operatives at the Capitol who bear responsibility for the January 6, 2021 attack. *See, e.g.,* ECF No. 252 (Motion to Compel Discovery on Raindrop Theory). But, as the Court has previously noted, it "cannot see how the alleged presence of government agents among the crowd at the riot induced Pope to violate the law" nor has the defendant provided any evidence "that he himself (1) knew that individuals in the crowd were government agents on January 6 or (2) that any of those alleged agents interacted with him and induced him to violate the law." ECF No. 326 at 7.

In addition to United States Capitol Police closed-circuit video footage, the government intends to introduce at trial video recordings made by other individuals at the Capitol on January 6, 2021. *See, e.g.,* Government Exhibits 112, 113, 115, 120-22 admitted in *United States v. Michael Pope*, 21 C. 128 (RC). The defendant is free to probe their authenticity through cross examination and object to their admission. But his motion currently offers no legitimate basis to preclude such exhibits, and the Court should deny it.

### III. The Defendant's Motions Regarding his Cellphone and the Law Enforcement Officers Who Were Present for His Arrest are Moot Following the Court's June 18, 2024 Order Denying his Motion to Suppress (Motions #4 and #5)

The defendant next moves to preclude the government from offering "discovery compiled by" Task Force Officers who participated in his arrest and executed a search warrant on his cellphone or derived from that cellphone, claiming that these warrants were illegally executed. ECF No. 323 at 2. But this Court has already denied the defendant's motion to suppress the

contents of his phone, ECF No. 326 at 39-41, and the defendant offers no new arguments for the exclusion of evidence derived therefrom.  Similarly, although the defendant does not specify the evidence "compiled' by the Task Force Officer to which he objects, this Court determined that the government did not act in bad faith when it failed to preserve the body worn camera footage of two Topeka Police Department officers who transported the defendant following his arrest.  *Id.* at 31-33. The defendant offers no reason to revisit that decision, nor does he explain why it dictates that unspecified evidence be precluded.  The Court should therefore deny the motion.

IV.    **Allegations that the Defendant Engaged in Violence or Property Destruction Are Not Anticipated At Trial Outside of Proving Count One (Motion #6).**

The defendant seeks to preclude the government from arguing that he was violent or engaged in property damage at trial. ECF No. 323 at 3.  This is an incredibly broad, and misplaced, request.  While the government has no intention of arguing that the defendant himself assaulted a specific officer or broke anything, it does intend to introduce evidence and argue at trial that the defendant obstructed, impeded, or interfered with law enforcement officers during a civil disorder, which by definition is a "public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."  18 U.S.C. §§ 231(a)(3); 232(1).  This is the very gravamen of one of the charges against the defendant.  ECF No. 46, Count One.  This too should be denied.

V.    **Messages between the Defendant and his Brother (and former Co-Defendant) are Relevant and Not Unduly Prejudicial (Motion #7).**

The defendant and his brother corresponded over Facebook Messenger extensively in the days leading up to January 6, 2021.  These messages are highly probative of the defendant's knowledge and highly relevant to the charges he faces at trial.

*Michael Pope* made a similar motion *in limine* to exclude these Facebook messages prior to his own trial. ECF No. 173. This Court denied that motion in limine, reasoning that the messages were "probative of Defendant's intent and relevant to the charges against Defendant." See January 11, 2024 Minute Order. The same reasoning applies here. The Facebook message show that the defendant and Michael Pope discussed what to do if the D.C. phone system were to collapse, whether to wear protective body armor in D.C., and the nuances of D.C. concealed carry laws for firearms. These messages make it clear that the defendant anticipated and planned to greet violence in Washington D.C. Despite his protestations to the contrary, the Rule 403 analysis in regard to these messages speak to factual and knowledge issues at the heart of this case; these messages are certainly relevant to the defendant's planning, motive, and *mens rea*, which are central to the instant charges.

One way that the government intends to prove that the Defendant acted knowingly is by introducing into evidence at trial his correspondence with his brother; the brothers' musings on whether to bring body armor, radios, and weapons to the District of Columbia is further proof that they did not solely anticipate participating in a rally, but rather expected, at the very least, to encounter violence.

"While there is prejudice inherent in this evidence," – as there is for all probative evidence—"it is only that which stems from the legitimate probative force of the evidence and is directly related to [a] central question in this case." *United States v. Wilkins*, 538 F. Supp. 3d 49, 73 (D.D.C. 2021). Rule 403 "does not bar powerful, or even 'prejudicial' evidence. Instead, the Rule focuses on the 'danger of unfair prejudice,' and gives the court discretion to exclude evidence only if that danger 'substantially outweigh[s]' the evidence's probative value." *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (citing *United States v. Gartmon*, 146 F.3d 1015,

1021 (D.C.Cir.1998)). In light of the significant probative value of the defendant's messages, it cannot be said that such value is "substantially outweighed" by any "danger of unfair prejudice." In any event, such danger can be properly mitigated by a limiting instruction to the jury.

The defendant's attempt to explain away his comments do not change this analysis.  To the extent he wishes to counter the government's theory, the correct forum for that is at trial.  Because the defendant's communications with Michael Pope are highly probative of his planning and state of mind, the Court should deny the motion *in limine*.

## VI.   The Defendant's Motion Regarding "Highly Sensitive" Materials is Moot (Motion #8).

The Government has been incredibly accommodating of the defendant's ongoing requests for materials in this matter.  In addition to providing him with comprehensive "individual" discovery regarding the charges against him and Michael Pope, it has given his standby counsel access to "global" discovery productions that she can review with the defendant at his request and has reduced sensitivity designations from "highly sensitive" to "sensitive" for portions of USCP CCTV footage for which the defendant has expressed a particular need relevant to trial.  The Government does not intend to surprise the defendant by introducing "highly sensitive" materials as exhibits at trial.  Indeed, the Government anticipates that much of the evidence it intends to present will overlap with the exhibits introduced at Michael Pope's trial, which the Government has already provided to the defendant.  In any event, in accordance with the Court's scheduling order, the Government will inform the defendant of the exhibits it intends to use at trial prior to the submission of the joint pretrial statement on November 1.  *See* ECF No. 339.

## VII.   The Restricted Area Map is Relevant to Counts Tree and Four and Can be Authenticated at Trial (Motion #9).

The defendant's unsupported motion *in limine* appears to refer to an exhibit commonly used

in trials involving January 6th defendants, which shows an aerial photograph of the Capitol grounds with a red line indicating where, approximately, the restricted perimeter was set on January 6, 2021. The map that the defendant seeks to exclude has been proven authentic and has been admitted in nearly all (or all) January 6th trials. Moreover, similar requests from other January 6th defendants have been uniformly rejected. *See, e.g., United States v. Hostettler*, et al., 21-cr-392 (RCL), October 11, 2023 Minute Order; *United States v. Cook*, et. al., 23-cr-138 (RBW), ECF 197.

Rule 901(a), the rule of authentication, provides the correct way to determine the admissibility of the map. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

In almost two hundred trials, the Government has authenticated a map of the restricted perimeter through the testimony of a U.S. Secret Service or U.S. Capitol Police witness (or through a stipulation). These witnesses have testified, based on their first-hand knowledge of the security perimeter established on January 6, 2021, that the exhibit is what it purports to be: a map of the Capitol grounds containing a red line marking the location of the restricted perimeter as it existed on January 6, 2021. That is all the rule of authentication requires.  It is of no moment when the red line was drawn, so long as it accurately reflects the location of the restricted perimeter on or about January 6, 2021.

The Government plans to call a witness at this trial who can testify to walking that Capitol grounds that day and confirming the accuracy of the map. If the defendant still believes that there is not a sufficient foundation for the exhibit's admission, he is free to object at that time and the Court can determine whether, based on the testimony, there is a sufficient basis to admit the map.

Because the motion is premature, it should be denied.

**VIII.   The First Amendment Does Not Bar the Admission of Statements by the Defendant as Evidence (Motion #10).**

In its Motions *in Limine*, the United States moved for a for a ruling that the admission of the defendant's statements relevant to January 6, 2021 does not violate the First Amendment. The government reincorporates those arguments here and for the reasons stated therein, the Court should deny the motion. *See* ECF No. 324 at 9-10.

**IX.   The Government Should be Permitted to Present the Defendant's Conduct in Context (Motions #11 and #12).**

In addition to his motions seeking to prevent the Government from accurately describing the events of January 6, 2021 (Motions #1 and #13, discussed in Section I, *supra*), the defendant has also filed motions seeking to require the Government to divorce the defendant's conduct on that day from the context in which it occurred.  He moves to (1) preclude the Government from offering evidence regarding the collective force and effect of a crowd of rioters' breach of the Capitol, unless he is allowed to offer irrelevant evidence of his unfounded and speculative theory that covert operatives brought about the events of January 6, and (2) to prevent the Government form arguing that his carrying of a flagpole in and around the Capitol building is evidence of his criminal conduct.  Both motions display a (perhaps purposeful) misunderstanding of the law and should be denied.

**a.   The "Raindrop Theory"**

The "Raindrop Theory" is derived from Judge Kollar-Kotelly's apt description of how a riot can only occur with individual participants: "Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively

disrupted Congressional proceedings, and each individual rioter contributed to that disruption." *United States v. Rivera*, 607 F. Supp. 3d 1, 9 (D.D.C. 2022). Many courts, including this one, have condoned this type of description and permitted the government to make arguments regarding an individual defendant's contribution towards a larger effect on January 6, 2021. *United States v. Alford*, 89 F.4th 943, 953 (D.C. Cir. 2024) ("Indeed, entering the Capitol as part of a crowd rather than as a lone individual magnified the disruptiveness of [the defendant's] presence. Each additional person, no matter how modestly behaved, increased the chaos within the building, the police's difficulty in restoring order and the likelihood of interference with the Congress's work."); *United States v. Gunby*, 21-Cr-626 (PLF), 2023 WL 4993483, at *4 (D.D.C. Aug. 4, 2023) ("This Court – joining other judges of this district – agrees with Judge Kollar-Kotelly's reasoning [in *Rivera*]. Section 1752(a)(2) does not require that a person 'be the but for cause of a disruption,' so long as that person's presence and conduct 'contribute[s] to that disruption.'"); *United States v. Rhine*, 21-Cr-687 (RC), 2023 WL 2072450, at *6 (D.D.C. Feb. 17, 2023) ("the situational context around Defendant while he was allegedly present in the Capitol is relevant to the jury's assessment of whether Defendant's conduct was disorderly or disruptive"). The Government is not seeking to hold the defendant responsible for the actions of others. However, the actions of others, which the defendant observed, and the collective context, to which he contributed, are highly relevant to the offenses with which he is charged. The Court should permit the government to present such evidence and make such arguments in this case.

It does not follow, however, that such arguments by the Government render the defendant's baseless theories relevant or admissible. As this Court has previously noted:

> While it is true that each individual rioter on January 6 contributed to the chaos at the Capitol, it is not commensurately true that each rioter is absolved of his or her conduct merely because other individuals were also rioting. Each individual must be responsible for his or her own behavior at the riot—irrespective of the conduct

> of other rioters. The fact that January 6 defendants are held responsible for the
> general chaos under the 'Raindrop Theory' is not inconsistent with this point;
> rather, individuals are held responsible for their own part in creating and adding to
> the general chaos."

ECF No. 326 at 7.  Even assuming the defendant were able to offer some factual basis for his

inverse theory – which he cannot – it remains entirely irrelevant to the charges against him.  As

this Court has previously ruled,

> The Court cannot see how the government's inaction—assuming that such inaction
> even actually occurred—induced Pope to act unlawfully. In other words, the Court
> cannot conclude that even if the government left the Capitol undefended, doing so
> induced Defendant into entering it...Moreover, the Court cannot see how the alleged
> presence of government agents among the crowd at the riot induced Pope to violate
> the law. As this Court has repeated on several occasions, Pope has not provided
> evidence that he himself (1) knew that individuals in the crowd were government
> agents on January 6 or (2) that any of those alleged agents interacted with him and
> induced him to violate the law.

ECF No. 326 at 6-7.  The defendant's motion on this issue is nothing but an attempt to relitigate

motions that this Court has previously denied.  The Court should deny the motion again.

### b.  The Defendant's Carrying of a Flag

Similarly, the defendant attempts to inappropriately separate a portion of the Government's

description of his violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing

in any of the Capitol Buildings:

> The government intends to argue and offer proof that William Pope willfully and
> knowingly paraded, demonstrated, or picketed in the Capitol building when he
> engaged in the following conduct: Carrying a flagpole, as part of a large crowd that
> was chanting and carrying signs, William Pope entered the Capitol building on the
> east side, at the Senate Carriage Door on the first floor. He proceeded from the
> Senate Carriage Door and the Senate Carriage Door Hallway to the corridor
> adjacent to the Senate Wing Door. He ascended to the second floor, where he
> entered Statuary Hall and the Statuary Hall Connector, the hallway outside Room
> H227, and the Rotunda. He exited the Capitol building on the first floor via the
> Memorial Door on the east side of the Capitol building. The government also
> intends to argue and offer proof that, when he engaged in his conduct, William Pope
> was aware that it would disrupt the orderly business of Congress and/or intended
> that it be in support or disapproval of a particular viewpoint, action, public question,

or cause, including William Pope's support for what he described as "free elections, fair elections, and President Trump."

ECF No. 284.  Consistent with the Circuit's ruling in *United States v. Alford* that "whether conduct qualifies as disorderly depends on the surrounding circumstances," 89 F.4th 943, 950 (D.C. Cir. 2024), at trial, the government intends to ask the jury to consider *all* of the defendant's conduct, in context, including his approach to the Capitol building, his manner of entry, the time he spent in the Capitol and locations in which he was present, his presence amongst an angry, chanting, crowd, and his carrying of a flagpole.  *See id.* ("even passive, quiet and nonviolent conduct can be disorderly"); *id.* at 951 ("disruptive actions are those that are inappropriate or plainly out of place for the time or setting").

The defendant's motion oversimplifies and ignores the substantive charges of Count Eight (let alone binding precedent), which the Government is entitled to prove; the motion *in limine* should be denied.

## **CONCLUSION**

For the reasons set forth herein, the United States respectfully requests that the Court deny the defendant's motions *in limine*.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: *Kelly E. Moran*
Kelly Elizabeth Moran
NY Bar No. 5776471
Matthew Beckwith
DC Bar No: 90014452
Benet J. Kearney
NY Bar No. 4774048
Assistant United States Attorneys
601 D Street NW
Washington, DC 20530
Matthew.Beckwith@usdoj.gov
Benet.Kearney@usdoj.gov
Kelly.Moran@usdoj.gov
(202) 740 4690
(212) 637 2260
(202) 252 7109