**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | : | | |
| | : | Criminal Action No.: | 21-128 (RC) |
| v. | : | | |
| | : | | |
| WILLIAM POPE, | : | Document Nos.: | 312, 391, 392, 393 |
| | : | | |
| Defendant. | : | | |

### MEMORANDUM OPINION

**DENYING DEFENDANT'S MOTION FOR THE PRODUCTION OF MATERIALS; GRANTING THE GOVERNMENT'S CROSS-MOTION FOR RETURN OF SENSITIVE MATERIALS; AND DENYING DEFENDANT'S MOTION FOR SANCTIONS**

### I. INTRODUCTION

Defendant William Pope ("Defendant" or "Mr. Pope") was indicted by the United States (the "Government") on charges arising out of his alleged participation in a riot at the United States Capitol on January 6, 2021, and has been proceeding *pro se*. Following the Executive Order dated January 20, 2025, Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at Or Near the United States Capitol on January 6, 2021, the Government moved to dismiss the indictment against Mr. Pope with prejudice. This Court granted the motion to dismiss that same day. Mr. Pope subsequently submitted motions requesting the production of additional materials from the Government and seeking sanctions against the Government from the Court. The Government cross-moved for the return of sensitive materials possessed by Mr. Pope, which this Court previously held must be returned upon the conclusion of Mr. Pope's proceedings. For the foregoing reasons, Defendant's motion

for production of additional materials is denied, the Government's cross-motion for return of sensitive materials is granted, and Defendant's motions for sanctions are denied.

## II. FACTUAL BACKGROUND

On January 6, 2021, Mr. Pope was an alleged participant in a riot at the United States Capitol, which occurred during the Joint Session of Congress that had been convened to certify the results of the 2020 presidential election. The Government alleges that Mr. Pope approached barricades located on the northeast side of the Capitol and eventually entered the East Plaza of the Capitol Building. Gov't Resp. to William Pope's Mot. Produc. of Various Case Files & Cross Mot. Return of Sensitive Materials ("Gov't Materials Resp.") at 1, ECF No. 392. At 2:16 p.m., Mr. Pope approached the Senate Carriage Door, where United States Capitol Police officers were attempting to physically hold rioters back. *Id.* at 1–2. The Government argues that, at this time, Mr. Pope entered the Senate Carriage Doors, allegedly impeding officers' efforts to clear the building and carry out their duties. *Id.* According to the Government, Mr. Pope then advanced further into the building, traveling to areas that included the Senate Wing Corridor, Statuary Hall, a hallway of the suite of then-Speaker of the House Nancy Pelosi, the Rotunda, and the Crypt. *Id.* Mr. Pope exited the Capitol building at approximately 2:37 p.m. *Id.*

Mr. Pope was charged by complaint with violations of 18 U.S.C. §§ 1512(c)(2), 231(a)(3), 1752(a)(1), 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(D), (E), and (G) on February 10, 2021. Compl. at 1, ECF No. 1. On November 10, 2021, a grand jury in this district returned a superseding indictment charging Mr. Pope with violations of 18 U.S.C. §§ 231(a)(3) (Count One), 1512(c)(2) and 2 (Count Two), 1752(a)(1) (Count Three), 1752(a)(2) (Count Four), 1752(a)(3) (Count Five), 40 U.S.C. §§ 5104(e)(2)(D) (Count Six), 5104(e)(2)(E) (Count Seven), and 5104(e)(2)(G) (Count Eight). Indictment, ECF No. 46. The Government subsequently

moved to dismiss Counts Two, Five, and Seven.  Gov't Mot. Dismiss Counts Five & Seven, ECF No. 273; Gov't Mot. Dismiss Count Two, ECF No. 347.  Mr. Pope was most recently scheduled to proceed to trial on the remaining counts on June 2, 2025.  Minute Entry, *United States v. Pope*, No. 21-cr-128 (D.D.C. Dec. 12, 2024).  Following the Executive Order dated January 20, 2025, Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at Or Near the United States Capitol on January 6, 2021, the Government moved to dismiss the indictment against Mr. Pope with prejudice on January 21, 2025.  Gov't Mot. Dismiss Indictment with Prejudice Pursuant to Fed. R. Crim. Pro. 48(a) at 1, ECF No. 388.  This Court granted the motion to dismiss that same day.  Order ("Dismissal Order"), ECF No. 389.

Since the case's dismissal, Defendant has filed several subsequent motions which this Court now considers.  First, Mr. Pope notified the Court that he plans to retain the "sensitive" documents produced to him by the Government throughout the pendency of his case.  Def.'s Notice to Ct. Regarding Order No. 239 & New Mot. to Produc. Various Case Files ("Def.'s Mot. Produc.") at 1–2, ECF No. 391.  Further, Mr. Pope seeks to compel production of additional files and records related to his case from the Government.  *Id.* at 2–5.  In response, the Government cross-motions for the return of all "[s]ensitive" documents Mr. Pope has retained.  *See* Gov't Materials Resp. at 4.  Next, Mr. Pope revives a prior motion for sanctions against the prosecutors assigned to his case and requests a plethora of new sanctions from this Court for the Government's conduct.  *See* Def.'s Mot. Sanctions ("Def.'s First Mot."), ECF No. 312; Def.'s Second Mot. Sanctions Against Gov't & Notice of Reinstatement of First Mot. Sanctions ("Def.'s Second Mot."), ECF No. 393.  These motions are thus ripe for review and the Court will consider the parties' arguments in turn.

### III.  LEGAL STANDARDS

#### A.  Production of Documents

Dismissal with prejudice "is a complete adjudication of the matter" and "a final judgment on the merits," barring any further prosecution or related proceedings of a defendant for their conduct at issue.  *United States v. Amos*, 763 F. Supp. 3d 2, 5–6 (D.D.C. 2025) (internal citations omitted).  Under Federal Rule of Criminal Procedure 16, disclosure obligations apply only to pre-trial discovery regarding pending criminal charges; Rule 16 does not extend to discovery post-dismissal.  *See, e.g.*, Fed. R. Crim. P. 16(a)(1)(A) ("[T]he government must disclose . . . if the government intends to use the statement *at trial*" (emphasis added)); Fed. R. Crim. P. 16(a)(1)(E)(ii) (noting disclosure is required if "the government intends to use the item in its case-in-chief *at trial*" (emphasis added)); *United States v. Nobles*, 422 U.S. 225, 235 (1975) ("Both the language and history of Rule 16 indicate that it addresses only pretrial discovery."); 2 Wright & Miller's Federal Practice & Procedure § 252 (4th ed. 2025) ("Rule 16 addresses only pre-trial discovery.").

Similarly, *Brady* disclosure obligations do not apply post-dismissal.  *See, e.g.*, *United States v. Bagley*, 473 U.S. 667, 675 (1985) (noting that the purpose of the *Brady* rule is to force disclosure of evidence "that, if suppressed, would deprive the defendant of a fair trial"); *Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009) (holding that because the defendant had already been found guilty at a fair trial, "*Brady* is the wrong framework"); *Jones v. Ryan*, 733 F.3d 825, 837 (9th Cir. 2013), *cert. denied*, 571 U.S. 984, (2013) ("The *Brady* right of pretrial disclosure . . . does not extend to . . . post-conviction relief."); *United States v. Oruche*, 484 F.3d 590, 595 (D.C. Cir. 2007) (the remedy for a *Brady* violation is a new trial).

### B. Sanctions

Sanctions available for attorney or party misconduct in criminal cases are imposed under the district court's inherent authority. *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995). Federal courts maintain these inherent powers "to protect their integrity and prevent abuses of the judicial process." *Shepherd*, 62 F.3d at 1474. The D.C. Circuit has established that the purpose of imposing sanctions on attorneys is not to punish them, but to protect the public and the courts, safeguard the integrity of the profession, and deter similar misconduct by other attorneys. *In re Clark*, 678 F. Supp. 3d 112, 125 (D.C. Cir. 2023). However, "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980).

To be sanctionable under the court's inherent powers, the misconduct in question must affect the court's ability "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991) (internal citations omitted); *see also Landmark Legal Found. v. Env't Prot. Agency*, 82 F. Supp. 3d 211, 219 (D.D.C. 2015). In other words, the Court "must find some connection between the sanctioned conduct and a process of the [C]ourt in the litigation before it." *Landmark*, 82 F. Supp. 3d at 218–19 (quoting *Alexander v. FBI*, 541 F. Supp. 2d 274, 303 (D.D.C. 2008)). For inherent power sanctions that are fundamentally penal, such as "dismissals and default judgments, contempt orders, awards of attorneys' fees, and the imposition of fines, a district court must find *clear and convincing evidence* of misconduct." *Peterson v. Islamic Republic of Iran*, 224 F. Supp. 3d 17, 27 (D.D.C. 2016) (emphasis added) (citing *Shepherd*, 62 F.3d at 1478); *see also Chambers*, 501 U.S. at 43–46 (1991). Before exercising its inherent power to award sanctions, the court "must make an explicit finding that the target of the sanctions acted in bad faith."

5

*Landmark*, 82 F. Supp. 3d at 219; *see also Roadway Express*, 447 U.S. at 767. Further, the court must "properly 'calibrate the scales' to ensure that the gravity of an inherent power sanction corresponds to the misconduct." *Shepherd*, 62 F.3d at 1479.

Available inherent power sanctions include fines, awards of attorney fees and expenses, contempt citations, disqualifications or suspensions of counsel, and drawing adverse inferences or precluding admission of evidence. *Shepherd*, 62 F.3d at 1475. In extreme circumstances, courts may also impose dismissals and default judgments as necessary. *Id.*; *see also Chambers*, 501 U.S. at 45. When conduct can be sanctioned adequately under a specific statute or the Federal Rules of Civil Procedure, a court should ordinarily rely on those sources of authority, but "may safely rely on its inherent power if, in its informed discretion, neither the statutes nor the rules are up to the task." *Chambers*, 501 U.S. at 33.

## IV.  ANALYSIS

### A.  Production of Documents

In an April 23, 2024 Order, this Court held that Mr. Pope is required to return all materials designated as "sensitive" in his possession to the Government at the conclusion of his proceedings. *See* Order ("April 2024 Order") at 9, ECF No. 239. This Court confirmed in a subsequent order that sensitive materials include materials provided by the Government. Order ("June 2024 Order") at 11, ECF No. 326. Throughout the pendency of this case, the Government has produced substantial quantities of "[s]ensitive" material to Mr. Pope. Gov't Materials Resp. at 4. As an accommodation to Defendant's decision to proceed *pro se*, the Government redesignated materials as "[s]ensitive" rather than "[h]ighly [s]ensitive," allowing Defendant to retain them in preparation for trial. *Id.*

At issue is Defendant's possession of various materials designated as "sensitive." On January 28, 2025, Mr. Pope filed a notice to the Court stating that he plans on retaining these materials for his personal records rather than returning them. Def.'s Mot. Produc. at 1–2. In addition, Mr. Pope seeks production of his entire case file, all outstanding files and information requested by his various motions, and a wide range of additional materials to provide answers as to why "the government's pursuit of [him] was so unprecedented and vindictive." *Id.* at 2–5. The Government opposes Mr. Pope's motion, arguing that Mr. Pope provides no legal rationale for compelling production of any additional materials. Gov't Materials Resp. at 3. Furthermore, the Government cross-motions to require Mr. Pope to return any sensitive documents that he has retained in accordance with this Court's rulings. *Id.* at 4.

Under this Court's prior rulings, Defendant must return case files marked as sensitive. Mr. Pope acknowledges this Court's prior rulings ordering him to return sensitive case files. Def.'s Mot. Produc. at 1; April 2024 Order at 9; June 2024 Order at 11. Mr. Pope provides no additional legal basis for why he should be allowed to retain said files over this Court's decisions. Mr. Pope asserts he has been told that "the government no longer considers these specific items sensitive . . . to possess." Def.'s Mot. Produc. at 1. Mr. Pope alleges that he was told personally by Interim United States Attorney for the District of Columbia Edward R. Martin Jr. ("Mr. Martin") on January 20, 2025 that Mr. Pope was allowed to keep the discovery files he had collected while preparing his defense. Def.'s Reply to Gov't Opp'n to Sanctions ("Def.'s Reply") at 2, ECF No. 397. The Government, in a filing signed by Mr. Martin, indicated it has not removed any designations from the materials in question. Gov't Materials Resp. at 4. Further, the Government moves for the return of all "[s]ensitive" materials in accordance with this Court's orders. *Id.* As the Government's position has not changed, Defendant must comply

7

with this Court's prior orders and return all sensitive materials produced to him throughout this case. The Government's cross-motion for the return of sensitive documents is granted.

In addition, Defendant is not entitled to further production of documents. Mr. Pope believes the materials he requests "would have been exculpatory during [his] case." Def.'s Reply to Gov't Opp'n No. 239 to Notice on Order No. 239 & Mot. for Case Files No. 391 at 3, ECF No. 395. However, discovery obligations under *Brady* and Rule 16 cease after a case has reached a final judgment. *See Nobles*, 422 U.S. at 235; *Jones*, 733 F.3d at 837. Dismissal with prejudice is a final judgment on the merits, *Amos*, 763 F. Supp. 3d at 5–6, and Defendant's case was dismissed with prejudice on January 21, 2025. *See generally* Dismissal Order. Again, Mr. Pope provides no legal basis for why the Government must produce a vast array of litigation materials after the completion of his case. As such, Defendant's motion to compel the production of additional case files is denied.

### B. Sanctions

At issue are two separate motions for sanctions Defendant raises against the AUSAs involved in his prosecution. *See generally* Def.'s First Mot.; Def.'s Second Mot. Mr. Pope also seeks to broaden his sanctions to include the entire District of Columbia United States Attorney's Office and Mr. Martin. *See generally* Def.'s Reply. Mr. Pope cites multiple allegations he believes constitute sanctionable conduct, including, but not limited to, what he argues amounts to improper attorney behavior, failure to obtain evidence, various violations of his civil rights and privileges, and false statements. *See generally* Def.'s First Mot.; Def.'s Second Mot. The Government opposes each of Mr. Pope's allegations of sanctionable conduct, arguing that Mr. Pope fails to establish positive legal grounds for this Court to impose any sanctions, let alone those to the high level of severity Mr. Pope requests. *See generally* Def.'s First Mot. at 1; *see*

*also* Gov't Resp. to Def.'s Mot. Sanctions ("Gov't First Resp.") at 1, ECF No. 327; Gov't Resp. to Def.'s Mot. Sanctions ("Gov't Second Resp."), ECF No. 396.

1. June 2024 Motion for Sanctions

On June 6, 2024, Mr. Pope filed a motion for sanctions against the Assistant United States Attorneys ("AUSAs") involved in this case. *See* Def.'s First Mot. Defendant's complaints can be grouped into three general categories: (1) the Government's failure to preserve and obtain body-worn camera ("BWC") footage from his February 12, 2021 arrest; (2) the Government's failure to respond promptly to email inquiries throughout the course of litigation; and (3) the Government's erroneous inclusion of a phrase in a filing that falsely described him as participating in an assault on law enforcement officers at the Capitol. *See* Gov't First Resp. at 1. Mr. Pope contends that the Government violated Rules 3.4(a) and (d), 3.8(b), and 8.4(a), (c), and (d) of the District of Columbia Rules of Professional Conduct. Gov't First Resp. at 1; Def.'s First Mot. at 1. As a result, Mr. Pope sought "suspension of all prosecutors assigned to this case from practicing law" and "dismissal of this case with prejudice." Def.'s First Mot. at 5. On June 26, 2024, Mr. Pope withdrew this motion for sanctions. *See* Def.'s Reply to Gov't Resp. to Mot. Sanctions, ECF No. 329. However, Mr. Pope subsequently reinstated his request in his second motion for sanctions filed on February 12, 2025. *See* Def.'s Second Mot.

Defendant's first motion for sanctions fails to demonstrate behavior sanctionable under the Court's inherent powers. A court's inherent powers permit the imposition of sanctions "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 33. Bad faith sufficient to warrant sanctions under a court's inherent authority involves intentional actions that disrupt or delay litigation or interfere with the enforcement of court orders. *See Alexander v. FBI*, 186 F.R.D. 6, 11 (D.D.C. 1998). This Court

9

must make a finding of misconduct by clear and convincing evidence before imposing penal sanctions such as "suspension of all prosecutors assigned to this case from practicing law," the sanction Mr. Pope seeks.[1] *See Peterson*, 224 F. Supp. 3d at 27; Def.'s First Mot. at 5.  None of the conduct Mr. Pope highlights in his initial motion rises to the level of bad faith.

To begin with, the Government's loss of BWC footage was not done in bad faith.  When Defendant requested the footage from his arrest on October 11, 2023, the acting AUSA consulted with the FBI case agent and concluded that there was no footage to produce.  Gov't First Resp. at 2.  When the AUSA followed up with the FBI in April 2024, they learned that the Topeka Police Department ("TPD") officers present at the arrest may have been wearing BWCs.  *Id.*  The case agent immediately contacted TPD and sought to obtain the footage, but learned that it had been deleted on February 12, 2024 in the normal course of TPD practice at the end of a three-year retention period.  *Id.*  None of the government attorneys obstructed access to, altered, destroyed, or deleted evidence.  *Id.* at 3.  The Government did not intentionally take actions that disrupted, delayed, or interfered with the litigation process.  Nor did the Government fail to make genuine efforts to fulfill Mr. Pope's request; rather, an honest misunderstanding resulted in the inability to obtain the footage prior to deletion.  *Id.* at 3–4.  This conduct does not rise to the level of bad faith or misconduct.

Further, neither the Government's error in a filing nor its delay in responding to email inquiries qualifies as bad faith conduct.  The Government replied to a May 29, 2024 email from Mr. Pope on June 6, 2024.  *Id.* at 4–5.  The Government notes the delay in response was due to the temporary absence of the AUSA primarily responsible for communication, rather than an

---

[1] Defendant also requests "dismissal of this case with prejudice" in his initial motion. Def.'s First Mot. at 5.  Because this case has already been dismissed with prejudice, *see* Dismissal Order, the Court finds that this request is moot.

10

intentional attempt to delay litigation preparation. *Id.* In addition, the Government admits the inclusion of the phrase "[t]he January 6, 2021 attack on the United States Capitol by a mob of thousands, some of whom—including the Defendant—assaulted law enforcement officers" in a prior motion was a drafting error. *Id.* at 5–6. The Government offered to file an amended version of the motion. *Id.* The unintentional inclusion of an incorrect factual statement in a filing does not bring any additional unindicted charges against Mr. Pope, nor does it demonstrate intentional bad faith or misconduct on behalf of the Government. Because none of the Government's conduct rose to the level of bad faith, sanctions are improper.

2. February 2025 Motion for Sanctions

In his second motion for sanctions, Defendant supplies a wide range of conduct by the Government for which he seeks additional sanctions. Mr. Pope asserts that AUSA Jennifer Blackwell falsely alleged he was "part of a mob of rioters who breached the restricted area" and "worked . . . across the [Capitol] threshold" in a filing despite factual dispute regarding whether he was pushed into or willingly entered the U.S. Capitol building on January 6, 2021. Def.'s Second Mot. at 2. Mr. Pope argues that this violated his Fifth Amendment rights against being held to answer for unindicted allegations, the presumption of innocence, and the Double Jeopardy Clause, as well as his Sixth Amendment right to confrontation. *Id.* at 2–3. Further, Mr. Pope asserts that the Government violated his civil rights during his court-ordered Capitol walkthrough tour on October 20, 2024. *Id.* at 3. Mr. Pope maintains that the three FBI agents present on the tour attempted to "record [his] device screens" and "spy" on his "legal notes." *Id.* As a result, Defendant argues that these actions were an improper search and seizure under the Fourth Amendment, an illegal attempt to obtain protected attorney work product in conjunction

with his Sixth Amendment rights, as well as an illegal attempt to violate attorney-client privilege between himself and Mrs. Cubbage, his court-appointed standby counsel. *Id.* at 3–5.

Defendant claims that in total, this conduct on behalf of the Government and AUSA Jennifer Blackwell violates Rule 8.4(a), (b), (c), and (d) of the District of Columbia Rules of Professional Conduct, violates Rule 3.8(f) of the American Bar Association's Model Rules of Professional Conduct, demonstrates deliberate insubordination of President Trump under 45 C.F.R. pt. 73, app. A, § A(3) (2025), and amounts to a criminal deprivation of his constitutional rights under 18 U.S.C. § 242. *Id.* at 6–7. As such, he seeks the following severe sanctions:

    1. Suspension of all prosecutors assigned to this case from practicing law
    2. Financial sanctions against AUSA Jennifer Leigh Blackwell of at least $100,000
    3. A full retraction and withdrawal of ECF No. 392 by the government
    4. A written apology for this misconduct from the United States of America

*Id.* at 8.

Defendant's second motion for sanctions also fails to raise conduct by the Government which qualifies for sanctions under the Court's inherent powers. As the requested sanctions are "penal" in nature, the Court must make a finding of clear and convincing misconduct in each case. *See Peterson*, 224 F. Supp. 3d at 27. In addition, the Court must once again find that the Government's conduct rose to the level of bad faith. *Chambers*, 501 U.S. at 33. The Court will take each stated instance of alleged Government misconduct in order.

First, AUSA Blackwell's alleged false allegations made in Gov't Materials Resp. did not violate Defendant's civil rights nor reach the level of clear and convincing misconduct or bad faith. Factual allegations or characterizations in a filing, disputed or otherwise, are fundamentally distinct from indictments. *See, e.g.*, *United States v. Pickett*, 353 F.3d 62 (D.C Cir. 2004) (holding indictments must meet the specific requirements of Fed R. Crim. P. 7);

12

*United States v. Miller*, 605 F. Supp. 3d 63, 70 (D.D.C. 2022) (same). AUSA Blackwell's inclusion of the statements that Mr. Pope "worked his way across the threshold" of the Senate Carriage Door, "impeding officers' efforts to clear the building," and "advanced further into the building" are supported by video footage and trial exhibits. Gov't Materials Resp. at 1–2. While Mr. Pope is correct that this interpretation of the facts would have been disputed at trial, AUSA Blackwell was providing the Government's characterization of Mr. Pope's conduct in a standard statement of facts, which constitutes neither blatantly false statements nor a new indictment. Gov't Second Resp. at 1–2. Mr. Pope is not being held to answer for unindicted allegations against his Fifth Amendment rights. Nor has Mr. Pope's presumption of innocence been disturbed, as he is not being brought to trial on new charges. *See Coffin v. United States*, 156 U.S. 432, 458–59 (1895) ("[T]he presumption of innocence is a conclusion drawn by the law in favor of the citizen . . . when brought to trial upon a criminal charge . . . ."). Mr. Pope's Double Jeopardy rights also remain intact, as the Government is not pursuing further prosecution. *See United States v. Scott*, 437 U.S. 82, 87–88 (1978) (holding Double Jeopardy only bars further prosecution for the same offense). The Sixth Amendment Confrontation Clause also does not apply here, as it comes into effect regarding a defendant's right to confront evidence produced *at trial*. *See Crawford v. Washington*, 541 U.S. 36, 36 (2004). As none of Mr. Pope's rights have been violated, nor has the Government acted in bad faith or committed misconduct, sanctions are inapplicable.

    Defendant next seeks sanctions for actions of FBI agents during his court-ordered Capitol walkthrough tour on October 20, 2024; these also fail to constitute sanctionable conduct. Mr. Pope claims that the agent's actions were improper search and seizure under the Fourth Amendment, an illegal attempt to obtain attorney work product, and an illegal attempt to violate

13

attorney-client privilege between himself and his standby counsel. To begin with, even if the actions of FBI agents are attributable to the Government, the Government disputes the allegation that any of the agents present attempted to interfere with or record Mr. Pope's legal notes. Gov't Second Resp. at 2. Defendant provides no evidence to support his claims, making it impossible for the Court to determine whether the agents attempted to read his notes or acted in bad faith. Even if a Fourth Amendment violation occurred, sanctions are not the proper remedy. *See, e.g.*, *United States v. Calandra*, 414 U.S. 338, 338 (1974) (finding the exclusionary rule, "under which evidence obtained in violation of the Fourth Amendment or the fruits of such evidence cannot be used in a criminal proceeding against the victim of the illegal search and seizure," is the proper remedy for a Fourth Amendment violation). Further, attorney-client privilege does not apply to *pro se* defendants. *United States v. Singhal*, 800 F. Supp. 2d 1, 5–6 (D.D.C. 2011) (Attorney-client privilege applies only if "the person to whom the communication was made . . . is a member of the bar of a court"). Mrs. Cubbage's potential ability to read Defendant's notes does not confer privilege upon them. *Id.* Regardless, the Government is not attempting to introduce Defendant's notes against him in a legal proceeding or use them in an otherwise improper manner; thus, attorney-client and work-product protection are inapplicable. As there is no clear and convincing evidence of misconduct nor a demonstration of bad faith, the Court cannot sanction the agents under its inherent powers.

Defendant also argues that AUSA Blackwell's conduct demonstrates deliberate insubordination of President Trump under 45 C.F.R. pt. 73, app. A, § A(3) (2025) and amounts to a criminal deprivation of his constitutional rights under 18 U.S.C. § 242. Def.'s Second Mot. at 6–7. 45 C.F.R. pt. 73 applies to Department of Health and Human Services employees, not federal prosecutors. *See generally* 45 C.F.R. ch. A (2025). Further, this Court does not have the

ability to sanction under 45 C.F.R. pt. 73. *See* 45 C.F.R. § 73.735-1201 (2025) (explaining supervisors are the relevant authority for disciplinary action); 45 C.F.R. § 73.735-1304 (2025) (noting the Department Ethics Counselor may refer to the Office of Government Ethics or the Inspector General may refer to the Department of Justice regarding any suspected criminal violations); 45 C.F.R. § 73.735-1201 (2025) (listing the types of disciplinary action allowed under this statute, which does not include sanctions from a court of law). Nor can this Court bring criminal charges under 18 U.S.C. § 242. *See United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case."); *see also United States v. Stone*, 394 F. Supp. 3d 1, 10 (D.D.C. 2019). As such, the Court cannot impose sanctions under these grounds either.

### 3. March 2025 Reply and Request for Sanctions

Finally, Defendant filed a reply to the Government seeking to broaden the scope of his requested sanctions. On February 11, 2025, the Government filed a memorandum in opposition to Defendant's second motion for sanctions. *See generally* Gov't Second Resp. That motion was filed by and through Mr. Martin. *Id.* at 1. In his reply, Defendant seeks to expand his motion for sanctions to include the wider District of Columbia United States Attorney's Office and Mr. Martin specifically. *See generally* Def.'s Reply. Defendant does not specify the type of sanctions he is seeking against these additional parties, only noting that they must be "severe." *Id.* at 6.

Defendant's request for expanded sanctions also fails to meet the standard for sanctionable conduct. This Court recognizes that a party may not raise a new issue for the first time in a reply brief. *See Romero v. RBS Constr. Corp.*, No. 18-cv-179, 2022 WL 522989, at *6 (D.D.C. Feb. 22, 2022). Notwithstanding, any grounds for sanctions Mr. Pope seeks against

these additional parties are articulated in his prior two motions. *See generally* Def.'s First Mot.; Def.'s Second Mot.; Def.'s Reply. As such, these arguments have already been addressed in the prior two sections of this opinion. The Court finds no grounds to impose these requested sanctions.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to compel production of additional case materials (ECF No. 391) is **DENIED**, the Government's cross-motion for return of sensitive materials (ECF No. 392) is **GRANTED**, and Defendant's motions for sanctions (ECF Nos. 312, 393) are **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 28, 2025                                        RUDOLPH CONTRERAS
                                                            United States District Judge